**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | | |
|---|---|---|---|
| In Re: **Cengiz J. Comu** | **Debtor** | § | **Case No. 09-38820 SGJ7** |
| **Cengiz J. Comu, et al** | | § | |
| | Appellant | § | |
| vs. | | § | 10-03269 |
| **King Louie Mining, LLC, et al** | | § | |
| | Appellee | § | |

**148 Judgment revoking discharge of debtor Entered 7/8/14**

**VOLUME 1**

**MINI RECORD**

BTXN 101 (rev. 10/02)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re:<br>Cengiz J. Comu | §<br>§<br>§ | |
| Debtor(s) | §<br>§ | Case No.:    09−38820−sgj7<br>Chapter No.:   7 |
| Cengiz J. Comu, et al | § | |
| Appellant(s) | §<br>§ | Adversary No.:    10−03269−sgj |
| vs.<br>King Louie Mining, LLC, et al | §<br>§ | Civil Action No.:      Civil Action No. |
| Appellee(s) | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## INDEX OF RECORD FOR THE PURPOSE OF APPEAL

| **Page No.** | **Item Description** |
|---|---|
| | Appellant Index |
| | Appellee Index |
| 000001 | Notice of appeal |
| 000004 | Appealed order |
| 000008 | Findings of facts |
| 000149 | Docket sheet |
| 000195 | Associated docket sheet |


DATED:  11/21/14              FOR THE COURT:
                             Tawana C. Marshall, Clerk of Court

                             by: /s/J. Blanco, Deputy Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |

| | |
|---|---|
| DIANE G. REED, TRUSTEE, | § |
|     Intervenor, Co-plaintiff and | § |
|     Third-party Plaintiff, | § |
| | § |
| v. | § |
| | § |
| CENGIZ J. COMU, | § |
|     Defendant, | § |
| | § |
| and | § |
| | § |
| PHYLLIS E. COMU, | § |
| BERNARD D. BROWN, | § |
| THE BARCLAY GROUP, INC. AND | § |
| SUNSET PACIFIC, L.P., | § |
|     Third-party Defendants. | § |

*I XIDEX*

**APPELLANT'S FIRST AMENDED DESIGNATION**
**OF RECORD AND ISSUES ON APPEAL**                                    Page 1

## APPELLANT'S FIRST AMENDED DESIGNATION OF RECORD
## AND ISSUES ON APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Cengiz J. Comu, Appellant, and files this his First Amended Designation

of Record and Issues on Appeal for the Judgment entered July 8, 2014 [Document No. 148] as

follows:

I.      Appellant designates the following documents from the docket sheet in Adversary Case

No. 10-03269 for the Record on Appeal:

[Intentionally left blank]

| Filing Date | # | Docket Text |
|---|---|---|
| 08/27/2014 | 164 | Notice of appeal . Fee Amount $298 filed by Defendant Cengiz J. Comu (RE: related document(s)148 Judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Related document(s) 20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 53 Intervenor complaint filed by Intervenor-Plaintiff Diane G. Reed)). Appellant Designation due by 9/10/2014. (Moroles, D.) |
| 07/08/2014 | 148 | Judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Related document(s) 20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 53 Intervenor complaint filed by Intervenor-Plaintiff Diane G. Reed) (Rielly, Bill). |
| 07/08/2014 | 147 | Findings of fact and conclusions of law in support of judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Rielly, Bill) |
| 09/09/2014 | | Docket Sheet |
| 10/07/2010 | 5 | Motion to dismiss adversary proceeding*Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6)* filed by Defendant Cengiz J. Comu (Olson, Dennis) |
| 11/08/2010 | 8 | Motion for leave *to Amend* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/29/2010. (Attachments: 1 First Amended Complaint2 Exhibit A3 Exhibit B4 Exhibit C) (Lippe, Emil) |
| 11/08/2010 | 9 | Response opposed to (related document(s): 5 Motion to dismiss adversary proceeding*Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 01/10/2011 | 10 | Order denying motion to dismiss adversary proceeding as moot (related document # 5), granting motion for leave to amend complaint(related document # 8) Entered on 1/10/2011. Case is removed from docket for week of January 11, 2011. Counsel ORDERED to confer and submit proposed amended scheduling order for the trial of this case, to be submitted within 10 days from date of this Order. (Mathews, M.) |

*Vol. 2*
*000211*

*000215*

*000263*

*000273*

_Vol. 2_

| | | | |
|---|---|---|---|
| 006275 | 01/20/2011 | 12 | Motion to dismiss adversary proceeding*(SECOND)* filed by Defendant Cengiz J. Comu (Olson, Dennis) |
| 000279 | 02/11/2011 | 16 | Response opposed to (related document(s): 12 Motion to dismiss adversary proceeding*(SECOND)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 000287 | 02/24/2011 | 17 | Order conditionally denying second motion to dismiss adversary proceeding (related document # 12) Entered on 2/24/2011. Plaintiffs are ORDERED to file amended complaint within 20 days of entry of this order. Defedant is ORDERED to file an answeror responsive pleading within 20 days of filing of the amended complaint. (Mathews, M.) |
| 000290 | 03/02/2011 | 19 | Motion for leave *to Prosecute Action* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 3/23/2011. (Lippe, Emil) |
| 000293 | 03/02/2011 | 20 | Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature. filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Attachments: 1 Exhibit A2 Exhibit B) (Lippe, Emil) |
| 000340 | 03/23/2011 | 23 | Order denying motion for leave to prosecute action without prejudice (related document # 19) Entered on 3/23/2011. (Simpson, B) |
| 000342 | 03/24/2011 | 24 | Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu (Olson, Dennis) |
| 000345 | 04/19/2011 | 28 | Agreed Order granting 27 Motion to extend time to file response to motion to dismiss until 4/28/2011. Entered on 4/19/2011. (Simpson, B) |
| 000347 | 04/28/2011 | 30 | Response opposed to (related document(s): 24 Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 000357 | 05/04/2011 | 31 | Motion to continue hearing on (related documents 20 Amended complaint, 24 Motion to dismiss adversary proceeding)*[Unopposed]* filed by Interested Party Diane G. Reed, Trustee (Elmquist, David) |
| 000361 | 05/06/2011 | 32 | Order granting motion to continue hearing on (related document # 31) (related documents Motion to dismiss adversary proceeding*(THIRD)* and 20 Amended Complaint) Entered on 5/6/2011. Hearing to be held on 7/11/2011 at 10:30 AM Dallas Judge Jernigan Ctrm for 24, Trial Docket Call date reset for 9/12/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Mathews, M.) Modified text on 5/6/2011 (Mathews, M.). |
| 000 363 | 07/06/2011 | 36 | Second Motion to continue hearing on (related documents 20 Amended complaint, 24 Motion to dismiss adversary proceeding)*[unopposed]* filed by Interested Party Diane G. Reed, Trustee (Elmquist, David) |

*Vol. 2*

| | 07/08/2011 | 37 | Order granting second unopposed motion to continue hearing on (related document # 36) (related documents Amended complaint, Motion to dismiss adversary proceeding *(THIRD)*) Entered on 7/8/2011. Hearing to be held on 9/15/2011 at 09:30 AM Dallas Judge Jernigan Ctrm for 24 Third motion to dismiss and for Trial Docket Call date set for 12/12/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. Further conditions per Order. (Mathews, M.) |
|---|---|---|---|
| 000367 | | | |
| 000369 | 08/24/2011 | 39 | Agreed Motion to Abate Adversary Proceeding (related document(s)1 Complaint) Filed by Interested Party Diane G. Reed (Elmquist, David) Modified TEXT on 8/25/2011 (Blanco, J.). |
| 000374 | 08/31/2011 | 40 | Agreed Order granting motion to abate adversary proceeding (related document # 39) Entered on 8/31/2011. (Mathews, M.) |
| 000377 | 05/24/2012 | 48 | Supplemental Order granting agreed motion to abate adversary proceeding including any hearing on the motion to dismiss, abated until August 1, 2012 further conditions per order (related document # 39 agreed motion to abate ) Entered on 5/24/2012. (Moroles, D.) |
| 000379 | 08/07/2012 | 50 | Order terminating abatement of adversary proceeding and requiring: (A) Trustee's Complaint in Intervention to be filed by August 31, 2012; and (B) parties to upload Agreed Scheduling Order, or in the alternative, Court will enter its own Scheduling Order (related document # 39) Entered on 8/7/2012. Further details per Order. (Mathews, M.) |
| 000381 | 09/05/2012 | 53 | Intervenor complaint by Diane G. Reed against Sunset Pacific, L.P., The Barclay Group, Inc., Bernard D Brown, Phyllis E Comu, Cengiz J. Comu. (Elmquist, David) |
| 000395 | 09/06/2012 | 54 | Order granting Trustee's Unopposed Motion to Extend Deadline to File a Complaint in Intervention 52 Motion to extend time. Ordered that the deadline is hereby extended to September 5, 2012. Entered on 9/6/2012. (Tello, Chris) |
| 000397 | 09/20/2012 | 59 | Agreed Scheduling Order Entered on 9/20/2012 (RE: related document(s)20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial Docket Call date set for 7/8/2013 at 01:30 PM at Dallas Judge Jernigan Ctrm. Hearing on Defendant Cengiz J. Comu's Third Amended Motion to Dismiss Case is set for 10/31/2012 at 9:30 AM. (Mathews, M.) MODIFIED hearing dates on 9/21/2012 (Mathews, M.). |
| 000401 | 09/28/2012 | 61 | Supplemental Response opposed to (related document(s): 24 Motion to dismiss adversary proceeding *(THIRD)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 000406 | 09/28/2012 | 62 | Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against |

| | | | |
|---|---|---|---|
| *Vol. 2* | | | Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 41 (Objection / revocation of discharge - 727(c),(d),(e)). (Lippe, Emil) Modified text on 9/7/2010 (Luna, G). filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Lippe, Emil) |
| *000429* | 10/09/2012 | 64 | Answer to Intervenor complaint (Related document: 53 Intervenor complaint by Diane G. Reed against Sunset Pacific, L.P., The Barclay Group, Inc., Bernard D Brown, Phyllis E Comu, Cengiz J. Comu. (Elmquist, David) filed by Bernard D Brown, Cengiz J. Comu, Phyllis E. Comu, Sunset Pacific, L.P., The Barclay Group, Inc.. (Olson, Dennis) Modified text on 10/9/2012 (Tello, Chris). |
| *000433* | 10/09/2012 | 65 | Reply to (related document(s): 30 Response filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 61 Response filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) filed by Defendant Cengiz J. Comu. (Olson, Dennis) |
| *000437* | 10/26/2012 | 66 | Motion to appear pro hac vice for David H. Wander. Fee Amount $25 filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit) (Lippe, Emil) |
| *000441* | 10/29/2012 | 68 | Motion for leave *to File Third Amended Complaint and Brief in Support* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/23/2012. (Lippe, Emil) |
| *Vol. 3* *000451* | 10/30/2012 | 69 | Motion for leave *to File Surreply to Defendant's Response to Plaintiffs' Supplemental Response to Third Motion to Dismiss* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/23/2012. (Attachments: # 1 Exhibit A - Surreply# 2 Proposed Order) (Lippe, Emil) |
| *000470* | 10/31/2012 | 70 | Order granting motion to appear pro hac vice adding David H. Wander for Ronald Katz and King Louie Mining, LLC (related document # 66) Entered on 10/31/2012. (Mathews, M.) |
| *000471* | 11/02/2012 | 71 | Order denying Plaintiffs' motion for leave to file Third Amended Complaint (related document # 68) Entered on 11/2/2012. (Mathews, M.) |
| *000473* | 11/02/2012 | 72 | Order denying Plaintiffs' motion for leave to File Surreply to Defendant's Response to Plaintiffs' Supplemental Response to Third Motion to Dismiss (related document # 69) Entered on 11/2/2012. (Mathews, M.) |
| *000475* | 11/14/2012 | 76 | Order denying motion to dismiss adversary proceeding (related document # 24) Entered on 11/14/2012. (Mathews, M.) |
| *000477* | 12/07/2012 | 78 | Answer to complaint *(Second Amended) to Revoke Discharge* filed by Cengiz J. Comu. (Olson, Dennis) |
| *000481* | 06/07/2013 | 88 | Motion to substitute attorney Emil Lippe, Jr., Law Offices of Lippe & Associates with Shari L. Heyen, Kendyl T. Hanks and Charles P. Floyd, Greenberg Traurig, LLP *and for Withdrawal of Attorney Emil Lippe, Jr., Law Offices of Lippe & Associates,* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Heyen, Shari) |

*Vol. 3*

| | 06/12/2013 | 89 | Agreed Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit A - Proposed Agreed Scheduling Order) (Heyen, Shari) |
|---|---|---|---|
| 000785 | | | |
| 000795 | 06/21/2013 | 90 | Agreed order granting motion to amend scheduling order (related document # 89) Trial Docket Call date set for 9/9/2013 at 01:30 PM Dallas Judge Jernigan Ctrm for 20, Entered on 6/21/2013. (Rielly, Bill) |
| 000799 | 06/21/2013 | 91 | Order granting motion to substitute attorney adding Shari L. Heyen for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, Kendyl T. Hanks for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, Charles P. Floyd for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, terminating Emil Lippe, Jr.. (related document # 88) Entered on 6/21/2013. (Rielly, Bill) |
| 000562 | 07/19/2013 | 94 | Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates (Attachments: # 1 Exhibit # 2 Affidavit # 3 Exhibit 1 # 4 Exhibit 2 # 5 Proposed Order) (Lippe, Emil) |
| 000539 | 08/12/2013 | 96 | Response opposed to (related document(s): 94 Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Heyen, Shari) |
| 000598 | 08/14/2013 | 97 | Reply to (related document(s): 96 Response filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6) (Lippe, Emil) |
| 000606 | 08/21/2013 | 98 | Order denying motion to intervene (related document # 94) Entered on 8/21/2013. (Rielly, Bill) |
| 000608 | 08/23/2013 | 99 | Agreed Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit A - Agreed Order to Amend Scheduling Order) (Heyen, Shari) |
| 000617 | 09/13/2013 | 101 | Agreed order granting motion to amend scheduling order (related document # 99) Trial Docket Call date set for 12/9/2013 at 01:30 PM Dallas Judge Jernigan Ctrm for 20, Entered on 9/13/2013. (Rielly, Bill) |
| 000621 | 11/25/2013 | 103 | Witness and Exhibit List *for Trial, per Scheduling Order* filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)62 Amended complaint). (Olson, Dennis) |
| 000624 | 11/25/2013 | 104 | Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Heyen, Shari) |

*Vol. 3*

| | | | |
|---|---|---|---|
| 000630 | 11/27/2013 | 105 | Support/supplemental document*(Supplement to Plaintiffs' Motion for Continuance of Scheduling Order Deadlines and Trial)* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)104 Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding)). (Heyen, Shari) |
| 000633 | 12/09/2013 | 106 | Agreed order granting motion to amend scheduling order (related document # 104) Entered on 12/9/2013. Trial Docket Call date set for 3/3/2014 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Rielly, Bill) |
| 000637 | 12/20/2013 | 108 | Motion for preliminary injunction *(expedited)* filed by Intervenor-Plaintiff Diane G. Reed (Elmquist, David) |
| 000647 | 12/20/2013 | 109 | Motion for expedited hearing(related documents 108 Motion for preliminary injunction) filed by Intervenor-Plaintiff Diane G. Reed (Elmquist, David) |
| 000651 | 12/20/2013 | 110 | Order granting ex parte motion for expedited hearing (Related Doc# 109)(document set for hearing: 108 Motion for preliminary injunction) Entered on 12/20/2013. Hearing to be held on 12/23/2013 at 09:30 AM Dallas Judge Jernigan Ctrm for 108, (Rielly, Bill) |
| 000653 | 12/20/2013 | 111 | Agreed order granting motion for temporary restraining order (related document 108) Entered on 12/20/2013. Preliminary injunction hearing to be held on 1/3/2014 at 09:30 AM Dallas Judge Jernigan Ctrm (Rielly, Bill) |
| 000656 | 01/03/2014 | 116 | Agreed Order Continuing Temporary Restraining Order (related document # 108) Entered on 1/3/2014. (Jones, A.) |
| 000659 | 02/24/2014 | 118 | Amended Witness and Exhibit List filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)103 List (witness/exhibit/generic)). (Olson, Dennis) |
| 000662 | 02/24/2014 | 119 | Witness and Exhibit List *for Trial* filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)62 Amended complaint). (Elmquist, David) |
| *Vol. 4*<br>000670 | 02/24/2014 | 120 | Witness and Exhibit List filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)62 Amended complaint). (Heyen, Shari) |
| 000722 | 02/26/2014 | 121 | Stipulation by Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC and All Defendants. filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)106 Order on motion to amend scheduling order). (Heyen, Shari) |
| 000726 | 03/03/2014 | 124 | Stipulation by Diane G. Reed and Plaintiffs and Defendants. filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)53 Intervenor complaint, 62 Amended complaint). (Elmquist, David) |
| 000729 | 03/03/2014 | 125 | Proposed findings of fact and conclusions of law filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)53 Intervenor complaint). (Elmquist, David) |

*Vol. 4*

| | | | |
|---|---|---|---|
| 000741 | 03/04/2014 | 126 | Proposed findings of fact and conclusions of law filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)62 Amended complaint). (Olson, Dennis) |
| 000746 | 03/04/2014 | 127 | Proposed findings of fact and conclusions of law filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)62 Amended complaint). (Heyen, Shari) |
| 000778 | 03/05/2014 | 130 | Order setting trial Entered on 3/5/2014 (RE: related document(s)62 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial date set for 3/17/2014 at 09:30 AM at Dallas Judge Jernigan Ctrm. (Rielly, Bill) |
| 000780 | 03/11/2014 | 132 | Amended Witness and Exhibit List *for Trial* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)120 List (witness/exhibit/generic)). (Heyen, Shari) |
| 000805 | 03/13/2014 | 134 | Amended Witness and Exhibit List filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)119 List (witness/exhibit/generic)). (Elmquist, David) |
| 000813 | 03/14/2014 | 135 | Amended Witness and Exhibit List *Second Amended* filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)118 List (witness/exhibit/generic). (Olson, Dennis) |
| 000816 | 03/16/2014 | 137 | Amended Witness and Exhibit List *(Second)* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)132 List (witness/exhibit/generic)). (Heyen, Shari) |
| 000842 | 03/17/2014 | 138 | First Amended Proposed Joint Pre-Trial order Entered on 3/17/2014. (Rebecek, B) |
| 000871 | 04/04/2014 | 142 | Extended temporary restraining order and mandatory injunction Entered on 4/4/2014. (Rielly, Bill) |
| 000878 | 04/23/2014 | 144 | Notice *of Trustee's Status Report of Compliance* filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)142 Temporary restraining order). (Elmquist, David) |
| 000892 | 07/29/2014 | 161 | Motion to extend time to appeal - Rule 8002c (RE: related document(s)148 Judgment) Filed by Defendant Cengiz J. Comu (Blanco, J.) (Entered: 08/20/2014) |
| 000896 | 07/30/2014 | 153 | Application for compensation *Plaintiffs Preliminary Application for Attorneys' Fees and Expenses Awarded in the Court's July 8, 29014 Judgment* for Shari L. Heyen, Creditor's Attorney, Period: 10/26/2011 to 7/28/2014, Fee: $946,504.90, Expenses: $12,800.00. Filed by Attorney Shari L. Heyen (Heyen, Shari) |
| 000906 | 07/30/2014 | 154 | Motion to extend time to To Submit Affidavit and Evidence in Support of Application for Attorneys' Fees & Expenses Awarded in the Court's July 8, 2014 Judgment Filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Heyen, Shari) |
| 000914 | 08/20/2014 | 162 | Order granting motion for leave to file notice of appeal out of time 161 |

*Vol. 4*

*000916*

*000919*

| | | | Motion to extend time to appeal - Rule 8002c. Entered on 8/20/2014. (Rielly, Bill) |
|---|---|---|---|
| 08/27/2014 | 165 | | Order granting motion to extend time to file application for attorney's fees and expenses 154 Motion to extend time. Entered on 8/27/2014. (Rielly, Bill) |
| 08/29/2014 | 168 | | Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)164 Notice of appeal filed by Defendant Cengiz J. Comu) (Blanco, J.) |

II.     Appellant also designates all exhibits admitted at trial, March 17 through March 21, 2014.     *Not Provided by Appellant*

III.    Appellant also designates the following transcripts:

*Vol. 5*

| | | | |
|---|---|---|---|
| 000921 | 11/09/2010 | 177 | Hearing held on 11/9/2010. (RE: related document(s)5 Motion to dismiss adversary proceeding Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6) filed by Defendant Cengiz J. Comu filed by Defendant Cengiz J. Comu) APPEARANCES: D. Olson for Debtor; E. Lippe for Plaintiff. Nonevidentiary hearing. Announcement of an agreed order having been submitted that contemplates Plaintiff's agreement to file Amended Complaint with Debtor's reservation of right to re-urge motion to dismiss. Court will sign order. (Womack, Jennifer) (Entered: 11/12/2010) |
| 000927 | 02/14/2011 | 178 | Hearing held on 2/14/2011. (RE: related document(s)12 Motion to dismiss adversary proceeding*(SECOND)* filed by Defendant Cengiz J. Comu filed by Defendant Cengiz J. Comu) Appearances: D. Olsen for Defendant/Debtor; E. Lippe for Plaintiff. Nonevidentiary hearing. Motion denied, conditional on Plaintiff, within 20 days, amending Complaint again to provide more specificity regarding specific provisions of Section 727(d) being alleged, when acts were discovered and how, and addressing his standing, versus the Chapter 7 Trustees, to seek avoidance of alleged fraudulent transfers. If not amendment within 20 days, complaint will be dismissed. If amendment, then Defendant has 20 days thereafter to answer/respond. Counsel to submit order. (Harden, D.) (Entered: 02/18/2011) |
| 000952 | 05/02/2012 | 179 | Status conference held (RE: related document(s)20 Amended complaint) Appearances: E. Lippe and D. Wander (telephonically) for Plaintiffs; D. Elmquist for Trustee; D. Olson for Debtor. Nonevidentiary hearing. Based on statements of counsel, court will continue abatement through 8/1/12 and counsel shall contact courtroom deputy for another status conference the first week of August 2012. Counsel shall upload an order continuing abatement. (Davis, T.) (Entered: 05/14/2012) |
| 000964 | 07/31/2012 | 180 | Hearing held on 7/31/2012. (RE: related document(s)20 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature. filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Attachments: 1 Exhibit A2 Exhibit B) filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) Appearances: D. Elmquist for Trustee; E. Lippe and D. Wander (telephonically) for Plaintiff; D. Olson for Debtor. Nonevidentiary status conference. Court heard reports regarding Rule 2004 examinations that have been ongoing and Trustees intention to file a Complaint in Intervention by 8/31/12. Court will enter Order terminating the abatement of this Adversary Proceeding and requiring: (a) Trustees Complaint in Intervention to be filed by 8/31/12; and (b) parties to upload Agreed Scheduling Order by 9/14/12 (inclusive of deadlines pertaining to the pending Rule 12(b)(6) |

*Vol. 5*

| | | | |
|---|---|---|---|
| | | | motion) or, in the alternative, court will enter its own Scheduling Order thereafter setting a January 2013 trial docket call and deadlines pertaining to the Rule 12(b)(6) motion. (Baird, Dennis) (Entered: 08/01/2012) |
| 000975 | 10/31/2012 | 181 | Hearing held on 10/31/2012. (RE: related document(s)24 Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu) Appearances: D. Olson for Movant/Defendant/Debtor; D. Elmquist for Trustee; E. Lippe and D. Wander (telephonically) for Plaintiff/King Louie Mining. Nonevidentiary hearing. Motion denied. Court also denied a pending Motion for Leave by Plaintiff/King Louie Mining to File Third Amended Complaint. Thus, Second Amended Complaint of King Louie Mining (Section 727 count only) and Complaint in Intervention of Trustee are now governing pleadings in this Adversary Proceeding. Mr. Lippe to upload orders on motion to dismiss and motion for leave. (Baird, Dennis) |
| 001004 | 08/15/2013 | 182 | Hearing held on 8/15/2013. (RE: related document(s)94 Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates (Attachments: # 1 Exhibit # 2 Affidavit # 3 Exhibit 1 # 4 Exhibit 2 # 5 Proposed Order)) Appearances: E. Lippe for his firm; K. Hanks and C. Floyd for Plaintiffs other than the Trustee; D. Elmquist for Trustee; R. Nicoud for Debtor. Nonevidentiary hearing. Motion denied. Ms. Hanks to upload order. (Harden, D.) (Entered: 08/21/2013) |
| 001035 | 03/04/2014 | 183 | Pre-trial conference held on 3/4/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 41 (Objection / revocation of discharge - 727(c),(d),(e)). (Lippe, Emil) Modified text on 9/7/2010 (Luna, G). filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz).) Appearances: K. Hanks and V. Vital for Creditor/Plaintiffs; D. Elmquist for Intervenor/Plaintiff; D. Olson for Defendants. Nonevidentiary status conference. Court will issue order setting trial for March 17, 2014 at 9:30 am, continuing through March 21, 2014. Parties to upload final Pre-Trial Order by March 14, 2014. (Harden, D.) (Entered: 03/06/2014) |
| 001052 | 03/17/2014 | 184 | Trial held on 3/17/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) |

| | | | |
|---|---|---|---|
| *Vol. 6* | | | Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/18/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| *001277* | 03/18/2014 | *185* | Trial held on 3/18/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/19/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| *Vol. 7* *001538* | 03/19/2014 | *186* | Trial held on 3/19/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/20/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| *Vol. 8* *001787* | 03/20/2014 | *187* | Trial held on 3/20/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/21/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| *Vol. 9* *001909* | 03/21/2014 | *188* | Trial held on 3/21/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial concluded. Court gave bench ruling: (a) revocation of discharge shall be ordered as to the Debtor, pursuant to Section 727(d)(1) & (2) of the Bankruptcy Code, based on fraud and concealment of assets of which Plaintiffs (and Trustee) were unaware until after the granting of discharge, and also based on Debtors acquiring or becoming entitled to acquire property that was or would be property of the estate and knowingly and fraudulently failing to report, deliver and surrender it toTtrustee; (b) The Barclay Group, Inc. and Sunset Pacific are the alter |

| | | egos of Debtor and their veil should be pierced; (c) Debtor should turnover previously undisclosed Turkish Bank Account and the equity/asset-control of The Barclay Group, Inc. and Sunset Pacific to Trustee; (d) parties may submit post-trial briefing regarding possible monetary damages to the estate. Counsel will upload an amended restraining order and injunction, as soon as possible, to protect dissipation of Green Auto stock or other assets of The Barclay Group, Inc. and Sunset Pacific. Counsel will subsequently upload proposed Findings of Fact, Conclusions of Law and Judgment that are consistent with the courts oral ruling and otherwise consistent with the evidence. (Harden, D.) (Entered: 03/25/2014) |
|---|---|---|

IV.    Appellant states the following Issues presented on Appeal:

    1.    The Bankruptcy Judge erred in revoking the Debtor's discharge.

    2.    The Bankruptcy Judge erred in finding that the Barclay Group and Sunset Pacific

are the alter egos of the Debtor.

    3.    The Bankruptcy Judge erred in calculating the amount of the damages for which

the Debtor was found to be liable.

[Signature on following page]

Respectfully submitted,

Cengiz J. Comu
14873 Oaks North Place
Dallas, Texas 75254
(972) 965-2545 – Telephone
Email: cjcomu@gmail.com

By: _____
    Cengiz J. Comu
    *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on the __11__ day of September, 2014, a true and correct copy of the foregoing document was sent via electronic means or by first class mail, postage prepaid to the persons shown below:

Kendyl T. Hanks
Greenberg Traurig, LLP
300 West 6th Street, Suite 2050
Austin, Texas 78701

David W. Elmquist
Reed & Elmquist, P.C.
501 N. College Street
Waxahachie, Texas 75165



By: _____
    Cengiz J. Comu

David W. Elmquist – SBT #06591300
REED & ELMQUIST, P.C.
501 N. College Street
Waxahachie, TX 75165
(972) 938-7339
(972) 923-0430 (fax)

ATTORNEYS FOR DIANE REED, CHAPTER 7 TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|      Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|      Defendant. | § | |

| | |
|---|---|
| DIANE G. REED, TRUSTEE, | § |
|      Intervenor, Co-plaintiff and | § |
|      Third-party Plaintiff, | § |
| | § |
| v. | § |
| | § |
| CENGIZ J. COMU, | § |
|      Defendant, | § |
| | § |
| and | § |
| | § |
| PHYLLIS E. COMU, | § |
| BERNARD D. BROWN, | § |
| THE BARCLAY GROUP, INC. AND | § |
| SUNSET PACIFIC, L.P., | § |
|      Third-party Defendants. | § |

*INDEX*

**APPELLEE'S DESIGNATION OF ADDITIONAL ITEMS FOR INCLUSION IN THE RECORD ON APPEAL – Page 1**

## APPELLEE'S DESIGNATION OF ADDITIONAL ITEMS
## FOR INCLUSION IN THE RECORD ON APPEAL

TO THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN
DISTRICT OF TEXAS, DALLAS DIVISION:

Diane Reed, Chapter 7 Trustee, Plaintiff and Appellee herein, files this Appellee's

Designation of Additional Items for Inclusion in the Record on Appeal in connection with the

Notice of Appeal filed August 29, 2014 by Defendant, Cengiz J. Comu (Doc. No. 168), as

follows:

| Docket No. | | Document | Filed Date |
|---|---|---|---|
| *Vol. 10* 002124 | 1 | Complaint to Revoke Discharge Pursuant to Section 727(d) of the United States Bankruptcy Code | 09/03/2010 |
| 002131 | 27 | Unopposed Motion for Extension of Time to File Response | 04/18/2011 |
| 002134 | 52 | Trustee's Unopposed Motion to Extend Deadline to File a Complaint in Intervention | 08/31/2012 |
| 002138 | 129 | Joint Pre-Trial Order [Proposed] | 03/04/2014 |
| 002148 | 136 | First Amended Proposed Joint Pre-Trial Order | 03/16/2014 |
| — | 140 | Court admitted exhibits | 03/17/2014 |
| 002177 | 141 | Trustee's Post-Trial Brief in Support of Recovery Under 11 U.S.C. § 542(a) | 03/28/2014 |
| 002182 | 145 | Plaintiffs' and Trustee's Joint Proposed Findings of Fact and Conclusions of Law | 06/16/2014 |
| 002225 | 146 | Plaintiffs' and Trustee's Brief in Support of Joint Proposed Findings of Fact and Conclusions of Law | 06/16/2014 |

Dated:  September 25, 2014.

Respectfully submitted,

**REED & ELMQUIST, P.C.**
501 N. College Street
Waxahachie, TX 75165
(972) 938-7339
(972) 923-0430 (fax)

By:___*/s/ David W. Elmquist*_____
David W. Elmquist – SBT #06591300

**ATTORNEYS FOR DIANE REED, CHAPTER 7
TRUSTEE, PLAINTIFF/APPELLEE**

## CERTIFICATE OF SERVICE

This is to certify that on September 25, 2014, a copy of the foregoing Designation was mailed to Appellant by first class mail.

Cengiz J. Comu
14873 Oaks North Place
Dallas, Texas 75254

*/s/ David W. Elmquist*_____
David W. Elmquist

**APPELLEE'S DESIGNATION OF ADDITIONAL ITEMS FOR INCLUSION IN THE
RECORD ON APPEAL – Page 3**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| DEBTOR | § | |

---

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| Plaintiffs, Appellees | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgi |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| Defendant/Appellant | § | |

---

| | |
|---|---|
| DIANE G. REED, TRUSTEE, | § |
| Intervenor, Co-plaintiff and | § |
| Third-party Plaintiff | § |
| | § |
| v. | § |
| | § |
| CENGIZ J. COMU, | § |
| Defendant | § |
| | § |
| and | § |
| | § |
| PHYLLIS E. COMU, | § |
| BERNARD D. BROWN, | § |
| THE BARCLAY GROUP, INC. AND | § |
| SUNSET PACIFIC, L.P., | § |
| Third-party Defendants | § |

*FILED*

*AUG 27 2014*

TAWANA C. MARSHALL, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

---

## <u>NOTICE OF APPEAL</u>

CENGIZ J. COMU, the defendant, appeals under 28 U.S.C. § 158(a) or (b) from the

000001

Judgment of the bankruptcy judge entered in this adversary proceeding on the 8th day of July, 2014.

The names of all parties to the judgment, order of decree appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

REED & ELMQUIST, P.C.
David W. Elmquist- SBT #06591300
501 N. College Street
Waxahachie, TX 75165
Tel: (972) 938-7339
Fax: (972) 923-0430
Email: delmguist@bcylawyers.com
ATTORNEYS FOR DIANE G. REED, TRUSTEE, INTERVENOR, CO-PLAINTIFF AND
THIRD PARTY PLAINTIFF

GREENBERG TRAURIG, LLP
Shari L.Heyen
Texas Bar No. 09564750
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Email: heyens@ gtlaw.com

Kendyl T. Hanks
Texas Bar No. 24032273
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210
Email: hanksk@gtlaw.com

Charles P. Floyd
Texas Bar No. 24055487
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601
Email: floydc@gtlaw.com
ATTORNEYS FOR PLAINTIFFS KING LOUIE MINING, LLC, KING LOUIE
ENTERPRISES, LLC AND RONALD KATZ

Emil Lippe, Jr.
Bar No. 12398300
LAW OFFICES OF LIPPE & ASSOCIATES Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas 75201
Tel: (214) 855-1850
Fax: (214) 720-6074
Email: emil@texaslaw.com

Former Attorney for King Louie Mining, King Louie Enterprises LLC and Ronald Katz


OLSON NICOUD & GUECK, L.L.P.
Dennis Olson
SBT #15273500
1201 Main Street, Suite 2470
Dallas, TX  75202
Tel: (214) 979-7302
Fax: (214) 979-7301
Email: denniso@dallas-law.com

ATTORNEYS FOR CENGIZ J. COMU, A/K/A CJ COMU, DEFENDANT, AND PHYLLIS E.
COMU, BERNARD D. BROWN, THE BARCLAY GROUP INC. AND SUNSET PACIFIC,
L.P., THIRD-PARTY DEFENDANTS


Dated: _____8.27.14_____

Signed: _____
        Cengiz J. Comu

000003



**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 8, 2014**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| *Debtor.* | § | |

---

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-SGJ |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| *Defendant.* | § | |

---

| | |
|---|---|
| DIANE G. REED, TRUSTEE, | § |
| *Intervenor, Co-Plaintiff and* | § |
| *Third-party Plaintiff,* | § |
| | § |
| v. | § |
| | § |
| CENGIZ J. COMU, | § |
| *Defendant,* | § |
| | § |
| *and* | § |

1

000004

|  | § |
| PHYLLIS E. COMU, | § |
| BERNARD D. BROWN, | § |
| THE BARCLAY GROUP, INC. AND | § |
| SUNSET PACIFIC, L.P., | § |
| *Third-Party Defendants*. | § |

**JUDGMENT: (A) REVOKING DISCHARGE OF DEBTOR, PURSUANT TO 11 U.S.C. § 727(d); (B) DECLARING CERTAIN PROPERTY TO BE "PROPERTY OF THE ESTATE"; (C) REQUIRING TURNOVER OF CERTAIN PROPERTY TO THE TRUSTEE; (D) AWARDING MONETARY DAMAGES TO TRUSTEE FOR THE BENEFIT OF THE ESTATE; AND (E) SEPARATELY AWARDING REASONABLE ATTORNEYS' FEES AND EXPENSES TO PLAINTIFFS**

**CAME ON BEFORE THE COURT** on March 17-21, 2014, a trial on Plaintiffs' *Second Amended Complaint to Revoke Discharge Pursuant to Section 727(d) of the United States Bankruptcy Code,* filed March 2, 2011 (Adv. Doc. No. 20) (the "KLM Complaint," cited as "KLM Compl."),[1] and on *Trustee's Complaint in Intervention*, filed on September 5, 2012 (the "Trustee Complaint"), Adv. Doc. No. 53 (cited as the "Trustee Compl."). Based on the court's Findings of Fact and Conclusions of Law entered this date, the court has decided to revoke the Debtor's discharge, grant certain declaratory relief to the Bankruptcy Trustee, grant certain turnover relief to the Bankruptcy Trustee, award certain monetary damages to the Bankruptcy Trustee, for the benefit of the bankruptcy estate, and separately award attorneys' fees and expenses in favor of Plaintiffs against the Debtor. Therefore, it is **ORDERED, ADJUDGED AND DECREED** as follows:

---

[1]      Defined terms used herein and not otherwise defined shall have the meaning ascribed to them in the separate Findings of Fact and Conclusions of Law entered on today's date.

000005

1.       The court hereby issues judgment *revoking* Debtor's Discharge, pursuant to 11 U.S.C. § 727(d).

2.       Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., the court hereby issues a judgment in favor of the Bankruptcy Trustee declaring that, as of the Petition Date, the assets of The Barclay Group, Inc. ("TBG") and Sunset Pacific, L.P. ("Sunset Pacific") were, and for all purposes shall be, considered property of Debtor's bankruptcy estate, pursuant to 11 U.S.C. § 541.

3.       Pursuant to 11 U.S.C. § 542(a), the court hereby issues judgment requiring Debtor, Cengiz J.Comu, TBG, and Sunset Pacific, jointly and severally, to turn over to the Bankruptcy Trustee all property or assets of TBG and Sunset Pacific that still exist.

4.       Further pursuant to 11 U.S.C. § 542(a), the court hereby issues a monetary judgment in favor of the Bankruptcy Trustee, and against the Debtor, Cengiz J.Comu, TBG, and Sunset Pacific, jointly and severally, for the value of the assets that existed on the Petition Date and that cannot be turned over to the Bankruptcy Trustee, because they have been sold or otherwise disposed of by the Debtor, Cengiz J.Comu, or persons or entities acting at his direction.  This monetary judgment is in the amount of **$5,858,778** (which reflects actual cash proceeds from the sale of Green Auto stock, that rightfully should have been turned over to the Bankruptcy Trustee), and includes: (1) TBG direct sales (conservatively, $974,616.60);[2] (2) TBG sales effected through OMST ($2,762,220);[3] (3) sales effected through TKY Trust ($1,048,973);[4] (4) sales effected

---

[2]       *See* Findings of Fact and Conclusions of Law, Section E(3)(a).

[3]       *See* Findings of Fact and Conclusions of Law, Section E(3)(b).

[4]       *See* Findings of Fact and Conclusions of Law, Section E(4)(a).

000006

through DAPTCO Trust ($222,980);[5] and (5) cash received by TBG for stock sales effected through ERI (conservatively, $850,000).[6]

     5.    Further, pursuant to 11 U.S.C. § 105(a), as a sanction for the bad faith that was shown on the part of the Debtor in the Adversary Proceeding, and due to the severe level of nondisclosures and fraud, Plaintiffs shall be and are hereby granted an additional monetary award for their reasonable and necessary attorneys' fees and expenses, as a sanction because of the unusual level of bad faith inherent in this matter.  Plaintiffs may submit their attorneys' fees and expense request in a separate submission, which shall be due to be filed in 21 days, and shall be the subject of a Supplemental Judgment.

# # # # END OF JUDGMENT # # # #

---

[5]    *See* Findings of Fact and Conclusions of Law, Section E(4)(b).

[6]    *See* Findings of Fact and Conclusions of Law, Section E(5)(c), and, in particular FOF ¶ 305 & n.765.

000007



**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 8, 2014**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| *Debtor* | § | |

_____

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-SGJ |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| *Defendant.* | § | |

_____

| | |
|---|---|
| DIANE G. REED, TRUSTEE, | § |
| *Intervenor, Co-Plaintiff and* | § |
| *Third-party Plaintiff,* | § |
| | § |
| v. | § |
| | § |
| CENGIZ J. COMU, | § |
| *Defendant,* | § |
| | § |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                              **PAGE 1 OF 141**

| *and* | § |
| | § |
| PHYLLIS E. COMU, | § |
| BERNARD D. BROWN, | § |
| THE BARCLAY GROUP, INC. AND | § |
| SUNSET PACIFIC, L.P., | § |
| *Third-Party Defendants*. | § |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF JUDGMENT: (A) REVOKING DISCHARGE OF DEBTOR, PURSUANT TO 11 U.S.C. § 727(d); (B) DECLARING CERTAIN PROPERTY TO BE "PROPERTY OF THE ESTATE"; (C) REQUIRING TURNOVER OF CERTAIN PROPERTY TO THE TRUSTEE; (D) AWARDING MONETARY DAMAGES TO TRUSTEE FOR THE BENEFIT OF THE ESTATE; AND (E) SEPARATELY AWARDING REASONABLE ATTORNEY'S FEES AND EXPENSES TO PLAINTIFFS

The above-referenced adversary proceeding ("Adversary Proceeding") was commenced by certain creditors known as King Louis Mining, LLC, King Louis Enterprises, LLC, and Ronald Katz (together, "Plaintiffs"), on September 3, 2010, against the Chapter 7 debtor Cengiz J. Comu *a/k/a* CJ Comu ("Debtor" or "Comu"), pursuant to which Plaintiffs have initially sought revocation of the Debtor's discharge, under Section 727(d) of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").[1]  Specifically, Plaintiffs have sought an order revoking the Debtor's discharge, pursuant to Bankruptcy Code Section 727(d)(1), due to alleged "fraud of the debtor" (based on allegedly undisclosed pre-petition assets and false oaths), and also under Section 727(d)(2), due to the Debtor's alleged failure to report or deliver property of the estate.[2] Plaintiffs specifically have contended that Comu "procured [discharge] through a fraud upon the Court" by concealing and misrepresenting his pre-petition debts, assets and business interests,

---

[1]     *See Complaint to Revoke Discharge Pursuant to Section 727(d) of the United States Bankruptcy Code*, filed September 3, 2010 (Adv. Doc. No. 1).  References to "Adv. Doc. No. __" herein refer to the docket entry number at which a pleading appears in the docket maintained by the Bankruptcy Clerk for this Adversary Proceeding.  Plaintiffs filed their *Second Amended Complaint to Revoke Discharge Pursuant to Section 727(d) of the United States Bankruptcy Code* on March 2, 2011 (Adv. Doc. No. 20) (the "KLM Complaint," cited as "KLM Compl.").

[2]     *First Amended Joint Pre-Trial Order*, entered March 17, 2014, Adv. Doc. No. 138 ("JPTO") at 2–4.

and that Comu has orchestrated a fraudulent and ongoing scheme to conceal, transfer, and dissipate property of the estate through domestic and foreign affiliates for the purpose of evading creditors.[3]  In addition to discharge-revocation, Plaintiffs seek "their reasonable attorney's fees [and] costs of court," as well as any additional "general relief" to which they may be entitled.[4] Later, Diane G. Reed, the duly appointed Chapter 7 Trustee of the bankruptcy estate of Comu, Bankruptcy Case No. 09-38820-SCJ-7 (the "Bankruptcy Case"),[5] joined in this Adversary Proceeding as Intervenor, Co-Plaintiff and Third-Party Plaintiff ("Intervenor" or "Trustee") on September 5, 2012.  Trustee likewise alleged[6] fraud and additionally asserted claims for declaratory relief, alter ego, and reverse corporate veil piercing.[7]  Trustee specifically alleged that Third-Party Defendants Barclay Group, Inc. *d/b/a* The Barclay Group, Inc. ("TBG") and Sunset Pacific, LP ("Sunset Pacific"), are alter egos owned or controlled by Comu, that Comu has used to hinder, delay or defraud Comu's creditors, including, in particular, the Plaintiffs.[8] Trustee asserted that all property and assets of TBG and Sunset Pacific constitute property of the estate, pursuant to 11 U.S.C. § 541(a)(2)(A), and sought a turnover of "all property and assets" of TBG and Sunset Pacific (in addition to any assets Comu failed to previously deliver to Trustee).[9]  Trustee further sought a judgment against Comu, TBG and Sunset Pacific, jointly and severally, for the value of estate assets that have been sold or otherwise disposed of by Comu.[10] A bench trial was held on March 17-21, 2014.  All parties appeared, some in person and some merely through their respective representatives or counsel, and announced ready for trial, by and

---

[3]      KLM Compl. at 3, 7, 9–15; *see also* JPTO at 2–4.
[4]      KLM Compl. at 15.
[5]      JPTO Stip. Fact ¶ 3.
[6]      *See Trustee's Complaint in Intervention*, filed on September 5, 2012 (the "Trustee Complaint"), Adv. Doc. No. 53 (cited as the "Trustee Compl.").
[7]      Trustee Compl. at 12–14; *see also* JPTO at 4–6.
[8]      JPTO at 4–5; *see also* Trustee Compl. at 12–14.
[9]      JPTO at 5–6; *see also* Trustee Compl. at 12, 14.
[10]     JPTO at 6; *see also* Trustee Compl. at 14.

through their attorneys of record.  This constitutes the court's findings of fact and conclusions of law, pursuant to Fed. R. Bankr. Proc. 7052.  Any finding of fact that is more appropriately considered as a conclusion of law should be considered as such, and *vice versa*.  Bankruptcy subject matter jurisdiction exists in this Adversary Proceeding, pursuant to 28 U.S.C. § 1334(b).  The bankruptcy court has authority to exercise bankruptcy subject matter jurisdiction, pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984.  The claims at issue in the Adversary Proceeding are statutory "core" matters, pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (J) and (O), with the exception of the alter ego/veil piercing relief requested–which is actually just a remedy.  Moreover, to the extent that some non-core claims are involved in this Adversary Proceeding, this court finds that resolution of such claims is inextricably intertwined with resolution of the core matter of:  (a) whether the Debtor was entitled to a bankruptcy discharge, and (b) whether there should be turnover of property of the bankruptcy estate.  However, in the event of an appeal, should the district court determine that this court lacked Constitutional authority to enter final judgment on all claims, this court asks the reviewing court to treat these findings of fact and conclusions of law as proposed findings of fact and conclusions of law (*i.e.,* a report and recommendation to the district court to be considered *de novo* by it), and to adopt, revise, or reject, as the district court may deem appropriate, with regard to any non-core claims.

# I.     FINDINGS OF FACT

## A.    HISTORY AND CONTEXT

### 1.     The Adversary Parties

1.     Plaintiffs King Louis Enterprises, LLC ("KLM") and King Louis Mining, LLC ("KLE") are privately-held Delaware limited liability companies.[11] Plaintiff Ronald Katz ("Katz") owns 75% of KLM and 100% of KLE.[12] Plaintiffs are creditors in the Bankruptcy Case.

2.     Comu is a Canadian citizen and permanent United States resident, originally from Turkey.[13] Comu has represented in corporate filings for at least two foreign entities that his usual place of residence is Canada.[14] Comu filed his *Voluntary Petition* (the "Petition") for bankruptcy relief under 11 U.S.C. § 301 on December 31, 2009 (the "Petition Date").[15]

3.     On the Petition Date, Comu resided at 5301 Paladium Drive, Dallas, Texas, 75254 (the "Paladium Residence"), which Comu owns without debt,[16] and for which Comu claims a homestead exemption.[17] Comu currently resides at 14873 Oaks North Place, Addison, Texas, 75254 (the "Oaks North Residence").[18]

4.     Comu holds himself out as an experienced investor and financial consultant who advises corporate clients and investors in a variety of securities-related transactions. Comu has held (and currently holds) numerous executive positions, including President, Chief Executive Officer ("CEO"), and Director in domestic and foreign entities doing business in a wide range of

---

[11]     JPTO Stip. Fact ¶ 1.
[12]     JPTO Stip. Fact ¶ 1.
[13]     KLM Ex. 373 at 3; KLM Ex. 206 at 15346_7; *see also* JPTO Stip. Fact ¶ 2.
[14]     KLM Ex. 83 at 6; KLM Ex. 84 at 5.
[15]     JPTO Stip. Fact ¶¶ 2, 9; *see also* Bankr. Doc. No. 1. References to "Bankr. Doc. No. __" herein refer to the docket entry number at which a pleading appears in the docket maintained by the Bankruptcy Clerk for this Bankruptcy Case.
[16]     Def. Ex. 4 at 22.
[17]     Trustee Ex. 94 at 1, 8 (Debtor's *Schedules A through J with Summary of Schedules*, Bankr. Doc. No. 11, filed January 15, 2010).
[18]     KLM Ex. 136 (lease for Oaks North Residence).

industries, including alternative energy and biofuel, financial services, water purification, mixed martial arts ("MMA") sporting event promotion, and commercial real estate, among others.[19]

5.      Comu is subject to an *Order of Permanent Injunction* entered in a civil enforcement action brought by the Securities and Exchange Commission ("SEC"), dated November 1, 1989 (the "SEC Injunction").[20]

6.      Third-Party Defendant Phyllis Comu ("Phyllis") is Comu's wife, who resided with Comu at the Paladium Residence on the Petition Date, and currently resides with Comu at the Oaks North Residence.[21]  As of the Petition Date, Phyllis and Comu had been married for approximately ten years, during which time they have resided in Dallas.[22]  Phyllis is not a joint debtor in the Bankruptcy Case.[23]

7.      Defendants claim Phyllis owns 98% of Sunset Pacific, and that the remaining shares of Sunset Pacific are owned by Comu (1%) and his brother (1%), Gem C. Comu *a/k/a* Cem Comu ("Cem Comu").[24]  Cem Comu is a Canadian citizen who resides in Burnaby, British Columbia, and has at least one address in Istanbul, Turkey.[25]

8.      Multiple addresses have been identified in Dallas, Texas for Sunset Pacific, including 18352 Dallas Parkway, Suite 136-484[26] (the "18352 Dallas Parkway Address"); 18208

---

[19]      *See infra* Section B(3).

[20]      KLM Ex. 369 (SEC Injunction).  The SEC Injunction permanently enjoins Comu and his agents from, among other things, selling unregistered securities, making false statements, or making misleading partial disclosures in any securities transaction involving interstate commerce.  KLM Ex. 369 at 2, 4, 5–6. The SEC Injunction further prohibits Comu from omitting material information, or making false or misleading statements, regarding the "actual roles of persons involved in ownership, direction and operation of the issuer, and their backgrounds and personal histories."  KLM Ex. 369 at 5.

[21]      *See generally* trial testimony of Phyllis Comu.

[22]      *See, e.g.*, Def. Ex. 4 at 12.

[23]      Trustee Ex. 94 at 5.

[24]      JPTO Stip. Fact ¶ 69; Trustee Ex. 94 at 4–5; Def. Ex. 4 at 5.

[25]      KLM Ex. 132 at 5–7.  Cem Comu's legal address is 3002-2138 Madison Avenue in Burnaby.

[26]      KLM Ex. 22 at 12–13; *see also* Trustee Ex. 30 at 1; Trustee Ex. 31 at 1–2; Trustee Ex. 32 at 2.

Preston Road, Suite 9314[27] (the "18208 Preston Address"); 14180 Dallas Parkway, Suite 508[28] (the "14180 Dallas Parkway Address"), 5430 LBJ Freeway, Suite 1200[29] (the "5430 LBJ Freeway Address"), 5735 Pineland Drive, Suite 215[30] (the "Pineland Address"), and 4505 Ratliff Lane[31] (the "Ratliff Address").

       9.     TBG is a Texas corporation that shares or has shared offices with Sunset Pacific at the 18208 Preston Address,[32] the 18352 Dallas Parkway Address,[33] and the Ratliff Address.[34] TBG is a privately-held financial consulting firm that, among other things, advises companies undergoing "reverse mergers"[35] and other corporate transactions.[36] Comu maintains in

---

[27]     Trustee Ex. 34 at 1 (2009 tax return); Trustee Ex. 35 at 1 (2010 tax return); Trustee Ex. 36 at 1 (2011 tax return).

[28]     KLM Ex. 22 at 6.

[29]     Trustee Ex. 36 at 3.

[30]     KLM Ex. 22 at 5.

[31]     Trustee Ex. 32 at 1 (2007 tax return).

[32]     Trustee Ex. 17 (2009 tax return); *see also generally* KLM Ex. 18–20; KLM Ex. 24; *see also* KLM Ex. 38; KLM Ex. 142 at 12.

[33]     *See, e.g.*, KLM Ex. 129 at 26.

[34]     Trustee Ex. 15 at 1 (2007 tax return).

[35]     The SEC has defined reverse mergers as follows:

> In a reverse merger transaction, an existing public "shell company," which is a public reporting company with few or no operations, acquires a private operating company— usually one that is seeking access to funding in the U.S. capital markets. Typically, the shareholders of the private operating company exchange their shares for a large majority of the shares of the public company. Although the public shell company survives the merger, the private operating company's shareholders gain a controlling interest in the voting power and outstanding shares of stock of the public shell company. Also typically, the private operating company's management takes over the board of directors and management of the public shell company. The assets and business operations of the post-merger surviving public company are primarily, if not solely, those of the former private operating company.

SEC, Office of Investor Educ. & Advocacy, *Investor Bulletin: Reverse Mergers* 1, *available at* http://www.sec.gov/investor/alerts/reversemergers.pdf (last visited May 29, 2014). The New York Times has described this process as "the Wall Street equivalent of 'Invasion of the Body Snatchers,'" which enables companies to "avoid reviews with state and federal regulators that are normally required for initial public stock offerings." David Barboza & Azam Ahmed, *China to Wall Street: The Side-Door Shuffle*, N.Y. TIMES (July 23, 2011), *available at* http://www.nytimes.com/2011/07/24/business/global/reverse-mergers-give-chinese-firms-a-side-door-to-wall-st.html?pagewanted=all&_r=2& (last visited May 29, 2014).

[36]     *See generally* KLM Ex. 142 (TBG website capture from August 23, 2013); *see also* http://thebarclaygroup.com/ (last visited May 29, 2014).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                           **PAGE 7 OF 141**

documents filed with this court, and testified at trial, that the legal name of TBG is "The Barclay Group, Inc." On its company website, TBG alternatively holds itself out as "The Barclay Group, LLC."[37] Texas Secretary of State ("SOS") filings indicate that TBG's actual legal name is "Barclay Group, Inc."[38] While these inconsistencies are not immaterial, the bankruptcy court need not resolve them for the purposes of this Adversary Proceeding, because the parties, by stipulation, refer to TBG as "Barclay Group, Inc. a/k/a The Barclay Group, Inc."[39]

10.     Comu claims in testimony and court filings that he owns only a one percent (1%) ownership interest in TBG.[40] Defendants allege that the remaining 99% of TBG is owned either by Third-Party Defendant Bernard D. Brown ("Brown"), a resident of the United Kingdom ("UK"), or by Brown & Lampe PLC ("B&L"), a UK entity.[41]

### 2.     Plaintiffs' Collection Efforts Triggered Bankruptcy

11.      On July 20, 2006, Plaintiffs Katz, KLM and KLE commenced a New York state court action (the "New York Action") against Comu to recover damages arising from Comu's common law fraud and securities fraud with respect to business dealings dating back to 2003.[42]

12.     After the commencement of the New York Action, Comu challenged Plaintiffs' claims with a verified motion to dismiss[43] (which was unsuccessful), two verified answers asserting a variety of affirmative defenses,[44] and counterclaims against Katz individually for breach of fiduciary duty and tortious interference with a contract, seeking "not less than $1

---

[37]     KLM Ex. 142 at 1, 20–11.
[38]     *Compare* KLM Ex. 23 *with* KLM Ex. 24; *see also* Trustee Ex. 18 at 1 (TBG tax return filed in the name of "Barclay Group, Inc.").
[39]     JPTO at 1.
[40]     JPTO Stip. Fact ¶ 14; Trustee Ex. 94 at 4.
[41]     JPTO Stip. Fact ¶ 14; Defendants' Answer ¶ 4; *see also* Trustee Ex. 94 at 4.
[42]     JPTO Stip. Fact ¶ 4; *see also* KLM Ex. 1 (Complaint); KLM Ex. 340 at 4–12. The New York Action is styled *Humitech Int'l Group, Inc., et al. v. Comu, et al*, Index No. 06-602567, in the Supreme Court of the State of New York, County of New York. The court may and does take judicial notice of the pleadings and procedural history in the New York Action. *See* FED. R. EVID. 201.
[43]     JPTO Stip. Fact ¶ 5; KLM Ex. 338.
[44]     JPTO Stip. Fact ¶ 5; KLM Ex. 339; KLM Ex. 341.

million" in actual damages—plus punitive damages and attorneys' fees.[45]  Despite having aggressively litigated the New York Action for almost three years, Comu failed to appear for the February 23, 2009, trial setting.[46]

13.     The New York court signed a default judgment against Comu on April 30, 2009, awarding Plaintiffs the aggregate amount of $2,279,265.16 plus interest accruing at 9% (the "New York Judgment").[47]  The New York Judgment was entered by notice of entry filed on June 9, 2009.[48]  Comu filed a notice of appeal on August 6, 2009,[49] but did not perfect or prosecute an appeal.

14.     Accrued interest on the New York Judgment as of March 17, 2014 (the first day of trial in this Adversary Proceeding) was $1,002,064.88, and thus the total debt owed by virtue of the New York Judgment is currently at least $3,281,330.04 (the "Judgment Debt").  Plaintiffs' Judgment Debt represents at least 95% of the total debt owed by Comu, as evidenced by the total creditor claims filed in the Bankruptcy Case.[50]

15.     Seeking to collect the Judgment Debt, Plaintiffs retained Emil Lippe, Jr. ("Plaintiffs' Prior Counsel"), and, on June 2, 2009, commenced a state court action in Dallas, Texas to domesticate the New York Judgment and pursue recovery from Comu (the "Collection Action").[51]

---

[45]     JPTO Stip. Fact ¶ 5; *see also* KLM Ex. 2 (docket sheet); KLM Ex. 339 at 8–14.
[46]     KLM Ex. 2 (docket sheet); *see also* JPTO Stip. Fact ¶ 6.
[47]     JPTO Stip. Fact ¶ 6; *see also* KLM Ex. 3.
[48]     JPTO Stip. Fact ¶ 6; *see also* KLM Ex. 3.
[49]     KLM Ex. 2 at 3.
[50]     JPTO Stip. Fact ¶ 11.
[51]     JPTO Stip. Fact ¶ 7; *see also* KLM Ex. 4 (Notice of Filing Foreign Judgment); KLM Ex. 5 (docket sheet).  The Collection Action is styled *King Louie Mining, LLC, et al v. Cengiz Jan Comu*, Cause No. 09-0680891, in the 134th Judicial District Court, Dallas County, Texas.

16.    Plaintiffs served Comu with a subpoena on August 2, 2009, which sought discovery regarding Comu's assets and noticed his deposition for August 19, 2009.[52]  Comu did not object to the subpoena.[53]

17.    Comu was preparing to file bankruptcy at least by September 17, 2009, when he forwarded certain "Ch. 7 Docs"—which included a W-2 from Odyssey One Source, Inc. ("Odyssey One") and Sunset Pacific's 2007 tax return (the "Undisclosed Tax Documents")—to his bankruptcy counsel.[54]  As set forth *infra*,[55] the Undisclosed Tax Documents contain information regarding Comu's finances that was either omitted or modified in his bankruptcy schedules (the "Schedules")[56] or his *Statement of Financial Affairs* ("SOFA")[57] filed in the Bankruptcy Case on January 15, 2010 (together, the "Bankruptcy Filings").

18.    Plaintiffs filed a motion to compel Comu's deposition in the Collection Action on November 23, 2009,[58] to which Comu did not respond.[59]  At a hearing on December 14, 2009, the court entered an agreed order compelling Comu's deposition for January 5, 2010.[60]

19.    But meanwhile, in between the December 14, 2009 hearing and the scheduled/ordered deposition—and approximately one week before the Petition Date—Comu and his wife took a Royal Caribbean vacation cruise that Comu paid for with a credit card.[61]

---

[52]    KLM Ex. 6 at 6–15.
[53]    KLM Ex. 5.  Comu waited until the day before his deposition was to be taken to inform Plaintiffs through counsel that he was unavailable, and asked to reschedule the deposition.  KLM Ex. 6 at 1.
[54]    KLM Ex. 231 (email and attachments).
[55]    *See infra* Section B(1)–(2).
[56]    Trustee Ex. 94.
[57]    Bankr. Doc. No. 12; Trustee Ex. 95 (SOFA admitted as exhibit).
[58]    JPTO Stip. Fact ¶ 8.  Plaintiffs filed their motion to compel after three months of what was described in the Collection Action as "repeated attempts to obtain an available date to take [Comu's] deposition," to which Comu failed to respond.  KLM Ex. 6 at 1–4.
[59]    KLM Ex. 5.
[60]    JPTO Stip. Fact ¶ 8; *see also* KLM Ex. 7 (Order).  The court also awarded Plaintiffs $350 in attorneys' fees.  KLM Ex. 7 at 1.

20.     On December 30, 2009—the day before the Petition Date—Comu emailed a memorandum to his bankruptcy counsel (the "Debts Memo"), which he described as a summary of "outstanding debts and 'potential' debts."[62]  As discussed *infra*, the Debts Memo contains information regarding Comu's finances that was omitted or modified in his Bankruptcy Filings.[63]

21.     Comu filed his voluntarily Petition on December 31, 2009.[64]  On January 4, 2010 (the day before his court-ordered deposition), Comu filed a *Suggestion of Bankruptcy* staying the Texas Collection Action pursuant to 11 U.S.C. § 362.[65]

22.     According to his own testimony, Comu's bankruptcy filing was prompted by the New York Judgment and Plaintiffs' collection efforts.  Comu admitted in his Answer[66] to the KLM Complaint that Plaintiffs were "pressing for postjudgment discovery from Comu when he filed this bankruptcy proceeding."[67]  When asked at the Section 341 Meeting of Creditors on February 9, 2010 (the "Creditors Meeting") why he filed bankruptcy, Comu cited "large judgments."[68]  And at trial in this Adversary Proceeding, Comu acknowledged that his bankruptcy was prompted by Plaintiffs' pursuit of Comu's assets in the Collection Action.

---

[61]     Def. Ex. 4 at 17; KLM Ex. 309 at 2 (vacation photo).  **Word to the wise:  it is generally not a good idea to take a luxury vacation a week before filing bankruptcy.**  In any event, Comu charged the cruise to his MBNA America credit card, giving rise to a separate fraud adversary proceeding by that creditor, which was resolved by settlement in 2009, at a 50% discount.  *See FIA Card Services, N.A. v. Cengiz J. Comu (In re Comu)*, Adversary No. 10-03068-sgj (Doc. No. 1 & Doc No. 6).

[62]     KLM Ex. 310 (attaching Debts Memo).  In the process of electronic discovery, the date on the Debts Memo was automatically updated to the date of printing (March 11, 2014), but the email transmitting the Debts Memo is dated December 30, 2009.

[63]     *See infra* Section B(1).

[64]     Bankr. Doc. No. 1.

[65]     JPTO Stip. Fact ¶ 10; *see also* KLM Ex. 8 (Suggestion of Bankruptcy).

[66]     *See Defendant CJ Comu's Original Answer to Plaintiffs' Second Amended Complaint to Revoke Discharge*, filed December 7, 2012 (Adv. Doc. No 79) (herein, "Debtor's Answer").

[67]     *Compare* KLM Compl. ¶ 20 *with* Debtor's Answer ¶ 2 (admitting allegation).

[68]     Def. Ex. 4 at 2.

### 3.  Comu's Inadequate Pre-Discharge Disclosures

23.     Attached to Comu's Petition is a Section 342(b) notice—which Comu verified having read—cautioning that "Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition."[69]

24.     On December 31, 2009 and January 4, 2010, the Clerk of the Bankruptcy Court issued notices that the Creditors Meeting was scheduled for February 9, 2010, and set the deadline for objecting to discharge for April 12, 2010 (the "Discharge Objection Deadline").[70]

25.     On January 11, 2010, Comu emailed to his attorney a document containing information to be included in his Schedules and SOFA (the "Draft Bankruptcy Filings").[71]  As discussed *infra*, the Draft Bankruptcy Filings contain information regarding Comu's finances that was either omitted or modified in his Bankruptcy Filings.[72]

26.     Comu filed his Bankruptcy Filings on January 15, 2010.[73]  By executing and filing his Schedules, Comu "declare[d] under penalty of perjury that I have read the foregoing summary and schedule … and that they are true and correct to the best of my knowledge, information, and belief."[74]  Comu also declared, with regard to his SOFA, "under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and attachments thereto and that they are true and correct."[75]

---

[69]     Bankr. Doc. No. 1 at 6, 8.
[70]     Bankr. Doc. No. 4; Bankr. Doc. No. 7.
[71]     KLM Ex. 312 (attaching Draft Bankruptcy Filings).
[72]     *See infra* Section B(2).
[73]     JPTO Stip. Fact ¶ 12; *see also* Trustee Ex. 94 (Schedules); Trustee Ex. 95 (SOFA).
[74]     Trustee Ex. 94 at 22.
[75]     Trustee Ex. 95 at 8.

27.     The Creditors Meeting, at which Comu was questioned under oath by his own counsel, Trustee, and Plaintiffs' Prior Counsel, was held on February 9, 2010.[76]  Comu verified, in response to prompting by his own counsel, that his Bankruptcy Filings were true and correct.[77]

28.     Plaintiffs' Prior Counsel stated at the Creditors Meeting that he intended to file an objection to discharge on behalf of Plaintiffs on the basis of fraud.[78]  Defendants rely on this statement as evidence that Plaintiffs were aware of Comu's fraud prior to the Discharge Objection Deadline.[79]

29.     After noting certain inconsistencies in Comu's testimony and omissions in his Bankruptcy Filings, including the omission of information regarding Phyllis's separate property,[80] Trustee suggested at the Creditors Meeting that Comu amend his Bankruptcy Filings.[81]  Trustee also asked Comu to provide a "list of everything your wife owns that you consider to be her separate property."[82]

30.     On February 10, 2010, Comu emailed a memorandum to his bankruptcy counsel with a subject line, "Chapter 7—Phyllis Comu," listing certain assets (the "Phyllis Memo").[83]  As discussed *infra*, the Phyllis Memo contained information regarding Comu's finances that was omitted or modified in his Bankruptcy Filings.[84]

---

[76]     *See generally* Def. Ex. 4 (unofficial transcript of Creditors Meeting).
[77]     Def. Ex. 4 at 3.
[78]     Def. Ex. 4 at 19.
[79]     *See Defendants' Pretrial Brief*, filed March 4, 2014, at 2 (Adv. Doc. No. 128) (herein, "Def. Pretrial Br.").
[80]     Def. Ex. 4 at 24 (*Comu*: "This is my wife's account at Compass Bank. This is not my account." *Trustee*: "Mr. Comu, I asked you specifically does your wife own anything that you did not list in your schedules.  Does she have anything that you consider to be her separate property and you said No." *Comu*:  "She has her own personal belongings and she has her own personal banking account."  *Trustee*: "[S]he's not employed?"  *Comu*: "She is not employed."  *Trustee*: "Where does she get the money for her personal bank account?"  *Comu*: "She gets it from either money that I give her or money that she gets from family.").
[81]     Def. Ex. 4 at 28–29.
[82]     Def. Ex. 4 at 25; Def. Ex. 5 at 3.
[83]     KLM Ex. 126 (attaching Phyllis Memo).
[84]     *See infra* Section B(1)–(2).

31.     Comu never amended his Bankruptcy Filings.

32.     On February 11, 2010, Plaintiffs timely filed proofs of claim in the Bankruptcy Case, seeking to recover a distribution in respect of the New York Judgment from the bankruptcy estate.[85]

33.     Trustee's internal notes related to the Bankruptcy Case (the "Trustee's Notes")[86] indicate that in response to Trustee's request, Comu's counsel delivered certain documents to Trustee in March of 2010 that bear upon Comu's assets and business interests (the "March 2010 Production").[87]  Although he never amended his Bankruptcy Filings to reflect new information included in the March 2010 Production, Comu claims that the March 2010 Production included documents that put Plaintiffs "on inquiry" notice of Comu's ongoing fraud.[88]

34.     On March 8, 2010, Comu delivered to Trustee a check for $12,000 in bank account funds that were not disclosed in Comu's Bankruptcy Filings.[89]

35.     Despite having announced his intention to do so at the Creditors Meeting, Plaintiffs' Prior Counsel failed to file an objection to discharge before the Discharge Objection Date.  In the absence of objections from Trustee or creditors, Debtor was granted a discharge (the "Discharge") on April 14, 2010 (the "Discharge Date").[90]

**4.      The Adversary Proceeding**

36.     Plaintiffs filed this Adversary Proceeding on September 3, 2010.[91]  Comu filed three successive motions to dismiss between October 7, 2010 and March 24, 2011,[92] which this

---

[85]     JPTO Stip. Fact ¶ 11; *see also* Bankr. Claim No. 2-1 (KLM's claim for $2,003,945.84); Bankr. Claim No. 3-1 (KLE's claim for $199,811); Bankr. Claim No. 4-1 (Katz's claim for $75,508.22).

[86]     *See generally* Def. Ex. 5.

[87]     Def. Ex. 5 at 3.

[88]     *See, e.g.*, Debtor's Answer at 2–3.

[89]     Def. Ex. 5 at 3; *compare* Trustee Ex. 94 at 2.

[90]     JPTO Stip. Fact ¶ 13; *see also* Order Granting Discharge of Debtor (Bankr. Doc. No. 23).

[91]     *See* Adv. Doc. No. 1.

[92]     Adv. Doc. No. 5 (October 7, 2010); Adv. Doc. No. 12 (January 1, 2011); Adv. Doc. No. 24 (March 24, 2011).

court denied.[93] Comu filed the Debtor's Answer on December 7, 2012, in which he alleged, *inter alia*, the "Green Auto Merger," discussed *infra*,[94] "occurred post-petition"[95] — a statement Comu now stipulates was false.[96]

37.  Trustee filed the Trustee Complaint on September 5, 2012.[97] Defendants filed an answer to the Trustee Complaint on October 9, 2012 ("Defendants' Answer").[98] While Comu unequivocally maintained in his Schedules and at the Creditors Meeting that TBG is owned 99% by Brown,[99] Defendant's Answer contradicts those statements by alleging on behalf of Brown that 99% of TBG "is actually owned by a United Kingdom Corporation named Brown and Lampe, PLC."[100]

38.  Plaintiffs filed a *Motion for Leave to File Third Amended Complaint* on October 29, 2012 (the "Motion for Leave"),[101] seeking to pursue claims directly against Comu-related entities TKY Trust ("TKY Trust"), DAPTCO Trust ("DAPTCO Trust," together with TKY Trust, the "Canadian Trusts"), Marathon Management Limited Company ("Marathon Limited"), and Regus Advisors, Inc. ("Regus Advisors").[102] The court denied Plaintiffs' Motion for Leave on November 2, 2012, without prejudice to Trustee's right to assert such claims.[103]

---

[93]  Adv. Doc. No. 10; Adv. Doc. No. 17; Adv. Doc. No. 76.
[94]  *See infra* Section D.
[95]  Debtor's Answer ¶ 9.
[96]  JPTO Stip. Fact ¶ 33 ("The effective date of the Green Auto Merger was November 5, 2009."); *see also* JPTO Stip. Fact ¶¶ 23–34 (setting forth details of 2009 Green Auto Merger).
[97]  Adv. Doc. 53.
[98]  *See Answer by Defendant and All Third-Party Defendants to Trustee's Complaint in Intervention*, filed December 7, 2013 (Adv. Doc. No. 64).
[99]  Def. Ex. 4 at 6 ("Mr. Bernard Brown owns 99% of the company."); *see also* JPTO Stip. Fact ¶ 14; Trustee Ex. 94 at 4.
[100]  Defendants' Answer ¶ 4.
[101]  Adv. Doc. No. 68.
[102]  Adv. Doc. No. 62.
[103]  Adv. Doc. No. 71.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 15 OF 141**

39. On June 21, 2013, Greenberg Traurig, LLP replaced Plaintiffs' Prior Counsel as counsel for Plaintiffs.[104] On July 19, 2013, Plaintiffs commenced an action against Plaintiffs' Prior Counsel (the "Malpractice Action"),[105] alleging negligence in the failure to timely object to Comu's Discharge on behalf of Plaintiffs, because the New York Judgment was non-dischargeable under Bankruptcy Code Section 523(a)(2)(A) as a debt for money obtained by fraud.[106] At trial, Defendants admitted into evidence as a defense exhibit Plaintiffs' Petition filed in the Malpractice Action.[107]

40. In 2013, Comu made available to Plaintiffs certain electronic discovery (the "2013 Electronic Production"),[108] which was collected at Plaintiffs' expense, and which contained previously-undisclosed documents and information relevant to Comu's pre-petition assets and business activities, as well as asset transfers made before and after the Petition Date and the Discharge Date.[109]

41. In early December, 2013, the parties negotiated an agreed restraining order prohibiting Defendants and their agents or affiliates from selling or transferring any stock of

---

[104] *See* Bankr. Doc. No. 58; Adv. Doc. No. 88; Adv. Doc. No. 91.

[105] *See generally* Def. Ex. 6. The Malpractice Action is styled *Ronald Katz, et al v. Emil Lippe, Jr., et al*, Cause No. DC-13-0782, filed in the E-101st Judicial District Court of Dallas, County.

[106] Def. Ex. 6 at 1–2. In the Malpractice Action, Plaintiffs seek damages exceeding $1,000,000 resulting from the "potential loss of the value" of the New York Judgment as "a result of increased difficulties in collecting" the Judgment Debt, and due to "significant additional attorneys' fees and litigation expenses" incurred by Plaintiffs in prosecuting their revocation claims in this Adversary Proceeding. Def. Ex. 6 at 3–6. Plaintiffs allege a timely objection to Comu's Discharge "would have permitted Plaintiffs to immediately pursue collection of the damages awarded" in the New York Judgment, "would have prohibited Comu from transferring assets during the pendency of the [Bankruptcy Case] or the Adversary," and "effectively creat[ed] a more than two-year window of opportunity for Comu to secret substantial assets in new entities in other states and abroad." Def. Ex. 6 at 4.

[107] Def. Ex. 6 at 1–6 (*Plaintiffs' Original Petition and Request for Disclosure*, filed on July 19, 2013 in the Malpractice Action).

[108] Exhibits admitted by Plaintiffs at trial that reflect bates references at the bottom right corner (*i.e.*, "12345_6"), were produced as part of the 2013 Electronic Production.

[109] Testimony from Katz and Trustee confirms that many details regarding Comu's pre-petition assets and pre-discharge transfers were learned only after the 2013 Electronic Production.

Green Automotive Company Corporation ("Green Auto") pending trial.[110]   On December 20, 2013, the court entered an *Agreed Temporary Restraining Order* (the "Agreed TRO").[111]   On January 3, 2014, the court entered an order extending the Agreed TRO through trial.[112]

42.    Trial commenced March 17, 2014, and concluded March 21, 2014, at which point the bankruptcy court issued a bench ruling (the "Bench Ruling") in favor of Plaintiffs and Trustee, and against Defendants as follows:

> (a) revocation of discharge shall be ordered as to the Debtor, pursuant to Section 727(d)(1) & (2) of the Bankruptcy Code, based on fraud and concealment of assets of which Plaintiffs (and Trustee) were unaware until after the granting of discharge, and also based on Debtors acquiring or becoming entitled to acquire property that was or would be property of the estate and knowingly and fraudulently failing to report, deliver and surrender it [to Trustee]; (b) The Barclay Group, Inc. and Sunset Pacific are the alter egos of Debtor and their veil should be pierced; (c) Debtor should turnover previously undisclosed Turkish Bank Account and the equity/asset-control of The Barclay Group, Inc. and Sunset Pacific to Trustee; (d) parties may submit post-trial briefing regarding possible monetary damages to the estate. Counsel will upload an amended restraining order and injunction, as soon as possible, to protect dissipation of Green Auto stock or other assets of The Barclay Group, Inc. and Sunset Pacific.[113]

---

[110]    KLM Ex. 346 (December 4, 2013 email from Comu's counsel to Trustee's counsel re: Agreed TRO: "CJ and I think we can agree to that.").

[111]    The Agreed TRO ordered as follows:

> Defendants, and their respective officers, agents, servants, employees, attorneys, affiliates, or other persons acting in concert or participating with them (including, but not limited to, the DAPTCO Trust, the TKY Trust and Regus Advisors, Inc.) who receive actual notice of this Agreed Temporary Restraining Order by personal service or otherwise, be and are hereby enjoined from (1) selling, transferring, exchanging or encumbering any shares of stock of Green Automotive Company Corporation (f/k/a Ganas Corp.; "Green Automotive") that has been issued or sold to one or more of the Defendants (the "Green Auto Stock"); (2) entering into any agreement to sell, transfer, exchange or encumber the Green Auto Stock; and (3) spending, transferring or encumbering any proceeds received by any one of the Defendants from the prior sale or sales of Green Auto Stock.

Adv. Doc. No. 111 at 2.

[112]    Adv. Doc. No. 116 at 2.

[113]    *See* Clerk's Docket Entry in Adversary Proceeding, entered March 25, 2014.

43. On March 21, 2014, the court also issued from the Bench certain findings of fact (the "Bench Findings") and conclusions of law (the "Bench Conclusions"),[114] which are individually incorporated below.

44. On March 28, 2014, Trustee filed *Trustee's Post-Trial Brief in Support of Recovery Under 11 U.S.C. § 542(a)* (the "Trustee's Damages Brief"),[115] in which Trustee requests an award of joint and several damages against Comu, TBG and Sunset Pacific for the value of assets that have been sold or otherwise dissipated since the Petition Date.[116] By Trustee's calculation, Trustee is entitled to a judgment for $4,084,944.95, which reflects the proceeds from the sale of approximately 16.2 million shares of Green Auto stock since the Petition Date.[117] Alternatively, Trustee seeks $833,160.00 under the equitable doctrine of unjust enrichment.[118]

45. On April 4, 2014, the court entered an *Extended Temporary Restraining Order and Mandatory Injunction* (the "Mandatory Injunction"),[119] which the court found to be necessary to preserve and protect property of the bankruptcy estate, and to prevent irreparable harm to the Plaintiffs and the Debtor's bankruptcy estate, pending entry of the court's written findings of fact and conclusions of law and the court's Judgment.[120] The Mandatory Injunction applies to Defendants and their agents and affiliates, including the Canadian Trusts, Marathon Management, Inc. ("Marathon Inc."), Continental Partnership, Inc. ("CPI"), Continental

---

[114] Citations to the Bench Findings and the Bench Conclusions herein are references to the FTR recording made on March 21, 2014.
[115] Adv. Doc. No. 141.
[116] Trustee's Damages Brief at 2.
[117] Trustee's Damages Brief at 3, 5.
[118] Trustee's Damages Brief at 4–5.
[119] Adv. Doc. No. 142.
[120] Mandatory Injunction at 2. The Mandatory Injunction prohibits the "selling, transferring, exchanging or encumbering any non-exempt assets," "entering into any agreement to sell, transfer, exchange or encumber any non-exempt assets," and "spending, transferring or encumbering any proceeds received by any one of the Defendants from the prior sale or sales of any non-exempt assets" of Defendants Comu, Phyllis, Sunset Pacific, and TBG. *Id.* at 3. The Mandatory Injunction further ordered the turnover of certain assets and account records on or before April 14, 2014. *Id.* at 3–6.

Investments Holding Company ("CIHC"), West Point Advisors, Inc. ("WPA"), EuroCap Investments Plc (UK) ("EuroCap"), and Regus Advisors.[121]

46.     On April 23, 2014, Trustee filed a report on the status of Comu's compliance with the Mandatory Injunction (the "Injunction Status Report").[122]

### B.     COMU OBTAINED A DISCHARGE THROUGH FRAUD AND BAD FAITH

47.     Comu obtained a Discharge in his Bankruptcy Case through widespread fraud, including the deliberate concealment of assets and significant and numerous false oaths.[123]

48.     In particular, Comu's Bankruptcy Filings, which were never amended,[124] reflect inaccurate disclosures regarding Comu's employment circumstances, compensation and professional activities,[125] and inaccurate information about his assets and income and that of his wife, Phyllis.[126] Comu's Bankruptcy Filings also misrepresented or failed to schedule numerous pre-petition interests and assets, including but not limited to Comu's true interests in Sunset Pacific and TBG,[127] various equity holdings,[128] a country club membership,[129] Turkish Bank accounts,[130] and ownership and/or control of numerous entities.[131]

49.     Comu received or became entitled to receive substantial assets after the Petition Date, ***from or related to his undisclosed pre-petition interests and business activities***, none of which were turned over to Trustee before the Discharge Date.

---

[121]     Mandatory Injunction at 3.
[122]     *Trustee's Status Report of Compliance with Extended Temporary Restraining Order and Mandatory Injunction*, filed April 23, 2014 (Adv. Doc. No. 144) (cited herein as "Inj. Status Report").
[123]     Bench Findings at 4:20.
[124]     Bench Findings at 4:20.
[125]     Bench Findings at 4:25.
[126]     Bench Findings at 4:22.
[127]     Bench Findings at 4:23.
[128]     Bench Findings at 4:22-4:23.
[129]     Bench Findings at 4:25.
[130]     Bench Findings 4:22.
[131]     Bench Findings at 4:26.

50.     The false oaths and undisclosed assets described herein are "material" because they relate to Comu's business transactions and estate, or they concern the discovery of assets, business dealings, or the existence and disposition of Comu's property.

51.     There is ample evidence that Plaintiffs and Trustee did not know the true facts pertaining to Comu's false oaths and undisclosed assets until after the Discharge Date,[132] and that Plaintiffs did not know about Comu's fraud prior to the Discharge Objection Deadline.[133] To the extent Comu disclosed some information before Discharge, such disclosure was misleading because it was inaccurate, incomplete, and/or untimely.  Comu's ongoing subterfuge hindered any reasonable effort by Trustee or creditors to discover the truth about Comu's financial condition and resources before the Discharge Date.

## 1.     Comu Deliberately Fabricated Debts and Liabilities.

52.     Comu's Bankruptcy Filings are replete with errors and omissions, ranging from small to large, and in the aggregate, are utterly incomplete and misleading.  Below is a summary of some of the errors and omissions.  Some of the details described herein present a complex tangled web, and, moreover, relate to a *postpetition* time period.  However, these details ultimately proved relevant in showing that there were various *prepetition* interests or expectations of value that Comu undeniably had, *as of the Petition Date,* that went improperly undisclosed in the Bankruptcy Case and, thus, the bankruptcy estate was deprived of income and assets that should have been available for creditors.

53.     In Schedule J, Comu attested under oath that his "current expenditures," calculated on an average monthly basis, were $4,950, which included $625.00 per month for

---

[132]     Bench Findings at 4:26-4:27.
[133]     Bench Findings at 4:20.

"Property taxes."[134] Because Comu has disclosed no other properties subject to property taxes, this disclosure apparently refers to Comu's Paladium Residence, which Comu claims is exempt from creditor claims under Texas homestead law.[135] This was a knowingly false oath because, for tax years 2009 and 2010, Comu actually paid the property taxes for the Paladium Residence out of TBG bank accounts allegedly with TBG assets.[136] When confronted at trial with documentary evidence of these tax payments, Comu claimed, for the first time since the Petition Date, that they were "loans" from TBG. Yet Comu did not list any debts to TBG in his Schedules, and TBG did not file a claim in the Bankruptcy Case.

54. In Schedule F, Comu claimed debts totaling $6,211,868.71,[137] which he verified at the Creditors Meeting in response to prompting by his attorney.[138]

55. The claims register in the Bankruptcy Case reflects total creditor claims of $2,394,773.21—about 38% of Comu's scheduled debts.[139] Plaintiffs' claims constitute at least 95% of creditor claims in the Bankruptcy Case.[140]

56. Other than Plaintiffs, seven creditors filed claims in the Bankruptcy Case, which together total $115,508.05 (84% of which is credit card debt).[141]

---

[134] Trustee Ex. 94 at 19, § 18. Over the course of this Bankruptcy Case, this alleged monthly expenditure totals over $30,000.

[135] Trustee Ex. 94 at 1, 8.

[136] In early 2009, Comu paid the 2009 Dallas County property taxes for the Paladium Residence directly out of TBG's bank account. *Compare* KLM Ex. 371 at 1 ($6,988.80 taxes paid January 31, 2009), *with* Trustee Ex. 24 at 1 ($6,988.80 check to David Childs Tax Assessor). And on December 17, 2009—two weeks before the Petition Date—Comu again paid property taxes for the Paladium Residence out of TBG's account, in a transaction described in the TBG ledger Comu produced to the Trustee as a "Fee Expense." *Compare* KLM Ex. 371 at 1 ($7483.11 taxes paid December 21, 2009), *with* Trustee Ex. 24 at 2 ($7,483.11 payment made for "Fee Expenses" on December 17, 2009), *and* KLM Ex. 18 at 2.

[137] Trustee Ex. 94 at 15.

[138] Def. Ex. 4 at 2.

[139] *See* Claims No. 1-1 through 10-1.

[140] JPTO Stip. Fact ¶ 11.

57.     The vast majority of debt listed in Schedule F relates to judgments and potential claims ($6,011,407.02),[142] which is consistent with Comu's testimony that he filed bankruptcy due to "large judgments."[143]   Comu did not indicate, as required in Schedule F, that any of these judgments and claims were contingent, unliquidated, or disputed.[144]   Plaintiffs are the only judgment creditors to file claims in the Bankruptcy Case.

58.     The Debts Memo reflects numerous debts and credit accounts that were not listed in Comu's Bankruptcy Filings.[145]

59.     Comu was required in Schedule H to identify Phyllis as a codebtor, which he failed to do,[146] and at the Creditors Meeting he denied that Phyllis was liable on any of the debts in his Schedules.[147]   Comu has not alleged that any creditor has agreed to pursue satisfaction of its debt solely from Comu's separate property (nor is there evidence of any such agreement). Comu's expenses – such as the Comus' December, 2009 Caribbean cruise – before and after the Petition Date benefitted both Comu and Phyllis.[148]

---

[141]     *See* Claim No. 1-1 ($350, claim filed by Emil Lippe for sanctions awarded in the Collection Action), Claim No. 5-1 ($27,825.06, Citibank credit card debt), Claim No. 6-1 ($3,119.31, Capital One Bank credit card debt), Claim No. 7-1 ($2,464.35, Capital One Bank credit card debt), Claim No. 8-1 ($20,288.03, Wells Fargo Bank credit card debt), Claim No. 9-1 ($43,372.70, JP Morgan Chase Bank credit card debt), and Claim No. 10-1 ($18,088.60, claim for attorneys' fees by Glast, Phillips & Murray).

[142]     Trustee Ex. 94 at 12–15.

[143]     Def. Ex. 4 at 2 (Comu citing "large judgments" as the reason for his bankruptcy).

[144]     Trustee Ex. 94 at 12–15.   The purpose of identifying whether debts and liabilities in Schedule F are "disputed, unliquidated or contingent" is so that trustee and creditors can better understand whether the Debtor actually owes all the debts.   By not marking those columns, Comu, to some extent, misled Trustee and creditors into believing that he was insolvent, and that it would not greatly benefit any single creditor to spend money bringing assets into the estate.

[145]     *Compare* KLM Ex. 310 at 2–4, *with* Trustee Ex. 94.   These include a potential lawsuit by Titan Securities, Inc. ($2,000,000), a Capital One Visa ($981), an American Express account ($53,726), a debt to Debt Resolution Partners ($38,000), a potential claim by attorney Robert Clark ($25,000), and Wells Fargo accounts held in the name of Sunset Pacific and Marathon, Inc. but under the control of Comu.

[146]     Trustee Ex. 94 at 17 ("If the debtor resides or resided in a community property state … (including … Texas…) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse.").

[147]     Def. Ex. 4 at 28–29.

[148]     *See* Trustee Ex. 94 at 19.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                                          **PAGE 22 OF 141**

60.     Schedule F lists a $27,563 debt to LVNV Funding that is duplicated as a $26,991.69 debt to Citibank (both accounts ending *7618).[149]  Both of these entries relate to a single Citibank account listed in the Debts Memo.[150]

61.     Schedule F lists a judgment held by Anne F. McCaughey for $1,960,000,[151] which Comu's Debts Memo acknowledges is a duplicate of Plaintiffs' New York Judgment.[152]

62.     Schedule F also lists two civil judgments in favor of AJW Partners, LLC ("AJW") – respectively dated August 6, 2002 ($1,234,766), and July 19, 2007 ($672,696) (the "AJW Judgments").[153]  No claims pertaining to the AJW Judgments were filed in the Bankruptcy Case.

63.     The first AJW Judgment refers to a 2001 federal lawsuit in the Southern District of New York (the "First AJW Suit") filed by AJW against Airtech Group, Inc. ("Airtech").[154]  Although Comu was Airtech's CEO and Chairman at times relevant to the case,[155] he was never a party to the First AJW Suit.[156]   The August 6, 2002 judgment to which Comu refers in Schedule F was entered by default only against Airtech—the sole defendant in the First AJW Suit.[157]

---

[149]      Trustee Ex. 94 at 13–14.
[150]      KLM Ex. 310 at 2.
[151]      Trustee Ex. 94 at 12.
[152]      KLM Ex. 310 at 4.  McCaughey is an attorney at Wachtel & Masyr, LLP, counsel for Plaintiffs in New York.
[153]      Trustee Ex. 94 at 12.
[154]      The First AJW Suit is styled *New Millennium Capital Partners II, LLC and AJW Partners, LLC v. Airtech Group, Inc.*, Civil Action No. 1:01-CV-10841-RCC, filed in the United States District Court for the Southern District of New York.  KLM Ex. 342.  The complete docket sheet for the First AJW Suit is available on Pacer.  Plaintiffs ask Court to take judicial notice of the pleadings and procedural history in the First AJW Suit.  *See* FED. R. EVID. 201.
[155]      Def. Ex. 4 at 22; *see also* KLM Ex. 145 at 24.
[156]      KLM Ex. 342 (docket sheet).
[157]      KLM Ex. 342 at 3 (docket entry reflecting default judgment that "plaintiff New Millenium Capital Partners II, L.P. recover of the defendant [Airtech] the amount of $659,424, plus $13,122.20, representing per diem interest at the rate of $127.40 from 4/25/02 through the date of judgment, plus $150 in costs, for a total of $672,696.20, with interest thereon at the rate of 1.82 percent, as provided by 28 USC 1961.  The plaintiff AJW Partners, LLC shall recover of the defendant [Airtech] the amount of $1,210,423, plus $24,343.02, representing per diem interest at the rate of $236.34 from 4/25/02 through the date of judgment, for a total of $1,234,766.02.").

64.     The second AJW Judgment listed in Schedule F[158] refers to a 2006 lawsuit in the Northern District of Texas (the "Second AJW Suit"), in which AJW pursued successor liability claims against Humitech International Group Inc. ("Humitech") arising from the First AJW Suit.[159]   At times relevant to the Second AJW Suit, Comu was operating Humitech as its Chairman and CEO.[160]   Although Comu was sued individually in the Second AJW Suit, the July 19, 2007 judgment to which Schedules F refers was entered against Humitech only, and makes no rulings regarding the claims against Comu.[161]

65.     Comu was fully aware he had no liability under either AJW Judgment.   On October 23, 2008, Comu executed a settlement agreement[162] resulting in the agreed dismissal of the Second AJW Suit with prejudice,[163] in connection with which the parties executed a financing agreement[164] related to SUN Sports & Entertainment, Inc. ("SUN Sports") (an entity Comu owned and operated as CEO until mid-2009).[165]

---

[158]     Trustee Ex. 94 at 12.

[159]     The Second AJW Suit is styled *New Millennium Capital Partners II, LLC and AJW Partners, LLC v. Humitech International Group Inc. and CJ Comu*, Case No. 3:06-cv-01180-L, filed in the U.S. District Court for the Northern District of Texas (Hon. Sam Lindsay)..  *See* KLM Ex. 343 (docket sheet). The docket sheet and court filings in the Second AJW Suit are available online via Pacer.  The court may and does take judicial notice of the pleadings and procedural history in the Second AJW Suit.  FED. R. EVID. 201.

[160]     Second AJW Suit, Doc. No. 18 at 4; *see also* Def. Ex. 4 at 8; KLM Ex. 145 at 24.

[161]     KLM Ex. 11 at 22; *see also* Second AJW Suit, Doc. No. 20 (entering judgment that "Humitech International Group, Inc., pay damages to Plaintiff AJW Partners, LLC in the amount of $1,234,76 and post judgment interest at the applicable federal rate from the date of judgment until the judgment is paid; that Humitech International Group, Inc., pay damages to Plaintiff New Millennium Capital Partners II, LLC, in the amount of $672,696.").

[162]     KLM Ex. 344 at 10 (*Settlement Agreement and Mutual Release*, by and between Comu, New Millennium Capital Partners II, LLC, AJW Partners, LLC, AJW Offshore Ltd, AJW Qualified Partners, LLC, and SUN Sports, dated October 23, 2008).

[163]     *See* KLM Ex. 9 (*Notice of Settlement*, filed September 9, 2008 in the Second AJW Suit); KLM Ex. 10 (*Stipulation of Dismissal*, filed October 24, 2008 in the Second AJW Suit).

[164]     KLM Ex. 235 at 33152–33152_25 (*Financing Agreement* by and between SUN Sports, AJW Partners, LLC, AJW Master Fund, Ltd, and New Millennium Capital Partners II, LLC, dated September 19, 2008).

[165]     Def. Ex. 4 at 2; *see also* KLM Ex. 145 at 24.  SUN Sports shared the Ratliff Address with Sunset Pacific and other TBG affiliates. *See, e.g.*, KLM Ex. 129 at 21.

66.     Based on the above, the AJW Judgments were improperly included in Schedule F because Comu had no personal liability related to them.

67.     Even if Comu believed he had any personal liability arising from the AJW Judgments, in Schedule H he denied under oath the existence of "any person or entity … that is also liable on any debts listed by the debtor in the schedules of creditors."[166]  Because Airtech and Humitech were held liable in the AJW Judgments, Comu either misrepresented his debts in Schedule F, or he omitted codebtors in Schedule H.[167]

68.     Comu's claim that the AJW Judgments constituted personal debts suggests a specific and willful intent to avoid the claims of Plaintiffs (and Katz in particular).   On November 25, 2008, Comu executed two agreements by which AJW assigned its rights with regard to both AJW Judgments to SUN Sports.[168]  On January 12, 2009, Comu caused SUN Sports to file a federal lawsuit in the Northern District of Texas (the "SUN Sports Suit")[169] against KLE and Katz individually seeking to enforce the AJW Judgments against them (even though neither KLE nor Katz was a party to either AJW Suit).[170]  The SUN Sports Suit against Katz and KLE was dismissed without prejudice on November 3, 2010 "for failure to prosecute or for failure to follow orders of the Court,"[171] and thus was still pending on the Petition Date.[172]

---

[166]    Trustee Ex. 94 at 17.

[167]    Comu also failed to identify codebtors with regard to credit card debt, as reflected in the Debts Memo. *See* KLM Ex. 310 at 2 (identifying debt accounts for which Comu is a "guarantor").

[168]    *See* KLM Ex. 11 at 20 (*ASSIGNMENT – Airtech*, by and between AJW Partners, LLC, New Millennium Capital Partners II, LP, and SUN Sports, dated November 25, 2008); *id.* at 21 (*ASSIGNMENT – Humitech*, by and between AJW Partners, LLC, New Millennium Capital Partners II, LP, and SUN Sports, dated November 25, 2008).

[169]    The records of the SUN Sports Suit are available on Pacer.  *See SUN Sports & Entertainment Inc. v. Humitech International Group, Inc., Ronald Katz, and King Louie Enterprises LLC*, Case No. 3:09-cv-00063-O, in the U.S. District Court for the Northern District of Texas.  The court may and does take judicial notice of the pleadings and procedural history in the SUN Sports Suit.  FED. R. EVID. 201.

[170]    *See generally* KLM Ex. 11; *id.* at 6–8.  SUN Sports was represented in the SUN Sports Suit by Lloyd Ward, an attorney who has assisted Comu with other business entities.  *See, e.g.*, KLM Ex. 138 at 2–3 (Grey Point Partners).

[171]    SUN Sports Suit, Doc. No. 16.

## 2.    Comu Concealed Assets and Income.

69.    Comu did not disclose any assets or interests in foreign accounts or businesses in his Bankruptcy Filings.  Comu was asked at the Creditors Meeting whether he had "any brokerage accounts, bank accounts, or depository accounts of any sort outside the borders of the United States," Comu responded: "No, sir."[173]  When asked specifically at his 2013 deposition whether he had "any account at Turkish Bank," Comu responded: "No."[174]

70.    Contrary to the above, Comu has held at least two accounts at Turkish Bank since before the Petition Date (the "Turkish Bank Accounts").[175]  Comu admitted the existence of the Turkish Bank Accounts only when confronted at trial with documents from the 2013 Electronic Production.[176]  Comu never scheduled the Turkish Bank Accounts,[177] and at the time of trial, he had not produced any statements or evidence of the total funds in the Turkish Bank Accounts.[178]

71.    Trustee testified that she learned of the Turkish Bank Accounts only at trial, and that if she had known earlier of Comu's concealment of the accounts, she would have joined Plaintiffs' discharge-revocation claims.[179]

---

[172]    If legitimate, the SUN Sports Suit was a potential source of recovery for Comu, who owned SUN Sports.  Def. Ex. 4 at 2.  Comu did not disclose the SUN Sports Suit in his Bankruptcy Filings, and testified at the Creditors Meeting that there were no claims or lawsuits in which he might receive any recovery.  Def. Ex. 4 at 4.

[173]    Def. Ex. 4 at 13.

[174]    KLM Ex. 345 at 2.

[175]    KLM Ex. 320 at 1 (August 4, 2009 email from Comu to Turkish Bank (UK) in London, to "advise of a Change in Address for **both My Account and Sunset Pacific LP**" to the 18208 Preston Address shared by Sunset Pacific and TBG) (emphasis added).

[176]    Comu claimed at trial that he had previously produced statements for the Turkish Bank Accounts —which counsel for both Plaintiffs and Trustee denied.  At the next trial day, Comu's counsel informed the court that he had reviewed his file, and confirmed that no information had previously been produced about the Turkish Bank Accounts.  Comu then produced to the court a one-page email appearing to reflect a snapshot of either a balance or accrued interest for a six-month period from 2012 in one Turkish Bank account held in Comu's name, but which did not disclose any information about account holdings or transfers.  *See* Def. Ex. 10.

[177]    Bench Findings at 4:22.

[178]    *Id.*

[179]    As set forth *infra*, Comu controlled and utilized numerous other foreign bank accounts – including at least one additional Turkish Bank account (related to CIHC) – after the Petition Date to conceal and dissipate cash.  *See infra* Section E(5).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 26 OF 141**

72.     Comu's Bankruptcy Filings omit 2008 and 2009 income from various sources,[180] including $30,000 received from SUN Sports in 2009.[181]   Comu's Schedules also omit 2008 income ($18,461.52) Comu received from Odyssey One, which was included in the Undisclosed Tax Documents forwarded to Comu's bankruptcy counsel before the Petition Date.[182]

73.     Comu's Schedules deliberately underestimate his projected 2010 income.  In his Draft Bankruptcy Filings, Comu "projected" between $5,000 and $10,000 in monthly income from professional fees and "stock equity,"[183] but Comu's Schedule I estimated income of only $5,000 per month, and only from monthly "gross wages, salary, and commissions."[184]

74.     Comu failed to include any information regarding Phyllis's income or occupation as required in Schedule I.[185]

75.     Comu's Bankruptcy Filings and testimony at the Creditors Meeting failed to disclose Comu's pre-petition equity interest in GANAS, Corp. ("GANAS") and Green Auto, which was acquired in November, 2009.[186]

76.     Comu claimed in his Schedules that he owns no equitable or future interests,[187] or any interests in any trusts.[188]  As discussed *infra*, Comu now admits that he had at least the right to receive millions shares of stock in Green Automotive Company Corporation ("Green Auto"),

---

[180]     For example, Comu claimed in his Schedules that TBG's 105,000 shares of stock in Artfest International Inc. ("Artfest") was worth $0 (Trustee Ex. 94 at 4), and at the Creditors Meeting, Comu denied having any income from ArtFest (Def. Ex. 4 at 9).  Artfest stock held by TBG was sold in 2008 for $46,844.62.  KLM 129 at 28–29.

[181]     Def. Ex. 4 at 11 (admitting Comu received "around $30,000" from SUN Sports in 2009).

[182]     KLM Ex. 231 at 1–2; *see also* KLM Ex. 129 at 21, 23.

[183]     Comu's Draft Bankruptcy Filings "projected" his monthly income to include "Consulting/Advisory Services@ $5,000/month" and "Monthly (Stock Equity) Earned in Consulting & Advisory Services@ $5,000/month," which "can vary based on business from $5,000/month to $10,000/month."  KLM Ex. 312 at 7.

[184]     Trustee Ex. 94 at 18.

[185]     Trustee Ex. 94 at 18 ("The column labeled 'Spouse' must be completed … by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.").

[186]     *See infra* Section D; *see also* Bench Findings at 4:23-4:25.

[187]     Trustee Ex. 94 at 5, § 19.

[188]     Trustee Ex. 94 at 5, § 20.

which were in fact received in 2010.[189] Comu also knew when he filed his Schedules that he was (and is) a beneficiary of TKY Trust, which Comu personally established in late 2009.[190]

77. At the Creditors Meeting, Comu denied having signatory authority for any depository accounts held by any entity.[191] Contrary to this testimony, Comu had signatory authority over, and controlled, bank accounts held by TBG,[192] Marathon Management,[193] and Sunset Pacific,[194] among others (in addition to credit accounts for these entities).[195]

78. Comu failed to schedule numerous assets held by Phyllis—including a Compass Bank account that earned $1,408 in interest alone in 2008[196]—and has claimed that all assets held by Phyllis (*e.g.*, in Sunset Pacific) are her sole separate property.[197] Phyllis and Comu have at all times relevant to the Bankruptcy Case been married and filed joint tax returns,[198] and

---

[189]    *See infra* Section D, E(1)–(2).

[190]    Trustee Ex. 27 at 1–2; *see* JPTO Stip. Fact ¶ 38; *see also infra* Section E(4)(a).

[191]    Def. Ex. 4 at 13.

[192]    *See infra* Section C(3), E(3)(b); *see also, e.g.*, KLM Ex. 18–19; KLM Ex. 85–86, 88–89; KLM Ex. 96; KLM Ex. 129 at 26.

[193]    *See infra* Section C(1); *see also, e.g.*, KLM Ex. 129 at 1; KLM Ex. 181; KLM 301 at 2; KLM Ex. 349. As set forth below, "Marathon Management" herein refers to and includes three *dba*s of the same entity—Marathon Limited, Marathon Inc., and Marathon Management LLC ("Marathon LLC"). *See infra* ¶¶ 105, 107 & n.278, 288, 291.

[194]    *See infra* Section C(2); *see also, e.g.*, Def. Ex. 4 at 5 (admitting being a signor on Sunset Pacific accounts); KLM Ex. 107; KLM Ex. 310 at 2.

[195]    Comu's Debts Memo lists credit accounts held by various entities for which Comu was guarantor, but which were not disclosed in his Bankruptcy Filings. KLM Ex. 310 at 1.

[196]    KLM Ex. 129 at 3. The Trustee examined Comu about Phyllis's Compass account at the Creditors Meeting, but Comu only disclosed interest income from 2007—he did not disclose the 2008 interest income or balance. Def. Ex. 4 at 29 (Trustee: "[O]n the 2008 tax return I did not see the Compass Bank dividend or interest information…. I would like to know what happened to that Compass Bank account or whatever it was at Compass Bank.").

[197]    *See, e.g.*, Trustee Ex. 94 at 4.

[198]    Trustee Ex. 68; Trustee Ex. 69; Trustee Ex. 70.

Phyllis, who is not employed, relies on Comu for income.[199]  At the Creditors Meeting, Comu

omitted or was evasive about the details of Phyllis's assets.[200]

79.    Comu's Schedules failed to disclose or misrepresented other pre-petition assets

and accounts, including Immediatek stock acquired before the Petition Date that Comu sold in

2011,[201] an e*Trade Financial account,[202] a Wachovia Securities account that, as of January 23,

2009, held almost $50,000 in cash and stock,[203] Comu's Prestonwood Country Club

membership,[204] and various intellectual property interests[205]—including a "Mano-A-Mano"

trademark application,[206] which was relevant to Comu's ongoing business activities producing

MMA events,[207] and domain names[208] owned by Comu through a GoDaddy.com account.[209]

---

[199]    Def. Ex. 4 at 24 (Phyllis "is not employed"); *id.* at 12 (her sole activity outside the home is working with charities); *id.* at 24 (admitting the money in Phyllis's bank account comes at least in part from "money that [Comu] give[s] her").

[200]    When asked at the Creditors Meeting about Phyllis's assets, Comu responded, "Just her personal belongings. The car I suppose." Def. Ex. 4 at 12. Phyllis's car was not disclosed in Bankruptcy Filings. Comu also did not disclose in his Schedules a Compass Bank one-year CD for $20,000 that was held in Phyllis's name, and which was reflected in the Phyllis Memo. KLM Ex. 126 at 1. At the Creditors Meeting, Comu denied having any funds with Compass Bank. Def. Ex. 4 at 21.

[201]    Comu's 2011 personal tax return reflects Immediatek stock as a personal asset that was acquired in 2007 and sold in 2011. Trustee Ex. 70 at 7.

[202]    KLM Ex. 129 at 2.

[203]    KLM Ex. 129 at 12. Comu disclosed the Wachovia account in Schedule B (Trustee Ex. 94 at 2), but claimed it held only approximately $2,000, and has never explained where the balance went.

[204]    Bench Findings at 4:25; *see also generally* Trustee Ex. 94.

[205]    Comu alleged in his Schedules that he owned no interest in any intellectual property. Trustee Ex. 94 at 6 §22.

[206]    KLM Ex. 27.

[207]    *See, e.g.*, KLM Ex. 316 (January 18, 2010 email contacting potential investor regarding an MMA "investment/acquisition opportunity"); KLM Ex. 242 at 1 (discussing plans for a "March 2010 Mayweather/Pacquio TX Fight"); KLM Ex. 230 (attaching proposal for MMA event in Russia); KLM Ex. 356 at 1 (November 3, 2010 email mentioning "a new MMA Concept"); *see also* KLM Ex. 147 at 1; KLM Ex. 148; KLM Ex. 257; KLM Ex. 290; KLM Ex. 299; *see also* Def. Ex. 4 at 10, 26 (Comu's company, SUN Sports, produced MMA events).

[208]    Domain names are assets that must be disclosed in bankruptcy. *See, e.g.*, Freeman, *Internet Domain Name Security Issues: Why Debtors Can Grant Then and Lenders Can Take Them in This New Type of Hybrid Property*, 10 AM. BANKR. INST. L. REV. 853, 855 n.13 (Winter 2002). The right to use a domain name can have significant value, in much the same way that a unique telephone number can for a business. *Id.* at 857; *see also Schott v. McLear (In re Larry Koenig & Assoc., LLC)*, No. 01–12829, 03–1063, 2004 WL 3244582, at *6–7 (Bankr. M.D. La. March 31, 2004).

[209]    KLM Ex. 174 at 1 (sunorganization.com); KLM Ex. 179 at 1 (givpro.com & givspro.com); KLM Ex. 185 at 1 (thebarclaygroup.com); KLM Ex. 196 at 1 (renewal of same). Comu continued after the

### 3.    Comu's Undisclosed Interests in Lucrative and Ongoing Ventures.

80.    In Schedule B, Comu was required to itemize and disclose the value of his interests in any "partnerships or joint ventures."[210]   The only interests Comu listed were his alleged 1% interests in TBG (value "$0") and Sunset Pacific (value "unknown").[211]   When asked at the Creditors Meeting whether he was "organizing any new business venture now," Comu responded: "nothing specific."[212]

81.    Section 18 of Comu's SOFA required Comu to disclose

> the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case.[213]

82.    Comu listed four entities in SOFA § 18 – SUN Sports, TBG, Sunset Pacific, and Marathon Inc.—but provided no information about the nature of these businesses, or the beginning or ending dates of his involvement.[214]   As set forth *infra*, the above disclosures were material false oaths regarding Comu's substantial interests in TBG, Sunset Pacific, and Marathon Inc., all of which he has used as conduits in to fraudulently conceal and dissipate assets.[215]

---

Petition Date to renew or acquire domain names that are relevant to his pre-petition business activities. KLM Ex. 184 at 1 (ballsoffaith.com); KLM Ex. 189 at 1 (cjcomu.com and CJCLLC.com); KLM Ex. 190 at 1 (same); KLM Ex. 191 at 1 (regusadvisors.com); KLM Ex. 193 at 1 (same); KLM Ex. 205 at 1 (artofwarlive.com).   Shortly before the Petition Date, Comu was engaged in negotiation to purchase "artofwar.com," which would have been a valuable addition to his Mano-A-Mano trademark and MMA projects.  KLM Ex. 243; KLM Ex. 247.

[210]    Trustee Ex. 94 at 5 § 14.
[211]    Trustee Ex. 94 at 5 § 14.
[212]    Def. Ex. 4 at 13.
[213]    Trustee Ex. 95 at 5.
[214]    Trustee Ex. 95 at 5.
[215]    *See infra* Sections C(1)–(4) & E(1)–(3).

83. Comu concealed or made misleading disclosures about his ongoing affiliation with and equity stake in Global Energy Technology Group, Inc. ("GETG").[216] Comu's Schedules disclosed that Sunset Pacific owns 10 million shares of GETG stock, which Comu claimed to be worthless.[217] Comu claimed at the Creditors Meeting that he had no knowledge of GETG's assets,[218] and he was evasive about GETG's operations.[219]

84. Comu did not disclose his active positions as GETG principal and director.[220]

85. GETG conducts business with or through XL Biofuels, Inc. ("XL Biofuels"), Bio-Global Resources, Inc. ("Bio-Global"), and Biofuel Development Joint Venture (the "Biofuel JV") (together with GETG, the "GETG Entities").[221]

86. Comu did not disclose his active and ongoing business with the GETG Entities.[222] Comu was involved in GETG management[223] and soliciting investors for GETG Entities.[224]

---

[216] GETG, a Nevada corporation, is a renewable energy company with offices at 15950 Dallas Parkway, Suite 400 (the "15950 Dallas Parkway Address"). Def. Ex. 4 at 7; KLM Ex. 327 at 69116_5 (GETG is "is focused on acquiring high-growth firms, assets and properties in the Green & Renewable Energy industry"); *see also* KLM Ex. 321 at 60037. According to a summary dated January 15, 2010, the GETG Entities are involved in jatropha farming (a source of biodiesel). KLM Ex. 220 at 20206_9–10; *see also* KLM Ex. 102 at 1; KLM Ex. 119 at 9; KLM Ex. 260; KLM Ex. 289 at 54398_1–26.

[217] Trustee Ex. 94 at 4; Trustee Ex. 2 (GETG stock certificate dated December 11, 2008).

[218] Def. Ex. 4 at 8 ("I don't know what assets Global Energy specifically has.").

[219] When asked whether GETG was "operating," Comu responded, "In some regard, yes…. The doors are open, they have a phone." Def. Ex. 4 at 7.

[220] KLM Ex. 321 at 1 (August 5, 2009 email from Comu identifying himself as a "Principle" [sic] of GETG); *see also* KLM Ex. 25 at 3 (2009 Nevada SOS filing identifying Comu as a "Director"); KLM Ex. 103 at 1 (December 8, 2009 email from CJ Comu identifying himself as a GETG "Director"); KLM Ex. 104 at 1 ("Director Global Energy Development Group"); KLM Ex. 319 at 59918_13 ("Director"). In connection with this position, Sunset Pacific received 10 million shares of GETG stock. Trustee Ex. 2 (GETG stock certificate for 10 million shares issued to Sunset Pacific on December 11, 2008).

[221] *See generally* KLM Ex. 199; *see also, e.g.*, KLM Ex. 164; KLM Ex. 324 at 1; KLM Ex. 325 at 1; KLM Ex. 326 at 1. Insiders from other Comu affiliates (including, but not limited to, TBG, Sunset Pacific, and Regus Advisors) also control or hold interests in the GETG Entities, including **John Potter** (President and Secretary–GETG) (KLM Ex. 119 at 16; *see also infra* Section C(3)), **David Knight** (President–XL Biofuels) (KLM Ex. 104 at 1; KLM Ex. 220 at 20206_11; *see also infra* Section C(4)), **Dave Welch** (President–Bio-Global) (KLM Ex. 101; KLM Ex. 104 at 1; *see also infra* Section C(4), D(2), E(1), E(5)), **Alvin Dahl** (Treasurer–GETG) (KLM Ex. 104 at 1; *see also infra* Section C(2)–(3). Dahl is the accountant who prepared all of Comu's personal and business tax returns), and **Peter Knight** (GETG marketing) (KLM Ex. 104 at 1; KLM Ex. 321 at 1; *see also infra* Section C(4), E(5)(c)).

Comu took the lead in pursuing a $5–$10 million dollar loan for GETG,[225] during which process, he confirmed that GETG "has approximately 500K in paid in capital,"[226] which directly contradicts his claim to have no knowledge of GETG's assets.

87.    Comu either did not disclose or he misrepresented his pre-petition equity stake in the GETG Entities.[227]  In correspondence with Comu, for example, GETG's CEO Perry West confirmed that Comu held a 25% stake in at least one GETG Entity.[228]  As of the Petition Date, Comu expected to generate income from his interests in the GETG Entities.[229]  A GETG "Corporate Overview" from 2009, for example, projected millions of dollars in profits through 2013.[230]

---

[222]    On the Petition Date, for example, Comu received an email from GETG's Chairman and CEO, Perry West (KLM Ex. 119 at 16), attaching a draft Memorandum of Understanding ("MOU") pertaining to the GETG Entities that "puts something down in writing about the operation of the entities that we have going."  KLM Ex. 260 at 1.

[223]    *See* KLM Ex. 104 at 1 (meeting agenda); KLM Ex. 162 at 1 (recruiting GETG's CEO); KLM Ex. 321 (August 5, 2009 email from Comu as "Principle" [sic] of GETG attaching draft corporate filings and due diligence list).

[224]    KLM Ex. 355 at 22734 ("I have been involved in putting together (Global Energy) and have attached some docs for your review and comment.  The attached Docs are a DRAFT and strictly for your review.  We are just getting ready to launch and seek financing.  Let me know if you have an interest and time to play a role in this venture. "); *see also* KLM Ex. 298 at 1.

[225]    KLM Ex. 105; KLM Ex. 328 at 1–2.

[226]    KLM Ex. 328 at 1.

[227]    On August 29, 2009, GETG's CEO Perry West sent an email to Comu and others in which West brings up the "end focus" for GETG, and acknowledges that "[y]ou guys put together the deal and certainly have right to the lions share."  KLM Ex. 354 at 1.  On April 1, 2010, shortly before the Discharge Date, GETG-interested individuals, discussed a merger by which "each of the XL shareholders" … "will end up with 125,000,000 shares of GETG and GETG will end up with all of the shares of XL."  KLM Ex. 325 at 66263.

[228]    In correspondence from April 1, 2010, West summarized plans to "distribut[e] the interests for **CJ**/DW/DK/PW," to which Comu responded: "100% agreed."  KLM Ex. 324 at 1 (emphasis added); *see also* KLM Ex. 325 at 2 ("XL is a private company with 1000 shares … equally owned by DK/DW /**CJC**/PW.") (emphasis added).

[229]    In a November 17, 2009 email, for example, Comu referenced a GETG deal as follows: "Let's make some money broh!!  The Global deal is rolling – we just acquired 880 Acres and start planting trees December 2009!!"  KLM Ex. 172 at 1.

[230]    KLM Ex. 329 at 70848_18–19 (projecting profits of $6 million for 2010, over $8 million for 2011, over $15 million for 2012, and over $20 million for 2013).

88.     Comu (either directly, or via TBG or Sunset Pacific) received undisclosed compensation before and after the Petition Date from one or more GETG Entities.[231]   In September of 2010, "as compensation for efforts for the company in 2009 and 2010," Sunset Pacific received five-year options for 5,000,000 GETG shares (in addition to the 10 million shares received in 2008).[232]   A Private Placement Memorandum ("PPM") for GETG dated February 20, 2011 offered 10 million shares of GETG stock at $5.50 per share.[233]   The GETG PPM also identified TBG as an advisor pursuant to a "consulting advisory agreement" reflecting ongoing income for TBG.[234]

89.     As set forth *infra*, Comu used one or more of the GETG Entities as a conduit to receive, transfer and dissipate TBG's stock in Green Auto.[235]

90.     Comu also acquired a new shell company in 2009[236] called Global Energy Group, Inc., which was never disclosed.[237]   After the Petition Date, Comu held himself out as "Director, Global Energy Group, Inc.," which shares the 15950 Dallas Parkway Address.[238]

91.     As of the Petition Date, Comu was actively involved in a potential reverse merger for T3 Networks, Inc. ("T3 Networks"),[239] from which he expected income after the Petition

---

[231]     Trustee Ex. 3 (certificate for 10 million shares of GETG stock issued December 11, 2008 to Sunset Pacific).
[232]     KLM Ex. 335.
[233]     KLM Ex. 119.
[234]     KLM Ex. 119 at 15.
[235]     *See, e.g.*, KLM Ex. 155; *see also infra* Section E(5)(h).
[236]     In a December, 2009 email Comu wrote: "*I own a new shell* that has had an effective S-1 and about a year's worth of 10-Q's and a K…..   *I did it from the ground up* so I know all of the pieces." KLM Ex. 304 at 1 (emphasis added).
[237]     KLM Ex. 165 at 1 (email correspondence from August 2, 2009, reflecting investigation into Global Energy Group's status).
[238]     KLM Ex. 216 at 1; KLM Ex. 368 at 1.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                         **PAGE 33 OF 141**

Date.[240]  On May 5, 2011, TBG received 10 million shares of T3 Networks stock,[241] (which was offered to investors at $0.25 per share),[242] and a T3 Networks PPM identifies TBG as a 10% shareholder.[243]  Comu did not disclose this interest before the Discharge Date.

92.    Comu failed to disclose his interests as a "Director and Partner" of Revolution Fight Club LLC ("RFC"), a Florida entity in the MMA business for which Comu was actively seeking investors in late 2009.[244]  Comu was actively engaged in lucrative RFC projects on the Petition Date.[245]  Between December 2009 and January 2010, Comu was "working and pitching RFC on a constant basis,"[246] and promoting one RFC project— "a FOUR Fight Deal with Hard Rock Hotel/Casino" —to investors as "the #1 Best MMA Deal in USA."[247]  Comu knew his ongoing RFC business would produce income.[248]  TBG accounts reflect at least $225,000 in

---

[239]    For example, Comu wrote in a December 4, 2009 email: "Our funding group is NOW ready to proceed with the Reverse Merger & Listing T3 Networks." KLM Ex. 300 at 1.  *See also* KLM Ex. 168 ("Re: T3 – IPO"); KLM Ex. 169 ("Please see attached Advisory Agreement…. We have a Shell ready to go, as well as short term working capital, and a long term financing plan."); KLM Ex. 295 at 1 (instructing Heather Jackson to add T3 Networks to TBG's "Deal Flow"); KLM Ex. 297 at 1 ("We are looking to place $250K for 10% Equity in Company."); KLM Ex. 302 (December, 2009 email re: 2010 IPO: "The Money Boys want to GIVE YOU$$$$$$$$$$!!!!!!!!!!!!!!!!!!!!!!!").

[240]    KLM Ex. 265 at 1–2 (correspondence from January, 2010 discussing plans to sell T3 Networks stock at $0.10 per share); *see also* KLM Ex. 311 at 1 (January 6, 2010 email from Comu: "Lets go make a whole lotta money this year !!!!!!!").

[241]    KLM Ex. 26.

[242]    KLM Ex. 118.

[243]    KLM Ex. 118 at 16.

[244]    KLM Ex. 242 at 1 (September 24, 2009 email from Comu to potential investor stating, "I am joining [RFC] as a Partner and looking to produce MMA in Texas."); KLM Ex. 290 at 1 (October 13, 2009 email from Comu soliciting investment holding and himself out as a "Director and Partner"); KLM Ex. 316 (January 18, 2010 email soliciting investment for RFC); *see also* KLM Ex. 238; KLM Ex. 257; KLM Ex. 290; KLM Ex. 301; KLM Ex. 303.

[245]    KLM Ex. 257 (December, 2009 email announcing Hard Rock deal); *see also* KLM Ex. 299; KLM Ex. 301 at 1.

[246]    KLM Ex. 264 at 1.

[247]    KLM Ex. 318 at 1 (In late January of 2009, Comu was "in South Florida for the Herschel Walker MMA Event which will be on PPV as well as many other MMA Legends.").

[248]    In a January 20, 2010 email exchange with Reed Wallace (Comu's partner and RFC's Chairman and CEO) (KLM Ex. 290 at 1), Comu stated: "There is crazy money out there – and my Mission is to put it in YOUR Bank Account!!!!"  KLM Ex. 264 at 1.  In response, Wallace corrected Comu: "OUR bank account!;-)."  *Id.*; *see also* KLM Ex. 318 at 1 (telling a potential investor that RFC hoped "to take $3M and turn it into (hopefully) $30M over a solid period of growth").

income from "Rock Group" after the Petition Date in 2010 and 2011.[249] Comu has never disclosed any details regarding his interest in or income from RFC or related MMA events.

93. Comu failed to disclose any interest in or affiliation with Campus Investments PLC ("Campus Investments"), a UK company that was incorporated in 2004.[250] Comu identified himself in pre-petition correspondence as "Chairman" of Campus Investments,[251] and a draft *Pre-Offering Summary for Campus Investments* (the "Campus POS"), from June of 2009 identified Comu as a "Director to be appointed."[252] Campus Investments' business was active and ongoing as of the Petition Date,[253] and the Campus POS estimated substantial revenue for 2010 – 2014.[254] As set forth *infra*, Comu has used Campus Investments to receive, transfer and liquidate TBG's stock in Green Auto.[255]

94. Other positions and interests Comu was required, but failed, to disclose in SOFA § 18 include: GANAS,[256] the InvestIN Forum,[257] Grey Point Partners, LLC,[258] Harpcrest Ltd.,[259]

---

[249] *See* KLM Ex. 96 at 1 ($12,763); *see also* 2011 Rock Group wire transfers to TBG: KLM Ex. 19 at 7 ($12,480); *id.* at 8 ($24,980); *id.* at 14 ($24,980); *id.* at 20 ($24,980); *id.* at 26 ($24,980); *id.* at 32 ($24,980); *id.* at 39 ($37,480); *id.* at 46 ($37,480); *see also generally* Trustee Ex. 23.

[250] KLM Ex. 163 at 71_2.

[251] KLM Ex. 232 at 1 (August 20, 2009 email in which Comu identifies himself as "Chairman" of Campus Investments).

[252] KLM Ex. 163 at 71_3 ("Mr. Comu has a long history in the development of public companies both here and abroad. His involvement will add value to all aspects of the business.").

[253] The Campus POS identified ten companies in which Campus Investments had acquired, or was in the process of acquiring, "strategic Shareholdings and Interests," including The League Ltd, World Sports Congress, and resort developments in Cyprus, among others. KLM Ex. 163 at 71_4–10.

[254] KLM Ex. 163 at 71_11.

[255] *See infra* Section E(5)(g).

[256] JPTO Stip. Fact ¶ 24; *see also* Trustee Ex. 80; Trustee Ex. 81; *see also infra* Section D(1).

[257] *See, e.g.*, KLM Ex. 315 at 4 ("Founding Member").

[258] KLM Ex. 138 at 2 (2009 Texas SOS filing identifying Comu as "Managing Member"). Grey Point Partners shares the 18352 Dallas Parkway Address with Sunset Pacific and TBG. KLM Ex. 138 at 5–6.

[259] KLM Ex. 296 at 1 (November 5, 2009 email resigning as Harpcrest Director); *see also* KLM Ex. 241 at 1; KLM Ex. 245 at 1 (October 1, 2009 email suggesting that Comu would receive "6.5m" shares); KLM Ex. 246 at 1 (emails with Simon Ferguson discussing the terms of Comu's and TBG's arrangement with Harpcrest, which included Comu's appointment as Director); KLM Ex. 248 at 2 (October 9, 2009 resolution authorizing Comu, as TBG agent, to purchase 15% of Harpcrest).

A-Venture Capital, LLC ("A-Venture"),[260] Sun Management Group, Inc.,[261] and MMA Games, L.L.C.[262]   Comu's business among these entities (including with respect to the Green Auto Merger) often overlapped,[263] and he used some of these entities, including A-Venture[264] and Regus Advisors (an entity formed after the Petition Date to take over TBG's ongoing business)[265]—as alternative vehicles for TBG and GETG business.

**4.   Comu's Fraudulent Intent was Specifically Directed at Plaintiffs.**

95.   Comu acted with willful and subjective fraudulent intent with regard to the false oaths and undisclosed assets found herein.   *In particular, Comu's Bankruptcy Filings and sworn testimony deliberately created a false impression of overwhelming indebtedness and hopeless insolvency, and knowingly and willfully concealed lucrative pre-petition business activities and assets that should have been disclosed and the fruits thereof included in the bankruptcy estate*.   Comu's numerous and ongoing false oaths were deliberately calculated to mislead Trustee and Plaintiffs regarding the true nature and scope of Comu's financial

---

[260]   KLM Ex. 252 at 3 (business card commissioned by Comu identifying him as an A-Venture "Managing Partner"); KLM Ex. 294 at 1–2 (November 4, 2009 email identifying himself as a "Managing Partner," with attachment identifying himself as "Partner"); KLM Ex. 298 at 1; *see also* KLM Ex. 244 at 1 (September 29, 2009 email in which Comu states that he is "opening the Dallas Branch Office of A-Venture Capital").   Comu's A-Venture offices share the 18208 Preston Road Address with Sunset Pacific, TBG and Marathon Management.   *See, e.g.*, KLM Ex. 294 at 2.

[261]   KLM Ex. 152 (December 11, 2006 Texas Franchise Tax report filed with Texas SOS, and signed by Comu as "CEO").

[262]   KLM Ex. 147 at 1 (2007 Certificate of Formation filed with Texas SOS identifying Comu as a "Manager").

[263]   *See, e.g.*, KLM Ex. 313 at 1–2 (email to OMST regarding distribution of TBG's Green Auto Stock including signature lines for Comu's positions at TBG, A-Venture, and InvestIn Form); *see also* KLM Ex. 311 at 1.

[264]   *See, e.g.*, KLM Ex. 289 at 1 (October 9, 2009 email attaching information regarding tree deals, and stating "if there is anything I can run through The Barclay Group or A Venture-Capital (VC) let me know"); KLM Ex. 298 at 1 (November 16, 2009 email pitching Green Auto and GETG stock to potential investor, using TBG and A-Venture credential); *see also* KLM Ex. 288 at 2; KLM Ex. 312 at 2.

[265]   *See infra* Section C(4), E(5)(c).

circumstances, and reflect a conscious disregard for the truth. The magnitude of Comu's nondisclosure reflects *far more* than a reckless disregard for the truth.[266]

96. The numerous facts that Comu stipulated for the purpose of trial, but which he previously denied or concealed, do not mitigate his fraud, but only add insult to injury by demonstrating his actual and subjective intent to hinder, delay and defraud his creditors, and Plaintiffs in particular.

97. Comu's bankruptcy was plainly motivated not by a legitimate need for relief from debts he was unable to pay, but by a willful and malicious desire to thwart Plaintiffs' pursuit of state court remedies.[267] With regard to both the Bankruptcy Case and this Adversary Proceeding, Comu's ongoing scheme to defraud his creditors—and Plaintiffs in particular—constitutes bad faith abuse of the bankruptcy process and the judicial system.

## C. COMU USED ALTER EGOS TO CONCEAL AND ENJOY ASSETS

98. Before and after the Petition Date and the Discharge Date, Comu used entities he owns or controls (the "Comu Alter Egos") to conceal and enjoy assets that should have been available to creditors in the Bankruptcy Case.

99. The Comu Alter Egos include Sunset Pacific and its general partner, Marathon Management (which, as detailed *infra*, refers to and includes three *dba*s for the same entity), TBG, and Regus Advisors—an entity Comu established in 2010 (shortly after the Bankrutpcy Case was filed) to take over TBG's business and conceal its assets.

### 1. Marathon Management

100. Comu omitted, or made inaccurate and misleading disclosures, about his interests in Marathon Management. Comu disclosed in Schedule B an account in the name of Marathon

---

[266] *Cf.* Bench Findings at 4:27.
[267] *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd.)*, 40 F.3d 1084, 1089–90 (10th Cir. 1994).

Inc., with a claimed value of $78.50.[268]  In his SOFA, Comu also disclosed that within the last

six years he had been an "***Officer/Director***" of Marathon Inc.[269]  But Comu's Bankruptcy Filings

omitted the fact that Marathon Inc. is "100% owned by CJ Comu," a detail reflected in Comu's

Draft Bankruptcy Filings and the Phyllis Memo.[270]

101.    Marathon Inc. is a Nevada corporation that was incorporated on October 9,

2000,[271] and which shares or has shared offices with Sunset Pacific, TBG and other Comu

affiliates.[272]  Comu is Marathon Inc.'s President, Secretary, Treasurer, and the sole Director and

sole Shareholder.[273]

102.    Pursuant to "Articles of Conversion" executed by Comu and filed with the

Nevada SOS on July 7, 2005, Marathon Inc. was converted to Marathon Limited, a Nevada

limited liability company.[274]  Marathon Inc. and Marathon Limited share the same Nevada SOS

entity number.[275]  Marathon Limited also shares or has shared offices with Sunset Pacific, TBG

and other Comu affiliates.[276]  Comu is Marathon Limited's sole Member.[277]

103.    Comu did not disclose any information about his interest in Marathon Limited in

his Bankruptcy Filings or at the Creditors Meeting.[278]  Defendants now stipulate that Marathon

---

[268]      Trustee Ex. 94 at 2.
[269]      *Id.*
[270]      KLM Ex. 312 at 57702_9; KLM Ex. 126 at 6.
[271]      KLM Ex. 113 at 1–2.
[272]      Shared offices include the 18208 Preston Address (KLM Ex. 31 at 1), the 18352 Dallas Parkway
Address (Trustee Ex. 95 at 5; KLM Ex. 114 at 3–4), and the 14180 Dallas Parkway Address (KLM Ex.
113 at 6–7).
[273]      KLM Ex. 113 at 5–10 ("President," "Secretary," "Treasurer," and "Director"); *see also* KLM Ex.
109 at 4, 17 ("President"); *id.* at 15 (sole shareholder and sole director).
[274]      KLM Ex. 109 at 3–5, 15–17; *see also* KLM Ex. 113 at 4.
[275]      KLM Ex. 113 at 4 (E0430072005-6); KLM Ex. 114 at 1 (same).
[276]      Shared offices include the 18352 Dallas Parkway Address (Trustee Ex. 22 at 8, 10), and the
18208 Preston Address (Trustee Ex. 36 at 10).
[277]      JPTO Stip. Fact ¶ 73, ¶ 74; *see also* KLM Ex. 22 at 8 ("Member"); KLM Ex. 109 at 13
("Managing Member"); *id.* at 17 ("Sole Member").
[278]      *See generally*, Trustee Ex. 94; Trustee Ex. 95; Def. Ex. 4.

Limited is wholly-owned and/or controlled by Comu.[279] Defendants also now stipulate that Marathon Limited has held a 1% partnership interest in Sunset Pacific since 2006.[280] This fact was reflected in the Undisclosed Tax Documents[281] but omitted in Comu's Schedules,[282] misrepresented at the Creditors Meeting,[283] and the subject of misleading testimony from Comu throughout the course of this Adversary Proceeding.[284]

104. The full legal name of Marathon Limited is sometimes abbreviated by Comu (*e.g.*, in tax returns) as "Marathon Management LLC"[285] (herein, "Marathon LLC"). Marathon LLC uses the same addresses as Marathon Inc. and Marathon Limited,[286] was incorporated on the same date as Marathon Inc. (October 9, 2000),[287] and has the same Federal Tax Employer Identification Number ("EIN") as Marathon Limited.[288]

105. Based on the above, Marathon Limited, Marathon Inc. and Marathon LLC (jointly, "Marathon Management") are all *d/b/a*s for the same legal entity, which at times relevant to this Adversary Proceeding has operated under or held assets in each of these names.

106. The sole purpose of Marathon Management, which conducts no independent business, is to hold Comu's personal assets and serve as general partner of Sunset Pacific.

---

[279]    JPTO Stip. Fact ¶ 75.

[280]    JPTO Stip. Fact ¶ 76; *see also* Trustee Ex. 34 at 10.

[281]    KLM Ex. 231 at 10 (Sunset Pacific 2007 federal tax return identifying Marathon Management as general partner).

[282]    Trustee Ex. 94 at 4.

[283]    Def. Ex. 4 at 5 ("My wife who owns 98%, my brother who owns 1% and I own 1%.").

[284]    Comu has always claimed that Sunset Pacific is owned 98% by Phyllis and 1% by Comu (*see, e.g.*, JPTO Stip. Fact ¶ 76)—but he has alternatively claimed or stipulated—even at trial—that the remaining 1% of Sunset Pacific is owned by Cem Comu (*see* Def. Ex. 4 at 5; JPTO Stip. Fact ¶ 69), or by Marathon Inc. (JPTO Stip. Fact ¶ 73, ¶ 74)—an entity that Comu stipulates he (not Cem) owns 100% (JPTO Stip. Fact ¶ 75).

[285]    *See, e.g.*, KLM Ex. 109 at 16 (Plan of Conversion, referring to Marathon Limited as the "LLC").

[286]    KLM Ex. 110 at 1 (2008 tax return); KLM Ex. 111 a 1 (2009 tax return); KLM Ex. 112 at 1 (2010 tax return); *see also* Trustee Ex. 31 at 7; Trustee Ex. 33 at 8; Trustee Ex. 34 at 8; KLM Ex. 60 at 1.

[287]    KLM Ex. 111 at 1.

[288]    KLM Ex. 109 at 18 (EIN: 76-079700); KLM Ex. 112 at 6 (same).

107.    Comu has used Marathon Management to transfer, conceal and enjoy assets that should have been included in the bankruptcy estate.  Comu controls Marathon Management accounts.[289]  In fact, since the Petition Date, Comu has transferred at least $245,000 to Marathon Management from TBG accounts,[290] and Marathon Management received at least $22,880 in cash distributions[291] from the sale of TBG's Green Auto stock, discussed *infra*.[292]  Marathon Management also received income from Sunset Pacific.[293]  Comu later used some of this cash (much later actually; in 2012) to purchase a Mercedes Benz S-550 for his personal use.[294]

## 2.    Sunset Pacific

108.    Comu deliberately omitted or misrepresented facts to conceal his interest in Sunset Pacific and the assets it holds.  In his Schedules, at the Creditors Meeting, and at trial, Comu attested under oath that he owns only 1% of Sunset Pacific, with the remainder being owned by his wife (Phyllis – 98%) and his brother (Cem – 1%).[295]  Comu also asserts that Phyllis's 98% interest in Sunset Pacific is her separate property.[296]  Comu claimed in Schedule B that the assets held by Sunset Pacific were worth $0, and, where he was required to disclose his "interests in partnerships or joint ventures," he alleged the current value of his interest in Sunset Pacific was "unknown."[297]

---

[289]    *See* JPTO Stip. Fact ¶ 75.  Comu signs Marathon Management tax returns.  KLM Ex. 110 at 7; KLM Ex. 129 at 1.  Comu controls at least two Marathon Management bank accounts.  Trustee Ex. 56 at 1 (Wells Fargo account ending in *0325); KLM Ex. 348. (Wells Fargo account ending in *5194).  Comu receives notifications at his personal email account when deposits are made into Marathon Management's account—including one notice in April of 2010, the month in which Discharge was granted.  KLM Ex. 181.

[290]    Trustee Ex. 26 at 1, 9 ($225,000 wire transfers from TBG in September of 2011); Trustee Ex. 26 at 6 ($20,000 TBG "loan" to Marathon Management on December 23, 2011).

[291]    Trustee Ex. 57 at 1 ($2,000); KLM Ex. 60 at 1 ($2,400); KLM Ex. 62 at 1 ($1,000); KLM Ex. 63 at 1 ($1,480); KLM Ex. 64 at 1 ($4,500); KLM Ex. 31 at 1 ($1,500).

[292]    *See infra* Section E(1)(3).

[293]    KLM Ex. 112 at 1, 7 (2010 tax return reporting income from Sunset Pacific).

[294]    KLM Ex. 115.

[295]    JPTO Stip. Fact ¶ 69; Trustee Ex. 94 at 4–5; Def. Ex. 4 at 5.

[296]    *See* Def. Pretrial Br. at 5 (arguing that "Sunset Pacific is the separate property of Phyllis Comu").

[297]    Trustee Ex. 94 at 5 § 14.

109.    Sunset Pacific, a Texas limited partnership, was formed on or about October 30, 1996 by Comu's attorney, Cecil Mathis ("Mathis").[298]  The original *Agreement of Limited Partnership* for Sunset Pacific, dated October 30, 1996, designated Coral Group as Sunset Pacific's initial general partner (with a 1% interest), and Comu as Sunset Pacific's limited partner (with the remaining 99% interest).[299]

110.    Comu did not disclose his interest in or affiliation with Coral Group, LLC ("Coral Group") in his Bankruptcy Filings or at the Creditors Meeting[300]—a fact he was required to disclose in Section 18 of his SOFA, and which is relevant to Sunset Pacific's ownership structure.[301]  At trial, however, Comu stipulated that Coral Group is "wholly-owned and/or controlled by Comu,"[302] and that at times relevant to this Adversary, Coral Group has held a partnership interest in Sunset Pacific.[303]  Comu has not explained why this now-stipulated fact was not disclosed in his Bankruptcy Filings.

111.    On July 7, 2005, Marathon Management and Coral Group entered a *Revised and Restated Agreement of Limited Partnership* for Sunset Pacific (the "Revised Partnership Agreement"),[304] designating Marathon Management as general partner (1% ownership), and

---

[298]    JPTO Stip. Fact ¶ 70; KLM Ex. 22 at 3.
[299]    KLM Ex. 109 at 51–62.  A *Certificate of Limited Partnership of Sunset Pacific, LP*, dated October 30, 1996, was filed with the Texas SOS, and listed Mathis—Comu's attorney—as Sunset Pacific's "original limited partner." *See* JPTO Stip. Fact ¶ 71; *see also* KLM Ex. 2 at 3.
[300]    *See generally* Trustee Ex. 94–95; Def. Ex. 4.
[301]    Coral Group was initially formed as a Texas limited liability company on October 4, 1996 (shortly before Sunset Pacific) by Cecil S. Mathis ("Mathis").  KLM Ex. 21 at 2; *see also* KLM Ex. 22 at 3; JPTO Stip. Fact ¶ 70. Comu and John Potter were the "initial members" of Coral Group.  KLM Ex. 21 at 2. Comu reestablished Coral Group as a Nevada limited liability company on July 7, 2005.  KLM Ex. 109 at 19, 21.  Comu identified himself in Nevada SOS filings as Coral Group's sole organizer and sole member.  JPTO Stip. Fact ¶ 72; *see also* KLM Ex. 109 at 21–22; KLM Ex. 21 at 7–8.  At relevant times, Coral Group has shared addresses with TBG, Sunset Pacific, and other Comu affiliates.  Shared addresses include the Pineland Address (KLM Ex. 22 at 3), the 14180 Dallas Parkway Address (KLM Ex. 22 at 6), and the 18352 Dallas Parkway Address (KLM Ex. 21 at 7–8).
[302]    JPTO Stip. Fact ¶ 75.
[303]    JPTO Stip. Fact ¶ 71, ¶ 73; *see also* KLM Ex. 109 at 30–31.
[304]    KLM Ex. 109 at 29–42.

Coral Group as limited partner (99% ownership).[305]  On July 28, 2005, Comu filed with the Texas SOS an *Amendment to the Certificate of Limited Partnership of Sunset Pacific, L.P.* (the "First Sunset Amendment"), whereby Marathon Management replaced Coral Group as Sunset Pacific's general partner.[306]  Comu executed the Revised Partnership Agreement, which was notarized, and the First Sunset Amendment as a "Member" of both Marathon Management and Coral Group.[307]

112.   Defendants now stipulate that, like Coral Group, Comu owns 100% of Marathon Management,[308] which they admit, in turn, owns a 1% general partnership interest in Sunset Pacific.[309]  Therefore, by his own more recent admissions, Comu owns at least 2% of Sunset Pacific—not 1% —which contradicts his Bankruptcy Filings and his testimony at trial.

113.   In any event, other than Comu's unsubstantiated testimony, there is no evidence that Cem Comu has ever held a 1% partnership interest in Sunset Pacific.  Sunset Pacific's SOS filings[310] and tax returns (which Comu filed on behalf of Sunset Pacific)[311] do not reflect any interest held by Cem (a foreign national) in Sunset Pacific or any of its entity partners.[312] Therefore, Comu's testimony that Cem Comu holds a partnership interest in Sunset Pacific appears also to have been false.

114.   On December 13, 2006, the Texas SOS cancelled Sunset Pacific's certificate of limited partnership due to Sunset Pacific's failure to file periodic reports with the Texas SOS.[313]

---

[305]      KLM Ex. 109 at 30–31.
[306]      JPTO Stip. Fact ¶ 73; KLM Ex. 22 at 1, 8.
[307]      KLM Ex. 22 at 1, 8; KLM Ex. 109 at 41–42; *see also* JPTO Stip. Fact ¶ 73.
[308]      JPTO Stip. Fact ¶ 75.
[309]      JPTO Stip. Fact ¶ 73, ¶ 76; *see also* Trustee Ex. 31 at 7; Trustee Ex. 32 at 7; Trustee Ex. 33 at 8; Trustee Ex. 34 at 8; Trustee Ex. 36 at 10.
[310]      *See generally* KLM Ex. 22; KLM Ex. 109.
[311]      Trustee Ex. 30–36 (Sunset Pacific tax returns prepared by accountant Alvin Dahl, for Comu's signature).
[312]      As discussed above, Comu controls Sunset Pacific's current general partner, Marathon Management, as well as its prior general and limited partner, Coral Group.  *See supra* Section C(1).
[313]      KLM Ex. 22 at 9.

Comu rectified this on September 28, 2007 by filing a periodic report, which Comu executed as a "Member" of Sunset Pacific's general partner, Marathon Management.[314]

115.    In November of 2008, Mathis tendered his resignation as Sunset Pacific's registered agent to the Texas SOS, and sent written notice of his resignation to Sunset Pacific's "last known address," which Mathis identified as "c/o CJ Comu" at TBG's 18352 Dallas Parkway Address.[315]

116.    The Texas SOS terminated Sunset Pacific's certificate of limited partnership on March 16, 2012, due to failure to file periodic reports.[316]  Sunset Pacific's limited partnership certificate has not been reinstated since its termination on March 16, 2012.[317]

117.    Sunset Pacific's "purpose and business" is "to acquire, hold, manage and dispose of real and personal property."[318]  Throughout its existence Sunset Pacific has conducted virtually no business operations.[319]  Between 2005 and 2011 Sunset Pacific's federal income tax returns reflect only held assets, but no income or expenses.[320]  When asked at the Creditors Meeting about Sunset Pacific's business, Comu stated, "It's just a partnership.  It doesn't have any particular business."[321]

118.    In support of their claim that Phyllis, in fact, owns 98% of Sunset Pacific, Defendants rely on a document entitled *Consent of General Partner of Sunset Pacific* (the

---

[314]    JPTO Stip. Fact ¶ 74; KLM Ex. 22 at 10–11.
[315]    JPTO Stip. Fact ¶ 74; KLM Ex. 22 at 12–13.  Marathon Management designated another Comu attorney, Lloyd Ward, as Sunset Pacific's registered agent in a June 6, 2009 filing with the Texas SOS. KLM Ex. 22 at 14.  Ward represented SUN Sports in the SUN Sports Suit against Plaintiffs.  *See supra* Section B(1).
[316]    JPTO Stip. Fact ¶ 77; KLM Ex. 22 at 15.
[317]    JPTO Stip. Fact ¶ 78.
[318]    KLM Ex. 109 at 29.
[319]    JPTO Stip. Fact ¶ 79.
[320]    JPTO Stip. Fact ¶ 80; Trustee Ex. 30–36.
[321]    Def. Ex. 4 at 5.  As stated in Sunset Pacific's Revised Partnership Agreement, the "purpose and business of the Partnership shall be to acquire, hold, manage and dispose of real and personal property." KLM Ex. 109 at 29.

"Sunset Consent"), which states it is "EXECUTED EFFECTIVE as of" January 1, 2006.[322] Phyllis signed the Sunset Consent on her own behalf, and Comu signed as a "Member" of Marathon Management and Coral Group.[323]   Pursuant to the Sunset Consent, which is not notarized, Coral Group purportedly resigned as a limited partner of Sunset Pacific and was replaced by Marathon Management, Comu was admitted as a one percent (1%) limited partner, and Phyllis was admitted as a ninety-eight percent (98%) limited partner.[324]   The Sunset Consent further claims the partners each made "capital contributions" (Marathon Limited – $100; Comu – $10; and Phyllis Comu – $980).[325]   The Sunset Consent was not filed with the Texas or Nevada SOS.[326]

119.     Defendants also rely on a document entitled *Amendment to Revised and Restated Agreement of Limited Partnership* for Sunset Pacific (the "Second Sunset Amendment"), which states it is "effective the 1st day of January, 2006," but was notarized more than twenty months later, on September 14, 2007[327]—approximately the same time Comu filed a periodic report reinstating Sunset Pacific's status with the Texas SOS, which made no mention of a change in partnership interests.[328]   Comu executed the Second Sunset Amendment on his own behalf and as "Member" of Marathon Management, and Phyllis executed on her own behalf.[329]   The Second Sunset Amendment states an intent to "alter" the Revised Partnership Agreement's previous allocation of partnership interests (which, as of July 7, 2005, was Marathon Management (1%), and Coral Group (99%))[330] to replace Coral Group with Marathon Management as general

---

[322]     JPTO Stip. Fact ¶ 76; Trustee Ex. 1.
[323]     Trustee Ex. 1.
[324]     JPTO Stip. Fact ¶ 76; Trustee Ex. 1.
[325]     Trustee Ex. 1.
[326]     *See generally* KLM Ex. 21; KLM Ex. 22.
[327]     JPTO Stip. Fact ¶ 76; KLM Ex. 109 at 26–28.
[328]     KLM Ex. 22 at 1, 10–11; *see also* JPTO Stip. Fact ¶ 74.
[329]     KLM Ex. 109 at 27.
[330]     KLM Ex. 109 at 30–31.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 44 OF 141**

partner, and add Comu as a 1% partner and Phyllis as a 98% partner.[331]   According to an index of Sunset Pacific filings from the Texas SOS, the Second Sunset Amendment has not been filed with the Texas SOS.[332]

120.    Even if this court accepted that Phyllis owns 98% of Sunset Pacific, there is no evidence to support Comu's claim that Sunset Pacific is her separate property (as opposed to community property that would be property of the bankruptcy estate).   Defendants previously alleged there was a document purporting to "gift" Comu's ownership interests in Sunset Pacific to Phyllis as of January 1, 2006,[333] but Defendants did not produce this purported document at trial.[334]  There is no evidence Phyllis Comu contributed any funds or assets to Sunset Pacific that were derived from her sole separate property.   Phyllis is not employed and relies on Comu's income,[335] and there is no evidence she brought any separate assets to the marriage over ten years ago.   When asked whether Phyllis does "anything to advance the business of Sunset Pacific," Comu responded: "I think she does a lot of things," such as helping with "client development."[336]  But Sunset Pacific has no clients because, as Comu admitted, it "doesn't have any particular business."[337]

121.    In addition, Comu controls, either individually or jointly with Phyllis, Sunset Pacific's finances.   Comu admitted at the Creditors Meeting that he shares banking privileges

---

[331]      KLM Ex. 109 at 26.
[332]      KLM Ex. 22 at 1.
[333]      *See* Debtor's Answer at 2 ("Defendant transferred to his wife her current ownership interest in Sunset Pacific three years and 364 days before the filing of his bankruptcy petition, and the documentation of the transfer was provided to the Trustee after the meeting of creditors, and Plaintiffs and their attorney physically examined the documents before the deadline for objecting to discharge."); Def. Pretrial Br. at 5 (referencing a January 1, 2006 "gift of Sunset Pacific to Phyllis Comu").
[334]      Defendant's First Amended List of Witnesses and Exhibits, filed February 24, 2014 (Adv. Doc. No. 118), identifies as Defendants' "Exhibit 1" a document purporting to reflect "C. J.'s gift of Sunset Pacific to Phyllis on January 1, 2006."  However, Defendants deleted this exhibit from their Second Amended List of Witnesses and Exhibits, filed March 14, 2014 (Adv. Doc. No. 135), and did not offer any such document at trial.
[335]      Def. Ex. 4 at 5, 12, 24; *see also generally* Phyllis Comu trial testimony.
[336]      Def. Ex. 4 at 12–13.
[337]      Def. Ex. 4 at 5.

with his wife for Sunset Pacific's bank account.[338] Comu was the "Designated Tax Matters Partner" for Sunset Pacific,[339] in which capacity he has alternatively used the Paladium Residence address,[340] and addresses shared with TBG, Regus Advisors, and Marathon Management.[341]

122. Irrespective of Sunset Pacific's true proportions of ownership, Comu concealed information, or made inconsistent and misleading disclosure about Sunset Pacific's assets that constitute false oaths. Although Comu disclosed numerous Sunset Pacific assets that he believed to be worthless to him[342] he failed to itemize numerous valuable assets held by Sunset Pacific[343] – including a $250,000 annuity[344] and a Sunset Pacific account at Turkish Bank.[345] As of the Petition Date, Comu had the use of a 2002 Mercedes Benz S-500 that he claimed was owned by Sunset Pacific,[346] but Comu deducted use of the Mercedes in his 2010 tax return as a sole proprietor.[347] Comu's Draft Bankruptcy Filings also reflect a $20,000 pre-petition loan to Comu by Sunset Pacific,[348] which was not disclosed in Comu's Bankruptcy Filings. Sunset Pacific's 2007 federal income tax return reflects assets totaling $527,750, consisting of a $250,000 annuity

---

[338] Def. Ex. 4 at 5–6.

[339] Trustee Ex. 31 at 2; Trustee Ex. 32 at 2; Trustee Ex. 33 at 3; Trustee Ex. 34 at 3; Trustee Ex. 35 at 3; Trustee Ex. 36 at 3; KLM Ex. 231 at 4.

[340] Trustee Ex. 30 at 2.

[341] Shared addresses include the 18208 Preston Address (Trustee Ex. 34 at 3; Trustee Ex. 35 at 3), and the 5340 LBJ Freeway Address (Trustee Ex. 36 at 3).

[342] Trustee Ex. 94 at 4–6.

[343] Bench Findings at 4:23-4:25.

[344] KLM Ex. 90; *see also* JPTO Stip. Fact ¶ 81.

[345] KLM Ex. 320 at 1.

[346] Trustee Ex. 94 at 6.

[347] Trustee Ex. 69 at 4; *see also* KLM Ex. 357 (November 2009 email responding to TBG's announcement of the Green Auto Merger: "Does this mean you will sell the Mercedes and start driving an electric car????").

[348] KLM Ex. 312 at 10.

and a loan to SUN Sports in the amount of $277,750.[349]   (Comu admitted at the Creditors Meeting that he owned SUN Sports.)[350]

123.   Comu also concealed information on Sunset Pacific's 2009 tax return.   While Sunset Pacific's 2009 tax return reflects no assets,[351] its returns from 2008 and 2010 both reflect $522,776 in assets.[352]   Comu has never explained or corrected this discrepancy.   The above disclosures gave the false impression that Comu's interest in Sunset Pacific—whatever it might be—held no potential recovery for creditors.

124.   Comu has also exploited Sunset Pacific as a conduit to conceal and dissipate assets.   As noted *supra*, Sunset Pacific received 10 million shares of GETG stock related to Comu's pre-petition services to GETG.[353]   Sunset Pacific also received a $500,000 payment from Alan Perlman in connection with the purchase of mining rights[354]—a payment that Plaintiffs alleged in the New York Action to be a fraudulent kickback.[355]   Thus, Comu has literally used Sunset Pacific to conceal assets derived from the very fraud perpetrated against Plaintiffs, which is the basis of the Judgment Debt, reflecting Comu's willful and malicious intent to hinder, delay and defraud Plaintiffs' claims as creditors.

125.   Comu continued to use Sunset Pacific to conceal assets after the Petition Date.   In addition to the 5 million GETG shares granted to Sunset Pacific in September of 2010 "as compensation for Comu's services to GETG in 2009 and 2010,"[356] Sunset Pacific also received

---

[349]   JPTO Stip. Fact ¶ 81.
[350]   Def. Ex. 4 at 2.
[351]   Trustee Ex. 34 at 1.
[352]   Trustee Ex. 33 at 1; Trustee Ex. 35 at 1.
[353]   Trustee Ex. 2; *see also* Def. Ex. 4 at 8–9.
[354]   Def. Ex. 4 at 5.
[355]   KLM Ex. 340 at 2, 7–8.
[356]   KLM Ex. 335.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

2,500,000 shares of Green Auto stock on January 13, 2010 (less than two weeks after the Petition

Date) in connection with the Green Auto Merger,[357] discussed *infra*.[358]

126.    Based on the above, and contrary to his Bankruptcy Filings and testimony, Comu

owns and/or controls 100% of Sunset Pacific.[359]

127.    Comu and Phyllis, knowingly and in concert with each other and with Sunset

Pacific, exploited the Sunset Pacific corporate form both before and after the Petition Date for

the purpose of concealing Comu's assets and avoiding creditor claims.[360]

### 3.    The Barclay Group

128.    Comu deliberately omitted and misrepresented material facts in order to conceal

his interests in TBG and its assets it holds, and to further his scheme to hinder, delay and defraud

his creditors.

129.    Comu's Schedule B claims that Comu owns only 1% of TBG, and that Brown

owns the remaining 99% interest.[361]   Comu verified this claim under oath at the Creditors

Meeting, where he testified unequivocally that "Mr. Bernard Brown owns 99% of" TBG.[362]

After the Discharge Date, Defendants took the inconsistent position that the 99% ownership in

TBG attributed to Brown "is actually owned by a United Kingdom Corporation named Brown

and Lampe, PLC."[363]   Comu offered no reasonable explanation at trial for this material

inconsistency, which Comu never corrected in his Bankruptcy Filings.

---

[357]    KLM Ex. 49 at 1; *see also* Trustee Ex. 5.
[358]    *See infra* Section E(1)(e).
[359]    Bench Findings at 4:29-4:30.
[360]    Bench Findings at 4:29. (Sunset Pacific was operated as a conduit to shield Comu's assets from creditors).
[361]    JPTO Stip. Fact ¶ 14; Trustee Ex. 94 at 4.
[362]    Def. Ex. 4 at 6.
[363]    JPTO Stip. Fact ¶ 14; Defendants' Answer ¶ 4.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 48 OF 141**

130.    Comu claimed in his SOFA he was a "Managing Partner" of TBG, and disclosed no other positions for the preceding six years.[364]  At the Creditors Meeting, Comu unequivocally testified, "I am not an officer of The Barclay Group.   I am [an] employee of The Barclay Group."[365]  He also claimed he was paid on an "hourly basis" for his work at TBG.[366]

131.    According to the deposition testimony of Edward Baxter ("Baxter") presented at trial, Comu has complete authority over titles for TBG executives and employees of, including his own.[367]  Comu's own testimony at trial confirmed this discretion.

132.    Both before and after the Petition Date, Comu has held TBG titles as "Principle [sic],"[368] "Chairman/CEO,[369] "Chief Executive Officer,"[370] "President,"[371] "Director,"[372] and "Manager."[373]  In 2007, 2008, 2009, and 2011, Comu executed and filed reports with the Texas SOS verifying he is the sole officer (President) and sole Director of TBG,[374] and TBG's 2010 tax return identifies Comu as an officer of TBG.[375]  In the Utah Action, Comu executed an affidavit in which he attested that "I am, and have been at all times since prior to [sic] October 2009, a Director of TBG."[376]

133.    Contrary to his testimony at the Creditors Meeting, and despite having never amended his SOFA, Comu now stipulates that before and after the Petition Date he acted as President, sole officer and director of TBG.[377]

---

[364]     Trustee Ex. 95 at 5.
[365]     Def. Ex. 4 at 4.
[366]     Def. Ex. 4 at 6.
[367]     *See* Trustee Ex. 92, Baxter Exam at 12:1–6; *see also* KLM Ex. 278.
[368]     KLM Ex. 289 at 54399_32.
[369]     *See, e.g.*, KLM Ex. 162 at 1; KLM Ex. 228 at 2.
[370]     JPTO Stip. Fact ¶ 17; KLM Ex. 24 at 10.
[371]     KLM Ex. 24 at 5–9.
[372]     Trustee Ex. 63; KLM Ex. 24 at 4, 8–9.
[373]     KLM Ex. 24 at 5–6; *see also* KLM Ex. 145 at 25.
[374]     JPTO Stip. Fact ¶ 18; *see also* KLM Ex. 24 at 5–8; Trustee Ex. 63.
[375]     Trustee Ex. 18 at 2.
[376]     KLM Ex. 12 at 14.
[377]     JPTO Stip. Fact ¶ 17, ¶ 18; *see also* JPTO Stip. Fact ¶ 15.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                                              **PAGE 49 OF 141**

134.    Comu was not a mere "employee" of TBG before or after the Petition Date.[378] Comu's 2009 and 2010 personal tax returns disclose no TBG wages, and claim his income was derived from a "sole proprietorship" based at the Paladium Residence.[379]  Comu did not produce any TBG pay stubs at the commencement of the Bankruptcy Case because he claimed to be "self-employed and … unable to provide copies of pay stubs."[380]

135.    In addition to his misrepresentations regarding his positions with TBG, Comu deliberately concealed his true ownership interest and control over TBG business and assets.

136.    TBG was incorporated on or about March 7, 1996 by John Potter.[381]  TBG's Articles of Incorporation list Comu and Potter as TBG's original Directors.[382]  On February 11, 2000, the Texas SOS forfeited TBG's authority to transact business in Texas due to failure to file franchise tax returns and/or pay franchise taxes.[383]

137.    Approximately eight years later (on January 18, 2008), the Texas SOS reinstated TBG's corporate charter after TBG filed an *Application for Reinstatement and Request to Set Aside Revocation or Forfeiture*, which Comu executed as TBG's CEO.[384]  In 2007, 2008, 2009, and 2011, Comu executed and filed with the Texas SOS, on behalf of TBG, *Texas Franchise Tax Public Information Reports* that identify Comu as TBG's President, and as the sole officer and director of TBG.[385]

138.    The only document cited in support of Defendants' contention that Brown and Lampe, PLC ("B&L") owns 99% of TBG (or that Comu owns only 1%), is an *Acquisition*

---

[378]    *See, e.g.*, KLM Ex. 298 at 1 (November 16, 2009 email to potential investor, stating: "I run a private investment advisory firm and we have a few deals that may be of interest to you."); *see also infra* Section D(1)–(2).
[379]    Trustee Ex. 68 at 3; Trustee Ex. 69 at 3.
[380]    *See* Bankr. Doc. No. 11.
[381]    JPTO Stip. Fact ¶ 15; *see also* KLM Ex. 24.
[382]    JPTO Stip. Fact ¶ 15; *see also* KLM Ex. 24 at 1–4.
[383]    JPTO Stip. Fact ¶ 16; *see also* KLM Ex. 24 at 10, 12.
[384]    JPTO Stip. Fact ¶ 17; *see also* KLM Ex. 24 at 10.
[385]    JPTO Stip. Fact ¶ 18; *see also* KLM Ex. 24 at 5–8; Trustee Ex. 63.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 50 OF 141**

*Agreement and Plan of Share Exchange* dated December 30, 2007 (the "B&L Share Exchange"),[386] pursuant to which all of the outstanding shares of TBG were to be transferred to B&L in exchange for one million shares of B&L common stock.[387]

139.    Comu's Bankruptcy Filings did not disclose any ownership interest or affiliation held by Comu in B&L,[388] nor was B&L mentioned at the Creditors Meeting.[389]

140.    The B&L Share Exchange provided that the "closing" was to occur at B&L's offices by December 30, 2007.[390]  At the closing, Comu was to present his shares in SUN Sports and other entities for endorsement over the B&L, Comu was to receive "a certificate or certificates representing the number of shares of B&L Preferred Stock for which the shares of TBG common stock shall have been exchanged," and the parties were to exchange signed "officer's certificates" on behalf of each entity.[391]  There is no evidence that any of these events occurred.  Comu admitted at trial, and Brown admitted when examined by the Trustee, that no shares were ever actually exchanged relating to the B&L Share Exchange.[392]

141.    TBG's 2008 corporation income tax return (dated February 22, 2010) claimed there were two shareholders of TBG, and that B&L owned 99% of TBG.[393]  Brown admitted this return was false because B&L did not exist.[394]  Defendants now stipulate that when the B&L Share Exchange was purportedly signed, B&L had not been formed as a UK corporation, and that B&L has not been formed since that time.[395]

---

[386]    JPTO Stip. Fact ¶ 22; KLM Ex. 61.
[387]    JPTO Stip. Fact ¶ 19; *see also* Trustee Ex. 60, Brown Exam at 9:25 – 11:15.
[388]    JPTO Stip. Fact ¶ 20; *see also generally* Trustee Ex. 94; Trustee Ex. 95.
[389]    *See generally* Def. Ex. 4.
[390]    Trustee Ex. 61 § 7.1
[391]    Trustee Ex. 61 § 7.1(a)–(f).
[392]    Trustee Ex. 60, Brown Exam at 37:25–38:13.
[393]    Trustee Ex. 16 at 3-4.
[394]    Trustee Ex. 60, Brown Exam at 25:5–11, 69:21–70:13, 99:19–100:2.
[395]    JPTO Stip. Fact ¶ 21.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 51 OF 141**

142. Brown's testimony reflects that he has little knowledge and virtually no involvement with TBG operations or management.[396]

143. The B&L Share Exchange is a sham transaction contrived by Comu, with Brown's knowledge, with the fraudulent intent to conceal Comu's true ownership of TBG from Trustee and creditors. Comu's efforts to conceal his true interest in TBG continued through trial. Christopher McNeill ("McNeill") of the law firm of Block & Garden (B&G) testified that Comu contacted him a week before trial and told him TBG was owned 99% by Brown.

144. Even if Comu believed he was a 1% owner in TBG by virtue of the B&L Share Exchange, he was required to schedule his 99% ownership interest in B&L.[397]

145. At all times relevant to the Bankruptcy Case, Comu has not acted as if he were only a 1% owner in TBG, and the evidence does not support this alleged interest.[398] No corporate records were kept by TBG and corporate formalities were not followed.[399] TBG has used the Paladium Residence as its mailing address for bank account statements,[400] and bank statements for Comu's personal account at Wells Fargo have been sent to TBG's 18208 Preston Address.[401] Alvin Dahl,[402] a CPA connected to the GETG Entities who prepared the Comus'

---

[396]     Brown had no written communications with Comu or TBG or other documents that would substantiate the existence of the B&L Share Exchange. Trustee Ex. 60, Brown Exam at 11:11–12:19. Although the B&L Agreement states it is effective as of December 30, 2007, Brown did not remember when he actually signed it. Trustee Ex. 60, Brown Exam at 57:4–25. When asked if he was an officer or director of TBG, Brown responded "I believe I'm the president," (Trustee Ex. 60, Brown Exam at 38:14–16), but he could not identify any document reflecting any such appointment, nor could he recall the date on which he was allegedly elevated to president. Trustee Ex. 60, Brown Exam at 83:7–84:10, 87:22–7. Brown did not know what salary or compensation Comu received from TBG. Trustee Ex. 60, Brown Exam at 52:7–9.

[397]     Bench Findings at 4:23.

[398]     Bench Findings at 4:23.

[399]     Bench Findings at 4:28.

[400]     KLM Ex. 18 at 5.

[401]     *See generally* KLM Ex. 20.

[402]     Defendants identified Dahl as a trial witness in their Second Amended List of Witnesses and Exhibits (Adv. Doc. No. 135 at 2), but Dahl passed away before trial. The transcript of Dahl's 2004 Exam, which was taken on August 9, 2012, was read into the trial record. *See* Def. Ex. 8.

personal tax returns,[403] as well as the tax returns for TBG,[404] Sunset Pacific,[405] Marathon Management,[406] and Regus Advisors,[407] was paid for his services out of TBG accounts.[408] The only evidence Comu offers regarding the legitimacy and separateness of TBG's business and accounts is his own testimony, which facially lacks credibility.

146.  In addition to the concealment of his ownership interests, Comu made deliberately false and misleading statements regarding TBG's assets.  In his Bankruptcy Filings, Comu disclosed only those TBG assets that he believed to be worthless, and claimed his interest in TBG was worth $0.[409]  When asked at the Creditors Meeting if TBG had "any assets," Comu claimed: "I don't believe so unless whatever has been disclosed in the bankruptcy filing."[410]

147.  As set forth further below, TBG acquired over 95 million shares of stock in Green Auto in late 2009, and as of the Petition Date and continuing through the Creditors Meeting, Comu was actively engaged in selling or transferring these TBG assets.[411]  Comu concealed TBG's substantial valuable interest in GANAS and the Green Auto Stock, which was acquired before the Petition Date, and was distributed in accordance with Comu's instructions to TBG and other Comu affiliates before the Creditors Meeting.[412]

148.  Regardless of the legal ownership of TBG, there is clear and convincing evidence that, both before and after the Petition Date and the Discharge Date, Phyllis and Comu used TBG accounts as a personal "piggybank."[413]  TBG accounts were used to pay personal expenses,

---

[403]     *See, e.g.*, Trustee Ex. 68 at 2.
[404]     *See, e.g.*, KLM Ex 38 at 1.
[405]     *See, e.g.*, KLM Ex. 34 at 1.
[406]     *See, e.g.*, KLM Ex. 111 at 1.
[407]     *See, e.g.*, KLM Ex. 108 at 1.
[408]     Trustee Ex. 23 at 4; Trustee Ex. 25 at 1, 5; KLM Ex. 89 at 3, 33.
[409]     Trustee Ex. 94 at 4–5.
[410]     Def. Ex. 4 at 6.
[411]     *See infra* Section D, E.
[412]     *See infra* Section D, E; *see also* Bench Findings at 4:23-4:25.
[413]     Bench Findings at 4:29; *see also* KLM Ex. 18; KLM Exs. 85–86, 88–89; KLM Ex. 96; Trustee Ex. 28.

including taxes for the Paladium Residence,[414] membership dues for Prestonwood Country Club,[415] charitable donations (*e.g.*, Cattle Baron's Ball,[416] Ronald McDonald House,[417] and Paws in the City),[418] medical expenses,[419] fitness club dues,[420] drugstore purchases,[421] Wal-Mart,[422] Best Buy,[423] Bed Bath & Beyond,[424] over $10,000 for Cowboys tickets (plus $1,200 for a "limo to the game"),[425] "Mega Gems,"[426] premiums for an insurance policy held by Comu,[427] substantial domestic and international travel (including trips to London,[428] Las Vegas casinos,[429] a Disney vacation in Florida,[430] Ft. Lauderdale,[431] Palm Springs,[432] Palm Desert,[433] Vancouver,[434] Toronto,[435] Turkey,[436] London,[437] Fuengirola, Spain,[438] Hawaii,[439] San

---

[414]    *Compare* KLM Ex. 371 at 1 ($6,988.80 taxes paid January 31, 2009), *with* Trustee Ex. 24 at 1 ($6,988.80 check to David Childs Tax Assessor); *and compare* KLM Ex. 371 at 1 ($7483.11 taxes paid December 21, 2009), *with* Trustee Ex. 24 at 2 ($7,483.11 payment made for "Fee Expenses" on December 17, 2009).

[415]    Trustee Ex. 23 at 4; Trustee Ex. 24 at 1; Trustee Ex. 26 at 1, 4, 10; KLM Ex. 18 at 2, 25; KLM Ex. 19 at 50, 58.

[416]    KLM Ex. 89 at 71.

[417]    KLM Ex. 19 at 51.

[418]    Trustee Ex. 25 at 2, 4; KLM Ex. 19 at 7; KLM Ex. 89 at 76.

[419]    *See, e.g.*, Trustee Ex. 26 at 5 ($225 payment to Dr. Jane Admire).  Dr. Admire practices otolaryngology and plastic surgery.  *See* http://janeadmire.md.com/.

[420]    *See, e.g.*, KLM Ex. 19 at 50, 56; Trustee Ex. 26 at 2–3, 10.

[421]    *See, e.g.*, KLM Ex. 19 at 46; Trustee Ex. 23 at 9.

[422]    *See, e.g.*, KLM Ex. 18 at 2.

[423]    *See, e.g.*, KLM Ex. 19 at 46.

[424]    *See, e.g.*, KLM Ex. 19 at 46; Trustee Ex. 23 at 9.

[425]    Trustee Ex. 25 at 2, 4.

[426]    Trustee Ex. 26 at 3.

[427]    KLM Ex. 19 at 3, 39, 58.

[428]    Trustee Ex. 26 at 4.

[429]    KLM Ex. 19 at 52; Trustee Ex. 26 at 2.

[430]    KLM 19 at 2.

[431]    Trustee Ex. 23 at 9; KLM Ex. 19 at 45.

[432]    *See, e.g.*, KLM Ex. 18 at 2.

[433]    *See, e.g.*, KLM Ex. 19 at 24.

[434]    *See, e.g.*, KLM Ex. 19 at 13.

[435]    *See, e.g.*, KLM Ex. 19 at 56.

[436]    *See, e.g.*, KLM Ex. 19 at 24.

[437]    *See, e.g.*, KLM Ex. 19 at 58.

[438]    *See, e.g.*, KLM Ex. 19 at 43.

[439]    *See, e.g.*, KLM Ex. 19 at 14.

---

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                          **PAGE 54 OF 141**

Francisco,[440] New York,[441] and a charge for "AA vacations"),[442] and other everyday personal expenses such as restaurants, mobile phone charges, tolltag expenses, and gas.[443]

149.    Comu also admitted at trial that he frequently advanced cash to Phyllis out of TBG accounts for such personal expenses as an "outfit for an event," which Comu testified was, in his view, a legitimate business expense, even though Phyllis holds no position with TBG. Both before and after the Petition Date and the Discharge Date, Comu frequently wrote checks for thousands of dollars to Phyllis out of TBG accounts to Phyllis for personal expenses[444]— including two checks for $2,000 each that Comu made out to Phyllis on the Petition Date[445]— and signed checks to himself for $3,000 - $10,000.[446]  Between 2009 and 2011, Phyllis received over $60,000 out of TBG accounts, which funds she deposited into her personal checking account and used for personal expenses.[447]  Ledgers produced to Trustee attempt to conceal these payments to Phyllis by describing them as "office expenses."[448]

150.    TBG accounts for 2010[449] and 2011[450] reflect unexplained "counter debits" and other cash withdrawals for hundreds of thousands of dollars for unknown purposes.[451]

---

[440]    *See, e.g.*, KLM Ex. 19 at 31.

[441]    *See, e.g.*, KLM Ex. 19 at 39.

[442]    Trustee Ex. 23 at 9; KLM Ex. 19 at 45.

[443]    *See generally* Trustee Ex. 23; Trustee Ex. 24; Trustee Ex. 25; Trustee Ex. 26; KLM Ex. 18; KLM Ex. 19.

[444]    *See generally* KLM Ex. 89; KLM Ex. 96; *see also* Trustee Ex. 24 at 1; KLM Ex. 18 at 13; KLM Ex. 88.

[445]    KLM Ex. 88; KLM Ex. 89 at 25.

[446]    KLM Ex. 89 at 55, 92.

[447]    KLM Ex. 85–87; Trustee Ex. 28–29.

[448]    *See, e.g.*, Trustee Ex. 25 at 2.

[449]    Unexplained 2010 cash withdrawals and "counter debits" include: $50,000 (September 23); $100,000 (September 25); $56,250 (October 12); $44,000 (October 26); $38,000 (October 28); $100,000 (October 29); $86,000 (November 1); $100,000 (November 3); $58,000 (November 4); $49,000 (November 19); $55,000 (December 13).  Trustee Ex. 25 at 3–4.

[450]    Unexplained 2010 cash withdrawals and "counter debits" include: KLM Ex. 348 at 2 ($40,000); Trustee Ex. 23 at 5 ($100,000); KLM Ex. 19 at 36 ($50,000); Trustee Ex. 23 at 9 ($50,000).

[451]    *See generally* Trustee Ex. 23; Trustee Ex. 24; Trustee Ex. 25.

151.    In her 2013 deposition (which Phyllis confirmed when cross-examined at trial),

Phyllis Comu admitted that she and Comu used TBG accounts to sustain their lifestyle:

> Q.  [W]ith all of these checks being written for personal expenses, for charitable events, does it surprise you that your husband didn't write checks to his creditors from that same account?
>
> A.  I could see how you would ask me that question.
>
> Q.  If CJ's income for the years 2008 and 2009 are between $20,000 and $30,000 per year, do you think that's enough money to sustain the kind of lifestyle the two of you had in those two years?
>
> A.  No.
>
> Q.  Do you think that -- did CJ make it possible to sustain the lifestyle that you had as a couple by writing checks from his business to supplement the income that was coming in directly?
>
> A.  I suppose.  It's sitting right here in front of me, so – I'm assuming.
>
> Q.  You're assuming what?
>
> A.  That he wrote checks from this to –
>
> Q.  When you say "this," do you mean The Barclay Group's account?
>
> A.  The Barclay Group – well, this is where the checking account is from.
>
> Q.  And he wrote them in order to make it possible to maintain a certain standard of living.
>
> A.  Yes.[452]

152.    A TBG balance sheet for 2010 reflects over $2.3 million in income,[453] and TBG's

2010 federal income tax return reflects income of $2,366,775.[454]

153.    A TBG "General Ledger" for 2011 reflects year-to-date income, as of August 31,

2011, of $1,055,615.90 for "professional services,"[455] and $329,743 for "stock sales" between

September and December of 2011.[456]   TBG's 2011 tax return reported total income of

$1,373,688, of which $329,743 was reported as a capital gain from Green Auto stock sales.[457]

---

[452]    Phyllis Comu 2013 Depo at 102:6 – 25 (emphasis added).
[453]    Trustee Ex. 25.
[454]    JPTO Stip. Fact ¶ 64; Trustee Ex. 18 at 1.
[455]    Trustee Ex. 26 at 7.
[456]    Trustee Ex. 26 at 6–7.
[457]    JPTO Stip. Fact ¶ 65; KLM Ex. 38 at 1, 7.

154.    Based on the above, the evidence established that TBG was as of the Petition Date, and currently remains, 100% owned or controlled entirely by Comu.[458]  Comu and Brown, knowingly and in concert with each other and with TBG, exploited TBG's corporate form as a conduit to conceal and transfer assets of the estate both before and after the Petition Date and the Discharge Date.[459]

### 4.    Regus Advisors – TBG's "Next Chapter"

155.    Comu formed Regus Advisors, a Wyoming corporation,[460] in mid-2010 as a new vehicle for conducting TBG business.  The incorporating documents for Regus Advisors were filed with the Texas SOS on June 24, 2010[461] by Dallas attorney Jay Kline.[462]  Kline was paid out of TBG accounts both before and after Regus Advisors was formed.[463]

156.    Regus Advisors is registered to do business in Texas, and currently has or has had offices at Galleria Tower III, 24th Floor, 13155 Noel Road (the "Galleria Address"),[464] and the 5430 LBJ Freeway Address[465] (which is shared with Sunset Pacific).[466]  Regus Advisors has also used the Oaks North Residence as its mailing address for bank statements.[467]

---

[458]    Bench Findings at 4:23, 4:28.

[459]    Bench Findings at 4:28.

[460]    *See generally* KLM Ex. 14.  Comu also formed related entities Regus Realty Partners, LLC and Regus Capital Fund, LP.  *See generally* KLM Ex. 15 (Certificate of Formation of Regus Capital Fund, LP, executed by Comu as "registered agent," and "manager."); KLM Ex. 16 (Certificate of Formation of Regus Realty Partners, LLC, executed by Comu as a "manager" and "organizer.").  Regus Advisors has a wholly-owned subdivision called First Tier Profit Group, Inc. ("FTP").  KLM Ex. 106 at 14; *see also* www.firsttierprofit.com.

[461]    KLM Ex. 14 at 2, 10–12.

[462]    KLM Ex. 14 at 3, 7, 11.

[463]    *See, e.g.*, KLM Ex. 89 at 36, 56, 60, 64, 67; *see also* Trustee Ex. 23 at 3; Trustee Ex. 25 at 1–2; Trustee Ex. 26 at 2, 10.

[464]    KLM Ex. 14 at 2–3.

[465]    KLM Ex. 108 at 1 (2010 tax return); KLM Ex. 123 at 1 (2011 tax return); *see also* KLM Ex. 17 at 1 (bank statements).

[466]    Regus Advisors advertises that it is headquartered in Dallas, and has offices in numerous foreign countries, including the UK, Canada, Turkey, Panama, Switzerland, and other countries.  KLM Ex. 106 at 13; *see also* KLM Ex. 144 at 22–25.

[467]    KLM Ex. 17 at 17, 19.

000064

157.    Regus Advisors has represented publicly that it has been conducting business since before the Petition Date.  A powerpoint produced by Comu represents that Regus Advisors was "founded in 2009,"[468] and Regus Advisors' website claims that it has provided "consulting and advisory services" for "over twenty years."[469]  Similarly, a public disclosure filed for Puration, Inc., relating to a 2011 reverse merger in which Comu was involved, claims:

> Since January, 2005, Mr. Comu has been the Chairman for Regus Advisors Inc., a private international consulting firm for private and public company's providing advisory services for complex restructuring, contract negotiations, private equity, debt and mezzanine financings, operations, marketing and business development.[470]

158.    TBG and Regus Advisors share executives and insiders.  Comu holds himself out as the Chairman of Regus Advisors,[471] and SOS filings and other evidence identify Comu as President,[472] Managing Partner,[473] and Director of Regus Advisors.[474]  SOS filings also identify David Parsley and Mervyn Price (Comu's tenant at the Paladium Residence)[475] as Regus Advisors officers and/or directors.[476]  David Parsley was paid out of TBG accounts both before and after Regus Advisors was formed.[477]  Edward Baxter, a TBG Managing Partner[478] who was

---

[468]    KLM Ex. 106 at 2.
[469]    KLM Ex. 144 at 6.
[470]    KLM Ex. 145 at 24.
[471]    *See, e.g.*, KLM Ex. 322.
[472]    KLM Ex. 223 at 2.
[473]    *See, e.g.*, KLM Ex. 274 at 1; KLM Ex. 285 at 1.
[474]    KLM Ex. 14 at 3, 5; *see also* KLM Ex. 145 at 24–25 (identifying Comu as Chairman and Director of Regus Advisors).
[475]    KLM Ex. 137 at 1.
[476]    KLM Ex. 14 at 3–5; *see also* KLM Ex. 106 at 11.
[477]    Trustee Ex. 23 at 4; Trustee Ex. 26 at 1, 5, 10.
[478]    *See, e.g.*, KLM Ex. 30 at 3.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 58 OF 141**

paid substantial fees out of TBG accounts before and after Regus Advisors was formed,[479] was named a Managing Partner with Regus Advisors.[480]

159. In June and July of 2010, Comu arranged for Regus Advisors' office space with a July 1, 2010 move-in date.[481] In correspondence with the landlord, Comu stated, "I have a client and am a shareholder of a Company that currently offices at your 15950 Dallas Parkway location and (due to potential conflict of interest) I would need to set up our offices in a different location."[482] This is the 15950 Dallas Parkway Address used by GETG.[483]

160. When the landlord asked for an alternative address for Regus Advisors, Comu provided: "Parent Company; The Barclay Group Inc." and referenced TBG's 18208 Preston Road Address.[484] TBG paid rent for Regus Advisors.[485]

161. Comu testified at trial that Regus Advisors is wholly-owned by TKY Trust, a Canadian trust Comu set up prior to the Petition Date.[486] There is no evidence corroborating Comu's claim, and Regus Advisors' SOS filings and tax returns do not disclose any ownership interest held by TKY Trust.[487]

162. Comu used Peter Knight at dMedia LLC ("dMedia"), an entity located in Park City, Utah,[488] to set up and populate a new website for Regus Advisors in June and July of

---

[479]    KLM Ex. 89 at 40 ($10,000); KLM Ex. 89 at 41 ($2,500); KLM Ex. 89 at 45 ($19,000); KLM Ex. 89 at 46 ($3,500); KLM Ex. 89 at 52 ($12,500); KLM Ex. 89 at 59 ($11,500); KLM Ex. 89 at 61 ($12,500); Ex. 89 at 74 ($5,000); KLM Ex. 89 at 82 ($12,500); KLM Ex. 89 at 84 ($12,500); Trustee Ex. 23 at 1 ($6,250); Trustee Ex. 23 at 2 ($6,250); Trustee Ex. 23 at 3 ($6,250); Trustee Ex. 23 at 8 ($1,000); Trustee Ex. 25 at 1 ($35,000); Trustee Ex. 25 at 2 ($51,500); Trustee Ex. 25 at 3 ($12,500)
[480]    *See, e.g.*, KLM Ex. 286 at 1.
[481]    KLM Ex. 197 at 1; *see also generally* KLM Ex. 222.
[482]    KLM Ex. 222 at 21106_5.
[483]    *See, e.g.*, KLM Ex. 102 at 1.
[484]    KLM Ex. 222 at 1.
[485]    Trustee Ex. 25 at 2; KLM Ex. 89 at 66.
[486]    *See infra* Section E(4)(a).
[487]    KLM Ex. 108; KLM Ex. 123.
[488]    *See, e.g.*, KLM Ex. 313 at 7.

2010.[489]   On June 22, 2010, Comu registered the domain name "regusadvisors.com" via a GoDaddy account held in Comu's name.[490]   Comu forwarded the new website information to TBG Managing Partner and GETG insider Dave Welch[491]—"The next Chapter - kimmosabe!!"—and instructed that the new Regus Advisors website "should be a transfer of the TBG site.  Just change TBG."[492]  In July of 2010, Comu worked on the Regus Advisors logo,[493] and personally gave instructions regarding the content of the Regus Advisors website.[494]  The "contact us" link for Regus Advisors connects directly to Comu's personal gmail account.[495] Comu instructed Peter Knight to make the exact same edits to the TBG and Regus Advisors websites.[496]   The GoDaddy charges for setting up the Regus Advisors website were paid out of TBG's Wells Fargo account.[497]

163.    The TBG and Regus Advisors websites are virtually identical.[498]   The web pages describing services related to "Consulting,"[499] "Mergers,"[500] "Finance,"[501] and "Divestiture,"[502] for example, for both TBG and Regus Advisors websites are exact duplicates (except where the

---

[489]    *See, e.g.*, KLM Ex. 198; KLM Ex. 225.
[490]    KLM Ex. 191 at 1; *see also* KLM Ex. 192 at 1; KLM Ex. 193 at 1.
[491]    *See, e.g.*, KLM Ex. 273; *see also supra* n.222.
[492]    KLM Ex. 194 at 1.
[493]    *See, e.g.*, KLM Ex. 198 at 1–3.
[494]    KLM Ex. 225; KLM Ex. 227 at 1.
[495]    KLM Ex. 227 at 1.
[496]    KLM Ex. 227 at 1.
[497]    Trustee Ex. 23 at 4; Trustee Ex. 25 at 2.
[498]    *Compare* KLM Ex.144 *with* KLM Ex. 142.
[499]    *Compare* KLM Ex. 142 at 3 *with* KLM Ex. 144 at 14.
[500]    *Compare* KLM Ex. 142 at 4 *with* KLM Ex. 144 at 16.
[501]    *Compare* KLM Ex. 142 at 6 *with* KLM Ex. 144 at 18–19.
[502]    *Compare* KLM Ex. 142 at 7 *with* KLM Ex. 144 at 20.

company is named).  Numerous other pages from the Regus Advisors website duplicate the TBG website language verbatim.[503]

164.   On June 13, 2010, Welch (a TBG Managing Partner) pointed out that Comu needed to stop using his "cjcomu" email address because it would "be picked up by Buckeye [Epstein] at some point," and that he should "set up another email address with out his name of TBG immediately [sic]."[504]   On July 4, 2010, Comu assigned new Regus Advisors email addresses to various individuals associated with other Comu affiliates and offshore entities providing nominee services for Comu,[505] including himself, Dave Welch (TBG Managing Partner, Regus Advisors Insider, GETG officer, and key player in the Green Auto Merger),[506] David Knight (dMedia, GETG Entities and offshore entities),[507] Tunch Kashif (Campus Investments),[508] Peter Knight (GETG Entities, dMedia and ERI),[509] Simon Ferguson

---

[503]     *Compare* KLM Ex. 144 at 6 ("For over twenty years Regus Advisors has provided consulting and advisory services to development stage and emerging market companies.") *with* KLM Ex. 142 at 9 ("For over twenty years TBG has provided consulting and advisory services to development stage and emerging market companies."); *compare* KLM Ex. 144 at 6 ("Our experienced team has honed its skills so that it can show clients a level of service that they deserve.  Regus Advisors has built a firm foundation on its ability to treat every client as though they were the only client.") *with* KLM Ex. 142 at 9 ("Our experienced team has honed its skills so that it can show clients a level of service that they deserve.  TBG has built a firm foundation on its ability to treat every client as though they were the only client."); *compare* KLM Ex. 144 at 14 ("Success in business is as much about being able to adapt swiftly and anticipate change as it is about having good ideas. Companies the world over have to focus not only on the task at hand, but also on planning and developing immediate and long-term goals.") *with* KLM Ex. 142 at 3 ("Success in business is as much about being able to adapt swiftly and anticipate change as it is about having good ideas. Companies the world over have to focus not only on the task at hand, but also on planning and developing immediate and long-term goals."); *compare* KLM Ex. 144 at 8 ("Business strategies can change in the new economy almost as fast as they appear.  In today's marketplace, companies need a strong, diverse team to navigate the vast possibilities and opportunities before them. Development stage and emerging market companies require a team of time-tested professionals who understand their goals and dreams.") *with* KLM Ex. 142 at 1 (same).

[504]     KLM Ex. 187 at 1.

[505]     KLM Ex. 226.

[506]     KLM Ex. 221; *see also supra* Section B(3) & *infra* Section E(1).

[507]     *See supra* Section B(3).

[508]     *See supra* Section B(3); *infra* Section E(5)(g); *see also* KLM Ex. 163.

[509]     *See supra* Section B(3); *infra* E(5)(c).

(Harpcrest),[510] Bernard Brown,[511] Patrick Kelly (Mansion House Capital and Harpcrest),[512] and Nick Toscano (World Wide Auric and ERI).[513]

165. Evidence confirms that Comu moved TBG projects to Regus Advisors. In September through November of 2010, Comu sent emails identifying valuable pre-petition TBG business—including Green Auto,[514] T3 Networks,[515] GETG,[516] Paragon,[517] and Campus Investments[518]—as part of Regus Advisors' ongoing "deal flow."[519] On August 31, 2010, Comu asked Ed Baxter to revise a February 12, 2010 "Advisory Agreement" drafted for TBG to reflect Regus Advisors instead.[520] A TBG ledger for 2010 reflects the receipt of $24,000 in fees from "Chatsworth."[521] On January 3, 2011, Regus Advisors received a $38,750 wire transfer from "Chatsworth," reflecting this TBG income stream had been shifted to Regus Advisors accounts.[522] Comu also treated Regus Advisors and TBG business relationships as fungible.[523]

---

[510]    *See, e.g.*, KLM Ex. 241 at 1.
[511]    A Third-Party Defendant herein.
[512]    KLM Ex. 211 at 1; KLM Ex. 248.
[513]    *See infra* Section E(5)(e).
[514]    *See infra* Section D–E.
[515]    *See supra* Section B(3).
[516]    *See supra* Section B(3).
[517]    *See supra* Section B(3). In correspondence November 9, 2010 from Comu's gmail account regarding Paragon, Comu's credentials from both TBG and Regus Advisors overlap in the same email string. KLM Ex. 285 at 1–2.
[518]    *See supra* Section B(3); *infra* Section E(5)(g).
[519]    *See, e.g.*, KLM Ex. 280; KLM Ex. 286 at 1.
[520]    KLM Ex. 274.
[521]    Trustee Ex. 25 at 3.
[522]    KLM Ex. 17 at 2.
[523]    In a September 13, 2010 email with a new potential business partner, for example, Comu stated: "Few options I wanted to present for you.... If you would like we can set you up as a Partner for the Beverly Hills office of (TBG) The Barclay Group Inc. www.thebarclaygroup.com or as (RAI) Regus Advisors Inc. www.regusadvisors.com. We can print cards, set up your email and take care of your banking, etc...... all you gotta do is 'do the magic that you do' and we will provide you deal flow and back office support." KLM Ex. 278.

166. Comu controlled Regus Advisors accounts, and moved money between Regus Advisors and accounts held by TBG and Comu personally.[524] Although it had no role in the transaction, Regus Advisors received estate assets derived from Comu's pre-petition business interest in the Green Auto reverse merger, as discussed *infra*.[525]

167. Through Regus Advisors—using resources poached from TBG—Comu embarked upon other lucrative transactions similar to the Green Auto Merger, including a 2011 reverse merger for Puration, Inc.[526] Christopher McNeill testified at trial that his law firm represents both TBG and Regus Advisors. McNeill understood the Puration, Inc. transaction was a TBG deal instead of Regus Advisors. McNeill's law firm was at relevant times paid out of TBG accounts or out of the proceeds of Green Auto stock sales.[527]

168. Puration, Inc. filed a public report dated December 31, 2011 disclosing that Comu had been appointed "Chairman of the Board, Director" for Puration, Inc., and that he had personally received 4,000,000 shares of common stock, and 200,000 Preferred Shares.[528] A stock certificate reflecting 5,000,000 shares of Puration, Inc. common stock was issued to Regus Advisors on August 23, 2011.[529] In 2012, Comu formed a related entity, Puration UK Plc *a/k/a* Unione Technology Plc. ("Puration UK"), in which he is a shareholder and serves as Chairman

---

[524]  On July 2, 2010, Comu set up a new Regus Advisors bank account at Bank of America, and arranged for email notifications regarding the account to be sent to his personal email account. KLM Ex. 199 at 1. Comu had bank statements for Regus Advisors sent to his Oaks North Residence in November, 2011. KLM Ex. 17 at 19. On January 28, 2011, Comu transferred $10,000 from Regus Advisor' bank account to his personal checking account. KLM Ex. 17 at 2; KLM Ex. 141 at 2. And on June 1, 2011, Comu wrote a $20,000 check to Regus Advisors out of TBG's account. KLM Ex. 89 at 106; *also compare* Trustee Ex. 23 at 5 *with* KLM Ex. 17 at 12.

[525]  *See infra* ¶ 306 & n.762 and ¶ 331 & n.844–845 (9 million shares to Regus Advisors, then liquidated for cash through other conduits).

[526]  KLM Ex. 145 at 3.

[527]  Trustee Ex. 24 at 1; Trustee Ex. 25 at 1; Trustee Ex. 67 at 2; KLM Ex. 89 at 18–19, 34–35, 48.

[528]  KLM Ex. 145 at 24–25.

[529]  KLM Ex. 94.

and Director.[530]   Mervyn Price—a Regus officer and director[531] who was paid out of TBG accounts[532]—is also a Puration UK Director and Shareholder.[533]

169.    Based on the evidence set forth above—which is almost entirely uncontested by any contrary documentary evidence or testimony—the record confirms that Comu (with the willing participation of various TBG insiders) established Regus Advisors, which he owns 100% or controls, with the specific fraudulent intent of continuing TBG's lucrative business under a new alter ego in furtherance of his scheme to hinder, delay and defraud his creditors by concealing and dissipating assets attributable to the estate.

170.    Through Regus Advisors, Comu acquired or became entitled to acquire property that would and should have been property of the estate, and knowingly failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the Trustee.

### 5.    Deliberate Concealment of Facts Thwarted Plaintiffs' Knowledge

171.    Trustee and Katz credibly testified at trial that they did not know of Comu's fraud before Discharge.  They also both credibly testified that they did not learn the truth of Comu's financial situation, and uncovered the scope of Plaintiffs' fraud, only after reviewing documents produced in the 2013 Electronic Production.  Trustee credibly testified at trial that if she had known the truth about Comu's pre-petition assets and business activities earlier, she would have joined Plaintiffs' discharge-revocation claims.

172.    Comu argues that revocation is not available because "Plaintiffs demonstrably knew about [their] allegations before the discharge was entered."[534]  In support of this argument,

---

[530]    KLM Ex. 84 at 1, 3, 5, 7–8, 10–11.
[531]    *See, e.g.*, KLM Ex. 14 at 3, 5.
[532]    *See, e.g.*, Trustee Ex. 26 at 1.
[533]    KLM Ex. 85 at 6–7.
[534]    Debtor's Answer ¶ 4.

Comu claims that the transcript of the Creditors Meeting "shows that there was extensive questioning about Comu's relationship to Sunset Pacific and [TBG], and various specific allegations were made that Comu dominated the companies and had a larger ownership interest that [sic] was stated in his schedules."[535]

173.   The Creditors Meeting transcript reflects Comu was asked questions about his positions with and ownership interests in TBG[536] and Sunset Pacific,[537] but in response to these questions, Comu reiterated the same statements made in his Bankruptcy Filings, disclosed no new information, and, as described above, gave misleading testimony regarding his interests and the entities' assets.  The transcript also reflects that John Buckeye Epstein ("Epstein"), a former business associate of Comu who is not a creditor in the Bankruptcy Case, attended the Creditors Meeting and alleged that Comu had not been truthful in his testimony, with specific reference to TBG and Sunset Pacific, and that Comu "has since 1998 been on a spree of bilking investors."[538] Comu denied Epstein's allegations, and claimed that Epstein was a disgruntled former employee who was trying to "disrupt [Comu's] life"[539] and "confuse" Trustee.[540]

174.   This court finds, based on the totality of the evidence (which evidence is rather overwhelming), that Plaintiffs' Prior Counsel's concerns and Epstein's questions and concerns at the Creditors Meeting were insufficient to put the Plaintiffs on notice of the scope or nature of Comu's fraud with regard to Sunset Pacific and TBG.[541]

175.   Comu also relies on Plaintiffs' Prior Counsel's statement at the Creditors Meeting that he intended to object to discharge as evidence of Plaintiffs' pre-discharge knowledge of

---

[535]   *See* Def. Pretrial Br. at 2.
[536]   Def. Ex. 4 at 4, 6–12, 16–17, 25.
[537]   Def. Ex. 4 at 5, 8–9, 11–13, 16–17, 23.
[538]   Def. Ex. 4 at 13–15.
[539]   Def. Ex. 4 at 14.
[540]   Def. Ex. 4 at 18.
[541]   Bench Findings at 4:21.

Comu's fraud.[542]  Comu further relies on the Plaintiffs' petition filed in the Malpractice Action, and argues that Plaintiffs' Prior Counsel's "[m]issing the deadline to object to discharge" based on Comu's fraud "is an absolute bar" to Plaintiffs' revocation claims in this Adversary.[543]

176.    Katz credibly testified at trial that he had instructed Plaintiffs' Prior Counsel to object to discharge, and that he believed, based on Plaintiffs' Prior Counsel's representations, that an objection to Comu's Discharge would be filed on behalf of Plaintiffs on or before the Discharge Objection Deadline.  Katz also credibly testified that he understood Plaintiffs' individual claims in the Bankruptcy Case to be non-dischargeable, not based on Comu's ongoing overall fraud in the Bankruptcy Case, but because they were predicated on the New York Judgment in which the New York court awarded damages based on Plaintiffs' successful claims for common law fraud and securities fraud.[544]  Katz also credibly testified at trial that Plaintiffs' Prior Counsel's failure to file a timely objection occurred without his knowledge or consent.

177.    In any event, this court finds that Plaintiffs' Prior Counsel's statement at the Creditors Meeting that he intended to file an objection to discharge on behalf of Plaintiffs on the basis of "fraud" must have pertained to Comu's ***prior*** specific fraud established by the New York Judgment (which arose from Comu's common law and securities fraud in transactions occurring before 2007), and did not exhibit knowledge by Plaintiffs of Comu's ongoing fraud in and in connection with the Bankruptcy Case.

178.    To the extent Comu made any partial disclosures of facts to Trustee or Plaintiffs prior to the Discharge Date, ***such disclosures were incomplete, inaccurate and misleading, and calculated to deflect investigation by creditors and Trustee into Comu's true financial***

---

[542]    Def. Ex. 4 at 19.

[543]    *See* Def. Pretrial Br. at 2–3; *see also* JPTO at 6 (Defendants' Contentions) ("Plaintiffs missed the deadline to object to Comu's discharge, and the Plaintiffs have sued their former attorney for missing the deadline.").

[544]    JPTO Stip. Fact ¶ 4; *see also* KLM Ex. 1; KLM Ex. 340 at 4–12.

*circumstances and assets*. Comu's deliberate efforts to conceal the truth prevented the Plaintiffs from discovering the truth about Comu's business activities, assets and interests before the Discharge Date. Therefore, to the extent Comu partially disclosed any facts pertaining to the above false oaths and undisclosed assets, such disclosures do not constitute knowledge on the part of Plaintiffs of Comu's fraud before the Discharge Date.

179. Based on the above, there is ample evidence that Plaintiffs and Trustee did not know the true facts pertaining to Comu's false oaths and undisclosed assets until after the Discharge Date,[545] and that Plaintiffs "did not know" about Comu's fraud prior to the Discharge Objection Deadline.[546]

### D. COMU'S SECRET PRE-PETITION EQUITY STAKE IN GREEN AUTO

180. Comu's substantial and valuable interest in the Green Auto Stock, acquired in November 2009, was not disclosed in Comu's Bankruptcy Filings,[547] and was not discussed at the Creditors Meeting.[548] As the court noted in its Bench Findings, it is inexplicable that there is no discussion in Comu's Schedules or at the Creditors Meeting of the GANAS Stock received in 2009 or the Green Auto Stock or its value Comu would soon enjoy.[549]

181. Comu's failure to disclose his interests in the Green Auto Stock described herein was not based on any good faith basis, but was part of a deliberate effort to conceal assets from Trustee and Plaintiffs, which constitutes bad faith abuse of the bankruptcy process.

---

[545]   Bench Findings at 4:26-4:27.
[546]   Bench Findings at 4:20.
[547]   Bench Findings at 4:23-4:24; *see also generally* Trustee Ex. 94; Trustee Ex. 95.
[548]   *See generally* Def. Ex. 4.
[549]   Bench Findings at 4:24-4:25.

### 1.    GANAS—Comu's Pre-Petition Acquisition and Control (95 Million Shares)

182.    On October 26, 2009 Comu executed two stock purchase agreements by which TBG acquired 95,420,116 out of 95,746,817 outstanding shares of GANAS common stock (the "GANAS Stock").[550]

183.    *First*, TBG acquired 91,920,116 shares of GANAS common stock from GANAS shareholders in return for $75,000.[551]    By virtue of irrevocable stock power assignments executed by GANAS's former shareholders on October 26, 2009, TBG received GANAS stock certificates representing 91,920,116 shares of GANAS stock (the "GANAS Certificates").[552] Comu had the physical GANAS Certificates in his possession as of November 18, 2009.[553]

184.    *Second*, TBG acquired an additional 3,500,000 shares of GANAS common stock (the "R&A Shares") from GANAS shareholder Roundtree & Associates, LLC ("R&A"), in return for a $25,000 promissory note secured by a stock certificate reflecting the 3,500,000 shares.[554]

185.    On October 28, 2009, Comu elected himself "President" and "Director" of GANAS (which is a Delaware corporation).[555]

186.    Comu did not disclose any information in his Bankruptcy Filings or at the Creditors Meeting about GANAS.  Comu deliberately and with fraudulent intent concealed his executive positions with GANAS, and his interest in the GANAS Stock acquired in October of 2009, which were plainly material to the bankruptcy estate.

---

[550]    JPTO Stip. Fact ¶ 23; *see also* Trustee Ex. 74; Trustee Ex. 75.
[551]    JPTO Stip. Fact ¶ 23; Trustee Ex. 75.
[552]    JPTO Stip. Fact ¶ 23; Trustee Ex. 76.
[553]    Trustee Ex. 76 at 1 (handwritten note on GANAS stock power assignments and stock certificates —"picked up by CJ Comu on 11/18/09").
[554]    JPTO Stip. Fact ¶ 23; Trustee Ex. 74; *see also* KLM Ex. 167 at 1.
[555]    JPTO Stip. Fact ¶ 24, ¶ 25; *see also* Trustee Ex. 78–81; KLM Ex. 237 at 3 (pre-merger GANAS term sheet providing that "GNAS's existing officers and directors shall resign in favor of officers and directors to be designated by TBG.").

## 2. Green Auto Stock – Pre-Petition Equity *Plus* Anti-Dilution Rights

187.    On November 4, 2009, just a few short weeks before the Petition Date, Comu executed documents authorizing GANAS to enter into a reverse merger with Go Green USA, LLC ("Go Green"), a Nevada limited liability company.[556]  Then, acting as President of both GANAS and TBG, Comu executed the *Merger Agreement and Plan of Reorganization* dated as of November 4, 2009 (the "Merger Agreement") between GANAS, Go Green, and TBG.[557] Green Auto was the surviving entity of the merger.[558]

188.    Christopher McNeill from the B&G law firm represented TBG in the Green Auto Merger.  As McNeill testified at trial, and as the merger documents reflect, Comu played a key role in the transaction.[559]  Comu was personally involved in drafting and revising the Green Auto Merger documents.[560]

189.    Dave Welch, an insider of TBG, Regus Advisors, and GETG, worked closely with Comu on the Green Auto project.[561]  As set forth *infra*, Welch took a substantial stake in TBG's equity in Green Auto through his company, First Market Services, Inc.[562]

190.    At the time of the Green Auto Merger, GANAS was a publicly reporting, but non-operating shell company that, according to Comu, could be publicly traded through broker-dealers registered with certain over-the-counter ("OTC") stock markets.[563]

---

[556]    JPTO Stip. Fact ¶ 25, ¶ 31; Trustee Ex. 83; Trustee Ex. 87.
[557]    JPTO Stip. Fact ¶ 25, ¶ 31; *see also* Trustee Ex. 19 at 26; Trustee Ex. 83; Trustee Ex. 87.
[558]    JPTO Stip. Fact ¶ 26, ¶ 29; *see also, e.g.*, KLM Ex. 150 at 4 (Green Auto SEC Form 10-K for the Fiscal Year ended December 31, 2012, summarizing corporate history, including Green Auto Merger).
[559]    *See also generally* Brown Exam.
[560]    KLM Ex. 234 at 1 (email from Comu stating, "we will be drafting for the closing docs"); *see also* KLM Ex. 236 (attaching draft documents); *see also* Trustee Ex. 62; KLM Ex. 251; KLM Ex. 292.
[561]    *See, e.g.*, KLM Ex. 237 at 1 (September 13, 2009 email from Comu to Welch attaching GANAS term sheet, and saying: "This is a draft of the Term Sheet for OUR deal. ....."); *see also* KLM Ex. 233 at 1; KLM Ex. 236 at 1.
[562]    *See infra* Section E(1)(a), E(5)(b).

191.    Defendants now stipulate that *as of the "effective date" of the Green Auto Merger, TBG had the right to receive new stock certificates reflecting 95,420,116 shares of Green Auto stock,[564] which arose from the automatic conversion of TBG's GANAS Stock into 95,420,116 shares of Green Auto stock (the "Conversion Shares").*[565]

192.    TBG also acquired, as of the effective date, a substantial pre-petition interest in future and additional issuances of Green Auto stock pursuant to TBG's "anti-dilution" clause in Section 1.12 of the Merger Agreement,[566] which ensured TBG would retain—with no further consideration—a 40% equity stake in Green Auto for two years after the Green Auto Merger.[567] This was a valuable interest negotiated by Comu through B&G before the merger.[568]

---

[563]    JPTO Stip. Fact ¶ 27 ("At the time the Merger Agreement was entered into, GANAS was a shell corporation in that it conducted no business operations."). Contrary to this stipulation, Comu verified in the Utah Action that GANAS "was an ongoing concern with meaningful operations" prior to the Green Auto Merger. KLM Ex. 12 at 7.

[564]    JPTO Stip. Fact ¶ 34 ("As of the effective date of the Green Auto Merger, TBG had the right to receive new stock certificates reflecting 95,420,116 shares of Green Automotive stock"); Section 3.04 of the Merger Agreement acknowledged that 95,746,817 shares of GANAS common stock were outstanding at the time of the merger (95,420,116 of which had been acquired by TBG on October 26, 2009 from GANAS shareholders as described above). JPTO Stip. Fact ¶ 28; Trustee Ex. 19 at 14.

[565]    Pursuant to Section 1.01 and Section 1.11 of the Merger Agreement, at the "Effective Time" of the merger Go Green was merged with and into GANAS, and GANAS became the "Surviving Corporation," meaning that GANAS's "existence, and all its purposes, powers, and objectives will continue unaffected and unimpaired by the Merger." JPTO Stip. Fact ¶ 26, ¶ 29; Trustee Ex. 19 at 1. But "[t]he name of the Surviving Corporation from and after the Effective Time shall be 'Green Automotive Company Corporation.'" JPTO Stip. Fact ¶ 26, ¶ 29; Trustee Ex. 19 at 3.

[566]    Trustee Ex. 19 at 3–4.

[567]    JPTO Stip. Fact ¶ 30; *see also* Trustee Ex. 19 at § 1.12.

[568]    McNeill sent an email to Comu on October 15, 2009 discussing "a strategic way to minimize The Barclay Group's risk and maximize the value of its 40% in Go Green post-merger," and outlining TBG's post-merger interests:

> At closing of the merger, The Barclay Group, Inc. will own the 95,746,817 shares currently outstanding. The shares to be issued to Go Green's members in exchange for their Go Green membership interests will be shares newly issued by GANAS, not shares transferred from Barclay. Accordingly, if the 95,746,817 shares held by Barclay will represent 40% post-merger, then the Go Green members must receive 143,620,225 newly issued shares, for a total of 239,367,042 shares issued and outstanding post-merger.

KLM Ex. 251 at 1.

193.     By virtue of the anti-dilution clause or in relation to certain loans, TBG received another 36,000,000 Green Auto shares in 2010 (the "Dilution Shares"),[569] which were in addition to TBG's 95,420,116 Conversion Shares acquired before the Petition Date.

194.     Thus, based on facts Comu now stipulates (but which he previously concealed or denied), between 2009 and 2010, TBG received or had a right to receive 131,420,116 Green Auto shares (the "Green Auto Stock") stemming from pre-petition interest in the Green Auto Merger.

195.     Comu did not disclose his or TBG's pre-petition interests in the Green Auto Stock in his Bankruptcy Filings or at the Creditors Meeting.[570]

196.     ***Although Defendants now stipulate that the Green Auto Merger was effective on November 5, 2009,[571] Comu has maintained for the last four years that he did not disclose the Green Auto Stock because the Green Auto Merger was not effective until January, 2010 (after the Petition Date), when Comu received the physical Green Auto Stock certificates.*** Comu took this position in Debtor's Answer,[572] at his 2011 deposition,[573] in Defendants' Pretrial Brief,[574] and (contradicting the JPTO) testified at trial that the transaction was not complete until after the Petition Date because he did not yet have new physical Green Auto stock certificates.

197.     Comu's position exhibits a willful intent to conceal the Green Auto Stock from creditors.   Documents produced in the 2013 Electronic Production confirm that Comu

---

[569]     JPTO Stip. Fact ¶ 49 (13,000,000 shares); ¶ 50 (2,000,000 shares); ¶ 51 (10,000,000 shares); ¶ 52 (11,000,000 shares); *see also infra* Section E(2)(a).

[570]     Bench Findings at 4:23-4:25; *see also generally* Trustee Ex. 94; Trustee Ex. 95; Def. Ex. 4.

[571]     JPTO Stip. Fact ¶ 33.

[572]     Debtor's Answer ¶ 9.

[573]     Trustee Ex. 96 at 2–3 (in response to Trustee counsel's question regarding why GANAS was not listed in his Schedules, Comu testified: "There was a transaction in progress.  We didn't know if it was going to close or not."); *id.* at 3 (claiming that the Green Auto Merger closed on the "date of the certificate"—or January 13, 2010).

[574]     Def. Pretrial Br. at 4 (admitting that "[i]t is true that Comu knew or should have known that TBG was going to receive stock in Green Auto soon after the [Petition Date]," but arguing there was "nothing [Comu] could have done to speed up the issuance of the [Green Auto] stock, and a mere expectation that he was going to receive stock does not make that stock property of the estate.").

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 71 OF 141**

undeniably knew before the Petition Date that the Green Auto Merger was effective in November of 2009, and that he benefitted from that fact before the Petition Date.

198. *First*, Comu was required to disclose in his Schedules all "[e]quitable or future interests."[575] Comu admits that he "knew or should have known that TBG was going to receive stock in Green Auto soon after the" Petition Date.[576] Thus even if Comu had a "mere expectation,"[577] he was required to disclose it, and he has offered no reasonable explanation for failing to do so. As discussed earlier herein, in his Bankruptcy Filings, not only did Comu claim that he had a 1% interest in TBG *that was worth $0* (when he really essentially owned and controlled TBG entirely as his own)[578] but, when asked at the Creditors Meeting if TBG had "any assets," Comu claimed: "I don't believe so unless whatever has been disclosed in the bankruptcy filing."[579]

199. *Second*, by the Merger Agreement's terms, the Green Auto Merger was effective on November 5, 2009,[580] which is confirmed by Green Auto's SEC filings.[581] Comu received an email from McNeill, TBG's lawyer, on November 10, 2009, confirming this fact: "We have

---

[575]    Trustee Ex. 94 at 5 §19.

[576]    Def. Pretrial Br. at 4; *see also generally* Section E(2).

[577]    Def. Pretrial Br. at 4.

[578]    Trustee Ex. 94 at 4–5.

[579]    Def. Ex. 4 at 6.

[580]    By the Merger Agreement's plain terms, the Green Auto Merger became effective "at the date and time the Merger Certificates are filed with the latter of the respective offices of the Secretary of State of the State of Delaware and the Secretary of State of the State of Nevada (the 'Effective Time')." Trustee Ex. 19 § 1.02 (emphasis in original). On November 4, 2009, the Certificate of Merger for GANAS and Go Green was filed with the Delaware Secretary of State. JPTO Stip. Fact ¶ 32; Trustee Ex. 89. On November 5, 2009 a certified copy of the Articles of Merger between GO Green and GANAS was filed with the Nevada Secretary of State. JPTO Stip. Fact ¶ 32; Trustee Ex. 88. Comu executed both documents on behalf of GANAS. JPTO Stip. Fact ¶ 32; Trustee Ex. 88 at 8; Trustee Ex. 89 at 2. By virtue of these filings the "Effective Date" of the Green Auto Merger was November 5, 2009. *See* JPTO Stip. Fact ¶ 33; *see also* KLM Ex. 255 at 1.

[581]    *See, e.g.*, KLM Ex. 150 at 4.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 72 OF 141**

received confirmation that the merger certificates have been accepted by both Delaware and Nevada, with an effective date for the merger of November 5, 2009."[582]

200.    *Third*, Comu began publicizing the merger's closing, and soliciting buyers for the Green Auto Stock, as early as November 4, 2009.[583]  In a November 18, 2009 email, Comu wrote that TBG was "pleased to announce the completion" of the merger, and offered to forward a Green Auto private placement memorandum ("PPM") upon request.[584]  The Green Auto PPM that Comu forwarded to investors identified TBG as a "Principal Stock Holder" that owned 96,227,725 shares.[585]  Comu continued to pursue investors through the Petition Date, as evidenced by Comu emails produced in the 2013 Electronic Production, many of which refer to the merger's November effective date.[586]  These communications with potential investors would violate the SEC Injunction if the Green Auto Merger was not yet effective, as Comu claimed in this Adversary Proceeding.

201.    *Fourth*, TBG arranged to transfer millions of shares to affiliates, and received at least $155,000 from the sale of Green Auto Stock to private buyers before the Petition Date.[587] These buyers and transferees all received Green Auto certificates from Green Auto's designated

---

[582]     KLM Ex. 255 at 1 (attaching accepted corporate filings).

[583]     Comu wrote in a November 4, 2009 email: "[F]or the record.  The Barclay Group Inc. owns 99.63% of the Public Shell that owns 100% of Go Green Auto [GANAS Corp.] and has an exclusive one year Investment Advisory Agreement."  KLM Ex. 253 at 2.

[584]     KLM Ex. 171 at 1–2.

[585]     KLM Ex. 300 at 56609_31.  A January 1, 2010 Green Auto summary also identified TBG as a major "stakeholder," and listing TBG is listed as Green Auto's investor contact.  KLM Ex. 356 at 52360, 52360_6.  Notably, a draft PPM for Green Auto forwarded to Comu on November 8, 2009, identified "C.J. Comu" as a "Principal Stock Holder."  KLM Ex. 254 at 1; *id.* at 36697_17–18.

[586]     KLM Ex. 300 at 1 (December 4, 2009 email: "60 days ago, we started and completed a Reverse Merger of the First major 100% Electric Company to go public in the USA."); KLM Ex. 309 at 1 (December 29, 2009 email: "[I'm] back in corporate finance and just recently listed another company Green Automotive Company (Symbol: GNAS) in November with three more in new year"); *see also* KLM Ex. 172 at 1 (December 13, 2009 email: "Check out my latest gig….  Lots in motion for new year—let's go make a whole lotta dough!!!!").

[587]     *See infra* Section E(1), E(3)(a).

stock transfer agent, Olde Monmouth Stock Transfer ("OMST")[588] on January 13, 2010,[589] which certificates were issued according to Comu's instructions.[590]

202.    Comu's trial stipulation that the Green Auto Merger was effective before the Petition Date does not mitigate his fraud – it adds insult to injury.  Had Comu disclosed TBG's interests in Green Auto in his Bankruptcy Filings based on the facts he now stipulates, the Green Auto Stock could have likely been used to satisfy claims of creditors in this Bankruptcy Case. Instead, as described below, Defendants used the time between the Petition Date and trial to transfer and sell the Green Auto Stock, in a deliberate attempt to place them out of creditors' reach.  This conduct reflects Comu's willful intent to defraud his creditors.

### 3.    Thirty Cents Per Share – the Verified "Comu Value"

203.    At Comu's direction, starting before the Petition Date, and continuing until at least December of 2013, Comu has been selling Green Auto Stock for between $0.10 and $0.50 per share.[591]

204.    In a 2013 lawsuit filed by Green Auto against TBG in Utah (the "Utah Action"),[592] Comu submitted an affidavit dated March 25, 2013, verifying that Green Auto

---

[588]    JPTO Stip. Fact ¶ 46.
[589]    KLM Ex. 49 at 1 (identifying recipients of first Green Auto stock issue).
[590]    *See* KLM Ex. 313 at 3–8.
[591]    KLM Ex. 201 at 1 (June 30, 2010 Comu email informing nominee company that TBG's Green Auto stock shares "are currently quoted @ .50/sh"); *see also* KLM Ex. 52 (TBG: $0.20 to $0.50 per share); Trustee Ex. 47 (DAPTCO Trust: $0.20 per share); Trustee Ex. 50 (TKY Trust: $0.20 to $0.50 per share); *see also infra* Section E(3) (TBG's direct and indirect sales of Green Auto Stock for $0.10 - $0.50 per share).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 74 OF 141**

shares held by TBG were valued at $0.30 per share (the "Comu Value"), and specifically valued 1,000,000 restricted shares held by TBG at $300,000.[593]

205.    Based on the Comu Value, TBG's Green Auto Stock (131,420,116 shares) was worth approximately $39,426,232, and even at a mere $0.10 per share, TBG's Green Auto Stock was worth approximately $13,142,011.

## E.    COMU'S FRAUDULENT CONCEALMENT AND DISSIPATION OF ESTATE ASSETS

### 1.    Pre-Petition Division and Concealment of Green Auto Stock

206.    Beginning before the Petition Date, Comu deployed an elaborate scheme to dissipate TBG's Green Auto Stock—and collect millions of dollars in cash proceeds—that should have been available to his creditors.  Comu perpetrated this fraud through an international network of affiliates and accounts controlled by Comu or Comu insiders.

### *(a)    The Green Auto MOU*

207.    Comu began preparations to dissipate and conceal TBG's Green Auto Stock before the Green Auto Merger was consummated.[594]

208.    On November 24, 2009, Comu executed on behalf of TBG a *Memorandum of Understanding* (the "Green Auto MOU"),[595] between First Market Services, Inc., a Texas corporation ("FMS"), and Maybourne Ltd ("Maybourne"), an offshore entity.[596]

---

[592]    *See generally* KLM Ex. 12; KLM Ex. 13.  *Green Automotive Company v. The Barclay Group, Inc.*, Case No. 130902103, in the Third Judicial District Court for Salt Lake County, Utah.  In the Utah Action, Green Auto sought a preliminary injunction prohibiting TBG from transferring the Utah Shares, which TBG received by virtue of the Green Auto Merger except under certain terms in compliance with SEC rules.  KLM Ex. 13 at 2.  The Utah Court issued a Temporary Restraining Order on March 22, 2013 prohibiting TBG from transferring the Utah Shares, KLM Ex. 13 at 2–3, and granted Green Auto's request for a preliminary injunction on May 6, 2013 (the "Utah Injunction"), KLM Ex. 13 at 5.  Based on evidence that TBG's trading of the Utah Shares jeopardized Green Auto's ability to obtain financing and threatened to devalue its stock, KLM Ex. 13 at 3–4, the Utah court concluded that the Utah Shares "were restricted, and should have had a restrictive legend, but did not."  KLM Ex. 13 at 4.  Comu verified under oath the statements of fact set forth in TBG's opposition to Green Auto's request for a TRO.  KLM Ex. 12 at 14.

[593]    KLM Ex. 12 at 10, 14.

[594]    *See, e.g.*, KLM Ex. 352 at 1–2 (November 1, 2010 email from Comu to B&G seeking assistance with establishing an escrow account for Green Auto stock).

209.    Dave Welch, an insider of TBG, GETG and Regus Advisors,[597] executed the Green Auto MOU on behalf of FMS,[598] which has offices at 11700 Preston Road in Dallas (the "11700 Preston Road Address"),[599] and is (or was at the time) actively involved with GETG and TBG business.[600] Comu and Welch worked closely together to complete the Green Auto Merger in 2009,[601] and sell TBG's Green Auto Stock after the Petition Date.[602]

210.    Per the Green Auto MOU, the parties intended to divide TBG's Conversion Shares equally (31,790,027 shares each), and place the shares into a new entity for their "equal benefit and equal ownership,"[603] effectively shifting two-thirds of TBG's Conversion Shares to other entities before the Petition Date without depriving TBG of its valuable interest in the stock.

### (b)    Green Car Automotive International – BVI

211.    To effectuate the Green Auto MOU, Comu asked the law firm B&G for assistance, forming a "facilitator" entity for "privacy," and to hold the parties' respective "equity holdings" pending sale.[604]    In December of 2009, B&G drafted a partnership agreement

---

[595]    Trustee Ex. 73.
[596]    Maybourne has addresses in Portola, BVI (*see, e.g.*, KLM Ex. 117 at 106), and Port-Louis, Mauritius (*see, e.g.*, KLM Ex. 156 at 4). Gary Zinn ("Zinn") executed the Green Auto MOU for Maybourne (Trustee Ex. 73), and attorney Robert Kasprzak ("Kasprzak") holds an interest in the Green Auto MOU via Maybourne (*see, e.g.*, KLM Ex. 352 at 1–2).
[597]    *See supra* Section B(3), C(4).
[598]    Trustee Ex. 73.
[599]    KLM Ex. 117 at 51.
[600]    KLM Ex. 104 at 1 (GETG); KLM Ex. 265 at 1 (January 28, 2010 email from Comu regarding TBG's work on the T3 Networks project noting that "ALL INVESTOR calls are managed by" FMS, and directing "all potential investors" to an FMS email);
[601]    As noted *supra*, correspondence between Comu and Welch in September of 2009 refers to the Green Auto Merger as "OUR deal." KLM Ex. 237 at 1.
[602]    *See, e.g.*, KLM Ex. 101 at 1 (March 16, 2010 email from Comu to Welch discussing Green Auto sales proceeds, stating: "TBG books and bank acct open 4U anytime.").
[603]    Trustee Ex. 73.
[604]    KLM Ex. 98 at 1–2 (November 30, 2009 email from Comu to McNeill requesting assistance forming a new entity in which to pace the respective "equity holdings," of TBG, FMS and Maybourne, which Comu wanted to "operate similar to a LLC where the members would have their respective ownership and limited liability. We want to place our equity holdings ***into one facilitator for privacy, protection and control***.") (emphasis added).

documenting TBG's "joint venture" with Maybourne and FMS,[605] which proposed TBG as controlling partner of the joint venture's holdings.[606]

212.     Shortly before or after the Petition Date, "Green Car Automotive International Limited," a BVI corporation ("Green Car"), was formed for the purpose of carrying out the Green Auto MOU.[607]

213.     Newhaven Nominees Limited ("Newhaven"),[608] a London-based firm that provides corporate fiduciary services,[609] was appointed as nominee[610] to serve as Green Car's

---

[605]     KLM Ex. 305 at 1 (with joint venture agreement attached, drafted for Comu, Welch and Zinn signatures).

[606]     The draft partnership agreement proposed the formation of a Texas partnership called "Green Holdings Joint Venture," with a principal place of business at TBG's 18208 Preston Road Address, in which TBG would serve as "Managing Partner" with the "exclusive authority, duty, and responsibility to manage, supervise, operate, and control the business, affairs, and property of the Partnership," including the right to "control and manage the Partnership's assets." KLM Ex. 305 at 57093_1–3.

[607]     KLM Ex. 362 at 21082 _1–9 (SPA and escrow agreement, both dated February 12, 2010, by which Maybourne transferred to Green Car 20 million Green Auto shares received from TBG by virtue of the Green Auto MOU, and through which Green Car facilitated the sale of Maybourne's Green Auto stock). Other than the November 24, 2009 Green Auto MOU, Comu did not produce any final agreement or corporate documents reflecting TBG's joint venture with Maybourne and FMS, but documents obtained in the 2013 Electronic Production, which are addressed herein, indicate the parties created Green Car and used it to house and sell Green Auto stock.

[608]     Newhaven Group *a/k/a* Newhaven Registrars Limited ("Newhaven Group"), is a foreign corporate services firm based in London, UK that operates through various offshore affiliates and subsidiaries, including British Virgin Islands ("BVI") entities Newhaven Nominees Ltd. ("Newhaven Limited"), Newhaven Corporate Services (B.V.I.) Limited ("Newhaven Corporate"), and Newhaven Registrars Ltd – BVI ("Newhaven Registrars"). *See, e.g.*, KLM Ex. 362 at 21080; *see also generally* Newhaven websites referenced in Comu's correspondence: http://www.newhavengroup.net/ (Newhaven Group); http://www.newhavenlimited.net/ (Newhaven Limited); www.Newhavenbvi.com (Newhaven's BVI entities). The various Newhaven entities are referred to herein jointly as "Newhaven."

[609]     Newhaven provides a variety of corporate fiduciary services, including "nominee" shareholders and directors, and the establishment of escrow bank accounts held in the nominee's name for the benefit of the entity's principals, which effectively conceals the true beneficial owner's identity in corporate documents. *See, e.g.*, KLM Ex. 177 at 1 (bank account); KLM Ex. 275 at 1 (nominee services); *see also generally* http://www.newhavenbvi.net/services/directorsshareholders/;

[610]     Comu testified at trial that, through TBG or Regus, he provides such nominee services to clients. But when he set up the Regus Advisors website in July of 2010, Comu instructed Peter Knight to remove "nominee services" from both TBG's and Regus Advisor's website because he was "concerned there is too much mention of securites etc .... [sic]." KLM Ex. 227 at 1.

---

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                                    PAGE 77 OF 141

sole officer and director, and to serve as escrow agent, which concealed the parties' beneficial ownership of the stock held by Green Car.[611]

214.    As discussed further *infra*,[612] after the Petition Date, Comu also used corporate nominees to conceal TBG's share of the "Green Car business"[613] under the Green Auto MOU, as well as to conceal assets held in other entities that Comu controls individually.[614]

### 2.    Defendants' Green Auto Shares

215.    TBG's Green Auto Stock transfers are traceable through stock transfer ledgers produced by Green Auto's registered transfer agents,[615] OMST and Action Stock Transfer[616]

---

[611]    KLM Ex. 362 at 21082_4, 9 (Newhaven executing SPA and escrow agreement as "Director," "President," and "Escrow Agent" for Green Car).

[612]    *See infra* Section E(5)–(6).

[613]    KLM Ex. 195 (June 28, 2010 email from Newhaven: "Please find below the details of the nominee company to be used for the purposes of WP''s Green Car business.").

[614]    KLM Ex. 195 (June 28, 2010 Newhaven email to Comu relating the "details of the nominee company to be used for" TBG's transfer of Green Auto stock through WPA, *i.e.*, "WPA's Green Car business."); *see also* KLM Ex. 176 at 1 (Westgate–BVI); KLM Ex. 272 (CPI–BVI, and WPA–BVI); KLM Ex. 206 at 13542 (WPA and CPI).  Comu's primary Newhaven contacts were Reuben Anstock, Fergus Anstock, and Charlotte Jacob.  *See, e.g.*, KLM Ex. 175; KLM Ex. 176 at 1.

[615]    Generally speaking, a transfer agent is an entity that is retained by a corporation to maintain records of investors and account balances and transactions, to cancel and issue certificates, to process investor mailings and to deal with any associated problems (i.e., lost or stolen certificates).  *See generally, e.g.*, William Campbell Ries, *Corporate Trust Services – Agency Roles*, *in* 1 REG. OF INVEST. MGMT. & FIDUCIARY SERV. § 12:17 ("Transfer Agent") ("The transfer agent is responsible for the transfer of registered securities from one holder to another…. [T]he transfer agent records changes in ownership by cancelling old certificates and issuing new ones and records the information in its shareholder files.").  Transfer agents are required to register with the Securities and Exchange Commission ("SEC"), and they are subject to certain SEC recordkeeping rules.  *See generally, e.g.*, Jerry W. Markham & Thomas Lee Hazen, *Clearing and Settlement – Transfer Agents*, *in* 23A BROKER-DEALER OPERATIONS SEC. & COMM. LAW § 13:12; *see also* Trustee Ex. 42, Troster Exam at 69:16–71:21.

[616]    AST replaced OMST as Green Auto's transfer agent at the end of 2011.  *See, e.g.*, KLM Ex. 161 at 1 (AST began handling stock transfers for Green Auto on November 29, 2011); Trustee Ex. 42, Troster Exam at 64:16–19, 117:11-18.

---

("AST").[617]  Matt Troster from OMST testified via deposition regarding OMST's role as transfer agent for Green Auto stock.[618]

216.    In accordance with Comu's instructions in a letter dated January 5, 2010 (shortly after the Petition Date, but before Comu filed his Bankruptcy Filings) (the "January 5, 2010 Instruction Letter"),[619] OMST cancelled TBG's GANAS Certificates (reflecting 91,920,116 GANAS shares), and issued 91,920,116 new Green Auto stock certificates to various recipients (including the private buyers above) on January 13, 2010.[620]

(a)        The TBG Shares (54,390,099 Received – 1,804,439 Turned Over)

217.    In 2010, TBG received new stock certificates from OMST reflecting a total of 54,390,099 Green Auto shares (the "TBG Shares").[621]  At the Comu Value, the TBG Shares were worth approximately $16,317,029, and at $0.10 per share, they were worth approximately $5,439,009.

218.    Pursuant to Comu's January 5, 2010 Instruction Letter,[622] OMST sent new Green Auto stock certificates to TBG reflecting 2,000,000 free trading shares and 12,890,099 restricted

---

[617]    See KLM Ex. 49 (OMST Green Auto 2010 stock transfer ledger); KLM Ex. 51 (OMST 2011 Green Auto transfer ledger); KLM Ex. 117 (OMST list of active Green Auto shareholders as of October 3, 2011); KLM Ex. 160 (AST report reflecting active shares for certain Defendants as of February 18, 2014); KLM Ex. 161 (AST Green Auto stock transfer ledger for November 29, 2011 through February 17, 2014).
[618]    See generally Trustee Ex. 42, Troster Exam.
[619]    KLM Ex. 313 at 3–8; see also JPTO Stip. Fact ¶ 47.
[620]    KLM Ex. 313 at 3–8; KLM Ex. 49 at 1; see also JPTO Stip. Fact ¶ 47.
[621]    This reflects 18,380,099 out of the Conversion Shares (14,890,099 from the GANAS Certificates plus the 3,500,000 R&A Shares), and an additional 36,000,000 Dilution Shares.
[622]    KLM Ex. 313 at 4, 8.

shares,[623] which reflects a portion of the GANAS Certificates (91,920,116 shares) that TBG acquired on October 26, 2009.[624]

219.    On March 9, 2010, TBG received a single certificate reflecting the conversion of the 3,500,000 R&A Shares that TBG acquired on October 26, 2009.[625]

220.    Over the remainder of 2010, TBG received an additional 25,000,000 Dilution Shares, which include: 13,000,000 shares on March 25;[626] 2,000,000 shares on July 31;[627] 10,000,000 shares on August 13.[628]

221.    TBG received an additional 11,000,000 shares on December 30, 2011.[629]    This stock was issued as part of a recapitalization transaction in which TBG agreed to forgive $125,000 in loans[630] made by TBG to Green Auto in return for additional stock (the "TBG Loan Recap").[631]

222.    As of February 18, 2014, TBG held 3,804,538 Green Auto shares, out of which 1,804,439 shares were turned over to Trustee after trial.[632]

223.    The remaining 77,030,017 shares from the Green Auto Stock have been sold for cash or transferred to Comu affiliates.[633]

---

[623]    KLM Ex. 49 at 1.  These 14,890,099 shares were reflected in Certificate No. 1080 (2,000,000 free trading shares), Certificate No. 1081 (10,000,000 restricted shares), and Certificate No. 1082 (2,890,066 restricted shares).

[624]    JPTO Stip. Fact ¶ 47; KLM Ex. 49 at 1.  As set forth *infra* in Section E(3)–(5), Comu caused TBG to transfer the remaining 77,030,017 shares from the GANAS Certificates to various non-party affiliates, including Sunset Pacific, TKY Trust, DAPTCO Trust, FMS, Maybourne, and others.

[625]    JPTO Stip. Fact ¶ 48; KLM Ex. 49 at 3 (Certificate No. 1130).

[626]    JPTO Stip. Fact ¶ 49; KLM Ex. 49 at 4.  The 13 million shares received on March 25, 2010 were reflected in Certificate No. 1157 (2 million shares), Certificate No. 1158, (2 million shares), Certificate No. 1159 (3 million shares), Certificate No. 1160 (2 million shares), Certificate No. 1161, and (2 million shares), Certificate No. 1162 (2 million shares).

[627]    JPTO Stip. Fact ¶ 50; KLM Ex. 49 at 11 (Certificate No. 2504).

[628]    JPTO Stip. Fact ¶ 51; KLM Ex. 49 at 12 (Certificate No. 2531).

[629]    JPTO Stip. Fact ¶ 52; KLM Ex. 49 at 51 (Certificate No. 3431).

[630]    KLM Ex. 139 at 12 (summarizing TBG loans to Green Auto).

[631]    KLM Ex. 273 (August 25, 2010 Comu email by Comu referencing $125,000 loan to Green Auto); *see also* KLM Ex. 116 at 22 (describing conversion of TBG debt to new shares).

[632]    JPTO Stip. Fact ¶ 55; Inj. Status Report at 11 (items #1, #5–#9).

### (b)  The Utah Shares (1,000,000 Shares Outstanding)

224.    According to Green Auto's SEC filings, TBG intended to reissue 1 million Green Auto shares related to the Utah Action in the name of Cede & Co.,[634] which are reflected in Certificate No. 2553 and Certificate No. 2544 (the "Utah Shares").[635]

225.    The Utah Shares were apparently transferred by TBG to Westor Capital Group, Inc. ("Westor") on or about January 1, 2013, when TBG opened a brokerage account with Westor and deposited with Westor 1,000,000 Green Auto shares.[636] After the account was opened, Westor sold 8,100 Green Auto shares on behalf of TBG.[637]

226.    On or about April 16, 2013, the Securities Investor Protection Corporation ("SIPC") commenced an action under the Securities Investor Protection Act ("SIPA") in the United States District Court for the Southern District of New York (the "Westor Action").[638]

227.    On April 16, 2013, the District Court entered a liquidation order pursuant to the provisions of SIPA.[639]  The District Court then transferred the action to the United States Bankruptcy Court for the Southern District of New York,[640] where the Westor Action is pending as an adversary proceeding (the "Westor Adversary").[641]

---

[633]     *See infra* Section E(1)(c)–(e) & E(3)–(5).
[634]     KLM Ex. 150 at F-26.
[635]     KLM Ex. 13 at 3.
[636]     JPTO Stip. Fact ¶ 66.
[637]     JPTO Stip. Fact ¶ 66.
[638]     JPTO Stip. Fact ¶ 67.  The Westor Action is styled *Securities Investor Protection Corp. v. Westor Capital Group, Inc.*, Case No.  1:13-cv-02531-HB, in the U.S. District Court for the Southern District of New York.  The Court may take judicial notice of the docket sheet and pleadings filed in the Westor Action, which are available on Pacer.  *See* FED. R. EVID. 201.
[639]     JPTO Stip. Fact ¶ 68; *see also* Westor Action, Doc. No. 4.  The Court in the Westor Action appointed a trustee for the liquidation of Westor's business.
[640]     JPTO Stip. Fact ¶ 68.
[641]     The Westor Adversary is styled *Securities Investor Protection Corp. v. Westor Capital Group, Inc.*, Adversary No. 13-01331-cgm, pending in *In re The Bankruptcy Link*, Bankruptcy Case No, 95-88888, in the U.S. Bankruptcy Court for the Southern District of New York.  The Court may take judicial notice of the docket sheet and pleadings filed in the Westor Adversary, which are available on Pacer.  *See* FED. R. EVID. 201.

228. On May 17, 2013, Comu caused to be filed on behalf of TBG a claim form in the Westor Adversary in which Comu asserted on behalf of TBG a claim in the amount of $37,993.84, and a claim for the 991,900 shares of Green Automotive stock that was transferred to Westor for sale,[642] which reflects the remaining balance of the 1,000,000 Utah Shares.

229. According to an interim report filed by the trustee in the Westor Adversary on February 12, 2014, the Westor trustee has received 139 customer claims, and "issued 84 determination letters allowing 74 claims, and denying 10 claims," and the trustee "continues to analyze and investigate the remaining claims."[643]

### (c)     The Comu Certificate (300,000 Shares Turned Over)

230. Pursuant to Comu's January 5, 2010 Instruction Letter,[644] OMST transferred 300,000 restricted shares from TBG to Comu personally (the "Comu Certificate").[645]

231. The Comu Certificate was not disclosed in any filing in the Bankruptcy Case until February 29, 2012, when Trustee filed an interim report disclosing that Comu had a "right to receive" the Comu Certificate, which would be included in the estate.[646] The Comu Certificate was turned over to Trustee in 2010, apparently as part of the March 2010 Production.[647]

232. Citing the March 2010 Production, Comu claims that Plaintiffs' discharge-revocation claim should be denied because he "promptly delivered" the Comu Certificate "to the

---

[642]   JPTO Stip. Fact ¶ 69; *see also* Inj. Status Report at 11 (item #11).
[643]   Westor Adversary, Doc. No. 30 at ¶ 6.
[644]   KLM Ex. 313 at 4.
[645]   KLM Ex. 49 at 1.
[646]   Bankr. Doc. No. 37.
[647]   The Trustee Notes do not reflect whether or when the Comu Certificate was turned over to Trustee, although notes from January 17, 2012 indicate Trustee was considering whether to "sell certain stock issued to the Debtor which the Debtor wishes to purchase from the estate." Def. Ex. 5 at 2. Trustee testified—and Plaintiffs do not dispute—that the Comu Certificate was delivered to Trustee as part of the March 2010 Production.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 82 OF 141**

Trustee, and Plaintiffs and their attorney physically reviewed the stock certificate before the deadline to object to [Comu's] discharge."[648]  Citing the Trustee's Notes, Comu argues

> that, on March 1, 2010, debtor Comu's attorney met with the Trustee to deliver documents which the Trustee had requested, and that on March 24, 2010 Plaintiffs' attorney met with the Trustee to review the documents produced by Comu, and that the attorney and the Trustee discussed pursuing fraud claims against Comu.[649]

233.    The Trustee's Notes reflect an entry stating, "Debtor atty to come meet with Diane and bring documents on Monday 3/8/10 at 3:00," but they do not specify what documents were produced as part of Comu's March 2010 Production.[650]  Trustee's Notes also reflect that on "3/24/10 – Emil Lippe, Jr. met with [Trustee] and reviewed documents produced by Debtor," but the notes do not specify what documents were reviewed by Plaintiffs' Prior Counsel.[651]

234.    Although Trustee confirmed receiving the Comu Certificate before the Discharge Date, Trustee credibly testified that she relied on Comu's allegation that the shares were the product of a post-petition transaction and not part of the estate.[652] The Trustee further credibly testified that ***Comu's misrepresentations and concealment of other material facts regarding the Green Auto Merger prevented her from appreciating Comu's true interests in the transaction*** before the Discharge Date.  Trustee's counsel stated at trial that Trustee genuinely did not understand Comu's interest in the Green Auto Merger until after examining witnesses in 2012 and 2013, and after reviewing documents from the 2013 Electronic Production.  The court finds this wholly credible based on the tangled web of transactions.

235.    There is no credible evidence that Comu produced any other documents before the Discharge Date pertaining to the Green Auto Merger other than the Comu Certificate.

---

[648]    Debtor's Answer ¶ 9.
[649]    Def. Pretrial Br. at 2–3 (relying on Def. Ex. 5 at 3).
[650]    Def. Ex. 5 at 3.
[651]    Def. Ex. 5 at 3.
[652]    *See supra* Section D.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 83 OF 141**

236.    Katz credibly testified at trial that he had no knowledge of the Comu Certificate or Comu's other interests and activities relating to the Green Auto Merger until after the Discharge Date, and Comu has not presented any credible evidence that any Plaintiff had any knowledge of Comu's interests in GANAS or Green Auto until after Discharge.

237.    Comu's production of the Comu Certificate to Trustee after the filing of his Schedules did not constitute "prompt" delivery, nor did it comply with the disclosure requirements in Comu's Bankruptcy Filings.  Comu's deliberate concealment of his interests in GANAS and Green Auto prevented discovery of Comu's true interests until after the Discharge Date.

238.    There is no basis for imputing knowledge of Comu's fraud to creditors based on his limited disclosure of information to Trustee, which was not disclosed in Comu's Bankruptcy Filings or at the Creditors Meeting.

239.    Based on the above, Plaintiffs did not have knowledge of Comu's fraud with regard to GANAS, the Green Auto Merger, or the Green Auto Stock before the Discharge Date.

### (d)    The Brown Shares (200,000 Shares Turned Over)

240.    Pursuant to Comu's January 5, 2010 Instruction Letter,[653] OMST transferred 200,000 restricted shares from TBG to Brown (the "Brown Shares").[654]   According to the Injunction Status Report, the Brown Shares have now been turned over to Trustee.[655]

### (e)    The Sunset Pacific Shares (2,500,000 Shares Turned Over)

241.    Pursuant to Comu's January 5, 2010 Instruction Letter,[656] OMST transferred 2,500,000 restricted shares from TBG to Sunset Pacific (the "Sunset Pacific Shares").[657]   Sunset

---

[653]    KLM Ex. 313 at 5.
[654]    KLM Ex. 49 at 1.
[655]    Inj. Status Report at 11 (item #12).
[656]    KLM Ex. 313 at 5.  Comu instructed OMST to issue the Sunset Pacific Shares to Sunset Pacific at the 18208 Preston Road Address.  *Id.*

Pacific exchanged the original certificate on November 8, 2011 for a new certificate, also reflecting 2.5 million shares.[658]

242. Comu alleges the Sunset Pacific Shares were transferred pursuant to a Stock Purchase Agreement ("SPA") dated January 10, 2010, in return for a purchase price of $200,000 (the "Sunset Pacific SPA").[659] In connection with the Sunset Pacific SPA, Phyllis executed a promissory note dated January 10, 2010, payable to TBG in the principal amount of $250,000 plus 6% interest (the "Sunset Pacific Note").[660]

243. The Sunset Pacific Note provides that it is payable in quarterly installments of interest only, commencing on June 1, 2010 and continuing quarterly until maturity of the note on March 1, 2015, when all principal and interest is due and payable.[661]

244. No payments have been made on the Sunset Pacific Note.[662] Comu testified at trial that TBG wrote off the balance of the Sunset Pacific Note.

245. According to the Injunction Status Report, the Sunset Pacific Shares have now been turned over to Trustee.[663]

### 3. TBG's Direct Cash Proceeds ($3,736,826 – *At Least*)

246. Between 2009 and 2010, ***TBG collected at least $3,736,826.60 for the sale of almost 20 million shares of Green Auto Stock held in TBG's name***. Recall that Comu's Bankruptcy Filings and testimony at his Section 341 Meeting suggested that TBG was basically worthless or of unknown value.

---

[657]    JPTO Stip. Fact ¶ 39; KLM Ex. 49 at 1 (Certificate No. 1091).
[658]    KLM Ex. 51 at 11; *see also* Trustee Ex. 5 (Certificate No. 4909).
[659]    Trustee Ex. 6 at 1-2 (the "Sunset Pacific SPA"); *see also* JPTO Stip. Fact ¶ 36, ¶ 37, ¶ 39.
[660]    Trustee Ex. 6 at 3-4; *see also* JPTO Stip. Fact ¶ 39.
[661]    Trustee Ex. 6 at 3-4; *see also* JPTO Stip. Fact ¶ 40.
[662]    JPTO Stip. Fact ¶ 41. This transaction does not appear on the 2010–2011 tax returns for either TBG (Trustee Ex. 18; KLM Ex. 38) or Sunset Pacific (Trustee Ex. 35–36).
[663]    Inj. Status Report at 11 (item #4).

(a) **TBG – Direct Cash Sales ($974,616.60 or More)**

247. TBG began selling the TBG Shares directly to purchasers for cash in November of 2009 (the "Direct Cash Sales"). Pursuant to Comu's January 5, 2010 Instruction Letter, OMST transferred 960,000 restricted shares out of TBG's holdings directly to private buyers, in return for which TBG received at least $155,000 in November of 2009,[664] reflecting TBG was selling the Green Auto Stock at an average of approximately $0.165 per share before the Petition Date.

248. Between February 16, 2010 and March 29, 2010, TBG sold for cash 1,890,066 out of the 2,890,066 restricted shares represented in Certificate No. 1082 received by TBG on January 13, 2010.[665] TBG accounts reflect direct payments to TBG for these stock sales, some at $0.25 to $0.50 per share.[666]

---

[664] KLM Ex. 313 at 6–7; KLM Ex. 49 at 1. TBG accounts reflect wire transfers from the following buyers before the Petition Date: Marcy Gilbert ($20,000), Ila Jean Bacon ($10,000), Kyle Gilbert ($40,000), Joe Renner ($10,000), Sharon Hyde ($25,000), and Howard Waterman ($50,000). *Compare* KLM Ex. 18 at 6 *and* KLM Ex. 96 at 1 (TBG bank records reflecting wire transfers received from buyers); *with* KLM Ex. 49 at 1 (issuing stock certificates to these buyers on January 13, 2010). Out of the 960,000 sold as part of this transaction, 30,000 shares (sold to Richard Green and Kay Miller) have not been traced.

[665] KLM Ex. 49 at 2 (260,000 shares sold February 16, 2010); KLM Ex. 49 at 3 (1,115,000 shares sold March 9, 2010); KLM Ex. 49 at 4 (515,066 shares sold on March 29, 2010). The remaining balance of Certificate No. 1082 was transferred, on March 9, 2010, to affiliates Campus Investments (500,000 shares, *see infra* Section E(5)(g)), and to Richard Kadish, who controls Energy Farms, Inc. (500,000 shares). KLM Ex. 49 at 3.

[666] *Compare* KLM Ex. 49 at 2 (20,000 shares transferred to Gerald Kelly) *with* KLM Ex. 96 at 1 ($5,000 received from Kelly, reflecting a $0.25 per share sales price); *compare* KLM Ex. 49 at 4 (25,000 shares to Qualis) *with* KLM Ex. 96 at 2 ($12,500 received from Qualis, reflecting a $0.50 per share sales price); *compare* KLM Ex. 49 at 4 (20,000 shares to Cross) *with* KLM Ex. 101 at 3 ($5,000 received, reflecting $0.25 per share price); *compare also* KLM Ex. 49 at 3 (reflecting TBG transfers to Hyde, Waterman, Hinkley, Rotante, and Cattach); *with* KLM Ex. 96 at 1–2 (reflecting TBG cash receipts from the same individuals).

249. Between April 23, 2010 and August 13, 2010, Comu sold for cash 1,896,100 out of 3,000,000 shares represented in Certificate No. 1159,[667] which TBG received on March 25, 2010 as part of the Dilution Shares.[668] TBG accounts reflect direct payments to TBG for these stock sales at $0.10 to $0.50 per share.[669]

250. Between June 14, 2010 and October 27, 2010, Comu sold for cash 1,600,000 out of 2,000,000 shares represented in Certificate No. 1156, which TBG received on March 25, 2010 as part of the Dilution Shares.[670] TBG accounts reflect direct payments to TBG for these stock sales at $0.10 per share.[671]

251. Between June 28, 2010 and October 27, 2010, Comu sold for cash 400,000 out of 2,000,000 shares represented in Certificate No. 1155, which TBG received on March 25, 2010 as

---

[667] The OMST stock transfer report indicates that Certificate No. 1159 was issued on March 25, 2010 for 2 million shares, and Certificate No. 1157 was issued for 3 million shares. KLM Ex. 49 at 4. This appears to transpose the two certificates, because when TBG started selling the shares on April 23, 2010, Certificate No. 1159 reflects 3 million shares (KM Ex. 49 at 5), and a subsequent transfer of Certificate No. 1157 reflects 2 million shares.

[668] KLM Ex. 49 at 5 (580,000 shares sold on April 23, 2010); KLM Ex. 49 at 6 (936,100 shares sold on May 5, 2010); KLM Ex. 49 at 12 (380,000 shares sold on August 13, 2010). The remaining balance of Certificate No. 1159 was transferred to affiliates or associates, including Richard Kadish on April 23, 2010 (1,000,000 shares) (KLM Ex. 49 at 5); Marc Bryant on April 23, 2010 (20,000 shares) (KLM Ex. 49 at 5); Leon Bryan on May 5, 2010 (63,900 shares) (KLM Ex. 49 at 6); and Ed Baxter on August 13, 2010 (20,000 shares).

[669] *Compare* KLM Ex. 49 at 5 (20,000 shares transferred to Doolittle) *with* KLM Ex. 96 at 2 ($2,500 received from Doolittle, reflecting a $0.125 per share sales price); *compare also* KLM Ex 49 at 12 (125,000 shares to Hicks, and 50,000 shares to Stumpfl) *with* KLM Ex. 96 at 2 ($25,000 received from Hicks and $4,975 from Stumpfl, reflecting a $0.10 to $0.20 per share sales price); *compare also* KLM Ex. 49 at 6 (25,000 shares to Cattach) *with* KLM Ex. 96 at 2 ($12,475 received from Cattach, reflecting approximately $0.50 per share sales price).

[670] KLM Ex. 49 at 7–8 (437,000 shares sold on June 14, 2010); KLM Ex. 49 at 25 (650,000 shares); KLM Ex. 49 at 30 (513,000 shares on October 27, 2010). The remaining balance of Certificate No. 1156 was transferred to affiliates or associates, including Campus Investments (400,000 shares, *see infra* Section E(5)(g)) (KLM Ex. 49 at 8).

[671] *Compare* KLM Ex. 49 at 8 (50,000 shares transferred to Denisco) *with* KLM Ex. 96 at 2 ($5,000 received from Doolittle, reflecting a $0.10 per share sales price); *compare* KLM Ex. 49 at 25 (200,000 shares to Dr. Andreas) *with* KLM Ex. 96 at 2 ($19,958 received from Dr. Andreas, reflecting approximately $0.10 per share sale price).

part of the Dilution Shares.[672] These shares were sold to some of the same purchasers who previously made wire transfers to TBG accounts for stock purchases.[673]

252. Between September 2, 2010 and October 27, 2010, Comu sold for cash 3,000,000 out of 10,000,000 shares represented in Certificate No. 2531, which TBG received on August 13, 2010 as part of the Dilution Shares.[674]

253. Based on the above, in 2009 and 2010, TBG sold at least 9,746,166 shares directly to purchasers out of the TBG Shares.[675] The Comu Value of these shares was $2,923,849.80, and at $0.10 per share the value was $974,616.60.

### (b) TBG – OMST Escrow Sales ($2,762,220)

254. In mid-2011, TBG's Direct Cash Sales ceased, and TBG began selling the TBG Shares through OMST (the "OMST Escrow Sales"). In addition to serving as Green Auto's transfer agent, OMST was appointed to serve as escrow agent[676] for TBG by virtue of an escrow agreement drafted by TBG and dated June 16, 2011 (the TBG Escrow Agreement").[677] Pursuant to the terms of the TBG Escrow Agreement, OMST maintained an escrow account for TBG to

---

[672] KLM Ex. 49 at 8–9 (180,000 shares sold on June 28, 2010); KLM Ex. 49 at 30 (220,000 shares sold on October 27, 2010). The remaining balance of Certificate No. 1156 was transferred to affiliates or associates, including Campus Investments (100,000 shares, *see infra* Section E(5)(g)) (KLM Ex. 49 at 8); Robert Kasprzak (affiliated with Maybourne) (500,000 shares, *see infra* Section E(5)(a)) (KLM Ex. 49 at 8); and ERI (1 million shares, *see infra* Section E(5)(c)) (KLM Ex. 49 at 30).

[673] *Compare* KLM Ex. 49 at 8 (shares transferred to Bacon and Gilbert) *with* KLM Ex. 96 at 1 (reflecting wire transfers to TBG from same purchasers).

[674] KLM Ex. 49 at 21 (1,800,000 shares sold on September 2, 2010); KLM Ex. 49 at 30 (1,200,000 shares on October 27, 2010). The remaining balance of Certificate No. 2531 was transferred to affiliates or associates, including Ed Baxter (2 million shares, *see infra* Section E(5)(h)) (KLM Ex. 49 at 21); and ERI (5 million shares, *see infra* Section E(5)(c)) (KLM Ex. 49 at 28).

[675] Additional 2010 transactions indicate there may have been further direct TBG sales in 2010. *See, e.g.*, KLM Ex. 49 at 12.

[676] Generally speaking, an escrow agent is an entity that has fiduciary responsibilities in the transfer of property from one party to another. The transfer agent's obligations are defined by operative escrow agreements and the instructions it receives from the client.

[677] JPTO Stip. Fact ¶ 53; *see also* Trustee Ex. 42, Troster Exam at 17:20–18:18.

hold funds received from purchasers of at least 10 million restricted shares of Green Auto stock, and to hold in escrow the shares of stock to be transferred to the purchasers.[678]

255. Shortly before the effective date of the TBG Escrow Agreement, TBG transferred 11 million shares to OMST as custodian for the purpose of making sales in connection with the escrow, and OMST began selling TBG's stock on June 2, 2011.[679] According to an AST stock transfer ledger, the last of the TBG shares in escrow by OMST were sold on January 5, 2012, leaving 4,529 shares held in TBG's name,[680] which have been turned over to Trustee.[681]

256. Comu controlled and directed, personally or through Baxter and Parsley, OMST's transfer of TBG Shares and the distribution of cash from TBG's escrow account.[682]

257. According to a ledger prepared by Comu for Trustee, between June of 2011 and January of 2012, TBG sold 9,998,091 of the TBG Shares through the OMST escrow account.[683]

258. According to an escrow ledger prepared by OMST for the TBG escrow account, between June 20, 2011 and January 4, 2012, TBG collected $2,762,220 in cash proceeds from the sale of TBG Shares after the deduction of fees to OMST (the "TBG Escrow Funds").[684]

259. Based on Comu's representation that 9,998,091 shares were sold through the OMST escrow account, the TBG Escrow Funds reflect an average sales price of approximately $0.276 per share.

260. The TBG Escrow Funds only reflect sales effected through TBG's escrow account at OMST. They do not include TBG's Direct Cash Sales discussed *supra* (which were

---

[678]    JPTO Stip. Fact ¶ 54; *see also* Trustee Ex. 42, Troster Exam at 15:14–16:11.
[679]    KLM Ex. 51 at 40–41.
[680]    KLM Ex. 161 at 4.
[681]    Inj. Status Report at 11 (item #1).
[682]    *See, e.g.*, KLM Ex. 39; KLM Ex. 51 at 76; KLM Ex. 55 at 1–2; KLM Ex. 56 at 3; *see also* Trustee Ex. 42, Troster Exam at 19:8–22, 26:21–27:7, 34:12–22, 40:5–22, 41:20–42:19, 63:23–64:9, 91:2 –3, 98:17–99:1.
[683]    JPTO Stip. Fact ¶ 57; KLM Ex. 336 at 1.
[684]    Trustee Ex. 44 at 10; *see also* JPTO Stip. Fact ¶ 56; KLM Ex. 52.

effected before the TBG Escrow Agreement was entered into on June 16, 2011),[685] nor do they include cash received by TBG and other affiliates in return for Green Auto stock sold through affiliates.[686]

### 4.  Canadian Trust Proceeds ($1,271,953)

261.    Evidence at trial was clear and convincing that certain Canadian family business trusts[687] were established near the Petition Date and that Comu used the Canadian Trusts for the purpose of concealing and liquidating assets of Comu's bankruptcy estate.

262.    Comu, not his brother Cem Comu, controlled and directed, either personally or through Baxter and Parsley at TBG or Regus Advisors, the distribution of cash proceeds received by TKY Trust and DAPTCO Trust from the sale of Green Auto stock.[688]

263.    A number of instructions to OMST jointly addressed or combined cash distributions and stock transfers from the escrow accounts for TKY Trust, DAPTCO Trust and TBG.[689]  Troster was at least on one occasion confused about which escrow account (TBG, DAPTCO, or TKY) would be credited with cash from stock purchases, and sought clarification from Comu, who directed where the funds would be deposited.[690]

---

[685]    *See supra* Section E(3)(a).

[686]    *See infra* Section E(4)–(5).

[687]    JPTO Stip. Fact ¶ 38.

[688]    *See, e.g.*, Trustee Ex. 53 at 1; Trustee Ex. 54; Trustee Ex. 58 at 4; Trustee Ex. 59 at 4;  KLM Ex. 45; KLM Ex. 55 at 2–3; KLM Ex. 56 at 3; KLM Ex. 57 at 1–2; KLM Ex. 69 at 4; KLM Ex. 73 at 4; KLM Ex. 74 at 1; *see also* Trustee Ex. 42, Troster Exam at 27:8–12, 28:4–10, 29:19–23, 44:22–45:18, 46:20–47:20, 49:5–50:4, 108:3–14, 108:23–109:10.

[689]    *See, e.g.*, Trustee Ex. 54; Trustee Ex. 57 at 1; Trustee Ex. 58 at 2; Trustee Ex. 59 at 1; Trustee Ex. 67 at 1; KLM Ex. 31 at 3; KLM Ex. 45; KLM Ex. 46 at 1–2; KLM Ex. 55 at 2–3; KLM Ex. 57; KLM Ex. 58; KLM Ex. 59; KLM Ex. 60 at 1; *see also* Trustee Ex. 42, Troster Exam at 54:10–56:23, 92:20–93:2, 93:14–94:16, 96:4–14; 97:16–98:3.

[690]    *See, e.g.*, KLM Ex. 61; *see also* Trustee Ex. 42, Troster Exam at 98:8–14.

### (a) The TKY Shares ($1,048,973)

264.    TKY Trust is a discretionary family business trust that was formally established on January 6, 2010,[691] after the Petition Date but before Comu filed his Bankruptcy Filings. Under the TKY Trust documents, Cem Comu is the Trustee and Comu is a beneficiary,[692] a fact Comu did not disclose in his Bankruptcy Filings or at the Creditors Meeting.

265.    In December, 2009 (before the Bankruptcy Case Petition Date), Comu retained Brian Rudy at Synergy Business Lawyers in Vancouver, Canada ("Synergy") for the purpose of establishing TKY Trust, selected the trust's name, directed Synergy regarding the details of TKY Trust's control and beneficiaries, and approved the final trust documents.[693]  Although Comu could have retained control over TKY Trust, he specifically instructed Synergy to prepare the TKY Trust documents to reflect it was controlled by Cem Comu as trustee.[694]

266.    Pursuant to Comu's January 5, 2010 Instruction Letter,[695] OMST transferred 5,000,000 restricted shares from TBG to TKY Trust (the "TKY Shares").[696]  The Comu Value of the TKY Shares was $1,500,000, and at $0.10 per share the TKY Shares were worth $500,000.

267.    Comu alleges that the TKY Shares were transferred pursuant to an SPA between TBG and TKY Trust, dated January 10, 2010 (the "TKY Trust SPA").[697]  The purchase price for the TKY Shares was to be paid through a promissory note dated January 10, 2010 in the original principal amount of $500,000 plus 2% interest (the "TKY Note").[698]  Like the Sunset Pacific

---

[691]    Trustee Ex. 27 at 1; *see also* JPTO Stip. Fact ¶ 38.

[692]    Trustee Ex. 27 at 1–2; *see also* JPTO Stip. Fact ¶ 38.

[693]    KLM Ex. 97 at 1 (letter from Synergy to Comu stating, "We confirm that we have been retained by you for the purpose of establishing the trust"); KLM Ex. 259 at 39845 (confirming Synergy's retention by Comu for the purposes of forming the trust); *see also* KLM Ex. 258; KLM Ex. 307 at 1; KLM Ex. 309.

[694]    KLM Ex. 258 at 1 ("In some cases we may have made you the beneficiary appointor but in this case you advise us that your brother should have full control over the trust.  Please advise us if this is incorrect."); KLM Ex. 307 at 2 ("I would like my Brother to be Trustee.").

[695]    KLM Ex. 313 at 5.

[696]    JPTO Stip. Fact ¶ 42; KLM Ex. 49 at 1 (Certificate No. 1092).

[697]    JPTO Stip. Fact ¶ 36, ¶ 37, ¶ 42; *see also* Trustee Ex. 7 at 1–2.

[698]    JPTO Stip. Fact ¶ 42, ¶ 43; Trustee Ex. 7 at 4–5.

Note, the TKY Note was payable in quarterly installments of interest only, commencing on June 1, 2010 and continuing quarterly until maturity of the note on March 1, 2015, when all principal and interest was due and payable.[699]

268.   TKY Trust made no payments on the TKY Note until January 5, 2012.[700] According to Comu, TBG received only $116,500 in payments toward the TKY Note.[701]  Comu testified at trial that TBG wrote off the remaining balance of the TKY Note.  Comu could have applied sufficient payments to the TKY Note to satisfy the obligations to TBG, but chose to disregard those obligations and distribute cash proceeds elsewhere.

269.   OMST served as escrow agent for TKY Trust by virtue of an escrow agreement dated December 1, 2011 (the "TKY Escrow Agreement"), which stated TKY Trust's intent to sell the 5 million TKY Shares to third parties.[702]  As escrow agent, OMST was charged with holding both cash and Green Auto stock certificates for TKY Trust.[703]  Cem Comu executed documents on behalf of TKY Trust that authorized OMST to take action with regard to the TKY Shares in accordance with Comu's instructions.[704]

270.   In Comu's instructions to OMST regarding stock certificates and distributions, TKY's address is identified as 1066 W. Hastings Street, Suite 2480, Vancouver, BC, V6E3X2,

---

[699]     JPTO Stip. Fact ¶ 43; Trustee Ex. 7 at 4–5.
[700]     KLM Ex. 336 at 2.
[701]     JPTO Stip. Fact ¶ 59; KLM Ex. 336 at 2.  Between 2011 and 2012, TBG received at least $106,500 in cash distributions from the TKY Trust escrow account.  Trustee Ex. 40 at 1 ($10,000); KLM Ex. 46 at 1 ($1,000); Trustee Ex. 58 at 1 ($2,000); KLM Ex. 65 at 1 ($6,000); KLM Ex. 66 at 1 ($1,000); KLM Ex. 68 at 2 ($6,000); KLM Ex. 69 at 1 ($9,000); KLM Ex. 70 at 1 ($38,000); KLM Ex. 72 at 1 ($12,500); KLM Ex. 73 at 1 ($5,500); KLM Ex. 75 at 1 ($15,500).
[702]     Trustee Ex. 49 at 1.
[703]     Trustee Ex. 49 at 1–2.
[704]     KLM Ex. 47; KLM Ex. 48; Trustee Ex. 48 at 1.

Canada.[705]  This is the address for Bryan Rudy at Synergy—who Comu retained in 2009 to establish the TKY Trust.[706]

271.    OMST received instructions from both TBG and Regus Advisors regarding how to distribute cash proceeds of TKY Trust's sales of Green Auto stock received from TBG, which included cash distributions to both TKY Trust and TBG.[707]  Per Comu's instructions, some certificates for TKY Shares were returned to TKY Trust care of TBG at the 18208 Preston Road Address.[708]

272.    Comu arranged for the sale of at least 4,800,000 of the 5,000,000 TKY Shares obtained from TBG on January 13, 2010.[709]  According to an AST transfer ledger, the last sale of stock from the TKY Shares occurred on March 14, 2012, leaving 22,533 shares.[710]

273.    According to an escrow ledger prepared by OMST, TKY Trust received a least $1,048,972.95 in cash payments into its escrow account with OMST for Green Auto stock.[711]  Based on these stipulated facts, the TKY Shares were sold at approximately $0.22 per share.  Assuming $1,048,972.95 reflects the sale of the total dissipated TKY Shares (4,977,467), it would reflect a $0.21 per share sales price.

---

[705]    *See, e.g.*, KLM Ex. 66 at 1; KLM Ex. 313 at 5.
[706]    *See also* KLM Ex. 313 at 5 (Green Auto shares for TKY Trust are issued "c/o Brian Rudy at TKY Trust.)
[707]    KLM Ex. 69 at 1, 4.  Instructions for TKY Trust cash distributions from the week before and the week after came from TBG.  KLM Ex. 68 at 1; KLM Ex. 70 at 1.
[708]    KLM Ex. 157 at 11.
[709]    JPTO Stip. Fact ¶ 58; KLM Ex. 336 at 2.
[710]    KLM Ex. 161 at 9.
[711]    JPTO Stip. Fact ¶ 60; *see also* Trustee Ex. 50 at 6; KLM Ex. 54.  Between 2011 and 2012, TKY received at least $271,500 in cash distributions out of the TKY escrow account, with the remainder going to other recipients, including TBG.  Trustee Ex. 40 at 1 ($66,000); Trustee Ex. 58 at 1 ($16,000); KLM Ex. 46 at 1 ($5,000); KLM Ex. 65 at 1 ($70,000); KLM Ex. 66 at 1 ($4,000); KLM Ex. 68 at 2 ($35,000); KLM Ex. 69 at 1 ($25,000); KLM Ex. 70 at 1 ($10,000); KLM Ex. 72 at 1 ($16,000); KLM Ex. 73 at 1 ($5,000); KLM Ex. 75 at 1 ($10,000); KLM Ex. 78 at 1 ($9,500).

274.    Based on the above, Comu—not Cem—established TKY Trust with fraudulent intent, controlled the distribution of TKY Trust assets, and used TKY Trust as a vehicle for the purpose of fraudulently concealing and liquidating assets of the bankruptcty estate.

### (b)    The DAPTCO Shares ($222,980)

275.    DAPTCO Trust was formed by Comu's brother, Cem Comu, who is also the Trustee of the DAPTCO Trust.[712]

276.    Pursuant to Comu's January 5, 2010 Instruction Letter,[713] OMST transferred 2,000,000 restricted shares from TBG to DAPTCO Trust (the "DAPTCO Shares").[714]  The Comu Value of the DAPTCO Shares was $600,000, and at $0.10 per share the DAPTCO Shares were worth $200,000.

277.    On January 5, 2010, Comu offered to transfer a portion of TBG's Green Auto Stock to Cem Comu for no consideration.[715]   DAPTCO has a $0 cost basis in the DAPTCO Shares,[716] indicating DAPTCO Trust paid no consideration for the DAPTCO Shares.

278.    Comu alleges that the DAPTCO Shares were transferred pursuant to an SPA between TBG and DAPTCO Trust, dated January 10, 2010 (the "DAPTCO Trust SPA").[717]  The purchase price for the DAPTCO Shares was to be paid through a promissory note dated January 10, 2010 in the original principal amount of $200,000 plus 2% interest (the "DAPTCO Note").[718]  Like the Sunset Pacific Note and the TKY Note, the DAPTCO Note was payable in quarterly installments of interest only, commencing on June 1, 2010 and continuing quarterly

---

[712]    JPTO Stip. Fact ¶ 38.
[713]    KLM Ex. 313 at 5.
[714]    JPTO Stip. Fact ¶ 44; KLM Ex. 49 at 1 (Certificate No. 1093).
[715]    Comu contacted Cem Comu to inform him that he would "like to issue some stock to you and Aylin [Comu's sister] – would you rather I issue to the name of your Trust?  If so - can you send that to me ASAP – I am sending out notice to transfer agent.  I will need name of Trust, Address and any Tax ID # they may have issued you."  KLM Ex. 261 at 1.  Cem responded: "You can issue it to me personally or 'Daptco Trust.'"  *Id.*
[716]    KLM Ex. 158 at 4.
[717]    JPTO Stip. Fact ¶ 36, ¶ 37; *see also* Trustee Ex. 8 at 1–2.
[718]    JPTO Stip. Fact ¶ 44; Trustee Ex. 8 at 4–5.

until maturity of the note on March 1, 2015, when all principal and interest was due and payable.[719]

279.    DAPTCO Trust made no payments on the DAPCTO Note until March 22, 2012.[720]  According to Comu, TBG received only $30,185 in payments toward the DAPTCO Note.[721]  Comu testified at trial that TBG wrote off the remaining balance of the DAPTCO Note. Comu could have applied sufficient payments to the DAPTCO Note to satisfy the obligations to TBG, but chose to disregard those obligations and distribute cash proceeds elsewhere.

280.    OMST served as escrow agent for DAPTCO Trust by virtue of an escrow agreements dated December 1, 2011 (the "DAPTCO Escrow Agreement"), which stated DAPTCO Trust's intent to sell the 5 million DAPTCO Shares to third parties.[722]  As escrow agent, OMST was charged with holding both cash and Green Auto stock certificates for DAPTCO Trust.[723]  Cem Comu executed documents on behalf of DAPTCO Trust that permitted OMST to take action with regard to the DAPTCO Shares in accordance with Comu's instructions.[724]

281.    Comu instructed OMST to return the stock certificate for the DAPTCO Shares back to Comu at TBG's 18208 Preston Road Address.[725]

282.    Comu arranged for the sale of 1,400,000 of the 2,000,000 DAPTCO Shares obtained from TBG on January 13, 2010.[726]  DAPTCO Trust received at least $222,980 in cash

---

[719]    JPTO Stip. Fact ¶ 44, ¶ 45; Trustee Ex. 8 at 4–5.
[720]    KLM Ex. 336 at 2.
[721]    JPTO Stip. Fact ¶ 62; KLM Ex. 336 at 2.  Between 2011 and 2012, TBG received at least $30,185 in cash distributions from the DAPTCO Trust escrow account.  Trustee Ex. 53 at 2 ($5,000); Trustee Ex. 59 at 1 ($8,000); KLM Ex. 56 at 1 ($5,000); KLM Ex. 77 at 1 ($5,500); KLM Ex. 78 at 1 ($5,000); KLM Ex. 79 at 1 ($1,685).
[722]    Trustee Ex. 46 at 1.
[723]    Trustee Ex. 46 at 1–2.
[724]    Trustee Ex. 45; KLM Ex. 158 at 8–9.
[725]    *See* KLM Ex. 315 at 57835_3, 24.
[726]    JPTO Stip. Fact ¶ 61; KLM Ex. 336 at 2.

payments into its escrow account with OMST for Green Auto stock.[727]  Based on these stipulated facts, the DAPTCO Shares were sold at approximately $0.11 per share.

283.   Based on the above, the evidence confirms that Comu controlled the distribution of the DAPTCO Shares, and used DAPTCO Trust as a conduit to fraudulently conceal and liquidate assets of the bankruptcty estate.

### (c)   *Remaining Canadian Trust Shares (622,533 Turned Over)*

284.   According to the Injunction Status Report, 22,533 out of the original 5 million TKY Shares, and 600,000 out of the original 2 million DAPTCO Shares have been turned over to Trustee.[728]

### 5.   **Dissipation & Liquidation of Stock Through Comu's Conduits**

285.   In addition to the stock described above, Comu concealed, dissipated or sold millions of shares of TBG's Green Auto Stock, and moved cash, through a complex network of domestic and offshore affiliates that he controls, in which he holds an undisclosed interest, or which are controlled by Comu insiders (including in particular Dave Welch and Marc Bryant) (together, Comu's "Conduits").

### (a)   *Maybourne*

286.   In accordance with the Green Auto MOU,[729] and pursuant to Comu's January 5 Instruction Letter,[730] OMST transferred from TBG 2,000,000 free trading shares and 20,000,000

---

[727]     JPTO Stip. Fact ¶ 63; *see also* Trustee Ex. 47 at 2; KLM Ex. 53.  Between March 29, 2012 and April 19, 2012, DAPTCO Trust received at least $39,500 in cash distributions out of the DAPTCO Trust escrow account, with the remainder going elsewhere.  KLM Ex. 56 at 1 ($6,000); Trustee Ex. 53 at 1 ($9,000); Trustee Ex. 59 at 1 ($15,000); KLM Ex. 78 at 1 ($9,500).
[728]     Inj. Status Report at 11 (items #2 – #3).
[729]     Trustee Ex. 73.
[730]     KLM Ex. 313 at 4, 5–6.

restricted shares directly to Maybourne in BVI, and another 20,000,000 restricted shares to Maybourne care of Newhaven as its corporate nominee[731] (the "Maybourne Shares").[732]

287. The Comu Value of the Maybourne Shares was $12.6 million, and at $0.10 per share, they were worth $4.2 million.

288. Correspondence indicates that TBG and FMS received cash transfers from Maybourne in connection with the sale of the Maybourne Shares.[733]

289. Per Comu's instructions, on January 20, 2013 (shortly after the Maybourne Shares were issued), OMST cancelled the 20,000,000 restricted shares and transferred them to ZK Solutions, Inc. ("ZK Solutions"),[734] and transferred another 5,500,000 shares to Kasprzak on January 28, 2014.[735]

290. As of May 14, 2013, Maybourne was identified as a "5% Shareholder" in Green Auto's SEC filings, with 18,621,899 shares held by Maybourne at Newhaven's address in London.[736]

---

[731] Pursuant to corporate resolutions dated February 10, 2010, Newhaven was appointed to act as Maybourne's corporate nominee with respect to Green Car, with the authority to transfer stock and cash on behalf of Maybourne. KLM Ex. 362 at 21082_11–12; *see also* KLM Ex. 117 at 106 (Maybourne's Green Auto shares held care of Newhaven in London). Newhaven executed, on Maybourne's behalf, documents by which Maybourne transferred 20 million shares to Green Car. KLM Ex. 362 at 21082_4, 9. Newhaven has continued to represent Maybourne as nominee in the sale and transfer of Green Auto stock. *See, e.g.*, KLM Ex. 156 at 4–5, 9–10 (May 29, 2013 sale of Green Auto stock to various Australian purchasers, effected via Newhaven).

[732] KLM Ex. 49 at 1.

[733] *See, e.g.*, KLM Ex. 101 at 1–2 (March 16, 2010 email correspondence between Welch to Comu discussing funds "we had … come in" for Green Auto sales, and noting that "GZ" (*i.e.*, Zinn) of Maybourne was sending cash to Welch and Comu (*i.e.*, "$37.5 in transit"), which would be split among them (*i.e.*, "about 10K apiece DW, CJ, DK, PK" – referring to Welch, Comu, Peter Knight and David Knight).

[734] KLM Ex. 313 at 1–2, 6; KLM Ex. 49 at 2. ZK Solutions has an address in Willis, Texas. KLM Ex. 313 at 6.

[735] KLM Ex. 161 at 77. According to Comu's 2009 correspondence, Kasprzak holds an interest in the Green Auto MOU through Maybourne. *See* KLM Ex. 352 at 1–2.

[736] KLM Ex. 150 at 46.

291.     Maybourne also made two substantial transfers after the Agreed TRO was entered on December 20, 2013, including 13,967,302 shares to Newhaven on January 1, 2014,[737] and 4,000,000 shares to Kasprzak on January 15, 2014.[738]

292.     According to the Injunction Status Report, no Green Auto shares have been turned over from Maybourne, Newhaven, Kasprzak or ZK Solutions.[739]

### (b)     First Market Services

293.     In accordance with the Green Auto MOU,[740] and pursuant to Comu's January 5 Instruction Letter,[741] OMST transferred 2,000,000 free trading shares and 20,000,000 restricted shares from TBG to FMS (the "FMS Shares").[742]

294.     The Comu Value of the FMS Shares was $6.6 million, and at $0.10 per share, they were worth $2.2 million.

295.     In connection with the TBG Loan Recap, FMS received an additional 11,000,000 shares on December 30, 2010.[743]

296.     In 2012 and 2013, FMS received from Green Auto 500,000 Series A Convertible Preferred Shares ("Preferred Shares")[744] (valued at issuance at between $5 and $8.5 per share) in return for forgiveness of certain debts owed FMS.[745]

---

[737]     KLM Ex. 161 at 69.
[738]     KLM Ex. 161 at 69.
[739]     Inj. Status Report at 11 (items #1, #5–#9).  As of October 3, 2011, Newhaven held 18,890,000 Green Auto shares on behalf of Maybourne, and Maybourne held another 2,000,000 shares directly in its name.  KLM Ex. 117 at 106.  According to Green Auto SEC filings, as of May 14, 2013, Maybourne held 18,621,899 Green Auto Shares.  KLM Ex. 150 at 46.
[740]     Trustee Ex. 73.
[741]     KLM Ex. 313 at 4, 5.
[742]     KLM Ex. 49 at 1.
[743]     KLM Ex. 49 at 51.
[744]     KLM Ex. 161 at 88.
[745]     KLM Ex. 151 at 19.  It is unclear from the stock transfer records whether TBG (or funds attributable to the sale of TBG's Green Auto Stock) contributed to the FMS loan(s) that gave rise to the issuance of the Preferred Shares.  Even assuming TBG did not contribute, FMS subsequently transferred Preferred Shares to certain Domestic Conduits in which Comu holds an equity interest.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                                          **PAGE 98 OF 141**

297.    According to the Injunction Status Report, no Green Auto shares held by FMS have been turned over to Trustee.[746]

### (c)    Electronic Registry

298.    One of the primary domestic Conduits for indirect cash sales of TBG's Green Auto Stock in the United States[747] was Electronic Registry, Inc. ("ERI"), a Wyoming or Nevada corporation with offices in Porter Ranch, California (the "Porter Ranch Address").[748]   Marc Bryant ("Bryant") is ERI's President and CEO.[749]

299.    With the assistance of Peter Knight from dMedia—who also assisted Comu with setting up the Regus Advisors website—Comu and his affiliates managed and used the ERI website and email addresses to sell Green Auto stock.[750]

300.    In order to effect ERI stock sales, TBG, FMS and Maybourne transferred stock through the transfer agent to ERI, either directly or via other Conduits.[751]   Using form documents provided by Comu,[752] ERI would then sell the stock to private purchasers in return for cash, which would be deposited into a Bank of America Account held by ERI in Porter Ranch,

---

[746]    Inj. Status Report at 11–14.

[747]    KLM Ex. 188 at 1 ("[A]ll transactions consummated in the US are to be sent … to ERI's office in Porter Ranch and funds sent to ERI account at BoA in Porter Ranch.").

[748]    *See, e.g.*, KLM Ex. 361 at 22 (Wyoming); KLM Ex. 224 at 21228 (Nevada).

[749]    *See, e.g.*, KLM Ex. 284 at 4 (President); KLM Ex. 361 at 4 (CEO).

[750]    KLM Ex. 218 at 1–2; KLM Ex. 282; KLM Ex. 350 at 1–2.

[751]    *See, e.g.*, KLM Ex. 268 at 2–3 (instruction letter from Comu to OMST for transfer of TBG shares to ERI); KLM Ex. 284 at 1, 3–4 (same); *see also* KLM Ex. 270; KLM Ex. 287.

[752]    *See* KLM Ex. 224 (attaching documents needed for ERI "to process certs and keep files in order," including a template instruction letter to the transfer agent for issuing new certificates, a template subscription agreement, and a credit card authorization form to make payment to ERI); KLM Ex. 361 at 3–4 (template SPA for ERI sales); *see also* KLM Ex. 200.

California (the "Porter Ranch Account"),[753] and distributed to various recipients (including TBG) per instructions to Marc Bryant.[754]

301. In May of 2010, Comu instructed that future sales of TBG's Green Auto stock would be effected through ERI accounts.[755] When ERI's inventory of Green Auto stock for sale transactions ran low, Bryant requested additional shares from TBG.[756]

302. In 2010, TBG transferred 14,383,000 shares out of TBG's Green Auto Stock directly to ERI.[757] Comu transferred an additional 9 million Green Auto shares to ERI for sale through Regus Advisors.[758]

303. ERI was also a conduit for cash sales of the FMS Shares. Welch was copied on Comu's correspondence pertaining to ERI transfers and sales.[759] Bryant also gave instructions to OMST for transfers of Green Auto stock on behalf of First Market Services.[760] ERI received 25

---

[753] *See, e.g.*, KLM Ex. 361 at 2 (account ending in *1944).

[754] On May 5, 2010, Bryant forwarded to Comu "the new info for ERI selling groups," which included ERI's EIN and an attachment that reflected bank wire information for the Porter Ranch Account. KLM Ex. 183 at 1–2; *see also* KLM Ex. 182. According to email correspondence, "all transactions consummated in the US are to be sent … to ERI's office in Porter Ranch and funds sent to ERI account at BoA in Porter Ranch. Once both aforementioned items are received, the agreed payment amount will be released by Marc Bryant on the following Friday to the proper party." KLM Ex. 188 at 1; KLM Ex. 270 (email from Bryant to Comu: "sent $50,200.00 to TBG today"); *see also* KLM Ex. 219 at 1 (Comu sends "slightly revised" ERI profile to Bryant, and will send certificates for sale); KLM Ex. 361 at 4 (Comu forwarding to Bryant and Welch an "ERI Profile" reflecting wire transfer instructions for stock purchasers, and a form SPA for sales); KLM Ex. 200 (July 14, 2010); KLM Ex. 224 (July 1, 2010).

[755] On May 12, 2010, in response to an email informing Comu that TBG had received a $5K payment for Green Auto stock from Dale Sanders, who received 10,000 shares from TBG on June 14, 2010 (KLM Ex. 49 at 8, reflecting $0.50 sales price), Comu instructed that "for all future agents & transactions TBG is not offering any stock and all future orders to go thru ERI. We will process this one to close our books." KLM Ex. 218 at 1.

[756] *See, e.g.*, KLM Ex. 284 at 1–2.

[757] KLM Ex. 49 at 6 (2,000,000 shares); *id.* at 23 (4,000,000 shares); *id.* at 24 (450,000 shares); *id.* at 28 (5,000,000 shares); *id.* at 30–31 (2,933,000 shares); *see also* KLM Ex. 350 at 3, 5, 7–8, 10.

[758] In connection with the TBG Loan Recap, Regus Advisors received 9,000,000 shares of Green Auto common stock on December 30, 2010. KLM Ex. 49 at 51. Regus Advisors transferred the Regus Shares to an entity called Global Trade Finance, Inc. on Feb. 2, 2011. KLM Ex. 51 at 11. On June 13, 2011, Global Trade Finance, Inc. transferred the 9 million Regus Shares to ERI. KLM Ex. 51 at 49.

[759] KM Ex. 183 at 1; KLM Ex. 200 at 1; KLM Ex. 218 at 1; KLM Ex. 219 at 1; KLM Ex. 224 at 1; KLM Ex. 268 at 1; KLM Ex. 270; KLM Ex. 282; KLM Ex. 284 at 1; KLM Ex. 287.

[760] KLM Ex. 155 at 2, 5.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**  **PAGE 100 OF 141**

million Green Auto shares from FMS (which originated from TBG via the Green Auto MOU) for sale to private buyers.[761]

304.    ERI was also used to liquidate the Maybourne Shares.[762] Through ZK Solutions, Maybourne transferred 14,500,000 shares to ERI for liquidation.[763]

305.    After receiving the above shares from TBG, FMS and Maybourne, ERI liquidated their Green Auto stock for cash in sales to private purchasers.[764] TBG accounts reflect substantial cash distributions from ERI—**at least $850,000 in 2010 alone**—for the sale of the stock through ERI.[765] Comu also directed ERI to send cash to various offshore accounts.[766]

---

[761]    KLM Ex. 51 at 22 (7,000,000 shares); *id.* at 36–37 (2,000,000 shares); KLM Ex. 161 at 9 (3,000,000 shares); *id.* at 39 (1,000,000 shares); *id.* at 42 (12,000,000 shares); *see also id.* at 89 (21,841 Preferred Shares); *id.* at 90 (47,901 Preferred Shares); KLM Ex. 268 at 1 ("12 million shares to ERI…."). FMS transferred an additional 7 million shares to ERI in December of 2010, which were transferred back to FMS the same month. KLM Ex. 49 at 42, 46.

[762]    *See, e.g.*, KLM Ex. 268 (email from Welch to Kasprzak, who controlled the Maybourne Shares, forwarding template instruction form to OMST: "This is the form that you use by replacing TBG with ZK company… 12 million shares to ERI…").

[763]    KLM Ex. 49 at 34 (2,500,000 shares); KM Ex. 49 at 45 (12,000,000 shares).

[764]    *See* KLM Ex. 350 at 2–11; *see also* KLM Ex. 49 at 9–10, 12, 19, 20, 23–26, 28–31, 33–35, 36–37, 42–43, 44–45, 46, 48, 49–52; KLM Ex. 51 at 2–6, 8–41, 43, 45–54, 56–65, 67–74, 78–80, 82, 84–90, 94, 96, 98–100, 102–105, 107–108, 110–113; KLM Ex. 161 at 4–6, 10–11, 13, 16–18, 22–25, 26, 28, 30–31, 33, 39–43, 45–55, 57–58, 89–90, 93, 97.

[765]    Sometimes payments for ERI stock would be made directly to TBG. *Compare* KLM Ex. 49 at 45 (50,000 shares transferred from ERI to Josef Hammer) *with* KLM Ex. 96 at 2 (payment received from Hammer). For other transactions, TBG received payments from ERI. *See, e.g.*, KLM Ex. 96 at 2 (on August 31, 2010, TBG received $23,100 from ERI). In an apparent effort to conceal the source of income, most TBG receipts from ERI are described in TBG ledgers prepared for Trustee in this Adversary as wire transfers from "Porter Ranch." On November 24, 2010, Bryant confirmed in an email that he "sent $50,200.00 to TBG today." KLM Ex. 270. This transfer to TBG matches a $50,200 credit in TBG's accounts for November 24, 2010, which is described as "Trsfr Porter Ranch." Trustee Ex. 25 at 4. **According to its own ledgers, TBG received at least $850,000 in "Porter Ranch" income – *i.e.*, distributions from ERI – in 2010 alone.** Trustee Ex. 25 at 3 ($19,200 in May, 2010); *id.* ($43,126 in June, 2010); *id.* ($55,790 in July, 2010); *id.* ($2,750 in August, 2010); *id.* ($133,050 in September, 2010); *id.* ($380,125 in October, 2010); *id.* at 4 ($140,200 in November, 2010); *id.* ($75,000 in December, 2010).

[766]    On July 2, 2010 Nick Toscano from WWA wrote in an email to Comu: "Not to be difficutl [sic], but you said yesterday it was HSBC and now it is AFR ASIA BANK Ltd (Africa Asia Bank Ltd) Unfortunately no one that I would speak to in Europe will send their money there... For reasons being; GACR is an American Stock, an American Company, Trading on an American exchange, sending Money to Africa... It is hard enough in today's enviorment [sic] selling restricted stock (pink sheets); from a 3rd party (ERI) and now have to explain why there money has to go to Africa... if it smells like fish it usually is..." KLM Ex. 323.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **PAGE 101 OF 141**

### (d)    West Point Advisors

306.    In mid-March 2010, Comu enlisted the services of Newhaven to incorporate West

Point Advisors, Inc. ("WPA")[767] in BVI on his behalf, and establish a related HSBC bank

account in the Channel Islands (the "WPA Account").[768]  At trial, Comu continued to deny he

had any interest in the HSBC Channel Islands Account.

307.    Comu paid Newhaven £3,000 out of TBG's Wells Fargo account to form WPA,

provide a registered office, serve as Comu's nominee, and supply bank facilities at HSBC.[769]

308.    On March 23, 2010, as part of Newhaven's due diligence process for the

provision of nominee services,[770] which is required under BVI law,[771] Comu emailed Steven

Block and Christopher McNeill at the law firm of B&G requesting a professional reference letter

---

[767]    Comu originally selected "Westgate Management Limited," as the name for his new BVI entity, but Westgate was ultimately unavailable, so, on April 23, 2010, Comu instructed Newhaven to incorporate the new entity as West Point Advisors Inc.  KLM Ex. 366 at 1–3; *see also* KLM Ex. 364 at 8700_1–3.

[768]    KLM Ex. 175 (March 12, 2010 from Newhaven to Comu referencing Westgate Management Limited, and confirming: "I have this afternoon incorporated a BVI co under the above name for you."); KLM Ex. 176 at 1 (March 15, 2010 Newhaven email asking Comu to "confirm the currency(ies) you require the company to hold with HSBC"); KLM Ex. 177 at 1 (March 15, 2010 email from Comu to Newhaven: "I would like to confirm USD as basis of Account and confirm purchase of Ltd."); KLM Ex. 177 at 1 ("As and when the company has been confirmed and the corporate documents received from the BVI I shall be able to process the bank application.  I shall request a USD account to begin with."). Through Newhaven, in May of 2010, Comu set up an account at HSBC Plc in Guernsey, Channel Islands under the name "Newhaven Nominees Ltd/West Point Advisors Inc." (the "HSBC-WPA Account");  *See, e.g.*, KLM Ex. 365 at 1–2 (account ending in *7483); *see also* KLM Ex. 362 at 21080; KLM Ex. 363 at 1; KLM Ex. 364 at 1.  Newhaven finalized the documents for opening the HSBC-WPA Account in mid-May.  KLM Ex. 366 at 1–2.

[769]    KLM Ex. 366 at 1, 5 (payment from Comu made via TBG's Wells Fargo account ending in *8429 (converted from £3,000 to $4,477.20); *compare* KLM Ex. 18 (TBG Wells Fargo statements for account ending in *8429); *see also* Trustee. 25 at 2 (TBG ledger reflecting $4,477.20 "fee expense"). *See also* KLM Ex. 272 (August 23, 2010 Comu email: "I recently acquired a full operating entity West Point Advisors Inc. for (£3,000.00)."); KLM Ex. 364 at 8701_1–2; *see also* KLM Ex. 366 at 1, 5.

[770]    KLM Ex. 176 at 1 (March 15, 2010 Newhaven email to Comu attaching "due diligence booklet," requesting professional references and other information); KLM Ex. 213 at 1–3 (between March 24 and March 30, 2010, Comu completed and forwarded the requested due diligence information to Newhaven).

[771]    KLM Ex. 206 at 15345 (Newhaven "Due Diligence" form sent to Comu stating: "The British Virgin Islands Government Code of Practice requires us to 'know our client' and we must know the proposed activities of a company to be formed by us.  We must also have basic information on the company's proposed shareholders, directors and officers.").

because Comu was "preparing to do some international work."[772]  Comu attached a letter drafted

for their signature, which was addressed to Newhaven in BVI.[773]

309.   Newhaven incorporated WPA in the BVI on Comu's behalf on April 23, 2010,[774]

and forwarded the incorporation documents to Comu on May 17, 2010.[775]  Newhaven acts as

Comu's nominee,[776] holding WPA and its assets in trust for Comu as WPA's sole principal and

beneficiary.[777]   As Comu's designated nominee, Newhaven agreed to "sign on the WPA's

behalf," take "all reasonable care to ensure that Money Laundering activities do not take place,"

and "[i]f required, … provide documentary evidence of specific transactions without delay."[778]

310.   Comu formed WPA and the WPA Account with the express purpose of selling

TBG's Green Auto Stock.[779]  Comu used WPA to liquidate Green Auto stock for cash the same

---

[772]   KLM Ex. 212 at 1 ("I am preparing to do some international work and need a professional
reference letter.").

[773]   KLM Ex. 212 at 2.  Comu's draft reference letter, which asked B&G to confirm that Comu had
not "been a Director or otherwise concerned in the management of a company which has been subject to
an insolvent liquidation or been the subject of a Judicial enquiry," was copied from a form reference letter
Comu received from Newhaven as part of the required due diligence related to forming WPA.  KLM Ex.
176 at 4432.  As the McNeill trial testimony reflects, it is unclear whether B&G ever provided the
requested reference (although Comu forwarded reference letters to Newhaven on March 24, 2010).  KLM
Ex. 213 at 17988_3.

[774]   KLM Ex. 364 at 8701_1–23.

[775]   KLM Ex. 364 (email attaching WPA documents).  WPA's stated purpose is to provide
"Investment Consulting & Advisory Services."  KLM Ex. 206 at 15346.

[776]   While he retained beneficial ownership of WPA, Comu arranged for Newhaven to provide
"directorship services" and "nominee services" for WPA on his behalf.  KLM Ex. 206 at 15346_2–3,
15346_8.

[777]   On May 17, 2010, in reference to WPA, Charlotte Jacob at Newhaven asked Comu to confirm
whether "the share issued in favour of Newhaven Nominees Ltd is to be held in trust for you?," to which
Comu responded: "the answer is YES."  KLM Ex. 367 at 1–2 (capitalization in original).  In Newhaven
due diligence documents, Comu is identified as WPA's sole "Principal," which is defined as "beneficial
owner and controller" or "other persons to whose direction the company officials follow."  KLM Ex. 206
at 15346_5–7.

[778]   KLM Ex. 206 at 15346_5.

[779]   KLM Ex. 195; KLM Ex. 196 at 1–2; *see also* KLM Ex. 188 at 1 (noting the use of an HSBC bank
account and law firm in London as escrow agent for funds received for stock sales).

way he used ERI.[780]  The form SPAs forwarded by Comu to colleagues for WPA and ERI are carbon copies – down to the font – except for the seller's name.[781]

311.  On Comu's behalf, Newhaven arranged in June of 2010 for a second nominee company—JPG Corporate Services Limited ("JPG Corporate"), located in the Republic of Seychelles;[782]—"to be used for the purposes of WPA's Green Car business,"[783] in reference to the Green Car entity established in the BVI for the parties to the Green Auto MOU.[784]  After receiving confirmation of JPG's appointment on June 28, 2010, Comu forwarded the information to Welch, Comu's partner at TBG and Regus Advisors, and a GETG officer, who executed the Green Auto MOU on behalf of FMS.[785]

312.  On June 29, 2010, in response to JPG's request for "details on the securities to be held by" the nominee for WPA, Comu confirmed, "[w]e have over 20M Shares in Green Auto that we would like to place to clients through authorized agents."[786]  Comu forwarded to JPG Corporate a certificate for 1,163,000 Green Auto shares issued to TBG,[787] wire instructions for the WPA Account in Channel Islands, and an account held in Newhaven's name at The Bank of

---

[780]   On July 19, 2010, Reuben Anstock at Newhaven confirmed regarding WPA "that whilst the funds will move into Newhaven Nominees' account, Corporate and Chancery will be organising the escrow agency administration services and [Newhaven] will release the funds when instructed to do so by yourself or them."  KLM Ex. 202 at 2; *see also* KLM Ex. 188 at 1 (email confirming that the procedure for selling stock via ERI "is the same procedure to West Point Advisors in the UK"—transaction documents and payments were forwarded to Newhaven in London (as escrow agent) for processing through the related HSBC account, after which Newhaven released the purchase funds to designated recipients).

[781]   *Compare* KLM Ex. 362 at 21081_1–3 (WPA form SPA, forwarded to corporate nominee on June 29, 2010) *with* KLM Ex. 361 at 3–4 (ERI form SPA, forwarded to WWA on June 11, 2010)

[782]   JPG's address as WPA's nominee was "c/o ACT Offshore (Pty) Ltd, 1st Floor, Oliaji Trade Centre, Victoria, Mahe, Seychelles."  KLM Ex. 195.  ACT Offshore provides the same kind of corporate fiduciary and "nominee" services as Newhaven.  *See generally* http://www.actoffshore.co/.

[783]   KLM Ex. 195.

[784]   *See supra* Section E(1)(b).

[785]   Upon receiving confirmation of JPG's nominee appointment for WPA, Comu forwarded the information to Welch (TBG Managing Partner who was also an insider of the GETG Entities and Regus Advisors, and who executed the Green Auto MOU on behalf of FMS).  KLM Ex. 221 ("Game On!!").

[786]   KLM Ex. 362 at 1; *see also* KLM Ex. 196 at 1–2; *see also* KLM Ex. 201 at 4.

[787]   KLM Ex. 362 at 21079.

East Asia Limited in London (the "Newhaven East Asia Account");[788] a form stock purchase agreement for use in individual stock sales—which was drafted for Newhaven's signature on behalf of WPA as the "seller"[789] —an escrow agreement, and bank information for depositing cash proceeds of the sales.[790]

313.    On June 30, 2010, Comu confirmed that the Green Auto stock sales effected through WPA would "start at USD $5K and up to $l00K. Shares are currently quoted @ .50/sh."[791]

### (e)    World-Wide Auric

314.    The parties to the Green Auto MOU used World-Wide Auric International ("WWA"), which has addresses and accounts in Lisbon, Portugal,[792] Leichtenstein and Turks & Caicos,[793] to liquidate their Green Auto stock. Nick Toscano, a Comu insider at Regus Advisors,[794] was the parties' contact at WWA.[795]

315.    WWA assisted the parties with domestic and international sales of Green Auto Stock through both ERI and WPA.[796] Comu forwarded ERI bank wiring instructions and a form SPA for ERI stock sales to Toscano for use in the sale of Green Auto stock.[797]

---

[788]    KLM Ex. 362 at 4 (Newhaven East Asia Account ends in **7002).

[789]    KLM Ex. 362 at 21081 – 21081_3.

[790]    KLM Ex. 362 at 1 (with attachments).

[791]    KLM Ex. 201 at 1.

[792]    KLM Ex. 158 at 2.

[793]    See, e.g., KLM Ex. 42 at 1 (WWA address in Grand Turk, Turks & Caicos Islands).

[794]    See supra Section C(4) (Comu provided Toscano with a Regus Advisors email address when he established the new entity in mid-2010).

[795]    See, e.g., KLM Ex. 323 at 1–3.

[796]    KLM Ex. 188 at 1 (email correspondence among Comu, Bryant, Welch and Toscano discussing Green Auto stock sales through ERI and WPA); KLM Ex. 282 (email correspondence among Comu, Toscano, Peter Knight, Welch and Bryant regarding use of ERI website for WWA transactions); KLM Ex. 323 at 1–3 (email correspondence between Comu and Toscano discussing international and domestic stock sales); KLM Ex. 361 (Comu email to Toscano, CC'd to Bryant and Welch, attaching ERI form documents required for stock sales).

[797]    KLM Ex. 361 at 1–3 ("Looking forward to working together.").

316.     Proceeds from stock sales effected through WWA were diverted to or through a variety of domestic and offshore accounts in accordance with Comu's instructions.[798]   These accounts include a bank account held by WWA at LET Bank in Liechtenstein (the "WWA Account"),[799] an account with Afr Asia Bank Ltd in Port Louis, Mauritius (the "Mauritius Account");[800] and a CitiBank account in New York (the "CitiBank Account").[801]

317.     Toscano raised concerns[802] about the various accounts that Comu proposed:

> Not to be difficutl [sic], but you said yesterday it was HSBC and now it is AFR ASIA BANK Ltd  (Africa Asia Bank Ltd)  Unfortunately no one that I would speak to in Europe will send their money there...   For reasons being; [Green Auto] is an American Stock, an American Company, Trading on an American exchange, sending Money to Africa...   It is hard enough in today's enviorment [sic] selling restricted stock (pink sheets); from a 3rd party (ERI) and now have to explain why there money has to go to Africa...  if it smells like fish it usually is...[803]

318.     DAPTCO Trust transferred 500,000 Green Auto shares to WWA on March 22, 2012.[804]  OMST did not collect any cash for the transfer of 500,000 shares to WWA.[805]

319.     Although WWA was assisting with stock sales made through WPA and ERI, Comu paid commissions to WWA through the OMST escrow accounts held by TBG, DAPTCO

---

[798]     Toscano emailed Comu confirming he needed banking information for stock sales from Comu. KLM Ex. 323 at 2.  In response, Comu indicated that "banking will be different but we may run either/or," and identified two accounts: one at Afr Asia Bank Ltd in Mauritius, and a Citibank account in New York.  KLM Ex. 323 at 1.

[799]     *See, e.g.*, KLM Ex. 42 at 1 (wire transfer instructions for WWA account ending in *818-51).

[800]     *See, e.g.*, KLM Ex. 323 at 1 (account ending in *5016).

[801]     *See, e.g.*, KLM Ex. 323 at 1 (account ending in *9497).

[802]     Toscano also expressed concern that the draft SPA for ERI stock purchases did not represent that the stock was restricted.  KLM Ex. 188 at 1 ("I only bring this to your attention because when the buyer receives the cert he or she can represent that either had no idea there was a year hold on the stock and request his funds back or pick up the phone?").

[803]     KLM Ex. 323 at 1.

[804]     KLM Ex. 81 (stock certificate issued to WWA); KLM Ex. 158 at 1 (instructions to AST to transfer 500,000 shares from DAPTCO Trust to WWA); KLM Ex. 161 at 9.

[805]     Troster Exam 89:5 – 90:7, 91:4 – 10, 96:19 – 23.

Trust, and TKY Trust.[806]  At Comu's direction, between 2011 and 2012, WWA received at least

$316,469 in cash distributions from OMST out of the TBG escrow account,[807] $34,075 from the

DAPTCO escrow account,[808] and $220,037 from the TKY escrow account[809] (together totaling

$570,581).  TBG accounts also reflect substantial wire transfers directly to WWA.[810]

### (f)   EuroCap Investments

320.   Comu is Chairman[811] and a Director[812] of UK entity EuroCap Investments PLC

("EuroCap"),[813] a foreign Conduit he has used to conceal cash and liquidate TBG's holdings of

Green Auto stock.

321.   EuroCap is affiliated with TBG[814] and shares the Galleria Address with Regus

Advisors.[815]  Comu is authorized "to sign and enter into any banking or securities transactions

---

[806]     KLM Ex. 39; KLM Ex. 41 at 2; KLM Ex. 42 at 1; KLM Ex. 45; KLM Ex. 46 at 2; KLM Ex. 55 at 2; KLM Ex. 56 at 2; KLM Ex. 60 at 1; KLM Ex. 80; Trustee Ex. 53 at 2; *see also* Troster Exam 36:2 – 3 (in the OMST transfer ledgers, "WWA" refers to World Wide Auric), 80:5 – 10 (same), 83:8 – 84:7 (OMST transfer records identify which shares were being transferred by WWA and which by TBG), 95:12 – 23 (per Comu's instructions, OMST combined wire transfers to WWA from the different escrow accounts).

[807]     Trustee Ex. 52 at 1 ($40,039); Trustee Ex. 57 at 1 ($11,750); KLM Ex. 31 at 1 ($9,650); KLM Ex. 39 ($92,400); KLM Ex. 41 at 1 ($49,800); KLM Ex. 60 at 1 ($8,840); KLM Ex. 62 at 1 ($7,290); KLM Ex. 63 at 1 ($5,625); KLM Ex. 64 at 1 ($7,500); KLM Ex. 71 at 2 ($39,435).

[808]     Trustee Ex. 53 at 1 ($8,000); Trustee Ex. 59 at 1 ($10,500); KLM Ex. 56 at 2 ($4,000); KLM Ex. 77 at 1 ($3,975); KLM Ex. 78 at 1 ($7,600).

[809]     Trustee Ex. 58 at 2 ($11,040); KLM Ex. 46 at 2 ($3,250); KLM Ex. 65 at 2 ($50,000); KLM Ex. 66 at 2 ($3,000); KLM Ex. 68 at 3 ($27,000); KLM Ex. 69 at 2 ($20,000); KLM Ex. 70 at 2 ($25,712); KLM Ex. 71 at 2 ($39,435); KLM Ex. 72 at 2 ($16,350); KLM Ex. 73 at 2 ($7,500); KLM Ex. 75 at 2 ($16,750).

[810]     KLM Ex. 19 at 26 ($58,500); KLM Ex. 19 at 30 ($49,200); KLM Ex. 19 at 31 ($37,200); KLM Ex. 19 at 32 ($30,000); KLM Ex. 19 at 32 ($3,000); KLM Ex. 19 at 44 ($6,000).

[811]     KLM Ex. 153 at 10; KLM Ex. 154 at 3; KLM Ex. 322.

[812]     *See, e.g.*, KLM Ex. 82 at 1, 5, 8, 10.

[813]     EuroCap was originally formed as Optical Dynamics PLC, and changed its name to EuroCap on November 1, 2011.  KLM Ex. 82 at 10.  EuroCap is listed on London's GXG exchange.  KLM Ex. 82 at 10.  EuroCap's UK filing describes its business as follows: "The company is now seeking to make investments on operating companies with proven business models and management teams capable of sustaining growth."  KLM Ex. 82 at 10.

[814]     EuroCap's UK corporate filings disclose that in 2012, EuroCap was invoiced £21,723 TBG for "consulting services" from TBG, which was "settled by the issue of 10,000,000 Ordinary shares" to TBG.  KLM Ex. 82 at 19.  EuroCap's UK filings also disclose that EuroCap received loans from both TBG (£7,028) and Regus Advisors (£18,724).  KLM Ex. 82 at 19.

[815]     KM Ex. 153 at 1; KLM Ex. 154 at 2–3.

necessary in the day to day affairs of" EuroCap.[816] Baxter—a TBG and Regus Advisors insider—served as a Director of EuroCap in 2011.[817]

322. In December of 2011, TBG transferred $125,000 to EuroCap in two transactions identified in a TBG "General Ledger" as "business registration expenses."[818]

323. On November 8, 2011, Comu caused TBG to transfer 10 million shares of restricted Green Auto stock to EuroCap.[819] On November 13, 2013, at Comu's direction (as Chairman of EuroCap), TBG transferred 2 million shares back to TBG.[820] On December 17, 2013, Comu sold 330,000 shares to private buyers through EuroCap in return for $33,000 in cash proceeds (reflecting a $0.10 per share stock price).[821] Comu admitted at trial that if he had effected this transfer three days later it would have violated the Agreed TRO.

324. As of December 31, 2012, EuroCap had 24,000,800 shares outstanding,[822] of which TBG holds at least 10 million[823] (which, according to the Injunction Status Report, have now been turned over to Trustee).[824] Comu has not, however, turned over the Green Auto shares held by EuroCap to Trustee.[825]

### (g) Campus Investments

325. As noted above, Comu has been involved with Campus Investments, a UK entity, since before the Petition Date.[826] TBG transferred 1.3 million Green Auto shares to Campus

---

[816] KLM Ex. 153 at 10.
[817] KLM Ex. 82 at 8; KLM Ex. 153 at 3.
[818] Trustee Ex. 26 at 5, 8.
[819] Trustee Ex. 4; KLM Ex. 51 at 110.
[820] KLM Ex. 154; KLM Ex. 161 at 59.
[821] KLM Ex. 153; KLM Ex. 161 at 62.
[822] KLM Ex. 82 at 17.
[823] KLM Ex. 82 at 19.
[824] Inj. Status Report at 14 (item #71).
[825] Inj. Status Report at 11–14.
[826] *See supra* Section B(3).

Investments,[827] some of which Campus then liquidated for cash.[828] Even though these shares were ostensibly sold by Campus Investments, TBG received direct payments from at least two of these purchasers.[829] Comu has not turned over any Green Auto shares held by Campus Investments or any other assets related to Campus.[830]

### (h) Other Conduits for Liquidating Stock

326. FMS shares the 11700 Preston Road Address with Brand Marketing, Inc. ("Brand Marketing"), First Orient Holdings Limited ("First Orient"), and Equity Market Development, Inc. ("EMD"), all of which are identified in Green Auto's 2013 SEC filings as holders of at least 5% of Green Auto's outstanding stock.[831] EMD also shares addresses with ERI at the Porter Ranch Address.[832] Instructions for EMD stock transfers are made by Marc Bryant and ERI.[833] EMD has been used by TBG,[834] FMS,[835] and Maybourne[836] to transfer and conceal their Green Auto stock holdings. FMS also used Brand Marketing[837] and First Orient[838] to transfer and hold Green Auto shares.

---

[827] KLM Ex. 49 at 3 (500,000 shares); KLM Ex. 49 at 7–8 (500,000 shares); KLM Ex. 51 at 54–55 (300,000 shares).

[828] KLM Ex. 49 at 4–5.

[829] *Compare* KLM Ex. 49 at 5 (certificates issued to Mary Denisco (40,000 shares) and Gary Kulis (30,400 shares); *with* KLM Ex. 96 at 2 (TBG payments received from Denisco ($5,000) and Kulis ($7,600), reflecting an average approximate sales price of $0.18 per share); *see also* KLM Ex. 49 at 8 (TBG sold an additional 50,000 shares to Denisco on June 14, 2010). Campus Investments also transferred cash to TBG accounts. *See, e.g.*, KLM Ex. 96 at 2.

[830] Inj. Status Report at 11–14.

[831] KLM Ex. 150 at 46 (First Orient and Brand Marketing each holding 47 million shares, and EMD holding 26,189,152 shares).

[832] KLM Ex. 117 at 58 (1 million EMD shares held "c/o ERI" at Porter Ranch Address).

[833] *See, e.g.* KLM Ex. 51 at 108; KLM Ex. 161 at 26.

[834] KLM Ex. 49 at 4 (3,500,000).

[835] KLM 49 at 37 (1,000,000 shares); KLM Ex. 51 at 108 (800,000 shares from Smarter, which originated from FMS via David Knight (KLM Ex. 49 at 13)); KLM Ex. 161 at 89 (27,500 Preferred Shares); KLM Ex. 161 at 95 (125,000 Preferred shares received from FMS via Brand Marketing (KLM Ex. 161 at 88)).

[836] KLM Ex. 161 at 7 (100,000 shares received via Newhaven (KLM Ex. 51 at 106) and Cede & Co. (KLM Ex. 161 at 1)).

[837] KLM Ex. 161 at 88 (125,000 Preferred Shares).

[838] KLM Ex. 161 at 88 (125,000 Preferred Shares).

327.   FMS and Comu also used affiliated entities Global Market Advisors, Inc. ("GMAI"), Global Trade Finance, Inc. ("Global Trade"), and Eurasia Finance and Development Corp. ("Eurasia Finance")[839] to transfer their Green Auto shares[840] and dissipate or liquidate those shares through ERI,[841] Cede & Co.,[842] or to private buyers.[843]

328.   FMS also used Relaunch Consulting Group ("Relaunch") to transfer and sell Green Auto shares.  Marc Bryant and ERI instructed the transfer agent regarding trades and sales for Relaunch.[844] FMS transferred 4 million Green Auto shares to Relaunch,[845] after which Relaunch transferred over 2.5 million shares to ERI to liquidate for cash.[846]

329.   Another Conduit for the transfer and sale of Green Auto shares was Vertex International Group LLC ("Vertex").[847] According to Green Auto SEC filings, as of May 14, 2013, Vertex is identified as a holder of at least 5% of Green Auto's outstanding stock, with

---

[839]   GMAI is a wholly-owned subsidiary of Global Trade, which in turn is wholly-owned by Eurasia Finance.  KLM Ex. 150 at 50.  According to Green Auto's 2013 SEC filings, Eurasia Finance held 47 million Green Auto shares.  *Id.*

[840]   KLM Ex. 49 at 11 (1,000,000 shares to GMAI from TBG); KLM Ex. 51 at 11 (9,000,000 shares from Regus Advisors to Global Trade); KLM Ex. 161 at 33 (1,500,000 shares from Global Trade to Eurasia Finance); KLM Ex. 161 at 88 (125,000 Preferred Shares from FMS to Global Trade); KLM Ex. 161 at 89 (125,000 Preferred Shares from Global Trade to Eurasia Finance).

[841]   KLM Ex. 51 at 49 (9,000,000 shares (which originated with Regus Advisors) transferred from Global Trade to ERI).

[842]   KLM Ex. 161 at 68, 71 (1,500,000 from Eurasia Finance to Cede & Co. via Wilson Davis & Co.)

[843]   KLM Ex. 49 at 26 (1 million shares from GMAI to a single apparent purchaser, Susan Loguercio).

[844]   KLM Ex. 51 at 67, 81, 88–90, 92–93.

[845]   KLM Ex. 51 at 36 (4,000,000 shares from FMS).

[846]   Per instructions from ERI or Bryant, Relaunch transferred over 2.5 million shares to ERI. KLM Ex. 51 at 67 (1 million shares, per ERI instructions); KLM Ex. 51 at 83 (1 million shares, per Bryant instructions); KLM Ex. 51 at 89 (66,818 shares, per ERI instructions); KLM Ex. 51 at 89 (46,875 shares, per Bryant instructions); KLM Ex. 51 at 89–90 (180,472 shares, per Bryant instructions); KLM Ex. 51 at 90 (225,000 shares, per Bryant instructions).

[847]   Vertex is one of the entities used by Bryant to transfer and liquidate the FMS Shares received from TBG pursuant to the Green Auto MOU.  For example, in 2012 and 2013, many of the instructions to AST for the transfer of Green Auto stock held by ERI, EMD and FMS came from Vertex.  KLM Ex. 161 at 10 (ERI stock transfers made per instructions from Vertex); *id.* at 11 (same); *id.* at 57 (same); *id.* at 37 (FMS stock transfers made per instructions from Vertex); *id.* at 97 (EMD stock transfers made per instructions from Vertex).

24,737,792 shares.[848] FMS transferred millions of Green Auto shares to Vertex,[849] which in turn sold millions of Green Auto shares to private purchasers in 2012 and 2013.[850]

330. The parties also used Diversified Equities Inc. ("Diversified Equities")[851] and Diversified Services Group Inc. ("Diversified Services")[852] to transfer their Green Auto shares.

331. The parties also used Independent Asset Group, Inc. ("IAG") to dissipate their Green Auto shares,[853] which in turn transferred the shares to other Conduits or sold the shares to private buyers.[854]

332. The parties also used offshore entity Investment and Finance Company Limited ("IFC")[855] to transfer[856] and liquidate millions of Green Auto shares for cash either directly or through ERI.[857]

333. TBG and FMS also transferred shares through Smarter, Inc. ("Smarter"),[858] an entity controlled by GETG and Regus Advisors insider David Knight.[859] According to the

---

[848]     KLM Ex. 150 at 46.
[849]     KLM Ex. 161 at 5 (3,000,000 shares from FMS); KLM Ex. 161 at 89 (31,250 Preferred Shares from FMS); KLM Ex. 161 at 90 (47,901 Preferred Shares from FMS via ERI).
[850]     Like ERI, Vertex was used as a vehicle for selling millions of Green Auto shares in return for cash. *See, e.g.*, KLM Ex. 161 at 25 (approximately 2 million shares sold to private buyers). *See also* KLM Ex. 161 at 27, 28, 29, 32, 42, 90, 91, 92, 93, 94, 96.
[851]     KLM Ex. 161 at 58 (999,478 shares from ERI); KLM Ex. 161 at 58 (58,366 shares received from Vertex); KLM Ex. 161 at 59 (659,313 shares from FMS); KLM Ex. 161 at 97 (15,200 Preferred Shares from EMD); KLM Ex. 161 at 97 (774 Preferred Shares from ERI); KLM Ex. 161 at 98 (2,245 Preferred Shares from Vertex).
[852]     KLM Ex. 161 at 23 (100,000 shares from FMS); KLM Ex. 161 at 41 (200,000 shares from TBG via Comu insider John Potter).
[853]     KLM Ex. 161 at 53 (2,500,000 shares from ERI); KLM Ex. 161 at 60 (1,717,157 shares from Diversified Equities); KLM Ex. 161 at 95 (15,000 Preferred Shares from Vertex); KLM Ex. 161 at 98 (18,219 Preferred Shares from Diversified Equities); KLM Ex. 161 at 101 (5,318 Preferred Shares from Bio-Global – violated TRO)
[854]     KLM Ex. 161 at 60, 61, 62, 67, 71, 98, 99, 100.
[855]     Bryant instructed OMST regarding trades for IFC. KLM Ex. 51 at 45. IFC has an address in Curaçao, Netherlands Antilles. KLM Ex. 117 at 78.
[856]     KLM Ex. 51 at 26–27 (8,760,000 shares from dMedia); KLM Ex. 51 at 44–45 (4 million shares to ERI, per instructions from Bryant). IFC transferred 5,000,000 shares to One World Energy LLC, which were subsequently transferred back to IFC (per instructions from IFC). KLM Ex. 161 at 36, 53.
[857]     KLM Ex. 51 at 44–45 (4,000,000 shares from IFC to ERI, per instructions from Bryant); *see also* KLM Ex. 51 at 33; KLM Ex. 161 at 8, 15, 27, 30.

Injunction Status Report, 200,000 shares held in the name of Smarter have now been turned over to Trustee,[860] but at least 200,000 shares held by Smarter were transferred after the Agreed TRO was entered on December 20, 2013.[861]

334.    Comu and FMS used two intermediaries to sell their Green Auto shares: Greenstar Financials, Inc. ("Greenstar"), a Florida corporation,[862] and First Clearing LLC ("First Clearing").[863]  Greenstar received 17.5 million shares (plus 36,000 Preferred Shares) directly or indirectly from the parties to the Green Auto MOU,[864] and liquidated millions of those shares for cash.[865]  Similarly, First Clearing received 1.6 million shares directly or indirectly from the parties to the Green Auto MOU,[866] which First Clearing then transferred to Cede & Co.[867]

---

[858]    KLM Ex. 49 at 13 (200,000 shares from TBG and 1,000,000 shares from FMS transferred to Smarter via David Knight); KLM Ex. 51 at 108 (800,000 shares from Smarter to EMD, per instructions from Bryant).  Smarter subsequently transferred 200,000 shares to Benchmark Advisory Partners, LLC ("Benchmark") in July of 2013, KLM Ex. 161 at 49.

[859]    *See infra* Section B(3), C(4); *see also* KLM Ex. 117 at 151 (Smarter, Inc.'s Green Auto shares delivered to care of David Knight in Las Vegas, Nevada).

[860]    Inj. Status Report at 11 (item #10) (Certificate No. 2563, dated August 18, 2010).

[861]    Smarter transferred 200,000 shares to DMS Consulting, LLC ("DMS") on December 26, 2013 – after the Agreed TRO was entered.  KLM Ex. 161 at 63.

[862]    *See, e.g.*, KLM Ex 42 at 7 (OMST wire transfer instructions for Greenstar).

[863]    *See* KLM Ex. 129 at 7–8 (Comu uses First Clearing to sell stock holdings held in his Personal Wachovia Securities account).

[864]    KLM Ex. 161 at 24 (500,000 shares from FMS); KLM Ex. 161 at 25 (3,000,000 shares from FMS); KLM Ex. 161 at 28 (2,000,000 shares from ERI); KLM Ex. 161 at 36 (3,000,000 shares from FMS); KLM Ex. 161 at 38 (1,000,000 shares from FMS); KLM Ex. 161 at 45 (1,000,000 shares from ERI); KLM Ex. 161 at 46 (1,000,000 shares from ERI); KLM Ex. 161 at 57 (1,500,000 shares from ERI); KLM Ex. 161 at 93 (6,000 Preferred shares from ERI); KLM Ex. 161 at 94 (5,000 Preferred shares from Vertex); KLM Ex. 161 at 95 (5,000 Preferred shares from Vertex); KLM Ex. 161 at 97 (5,000 Preferred shares from EMD); KLM Ex. 161 at 98 (5,000 Preferred shares from IAG); KLM Ex. 161 at 99 (5,000 Preferred shares from IAG); KLM Ex. 161 at 100 (5,000 Preferred shares from IAG)

[865]    KLM Ex. 161 at 26, 29–30, 32, 35, 38, 40–41, 43, 45, 47, 50, 52–54, 57, 60–61, 64, 69, 79, 84, 94, 96–101.  Comu instructed OMST to distribute over $100,000 in cash to Greenstar out of the escrow accounts for TBG, DAPTCO Trust and TKY Trust, which does not include cash distributions made after the escrow accounts were closed.  KLM Ex. 41 at 3 ($15,750); KLM Ex. 60 at 3 ($4,000); KLM Ex. 62 at 2 ($1,500); KLM Ex. 66 at 3 ($2,000); KLM Ex. 68 at 2 ($8,000); KLM Ex. 69 at 2 ($12,000); KLM Ex. 70 at 2 ($2,000); KLM Ex. 71 at 2 ($16,400); KLM Ex. 72 at 2 ($3,200); KLM Ex. 74 at 2 ($4,000); KLM Ex. 75 at 3 ($22,000); KLM Ex. 77 at 2 ($1,200); Trustee Ex. 53 at 3 ($8,000); Trustee Ex. 58 at 3 ($2,000); Trustee Ex. 59 at 2 ($2,000).

[866]    KLM Ex. 161 at 2 (800,000 shares from EMD); KLM Ex. 161 at 7 (800,000 shares from EMD);

335.    Many of the Conduits have transferred their Green Auto stock holdings from TBG, Maybourne and FMS to Cede & Co. or BK Cede & Co. Fast Balance.[868]

336.    TBG, Maybourne and FMS also transferred millions of Green Auto shares to or through other Comu insiders, and Conduits controlled insiders, including Bryant (who controls ERI and other Conduits used to dissipate Green Auto shares);[869] dMedia[870] (controlled by Peter Knight, and active in business of TBG, Regus Advisors, the GETG Entities, and ERI);[871] Texas Atlantic Capital, LLC ("TAC")[872] (which shares offices with various Comu affiliates at the

---

[867]    KLM Ex. 161 at 2 (800,000 shares to Cede & Co); KLM Ex. 161 at 8 (800,000 shares to Cede & Co.).  All of these 1.6 million shares have been combined into Certificate No. 700001 held by Cede & Co. KLM Ex. 161 at 54.

[868]    3.5 million from TBG via EMD (KLM Ex. 49 at 4; KLM Ex. 49 at 6; KLM Ex. 161 at 54 (Certificate No. 700001)).  Maybourne transferred to Newhaven 2,600,000 shares between May 14, 2010 and November 26, 2012.  KLM Ex. 49 at 6 (500,000 shares); KLM Ex. 51 at 107 (2 million shares); KLM Ex. 161 at 29 (100,000 shares).  Between December 6, 2011 and July 31, 2012, Newhaven transferred 1,100,000 shares to Cede & Co.  KLM Ex. 161 at 1 (Certificate No. 5005 & No. 5006); KLM Ex. 161 at 14 (Certificate No. 5261); KLM Ex. 161 at 18 (Certificate No. 5327).  Cede & Co. transferred 100,000 of those shares to EMD (an entity controlled by Bryant) on February 12, 2012 (KLM Ex. 161 at 7 (Certificate No. 5112)), and the remaining 1 million shares were transferred to Cede & Co. Fast Balance Certificate No. 700001.  KLM Ex. 161 at 54.

[869]    KLM Ex. 49 at 5 (20,000 shares from TBG); KLM Ex. 51 at 94 (100,000 shares from John Potter).   On April 23, 2010, FMS transferred 500,000 shares to Bryant (230,000 of which Bryant returned to FMS on January 25, 2011).  KLM Ex. 49 at 5; KLM Ex. 51 at 9.  Bryant liquidated many of these shares for cash.  KLM Ex. 49 at 20, 21, 36, 44.

[870]    Pursuant to Comu's January 5, 2010 Instruction Letter (KLM Ex. 313 at 7), OMST transferred 1,000,000 restricted shares from TBG to dMedia, care of Peter Knight.  KLM Ex. 49 at 1.  dMedia received an additional 5 million shares from FMS on April 23, 2010.  KLM Ex. 49 at 5.  In addition to millions of shares transferred to dMedia by TBG and FMS, dMedia received 9 million shares as part of the TBG Loan Recap on December 30, 2010.  KLM Ex. 50 at 3.  Pursuant to instructions from Bryant, OMST transferred 1 million shares from dMedia to ERI on October 6, 2011.    KLM Ex. 51 at 102.  dMedia transferred another 8,670,000 shares to IFC in April of 2011.  KLM Ex. 51 at 26– 7.  On September 28, 2012, dMedia transferred 5 million shares to Comu insider David Knight (KLM Ex. 161 at 23 (Certificate No. 5456)), who in turn transferred all 5 million shares to ERI on November 8, 2012.  KLM Ex. 161 at 28.

[871]    *See supra* Section C(4); *see also* KLM Ex. 25 at 7 (GETG Director); KLM Ex. 104 (GETG); KLM Ex. 198 at 1 (Regus Advisors); KLM Ex. 227 at 1–2 (TBG & Regus Advisors); KLM Ex. 321 at 2 (TBG & GETG); KLM Ex. 218 at 1 (TBG & ERI); KLM Ex. 282 (ERI & WWA).  Some dMedia stock transfers are effected pursuant to instructions from Bryant to the transfer agent.  *See, e.g.*, KM Ex. 51 at 102.  dMedia, which is run by GETG and Regus Advisors insider Peter Knight, is based in Park City, Utah.  KLM Ex. 117 at 41; KLM Ex. 313 at 7.

[872]    Pursuant to Comu's January 5, 2010 Instruction Letter (KLM Ex. 313 at 7), TBG transferred 300,000 shares to TAC.  KLM Ex. 49 at 1.

15950 Dallas Parkway Address, and is controlled by Comu insider Saul Albom);[873] Ed Baxter and the entity he controls called Bois d'Arc Partners, LLC ("Bois D'Arc")[874] (Baxter is a TBG and Regus Advisors insider);[875] Energy Farms, Inc.[876] ("Energy Farms") (an entity controlled by Comu insider Richard Kadish);[877] the GETG Entities in which Comu holds an interest[878] Bio-Global,[879] XL Biofuels,[880] and GETG insiders John Potter,[881] Perry West;[882] and TBG employee Heather Jackson.[883]

### 6. Other Offshore Accounts to Conceal and Enjoy Undisclosed Assets

337. In addition to the Turkish Bank Accounts described *supra*,[884] Comu has used other offshore entities and accounts to conceal and enjoy assets and cash, including the proceeds of Green Auto stock sales.

---

[873] KLM Ex. 117 at 165; KLM Ex. 313 at 7. At all relevant times, Albom was paid out of TBG accounts. See KLM Ex. 89 at 13–14, 17 (TBG checks to Albom).

[874] *See, e.g.*, KLM Ex. 49 at 5 (25,000 shares to Baxter from TBG); KLM Ex. 49 at 12 (20,000 shares to Baxter from TBG); KLM Ex. 49 at 21 (2,000,000 shares to Baxter from TBG); KLM Ex. 161 at 3 (2,045,000 shares from Baxter to Bois D'Arc).

[875] At all relevant times, Baxter was a Managing Partner of TBG or Regus Advisors, and was paid out of TBG accounts. *See supra* Section C(3)–(4); *see also generally* Baxter testimony admitted at trial.

[876] Pursuant to Comu's January 5, 2010 Instruction Letter (KLM Ex. 313 at 4, 6), OMST transferred 720,050 shares from TBG to Energy Farms, care of Richard Kadish. KLM Ex. 49 at 1. TBG also transferred over 1.7 million shares directly to Kadish. KLM Ex. 49 at 3 (515,066 shares from TBG); KLM Ex. 49 at 5 (192,600 shares from TBG to Kadish via Campus); KLM Ex. 49 at 5 (1,000,000 shares from TBG to Kadish). In 2010 and 2011, Kadish and Energy Farms sold off the shares to various private purchasers. KLM Ex. 49 at 7, 20, 25–26, 44; KLM Ex. 51 at 37; KLM Ex. 161 at 4, 26, 44, 54.

[877] Energy Farms is located in Corona Del Mar, California, and is controlled by Richard Kadish. *See, e.g.*, KLM Ex. 313 at 4. Kadish appears in correspondence among Welch and Comu regarding cash sales of Green Auto stock. *See, e.g.*, KLM Ex. 101. TBG made payments to (KLM Ex. 18 at 16 ($15,000)), and received payments from (KLM Ex. 18 at 6 ($5,000)), Energy Farms in late 2009.

[878] *See supra* Section B(3); *see also* KLM Ex. 104 at 1 (GETG insiders include Potter, Dahl, Welch (via XL Biofuels and FMS), David Knight and Peter Knight).

[879] KLM Ex. 161 at 95 (95,485 Preferred Shares from FMS). Bio-Global has liquidated some of these shares for cash in transactions effected after the Agreed TRO was entered. KLM Ex. 161 at 101.

[880] KLM Ex. 161 at 89 (3,750 Preferred Shares from FMS); KLM Ex. 161 at 90 (5,748 Preferred Shares from FMS).

[881] KLM Ex. 49 at 4 (300,000 shares from TBG).

[882] KLM Ex. 49 at 45 (500,000 shares from ERI). West transferred these 500,000 shares back to ERI in 2011. KLM Ex. 51 at 54.

[883] KLM Ex. 49 at 4 (50,000 shares).

[884] *See supra* Section B(2).

(a)    *Continental Investments – UK*

338.    Comu incorporated Continental Investments Holding Company Limited, a UK company ("CIHC")[885] on March 18, 2010 (before the Discharge Date), using the nominee services of Mansion House Capital ("Mansion House"),[886] (which, like Newhaven, concealed Comu's ownership of the entity).  Anne Boureau ("Boureau") was appointed as Comu's nominee to serve as CIHC's sole director and shareholder.[887]  Comu's contact at Mansion House was Patrick Kelly, a Comu insider at Regus Advisors.[888]

339.    At Comu's instruction, Boureau signed a letter, dated April 19, 2010 and addressed to Beykoylu at Turkish Bank in London, UK, authorizing Cem Comu to "to open and operate a Corporate Bank Account for the benefit and use of" CIHC (the "CIHC Turkish Bank Account").[889]  Comu instructed Boureau regarding follow up communications with Turkish Bank required to open the account.[890]

340.    When asked at his 2013 deposition whether he was familiar with CIHC, Comu unequivocally answered "No," and he denied being involved with its formation.[891]  After

---

[885]    KLM Ex. 178 at 1 (March 18, 2010 email to Comu confirming incorporation of "your company" CIHC); *id.* at 4625 (certification of CIHC incorporation).  After receiving the incorporation information from Patrick Kelly at Mansion House, Comu responded, "You the best!! Pls send invoice and Bank Wire Info.  Many thanks again- looking forward to the many deals in front of us!!"  KLM Ex. 211 at 1.

[886]    Mansion House apparently used an online UK service to incorporate Continental Investments. *See generally* http://www.companiesmadesimple.com (website used for incorporation documents).

[887]    KLM Ex. 178 at 2–3.

[888]    *See supra* Section C(4) (Comu provided Kelly with a Regus Advisors email address when he established the new entity in mid-2010).

[889]    KLM Ex. 214 at 1–2 (Comu forwarded a form letter for opening CIHC Turkish Bank Account to Mansion House); KLM Ex. 180 at 1–2 (Mansion House returned the signed letter to Comu ("Happy hunting.")); KLM Ex. 215 at 1–2 (Comu forwarded the signed letter to Cem to facilitate opening the CIHC Turkish Bank Account).

[890]    KLM Ex. 217 (May 22, 2010 email from Comu to Boureau thanking her for her "assistance in opening a new Bank Account for Continental," and informing her that Turkish Bank needed "to confirm your instruction and grant the authorization").

[891]    KLM Ex. 345 at 1–2 ("Q. If you were involved in setting up a UK entity, would you remember? A.  Right, but I never set up the UK entity.  Q. … If you had, would you remember?  A.  Oh, if I did, yes. ***  Q. … So you're sure that you weren't involved in setting up a UK entity called Continental Investment Holding Company?  A.  Well, I hope not.  Q.  Are you sure that you weren't involved or are you not sure?  A.  No. I'm sure I am not involved.").

reviewing his deposition and deposition exhibits (which were produced in the 2013 Electronic

Production), Comu produced an "errata" changing his "No" answer to "Yes."[892]

### (b)    Continental Partnership – Comu BVI

341.    In June of 2010, Comu again enlisted the services of Newhaven to establish a new

BVI entity in his name, related to CIHC, called Continental Partnership, Inc. ("CPI").[893]

342.    While all of the following events happened a few months after the Petition Date,

they seem relevant in showing the clear pattern in which Comu has engaged (again and again and

again—both prepetition and postpetition) to conceal assets in which he has a beneficial interest

and control.  Comu structured CPI the same way he structured WPA in order to conceal his

beneficial ownership: Newhaven was appointed as registered agent for CPI,[894] and agreed "to

provide nominee director and shareholder services [for CPI] on the same reduced fee terms as we

provided for [WPA]."[895]  Comu confirmed with Newhaven that CPI would enjoy "the same

policy of privacy … with ownership and directors being BVI."[896]

343.    Throughout the Adversary Proceeding—and in his trial testimony—Comu has

falsely claimed that CPI is owned and controlled by his brother, Cem.  And when confronted at

---

[892]    KLM Ex. 345 at 1–2.  Comu explained that he "found Cert. of Inc.," that "[a]ll I did was buy Cert. of Inc.," and that his "brother set it up."  There is no evidence that Cem Comu was involved with the incorporation of Continental Investments.

[893]    On June 18, 2010, Newhaven informed Comu that "names beginning with Continental Group, Holdings Investment" (to mirror Comu's UK entity, Continental Investments) were unavailable, and proposed the name Continental Partnership Inc. as an alternative.  KLM Ex. 206 at 15343.  Comu approved CPI as the corporate name and instructed Newhaven to register the entity.  KLM Ex. 206 at 15343.  Newhaven incorporated CPI, a BVI company, on Comu's behalf on June 18, 2010.  KLM Ex. 204 at 14676 (certificate of incorporation); id. at 14676_2–23 (Memorandum of Understanding and Articles of Incorporation for CPI).  Comu paid Newhaven £750 to set up CPI.  KLM Ex. 272; see also KLM Ex. 206 at 15341.

[894]    KLM Ex. 204 at 14676_3.

[895]    KLM Ex. 206 at 15342; KLM Ex. 132 at 6 (Newhaven was appointed on June 18, 2010, to act as nominee shareholder and sole director for CPI).

[896]    KLM Ex. 206 at 15343.

his 2013 deposition, Comu denied involvement with CPI.[897] But Comu's own correspondence (obtained in the 2013 Electronic Production) confirms that CPI and its accounts remained under Comu's—not Cem's—ownership and control: "[I]n the matter of Continental Partnership Inc., please note that *this business entity will be strictly under my ownership and control* and therefore no further need from my brother…. As such I would like to activate some banking for this and transfer funds."[898] Comu also personally controlled CPI's bank account(s),[899] which Comu established for the express purpose of real estate and stock investments.[900]

344. Comu concealed his control of CPI in order to conceal his ownership of the Oaks North Residence, which Comu purchased through CPI on October 15, 2010 (a few months after this Bankruptcy Case was filed), for $397,000 in cash.[901] The purchase of the Oaks North Residence was negotiated[902] and consummated by Comu[903]—Cem Comu's only involvement in

---

[897] KLM Ex. 345 at 1 ("Q. Okay. So back to Continental Partnership, Inc., your testimony is you had nothing to do with the establishment of that entity? A. No, I don't recall that – being involved with that. Q. I'm sorry? A. I don't recall being involved with that.").

[898] KLM Ex. 202 at 2 (emphasis added).

[899] On August 16, 2010, Charlotte Jacob at Newhaven forwarded to Comu due diligence documents Newhaven required to set up CPI's account at HSBC and asked Comu to confirm the currencies to be held. KLM Ex. 203 at 1 (with HSBC due diligence form attached). Comu responded on August 17, 2010 that CPI's account would "primarily be USD," and informed Newhaven that he "*wanted to operate this [CPI] account – personally*." KLM Ex. 204 at 1 (emphasis added). Comu inquired whether he could conduct CPI's banking individually, "or must everything go through" Newhaven like WPA. KLM Ex. 202 at 2. Reuben Anstock confirmed that Newhaven "will have to run everything through us as per WPA," and referred Comu's banking question to Charlotte Jacob. KLM Ex. 202 at 1–2. On August 24, 2010, Newhaven informed Comu that it was "not possible for [Newhaven] to grant control over the bank account unless we are the nominees of the company," and that if Comu only needed the entity, and not a bank account, Newhaven "will need to resign as nominees." KLM Ex. 206 at 15341.

[900] KLM Ex. 275 at 1 ("In regards to CPI – I would like to open & operate a Bank Acct and look to make investments of Real Estate and/or Stocks. As such could you please provide me the necessary docs and or resolutions that would allow me to have such authority?").

[901] KLM Ex. 130 (contract of sale for Oaks North Residence).

[902] On September 15, 2010, Comu approved the $397,000 cash offer for the Oaks North Residence. KLM Ex. 279 ("Great Job on the House Negotiation. Lets proceed – with the offer of $397,000.").

[903] Although the contract of sale identifies CPI as the purchasing party, notices pertaining to "Buyer" of the Oaks North Residence are sent to "CJ Comu." KLM Ex. 130 at 6. The home warranty for the Oaks North Residence identifies Comu as the "home buyer," and was purchased and is held in Comu's name. KLM Ex. 133 at 1, 4, 8, 11; KLM Ex. 131 at 1–2. Cem Comu's signature on the purchase contract is a stamp as opposed to an original signature. KLM Ex. 130 at 7.

the transaction was to execute documents per Comu's request as part of Comu's scheme to conceal his ownership of the property.[904]

345.    To further perpetuate the falsity that he did not own the Oaks North Residence, Comu executed a lease with CPI on October 15, 2010 (the "Oaks North Lease"), which calls for $1,500 in monthly rent for a five-year term beginning November 1, 2010 and ending November 1, 2015.[905]  The Oaks North Lease lists CPI as the landlord, with an address in Istanbul, Turkey for rent payments.[906]  There is no evidence of any rent payments made by the Comus to CPI.

346.    On October 19, 2010 – four days after the Oaks North Residence sale closed— Comu changed his mailing address for one of the Turkish Bank Accounts to an address in

---

[904]        In June of 2010, per Comu's instructions, Newhaven asked Cem Comu to execute the necessary documents by which Newhaven resigned as CPI's sole director, and transferred one (1) share of CPI to Cem Comu so he could vote as CPI's director.  KLM Ex. 266 at 1–3 ("CJ has asked me to contact you direct, regarding the above.");  KLM Ex. 267 at 1, 4.  On September 16, 2010, per Comu's instructions, Newhaven forwarded the necessary documents for Cem Comu to temporarily assume the role of Director for CPI, which Cem Comu signed and returned.  KLM Ex. 210 at 1, 5–6.  Cem Comu was appointed as a CPI director at Comu's request, and after transferring its CPI share to Cem Comu, Newhaven resigned as CPI director on September 29, 2010.  KLM Ex. 132 at 1–6.
        On September 2, 2010, Comu provided Cem Comu with the information necessary to obtain a letter of reference from Turkish Bank to establish financial worthiness for the purpose of purchasing the Oaks North Residence.  KLM Ex. 276 at 1–2.  Cem Comu emailed Cigdem Beykoylu at Turkish Bank regarding his need for a reference letter because he was "planning on purchasing a home in TX," with a link to the listing for the Oaks North Residence.  KLM Ex. 276 at 1–2.  Beykoylu requested further information about the addressee, which Cem Comu forwarded to Comu for an answer ("I need a name?").  KLM Ex. 276 at 1.  In response, Comu provided the name of the RE/MAX agent who brokered the sale.  KLM Ex. 276 at 1.  After Beykoylu provided the requested letter, Cem Comu forwarded it to Comu so he could proceed with  the purchase.  KLM Ex. 209; KLM Ex. 277 at 1.
[905]        KLM Ex. 136 at 1–2, 14.
[906]        KLM Ex. 136 at 1–2, 14.

Istanbul, Turkey.[907]   According to the Injunction Status Report, Comu has now turned over $5,000 from this account, but has not turned over statements related to the account.[908]

347.    Comu used his purchase of the Oaks North Residence[909] to convert the Paladium Residence into an income-producing asset.   The Comus vacated the Paladium Residence and moved into the Oaks North Residence in October or November 2010, and have since rented the Paladium Residence to tenants for $2,500 per month (the "Paladium Rents").[910]   The current lease for the Paladium Residence runs for a five-year term, from August 1, 2012 to August 1, 2017 (the "Paladium Lease").[911]

348.    Mervyn Price (a Regus Advisors officer and director who is also involved in Comu's UK businesses),[912] is the current tenant under the Paladium Lease.[913]   The Paladium Lease lists Mervyn Price's address as 4206 Holland Avenue, in Dallas, Texas.[914]   According to Dallas County property tax records, Price is the current owner of the property at 4206 Holland Avenue.[915]

---

[907]    Cem Comu forwarded a document for Comu to sign in order to effect his change of address with Turkish Bank.   KLM Ex. 269 at 1–2, 4 (referencing Turkish Bank account ending in *9653).   Comu modified the letter slightly to reflect his name at the new mailing address, signed it, and sent it back on the same day.   KLM Ex. 283 at 1, 4.   The letter reads in Turkish: "Şubeniz nezdinde bulunan 4 0000 29653 nolu USD hesabıma kayıtlı adresimin aşağıdaki şekilde değiştirilmesini rica ederim."   KLM Ex. 283 at 4.   Roughly translated: "I am requesting a change of the registered address on the USD account number 4000029653 at this branch as described below."

[908]    Inj. Status Report at 12 (item #12).   Comu produced to Trustee an email dated April 15, 2014 "requesting information and statements" for the Turkish Bank account ending in *9653.   *Id.* at 14 (item #79).

[909]    Comu claims the Paladium Residence (valued at $379,370 in January, 2010) as his exempt homestead.   Trustee Ex. 94 at 1, 8.   Comu claims the homestead exemption pursuant to Texas Constitution, art. 16 §§ 50, 51; and under Texas Property Code §§ 41.001-.002.

[910]    KLM Ex. 137 at 1–2.

[911]    KLM Ex. 137 at 1.

[912]    KLM Ex. 14 at 3, 5 (Regus Advisors); KLM Ex. 106 at 11 (same); KLM Ex. 84 at 6–7 (Director & Shareholder of Puration UK); KLM Ex. 83 at 8 (Director, Hampshire Consultants Ltd (UK)).

[913]    KLM Ex. 137 at 1.

[914]    KLM Ex. 137 at 1.

[915]    Tax records, which are available on the Dallas Central Appraisal District website, confirm that Price has owned the Holland Avenue property since 2003.   *See* http://www.dallascad.org/AcctHistory.aspx?ID=001576003601B0000.   The Court may take judicial notice of these public tax records.   *See* FED. R. EVID. 201.

349.    Comu has given inconsistent and misleading testimony regarding the ownership of the Paladium Residence and the Paladium Rents. Although Comu claims the Paladium Residence as his homestead, Paladium Residence property taxes for 2009 and 2010 were paid by TBG before the Petition Date.[916]  The Paladium Lease, signed by Comu, requires rent payments be made to Sunset Pacific at the 18208 Preston Road Address.[917]  Sunset Pacific's 2011 tax return declares $27,500 in gross Paladium Rents as income.[918]  Sunset Pacific claimed a $6,970 depreciation deduction and other "rental real estate expenses" as deductions (totaling $22,470) against the gross Paladium Rents, resulting in a claimed $5,030 in net rental income.[919]  Sunset Pacific's 2010 tax return declares no income from the Paladium Rents,[920] and Comu's 2010 and 2011 personal tax returns do not claim any Paladium Rents as income.[921]

---

[916]    *Compare* KLM Ex. 371 at 1 ($6,988.80 taxes paid January 31, 2009), *with* Trustee Ex. 24 at 1 ($6,988.80 check to David Childs Tax Assessor).

[917]    KLM Ex. 137 at 2, 14.

[918]    Trustee Ex. 36 at 6, 11. As of May 1, 2014, at $2,500 per month, accrued Paladium Rents since November 1, 2010 are $105,000, and accrued rents since August 1, 2012 are $50,000. Other than the $27,500 in gross rents declared in Sunset Pacific's 2011 tax return (which Comu has disavowed), there is no evidence of any payments toward the $105,000 in accrued Paladium Rents.

[919]    Trustee Ex. 36 at 4, 6, 9 (2011 tax return dated August 7, 2012). Comu admitted as evidence a second, later-filed 2011 tax return for Sunset Pacific that omits the Paladium Rents from Sunset Pacific's income. Def. Ex. 9 (dated August 13, 2012). Coincidentally, this second, revised tax return was filed shortly after this Court entered an order terminating abatement of the Adversary, which had been requested by Trustee while she evaluated potential claims. *See* Adv. Doc. No. 50 (August 7, 2012 order); *see also* Adv. Doc. No. 39.

[920]    Trustee Ex. 35.

[921]    Trustee Ex. 69; Trustee Ex. 70.

## II.    CONCLUSIONS OF LAW

### F.    PROPERTY OF THE ESTATE

350.    Under Section 541(a), "property of the estate" includes in relevant part "the following property, *wherever located and by whomever held*:" (1) "all *legal or equitable* interests of the debtor in property as of the commencement of the case;"[922] and (2) "[a]ll interests of the debtor *and the debtor's spouse in community property* as of the commencement of the case" that are (A) "under the sole, equal or joint management and control of the debtor,"[923] or that are (B) "liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable."[924]

351.    "Property of the estate" also includes any "[p]roceeds, … rents, or profits of or from property of the estate, except such as are earning from services performed by an individual debtor after the commencement of the case."[925]

352.    "[A]n interest of the debtor in property becomes property of the estate … notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law … that restricts or conditions transfer of such interest by the debtor."[926]

353.    "A Chapter 7 debtor's exercise of dominion and control over, and indeed a subsequent conversion of, an estate asset to the exclusion of the bankruptcy estate can be neither countenanced nor disregarded."[927]

---

[922]    11 U.S.C. § 541(a)(1) (emphasis added); *see also* JPTO Stip. of Law ¶ 14.
[923]    11 U.S.C. § 541(a)(2)(A) (emphasis added); *see also* JPTO Stip. of Law ¶ 14.
[924]    11 U.S.C. § 541(a)(2)(B).
[925]    11 U.S.C. § 541(a)(6); *see also* JPTO Stip. of Law ¶ 14.
[926]    11 U.S.C. § 541(c)(1); *see also* JPTO Stip. of Law ¶ 15.
[927]    *McNally v. Echart (In re Echart)*, 374 B.R. 596, 599 (Bankr. E.D. Tex. 2007).

### G. PLAINTIFFS' DISCHARGE-REVOCATION CLAIMS

354. Plaintiffs' discharge revocation claims are brought pursuant to 11 U.S.C. § 727(d)(1) and § 727(d)(2).[928] Fraud under § 727(d) may be shown by the same grounds that would prevent discharge under § 727(a).[929]

355. Plaintiffs' discharge-revocations claims are timely because they were filed within (1) one year of the Discharge being granted.[930]

356. Plaintiffs bear the burden of establishing the elements of their revocation claims by a preponderance of the evidence.[931]

357. Based on the evidence set forth above, Plaintiffs have met the standards for revocation of discharge under both 11 U .S.C. § 727(d)(l) and (2).[932]

### 1. Comu had a continuing duty to make complete and accurate disclosures.

358. The purpose of provisions like Section 727 is to ensure that those who seek bankruptcy protection "'do not play fast and loose with their assets or with the reality of their affairs.'"[933] As the Fifth Circuit has stated,

> The Bankruptcy Code provides the method by which debtors may "reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." This "fresh start" policy, however, requires that the debtor honestly comply with the requirements of the Code. If the debtor fails to comply with the requirements of the Code, the discharge may either be denied or revoked. Revocation of discharge,

---

[928]   JPTO at 2.

[929]   *See, e.g., Johnson v. Meabon (In re Meabon)*, NO. 10-30455, ADV 12-3218, 2014 WL 1371583, at *5 (Bankr. W.D.N.C. Apr. 8, 2014).

[930]   JPTO Stip. of Law ¶ 4; *see also* 11 U.S.C. §727(e).

[931]   JPTO Stip. of Law ¶ 5; *see also, e.g., Reed v. Cooper (In re Cooper)*, 426 B.R. 227, 238 (Bankr. N.D. Tex. 2010), *aff'd*, 443 Fed. App'x 888 (5th Cir. 2011).

[932]   Bench Conclusions at 4:19-4:20.

[933]   *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 499 (Bankr. N.D. Tex. 2006) (quoting *Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 66 (1st Cir. 2004)).

therefore, occurs because of a failure to comply with the requirements of the Code which would have otherwise entitled the debtor to discharge.[934]

359.    As this court stated in a similar case, "[a] discharge in bankruptcy is a privilege, not a right.  To obtain (and retain) this privilege, a debtor must act with absolute candor and cooperation *vis-a-vis* the trustee."[935]   In order to avail himself of that privilege, Comu was subject to the broad disclosure rules in the Bankruptcy Code.[936]  "As is often stated, the prompt and unconditional fulfillment of that duty is the *quid pro quo* for the protections offered by an order of discharge and any refusal by a debtor to fulfill those obligations, when taken with the requisite mental state, must trigger a corresponding deprivation of that remedy for which bankruptcy relief is sought."[937]

360.    Comu therefore had "a continuous, affirmative duty to disclose" in his Bankruptcy Filings complete and accurate information regarding his creditors, debts, assets

---

[934]    *United States v. Cluck*, 87 F.3d 138, 140 (5th Cir. 1996) (internal quotations and citation omitted); *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207–08 (5th Cir. 1999) ("It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets.... Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized.").

[935]    *Reed*, 426 B.R. 227, 240 (Bankr. N.D. Tex. 2010); *see also McNally*, 374 B.R. at 600 ("A Chapter 7 debtor's right to obtain a discharge is absolutely and unconditionally dependent upon an honest and complete disclosure of all assets and the tendering of all non-exempt assets to the trustee for administration."); *Hughes v. Wells (In re Wells)*, 426 B.R. 579, 598 (Bankr. N.D. Tex. 2006) ("Discharge is a privilege, not a right, and it should only be provided 'to those debtors who put forth a good faith effort in producing an entire picture of their financial affairs.'") (quoting *J.P. Morgan Chase Bank v. Hobbs (In re Hobbs)*, 333 B.R. 751, 755 (Bankr. N.D. Tex. 2005)).

[936]    *Lowe v. King (In re King)*, Bankr. No. 05–56485–C, Adv. No. 06–5122–C, 2006 WL 3861097, at *3–*5 (Bankr. W.D. Tex. Dec. 29, 2006) (citing 11 U.S.C. §§ 521(1) and 521(3)).

[937]    *McNally*, 374 B.R. at 600; *see also In re Hicks*, 184 B.R. 954, 957 (Bankr. C.D. Cal. 1995) ("[T]he debtor's duty of full disclosure ... is the *quid pro quo* for the fresh start provided by the discharge."); *Hill v. Muniz (In re Muniz)*, 320 B.R. 697, 699 (Bankr. D. Col. 2005) ("Those persons who seek the extraordinary relief of a bankruptcy discharge may not ignore their legal obligations to the court and the trustee and still expect to receive a discharge of debt.").

(whether present, future, contingent or equitable), and business affiliations.[938] As stated by this

Court in *In re Braymer*:

> Bankruptcy law presupposes that one who seeks its protection will deal honestly and fairly with creditors by furnishing a complete and accurate schedule of assets. The trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has passed through the debtor's hands during the period prior to bankruptcy. A debtor has a paramount duty to consider all questions posed on statement or schedules carefully and see that question is answered completely in all respects. Additionally, a debtor has an ongoing obligation to disclose all transfers, attempted transfers, unlisted assets and other relevant information.[939]

361. Comu's honest disclosures in his Bankruptcy Filings "'serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true.'"[940] "[N]ondisclosure can prevent a trustee [or a creditor] from even knowing of the assets' existence in time to object to discharge, resulting in the discharge being procured by the debtor's failure to fulfill his duty to disclose."[941]

362. Comu's duty of disclosure is not dependent on the value of the undisclosed assets.[942] "A debtor must be scrupulous in giving notice of all assets to which others may make a legitimate claim, and may not avoid questions by failing to disclose the asset even though he or

---

[938] *Roberts v. McVay (In re Roberts)*, NO. CIVA SA-07-CV583-XR, 2010 WL 376399, at *5 (W.D. Tex. Jan. 25, 2010) (citing *Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 593–94 (Bankr. N.D. Tex. 1991) ("A debtor has a paramount duty to carefully consider all questions posed on his schedules and statement of affairs and see that each question is answered completely in all respects.")); *see also Banc One, Texas, N.A. v. Braymer (In re Braymer)*, 126 B.R. 499, 502 (Bankr. N.D. Tex. 1991) (hereafter, *Braymer*) (Comu had the burden "to use reasonable diligence in completing [his] schedules and list of debts").

[939] *Braymer*, 126 B.R. at 503 (citations omitted); *see also Morton*, 127 B.R. at 593.

[940] *Lightfoot v. Landry (In re Landry)*, 350 B.R. 51, 60 (Bankr. E.D. La. 2006) (quoting *In re Pratt*, 411 F.3d 561 (5th Cir. 2005)).

[941] *Lowe*, 2006 WL 3861097 at *5 (citations omitted).

[942] *See, e.g.*, *In re Loew*, No. 11–13339–JNF, 2012 WL 1229904, at *6 (Bankr. D. Mass. Apr. 11, 2012) ("[T]he value of the Debtor's assets is not the issue, it is the completeness and accuracy of the Debtor's description of his assets at the commencement of the case, which was notable for its omissions.").

she may think it may be theirs to keep."[943] "[D]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate."[944] "The basic principle behind the Statement of Financial Affairs is to give both the UST and any creditors an accurate portrait of the debtor's financial situation, and exclusions based upon the debtor's belief they have no value do not help fulfill that purpose."[945]

363. Even if an account is not held in the debtor's name, it must be disclosed if the debtor utilizes the account.[946] And even if a particular asset should ultimately be excluded from the property of the estate, a debtor's interest in that asset must be disclosed—and failure to do so may constitute fraud on the part of the debtor.[947]

### 2. Fraudulent Intent Supporting Discharge-Revocation

364. A debtor's fraudulent intent is an element of revocation under both § 727(d)(1) and § 727(d)(2). A statement is made with knowledge of its falsity if the debtor knew it to be false or if it was made with reckless disregard for its truth.[948] Fraudulent intent "'involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression.'"[949]

---

[943] *Braymer*, 126 B.R. at 502 (citing *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 616 (Bankr. 9th Cir. 1988)).

[944] *Neary v. Darby (In re Darby)*, 376 B.R. 534, 540 (Bankr. E.D. Tex. 2007) (hereafter, "*Darby*") (quoting *Matter of Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992)).

[945] *Roberts*, 2010 WL 376399 at *5.

[946] *See, e.g.*, *Croge v. Katz (In re Katz)*, 203 B.R. 227, 234 (Bankr. E.D. Pa. 1996) ("The Debtor's failure to disclose the [account] is also significant. Substantial funds belonging to the Debtor admittedly flowed in and out of that account, even if the account was not in the Debtor's name and other persons utilized it.").

[947] *Croge*, 203 B.R. at 233 ("At least the existence of the trust of which the Debtor is a beneficiary should have been disclosed."); *see also Braymer*, 126 B.R. at 502.

[948] *See, e.g.*, *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 285 B.R. 778, 784 (Bankr. D. Conn. 2002).

[949] *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685–686 (6th Cir. 2000) (quoting *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)).

365. A finding of fraudulent intent under Section 727(d) may be proved by showing either actual intent to deceive or a reckless indifference for the truth,[950] and "may be based on inferences drawn from a course of conduct ... [or] from all of the surrounding circumstances."[951]

366. "[M]ultiple inaccuracies" in a debtor's bankruptcy filings "are usually evidence of a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent."[952] Fraud may be presumed for purposes of § 727(d)(1) when there are material omissions in a debtor's bankruptcy schedules.[953] "Fraudulent intent may be inferred if the false statement is not explained satisfactorily."[954] Undervaluation of a material asset on a debtor's schedule is also sufficient to show bankruptcy fraud.[955]

367. A debtor's failure to disclose information in response to direct questioning at the meeting of creditors or in depositions supports a finding of fraudulent intent required to support

---

[950] JPTO Stip. of Law ¶ 6; *see also Reed*, 426 B.R. at 239; *Neary*, 353 B.R. at 504; *see also Sholdra v. Chilmark Fin., LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001).

[951] *Yonikus*, 974 F.2d at 905; *see also* JPTO Stip. of Law ¶ 7; *First Tex. Svgs. Ass'n v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir. 1983) (finding that a debtor's whole pattern of conduct evidences his fraudulent intent); *Reed*, 426 B.R. at 238 ("'[P]roving a knowing and fraudulent intent is not a simple matter, for rare will be the debtor who provides direct evidence of his fraudulent intent.'") (quoting *McNally*, 374 B.R. at 599); *Darby*, 376 B.R. at 540 ("[T]he existence of a fraudulent intent is most often betrayed by an examination of a course of conduct."); *Braymer*, 126 B.R. at 503-04 (citing facts that "reveal a pattern of the Debtor's attempts to hide assets from her creditors").

[952] *Lightfoot*, 350 B.R. at 59; *see also Oldendorf v. Buckman*, 173 B.R. 99, 105 (E.D. La. 1994) ("[T]he existence of more than one falsehood, together with the failure to clear up all the inconsistencies when filing amended schedules, may constitute reckless indifference to the truth, and, therefore, the requisite intent to deceive.").

[953] *See, e.g.*, *In re Hayes*, 270 B.R. 183, 186 n.2 (Bankr. S.D.N.Y. 2001) ("[W]here, as here, the fraud concerns a material omission, elements of fraud such as reasonable reliance, harm or detriment to creditors and a causal relation between the omission and the creditor's detriment are presumed from a finding of materiality.") (citations omitted).

[954] *See, e.g.*, *Malicki v. Bernstein (In re Bernstein)*, 447 B.R. 684, 702 (Bankr. D. Conn. 2011) (citations omitted).

[955] *See, e.g.*, *United States v. Walker*, 29 F.3d 908, 913 (4th Cir. 1994) ("Whether or not Walker attempted *physically* to conceal the property listed in the Statement of Financial Affairs, his substantial undervaluing of that property constitutes an attempt to conceal assets from the trustee or from an officer of the court that was perpetrated during the commission of the bankruptcy fraud for which he was convicted."); *see also Berkery v. Comm'r, Internal Revenue Service*, 192 B.R. 835, 841 (E.D. Pa. 1996) (material undervaluation of an asset is one of the recognized "badges of fraud" that serve as circumstantial evidence of fraudulent intent) (citations omitted).

---

revocation.[956]  Even if information is ultimately disclosed by amending a debtor's Schedules or

SOFA (which never occurred here), a debtor's disclosure of relevant information only upon

questioning by creditors or the trustee can create a negative implication from which the

bankruptcy court may infer fraudulent intent.[957]

368.    A debtor's inclusion of some information about a particular asset or activity in his

Schedules does not excuse his failure to supply *all* material information about that asset or

activity where elsewhere requested in Bankruptcy Filings or upon questioning.[958]  As one court

noted in a similar case, "it is not uncommon for persons engaged in a wrongful activity to hedge

their bets by taking steps to give their actions less of an appearance of impropriety."[959]

Therefore, where a debtor's bankruptcy filings "only represent half the picture," and the debtor

deliberately obfuscates the whole picture, the court can infer fraudulent intent necessary to

support revocation.[960]

369.    Comu suggested in his trial testimony that various omissions were mere mistakes.

But as this Court has noted, where a debtor fails to disclose information based on "a ***mistaken***

and stubborn belief," which is coupled by evidence that the debtor "***concealed*** the fact" in

question, and that he "admitted" the fact only after "the Trustee ***discovered and confronted***,"

---

[956]     *See, e.g.*, *Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 429 (Bankr. N.D. Ohio 2004) ("One of the underlying purposes of the first meeting of creditors is to allow a trustee, and other interested parties, to question the debtor face-to-face which, given human nature, may yield information not otherwise disclosed in the petition.  Yet … when specifically asked about the omissions at issue in this case, the Debtor gave wrongful information that, notwithstanding emotional considerations, had to be known to her.  When viewed at in conjunction with the fact that like omissions existed on her bankruptcy petition, there is simply no alternative viable explanation other than to conclude that the Debtor sought to defraud her estate of assets.").

[957]     *Sholdra*, 249 F.3d at 382 ("We disagree because the amended schedules and statement of financial affairs fail to create a genuine issue of material fact. While it may have been better practice for Appellee to disclose the existence of such amendments, they do not negate the fact that Appellant made knowingly false oaths in his original schedules and statement of financial affairs."); *Yoppolo*, 321 B.R. at 427–28 ("[A]mending one's bankruptcy petition, as the Debtor eventually did here, will not cure prior transgressions.").

[958]     *See, e.g.*, *Yoppolo*, 321 B.R. at 428–29.

[959]     *Id.* at 428.

[960]     *Id.*

then the debtor's omission becomes "*more* than *simply mistaken beliefs and stubbornness*," and the debtor's omission of the fact supports the existence of the fraudulent intent required for revocation.[961]

370. "Knowingly and fraudulently hiding assets when it occurs is an abuse of the bankruptcy process. A debtor who fraudulently manipulates the bankruptcy system to avoid paying just debts is not eligible for the same fresh start as the honest debtor."[962]

### 3. Discharge-Revocation is Warranted Under § 727(d)(1) and § 727(d)(2)

371. Under Section 727(d)(1) of the Bankruptcy Code, the court "shall revoke a discharge" if "such discharge was obtained through the fraud of the debtor."[963]

372. To achieve revocation under Section 727(d)(1), the "requesting party" —here, Plaintiffs, not the Trustee[964]—must show they "did not know" of the "fraud of the debtor" … "until after the granting of such discharge."[965]

373. There are two subsets of "fraud of the debtor" under § 727(d)(1) —the failure to disclose assets at the time of the bankruptcy Petition ("undisclosed assets"), and "false oaths."[966]

---

[961] *Reed*, 426 B.R. at 239-40 (emphasis in original) ("[I]t became a situation of Mr. Cooper intentionally not disclosing, and then later, deliberately withholding property that he (whether he liked it or not and whether he thought it was fair or not) was required to deliver to the Trustee.").

[962] *Rezin v. Barr (In re Barr)*, 207 B.R. 168, 176 (Bankr. N.D. Ill. 1997).

[963] 11 U.S.C. § 727(d)(1).

[964] Section 727(d)(1), by it own terms, requires only that the "requesting party"—here, Plaintiffs— were unaware of Comu's fraudulent acts, thus it is irrelevant whether or not the Trustee was on notice of Comu's fraudulent conduct. Moreover, courts have rejected the notion that, for the purposes of § 727(d)(1) revocation analysis, knowledge of the debtor's fraud can be imputed between the trustee and creditors. As the court aptly stated in *Walton v. Staub (In re Staub)*, 208 B.R. 602, 606 (Bankr. S.D. Ga. 1997), "[t]o say the Debtors lack 'clean hands' to make this equitable appeal understates the obvious, and their appeal to equity is outrageous considering their own fraud." *See also Darby*, 376 B.R. at 543 n.9. Nor should Comu be absolved of his own fraudulent conduct based on the Trustee's failures. *Cf. Citibank, N.A. v. Emery (In re Emery)*, 132 F.3d 892, 896 (2nd Cir. 1998) ("[W]e do not believe that Congress intentionally drafted a statute to punish fraudulent conduct by debtors that at the same time provides a period of immunity for such debtors.").

[965] 11 U.S.C. § 727(d)(1); *see also* JPTO Stip. of Law ¶ 8.

374. The first subset of "fraud of the debtor" under Section 727(d)(1) is undisclosed assets at the commencement of the bankruptcy case.[967] A debtor's failure to disclose the existence of assets in his bankruptcy filings support revocation under Section 727(d)(1) if the omissions were knowingly and fraudulently made, they were material, and plaintiffs or trustee (whomever is asserting the revocation claim) were unaware of the facts at issue when the debtor sought his discharge.[968]

375. The second subset of "fraud of the debtor" under Section 727(d)(1) is false oaths. The elements of a false oath claim for revocation include a statement that: (1) was made under oath; (2) was false; (3) the debtor knew was false; (4) was made with fraudulent intent; and (5) related materially to the bankruptcy case.[969] "False oaths may be in the form of either false statements or omissions on the schedules and statement of financial affairs or false statements by the debtor during the course of the bankruptcy proceedings."[970]

376. Under both subsets of Section 727(d)(1), an omission is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."[971] A finding of materiality is

---

[966]    JPTO Stip. of Law ¶ 8; *see also, e.g.*, *Mazer v. Jones (In re Jones)*, 178 B.R. 1, 4 (Bankr. D.N.M. 1995); *Walton*, 208 B.R. at 604; *(In re Wilson)*, Nos. 99–13695–JMD, 01–1058–JMD, 2002 WL 1067450, at *5 (Bankr. D.N.H. May 28, 2002) ("A complaint seeking to revoke a debtor's discharge pursuant to section 727(d)(1) may be based upon a determination under section 727(a)(2) that the debtor has concealed or transferred assets with fraudulent intent or a determination under section 727(a)(4)(A) that the debtor knowingly and fraudulent [sic] made a false oath or account in connection with his or her bankruptcy case.") (citations omitted.)
[967]    JPTO Stip. of Law ¶ 9.
[968]    JPTO Stip. of Law ¶ 9; *see also, e.g.*, *Darby*, 376 B.R. at 539-40.
[969]    JPTO Stip. of Law ¶ 10; *see also, e.g.*, *Lightfoot*, 350 B.R. at 60.
[970]    *Id.* at 60; JPTO Stip. of Law ¶ 10.
[971]    JPTO Stip. of Law ¶ 11; *see also Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992); *Darby*, 376 B.R. at 542.

not dependent upon the value of the omitted assets or whether the omission was detrimental to creditors.[972]

377.    Based on the evidence set forth above, Plaintiffs have proved by far more than a preponderance of the evidence that revocation of discharge is warranted under both subsets of Section 727(d)(1), due to a substantial number of false oaths made with fraudulent intent (which continued through trial), and due to substantial undisclosed assets and valuable interests.

378.    Moreover, because Comu engaged in an active and ongoing scheme to conceal his assets and business activities from the Trustee and his creditors, any partial disclosure of information made prior to discharge was, as a matter of law, insufficient to constitute "knowledge" of the Plaintiffs that would bar their revocation claim.   Debtor's continuing duty under the Bankruptcy Code to make full and accurate disclosure of all information material to the bankruptcy estate prohibits Debtor from relying on partial and misleading disclosures as evidence of Plaintiffs' knowledge of Debtor's fraud, particularly where other material facts were intentionally withheld or concealed.[973]   Therefore, for the purposes of Section 727(d)(1), Plaintiffs "did not know" of the Debtor's fraud before discharge.

379.    Accordingly, Plaintiffs have satisfied their burden of establishing by a preponderance of the evidence that revocation of discharge is warranted under Section 727(d)(1) due to fraud of the Debtor.

380.    Plaintiffs also seek revocation under Section 727(d)(2), which provides that "the court shall revoke a discharge" if "the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and

---

[972]    JPTO Stip. of Law ¶ 11; *see also Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005).
[973]    *Cf. Hill*, 320 B.R. at 699 ("Those persons who seek the extraordinary relief of a bankruptcy discharge may not ignore their legal obligations to the court and the trustee and still expect to receive a discharge of debt.").

fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee."[974]

381.    By the plain statutory language, a claim under Section 727(d)(2) does not require Plaintiffs to show they "knew of [the Debtor's] fraud" before discharge, as Section 727(d)(1) requires.  Plaintiffs' knowledge of Comu's fraud prior to the Discharge Date is therefore not relevant to the court's inquiry under Section 727(d)(2), which does not require Plaintiffs to show they "did not know" of Comu's fraud prior to discharge.[975]

382.    Even if Plaintiffs' pre-discharge knowledge were relevant, Comu's concealment of assets preludes any finding that Plaintiffs knew of Comu's fraudulent conduct.

383.    Based on the evidence detailed *supra*, Plaintiffs have satisfied their burden of establishing by a preponderance of the evidence that revocation of discharge is warranted under Section 727(d)(2) due to Debtor's failure to report and tender all non-exempt assets to the Trustee.

384.    The court will enter judgment revoking Debtor's Discharge without further delay pursuant to 11 U.S.C. § 727(d).

### 4.    Comu's Objections to Revocation

385.    In response to Plaintiffs' revocation claims, Comu argued that "Plaintiffs missed the deadline to object to Comu's discharge, and the Plaintiffs have sued their former attorney for missing the deadline."[976]

386.    A prior final fraud judgment is non-dischargeable under Bankruptcy Code § 523(a)(2)(A) as a debt for money obtained by fraud.

---

[974]    JPTO Stip. of Law ¶ 13; *see also Reed*, 426 B.R. at 238.
[975]    *See Lincoln Nat. Life Insur. Co. v. Silver (In re Silver)*, 367 B.R. 795, 824 (Bankr. D.N.M. 2007) (debtor's failure to report her interest in certain property violated § 727(d)(2), regardless of whether the creditor knew about the property).
[976]    JPTO at 6.

387.     As Debtor's counsel admitted at trial, the Judgment Debt—which was predicated on underlying claims for fraud in a case involving the same parties to this Adversary Proceeding[977]—would have been nondischargeable under 11 U.S.C. § 523(a)(2) had there been a timely objection.[978]

388.     But the failure of Plaintiffs' Prior Counsel to file a timely objection to discharge based on Comu's pre-petition fraud does not excuse Comu's failure to comply with his continuing and affirmative duty of disclosure to Trustee and creditors—and, therefore, cannot as a matter of law bar Plaintiffs' claims for revocation, which are based on a separate subset of Section 727(d), and which are based on Comu's overall fraud in connection with his Bankruptcy Case.

389.     Moreover, Comu's subsequent decision to disclose some assets or material information that were omitted or misrepresented in his Bankruptcy Filings does not excuse his earlier fraud—"rather, it solidifies its existence."[979]

390.     Trustee's knowledge of any facts or assets that Comu disclosed in the March 2010 Production to the Discharge Date cannot be imputed to Plaintiffs.[980]

391.     Moreover, where Comu remained silent about assets and material financial information, and "chose to disclose material financial information *only* when directly asked or confronted with the truth," his "behavior justifies a presumption of fraud, as this is the essence of

---

[977]     *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991); *accord In re Gupta*, 394 F.3d 347, 350 (5th Cir. 2004) ("A bankruptcy court may apply collateral estoppel in a dischargeability proceeding to preclude relitigation of state court findings that are relevant to dischargeability."); *In re Gober*, 100 F.3d 1195, 1201 (5th Cir. 1996) (same).

[978]     "[T]he plain meaning of the [Section 523(a)(2)(A)] is that debtors cannot discharge any debts that arise from fraud so long as they are liable to the creditor for the fraud."  *In re M.M. Winkler & Assocs.*, 239 F.3d 746, 749 (5th Cir. 2001).

[979]     *Tow v. Henley (In re Henley)*, 480 B.R. 708, 796 (Bankr. S.D. Tex. 2012) (citing *In re Gartner*, 326 B.R. at 375); *In re Huff*, 349 B.R. at 594 (finding that the debtor's admissions at her meeting of creditors were not the result of her honest intent, but rather due to what the court called the "unavoidable result of two knowledgeable creditors being present at the meeting"); *see also Sholdra*, 249 F.3d at 382.

[980]     *Cf. Tow*, 480 B.R. at 795 (a creditor's knowledge of a debtor's assets, ownership interest, or any other information does not relieve the debtor of his duty to the trustee).

intent to deceive."[981]   As the bankruptcy court in *In re Henley* pointed out, holding otherwise would send "a dangerous message: that as long as a debtor eventually discloses his earlier omission, any earlier fraudulent intent is negated.  In effect, this would mean that there are no consequences for a debtor's failure to make proper and timely disclosures."[982]

> 392.   As the Bankruptcy Court stated in *In re Pongvitayapanu*,
>
> Finally, the Court must also consider the way in which the Debtor has elected to defend this lawsuit.  The Plaintiff has made showings that raise serious concerns about the Debtor's conduct in his bankruptcy case.  Yet, [Debtor's] responses come through counsel, fail to address serious allegations, are often opaque, and, at times, flippant.  It is clear that "[a] debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath."[983]

## H.   TRUSTEE'S CLAIMS

393.   To establish reverse veil piercing under Texas Law and determine that a corporation is the alter ego of an individual, Trustee has the burden of establishing by a preponderance of the evidence that: (1) the individual has an actual ownership interest or a de facto ownership in the corporation; (2) the corporation was organized and/or operated as a mere tool or business conduit for the individual, considering the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation

---

[981]     *Tow*, 480 B.R. at 795 (italics in original) (citing *In re Gartner*, 326 B.R. at 375 ("The decision to amend the Schedules only after untruths are uncovered is evidence of fraudulent intent."); *Satriale v. Mumin (In re Mumin)*, No. 97–14424DAS, 1998 WL 160992, at *3 (Bankr. E.D. Pa. April 1, 1998) ("An inference of fraud is permissible when the evidence indicates that the amendment is not in fact voluntary because the amendment is offered only as a result of development during the meeting of creditors, after the debtor 'knew the cat was out of the bag,' [or] well after the meeting of creditors ...").
[982]     *Tow*, 480 B.R. at 776.
[983]     *Beer Sheva Realty Corp. v. Pongvitayapanu (In re Pongvitayapanu)*, 487 B.R. 130, 141–142 (Bankr. E.D.N.Y. 2013) (quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir. 1987)).

has been used for personal and/or illegal or improper purposes; and (3) applying the reverse veil piercing will not prejudice non-culpable shareholders or other stakeholders or creditors.[984]

394.    Reverse piercing of the corporate veil is a Texas remedies doctrine that permits creditors (or a bankruptcy trustee) to hold a corporation liable for the debts of a controlling shareholder of the entity when such controlling shareholder has used the corporation to perpetuate fraud on his creditors by, inter alia, using the corporation to shield personal assets from preexisting personal liability.[985]

395.    Comu is the *de facto* owner of TBG,[986] and TBG is the alter ego of Comu.[987]

396.    Phyllis's purported ninety-eight percent (98%) limited partnership interest in Sunset Pacific is property of the Comu bankruptcy estate pursuant to § 541(a)(2)(A).

397.    Sunset Pacific is the alter ego of Comu.[988]

398.    In order to state a claim for declaratory relief under 28 U.S.C. § 2201, *et seq*. (the "Declaratory Judgment Act"), a party must provide sufficient facts to demonstrate (1) a substantial controversy, (2) the controversy is between parties having adverse legal interests, and (3) the imminent and real nature of the controversy.[989]

399.    Pursuant to the Federal Declaratory Judgment Act, Trustee is entitled to a judgment declaring that, as of the Petition Date, the assets of TBG and Sunset Pacific are property of Debtor's bankruptcy estate. The court will enter a declaratory judgment that the assets of TBG and Sunset Pacific are property of the Debtor's bankruptcy estate without further delay.

---

[984]    *Cadle Co. v. Brunswick Homes, LLC (In re Moore)*, 379 B.R. 284, 289 (Bankr. N.D. Tex. 2007).
[985]    *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 243-44 (5th Cir. 1990); *In re Moore*, 379 B.R. at 295.
[986]    Bench Conclusions at 4:28.
[987]    Bench Conclusions at 4:29.
[988]    *Id.*
[989]    *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 959-60 (1969).

400.     Under Section 542(a) of the Bankruptcy Code, an entity (here the Debtor) has an affirmative obligation to turn over to the trustee any property that was in such entity's possession, custody or control during the pendency of the case, and must account for such property or the value of such property unless it is of inconsequential value.[990]  If the entity is no longer in possession of the property of the estate or its value at the time of the turnover action, then the trustee is entitled to recovery of a money judgment for the value of the property of the estate that was disposed of by such entity.[991]   As the bankruptcy court in *In re Borchert* explained, Section 542(a)

> provides for more than turnover of the actual property.  It also provides that:
>
> "... an entity ... in possession ... during the case of property that the trustee may use, sell or lease under section 363 ... shall deliver to the trustee, and account for, such property, or the value of such property ...."
>
> The foregoing is applicable to any entity that possessed property belonging to the debtor at any time during case pendency, whether or not it had possession at the time a demand for turnover was made. It means that such entity must account to the trustee for the property itself or be prepared to surrender its value if for some reason the property itself no longer exists. What this means in a Chapter 7 is that if an entity in possession of estate property receives notice of the bankruptcy filing but nonetheless transfers the property to anyone other than the trustee, it does so at its peril.  In the absence of the property itself the trustee in such instance is entitled to recover the value of the estate property from the entity making the transfer.[992]

401.     The unjust enrichment doctrine in Texas is summarized in *Burlington Northern Railroad Co. v. Southwestern Electric Power Co.*, as follows:

---

[990]     Trustee's Damages Brief at 2.
[991]     *In re USA Diversified Products, Inc.*, 100 F.3d 53, 55 (7th Cir. 1996); *In re Newman*, 487 B.R. 193, 199 (B.A.P. 9th Cir. 2013) (citation omitted); *In re Calvin*, 329 B.R. 589, 602 (Bankr. S.D. Tex. 2005); *In re Pilate*, 487 B.R. 345, 349 (Bankr. D.C. 2013) (and cases cited therein); *In re Borchert*, 143 B.R. 917, 919 (Bankr. N.D. 1992).
[992]     *In re Borchert*, 143 B.R at 919.

The doctrine of unjust enrichment belongs to the measure of damages known as quasi-contract or restitution ....

The unjust enrichment doctrine applies the principles of restitution to disputes which for one reason or another are not governed by a contract between the contending parties .... When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon the defendant to restore the benefits to the plaintiff.... Unjust enrichment is typically found under circumstances in which one person has obtained a benefit from another by fraud, duress or the taking of undue advantage ....[993]

## I.  DAMAGES AND EQUITABLE RELIEF

402.    A court's final judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  FED. R. CIV. P. 54(c); FED. R. BANKR. P. 7054(a).   Consistent with Rule 54(c), an injunction may be issued even if not specifically requested in the pleadings where it is supported by the evidence presented.[994]

403.    The bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Courts interpret Section 105 liberally.[995]

404.    Pursuant to 11 U.S.C. § 542(a), the Trustee is entitled to an order directing the turnover of all property and assets of TBG and Sunset Pacific that still exist.  The court will enter an order directing the turnover of all property and assets of TBG and Sunset Pacific that exist without further delay.

405.    To the extent the assets of TBG and/or Sunset Pacific have been sold or otherwise disposed of since the Petition Date, Trustee is entitled to a judgment pursuant to 11 U.S.C.

---

[993]    *Burlington Northern Railroad Co. v. Southwestern Electric Power Co.*, 925 S.W.2d 92, 96–97 (Tex. App.—Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998); *see also Ed & F Man Biofuels Ltd. v. MV Fase*, 728 F. Supp. 2d 862, 868-69 (S.D. Tex. 2010).

[994]    *Pipkin v. JVM Operating, L.C.*, 197 B.R. 47, 56 (E.D. Tex. 1996) ("Although plaintiff does not explicitly seek an injunction in his pleadings, the facts as presented would support an order of equitable relief if plaintiff prevails.) (and quoting from FED. R. CIV. P. 54(c)).

[995]    *See, e.g.*, *Momentum Mfg. Corp. v. Employee Creditors Committee (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994).

§ 542(a) against Comu, TBG and Sunset Pacific, jointly and severally, for the value of the assets that existed on the Petition Date and that are not turned over to the Trustee because they have been sold or otherwise disposed of by Comu.[996]

406.    For purposes of the Trustee's recovery under 11 U.S.C. § 542(a), Trustee requests that the court enter judgment for $5,858,778, which reflects actual cash proceeds from the sale of Green Auto stock, and includes: (1) TBG direct sales (conservatively, $974,616.60);[997] (2) TBG sales effected through OMST ($2,762,220);[998] (3) sales effected through TKY Trust ($1,048,973);[999] (4) sales effected through DAPTCO Trust ($222,980);[1000] and (5) cash received by TBG for stock sales effected through ERI (conservatively, $850,000).[1001]  The court will enter a monetary judgment in this amount against Comu, TBG and Sunset Pacific, jointly and severally, without further delay.

407.    Where a debtor has fraudulently concealed or transferred assets of the bankruptcy estate, the property may be dissipated before a court can adjudicate the respective rights of the parties, and thus an injunction may issue prohibiting transfer of the property that is the subject of the adversary proceeding.[1002]

408.    In order to establish entitlement to a preliminary injunction a plaintiff must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not issued; (3) that the threatened injury to the

---

[996]    Bench Conclusions at 4:30.
[997]    *See supra* FOF Section E(3)(a).
[998]    *See supra* FOF Section E(3)(b).
[999]    *See supra* FOF Section E(4)(a).
[1000]    *See supra* FOF Section E(4)(b).
[1001]    *See supra* FOF Section E(5)(c), and, in particular FOF ¶ 309 & n.769.
[1002]    *See, e.g.*, *In re Focus Media Inc*., 387 F.3d 1077, 1084–1085 (9th Cir. 2004), *cert. denied*, 544 U.S. 923 (2005); *In re Feit & Drexler, Inc*., 760 F.2d 406, 416 (2d Cir. 1985); *In re Moss*, 258 B.R. 405, 427 (Bankr. W.D. Mo. 2001); *Steinberg v. Esposito*, 33 B.R. 812, 813–14 (N.D. Ill. 1983); *In re Newman*, 6 B.R. 798, 802–03 (Bankr. S.D. N.Y. 1980).

movant outweighs any damage the injunction might cause the opponent; and (4) that the injunction will not disserve the public interest.[1003]

409. An injury is irreparable if it cannot be undone through monetary remedies.[1004] Monetary remedies may not suffice where "economic rights are especially difficult to calculate."[1005] Therefore, it is appropriate to award an injunction where "it is shown that a money judgment will go unsatisfied absent equitable relief."[1006]

410. Moreover, a preliminary injunction designed to freeze the status quo by preserving particular and discrete assets which are in dispute is appropriate so long as the equitable remedy would be available to plaintiff as final relief.[1007]

411. Federal courts need no independent basis of jurisdiction to enter an injunction in support or construction of their own orders.[1008]

---

[1003]  *Blue Bell Bio–Medical v. Cin–Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989).
[1004]  *Cho v. Itco, Inc.*, 782 F. Supp. 1183, 1185 (E.D. Tex. 1991).
[1005]  *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991).  ).
[1006]  *Alvenus Shipping Co. v. Delta Petroleum (U.S.A.) Ltd.*, 876 F. Supp. 482, 487 (S.D.N.Y. 1994); *Collins v. Aggreko, Inc.*, 884 F. Supp. 450, 452 (D. Utah 1995) ("Irreparable harm could result if defendants will be unable to pay damages."); *see also Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 473 (5th Cir.1985) ("The absence of an available remedy by which the movant can later recover money damages, however, may also be sufficient to show irreparable injury."); *Chemlawn Services Corp. v. GNC Pumps, Inc.*, 690 F. Supp. 1560, 1569 (S.D. Tex. 1988), *aff'd*, 856 F.2d 202 (5th Cir. 1988).
[1007]  *Dixie Carriers, Inc. v. Channel Fueling Serv., Inc. (In re Fredeman Litig.)*, 843 F.2d 821, 827 (5th Cir. 1988).
[1008]  *Royal Ins. Co. of Am. v. Quinn–L Capital Corp.*, 3 F.3d 877, 881 (5th Cir. 1993), *cert. denied*, 511 U.S. 1032 (1994); *see also Global Int'l Airways Corp.*, 76 B.R. 700, 705 (Bankr. W.D. Mo. 1987) (noting power of bankruptcy court to issue injunctions "to recover assets of the estate which were transferred after bankruptcy."); *Pipkin v. JVM Operating, L.C.*, 197 B.R. 47, 54 (E.D. Tex. 1996) ("Although title to a portion of the property covered by the injunction had recently passed from the debtor, successful administration of the estate necessarily depends upon preserving those assets which were, allegedly, wrongfully withheld prior to transfer. The distribution of assets by the debtor requires successful collection of those assets, and it is the loss of estate assets against which the injunction is designed to protect.").

**J.      DEBTOR'S BAD FAITH ABUSE OF THE BANKRUPTCY PROCESS.**

412.    "[C]ourts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity."[1009]

413.    Section 105(a) of the Bankruptcy Code states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

414.    Failure to make a full and accurate disclosure constitutes a bankruptcy crime under 18 U.S.C. § 152, whereby it is a crime when: "A person who—... (2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11; (3) knowingly and fraudulently makes a false declaration, certificate, verification or statement under penalty of perjury under section 1746 of title 28, in or in relation to any case under title 11."[1010]

415.    It is well established that under 11 U.S.C. § 105(a), a bankruptcy court has broad powers to implement the provisions of Title 11 and to prevent abuse of the bankruptcy process.[1011]  Such orders are necessary "'to protect the integrity of the Bankruptcy Code as well as the judicial process,'"[1012] and to enable bankruptcy courts "to maintain control of their courtrooms and of their dockets."[1013]  In order to protect abuses of the Bankruptcy Code and the judicial process, courts have the authority to sanction both attorneys and litigants.[1014]  Use of this

---

[1009]    *Pepper v. Litton*, 308 U.S. 295, 304 (1939).

[1010]    18 U.S.C. § 152.

[1011]    *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997).

[1012]    *In re Arkansas Cmtys., Inc.*, 827 F.2d 1219, 1222 (8th Cir. 1987) (quoting *In re Silver*, 46 B.R. 772, 774 (D. Colo. 1985)).

[1013]    *In re Volpert*, 110 F.3d at 501.

[1014]    *In re Collins*, 250 B.R. 645, 657–59 (Bankr. N.D. Ill. 2000).

authority is appropriate when the bankruptcy is filed not for the purpose of reorganization, but simply to delay a creditor's state-court remedies.[1015]

416.    A federal court may also use its "inherent power to impose attorney's fees as a sanction for bad-faith conduct."[1016]  Sanctions may be imposed:

> when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons .... if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party.... The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.[1017]

417.    In order for the court to impose sanctions pursuant to its inherent power or § 105(a), it must make "a specific finding of bad faith."[1018]  "Bad faith, for the purposes of section 105 is characterized as an attempt to abuse the judicial process."[1019]

418.    "When a bankruptcy filing is motivated by a desire to delay a creditor from enforcing its rights in an ongoing dispute, the filing is an abuse of process."[1020]

---

[1015]    *Jones*, 40 F.3d at 1089–90.

[1016]    *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

[1017]    *Id.* at 45–46 (internal quotations omitted); *see also Bynum v. Am. Airlines, Inc.*, 166 Fed. App'x 730, 735 (5th Cir. 2006) ("One aspect of this inherent power is the power to impose sanctions, including attorney's fees, on litigants for conduct that is in bad faith, vexatious, wanton or undertaken for oppressive reasons.").

[1018]    *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999); *see also Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001); *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997).

[1019]    *In re Gorshtein*, 285 B.R. 118, 124 (Bankr. S.D.N.Y. 2002) (citing *In re Spectee Group, Inc.*, 185 B.R. 146, 155 (Bankr. S.D.N.Y. 1995)).

419.    Based on the evidence detailed *supra*, Comu's conduct constitutes bad faith abuse of the judicial process.

420.    Sanctions in the form of attorneys' fees are proper here "[c]onsidering the severity of the Debtor's misconduct—including lying under oath on his Petition, Schedules, and SOFA, and at the meeting of creditors and before this Court—and thus an "assessment of attorney's fees" is warranted.[1021]

421.    The court will enter judgment awarding Plaintiffs' their reasonable and necessary attorneys' fees and expenses, against and payable by the Debtor, as a sanction because of the unusual level of bad faith inherent in this matter.  Plaintiffs shall submit their attorneys' fees and expense request in a separate submission, which submission shall be due in 21 days.

422.    The court will enter a separate Judgment consistent with these Findings of Fact and Conclusions of law.

### # # # END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW # # #

---

[1020]    *In re Collins*, at 657 (citing *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.)*, 40 F.3d 1084, 1085, 1090 (10th Cir. 1994)); *see also Wright v. Tackett*, 39 F.3d 155, 158 (7th Cir. 1994) (affirming sanctions against litigant who filed federal pleadings in a bad faith attempt to delay and disrupt state court proceedings); *Cinema Serv. Corp. v. Edbee Corp.*, 774 F.2d 584, 586 (3d Cir. 1985) (bankruptcy petition filed for improper purpose where debtor filing on the eve of a foreclosure sale "was precipitated, not by a desire, or need for reorganization, but simply to stave off a sheriff's sale on Cinema's state court judgment"); *In re Collins*, 250 B.R. at 664 ("The Court finds that Collins and Brisky and the Firm filed the Chapter 7 petition, not to obtain relief for an honest but unfortunate debtor, but as a cutthroat litigation tactic intended to delay and frustrate Lloyd's in the course of litigation that both parties have pursued for years. Furthermore, they attempted to use the bankruptcy system to bring an abrupt and favorable end to the litigation after forming the belief that Collins was going to lose on the merits."); *cf. In re Am. Telecom Corp.*, 304 B.R. 867, 873 (Bankr. N.D. Ill. 2004) (substantial judgment entered against a debtor is often the trigger for the filing of bankruptcy).

[1021]    *In re David*, 487 B.R. 843, 874 (Bankr. S.D. Tex. 2013).

**EXHIBITS, REOPENED, APPEAL**

# U.S. Bankruptcy Court
## Northern District of Texas (Dallas)
## Adversary Proceeding #: 10-03269-sgj
### Internal Use Only

*Assigned to:* Stacey G. Jernigan            *Date Filed:* 09/03/10
*Lead BK Case:* 09-38820                      *Date Reinstated/Reopened:*
*Lead BK Title:* Cengiz J. Comu              08/11/14
*Lead BK Chapter:* 7
*Demand:* $2279000

*Nature[s] of Suit:*  41 Objection / revocation of discharge - 727(c),(d),(e)

### Debtor
----------------------
**Cengiz J. Comu**              represented **Cengiz J. Comu**
14873 Oaks North Place         by PRO SE
Dallas, TX 75254
SSN / ITIN: 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

### Plaintiff
----------------------
**King Louie Mining, LLC**      represented **Charles P. Floyd**
                                by Greenberg Traurig, LLP
                                2200 Ross Avenue, Suite 5200
                                Dallas, TX 75201
                                (214) 665-3600
                                Fax : (214) 665-3601
                                Email: floydc@gtlaw.com
                                *LEAD ATTORNEY*

                                **Kendyl T. Hanks**
                                Greenberg Traurig, LLP
                                300 West 6th Street, Suite 2050
                                Austin, TX 78701
                                (512) 320-7200
                                Fax : (512) 320-7210
                                Email: hanksk@gtlaw.com

000149

*LEAD ATTORNEY*

**Shari L. Heyen**
Greenberg Traurig LLP
1000 Louisiana, Suite 1700
Houston, TX 77002
(713) 374-3500
Fax : (713) 374-3505
Email: heyens@gtlaw.com
*LEAD ATTORNEY*

**Emil Lippe, Jr.**
Law Offices of Lippe & Associates
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, TX 75201
(214) 855-1850
Fax : (214) 720-6074
*TERMINATED: 06/21/2013*

**David H. Wander**
David Hutcher & Citron LLP
605 Third Avenue, 34th Fl.
New York, NY 10158
212-557-7200
Fax : 212-286-1884

| **Plaintiff** | | |
|---|---|---|
| ---------------------- | | |
| **King Louie Enterprises, LLC** | represented by | **Charles P. Floyd** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | |
| | | **Kendyl T. Hanks** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | |
| | | **Shari L. Heyen** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | |
| | | **Emil Lippe, Jr.** |

000150

(See above for address)
*TERMINATED: 06/21/2013*

**Plaintiff**

-----------------------

**Ronald Katz**                   represented **Charles P. Floyd**
                                  by (See above for address)
                                     *LEAD ATTORNEY*

                                     **Kendyl T. Hanks**
                                     (See above for address)
                                     *LEAD ATTORNEY*

                                     **Shari L. Heyen**
                                     (See above for address)
                                     *LEAD ATTORNEY*

                                     **Emil Lippe, Jr.**
                                     (See above for address)
                                     *TERMINATED: 06/21/2013*

                                     **David H. Wander**
                                     (See above for address)


V.


**Defendant**

-----------------------

**Cengiz J. Comu,** *aka CJ*      represented **Dennis Oliver Olson**
***Comu***                        by Olson, Nicoud & Gueck, LLP
5301 Paladium Drive                  1201 Main Street, Suite 2470
Dallas, TX 75254                     Dallas, TX 75202
SSN / ITIN: 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              (214) 979-7300
                                     Fax : (214) 979-7301
                                     Email: denniso@dallas-law.com


**Defendant**

-----------------------

**Sunset Pacific, L.P.**          represented **Dennis Oliver Olson**
                                  by (See above for address)

000151

*Defendant*
-----------------------
**The Barclay Group, Inc.**          represented **Dennis Oliver Olson**
                                     by (See above for address)


*Defendant*
-----------------------
**Bernard D Brown**                  represented **Dennis Oliver Olson**
                                     by (See above for address)


*Defendant*
-----------------------
**Phyllis E Comu**                   represented **Dennis Oliver Olson**
                                     by (See above for address)


*Defendant*
-----------------------
**Phyllis E. Comu**                  represented **Dennis Oliver Olson**
                                     by (See above for address)


*Defendant*
-----------------------
**Regus Advisors, Inc.**             represented **Regus Advisors, Inc.**
                                     by PRO SE


*Defendant*
-----------------------
**Marathon Management**              represented **Marathon Management Limited Company**
**Limited Company**                  by PRO SE

000152

**Defendant**

----------------------

**Daptco Trust**

represented **Daptco Trust**
by PRO SE


**Defendant**

----------------------

**TKY Trust**

represented **TKY Trust**
by PRO SE


**Intervenor-Plaintiff**

----------------------

**Diane G. Reed,** *Trustee*

represented **David W. Elmquist**
by Reed & Elmquist, P.C.
501 N. College Street
Waxahachie, TX 75165
(972) 938-7339
Fax : (972) 923-0430
Email: delmquist@bcylawyers.com


**Intervenor-Plaintiff**

----------------------

**Lippe & Perry, P.C., d/b/a
Law Offices of Lippe &
Associates**
600 N. Pearl St., Ste 2460
Dallas, TX 75201
214-855-1850

represented **Emil Lippe, Jr.**
by (See above for address)


| Filing Date | Docket Text |
|---|---|
|  | 🔘 1  (7 pgs) Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 41 (Objection / revocation of discharge - 727(c),(d),(e)). (Lippe, Emil) Modified text |

000153

| | |
|---|---|
| 09/03/2010 | on 9/7/2010 (Luna, G). |
| 09/03/2010 | Receipt of filing fee for Complaint(10-03269-sgj) [cmp,cmp] ( 250.00). Receipt number 12412626, amount $ 250.00. (U.S. Treasury) |
| 09/03/2010 | 2  (2 pgs) Adversary proceeding cover sheet filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)1 Complaint). (Lippe, Emil) |
| 09/07/2010 | (private) Case checked for completeness (Luna, G) |
| 09/07/2010 | 3  (2 pgs) Summons issued on Cengiz J. Comu Answer Due 10/7/2010 (Harden, D.) |
| 09/07/2010 | 4  (2 pgs) Scheduling order setting deadlines. Discovery and all exhibits except impeachment documents: 45 days prior to Docket Call, pre-trial order: 7 calendar days prior to Docket Call, proposed findings of fact and conclusions of law: 7 days prior to first scheduled docket call. Entered on 9/7/2010 (RE: related document(s)1 Complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial Docket Call date set for 1/10/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Harden, D.) |
| 10/07/2010 | 5  (4 pgs) Motion to dismiss adversary proceeding*Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6)* filed by Defendant Cengiz J. Comu (Olson, Dennis) |
| 10/07/2010 | 6  (6 pgs) Brief in support filed by Defendant Cengiz J. Comu (RE: related document(s)5 Motion to dismiss adversary proceeding*Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6)*). (Olson, Dennis) |
| 10/12/2010 | 7  (2 pgs) Notice of hearing filed by Defendant Cengiz J. Comu (RE: related document(s)5 Motion to dismiss adversary proceeding filed by Defendant Cengiz J. Comu). Hearing to be held on 11/9/2010 at 09:30 AM Dallas Judge Jernigan Ctrm for 5, (Olson, Dennis) |
| 11/08/2010 | 8  (48 pgs; 5 docs) Motion for leave *to Amend* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/29/2010. (Attachments: 1 First Amended Complaint2 Exhibit A3 Exhibit B4 Exhibit C) (Lippe, Emil) |

| | |
|---|---|
| 11/08/2010 | 🔘  Proposed order regarding Leave to Amend (RE: related document (s)8 Motion for leave *to Amend* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/29/2010.). Document uploaded on 11/8/2010 (Ref-ID: 1288986969630_503). (Lippe, Emil) |
| 11/08/2010 | 🔘 9  (10 pgs) Response opposed to (related document(s): 5 Motion to dismiss adversary proceeding*Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 11/09/2010 | 🔘  Hearing held on 11/9/2010. (RE: related document(s)5 Motion to dismiss adversary proceeding Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6) filed by Defendant Cengiz J. Comu filed by Defendant Cengiz J. Comu) APPEARANCES: D. Olson for Debtor; E. Lippe for Plaintiff. Nonevidentiary hearing. Announcement of an agreed order having been submitted that contemplates Plaintiff's agreement to file Amended Complaint with Debtor's reservation of right to re-urge motion to dismiss. Court will sign order. (Womack, Jennifer) (Entered: 11/12/2010) |
| 01/05/2011 | 🔘  Proposed order regarding Denying Motion to Dismiss (RE: related document(s)5 Motion to dismiss adversary proceeding*Pursuant to Fed. Rules Civ. Proc. Rule 12). Document uploaded on 1/5/2011 (Ref-ID: 1291646361376_6947). (Lippe, Emil)* |
| 01/07/2011 | 🔘  Proposed order regarding on Motion to Dismiss and Motion to Amend (RE: related document(s)5 Motion to dismiss adversary proceeding*Pursuant to Fed. Rules Civ. Proc. Rule 12, 8 Motion for leave to Amend filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/29/2010.). Document uploaded on 1/7/2011 (Ref-ID: 1291646361376_7329). (Lippe, Emil)* |
| 01/10/2011 | 🔘 10  (2 pgs) Order denying motion to dismiss adversary proceeding as moot (related document # 5), granting motion for leave to amend complaint(related document # 8) Entered on 1/10/2011. Case is removed from docket for week of January 11, 2011. Counsel ORDERED to confer and submit proposed amended scheduling order for the trial of this case, to be submitted within 10 days from date of this Order. (Mathews, M.) |

| | |
|---|---|
| 01/10/2011 | (private) Deadlines terminated. Hearing removed from docket. (Mathews, M.) |
| 01/12/2011 | 11 (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)10 Order denying motion to dismiss adversary proceeding as moot (related document # 5), granting motion for leave to amend complaint(related document # 8) Entered on 1/10/2011. Case is removed from docket for week of January 11, 2011. Counsel ORDERED to confer and submit proposed amended scheduling order for the trial of this case, to be submitted within 10 days from date of this Order.) No. of Notices: 2. Service Date 01/12/2011. (Admin.) |
| 01/20/2011 | 12 (4 pgs) Motion to dismiss adversary proceeding*(SECOND)* filed by Defendant Cengiz J. Comu (Olson, Dennis) |
| 01/20/2011 | Proposed order regarding Scheduling Order (RE: related document (s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature.). Document uploaded on 1/20/2011 (Ref-ID: 1295363927223_11462). (Lippe, Emil) |
| 01/21/2011 | 13 (2 pgs) Notice of hearing filed by Defendant Cengiz J. Comu (RE: related document(s)12 Motion to dismiss adversary proceeding filed by Defendant Cengiz J. Comu). Hearing to be held on 2/14/2011 at 10:30 AM Dallas Judge Jernigan Ctrm for 12, (Olson, Dennis) |
| 02/01/2011 | 14 (3 pgs) Amended Scheduling Order. Entered on 2/1/2011 (RE: related document(s)1 Complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial Docket Call date set for 6/13/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Moroles, D.) |
| 02/03/2011 | 15 (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)14 Amended Scheduling Order. Entered on 2/1/2011 (RE: related document(s)1 Complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial Docket Call date set for 6/13/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm.) No. of Notices: 1. Service Date 02/03/2011. (Admin.) |
| | 16 (8 pgs) Response opposed to (related document(s): 12 Motion to dismiss adversary proceeding*(SECOND)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, |

| | |
|---|---|
| 02/11/2011 | King Louie Mining, LLC. (Lippe, Emil) |
| 02/14/2011 | ● Hearing held on 2/14/2011. (RE: related document(s)12 Motion to dismiss adversary proceeding*(SECOND)* filed by Defendant Cengiz J. Comu filed by Defendant Cengiz J. Comu) Appearances: D. Olsen for Defendant/Debtor; E. Lippe for Plaintiff. Nonevidentiary hearing. Motion denied, conditional on Plaintiff, within 20 days, amending Complaint again to provide more specificity regarding specific provisions of Section 727(d) being alleged, when acts were discovered and how, and addressing his standing, versus the Chapter 7 Trustees, to seek avoidance of alleged fraudulent transfers. If not amendment within 20 days, complaint will be dismissed. If amendment, then Defendant has 20 days thereafter to answer/respond. Counsel to submit order. (Harden, D.) (Entered: 02/18/2011) |
| 02/24/2011 | ● Proposed order regarding Conditionally Denying Second Motion to Dismiss (RE: related document(s)12 Motion to dismiss adversary proceeding*). Document uploaded on 2/24/2011 (Ref-ID: 1297092170770_4126). (Lippe, Emil)* |
| 02/24/2011 | ● 17 (3 pgs) Order conditionally denying second motion to dismiss adversary proceeding (related document # 12) Entered on 2/24/2011. Plaintiffs are ORDERED to file amended complaint within 20 days of entry of this order. Defendant is ORDERED to file an answeror responsive pleading within 20 days of filing of the amended complaint. (Mathews, M.) |
| 02/26/2011 | ● 18 (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)17 Order conditionally denying second motion to dismiss adversary proceeding (related document # 12) Entered on 2/24/2011. Plaintiffs are ORDERED to file amended complaint within 20 days of entry of this order. Defendant is ORDERED to file an answeror responsive pleading within 20 days of filing of the amended complaint.) No. of Notices: 1. Service Date 02/26/2011. (Admin.) |
| 03/02/2011 | ● 19 (3 pgs) Motion for leave *to Prosecute Action* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 3/23/2011. (Lippe, Emil) |
| | ● 20 (47 pgs; 3 docs) Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. |

000157

| | |
|---|---|
| 03/02/2011 | (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature. filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Attachments: 1 Exhibit A2 Exhibit B) (Lippe, Emil) |
| 03/02/2011 | Proposed order regarding Leave to Prosecute Claim (RE: related document(s)19 Motion for leave *to Prosecute Action* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 3/23/2011.). Document uploaded on 3/2/2011 (Ref-ID: 1297092170770_5956). (Lippe, Emil) |
| 03/03/2011 | 21  (1 pg) Clerk's correspondence requesting Amended adversary proceeding cover sheet for amended complaint from attorney for plaintiff. (RE: related document(s)20 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu). Responses due by 3/7/2011. (Mathews, M.) |
| 03/03/2011 | 22  (2 pgs) Adversary proceeding cover sheet filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)1 Complaint). (Lippe, Emil) |
| 03/23/2011 | 23  (2 pgs) Order denying motion for leave to prosecute action without prejudice (related document # 19) Entered on 3/23/2011. (Simpson, B) |
| 03/24/2011 | 24  (3 pgs) Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu (Olson, Dennis) |
| 03/25/2011 | 25  (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)23 Order denying motion for leave to prosecute action without prejudice (related document # 19) Entered on 3/23/2011.) No. of Notices: 0. Service Date 03/25/2011. (Admin.) (Entered: 03/26/2011) |
| 03/29/2011 | 26  (2 pgs) Notice of hearing filed by Defendant Cengiz J. Comu (RE: related document(s)24 Motion to dismiss adversary proceeding filed by Defendant Cengiz J. Comu). Hearing to be held on 5/9/2011 at 10:30 AM Dallas Judge Jernigan Ctrm for 24, (Olson, Dennis) |

| | |
|---|---|
| 04/18/2011 | 🔘 27  (3 pgs) Motion to extend time to File Response (RE: related document(s)24 Motion to dismiss adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Lippe, Emil) |
| 04/18/2011 | 🔘  Proposed order regarding Extension of Time to File Response (RE: related document(s)27 Motion to extend time to File Response (RE: related document(s)24 Motion to dismiss adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC). Document uploaded on 4/18/2011 (Ref-ID: 1302535046940_1807). (Lippe, Emil) |
| 04/19/2011 | 🔘 28  (2 pgs) Agreed Order granting 27 Motion to extend time to file response to motion to dismiss until 4/28/2011. Entered on 4/19/2011. (Simpson, B) |
| 04/21/2011 | 🔘 29  (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)28 Agreed Order granting 27 Motion to extend time to file response to motion to dismiss until 4/28/2011. Entered on 4/19/2011.) No. of Notices: 0. Service Date 04/21/2011. (Admin.) |
| 04/28/2011 | 🔘 30  (10 pgs) Response opposed to (related document(s): 24 Motion to dismiss adversary proceeding(THIRD) filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 05/04/2011 | 🔘 31  (4 pgs) Motion to continue hearing on (related documents 20 Amended complaint, 24 Motion to dismiss adversary proceeding) [Unopposed] filed by Interested Party Diane G. Reed, Trustee (Elmquist, David) |
| 05/06/2011 | 🔘  Proposed order regarding continuance of hearing and docket call (RE: related document(s)31 Motion to continue hearing on (related documents 20 Amended complaint, 24 Motion to dismiss adversary proceeding)[Unopposed] filed by Interested Party Diane G. Reed, Trustee). Document uploaded on 5/6/2011 (Ref-ID: 1303824703036_2687). (Elmquist, David) |
| | 🔘 32  (2 pgs) Order granting motion to continue hearing on (related document # 31) (related documents Motion to dismiss adversary proceeding(THIRD) and 20 Amended Complaint) Entered on 5/6/2011. Hearing to be held on 7/11/2011 at 10:30 AM Dallas Judge |

| | |
|---|---|
| 05/06/2011 | *Jernigan Ctrm for 24, Trial Docket Call date reset for 9/12/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Mathews, M.) Modified text on 5/6/2011 (Mathews, M.).* |
| 05/06/2011 | 🔘 33 (2 pgs) Order resetting trial docket call Entered on 5/6/2011 (RE: related document(s)20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial Docket Call date set for 9/12/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Mathews, M.) |
| 05/08/2011 | 🔘 34 (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)33 Order resetting trial docket call Entered on 5/6/2011 (RE: related document(s)20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial Docket Call date set for 9/12/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm.) No. of Notices: 0. Service Date 05/08/2011. (Admin.) |
| 05/08/2011 | 🔘 35 (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)32 Order granting motion to continue hearing on (related document # 31) (related documents Motion to dismiss adversary proceeding*(THIRD)* and 20 *Amended Complaint) Entered on 5/6/2011. Hearing to be held on 7/11/2011 at 10:30 AM Dallas Judge Jernigan Ctrm for 24, Trial Docket Call date reset for 9/12/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Mathews, M.) Modified text on 5/6/2011 (Mathews, M.).)* No. of Notices: 0. Service Date 05/08/2011. (Admin.) |
| 07/06/2011 | 🔘 36 (4 pgs) Second Motion to continue hearing on (related documents 20 Amended complaint, 24 Motion to dismiss adversary proceeding)*[unopposed]* filed by Interested Party Diane G. Reed, Trustee (Elmquist, David) |
| 07/06/2011 | 🔘 Proposed order regarding continuance of hearing and docket call (RE: related document(s)36 Second Motion to continue hearing on (related documents 20 Amended complaint, 24 Motion to dismiss adversary proceeding)*[unopposed]* filed by Interested Party Diane G. Reed, Trustee). Document uploaded on 7/6/2011 (Ref-ID: 1307134179156_6546). (Elmquist, David) |
| | 🔘 37 (2 pgs) Order granting second unopposed motion to continue hearing on (related document # 36) (related documents Amended |

| | |
|---|---|
| 07/08/2011 | complaint, Motion to dismiss adversary proceeding*(THIRD)*) Entered on 7/8/2011. Hearing to be held on 9/15/2011 at 09:30 AM Dallas Judge Jernigan Ctrm for 24 Third motion to dismiss and for Trial Docket Call date set for 12/12/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. Further conditions per Order. (Mathews, M.) |
| 07/10/2011 | 38  (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)37 Order granting second unopposed motion to continue hearing on (related document # 36) (related documents Amended complaint, Motion to dismiss adversary proceeding*(THIRD)*) Entered on 7/8/2011. Hearing to be held on 9/15/2011 at 09:30 AM Dallas Judge Jernigan Ctrm for 24 Third motion to dismiss and for Trial Docket Call date set for 12/12/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. Further conditions per Order.) No. of Notices: 1. Service Date 07/10/2011. (Admin.) |
| 08/24/2011 | 39  (5 pgs) Agreed Motion to Abate Adversary Proceeding (related document(s)1 Complaint) Filed by Interested Party Diane G. Reed (Elmquist, David) Modified TEXT on 8/25/2011 (Blanco, J.). |
| 08/24/2011 | Proposed order regarding Abate Adversary Proceeding (RE: related document(s)39 Motion to abate *Agreed Motion to Abate Adversary Proceeding* (related document(s)1 Complaint) Filed by Interested Party Diane G. Reed). Document uploaded on 8/24/2011 (Ref-ID: 1313460033707_2063). (Elmquist, David) |
| 08/31/2011 | 40  (3 pgs) Agreed Order granting motion to abate adversary proceeding (related document # 39) Entered on 8/31/2011. (Mathews, M.) |
| 09/02/2011 | 41  (5 pgs) BNC certificate of mailing - PDF document. (RE: related document(s) 40 Agreed Order granting motion to abate adversary proceeding) No. of Notices: 1. Notice Date 09/02/2011. (Admin.) |
| 12/12/2011 | Hearing NOT held on 12/12/2011. (RE: related document(s)1 Trial docket call ) Agreed order abating adversary entered 8/31/11. (Garrison, Krystyl) (Entered: 12/13/2011) |
| | 42  (1 pg) Clerk's correspondence requesting Case Status from attorney for plaintiff. (RE: related document(s)40 Agreed Order granting motion to abate adversary proceeding (related document # 39) Entered on 8/31/2011.) Responses due by 4/26/2012. (Chambers, |

| | |
|---|---|
| 04/12/2012 | Deanna) |
| 04/12/2012 | (private) Proposed Order Setting Status Conference for May 3, 2012, at 2:30 p.m. (RE: related document(s)20 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. Document uploaded on 4/12/2012 (Ref-ID: 1332903633881_3239). (Saucier, Anna) |
| 04/13/2012 | 43  (1 pg) Order setting status conference. Entered on 4/13/2012 (RE: related document(s)20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Status Conference to be held on 5/3/2012 at 02:30 PM at Dallas Judge Jernigan Ctrm. (Mathews, M.) Modified on 4/16/2012 (Mathews, M.). |
| 04/13/2012 | (private) Proposed AMENDED Order Setting Status Conference for May 2, 2012, at 2:30 p.m. (RE: related document(s)20 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. Document uploaded on 4/13/2012 (Ref-ID: 1332903633881_3312). (Saucier, Anna) |
| 04/13/2012 | 44  (1 pg) Amended Order Setting Status Conference. Entered on 4/13/2012 (RE: related document(s)20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Status Conference to be held on 5/2/2012 at 02:30 PM at Dallas Judge Jernigan Ctrm. (Moroles, D.) |
| 04/15/2012 | 45  (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)43 Order setting status conference filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Status Conference to be held on 5/3/2012 at 02:30 PM at Dallas Judge Jernigan Ctrm.) No. of Notices: 1. Notice Date 04/15/2012. (Admin.) |
| 04/15/2012 | 46  (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)44 Amended Order Setting Status Conference. Entered on 4/13/2012) No. of Notices: 1. Notice Date 04/15/2012. (Admin.) |
| | Status conference held (RE: related document(s)20 Amended complaint) Appearances: E. Lippe and D. Wander (telephonically) for |

| | |
|---|---|
| 05/02/2012 | Plaintiffs; D. Elmquist for Trustee; D. Olson for Debtor. Nonevidentiary hearing. Based on statements of counsel, court will continue abatement through 8/1/12 and counsel shall contact courtroom deputy for another status conference the first week of August 2012. Counsel shall upload an order continuing abatement. (Davis, T.) (Entered: 05/14/2012) |
| 05/03/2012 | (private) Reopen document (RE: related document(s)39 Agreed Motion to Abate Adversary Proceeding (related document(s)1 Complaint) Filed by Interested Party Diane G. Reed (Elmquist, David) Modified TEXT on 8/25/2011 (Blanco, J.). (Ecker, C.) |
| 05/03/2012 | Proposed order regarding motion to abate - supplemental (RE: related document(s)39 Agreed Motion to Abate Adversary Proceeding (related document(s)1 Complaint) Filed by Interested Party Diane G. Reed (Elmquist, David) Modified TEXT on 8/25/2011 (Blanco, J.).). Document uploaded on 5/3/2012 (Ref-ID: 1332903633881_8175). (Elmquist, David) |
| 05/03/2012 | 47 (2 pgs) Notice of hearing *[status conference]* filed by Interested Party Diane G. Reed (RE: related document(s)39 Motion to abate filed by Interested Party Diane G. Reed). Status Conference to be held on 7/31/2012 at 09:30 AM at Dallas Judge Jernigan Ctrm. (Elmquist, David) |
| 05/24/2012 | 48 (2 pgs) Supplemental Order granting agreed motion to abate adversary proceeding including any hearing on the motion to dismiss, abated until August 1, 2012 further conditions per order (related document # 39 agreed motion to abate ) Entered on 5/24/2012. (Moroles, D.) |
| 05/26/2012 | 49 (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)48 Supplemental Order granting agreed motion to abate adversary proceeding including any hearing on the motion to dismiss, abated until August 1, 2012 further conditions per order) No. of Notices: 1. Notice Date 05/26/2012. (Admin.) |
| 07/25/2012 | (private) Reopen document (RE: related document(s)39 Agreed Motion to Abate Adversary Proceeding (related document(s)1 Complaint) Filed by Interested Party Diane G. Reed (Elmquist, David) Modified TEXT on 8/25/2011 (Blanco, J.).) (Baird, Dennis) |

| | |
|---|---|
| 07/31/2012 | ⬤ Hearing held on 7/31/2012. (RE: related document(s)20 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature. filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Attachments: 1 Exhibit A2 Exhibit B) filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) Appearances: D. Elmquist for Trustee; E. Lippe and D. Wander (telephonically) for Plaintiff; D. Olson for Debtor. Nonevidentiary status conference. Court heard reports regarding Rule 2004 examinations that have been ongoing and Trustees intention to file a Complaint in Intervention by 8/31/12. Court will enter Order terminating the abatement of this Adversary Proceeding and requiring: (a) Trustees Complaint in Intervention to be filed by 8/31/12; and (b) parties to upload Agreed Scheduling Order by 9/14/12 (inclusive of deadlines pertaining to the pending Rule 12(b)(6) motion) or, in the alternative, court will enter its own Scheduling Order thereafter setting a January 2013 trial docket call and deadlines pertaining to the Rule 12(b)(6) motion. (Baird, Dennis) (Entered: 08/01/2012) |
| 08/06/2012 | (private) Proposed Order Terminating Abatement of Adversary Proceeding and Requiring: (A) Trustee's Complaint in Intervention to be Filed by 8/31/2012; and (B) Parties to Upload Agreed Scheduling Order, or in the Alternative, the Court Will Enter Its Own Scheduling Order (RE: related document(s)20 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature. filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Attachments: 1 Exhibit A2 Exhibit B)). Document uploaded on 8/6/2012 (Ref-ID: 1339592149367_12187). (Saucier, Anna) |
| | ⬤ 50  (2 pgs) Order terminating abatement of adversary proceeding and requiring: (A) Trustee's Complaint in Intervention to be filed by August 31, 2012; and (B) parties to upload Agreed Scheduling Order, or in the alternative, Court will enter its own Scheduling Order (related |

| | |
|---|---|
| 08/07/2012 | document # 39) Entered on 8/7/2012. Further details per Order. (Mathews, M.) |
| 08/09/2012 | 51 (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)50 Order terminating abatement of adversary proceeding and requiring:) No. of Notices: 1. Notice Date 08/09/2012. (Admin.) (Entered: 08/10/2012) |
| 08/31/2012 | 52 (4 pgs) Motion to extend time to file a complaint in intervention (unopposed) (RE: related document(s)50 Order on motion to abate) filed by Interested Party Diane G. Reed (Elmquist, David) |
| 08/31/2012 | Proposed order regarding extension of deadline (RE: related document(s)52 Motion to extend time to file a complaint in intervention (unopposed) (RE: related document(s)50 Order on motion to abate) filed by Interested Party Diane G. Reed). Document uploaded on 8/31/2012 (Ref-ID: 1339592149367_17714). (Elmquist, David) |
| 09/05/2012 | 53 (14 pgs) Intervenor complaint by Diane G. Reed against Sunset Pacific, L.P., The Barclay Group, Inc., Bernard D Brown, Phyllis E Comu, Cengiz J. Comu. (Elmquist, David) |
| 09/06/2012 | 54 (2 pgs) Order granting Trustee's Unopposed Motion to Extend Deadline to File a Complaint in Intervention 52 Motion to extend time. Ordered that the deadline is hereby extended to September 5, 2012. Entered on 9/6/2012. (Tello, Chris) |
| 09/06/2012 | 55 (2 pgs) Intervenor summons issued on Bernard D Brown Date Issued 9/6/2012, Answer Due 10/9/2012; Cengiz J. Comu Date Issued 9/6/2012, Answer Due 10/9/2012; Phyllis E Comu Date Issued 9/6/2012, Answer Due 10/9/2012; Sunset Pacific, L.P. Date Issued 9/6/2012, Answer Due 10/9/2012; The Barclay Group, Inc. Date Issued 9/6/2012, Answer Due 10/9/2012 (Harden, D.) |
| 09/08/2012 | 56 (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)54 Order granting Trustee's Unopposed Motion to Extend Deadline to File a Complaint in Intervention 52 Motion to extend time. Ordered that the deadline is hereby extended to September 5, 2012. Entered on 9/6/2012.) No. of Notices: 1. Notice Date 09/08/2012. (Admin.) |
| | 57 (2 pgs) Summons service executed on Bernard D Brown |

| | |
|---|---|
| 09/13/2012 | 9/13/2012; Cengiz J. Comu 9/13/2012; Phyllis E Comu 9/13/2012; Sunset Pacific, L.P. 9/13/2012; The Barclay Group, Inc. 9/13/2012 (Elmquist, David) |
| 09/14/2012 | ⚫ Proposed order regarding Agreed Scheduling Order (RE: related document(s)20 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature. filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Attachments: 1 Exhibit A2 Exhibit B), 53 Intervenor complaint by Diane G. Reed against Sunset Pacific, L.P., The Barclay Group, Inc., Bernard D Brown, Phyllis E Comu, Cengiz J. Comu.). Document uploaded on 9/14/2012 (Ref-ID: 1347282311437_1371). (Elmquist, David) |
| 09/17/2012 | ⚫ 58 (2 pgs) Notice of hearing filed by Defendant Cengiz J. Comu (RE: related document(s)24 Motion to dismiss adversary proceeding filed by Defendant Cengiz J. Comu). Hearing to be held on 10/31/2012 at 09:30 AM Dallas Judge Jernigan Ctrm for 24, (Olson, Dennis) |
| 09/20/2012 | ⚫ 59 (4 pgs) Agreed Scheduling Order Entered on 9/20/2012 (RE: related document(s)20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial Docket Call date set for 7/8/2013 at 01:30 PM at Dallas Judge Jernigan Ctrm. Hearing on Defendant Cengiz J. Comu's Third Amended Motion to Dismiss Case is set for 10/31/2012 at 9:30 AM. (Mathews, M.) MODIFIED hearing dates on 9/21/2012 (Mathews, M.). |
| 09/22/2012 | ⚫ 60 (6 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)59 Agreed Scheduling Order Entered on 9/20/2012 .) No. of Notices: 1. Notice Date 09/22/2012. (Admin.) |
| 09/28/2012 | ⚫ 61 (5 pgs) Supplemental Response opposed to (related document (s): 24 Motion to dismiss adversary proceeding(THIRD) filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| | ⚫ 62 (23 pgs) Amended complaint by Emil Lippe Jr. on behalf of |

| | |
|---|---|
| 09/28/2012 | Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature (s) of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 41 (Objection / revocation of discharge - 727(c),(d),(e)). (Lippe, Emil) Modified text on 9/7/2010 (Luna, G). filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Lippe, Emil) |
| 09/28/2012 | 63  (2 pgs) Adversary proceeding cover sheet filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)1 Complaint). (Lippe, Emil) |
| 10/09/2012 | 64  (4 pgs) Answer to Intervenor complaint (Related document: 53 Intervenor complaint by Diane G. Reed against Sunset Pacific, L.P., The Barclay Group, Inc., Bernard D Brown, Phyllis E Comu, Cengiz J. Comu. (Elmquist, David) filed by Bernard D Brown, Cengiz J. Comu, Phyllis E. Comu, Sunset Pacific, L.P., The Barclay Group, Inc.. (Olson, Dennis) Modified text on 10/9/2012 (Tello, Chris). |
| 10/09/2012 | 65  (4 pgs) Reply to (related document(s): 30 Response filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 61 Response filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) filed by Defendant Cengiz J. Comu. (Olson, Dennis) |
| 10/26/2012 | 66  (4 pgs; 2 docs) Motion to appear pro hac vice for David H. Wander. Fee Amount $25 filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit) (Lippe, Emil) |
| 10/26/2012 | Receipt of filing fee for Motion to Appear pro hac vice(10-03269-sgj) [motion,mprohac] ( 25.00). Receipt number 16258558, amount $25.00. (U.S. Treasury) |
| | 67  (1 pg) (private) Form order to be routed to judge for signature (RE: related document(s)66 Motion to appear pro hac vice for David H. Wander. Fee Amount $25 filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 |

| | |
|---|---|
| 10/29/2012 | Exhibit) filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) (Baird, Dennis) |
| 10/29/2012 | 68 (10 pgs) Motion for leave *to File Third Amended Complaint and Brief in Support* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/23/2012. (Lippe, Emil) |
| 10/30/2012 | Proposed order regarding Leave to File (RE: related document(s) 68 Motion for leave *to File Third Amended Complaint and Brief in Support* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/23/2012.). Document uploaded on 10/30/2012 (Ref-ID: 1349191925330_7164). (Lippe, Emil) |
| 10/30/2012 | 69 (19 pgs; 3 docs) Motion for leave *to File Surreply to Defendant's Response to Plaintiffs' Supplemental Response to Third Motion to Dismiss* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/23/2012. (Attachments: # 1 Exhibit A - Surreply# 2 Proposed Order) (Lippe, Emil) |
| 10/31/2012 | Hearing held on 10/31/2012. (RE: related document(s)24 Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu) Appearances: D. Olson for Movant/Defendant/Debtor; D. Elmquist for Trustee; E. Lippe and D. Wander (telephonically) for Plaintiff/King Louie Mining. Nonevidentiary hearing. Motion denied. Court also denied a pending Motion for Leave by Plaintiff/King Louie Mining to File Third Amended Complaint. Thus, Second Amended Complaint of King Louie Mining (Section 727 count only) and Complaint in Intervention of Trustee are now governing pleadings in this Adversary Proceeding. Mr. Lippe to upload orders on motion to dismiss and motion for leave. (Baird, Dennis) |
| 10/31/2012 | 70 (1 pg) Order granting motion to appear pro hac vice adding David H. Wander for Ronald Katz and King Louie Mining, LLC (related document # 66) Entered on 10/31/2012. (Mathews, M.) |
| | Proposed order regarding Leave to File Surreply (RE: related document(s)69 Motion for leave *to File Surreply to Defendant's Response to Plaintiffs' Supplemental Response to Third Motion to Dismiss* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, |

| | |
|---|---|
| 10/31/2012 | King Louie Mining, LLC Objections due by 11/23/2012. (Attachments: # 1 Exhibit A - Surreply# 2 Proposed Order)). Document uploaded on 10/31/2012 (Ref-ID: 1349191925330_7790). (Lippe, Emil) |
| 10/31/2012 | Proposed order regarding Leave to File Third Amended Complaint (RE: related document(s)68 Motion for leave *to File Third Amended Complaint and Brief in Support* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/23/2012.). Document uploaded on 10/31/2012 (Ref-ID: 1349191925330_7793). (Lippe, Emil) |
| 11/02/2012 | 71  (2 pgs) Order denying Plaintiffs' motion for leave to file Third Amended Complaint (related document # 68) Entered on 11/2/2012. (Mathews, M.) |
| 11/02/2012 | 72  (2 pgs) Order denying Plaintiffs' motion for leave to File Surreply to Defendant's Response to Plaintiffs' Supplemental Response to Third Motion to Dismiss (related document # 69) Entered on 11/2/2012. (Mathews, M.) |
| 11/02/2012 | 73  (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)70 Order granting motion to appear pro hac vice adding David H. Wander for Ronald Katz and King Louie Mining, LLC) No. of Notices: 1. Notice Date 11/02/2012. (Admin.) |
| 11/04/2012 | 74  (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)71 Order denying Plaintiffs' motion for leave to file Third Amended Complaint) No. of Notices: 0. Notice Date 11/04/2012. (Admin.) |
| 11/04/2012 | 75  (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)72 Order denying Plaintiffs' motion for leave to File Surreply to Defendant's Response to Plaintiffs' Supplemental Response to Third Motion to Dismiss) No. of Notices: 0. Notice Date 11/04/2012. (Admin.) |
| 11/07/2012 | Proposed order regarding Defendant's Third Motion to Dismiss (RE: related document(s)24 Motion to dismiss adversary proceeding *(THIRD)* filed by Defendant Cengiz J. Comu). Document uploaded on 11/7/2012 (Ref-ID: 1349191925330_9288). (Lippe, Emil) |

| 11/14/2012 | 🔘 76 (2 pgs) Order denying motion to dismiss adversary proceeding (related document # 24) Entered on 11/14/2012. (Mathews, M.) |
|---|---|
| 11/16/2012 | 🔘 77 (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)76 Order denying motion to dismiss adversary proceeding) No. of Notices: 2. Notice Date 11/16/2012. (Admin.) (Entered: 11/17/2012) |
| 12/07/2012 | 🔘 78 (4 pgs) Answer to complaint *(Second Amended) to Revoke Discharge* filed by Cengiz J. Comu. (Olson, Dennis) |
| 02/01/2013 | 🔘 79 (8 pgs) Notice to take deposition of Bernard D. Brown and Subpoena Duces Tecum filed by Intervenor-Plaintiff Diane G. Reed. (Elmquist, David) |
| 02/12/2013 | 🔘 80 (2 pgs) Notice to take deposition of Matthew Troster filed by Intervenor-Plaintiff Diane G. Reed. (Elmquist, David) |
| 02/15/2013 | 🔘 81 (3 pgs) Notice to take deposition of Phyllis Comu filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 02/15/2013 | 🔘 82 (3 pgs) Notice to take deposition of Gem Comu filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 02/15/2013 | 🔘 83 (3 pgs) Notice to take deposition of Sevim Comu filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 05/16/2013 | 🔘 84 (9 pgs) Notice to take deposition of Edward Baxter as a Representative of Bois D' Arc Partners, LLC and Subpoena Duces Tecum filed by Intervenor-Plaintiff Diane G. Reed. (Elmquist, David) |
| 05/16/2013 | 🔘 85 (3 pgs) Notice to take deposition of Edward Baxter as a Representative of Bois D' Arc Partners, LLC, and Subpoena Duces Tecum (Amended) filed by Intervenor-Plaintiff Diane G. Reed. (Elmquist, David) |
| | 🔘 86 (9 pgs) Notice to take deposition of Edward Baxter as a Representative of Bois D' Arc Partners, LLC, and Subpoena Duces Tecum (Second Amended) filed by Intervenor-Plaintiff Diane G. |

| | |
|---|---|
| 05/16/2013 | Reed. (Elmquist, David) |
| 05/22/2013 | 🔵 87 (4 pgs) Notice of Appearance and Request for Notice *and Service of All Papers* by Shari L. Heyen filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Heyen, Shari) |
| 06/07/2013 | 🔵 88 (4 pgs) Motion to substitute attorney Emil Lippe, Jr., Law Offices of Lippe & Associates with Shari L. Heyen, Kendyl T. Hanks and Charles P. Floyd, Greenberg Traurig, LLP *and for Withdrawal of Attorney Emil Lippe, Jr., Law Offices of Lippe & Associates,* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Heyen, Shari) |
| 06/12/2013 | 🔵 89 (10 pgs; 2 docs) Agreed Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit A - Proposed Agreed Scheduling Order) (Heyen, Shari) |
| 06/21/2013 | 🔵 90 (4 pgs) Agreed order granting motion to amend scheduling order (related document # 89) Trial Docket Call date set for 9/9/2013 at 01:30 PM Dallas Judge Jernigan Ctrm for 20, Entered on 6/21/2013. (Rielly, Bill) |
| 06/21/2013 | (private) Other deadlines updated Pre-Trial Order due by 8/30/2013. Discovery due by 7/31/2013. (Rielly, Bill) |
| 06/21/2013 | 🔵 91 (3 pgs) Order granting motion to substitute attorney adding Shari L. Heyen for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, Kendyl T. Hanks for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, Charles P. Floyd for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, terminating Emil Lippe, Jr.. (related document # 88) Entered on 6/21/2013. (Rielly, Bill) |
| 06/23/2013 | 🔵 92 (6 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)90 Agreed order granting motion to amend scheduling order (related document 89) Trial Docket Call date set for 9/9/2013 at 01:30 PM Dallas Judge Jernigan Ctrm for 20, Entered on 6/21/2013.) No. of Notices: 2. Notice Date 06/23/2013. (Admin.) |

000171

| | |
|---|---|
| 06/23/2013 | 🔘 93  (5 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)91 Order granting motion to substitute attorney adding Shari L. Heyen for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, Kendyl T. Hanks for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, Charles P. Floyd for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, terminating Emil Lippe, Jr.. (related document 88) Entered on 6/21/2013.) No. of Notices: 2. Notice Date 06/23/2013. (Admin.) |
| 07/19/2013 | 🔘 94  (37 pgs; 6 docs) Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates (Attachments: # 1 Exhibit # 2 Affidavit # 3 Exhibit 1 # 4 Exhibit 2 # 5 Proposed Order) (Lippe, Emil) |
| 07/22/2013 | 🔘 95  (3 pgs) Notice of hearing filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates (RE: related document(s)94 Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates). Hearing to be held on 8/15/2013 at 02:30 PM Dallas Judge Jernigan Ctrm for 94, (Lippe, Emil) |
| 08/12/2013 | 🔘 96  (9 pgs) Response opposed to (related document(s): 94 Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Heyen, Shari) |
| 08/14/2013 | 🔘 97  (58 pgs; 7 docs) Reply to (related document(s): 96 Response filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6) (Lippe, Emil) |
| 08/15/2013 | 🔘  Hearing held on 8/15/2013. (RE: related document(s)94 Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates (Attachments: # 1 Exhibit # 2 Affidavit # 3 Exhibit 1 # 4 Exhibit 2 # 5 Proposed Order)) Appearances: E. Lippe for his firm; K. Hanks and C. Floyd for Plaintiffs other than the Trustee; D. Elmquist for Trustee; R. Nicoud for Debtor. Nonevidentiary hearing. Motion denied. Ms. Hanks to upload order. (Harden, D.) (Entered: 08/21/2013) |

000172

| | |
|---|---|
| 08/21/2013 | 98 (2 pgs) Order denying motion to intervene (related document # 94) Entered on 8/21/2013. (Rielly, Bill) |
| 08/23/2013 | 99 (9 pgs; 2 docs) Agreed Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit A - Agreed Order to Amend Scheduling Order) (Heyen, Shari) |
| 08/23/2013 | 100 (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)98 Order denying motion to intervene (related document 94) Entered on 8/21/2013.) No. of Notices: 3. Notice Date 08/23/2013. (Admin.) |
| 09/13/2013 | 101 (4 pgs) Agreed order granting motion to amend scheduling order (related document # 99) Trial Docket Call date set for 12/9/2013 at 01:30 PM Dallas Judge Jernigan Ctrm for 20, Entered on 9/13/2013. (Rielly, Bill) |
| 09/13/2013 | (private) Other deadlines updated Pre-Trial Order due by 11/27/2013. Discovery due by 10/9/2013. (Rielly, Bill) |
| 09/15/2013 | 102 (5 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)101 Agreed order granting motion to amend scheduling order (related document 99) Trial Docket Call date set for 12/9/2013 at 01:30 PM Dallas Judge Jernigan Ctrm for 20, Entered on 9/13/2013.) No. of Notices: 3. Notice Date 09/15/2013. (Admin.) |
| 11/25/2013 | 103 (3 pgs) Witness and Exhibit List *for Trial, per Scheduling Order* filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)62 Amended complaint). (Olson, Dennis) |
| 11/25/2013 | 104 (6 pgs; 2 docs) Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Heyen, Shari) |
| | 105 (3 pgs) Support/supplemental document*(Supplement to Plaintiffs' Motion for Continuance of Scheduling Order Deadlines and Trial)* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, |

| | |
|---|---|
| 11/27/2013 | King Louie Mining, LLC (RE: related document(s)104 Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding)). (Heyen, Shari) |
| 12/09/2013 | 106  (4 pgs) Agreed order granting motion to amend scheduling order (related document # 104) Entered on 12/9/2013. Trial Docket Call date set for 3/3/2014 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Rielly, Bill) |
| 12/09/2013 | (private) Other deadlines updated Pre-Trial Order due by 2/26/2014. Discovery due by 1/24/2014. (Rielly, Bill) |
| 12/11/2013 | 107  (5 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)106 Agreed order granting motion to amend scheduling order (related document 104) Entered on 12/9/2013. Trial Docket Call date set for 3/3/2014 at 01:30 PM at Dallas Judge Jernigan Ctrm.) No. of Notices: 3. Notice Date 12/11/2013. (Admin.) |
| 12/20/2013 | 108  (10 pgs) Motion for preliminary injunction *(expedited)* filed by Intervenor-Plaintiff Diane G. Reed (Elmquist, David) |
| 12/20/2013 | 109  (4 pgs) Motion for expedited hearing(related documents 108 Motion for preliminary injunction) filed by Intervenor-Plaintiff Diane G. Reed (Elmquist, David) |
| 12/20/2013 | 110  (2 pgs) Order granting ex parte motion for expedited hearing (Related Doc# 109)(document set for hearing: 108 Motion for preliminary injunction) Entered on 12/20/2013. Hearing to be held on 12/23/2013 at 09:30 AM Dallas Judge Jernigan Ctrm for 108, (Rielly, Bill) |
| 12/20/2013 | 111  (3 pgs) Agreed order granting motion for temporary restraining order (related document 108) Entered on 12/20/2013. Preliminary injunction hearing to be held on 1/3/2014 at 09:30 AM Dallas Judge Jernigan Ctrm (Rielly, Bill) |
| 12/20/2013 | (private) Reopen document (RE: related document(s)108 Motion for preliminary injunction *(expedited)* filed by Intervenor-Plaintiff Diane G. Reed filed by Intervenor-Plaintiff Diane G. Reed) (Rielly, Bill) |
| | 112 Hearing set (RE: related document(s)108 Motion for preliminary injunction *(expedited)* filed by Intervenor-Plaintiff Diane |

000174

| | |
|---|---|
| 12/20/2013 | G. Reed filed by Intervenor-Plaintiff Diane G. Reed) Preliminary injunction hearing to be held on 1/3/2014 at 09:30 AM Dallas Judge Jernigan Ctrm for 108, (Rielly, Bill) |
| 12/22/2013 | 113  (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)110 Order granting ex parte motion for expedited hearing (Related Doc109)(document set for hearing: 108 Motion for preliminary injunction) Entered on 12/20/2013. Hearing to be held on 12/23/2013 at 09:30 AM Dallas Judge Jernigan Ctrm for 108,) No. of Notices: 3. Notice Date 12/22/2013. (Admin.) |
| 12/22/2013 | 114  (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)111 Agreed order granting motion for temporary restraining order (related document 108) Entered on 12/20/2013. Preliminary injunction hearing to be held on 1/3/2014 at 09:30 AM Dallas Judge Jernigan Ctrm) No. of Notices: 3. Notice Date 12/22/2013. (Admin.) |
| 12/23/2013 | Hearing NOT held on 12/23/2013. (RE: related document(s)108 Motion for preliminary injunction *(expedited)* filed by Intervenor-Plaintiff Diane G. Reed) Agreed temporary restraining order entered 12/20/2013. (Harden, D.) (Entered: 12/26/2013) |
| 12/26/2013 | 115  (2 pgs) Notice of hearing filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)108 Motion for preliminary injunction filed by Intervenor-Plaintiff Diane G. Reed). Hearing to be held on 1/3/2014 at 09:30 AM Dallas Judge Jernigan Ctrm for 108, (Elmquist, David) |
| 01/03/2014 | 116  (3 pgs) Agreed Order Continuing Temporary Restraining Order (related document # 108) Entered on 1/3/2014. (Jones, A.) |
| 01/03/2014 | Hearing NOT held on 1/3/2014. (RE: related document(s)108 Motion for preliminary injunction *(expedited)* filed by Intervenor-Plaintiff Diane G. Reed) Announcement of agreement to the courtroom deputy prior to the hearing. (Harden, D.) |
| 01/05/2014 | 117  (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)116 Agreed Order Continuing Temporary Restraining Order (related document 108) Entered on 1/3/2014. (Jones, A.)) No. of Notices: 2. Notice Date 01/05/2014. (Admin.) |

| | |
|---|---|
| 02/24/2014 | 🔘 118  (3 pgs) Amended Witness and Exhibit List filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)103 List (witness/exhibit/generic)). (Olson, Dennis) |
| 02/24/2014 | 🔘 119  (8 pgs) Witness and Exhibit List *for Trial* filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)62 Amended complaint). (Elmquist, David) |
| 02/24/2014 | 🔘 120  (52 pgs) Witness and Exhibit List filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)62 Amended complaint). (Heyen, Shari) |
| 02/26/2014 | 🔘 121  (4 pgs) Stipulation by Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC and All Defendants. filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)106 Order on motion to amend scheduling order). (Heyen, Shari) |
| 03/03/2014 | 🔘  PRE-TRIAL CONFERENCE SCHEDULED FOR 3/3/2014 AT 1:30 HAS BEEN CANCELLED DUE TO ICY ROAD CONDITIONS AND WILL BE RESCHEDULED. THE COURTROOM DEPUTY WILL CONTACT PARTIES WITH NEW HEARING DATE AND TIME. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 41 (Objection / revocation of discharge - 727(c),(d),(e)). (Lippe, Emil) Modified text on 9/7/2010 (Luna, G). filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) (Davis, T.) |
| 03/03/2014 | 🔘 122 COURT'S NOTICE OF PRE-HEARING CONFERENCE reset to 3/4/2014 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Davis, T.) |
| | 🔘 123 COURT'S NOTICE OF PRE-HEARING CONFERENCE reset |

| | |
|---|---|
| 03/03/2014 | to 3/4/2014 at 02:30 PM at Dallas Judge Jernigan Ctrm. (Amended notice/entry to correct start time.) (Davis, T.) |
| 03/03/2014 | 124 (3 pgs) Stipulation by Diane G. Reed and Plaintiffs and Defendants. filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)53 Intervenor complaint, 62 Amended complaint). (Elmquist, David) |
| 03/03/2014 | 125 (12 pgs) Proposed findings of fact and conclusions of law filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)53 Intervenor complaint). (Elmquist, David) |
| 03/04/2014 | 126 (5 pgs) Proposed findings of fact and conclusions of law filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s) 62 Amended complaint). (Olson, Dennis) |
| 03/04/2014 | 127 (32 pgs) Proposed findings of fact and conclusions of law filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)62 Amended complaint). (Heyen, Shari) |
| 03/04/2014 | 128 (6 pgs) Brief in opposition filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)62 Amended complaint). (Olson, Dennis) |
| 03/04/2014 | 129 (10 pgs) Proposed pre-trial order filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc., Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC, Intervenor-Plaintiff Diane G. Reed. (Elmquist, David) |
| | Pre-trial conference held on 3/4/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 41 |

000177

| | |
|---|---|
| | (Objection / revocation of discharge - 727(c),(d),(e)). (Lippe, Emil) Modified text on 9/7/2010 (Luna, G.) filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz.) Appearances: K. Hanks and V. Vital for Creditor/Plaintiffs; D. Elmquist for Intervenor/Plaintiff; D. Olson for Defendants. Nonevidentiary status conference. Court will issue order setting trial for March 17, 2014 at 9:30 am, continuing through March 21, 2014. Parties to upload final Pre-Trial Order by March 14, 2014. (Harden, D.) (Entered: 03/06/2014) |
| 03/04/2014 | |
| 03/05/2014 | 130  (2 pgs) Order setting trial Entered on 3/5/2014 (RE: related document(s)62 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial date set for 3/17/2014 at 09:30 AM at Dallas Judge Jernigan Ctrm. (Rielly, Bill) |
| 03/07/2014 | 131  (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)130 Order setting trial Entered on 3/5/2014 (RE: related document(s)62 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial date set for 3/17/2014 at 09:30 AM at Dallas Judge Jernigan Ctrm.) No. of Notices: 3. Notice Date 03/07/2014. (Admin.) |
| 03/11/2014 | 132  (25 pgs) Amended Witness and Exhibit List *for Trial* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)120 List (witness/exhibit/generic)). (Heyen, Shari) |
| 03/12/2014 | 133  (3 pgs) Notice of Appearance and Request for Notice *of Victor D. Vital and Nicholas A. Sarokhanian as Co-Counsel* by Shari L. Heyen filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Heyen, Shari) |
| 03/13/2014 | 134  (8 pgs) Amended Witness and Exhibit List filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)119 List (witness/exhibit/generic)). (Elmquist, David) |
| 03/14/2014 | 135  (3 pgs) Amended Witness and Exhibit List *Second Amended* filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)118 List (witness/exhibit/generic)). (Olson, Dennis) |

| 03/16/2014 | 136 (29 pgs) Proposed pre-trial order filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc., Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC, Intervenor-Plaintiff Diane G. Reed. (Elmquist, David) |
|---|---|
| 03/16/2014 | 137 (26 pgs) Amended Witness and Exhibit List *(Second)* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)132 List (witness/exhibit/generic)). (Heyen, Shari) |
| 03/17/2014 | 138 (29 pgs) First Amended Proposed Joint Pre-Trial order Entered on 3/17/2014. (Rebecek, B) |
| 03/17/2014 | Trial held on 3/17/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/18/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| 03/17/2014 | 140 (1 pg) Court admitted exhibits date of hearing 3/17/2014: KLM Exhibits: 1-94, 96-121, 123-142, 144, 145, 147-158, 160-369, and 371-373. Trustee Exhibits: 1-97. Defendant Exhibits 1-10. Offered, not admitted: KLM Exhibits: 143 and 159. Withdrawn: KLM Exhibits 95, 122, and 146. Discussed, not offered for admission: KLM 43. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) (Harden, D.) Modified text on 3/28/2014 (Harden, D.). (Entered: 03/28/2014) |
| | Trial held on 3/18/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, |

| | |
|---|---|
| 03/18/2014 | L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/19/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| 03/19/2014 | 139 (30 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)138 First Amended Proposed Joint Pre-Trial order Entered on 3/17/2014.) No. of Notices: 0. Notice Date 03/19/2014. (Admin.) |
| 03/19/2014 | Trial held on 3/19/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/20/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| 03/20/2014 | Trial held on 3/20/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/21/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| | Trial held on 3/21/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial concluded. Court gave bench ruling: (a) revocation of discharge shall be ordered as to the Debtor, pursuant to Section 727(d)(1) & (2) of the Bankruptcy Code, based on fraud and concealment of assets of which Plaintiffs (and Trustee) were unaware until after the granting of |

| | |
|---|---|
| 03/21/2014 | discharge, and also based on Debtors acquiring or becoming entitled to acquire property that was or would be property of the estate and knowingly and fraudulently failing to report, deliver and surrender it toTtrustee; (b) The Barclay Group, Inc. and Sunset Pacific are the alter egos of Debtor and their veil should be pierced; (c) Debtor should turnover previously undisclosed Turkish Bank Account and the equity/asset-control of The Barclay Group, Inc. and Sunset Pacific to Trustee; (d) parties may submit post-trial briefing regarding possible monetary damages to the estate. Counsel will upload an amended restraining order and injunction, as soon as possible, to protect dissipation of Green Auto stock or other assets of The Barclay Group, Inc. and Sunset Pacific. Counsel will subsequently upload proposed Findings of Fact, Conclusions of Law and Judgment that are consistent with the courts oral ruling and otherwise consistent with the evidence. (Harden, D.) (Entered: 03/25/2014) |
| 03/28/2014 | 🔵 141  (5 pgs) Post-Trial Brief in support filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)53 Intervenor complaint). (Elmquist, David) MODIFIED text to match pdf on 3/31/2014 (Moroles, D.). |
| 04/04/2014 | 🔵 142  (7 pgs) Extended temporary restraining order and mandatory injunction Entered on 4/4/2014. (Rielly, Bill) |
| 04/06/2014 | 🔵 143  (8 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)142 Extended temporary restraining order and mandatory injunction Entered on 4/4/2014.) No. of Notices: 3. Notice Date 04/06/2014. (Admin.) |
| 04/23/2014 | 🔵 144  (14 pgs) Notice *of Trustee's Status Report of Compliance* filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)142 Temporary restraining order). (Elmquist, David) |
| 06/16/2014 | 🔵 145  (43 pgs) Proposed findings of fact and conclusions of law filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC, Intervenor-Plaintiff Diane G. Reed (RE: related document(s)20 Amended complaint, 53 Intervenor complaint). (Elmquist, David) |
| | 🔵 146  (151 pgs) Brief in support filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC, Intervenor-Plaintiff Diane G. Reed (RE: related document(s)145 Proposed findings of fact |

| | |
|---|---|
| 06/16/2014 | and conclusions of law). (Elmquist, David) |
| 07/08/2014 | 147 (141 pgs) Findings of fact and conclusions of law in support of judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Rielly, Bill) |
| 07/08/2014 | 148 (4 pgs) Judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Related document(s) 20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 53 Intervenor complaint filed by Intervenor-Plaintiff Diane G. Reed) (Rielly, Bill). |
| 07/10/2014 | 149 (5 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)148 Judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Related document(s) 20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 53 Intervenor complaint filed by Intervenor-Plaintiff Diane G. Reed) .) No. of Notices: 3. Notice Date 07/10/2014. (Admin.) |
| 07/10/2014 | 150 (142 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)147 Findings of fact and conclusions of law in support of judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014.) No. of Notices: 3. Notice Date 07/10/2014. (Admin.) |

| | |
|---|---|
| 07/24/2014 | Adversary case 3:10-ap-3269 closed (Chambers, Deanna) |
| 07/29/2014 | 151  (6 pgs) INCORRECT ENTRY WRONG EVENT USED SEE161 - Motion for leave to appeal(related document(s): 148 Judgment) filed by Defendant Cengiz J. Comu Objections due by 8/12/2014. (Blanco, J.) Modified on 8/20/2014 (Blanco, J.). |
| 07/29/2014 | 152  (1 pg) Clerk's correspondence requesting Adv case closed. Please reopen the case to proceed. from debtor. (RE: related document (s)151 Motion for leave to appeal(related document(s): 148 Judgment) filed by Defendant Cengiz J. Comu Objections due by 8/12/2014. (Blanco, J.) filed by Defendant Cengiz J. Comu) Responses due by 8/11/2014. (Blanco, J.) |
| 07/29/2014 | 161  (6 pgs) Motion to extend time to appeal - Rule 8002c (RE: related document(s)148 Judgment) Filed by Defendant Cengiz J. Comu (Blanco, J.) (Entered: 08/20/2014) |
| 07/30/2014 | 153  (8 pgs) Application for compensation *Plaintiffs Preliminary Application for Attorneys' Fees and Expenses Awarded in the Court's July 8, 29014 Judgment* for Shari L. Heyen, Creditor's Attorney, Period: 10/26/2011 to 7/28/2014, Fee: $946,504.90, Expenses: $12,800.00. Filed by Attorney Shari L. Heyen (Heyen, Shari) |
| 07/30/2014 | 154  (8 pgs) Motion to extend time to To Submit Affidavit and Evidence in Support of Application for Attorneys' Fees & Expenses Awarded in the Court's July 8, 2014 Judgment Filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Heyen, Shari) |
| 07/31/2014 | 155  (2 pgs) BNC certificate of mailing. (RE: related document(s) 152 Clerk's correspondence requesting Adv case closed. Please reopen the case to proceed. from debtor. (RE: related document(s)151 Motion for leave to appeal(related document(s): 148 Judgment) filed by Defendant Cengiz J. Comu Objections due by 8/12/2014. (Blanco, J.) filed by Defendant Cengiz J. Comu) Responses due by 8/11/2014. (Blanco, J.)) No. of Notices: 1. Notice Date 07/31/2014. (Admin.) |
| 08/11/2014 | (private) Adversary case reopened. Closed prematurely. (Chambers, Deanna) |
| | 156  (1 pg) Request for transcript regarding a hearing held on |

| | |
|---|---|
| 08/11/2014 | 3/17/2014. The requested turn-around time is 7-day expedited (Baird, Dennis) |
| 08/14/2014 | 157 (4 pgs; 2 docs) (private) Forms (misc) (Whitaker, Sheniqua) |
| 08/14/2014 | 158 (1 pg) INCORRECT ENTRY. Transmitted to District Court in error. Certificate of transmission of motion for leave to appeal (RE: related document(s)151 Motion for leave to appeal(related document (s): 148 Judgment) filed by Defendant Cengiz J. Comu Objections due by 8/12/2014. (Blanco, J.)) (Whitaker, Sheniqua) Modified on 8/20/2014 (Whitaker, Sheniqua). |
| 08/14/2014 | 159 (3 pgs) (private) Forms (misc) (Whitaker, Sheniqua) |
| 08/18/2014 | 160 (62 pgs) Transcript regarding Hearing Held 03/17/14 RE: Trial on Amended Complaint - Testimony of Ronald Katz only. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 11/17/2014. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Linda York, Telephone number 806-763-0036. (RE: related document(s) Trial held on 3/17/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature (s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/18/14 at 9:30 am. (Harden, D.)). Transcript to be made available to the public on 11/17/2014. (Beale, Jennifer) |
| 08/20/2014 | 162 (2 pgs) Order granting motion for leave to file notice of appeal out of time 161 Motion to extend time to appeal - Rule 8002c. Entered on 8/20/2014. (Rielly, Bill) |
| | 163 (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)162 Order granting motion for leave to file notice of appeal out of time 161 Motion to extend time to appeal - Rule 8002c. Entered on 8/20/2014.) No. of Notices: 3. Notice Date |

| | |
|---|---|
| 08/22/2014 | 08/22/2014. (Admin.) |
| 08/27/2014 | 164 (3 pgs) Notice of appeal . Fee Amount $298 filed by Defendant Cengiz J. Comu (RE: related document(s)148 Judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Related document(s) 20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 53 Intervenor complaint filed by Intervenor-Plaintiff Diane G. Reed)). Appellant Designation due by 9/10/2014. (Moroles, D.) |
| 08/27/2014 | 165 (3 pgs) Order granting motion to extend time to file application for attorney's fees and expenses 154 Motion to extend time. Entered on 8/27/2014. (Rielly, Bill) |
| 08/27/2014 | Receipt of Appeal Filing Fee - $298.00 by DM. Receipt Number 333439. (admin) |
| 08/28/2014 | 166 (5 pgs; 2 docs) (private) Forms (misc) (Blanco, J.) |
| 08/29/2014 | 167 (6 pgs; 3 docs) Certificate of mailing regarding appeal (RE: related document(s)164 Notice of appeal . ) (Attachments: # 1 Service list) (Blanco, J.) |
| 08/29/2014 | 168 (2 pgs) Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)164 Notice of appeal filed by Defendant Cengiz J. Comu) (Blanco, J.) |
| 08/29/2014 | 169 (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)165 Order granting motion to extend time to file application for attorney's fees and expenses 154 Motion to extend time. Entered on 8/27/2014.) No. of Notices: 3. Notice Date 08/29/2014. (Admin.) |
| | 170 (3 pgs) BNC certificate of mailing. (RE: related document(s) 168 Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)164 Notice of appeal filed by Defendant Cengiz J. Comu) (Blanco, J.)) No. of Notices: 2. Notice |

| | |
|---|---|
| 08/31/2014 | Date 08/31/2014. (Admin.) |
| 08/31/2014 | 171 (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)167 Certificate of mailing regarding appeal (RE: related document(s)164 Notice of appeal . ) (Attachments: # 1 Service list) (Blanco, J.)) No. of Notices: 2. Notice Date 08/31/2014. (Admin.) |
| 09/10/2014 | 172 (15 pgs) Appellant designation of contents for inclusion in record on appeal and statement of issues on appeal. filed by Debtor Cengiz J. Comu (RE: related document(s)164 Notice of appeal, 168 Notice regarding the record for a bankruptcy appeal). Appellee designation due by 09/24/2014. (Olson, Dennis) |
| 09/11/2014 | 173 (15 pgs) Amended appellant designation of contents for inclusion in record on appeal and statement of issues on appeal. filed by Debtor Cengiz J. Comu (RE: related document(s)172 Appellant designation). (Olson, Dennis) |
| 09/25/2014 | 174 (3 pgs) Appellee designation of contents for inclusion in record of appeal filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)164 Notice of appeal, 168 Notice regarding the record for a bankruptcy appeal). (Elmquist, David) |
| 10/09/2014 | 175 (6 pgs) Abstract of judgment (RE: related document(s)148 Judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Related document(s) 20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 53 Intervenor complaint filed by Intervenor-Plaintiff Diane G. Reed) .) (Whitaker, Sheniqua) |
| 10/14/2014 | 176 (15 pgs) Notice *of Trustee's Second Status Report* filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)142 Temporary restraining order). (Elmquist, David) |
| | 177 (6 pgs) Transcript regarding Hearing Held 11/09/10 RE: 12 (b)(6) Motion. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC |

| | |
|---|---|
| | 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 01/20/2015. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Linda York, Telephone number 806-763-0036. (RE: related document(s) Hearing held on 11/9/2010. (RE: related document(s)5 Motion to dismiss adversary proceeding Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6) filed by Defendant Cengiz J. Comu filed by Defendant Cengiz J. Comu) APPEARANCES: D. Olson for Debtor; E. Lippe for Plaintiff. Nonevidentiary hearing. Announcement of an agreed order having been submitted that contemplates Plaintiff's agreement to file Amended Complaint with Debtor's reservation of right to re-urge motion to dismiss. Court will sign order.). Transcript to be made available to the public on 01/20/2015. (Beale, Jennifer) |
| 10/22/2014 | |
| 10/22/2014 | 🔒 ⊙ 178  (25 pgs) Transcript regarding Hearing Held 02/14/11 RE: Motion to Dismiss. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 01/20/2015. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Elaine Fowler, Telephone number 806-763-0036. (RE: related document(s) Hearing held on 2/14/2011. (RE: related document(s)12 Motion to dismiss adversary proceeding *(SECOND)* filed by Defendant Cengiz J. Comu filed by Defendant Cengiz J. Comu) Appearances: D. Olsen for Defendant/Debtor; E. Lippe for Plaintiff. Nonevidentiary hearing. Motion denied, conditional on Plaintiff, within 20 days, amending Complaint again to provide more specificity regarding specific provisions of Section 727(d) being alleged, when acts were discovered and how, and addressing his standing, versus the Chapter 7 Trustees, to seek avoidance of alleged fraudulent transfers. If not amendment within 20 days, complaint will be dismissed. If amendment, then Defendant has 20 days thereafter to answer/respond. Counsel to submit order. (Harden, D.)). Transcript to be made available to the public on 01/20/2015. (Beale, Jennifer) Modified on 10/22/2014 (Baird, Dennis). |
| | 🔒 ⊙ 179  (12 pgs) Transcript regarding Hearing Held 05/02/12 RE: Request for Revocation of Discharge. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 01/20/2015. Until that time the transcript may be |

| | |
|---|---|
| 10/22/2014 | viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Linda York, Telephone number 806-763-0036. (RE: related document(s) Status conference held (RE: related document(s)20 Amended complaint) Appearances: E. Lippe and D. Wander (telephonically) for Plaintiffs; D. Elmquist for Trustee; D. Olson for Debtor. Nonevidentiary hearing. Based on statements of counsel, court will continue abatement through 8/1/12 and counsel shall contact courtroom deputy for another status conference the first week of August 2012. Counsel shall upload an order continuing abatement. (Davis, T.)). Transcript to be made available to the public on 01/20/2015. (Beale, Jennifer) |
| 10/22/2014 | 🔒 🌐 180  (11 pgs) Transcript regarding Hearing Held 07/31/12 RE: Hearing. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 01/20/2015. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Linda York, Telephone number 806-763-0036. (RE: related document(s) Hearing held on 7/31/2012. (RE: related document(s)20 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature. filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Attachments: 1 Exhibit A2 Exhibit B) filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) Appearances: D. Elmquist for Trustee; E. Lippe and D. Wander (telephonically) for Plaintiff; D. Olson for Debtor. Nonevidentiary status conference. Court heard reports regarding Rule 2004 examinations that have been ongoing and Trustees intention to file a Complaint in Intervention by 8/31/12. Court will enter Order terminating the abatement of this Adversary Proceeding and requiring: (a) Trustees Complaint in Intervention to be filed by 8/31/12; and (b) parties to upload Agreed Scheduling Order by 9/14/12 (inclusive of deadlines pertaining to the pending Rule 12(b)(6) motion) or, in the alternative, court will enter its own Scheduling Order thereafter setting a January 2013 trial docket call and deadlines pertaining to the Rule 12(b)(6) motion.). Transcript to be made available to the public on 01/20/2015. (Beale, Jennifer) |

| | |
|---|---|
| 10/22/2014 | 🔒 ⊙ 181  (29 pgs) Transcript regarding Hearing Held 10/31/12 RE: Motion to Dismiss the Second Amended Complaint. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 01/20/2015. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Linda York, Telephone number 806-763-0036. (RE: related document(s) Hearing held on 10/31/2012. (RE: related document(s)24 Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu) Appearances: D. Olson for Movant/Defendant/Debtor; D. Elmquist for Trustee; E. Lippe and D. Wander (telephonically) for Plaintiff/King Louie Mining. Nonevidentiary hearing. Motion denied. Court also denied a pending Motion for Leave by Plaintiff/King Louie Mining to File Third Amended Complaint. Thus, Second Amended Complaint of King Louie Mining (Section 727 count only) and Complaint in Intervention of Trustee are now governing pleadings in this Adversary Proceeding. Mr. Lippe to upload orders on motion to dismiss and motion for leave.). Transcript to be made available to the public on 01/20/2015. (Beale, Jennifer) |
| 10/22/2014 | 🔒 ⊙ 182  (31 pgs) Transcript regarding Hearing Held 08/15/13 RE: Hearing on Motions. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 01/20/2015. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Linda York, Telephone number 806-763-0036. (RE: related document(s) Hearing held on 8/15/2013. (RE: related document(s)94 Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates (Attachments: # 1 Exhibit # 2 Affidavit # 3 Exhibit 1 # 4 Exhibit 2 # 5 Proposed Order)) Appearances: E. Lippe for his firm; K. Hanks and C. Floyd for Plaintiffs other than the Trustee; D. Elmquist for Trustee; R. Nicoud for Debtor. Nonevidentiary hearing. Motion denied. Ms. Hanks to upload order. (Harden, D.)). Transcript to be made available to the public on 01/20/2015. (Beale, Jennifer) |
| | 🔒 ⊙ 183  (17 pgs) Transcript regarding Hearing Held 03/04/14 RE: Trial Docket Call Hearing. THIS TRANSCRIPT WILL BE MADE |

| | |
|---|---|
| | ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 01/20/2015. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Linda York, Telephone number 806-763-0036. (RE: related document(s) Pre-trial conference held on 3/4/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 41 (Objection / revocation of discharge - 727(c),(d),(e)). (Lippe, Emil) Modified text on 9/7/2010 (Luna, G). filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz).) Appearances: K. Hanks and V. Vital for Creditor/Plaintiffs; D. Elmquist for Intervenor/Plaintiff; D. Olson for Defendants. Nonevidentiary status conference. Court will issue order setting trial for March 17, 2014 at 9:30 am, continuing through March 21, 2014. Parties to upload final Pre-Trial Order by March 14, 2014. (Harden, D.)). Transcript to be made available to the public on 01/20/2015. (Beale, Jennifer) |
| 10/22/2014 | |
| | 184  (225 pgs) Transcript regarding Hearing Held 03/17/14 RE: Trial. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 01/20/2015. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Linda York, Telephone number 806-763-0036. (RE: related document(s) Trial held on 3/17/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature (s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/18/14 at 9:30 am. (Harden, D.)). |

| | |
|---|---|
| 10/22/2014 | Transcript to be made available to the public on 01/20/2015. (Beale, Jennifer) |
| 10/22/2014 | 🔒 ⦿ 185  (261 pgs) Transcript regarding Hearing Held 03/18/14 RE: Trial. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 01/20/2015. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Linda York, Telephone number 806-763-0036. (RE: related document(s) Trial held on 3/18/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature (s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/19/14 at 9:30 am. (Harden, D.)). Transcript to be made available to the public on 01/20/2015. (Beale, Jennifer) |
| 10/22/2014 | 🔒 ⦿ 186  (249 pgs) Transcript regarding Hearing Held 03/19/14 RE: Trial. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 01/20/2015. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Cathy Sosebee, Telephone number 806-763-0036. (RE: related document(s) Trial held on 3/19/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature (s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/20/14 at 9:30 am. (Harden, D.)). Transcript to be made available to the public on 01/20/2015. (Beale, Jennifer) |
| | 🔒 ⦿ 187  (122 pgs) Transcript regarding Hearing Held 03/20/14 RE: |

| | |
|---|---|
| 10/22/2014 | Trial. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 01/20/2015. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Cathy Sosebee, Telephone number 806-763-0036. (RE: related document(s) Trial held on 3/20/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature (s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/21/14 at 9:30 am. (Harden, D.)). Transcript to be made available to the public on 01/20/2015. (Beale, Jennifer) |
| | 188  (215 pgs) Transcript regarding Hearing Held 03/21/14 RE: Trial. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 01/20/2015. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Cathy Sosebee, Telephone number 806-763-0036. (RE: related document(s) Trial held on 3/21/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature (s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial concluded. Court gave bench ruling: (a) revocation of discharge shall be ordered as to the Debtor, pursuant to Section 727(d)(1) & (2) of the Bankruptcy Code, based on fraud and concealment of assets of which Plaintiffs (and Trustee) were unaware until after the granting of discharge, and also based on Debtors acquiring or becoming entitled to acquire property that was or would be property of the estate and knowingly and fraudulently failing to report, deliver and surrender it toTtrustee; (b) The Barclay Group, Inc. and Sunset Pacific are the alter egos of Debtor and their veil should be |

| | |
|---|---|
| 10/22/2014 | pierced; (c) Debtor should turnover previously undisclosed Turkish Bank Account and the equity/asset-control of The Barclay Group, Inc. and Sunset Pacific to Trustee; (d) parties may submit post-trial briefing regarding possible monetary damages to the estate. Counsel will upload an amended restraining order and injunction, as soon as possible, to protect dissipation of Green Auto stock or other assets of The Barclay Group, Inc. and Sunset Pacific. Counsel will subsequently upload proposed Findings of Fact, Conclusions of Law and Judgment that are consistent with the courts oral ruling and otherwise consistent with the evidence. (Harden, D.)). Transcript to be made available to the public on 01/20/2015. (Beale, Jennifer) |
| 11/05/2014 | 🔘 189  (1 pg) Notice of deficiency regarding appeal: exhibits designated for trial, March 17 to March 21, 2014. (RE: related document(s)164 Notice of appeal ) (Blanco, J.) |
| 11/07/2014 | 🔘 190  (2 pgs) BNC certificate of mailing. (RE: related document(s) 189 Notice of deficiency regarding appeal: exhibits designated for trial, March 17 to March 21, 2014. (RE: related document(s)164 Notice of appeal ) (Blanco, J.)) No. of Notices: 2. Notice Date 11/07/2014. (Admin.) |
| 11/18/2014 | (private) Deadlines terminated. Transcript made available to the public. (RE: related document(s)160 Transcript regarding Hearing Held 03/17/14 RE: Trial on Amended Complaint - Testimony of Ronald Katz only. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 11/17/2014. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Linda York, Telephone number 806-763-0036. (RE: related document(s) Trial held on 3/17/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/18/14 at 9:30 am. (Harden, D.)). Transcript to be made available to the public on 11/17/2014.) (Ecker, C.) |

**REFORM, 727OBJ**

# U.S. Bankruptcy Court
## Northern District of Texas (Dallas)
## Bankruptcy Petition #: 09-38820-sgj7
### Internal Use Only

|  |  |
|---|---|
| *Date filed:* | 12/31/2009 |
| *341 meeting:* | 02/09/2010 |
| *Deadline for filing claims:* | 05/13/2010 |
| *Deadline for objecting to discharge:* | 04/12/2010 |

*Assigned to:* Stacey G. Jernigan
Chapter 7
Voluntary
Asset

**Debtor**
**Cengiz J. Comu**
5301 Paladium Drive
Dallas, TX 75254
DALLAS-TX
SSN / ITIN: 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
*aka* **CJ Comu**

represented **Dennis Oliver Olson**
by Olson, Nicoud & Gueck, LLP
1201 Main Street, Suite 2470
Dallas, TX 75202
(214) 979-7300
Fax : (214) 979-7301
Email: denniso@dallas-law.com

**Trustee**
**Diane G. Reed**
501 N. College Street
Waxahachie, TX 75165
(972) 938-7334

represented **David W. Elmquist**
by Reed & Elmquist, P.C.
501 N. College Street
Waxahachie, TX 75165
(972) 938-7339
Fax : (972) 923-0430
Email: delmquist@bcylawyers.com

**Reed & Elmquist, P.C.**
501 N. College Street
Waxahachie, TX 75165
(972) 938-7339
Fax : (972) 923-0430

**U.S. Trustee**
**United States Trustee**
1100 Commerce Street
Room 976
Dallas, TX 75242

000195

214-767-8967

| Filing Date | Docket Text |
|---|---|
| 12/31/2009 | 🔵 1  (11 pgs) Chapter 7 voluntary petition. Fee Amount $299 Filed by Cengiz J. Comu (Olson, Dennis) |
| 12/31/2009 | Receipt of filing fee for Voluntary petition (chapter 7)(09-38820-7) [misc,volp7a] ( 299.00). Receipt number 11197965, amount $ 299.00. (U.S. Treasury) |
| 12/31/2009 | 🔵 4  (2 pgs) First Meeting of Creditors with 341(a) meeting to be held on 02/09/2010 at 10:40 AM at Dallas 341 Rm 524. Objection for discharge due by 04/12/2010. (Olson, Dennis) |
| 12/31/2009 | 🔵 2  (1 pg) Certificate of credit counseling dated 9/8/2009 . Filed by Debtor Cengiz J. Comu. (Olson, Dennis) |
| 12/31/2009 | 3  (1 pg) (private) Form 21 Social Security Number verification. Filed by Debtor Cengiz J. Comu. (Olson, Dennis) |
| 01/04/2010 | 🔵 5  (2 pgs) Notice of deficiency . Schedule A due 1/14/2010. Schedule B due 1/14/2010. Schedule C due 1/14/2010. Schedule D due 1/14/2010. Schedule E due 1/14/2010. Schedule F due 1/14/2010. Schedule G due 1/14/2010. Schedule H due 1/14/2010. Schedule I due 1/14/2010. Schedule J due 1/14/2010. Summary of Schedules and Statistical Summary of Certain Liabilities and Related Data 28 USC sec. 159 due 1/14/2010. Statement of Financial Affairs due 1/14/2010. Employee Income Records due 1/14/2010. (Ward, J) |
| 01/06/2010 | 🔵 6  (3 pgs) BNC certificate of mailing. (RE: related document(s)5 Notice of deficiency . Schedule A due 1/14/2010. Schedule B due 1/14/2010. Schedule C due 1/14/2010. Schedule D due 1/14/2010. Schedule E due 1/14/2010. Schedule F due 1/14/2010. Schedule G due 1/14/2010. Schedule H due 1/14/2010. Schedule I due 1/14/2010. Schedule J due 1/14/2010. Summary of Schedules and Statistical Summary of Certain Liabilities and Related Data 28 USC sec. 159 due 1/14/2010. Statement of Financial Affairs due 1/14/2010. Employee Income Records due 1/14/2010.) No. of Notices: 1. Service Date 01/06/2010. (Admin.) |
| | 🔵 7  (3 pgs) BNC certificate of mailing - meeting of creditors. (RE: |

000196

| | |
|---|---|
| 01/06/2010 | related document(s)4 First Meeting of Creditors with 341(a) meeting to be held on 02/09/2010 at 10:40 AM at Dallas 341 Rm 524. Objection for discharge due by 04/12/2010.) No. of Notices: 15. Service Date 01/06/2010. (Admin.) |
| 01/07/2010 | 8  (1 pg) Notice of deficiency financial management course certificate before discharge. (Admin) |
| 01/10/2010 | 9  (2 pgs) BNC certificate of mailing. (RE: related document(s)8 Notice of deficiency financial management course certificate before discharge.) No. of Notices: 1. Service Date 01/10/2010. (Admin.) |
| 01/15/2010 | 10  (2 pgs) (private) Form order to be routed to judge for signature (RE: related document(s)5 Notice of deficiency . Schedule A due 1/14/2010. Schedule B due 1/14/2010. Schedule C due 1/14/2010. Schedule D due 1/14/2010. Schedule E due 1/14/2010. Schedule F due 1/14/2010. Schedule G due 1/14/2010. Schedule H due 1/14/2010. Schedule I due 1/14/2010. Schedule J due 1/14/2010. Summary of Schedules and Statistical Summary of Certain Liabilities and Related Data 28 USC sec. 159 due 1/14/2010. Statement of Financial Affairs due 1/14/2010. Employee Income Records due 1/14/2010.) (Chambers, Deanna) |
| 01/15/2010 | 11  (22 pgs) Schedules A through J with Summary of Schedules. Filed by Debtor Cengiz J. Comu (RE: related document(s)5 Notice of deficiency). (Olson, Dennis) |
| 01/15/2010 | 12  (8 pgs) Statement of financial affairs . Filed by Debtor Cengiz J. Comu (RE: related document(s)5 Notice of deficiency). (Olson, Dennis) |
| 01/15/2010 | 13  (2 pgs) Statement of intent. . Filed by Debtor Cengiz J. Comu. (Olson, Dennis) |
| 01/15/2010 | 14  (8 pgs) Chapter 7 statement of current monthly income and means test calculation - Form 22A . Filed by Debtor Cengiz J. Comu. (Olson, Dennis) |
| | Employee income statement regarding pay advices 11 USC sec. 521. Debtor is self-employed and is unable to provide copies of pay stubs from 60 days prior to petition date. Name of business: The Barclay Group Inc.. Gross amount of income minus expenses for 60 |

| | |
|---|---|
| 01/15/2010 | days is $5000.00. Filed by Debtor Cengiz J. Comu (RE: related document(s)5 Notice of deficiency). (Olson, Dennis) |
| 01/28/2010 | 🔘 15 (1 pg) Notice of Appearance and Request for Notice Filed by Creditor Recovery Management Systems Corporation. (Singh, Rameshwar) |
| 01/28/2010 | 🔘 16 (3 pgs) Notice of Appearance and Request for Notice by Emil Lippe Jr. filed by Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 02/12/2010 | 🔘 17 (2 pgs; 2 docs) Meeting of creditors held and concluded 2/9/2010. The case trustee has determined that there are assets in this case. (RE: related document(s)4 First Meeting of Creditors with 341(a) meeting to be held on 02/09/2010 at 10:40 AM at Dallas 341 Rm 524. Objection for discharge due by 04/12/2010.) Proofs of Claims due by 5/13/2010. (Reed, Diane) |
| 02/18/2010 | 🔘 18 (5 pgs) BNC certificate of mailing. (RE: related document(s)17 Meeting of creditors held and concluded 2/9/2010. The case trustee has determined that there are assets in this case. (RE: related document(s)4 First Meeting of Creditors with 341(a) meeting to be held on 02/09/2010 at 10:40 AM at Dallas 341 Rm 524. Objection for discharge due by 04/12/2010.) Proofs of Claims due by 5/13/2010.) No. of Notices: 18. Service Date 02/18/2010. (Admin.) (Entered: 02/19/2010) |
| 03/29/2010 | 🔘 19 (1 pg) Notice of deficiency financial management course certificate before discharge. (Admin) |
| 04/01/2010 | 🔘 20 (2 pgs) BNC certificate of mailing. (RE: related document(s)19 Notice of deficiency financial management course certificate before discharge.) No. of Notices: 1. Service Date 04/01/2010. (Admin.) |
| 04/07/2010 | 🔘 21 (1 pg) Financial management course certificate filed by Debtor Cengiz J. Comu. (Olson, Dennis) |
| 04/09/2010 | 🔘 22 (6 pgs) Adversary case 10-03068. Complaint by FIA Card Services, N.A. against Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 62 (Dischargeability - 523(a)(2), false pretenses, false representation, actual fraud). (Gill, Kelly) |

| | |
|---|---|
| 04/14/2010 | 23 (2 pgs) Order discharging debtor(s) (Admin.) |
| 04/17/2010 | 24 (3 pgs) BNC certificate of mailing - order of discharge. (RE: related document(s)23 Order discharging debtor(s)) No. of Notices: 21. Service Date 04/17/2010. (Admin.) |
| 05/05/2010 | 25 (7 pgs) Trustee's interim report for the period ending: 03/31/2010. Projected date of filing final report: 05/31/2011 (Reed, Diane) |
| 06/02/2010 | Adversary case 3:10-ap-3068 closed (Chambers, Deanna) |
| 09/03/2010 | 26 (7 pgs) Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 41 (Objection / revocation of discharge - 727(c),(d),(e)). (Lippe, Emil) Modified text on 9/7/2010 (Luna, G). |
| 11/01/2010 | (private) Request for interim report sent to UST. (Admin) |
| 12/01/2010 | (private) Request for interim report sent to UST. (Admin) |
| 01/04/2011 | 27 (1 pg) Clerk's correspondence requesting Interim Report from Trustee. Responses due by 2/3/2011. (Chambers, Deanna) |
| 02/01/2011 | (private) Request for interim report sent to UST. (Admin) |
| 02/07/2011 | 28 (1 pg) Clerk's correspondence requesting Interim Report from Trustee. Responses due by 3/9/2011. (Chambers, Deanna) |
| 02/14/2011 | 29 (7 pgs) Trustee's interim report for the period ending: 2/14/11. Projected date of filing final report: 12/31/11 *Trustee is holding the estate open because an adversary proceeding has been filed for revocation of discharge, in which allegations have been made that the Debtor is the true legal owner of additional assets. Trustee will want to administer these assets if, in fact, they belong to the estate. Hearing is set 2/14/11 on Debtor's Rule 12(b)(6) motion to dismiss.* (Reed, Diane) |
| 03/09/2011 | 30 (8 pgs) Application to employ Reed & Elmquist, P.C. as Attorney Filed by Trustee Diane G. Reed (Reed, Diane) |

| | |
|---|---|
| 03/09/2011 | ⚫ Proposed order regarding employment of counsel (RE: related document(s)30 Application to employ Reed & Elmquist, P.C. as Attorney Filed by Trustee Diane G. Reed). Document uploaded on 3/9/2011 (Ref-ID: 1299618260855_190). (Reed, Diane) |
| 03/14/2011 | ⚫ 31  (2 pgs) Order granting application to employ Reed & Elmquist as Attorney for the Trustee (related document # 30) Entered on 3/14/2011. (Mathews, M.) |
| 04/28/2011 | ⚫ 32  (7 pgs) Trustee's interim report for the period ending: 3/31/11. Projected date of filing final report: 06/30/12 *The Trustee is holding the estate open because an adversary proceeding has been filed for revocation of the Debtors' discharge in which allegations have been made that the Debtor has made fraudulent transfers. If the Trustee does intervene, it will delay conclusion of the case beyond the TFR date indicated. The Trustee has not yet decided to intervene in the action. Debtor wishes to purchase from the Trustee certain assets of the estate.* (Reed, Diane) |
| 09/01/2011 | (private) Request for interim report sent to UST. (Admin) |
| 09/30/2011 | ⚫ 33  (7 pgs) Trustee's interim report for the period ending: 9/30/11. Projected date of filing final report: 6/30/12 *The Trustee is holding the estate open because an adversary proceeding has been filed for revocation of the Debtors' discharge in which allegations have been made that the Debtor has made fraudulent transfers. This adversary was recently abated. If the Trustee does intervene, it will delay conclusion of the case beyond the TFR date indicated. The Trustee has not yet decided to intervene in the action. Debtor wishes to purchase from the Trustee certain assets of the estate.* (Reed, Diane) |
| 10/24/2011 | ⚫ 34  (3 pgs) Motion for 2004 examination of Cengiz J. Comu. Filed by Trustee Diane G. Reed (Elmquist, David) |
| 10/24/2011 | ⚫ Proposed order regarding 2004 Examination of Cengiz J. Comu (Agreed) (RE: related document(s)34 Motion for 2004 examination of Cengiz J. Comu. Filed by Trustee Diane G. Reed). Document uploaded on 10/24/2011 (Ref-ID: 1319247307308_231). (Elmquist, David) |
| | ⚫ 35  (2 pgs) Agreed Order granting unopposed motion for 2004 examination of Cengiz J. Comu (related doc # 34) Entered on |

| | |
|---|---|
| 10/26/2011 | 10/26/2011. (Mathews, M.) |
| 02/01/2012 | (private) Request for interim report sent to UST. (Admin) |
| 02/28/2012 | 🔘 36  (7 pgs) Trustee's interim report for the period ending: 2/28/12. Projected date of filing final report: 12/31/12 *The Trustee is evaluating whether to intervene in an adversary proceeding filed for revocation of the Debtor's discharge and in which fraudulent transfer claims have been asserted. The Trustee is also investigating other potential assets to recover and liquidate for the benefit of creditors and anticipates filing one or more adversary proceedings to recover these assets. The Trustee intends to sell certain stock issued to the Debtor.* (Reed, Diane) |
| 02/29/2012 | 🔘 37  (8 pgs) Trustee's interim report for the period ending: 2/29/12. Projected date of filing final report: 12/31/12 *The Trustee is evaluating whether to intervene in an adversary proceeding filed for revocation of the Debtor's discharge and in which fraudulent transfer claims have been asserted. The Trustee is also investigating other potential assets to recover and liquidate for the benefit of creditors and anticipates filing one or more adversary proceedings to recover these assets. The Trustee intends to sell certain stock issued to the Debtor.* (Reed, Diane) |
| 03/22/2012 | 🔘 38  (22 pgs) Application to employ Davidoff Malito & Hutcher LLP and Lippe & Associates as Special Counsel *on contingent fee basis* Filed by Trustee Diane G. Reed (Elmquist, David) |
| 04/13/2012 | 🔘 39  (3 pgs) Response opposed to (related document(s): 38 Application to employ Davidoff Malito & Hutcher LLP and Lippe & Associates as Special Counsel *on contingent fee basis* filed by Trustee Diane G. Reed) filed by Debtor Cengiz J. Comu. (Olson, Dennis) |
| 04/13/2012 | 🔘 40  (2 pgs) Notice of hearing filed by Trustee Diane G. Reed (RE: related document(s)38 Application to employ Davidoff Malito & Hutcher LLP and Lippe & Associates as Special Counsel *on contingent fee basis* Filed by Trustee Diane G. Reed, 39 Response opposed to (related document(s): 38 Application to employ Davidoff Malito & Hutcher LLP and Lippe & Associates as Special Counsel *on contingent fee basis* filed by Trustee Diane G. Reed) filed by Debtor Cengiz J. Comu.). Hearing to be held on 5/2/2012 at 02:30 PM Dallas Judge Jernigan Ctrm for 38 and for 39, (Elmquist, David) |

000201

| 04/23/2012 | 🔘 41  (2 pgs) Withdrawal filed by Trustee Diane G. Reed (RE: related document(s)38 Application to employ Davidoff Malito & Hutcher LLP and Lippe & Associates as Special Counsel *on contingent fee basis*). (Elmquist, David) |
|---|---|
| 04/24/2012 | (private) Motions terminated per withdrawal 41. (RE: related document(s)38 Application to employ Davidoff Malito & Hutcher LLP and Lippe & Associates as Special Counsel *on contingent fee basis* Filed by Trustee Diane G. Reed) (Bibbs, P.) |
| 05/01/2012 | 🔘 42  (8 pgs) Trustee's interim report for the period ending: 3/31/12. Projected date of filing final report: 12/31/12 *The Trustee has employed special counsel to intervene in an adversary proceeding filed by one of the Debtor's creditors to, among other things, revoke the Debtor's discharge. The Trustee intends to sell certain publicly-traded stock issued to the Debtor.* (Reed, Diane) |
| 08/02/2012 | 🔘 43  (4 pgs) Trustee's Motion for 2004 examination of Phyllis Comu. Filed by Trustee Diane G. Reed (Elmquist, David) |
| 08/02/2012 | 🔘 Proposed order regarding Rule 2004 examination of Phyllis Comu *[Agreed]* (RE: related document(s)43 Trustee's Motion for 2004 examination of Phyllis Comu. Filed by Trustee Diane G. Reed). Document uploaded on 8/2/2012 (Ref-ID: 1339592149367_11620). (Elmquist, David) |
| 08/02/2012 | 🔘 44  (4 pgs) Trustee's Motion for 2004 examination of Alvin Dahl, CPA. Filed by Trustee Diane G. Reed (Elmquist, David) |
| 08/02/2012 | 🔘 Proposed order regarding Rule 2004 examination of Alvin Dahl, CPA *[Agreed]* (RE: related document(s)44 Trustee's Motion for 2004 examination of Alvin Dahl, CPA. Filed by Trustee Diane G. Reed). Document uploaded on 8/2/2012 (Ref-ID: 1339592149367_11622). (Elmquist, David) |
| 08/06/2012 | 🔘 45  (2 pgs) Agreed order granting motion for 2004 examination of Phyllis Comu (related doc # 43) Entered on 8/6/2012. (Anderson, Brian) |
| 08/06/2012 | 🔘 46  (2 pgs) Agreed order granting motion for 2004 examination for Alvin Dahl, CPA (related doc # 44) Entered on 8/6/2012. (Anderson, Brian) |

| | |
|---|---|
| 08/09/2012 | 47  (4 pgs) Motion for 2004 examination of David Parsley. Filed by Trustee Diane G. Reed (Elmquist, David) |
| 08/09/2012 | Proposed order regarding Rule 2004 examination of David Parsley *[Agreed]* (RE: related document(s)47 Motion for 2004 examination of David Parsley. Filed by Trustee Diane G. Reed). Document uploaded on 8/9/2012 (Ref-ID: 1339592149367_13169). (Elmquist, David) |
| 08/09/2012 | 48  (2 pgs) Agreed Order granting motion for 2004 examination (related doc # 47) Entered on 8/9/2012. (Mathews, M.) |
| 09/01/2012 | (private) Request for interim report sent to UST. (Admin) |
| 09/20/2012 | 49  (8 pgs) Trustee's interim report for the period ending: 9/20/12. Projected date of filing final report: 12/31/13 *The Trustee has recently intervened in an adversary proceeding filed by one of the Debtor's creditors asserting causes of action for declaratory judgment, reverse corporate veil piercing, and turnover of property of the estate against the debtor and certain of his affiliates. The parties to this adversary have requested that trial be set in July 2013.* (Reed, Diane) |
| 01/17/2013 | 50  (3 pgs; 2 docs) Assignment/Transfer of claim. Transfer Agreement 3001 (e) 2 Transferor: Recovery Management Systems Corporation (Claim No. 5) To Midland Funding LLC To Midland Funding LLCBy its authorized agent Recoser, LLC25 SE 2nd Ave, Suite 1120Miami, FL 33131-1605 Filed by Creditor Recovery Management Systems Corporation. (Singh, Rameshwar) |
| 01/20/2013 | 51  (3 pgs) BNC certificate of mailing. (RE: related document(s)50 Assignment/Transfer of claim. Transfer Agreement 3001) No. of Notices: 0. Notice Date 01/20/2013. (Admin.) (Entered: 01/21/2013) |
| 02/01/2013 | (private) Request for interim report sent to UST. (Admin) |
| 02/13/2013 | 52  (8 pgs) Trustee's interim report for the period ending: 2/13/13. Projected date of filing final report: 12/31/13 *The Trustee has intervened in an adversary proceeding filed by one of the Debtor's creditors asserting causes of action for declaratory judgment, reverse corporate veil piercing, and turnover of property of the estate against the debtor and certain of his affiliates, and discovery has commenced. This adversary is set for trial in July 2013.* (Reed, Diane) |

000203

| | |
|---|---|
| 04/10/2013 | 53 (2 pgs; 2 docs) Assignment/Transfer of claim. Transfer Agreement 3001 (e) 2 Transferor: Capital One Bank -USA, N.A. (Claim No. 6) To Capital One Bank (USA), N.A. To Capital One Bank (USA), N.A.by American InfoSource LP as agentPO Box 71083Charlotte, NC 28272-1083 Filed by Creditor Capital One Bank (USA), N.A. by American InfoSource LP as agent. (Walls, Lovetta) |
| 04/10/2013 | 54 (2 pgs; 2 docs) Assignment/Transfer of claim. Transfer Agreement 3001 (e) 2 Transferor: Capital One Bank -USA, N.A. (Claim No. 7) To Capital One Bank (USA), N.A. To Capital One Bank (USA), N.A.by American InfoSource LP as agentPO Box 71083Charlotte, NC 28272-1083 Filed by Creditor Capital One Bank (USA), N.A. by American InfoSource LP as agent. (Walls, Lovetta) |
| 04/13/2013 | 55 (3 pgs) BNC certificate of mailing. (RE: related document(s)53 Assignment/Transfer of claim. Transfer Agreement 3001 (e) 2 Transferor: Capital One Bank -USA, N.A. (Claim No. 6) To Capital One Bank (USA), N.A. To Capital One Bank (USA), N.A.by American InfoSource LP as agentPO Box 71083Charlotte, NC 28272-1083 Filed by Creditor Capital One Bank (USA), N.A. by American InfoSource LP as agent.) No. of Notices: 0. Notice Date 04/13/2013. (Admin.) (Entered: 04/14/2013) |
| 04/13/2013 | 56 (3 pgs) BNC certificate of mailing. (RE: related document(s)54 Assignment/Transfer of claim. Transfer Agreement 3001 (e) 2 Transferor: Capital One Bank -USA, N.A. (Claim No. 7) To Capital One Bank (USA), N.A. To Capital One Bank (USA), N.A.by American InfoSource LP as agentPO Box 71083Charlotte, NC 28272-1083 Filed by Creditor Capital One Bank (USA), N.A. by American InfoSource LP as agent.) No. of Notices: 0. Notice Date 04/13/2013. (Admin.) (Entered: 04/14/2013) |
| 04/29/2013 | 57 (7 pgs) Trustee's interim report for the period ending: 3/31/13. Projected date of filing final report: 12/31/13 *The Trustee has intervened in an adversary proceeding filed by one of the Debtor's creditors asserting causes of action for declaratory judgment, reverse corporate veil piercing, and turnover of property of the estate against the debtor and certain of his affiliates, and discovery is ongoing. This adversary is set for trial in July 2013.* (Reed, Diane) |
| | 58 (4 pgs) Notice of Appearance and Request for Notice *and Service of All Papers* by Shari L. Heyen filed by Ronald Katz, King |

| | |
|---|---|
| 05/22/2013 | Louie Enterprises, LLC, King Louie Mining, LLC. (Heyen, Shari) |
| 09/01/2013 | (private) Request for interim report sent to UST. (Admin) |
| 09/18/2013 | 59  (7 pgs) Trustee's interim report for the period ending: 9/17/13. Projected date of filing final report: 4/30/14 *Trustee has intervened in an adversary proceeding filed by one of the debtor's creditors. The Trustee has asserted causes of action against the debtor and certain of his affiliates for declaratory judgment, corporate veil-piercing and turnover of property of the estate. The adversary is set for trial in December 2013.* (Reed, Diane) |
| 12/18/2013 | 60  (5 pgs) Motion for leave *to Open Stock Brokerage Account and Approve Payment of Administrative Expenses* Filed by Trustee Diane G. Reed Objections due by 1/13/2014. (Elmquist, David) |
| 12/18/2013 | 61  (5 pgs) Application for administrative expenses *(open stock brokerage account and approve payment of administrative expense)* Filed by Trustee Diane G. Reed Objections due by 1/13/2014. (Elmquist, David) |
| 01/14/2014 | 62  (1 pg) Certificate of No Objection filed by Trustee Diane G. Reed (RE: related document(s)60 Motion for leave *to Open Stock Brokerage Account and Approve Payment of Administrative Expenses*, 61 Application for administrative expenses *(open stock brokerage account and approve payment of administrative expense)*). (Elmquist, David) |
| 01/15/2014 | 63  (2 pgs) Order granting motion to open stock brokerage account (related document # 60), granting application for administrative expenses (related document # 61) Entered on 1/15/2014. (Rielly, Bill) |
| 01/17/2014 | 64  (13 pgs) Application to employ Baker & McKenzie LLP as Special Counsel *for Securities Matters* Filed by Trustee Diane G. Reed (Elmquist, David) |
| 01/17/2014 | 65  (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)63 Order granting motion to open stock brokerage account (related document 60), granting application for administrative expenses (related document 61) Entered on 1/15/2014.) No. of Notices: 1. Notice Date 01/17/2014. (Admin.) |

| | |
|---|---|
| 02/01/2014 | (private) Request for interim report sent to UST. (Admin) |
| 02/11/2014 | 🔘 66 (1 pg) Certificate of No Objection filed by Trustee Diane G. Reed (RE: related document(s)64 Application to employ Baker & McKenzie LLP as Special Counsel *for Securities Matters*). (Elmquist, David) |
| 02/11/2014 | 🔘 67 (2 pgs) Order granting application to employ Baker & McKenzie LLP as Special Counsel (related document # 64) Entered on 2/11/2014. (Rielly, Bill) |
| 02/13/2014 | 🔘 68 (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)67 Order granting application to employ Baker & McKenzie LLP as Special Counsel (related document 64) Entered on 2/11/2014.) No. of Notices: 1. Notice Date 02/13/2014. (Admin.) |
| 02/28/2014 | 🔘 69 (7 pgs) Trustee's interim report for the period ending: 2/7/14. Projected date of filing final report: 9/30/14 *Trustee is currently holding $11,383.98 from liquidation of estate assets. The Trustee has intervened in an adversary proceeding filed by one of the debtor's creditors. The Trustee has asserted causes of action against the debtor and certain of his affiliates for declaratory judgment, corporate veil-piercing and turnover of property of the estate. The adversary is set for trial in March 2014.. Application to employ special counsel was filed on January 17, 2014. Trustee is holding stock which was initially restricted and not property of the estate. The restriction has recently expired and Debtor has agreed to Trustee's sale of the stock. Trustee has sought and obtained an order of the Court allowing Trustee to open a brokerage account for the sale of this stock; however, the price of the stock is currently so severely depressed that Trustee and the primary creditor of the estate believe it is prudent to hold the stock and see whether there is any recovery of the value before liquidating.* (Reed, Diane) |
| 06/24/2014 | 🔘 70 (13 pgs) Application for compensation *(first interim)* for Baker & McKenzie LLP, Special Counsel, Period: 1/17/2014 to 4/30/2014, Fee: $5,160.00, Expenses: $0.00. Filed by Spec. Counsel Baker & McKenzie LLP Objections due by 7/18/2014. (Elmquist, David) |
| | 🔘 71 (3 pgs) Notice *of Filing* filed by Trustee Diane G. Reed (RE: related document(s)70 Application for compensation *(first interim)* for Baker & McKenzie LLP, Special Counsel, Period: 1/17/2014 to |

| 06/24/2014 | 4/30/2014, Fee: $5,160.00, Expenses: $0.00. Filed by Spec. Counsel Baker & McKenzie LLP Objections due by 7/18/2014.). (Elmquist, David) |
| --- | --- |
| 07/01/2014 | (private) Request for interim report sent to UST. (Admin) |
| 07/16/2014 | 🔵 72  (5 pgs) Application to employ Brunson & Associates, Inc. as Auctioneer Filed by Trustee Diane G. Reed (Elmquist, David) |
| 07/16/2014 | 🔵 73  (7 pgs) Trustee's interim report for the period ending: 7/16/14. Projected date of filing final report: 6/30/16 *Trustee is currently holding $37,281.45 from liquidation of estate assets. The Trustee and the principal creditors in the case, Ronald Katz and King Louie Mining, tried to judgment an action against the Debtor. The final judgment was entered July 8, 2014, awarding judgment to the Trustee in the amount of $5,858,778, and the Bankruptcy Court has directed the turnover of various assets held by the Debtor and the Debtor's wife. The recovery in this lawsuit will involve the liquidation of significant assets held by the Debtor and companies under the Debtor's control. Once all of these assets are liquidated or distributed in kind, the Trustee's accountant will prepare and file a final tax return; the Trustee and her professionals will file final fee applications; and the Trustee will proceed to close the case.* (Reed, Diane) |
| 07/21/2014 | 🔵 74  (1 pg) Certificate of No Objection filed by Trustee Diane G. Reed (RE: related document(s)70 Application for compensation *(first interim)* for Baker & McKenzie LLP, Special Counsel, Period: 1/17/2014 to 4/30/2014, Fee: $5,160.00, Expenses: $0.00.). (Elmquist, David) |
| 07/24/2014 | 🔵 75  (4 pgs) Adversary Judgment Entered on 7/24/2014. (Chambers, Deanna) |
| 07/24/2014 | 🔵 76  (4 pgs) Order vacating discharge order per Judgment on Adversary. Entered on 7/24/2014. (Chambers, Deanna) |
| 07/24/2014 | 🔵  Adversary case 3:10-ap-3269 closed (Chambers, Deanna) |
| 07/26/2014 | 🔵 77  (6 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)75 Adversary Judgment Entered on 7/24/2014.) No. of Notices: 27. Notice Date 07/26/2014. (Admin.) |

| | |
|---|---|
| 07/26/2014 | 78  (6 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)76 Order vacating discharge order per Judgment on Adversary. Entered on 7/24/2014.) No. of Notices: 27. Notice Date 07/26/2014. (Admin.) |
| 07/30/2014 | 79  (7 pgs) Trustee's interim report for the period ending: 6/30/14. Projected date of filing final report: 6/30/16 *Trustee is currently holding $37,281.45 from liquidation of estate assets. The Trustee and the principal creditors in the case, Ronald Katz and King Louie Mining, tried to judgment an action against the Debtor. The final judgment was entered July 8, 2014, awarding judgment to the Trustee in the amount of $5,858,778, and the Bankruptcy Court has directed the turnover of various assets held by the Debtor and the Debtor's wife. The recovery in this lawsuit will involve the liquidation of significant assets held by the Debtor and companies under the Debtor's control. Once all of these assets are liquidated or distributed in kind, the Trustee's accountant will prepare and file a final tax return; the Trustee and her professionals will file final fee applications; and the Trustee will proceed to close the case.* (Reed, Diane) |
| 08/01/2014 | 80  (2 pgs) Order granting application for compensation (related document # 70) granting for Baker & McKenzie LLP, fees awarded: $5160.00, expenses awarded: $0.00 Entered on 8/1/2014. (Ecker, C.) |
| 08/03/2014 | 81  (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)80 Order granting application for compensation (related document 70) granting for Baker & McKenzie LLP, fees awarded: $5160.00, expenses awarded: $0.00 Entered on 8/1/2014. (Ecker, C.)) No. of Notices: 1. Notice Date 08/03/2014. (Admin.) |
| | 82  (375 pgs; 14 docs) Application for compensation *Creditors' Application for Attorneys' Fees and Expenses Awarded in the Court's July 8, 2014 Judgment Entered in Adversary Proceeding No. 10-03269-sgj* for Shari L. Heyen, Creditor's Attorney, Period: 1/1/2010 to 7/31/2014, Fee: $959,281.97, Expenses: $132,766.50. Filed by Attorney Shari L. Heyen (Attachments: # 1 Affidavit Ex 1 - Affidavit of Kendyl T. Hanks in Support of Creditors' Application for Attorneys' Fees & Expenses Awarded in the Court's July 8, 2014 Judgment Entered in Adversary Proceeding No. 10-03269-sgj # 2 Exhibit A to Affidavit - Professional Bios # 3 Exhibit B to Affidavit - Summary of Creditors' Fees & Expenses # 4 Exhibit C Part 1 - Redacted GT |

| | |
|---|---|
| 08/05/2014 | Invoices # 5 Exhibit C Part 2 - Redacted GT Invoices # 6 Exhibit C Part 3 - Redacted GT Invoices # 7 Exhibit C Part 4 - Redacted GT Invoices # 8 Exhibit C Part 5 - Redacted GT Invoices # 9 Exhibit C Part 6 - Redacted GT Invoices # 10 Exhibit D - Redacted Third Party Invoices # 11 Exhibit E - Redacted Wander Invoices # 12 Exhibit F - Bio of David H Wander # 13 Exhibit 2 - Plaintiffs' Preliminary Application for Attorneys' Fees & Expenses Awarded in the Court's July 8, 2014 Judgment filed on 7-30-14 (DOC. 153) in Adversary No. 10-03269-sgj) (Heyen, Shari) |
| 08/12/2014 | 83 (1 pg) Certificate of No Objection filed by Trustee Diane G. Reed (RE: related document(s)72 Application to employ Brunson & Associates, Inc. as Auctioneer ). (Elmquist, David) |
| 08/20/2014 | 84 (2 pgs) Order granting application to employ Brunson & Associates, Inc. as Auctioneer/Liquidator (related document # 72) Entered on 8/20/2014. (Rielly, Bill) |
| 08/22/2014 | 85 (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)84 Order granting application to employ Brunson & Associates, Inc. as Auctioneer/Liquidator (related document 72) Entered on 8/20/2014.) No. of Notices: 1. Notice Date 08/22/2014. (Admin.) |
| 09/25/2014 | 86 (5 pgs) Motion to sell property under Section 363(b) *(vehicle)* Filed by Trustee Diane G. Reed Objections due by 10/20/2014. (Elmquist, David) |
| | 87 (7 pgs) Trustee's interim report for the period ending: 10/09/14. Projected date of filing final report: 06/30/16 *The Trustee is currently holding $40,599.72 from liquidation of estate assets. The Trustee and the principal creditors in the case, Ronald Katz and King Louie Mining, tried to judgment an action against the Debtor. The final judgment was entered July 8, 2014, awarding judgment to the Trustee in the amount of $5,858,778, and the Bankruptcy Court has directed the turnover of various assets held by the Debtor and the Debtor's wife. The recovery in this lawsuit will involve the liquidation of significant assets held by the Debtor and companies under the Debtor's control. Once all of these assets are liquidated or distributed in kind, the Trustee's accountant will prepare and file a final tax return; the Trustee and her professionals will file final fee applications; and the Trustee will proceed to close the case.* (Reed, |

| 10/09/2014 | Diane) |
|---|---|
| 10/09/2014 | 🌐 88 (7 pgs) Amended Trustee's interim report for the period ending: 10/09/14. Projected date of filing final report: 6/30/16 *The Trustee is currently holding $34,460.83 from liquidation of estate assets. The Trustee and the principal creditors in the case, Ronald Katz and King Louie Mining, tried to judgment an action against the Debtor. The final judgment was entered July 8, 2014, awarding judgment to the Trustee in the amount of $5,858,778, and the Bankruptcy Court has directed the turnover of various assets held by the Debtor and the Debtor's wife. The recovery in this lawsuit will involve the liquidation of significant assets held by the Debtor and companies under the Debtor's control. Once all of these assets are liquidated or distributed in kind, the Trustee's accountant will prepare and file a final tax return; the Trustee and her professionals will file final fee applications; and the Trustee will proceed to close the case.* (Reed, Diane) |
| 10/22/2014 | 🌐 89 (1 pg) Certificate of No Objection filed by Trustee Diane G. Reed (RE: related document(s)86 Motion to sell property under Section 363(b) *(vehicle)*). (Elmquist, David) |
| 10/24/2014 | 🌐 90 (2 pgs) Order granting motion to sell (related document # 86) Entered on 10/24/2014. (Rielly, Bill) |
| 10/26/2014 | 🌐 91 (3 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)90 Order granting motion to sell (related document 86) Entered on 10/24/2014.) No. of Notices: 1. Notice Date 10/26/2014. (Admin.) |

000210