UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | | |
|---|---|---|
| In Re: Cengiz J. Comu | Debtor | § Case No. 09-38820 SGJ7 |
| Cengiz J. Comu, et al | | § |
| | Appellant | § |
| vs. | | § 10-03269 |
| King Louie Mining, LLC, et al | | § |
| | Appellee | § |

**148 Judgment revoking discharge of debtor Entered 7/8/14**
**VOLUME 2**
**APPELLANT RECORD**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |

| | | |
|---|---|---|
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-plaintiff and | § | |
|     Third-party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CENGIZ J. COMU, | § | |
|     Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| PHYLLIS E. COMU, | § | |
| BERNARD D. BROWN, | § | |
| THE BARCLAY GROUP, INC. AND | § | |
| SUNSET PACIFIC, L.P., | § | |
|     Third-party Defendants. | § | |

*I XIDEX*

---

**APPELLANT'S FIRST AMENDED DESIGNATION**
**OF RECORD AND ISSUES ON APPEAL**                 **Page 1**

## APPELLANT'S FIRST AMENDED DESIGNATION OF RECORD
## AND ISSUES ON APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Cengiz J. Comu, Appellant, and files this his First Amended Designation of Record and Issues on Appeal for the Judgment entered July 8, 2014 [Document No. 148] as follows:

I.    Appellant designates the following documents from the docket sheet in Adversary Case No. 10-03269 for the Record on Appeal:

[Intentionally left blank]

| Filing Date | # | Docket Text |
|---|---|---|
| 08/27/2014 | 164 | Notice of appeal . Fee Amount $298 filed by Defendant Cengiz J. Comu (RE: related document(s)148 Judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Related document(s) 20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 53 Intervenor complaint filed by Intervenor-Plaintiff Diane G. Reed)). Appellant Designation due by 9/10/2014. (Moroles, D.) |
| 07/08/2014 | 148 | Judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Related document(s) 20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 53 Intervenor complaint filed by Intervenor-Plaintiff Diane G. Reed) (Rielly, Bill). |
| 07/08/2014 | 147 | Findings of fact and conclusions of law in support of judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Rielly, Bill) |
| 09/09/2014 | | Docket Sheet |
| 10/07/2010 | 5 | Motion to dismiss adversary proceeding*Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6)* filed by Defendant Cengiz J. Comu (Olson, Dennis) |
| 11/08/2010 | 8 | Motion for leave *to Amend* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/29/2010. (Attachments: 1 First Amended Complaint2 Exhibit A3 Exhibit B4 Exhibit C) (Lippe, Emil) |
| 11/08/2010 | 9 | Response opposed to (related document(s): 5 Motion to dismiss adversary proceeding*Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 01/10/2011 | 10 | Order denying motion to dismiss adversary proceeding as moot (related document # 5), granting motion for leave to amend complaint(related document # 8) Entered on 1/10/2011. Case is removed from docket for week of January 11, 2011. Counsel ORDERED to confer and submit proposed amended scheduling order for the trial of this case, to be submitted within 10 days from date of this Order. (Mathews, M.) |

*Vol. 2*
*000211*

*000215*

*000263*

*000273*

Vol. 2

| | | | |
|---|---|---|---|
| 006275 | 01/20/2011 | 12 | Motion to dismiss adversary proceeding*(SECOND)* filed by Defendant Cengiz J. Comu (Olson, Dennis) |
| 000279 | 02/11/2011 | 16 | Response opposed to (related document(s): 12 Motion to dismiss adversary proceeding*(SECOND)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 000287 | 02/24/2011 | 17 | Order conditionally denying second motion to dismiss adversary proceeding (related document # 12) Entered on 2/24/2011. Plaintiffs are ORDERED to file amended complaint within 20 days of entry of this order. Defedant is ORDERED to file an answeror responsive pleading within 20 days of filing of the amended complaint. (Mathews, M.) |
| 000290 | 03/02/2011 | 19 | Motion for leave *to Prosecute Action* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 3/23/2011. (Lippe, Emil) |
| 000293 | 03/02/2011 | 20 | Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature. filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Attachments: 1 Exhibit A2 Exhibit B) (Lippe, Emil) |
| 000340 | 03/23/2011 | 23 | Order denying motion for leave to prosecute action without prejudice (related document # 19) Entered on 3/23/2011. (Simpson, B) |
| 000342 | 03/24/2011 | 24 | Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu (Olson, Dennis) |
| 000345 | 04/19/2011 | 28 | Agreed Order granting 27 Motion to extend time to file response to motion to dismiss until 4/28/2011. Entered on 4/19/2011. (Simpson, B) |
| 000347 | 04/28/2011 | 30 | Response opposed to (related document(s): 24 Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 000357 | 05/04/2011 | 31 | Motion to continue hearing on (related documents 20 Amended complaint, 24 Motion to dismiss adversary proceeding)*[Unopposed]* filed by Interested Party Diane G. Reed, Trustee (Elmquist, David) |
| 000361 | 05/06/2011 | 32 | Order granting motion to continue hearing on (related document # 31) (related documents Motion to dismiss adversary proceeding*(THIRD)* and 20 Amended Complaint) Entered on 5/6/2011. *Hearing to be held on 7/11/2011 at 10:30 AM Dallas Judge Jernigan Ctrm for 24, Trial Docket Call date reset for 9/12/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Mathews, M.) Modified text on 5/6/2011 (Mathews, M.).* |
| 000363 | 07/06/2011 | 36 | Second Motion to continue hearing on (related documents 20 Amended complaint, 24 Motion to dismiss adversary proceeding)*[unopposed]* filed by Interested Party Diane G. Reed, Trustee (Elmquist, David) |

*Vol. 2*

| | 07/08/2011 | 37 | Order granting second unopposed motion to continue hearing on (related document # 36) (related documents Amended complaint, Motion to dismiss adversary proceeding*(THIRD)*) Entered on 7/8/2011. Hearing to be held on 9/15/2011 at 09:30 AM Dallas Judge Jernigan Ctrm for 24 Third motion to dismiss and for Trial Docket Call date set for 12/12/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. Further conditions per Order. (Mathews, M.) |
|---|---|---|---|
| 000367 | | | |
| 000369 | 08/24/2011 | 39 | Agreed Motion to Abate Adversary Proceeding (related document(s)1 Complaint) Filed by Interested Party Diane G. Reed (Elmquist, David) Modified TEXT on 8/25/2011 (Blanco, J.). |
| 000374 | 08/31/2011 | 40 | Agreed Order granting motion to abate adversary proceeding (related document # 39) Entered on 8/31/2011. (Mathews, M.) |
| 000377 | 05/24/2012 | 48 | Supplemental Order granting agreed motion to abate adversary proceeding including any hearing on the motion to dismiss, abated until August 1, 2012 further conditions per order (related document # 39 agreed motion to abate ) Entered on 5/24/2012. (Moroles, D.) |
| 000379 | 08/07/2012 | 50 | Order terminating abatement of adversary proceeding and requiring: (A) Trustee's Complaint in Intervention to be filed by August 31, 2012; and (B) parties to upload Agreed Scheduling Order, or in the alternative, Court will enter its own Scheduling Order (related document # 39) Entered on 8/7/2012. Further details per Order. (Mathews, M.) |
| 000381 | 09/05/2012 | 53 | Intervenor complaint by Diane G. Reed against Sunset Pacific, L.P., The Barclay Group, Inc., Bernard D Brown, Phyllis E Comu, Cengiz J. Comu. (Elmquist, David) |
| 000395 | 09/06/2012 | 54 | Order granting Trustee's Unopposed Motion to Extend Deadline to File a Complaint in Intervention 52 Motion to extend time. Ordered that the deadline is hereby extended to September 5, 2012. Entered on 9/6/2012. (Tello, Chris) |
| 000397 | 09/20/2012 | 59 | Agreed Scheduling Order Entered on 9/20/2012 (RE: related document(s)20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial Docket Call date set for 7/8/2013 at 01:30 PM at Dallas Judge Jernigan Ctrm. Hearing on Defendant Cengiz J. Comu's Third Amended Motion to Dismiss Case is set for 10/31/2012 at 9:30 AM. (Mathews, M.) MODIFIED hearing dates on 9/21/2012 (Mathews, M.). |
| 000401 | 09/28/2012 | 61 | Supplemental Response opposed to (related document(s): 24 Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 000406 | 09/28/2012 | 62 | Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against |

| | | | |
|---|---|---|---|
| *Vol. 2* | | | Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 41 (Objection / revocation of discharge - 727(c),(d),(e)). (Lippe, Emil) Modified text on 9/7/2010 (Luna, G). filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Lippe, Emil) |
| *000429* | 10/09/2012 | 64 | Answer to Intervenor complaint (Related document: 53 Intervenor complaint by Diane G. Reed against Sunset Pacific, L.P., The Barclay Group, Inc., Bernard D Brown, Phyllis E Comu, Cengiz J. Comu. (Elmquist, David) filed by Bernard D Brown, Cengiz J. Comu, Phyllis E. Comu, Sunset Pacific, L.P., The Barclay Group, Inc.. (Olson, Dennis) Modified text on 10/9/2012 (Tello, Chris). |
| *000433* | 10/09/2012 | 65 | Reply to (related document(s): 30 Response filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 61 Response filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) filed by Defendant Cengiz J. Comu. (Olson, Dennis) |
| *000437* | 10/26/2012 | 66 | Motion to appear pro hac vice for David H. Wander. Fee Amount $25 filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit) (Lippe, Emil) |
| *000441* | 10/29/2012 | 68 | Motion for leave *to File Third Amended Complaint and Brief in Support* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/23/2012. (Lippe, Emil) |
| *Vol. 3* | 10/30/2012 | 69 | Motion for leave *to File Surreply to Defendant's Response to Plaintiffs' Supplemental Response to Third Motion to Dismiss* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/23/2012. (Attachments: # 1 Exhibit A - Surreply# 2 Proposed Order) (Lippe, Emil) |
| *000451* | | | |
| *000470* | 10/31/2012 | 70 | Order granting motion to appear pro hac vice adding David H. Wander for Ronald Katz and King Louie Mining, LLC (related document # 66) Entered on 10/31/2012. (Mathews, M.) |
| *000471* | 11/02/2012 | 71 | Order denying Plaintiffs' motion for leave to file Third Amended Complaint (related document # 68) Entered on 11/2/2012. (Mathews, M.) |
| *000473* | 11/02/2012 | 72 | Order denying Plaintiffs' motion for leave to File Surreply to Defendant's Response to Plaintiffs' Supplemental Response to Third Motion to Dismiss (related document # 69) Entered on 11/2/2012. (Mathews, M.) |
| *000475* | 11/14/2012 | 76 | Order denying motion to dismiss adversary proceeding (related document # 24) Entered on 11/14/2012. (Mathews, M.) |
| *000477* | 12/07/2012 | 78 | Answer to complaint *(Second Amended) to Revoke Discharge* filed by Cengiz J. Comu. (Olson, Dennis) |
| *000481* | 06/07/2013 | 88 | Motion to substitute attorney Emil Lippe, Jr., Law Offices of Lippe & Associates with Shari L. Heyen, Kendyl T. Hanks and Charles P. Floyd, Greenberg Traurig, LLP *and for Withdrawal of Attorney Emil Lippe, Jr., Law Offices of Lippe & Associates,* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Heyen, Shari) |

*Vol. 3*

| | | | |
|---|---|---|---|
| 000785 | 06/12/2013 | 89 | Agreed Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit A - Proposed Agreed Scheduling Order) (Heyen, Shari) |
| 000795 | 06/21/2013 | 90 | Agreed order granting motion to amend scheduling order (related document # 89) Trial Docket Call date set for 9/9/2013 at 01:30 PM Dallas Judge Jernigan Ctrm for 20, Entered on 6/21/2013. (Rielly, Bill) |
| 000799 | 06/21/2013 | 91 | Order granting motion to substitute attorney adding Shari L. Heyen for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, Kendyl T. Hanks for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, Charles P. Floyd for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, terminating Emil Lippe, Jr.. (related document # 88) Entered on 6/21/2013. (Rielly, Bill) |
| 000562 | 07/19/2013 | 94 | Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates (Attachments: # 1 Exhibit # 2 Affidavit # 3 Exhibit 1 # 4 Exhibit 2 # 5 Proposed Order) (Lippe, Emil) |
| 000539 | 08/12/2013 | 96 | Response opposed to (related document(s): 94 Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Heyen, Shari) |
| 000598 | 08/14/2013 | 97 | Reply to (related document(s): 96 Response filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6) (Lippe, Emil) |
| 000606 | 08/21/2013 | 98 | Order denying motion to intervene (related document # 94) Entered on 8/21/2013. (Rielly, Bill) |
| 000608 | 08/23/2013 | 99 | Agreed Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit A - Agreed Order to Amend Scheduling Order) (Heyen, Shari) |
| 000617 | 09/13/2013 | 101 | Agreed order granting motion to amend scheduling order (related document # 99) Trial Docket Call date set for 12/9/2013 at 01:30 PM Dallas Judge Jernigan Ctrm for 20, Entered on 9/13/2013. (Rielly, Bill) |
| 000621 | 11/25/2013 | 103 | Witness and Exhibit List *for Trial, per Scheduling Order* filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)62 Amended complaint). (Olson, Dennis) |
| 000624 | 11/25/2013 | 104 | Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Heyen, Shari) |

*Vol. 3*

| | | | |
|---|---|---|---|
| 000630 | 11/27/2013 | 105 | Support/supplemental document*(Supplement to Plaintiffs' Motion for Continuance of Scheduling Order Deadlines and Trial)* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)104 Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding)). (Heyen, Shari) |
| 000633 | 12/09/2013 | 106 | Agreed order granting motion to amend scheduling order (related document # 104) Entered on 12/9/2013. Trial Docket Call date set for 3/3/2014 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Rielly, Bill) |
| 000637 | 12/20/2013 | 108 | Motion for preliminary injunction *(expedited)* filed by Intervenor-Plaintiff Diane G. Reed (Elmquist, David) |
| 000647 | 12/20/2013 | 109 | Motion for expedited hearing(related documents 108 Motion for preliminary injunction) filed by Intervenor-Plaintiff Diane G. Reed (Elmquist, David) |
| 000651 | 12/20/2013 | 110 | Order granting ex parte motion for expedited hearing (Related Doc# 109)(document set for hearing: 108 Motion for preliminary injunction) Entered on 12/20/2013. Hearing to be held on 12/23/2013 at 09:30 AM Dallas Judge Jernigan Ctrm for 108, (Rielly, Bill) |
| 000653 | 12/20/2013 | 111 | Agreed order granting motion for temporary restraining order (related document 108) Entered on 12/20/2013. Preliminary injunction hearing to be held on 1/3/2014 at 09:30 AM Dallas Judge Jernigan Ctrm (Rielly, Bill) |
| 000656 | 01/03/2014 | 116 | Agreed Order Continuing Temporary Restraining Order (related document # 108) Entered on 1/3/2014. (Jones, A.) |
| 000659 | 02/24/2014 | 118 | Amended Witness and Exhibit List filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)103 List (witness/exhibit/generic)). (Olson, Dennis) |
| 000662 | 02/24/2014 | 119 | Witness and Exhibit List *for Trial* filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)62 Amended complaint). (Elmquist, David) |
| *Vol. 4*<br>000670 | 02/24/2014 | 120 | Witness and Exhibit List filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)62 Amended complaint). (Heyen, Shari) |
| 000722 | 02/26/2014 | 121 | Stipulation by Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC and All Defendants. filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)106 Order on motion to amend scheduling order). (Heyen, Shari) |
| 000726 | 03/03/2014 | 124 | Stipulation by Diane G. Reed and Plaintiffs and Defendants. filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)53 Intervenor complaint, 62 Amended complaint). (Elmquist, David) |
| 000729 | 03/03/2014 | 125 | Proposed findings of fact and conclusions of law filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)53 Intervenor complaint). (Elmquist, David) |

Vol. 4

| | | | |
|---|---|---|---|
| 000741 | 03/04/2014 | 126 | Proposed findings of fact and conclusions of law filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)62 Amended complaint). (Olson, Dennis) |
| 000746 | 03/04/2014 | 127 | Proposed findings of fact and conclusions of law filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)62 Amended complaint). (Heyen, Shari) |
| 000778 | 03/05/2014 | 130 | Order setting trial Entered on 3/5/2014 (RE: related document(s)62 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial date set for 3/17/2014 at 09:30 AM at Dallas Judge Jernigan Ctrm. (Rielly, Bill) |
| 000780 | 03/11/2014 | 132 | Amended Witness and Exhibit List *for Trial* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)120 List (witness/exhibit/generic)). (Heyen, Shari) |
| 000805 | 03/13/2014 | 134 | Amended Witness and Exhibit List filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)119 List (witness/exhibit/generic)). (Elmquist, David) |
| 000813 | 03/14/2014 | 135 | Amended Witness and Exhibit List *Second Amended* filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)118 List (witness/exhibit/generic)). (Olson, Dennis) |
| 000816 | 03/16/2014 | 137 | Amended Witness and Exhibit List *(Second)* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)132 List (witness/exhibit/generic)). (Heyen, Shari) |
| 000842 | 03/17/2014 | 138 | First Amended Proposed Joint Pre-Trial order Entered on 3/17/2014. (Rebecek, B) |
| 000871 | 04/04/2014 | 142 | Extended temporary restraining order and mandatory injunction Entered on 4/4/2014. (Rielly, Bill) |
| 000878 | 04/23/2014 | 144 | Notice *of Trustee's Status Report of Compliance* filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)142 Temporary restraining order). (Elmquist, David) |
| 000892 | 07/29/2014 | 161 | Motion to extend time to appeal - Rule 8002c (RE: related document(s)148 Judgment) Filed by Defendant Cengiz J. Comu (Blanco, J.) (Entered: 08/20/2014) |
| 000896 | 07/30/2014 | 153 | Application for compensation *Plaintiffs Preliminary Application for Attorneys' Fees and Expenses Awarded in the Court's July 8, 29014 Judgment* for Shari L. Heyen, Creditor's Attorney, Period: 10/26/2011 to 7/28/2014, Fee: $946,504.90, Expenses: $12,800.00. Filed by Attorney Shari L. Heyen (Heyen, Shari) |
| 000906 | 07/30/2014 | 154 | Motion to extend time to To Submit Affidavit and Evidence in Support of Application for Attorneys' Fees & Expenses Awarded in the Court's July 8, 2014 Judgment Filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Heyen, Shari) |
| 000914 | 08/20/2014 | 162 | Order granting motion for leave to file notice of appeal out of time 161 |

*Vol. 4*

*000916*

*000919*

| | | | |
|---|---|---|---|
| | | | Motion to extend time to appeal - Rule 8002c. Entered on 8/20/2014. (Rielly, Bill) |
| | 08/27/2014 | 165 | Order granting motion to extend time to file application for attorney's fees and expenses 154 Motion to extend time. Entered on 8/27/2014. (Rielly, Bill) |
| | 08/29/2014 | 168 | Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)164 Notice of appeal filed by Defendant Cengiz J. Comu) (Blanco, J.) |

II.   Appellant also designates all exhibits admitted at trial, March 17 through March 21, 2014.   *Not PROVIDED by APPELLANT*

III.   Appellant also designates the following transcripts:

*Vol. 5*

| | | | |
|---|---|---|---|
| 000921 | 11/09/2010 | 177 | Hearing held on 11/9/2010. (RE: related document(s)5 Motion to dismiss adversary proceeding Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6) filed by Defendant Cengiz J. Comu filed by Defendant Cengiz J. Comu) APPEARANCES: D. Olson for Debtor; E. Lippe for Plaintiff. Nonevidentiary hearing. Announcement of an agreed order having been submitted that contemplates Plaintiff's agreement to file Amended Complaint with Debtor's reservation of right to re-urge motion to dismiss. Court will sign order. (Womack, Jennifer) (Entered: 11/12/2010) |
| 000927 | 02/14/2011 | 178 | Hearing held on 2/14/2011. (RE: related document(s)12 Motion to dismiss adversary proceeding*(SECOND)* filed by Defendant Cengiz J. Comu filed by Defendant Cengiz J. Comu) Appearances: D. Olsen for Defendant/Debtor; E. Lippe for Plaintiff. Nonevidentiary hearing. Motion denied, conditional on Plaintiff, within 20 days, amending Complaint again to provide more specificity regarding specific provisions of Section 727(d) being alleged, when acts were discovered and how, and addressing his standing, versus the Chapter 7 Trustees, to seek avoidance of alleged fraudulent transfers. If not amendment within 20 days, complaint will be dismissed. If amendment, then Defendant has 20 days thereafter to answer/respond. Counsel to submit order. (Harden, D.) (Entered: 02/18/2011) |
| 000952 | 05/02/2012 | 179 | Status conference held (RE: related document(s)20 Amended complaint) Appearances: E. Lippe and D. Wander (telephonically) for Plaintiffs; D. Elmquist for Trustee; D. Olson for Debtor. Nonevidentiary hearing. Based on statements of counsel, court will continue abatement through 8/1/12 and counsel shall contact courtroom deputy for another status conference the first week of August 2012. Counsel shall upload an order continuing abatement. (Davis, T.) (Entered: 05/14/2012) |
| 000964 | 07/31/2012 | 180 | Hearing held on 7/31/2012. (RE: related document(s)20 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature. filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Attachments: 1 Exhibit A2 Exhibit B) filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) Appearances: D. Elmquist for Trustee; E. Lippe and D. Wander (telephonically) for Plaintiff; D. Olson for Debtor. Nonevidentiary status conference. Court heard reports regarding Rule 2004 examinations that have been ongoing and Trustees intention to file a Complaint in Intervention by 8/31/12. Court will enter Order terminating the abatement of this Adversary Proceeding and requiring: (a) Trustees Complaint in Intervention to be filed by 8/31/12; and (b) parties to upload Agreed Scheduling Order by 9/14/12 (inclusive of deadlines pertaining to the pending Rule 12(b)(6) |

*Vol. 5*

| | | | |
|---|---|---|---|
| | | | motion) or, in the alternative, court will enter its own Scheduling Order thereafter setting a January 2013 trial docket call and deadlines pertaining to the Rule 12(b)(6) motion. (Baird, Dennis) (Entered: 08/01/2012) |
| 000975 | 10/31/2012 | 181 | Hearing held on 10/31/2012. (RE: related document(s)24 Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu) Appearances: D. Olson for Movant/Defendant/Debtor; D. Elmquist for Trustee; E. Lippe and D. Wander (telephonically) for Plaintiff/King Louie Mining. Nonevidentiary hearing. Motion denied. Court also denied a pending Motion for Leave by Plaintiff/King Louie Mining to File Third Amended Complaint. Thus, Second Amended Complaint of King Louie Mining (Section 727 count only) and Complaint in Intervention of Trustee are now governing pleadings in this Adversary Proceeding. Mr. Lippe to upload orders on motion to dismiss and motion for leave. (Baird, Dennis) |
| 001004 | 08/15/2013 | 182 | Hearing held on 8/15/2013. (RE: related document(s)94 Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates (Attachments: # 1 Exhibit # 2 Affidavit # 3 Exhibit 1 # 4 Exhibit 2 # 5 Proposed Order)) Appearances: E. Lippe for his firm; K. Hanks and C. Floyd for Plaintiffs other than the Trustee; D. Elmquist for Trustee; R. Nicoud for Debtor. Nonevidentiary hearing. Motion denied. Ms. Hanks to upload order. (Harden, D.) (Entered: 08/21/2013) |
| 001035 | 03/04/2014 | 183 | Pre-trial conference held on 3/4/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit: (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 41 (Objection / revocation of discharge - 727(c),(d),(e)). (Lippe, Emil) Modified text on 9/7/2010 (Luna, G). filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz).) Appearances: K. Hanks and V. Vital for Creditor/Plaintiffs; D. Elmquist for Intervenor/Plaintiff; D. Olson for Defendants. Nonevidentiary status conference. Court will issue order setting trial for March 17, 2014 at 9:30 am, continuing through March 21, 2014. Parties to upload final Pre-Trial Order by March 14, 2014. (Harden, D.) (Entered: 03/06/2014) |
| 001052 | 03/17/2014 | 184 | Trial held on 3/17/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) |

| Vol. 6 | | | Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/18/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
|---|---|---|---|
| 001277 | 03/18/2014 | 185 | Trial held on 3/18/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/19/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| Vol. 7 001538 | 03/19/2014 | 186 | Trial held on 3/19/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/20/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| Vol. 8 001787 | 03/20/2014 | 187 | Trial held on 3/20/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/21/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| Vol. 9 001909 | 03/21/2014 | 188 | Trial held on 3/21/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial concluded. Court gave bench ruling: (a) revocation of discharge shall be ordered as to the Debtor, pursuant to Section 727(d)(1) & (2) of the Bankruptcy Code, based on fraud and concealment of assets of which Plaintiffs (and Trustee) were unaware until after the granting of discharge, and also based on Debtors acquiring or becoming entitled to acquire property that was or would be property of the estate and knowingly and fraudulently failing to report, deliver and surrender it to Ttrustee; (b) The Barclay Group, Inc. and Sunset Pacific are the alter |

| | | egos of Debtor and their veil should be pierced; (c) Debtor should turnover previously undisclosed Turkish Bank Account and the equity/asset-control of The Barclay Group, Inc. and Sunset Pacific to Trustee; (d) parties may submit post-trial briefing regarding possible monetary damages to the estate. Counsel will upload an amended restraining order and injunction, as soon as possible, to protect dissipation of Green Auto stock or other assets of The Barclay Group, Inc. and Sunset Pacific. Counsel will subsequently upload proposed Findings of Fact, Conclusions of Law and Judgment that are consistent with the courts oral ruling and otherwise consistent with the evidence. (Harden, D.) (Entered: 03/25/2014) |
|---|---|---|

IV.    Appellant states the following Issues presented on Appeal:

     1.    The Bankruptcy Judge erred in revoking the Debtor's discharge.

     2.    The Bankruptcy Judge erred in finding that the Barclay Group and Sunset Pacific

are the alter egos of the Debtor.

     3.    The Bankruptcy Judge erred in calculating the amount of the damages for which

the Debtor was found to be liable.

[Signature on following page]

Respectfully submitted,

Cengiz J. Comu
14873 Oaks North Place
Dallas, Texas 75254
(972) 965-2545 – Telephone
Email: cjcomu@gmail.com

By: _____
Cengiz J. Comu
*Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on the __//__ day of September, 2014, a true and correct copy of the foregoing document was sent via electronic means or by first class mail, postage prepaid to the persons shown below:

Kendyl T. Hanks
Greenberg Traurig, LLP
300 West 6th Street, Suite 2050
Austin, Texas 78701

David W. Elmquist
Reed & Elmquist, P.C.
501 N. College Street
Waxahachie, Texas 75165



By: _____
Cengiz J. Comu

Dennis Olson
State Bar No. 15273500
OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 – Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

ATTORNEYS FOR CJ COMU

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CENGIZ J. COMU a/k/a | § | CASE NO. 09-38820-sgj-7 |
| CJ COMU, | § | |
| Debtor. | § | CHAPTER 7 |
| _____ | § | |
| | § | |
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, | § | |
| and RONALD KATZ, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary Case no. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a | § | |
| CJ COMU | § | |
| Defendant. | § | |

**DEFENDANT CJ COMU'S MOTION TO DISMISS
COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**

NOW COMES Defendant CJ Comu, and in response to the Plaintiffs' Complaint to

Revoke Discharge Pursuant to Section 727 (d) of the United States Bankruptcy Code files this his

Motion to Dismiss the Complaint, Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6) and in support

thereof would respectfully show the Court as follows:

**DEFENDANT CJ COMU'S MOTION TO DISMISS
COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**      **Page - 1**

1.      The Plaintiffs' allegations are fairly succinctly set forth in Plaintiff's' Complaint.

2.      Basically, the Complaint seeks to revoke the discharge of this individual Debtor because his discharge was obtained by fraud.

3.      Assuming, arguendo, that Plaintiff can introduce evidence to support the allegations in the Complaint, Defendant files this Motion pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief can be granted.

4.      The Plaintiffs' allegations do not establish that the Debtor's discharge was obtained by fraud in fact, nor do the allegations establish that the fraud in fact was not discovered by Plaintiffs until after the discharge was entered.

5.      Plaintiffs have not pled with sufficient specificity, as required to do, in order to state a cause of action against the individual Debtor for fraud in obtaining a discharge under Section 727 (d) of the Bankruptcy Code.

6.      Indeed, Plaintiff cannot show any act by the individual Debtor that would constitute such fraud.

7.      All that has happened in this case is that the Plaintiffs rehash allegations that are years old, allegations that Plaintiffs have heard about and raised for years.

8.      Plaintiffs had actual notice of this bankruptcy, and their attorney of record for them did in fact attend the meeting of creditors in this case and reviewed additional documents produced by the Debtor to the Trustee after the meeting of creditors.

9.      Neither the Trustee nor the Plaintiffs requested any additional documents, nor did they request a Rule 2004 examination, nor did they file an exception or objection to discharge.

**DEFENDANT CJ COMU'S MOTION TO DISMISS**
**COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**                                    **Page - 2**

10.     Plaintiffs' Complaint does not establish, with the requisite specificity, what it is, if anything, that has been discovered since entry of the discharge that constitutes fraud in fact in obtaining the Debtor's discharge.

WHEREFORE, PREMISES CONSIDERED, Defendant CJ Comu prays that the Court, after notice and hearing, will dismiss the Complaint by Plaintiffs, deny all relief sought by the Plaintiffs, grant the Defendant his costs incurred, and grant Defendant CJ Comu such other and further relief as to which he may be justly entitled, either at law or in equity.

Respectfully submitted,

OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 - Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

By: /s/   Dennis Olson
   Dennis Olson
   State Bar No. 15273500

ATTORNEYS FOR CJ COMU

**DEFENDANT CJ COMU'S MOTION TO DISMISS**
**COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**     Page - 3

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Defendant CJ Comu's Motion to Dismiss Complaint, Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6) was served upon:

Emil Lippe, Jr.
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S 2460
Dallas, Texas 75201

via electronic means and by cm,rrr, on the 7th day of October, 2010.


 /s/ Dennis Olson                              
Dennis Olson

000214

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO.  09-38820-sgj7 |
| | § | |
| | § | |
| Debtor. | § | |

_____

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, KING | § | |
| LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
| Defendant. | § | |

**MOTION OF PLAINTIFFS FOR LEAVE
TO AMEND AND BRIEF IN SUPPORT**

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs, King Louie Mining, LLC, and King Louie Enterprises, LLC, and Ronald Katz,

hereby file, pursuant to Rules 13 and 15 of the Federal Rules of Civil Procedure, this their motion

for leave to amend their complaint herein, seeking leave to file their First Amended Complaint to

Revoke Discharge Pursuant to Section 727(d) of the Unites States Bankruptcy Code in the form

submitted herewith, and states the following.

1.      Plaintiffs hereby seek leave of Court to amend their Original Complaint on file herein

by filing the proposed pleading in the form tendered herewith.  Defendant has filed a motion to

**MOTION OF PLAINTIFFS FOR LEAVE
TO AMEND AND BRIEF IN SUPPORT– Page 1**

dismiss which, among other things, challenge the legal sufficiency and specificity of Plaintiffs' Complaint. While Plaintiffs do not concede the inadequacy of their Complaint, they desire to amend to add further specificity to their claims. When a more carefully drafted complaint might state a claim upon which relief could be granted, in response to motion to dismiss, the District Court should allow the Plaintiffs to amend the complaint rather than dismissing it. *Sarter v. Mays*, 491 F.2d 675 (5th Cir. 1974); *Griggs v. Hinds Junior College*, 563 F.2d 179 (5th Cir. 1977); *Welch v. Laney*, 57 F.3d 1004 (11th Cir. 1995); *Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999).

2.     Here, although Plaintiffs maintain that their Original Complaint properly alleges causes of action, due to the contentions raised by the Defendant in the motion to dismiss, Plaintiffs hereby seek leave to file their proposed First Amended Complaint to Revoke Discharge Pursuant to Section 727(d) of the United States Bankruptcy Code in the form submitted herewith in order to clarify various allegations, to make clear the basis for the alleged liability of the Defendant included herewith.

3.     In the interest of justice, the proposed amended complaint should be allowed so that the merits of this case may be properly presented to the Court.

WHEREFORE, Plaintiffs prays that the Court grant them leave to file their First Amended Original Complaint in the form submitted herewith and grant him general relief.

Respectfully submitted,

**LAW OFFICES OF LIPPE & ASSOCIATES**


By:     /s/   Emil Lippe, Jr.

**MOTION OF PLAINTIFFS FOR LEAVE**
**TO AMEND AND BRIEF IN SUPPORT– Page 2**
f:\....\pleadings\mot.leaveamend.wpd

Emil Lippe, Jr.
State Bar No. 12398300
Law Offices of Lippe & Associates
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas  75201
Telephone:      (214) 855-1850
Facsimile:       (214) 720-6074
Email:           emil@texaslaw.com

ATTORNEYS FOR PLAINTIFFS KING LOUIE
MINING, LLC, KING LOUIE ENTERPRISES, LLC,
AND RONALD KATZ

## CERTIFICATE OF CONFERENCE

The undersigned certifies that he has attempted to confer with counsel of record for the

Defendant concerning the substance of the motion for leave, and was unable to speak to him.

Signed this _____ day of November, 2010.


/s/ Emil Lippe, Jr.

**MOTION OF PLAINTIFFS FOR LEAVE**

**TO AMEND AND BRIEF IN SUPPORT– Page 3**

f:\....\pleadings\mot.leaveamend.wpd

000217

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this  8th  day of November, 2010, I electronically

submitted the foregoing document with the Clerk of the Court for the U.S. Bankruptcy Court,

Northern District of Texas, using the electronic case filing system of the Court, which will then send

a notification of such filing to the following:

> Dennis Olson
> Olson, Nicoud & Gueck, L.L.P.
> 1201 Main St., Ste 2470
> Dallas, TX 75202

 /s/   Emil Lippe, Jr.

Emil Lippe, Jr.

**MOTION OF PLAINTIFFS FOR LEAVE**

**TO AMEND AND BRIEF IN SUPPORT– Page 4**

f:\....\pleadings\mot.leaveamend.wpd

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|   |   |   |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
|  | § |  |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO.  09-38820-sgj7 |
|  | § |  |
|  | § |  |
| Debtor. | § |  |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, KING | § | |
| LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|  | § | |
| Plaintiffs, | § | |
|  | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
|  | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|  | § | |
| Defendant. | § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE**

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

King Louie Mining, LLC, King Louie Enterprises, LLC, and Ronald Katz, Plaintiffs,

pursuant to Section 727(d) of the United States Bankruptcy Code (11 U.S.C.§§101, *et seq.,* the

"Bankruptcy Code") and Rules 7001, *et seq.* of the Federal Bankruptcy Rules, complain of Debtor,

Cengiz J. Comu a/k/a CJ Comu("Debtor"), as Defendant, and hereby file this their First Amended

Complaint to Revoke Discharge Pursuant to Section 727(d) of the United States Bankruptcy Code,

and in support thereof would respectfully show as follows:

PLAINTIFFS' FIRST AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE                                          - PAGE 1

## A.  PARTIES, JURISDICTION AND VENUE

1.      Plaintiff King Louie Mining, LLC, is a Delaware limited liability company with principal offices and place of business at 8 Wheatley Avenue, Albertson, New York 11507.

2.      Plaintiff King Louie Enterprises, LLC, is a Delaware limited liability company with principal offices and place of business at 8 Wheatley Avenue, Albertson, New York 11507.

3.      Ronald Katz is a resident of the State of New York and is a creditor herein.

4.      Debtor, Cengiz Jan Comu a/k/a C.J. Comu, is an individual residing in Dallas County, Texas.  Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 31, 2009 (the "Petition Date"), in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), and was granted a discharge on April 14, 2010.

5.      Debtor may be served with process by serving his attorney of record in this bankruptcy case, Dennis Oliver Olson, Olson, Nicoud & Gueck, LLP, 1201 Main Street, Suite 2470, Dallas, TX 75202.

6.      This Court has jurisdiction over the parties and this controversy under 28 U.S.C. §§157 and 1334.  Although Debtor has been granted a discharge, his discharge must be set aside pursuant to 11 U.S.C. §§727(d)(1) and (2).  This adversary proceeding is a core proceeding under 28 U.S.C.§157(b)(2)(J).

7.      Venue of this proceeding is proper under 28 U.S.C.§1409.

## B.  FACTUAL BACKGROUND

8.      On January 15, 2010, Debtor filed his Schedules, Statement of Financial Affairs, Chapter 7 Individual Debtor's Statement of Intention, and Chapter 7 Statement of Current Monthly

**PLAINTIFFS' FIRST AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE** - PAGE 2

000220

Income and Means-Test Calculation(collectively, the "Bankruptcy Filings").  On April 14, 2010, in reliance upon the schedules filed by the Debtor, the Court granted a discharge.  Plaintiffs bring this action to revoke the discharge because the same was procured through a fraud upon the Court.

9.      Comu has a long prior record of white-collar crimes and nefarious business practices, and is subject to a permanent injunction issued by the United States Securities and Exchange Commission ("SEC").  On November 1, 1989, the SEC entered an Order of Permanent Injunction against Comu based on his dealings with a company called Oreo Mines, Inc., prohibiting him from selling unregistered securities.  The SEC order also demanded that Comu disgorge $80,000, but waived this demand because of his inability to pay.

10.     On April 9, 1999, the State of Wisconsin – Division of Securities found that Comu had sold unregistered securities in violation of Wisconsin securities law and entered a permanent injunction barring Comu from selling unregistered securities in Wisconsin.  Also, Comu was placed on criminal probation for two years in Texas in or around the early 1990s in connection with a car leasing operation he started under the name of Transworld Leasing.  In or around 2002, Comu was investigated by the SEC in connection with his activities as chief executive officer in a company called AirTech International Group, Inc., and he invoked his Fifth Amendment right against self-incrimination during testimony taken by the SEC.

11.     Comu was the founder and CEO of a company known as Humitech International Group, Inc. ("Humitech").  Humitech was a publicly-owned company.  Comu was previously the CEO of another public-owned company, Airtech International Group, Inc.("Airtech").  Comu obtained the idea and business opportunity to found Humitech while CEO of Airtech, and diverted

PLAINTIFFS' FIRST AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE                                      - PAGE 3

000221

such opportunity to the new company, which he controlled.

12.     Ever since at least May, 2003, the lenders of Airtech had been pursuing claims against Comu for such diversion of corporate opportunity, fraud, and fraudulent transfer.  The claims were twice dismissed under stipulations that the dismissals would be without prejudice and the statutes of limitations were tolled.  Ultimately, Comu was a Defendant in *New Millennium Capital Partners II, LLC and AJW Partners LLC v. Humitech International Group Inc., and CJ Comu*, Case No: 3:06-CV-1180-L, formerly pending in the United States District Court for the Northern District of Texas, Dallas Division, in which case a judgment was ultimately obtained against him.

13.     While the New Millenium claims were existing against him, Comu conducted the fraudulent kickback scheme discussed below involving Humitech, and caused the illegal proceeds of such scheme to be paid to his alter ego, Sunset Pacific, L.P.

14.     Humitech was in the business of selling humidity control products for refrigeration units  to regulate humidity, reduce temperatures, and absorb odors.   The principal component of Humitech's products was a type of diatomaceous earth, which Humitech referred to as "Sorbite," contained in panels installed in the refrigeration units.

15.     In 2003, through an introduction by a mutual acquaintance,  Comu approached Ronald Katz ("Katz") to obtain funds for Humitech to purchase the Defendants' purported mining rights.  This ultimately led to Katz's company, King Louie Mining, LLC ("KLM"), lending money to Humitech for this purpose.

16.     On May 21, 2004, in a simultaneous closing, KLM loaned $3,000,000 to Humitech, and HDC purchased certain worthless mining rights for $1,940,000, and Comu received a $500,000

**PLAINTIFFS' FIRST AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE                                        - PAGE 4**

000222

kickback from the seller. Although Comu owed fiduciary duties to his employer, Humitech, and its lender, KLM, to fully disclose such kickback, he fraudulently withheld such information.

17.     Katz did not discover the kickback scheme until over two years later, when Humitech defaulted on the loan from KLM, and KLM foreclosed on the stock of HDC.  Investigation of the files left behind by Comu, after the foreclosure, disclosed this illegal scheme.  Comu had arranged with the seller to receive such kickback by a payment to his alter ego, a partnership known as Sunset Pacific, LP, ("Sunset Pacific").

18.     Throughout his tenure at Humitech, Comu diverted monies from the company for his own use and benefit, causing substantial damages to the corporation and its shareholders.  As a result of his fraudulent conduct and mismanagement of Humitech, it defaulted on its obligations to King Louie Mining, causing over $2,000,000 in damages to KLM.  As stated above, after KLM foreclosed on the stock of HDC and took control thereof, and investigated the company and its financial dealings, the kickback scheme was discovered.

17.     On April 30, 2009, KLM obtained a Judgment in New York state court against Comu for a total of $2,279,265.16, a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by reference.  KLM subsequently domesticated this as a Texas judgment, and was pressing for postjudgment discovery from Comu when he filed this bankruptcy proceeding.

18.     For years, Comu has operated Sunset Pacif, as his alter ego, to shield his assets from creditors, being aware of existing and potential claims of victims of his ongoing fraudulent activities. Comu caused the $500,000 kickback to be paid to Sunset Pacific, thereby diverting the fruits of his illegal actions into this alter ego of his to shield it from those whom he had defrauded.

**PLAINTIFFS' FIRST AMENDED COMPLAINT TO**
**REVOKE DISCHARGE PURSUANT TO SECTION 727(d)**
**OF THE UNITED STATES BANKRUPTCY CODE**                                    **- PAGE 5**

19.     Comu filed this Bankruptcy Proceeding at a time when Plaintiffs were pressing their efforts in Texas State Court to collect upon the judment against Comu. Comu filed his Bankruptcy Schedules, claiming a small minority interest in Sunset Pacific, and a business owned by Sunset Pacific, known as The Barclay Group. Reference is hereby made to the Schedules on file with this Court.

20.     At the First Meeting of Creditors herein, Comu testified that he had fully disclosed his assets and liabilities on his Schedules. He further claimed that his interest in certain corporations, partnerships, and other entities was correctly disclosed in his Schedules.

21.     In truth and in fact, however, Plaintiffs have determined that Comu has hidden, through a complex corporate structure involving Sunset Pacific, and a company that he controls through his control of Sunset Pacific, known as The Barclay Group, Inc. ("The Barclay Group"), numerous business interests, valuable stock, and other assets. Although other people, including Comu's wife, are listed as having controlling interests in Sunset Pacific and The Barclay Group, Comu actually directs and controls such entities for his personal use and benefit. *See* Confidential Memorandum, attached hereto as Exhibit "B" and incorporated by this reference.

22.     Among other things, Comu transferred nominal controlling interests in Sunset Pacific, L.P., to his wife for no consideration, and has utilized his wife as a front for continuation of his management of assets which he indirectly owns and controls, in an effort to hide the same from his creditors. Comu's wife does not truly operate Sunset Pacific, and is only a figurehead "owner" thereof, to facilitate Comu's concealment of assets.

23.     At the time of such transfer to Comu's wife, there were numerous claims pending

**PLAINTIFFS' FIRST AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE** - PAGE 6

against Comu. The interests in Sunset Pacific were transferred to his wife, on information and belief, for no value, and were for the purpose and intent of defrauding creditors, in violation of 11 U.S.C. §544(b)(1) and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), specifically §24.005(a)(1), TEX. BUS. AND COMM. CODE.

24.    Plaintiffs were not aware of these fraudulent transfers, hidden assets and employment positions of Comu prior to the Discharge herein. Such assets and fraudulent transfers were material and materially impacted the true net worth of the Debtor, and were fraudulently concealed in violation of law.

25.    On information and belief, through his control of The Barclay Group, Comu has hidden substantial assets and has failed properly and fully to disclose the full extent of such assets, and the fact that he actually controls The Barclay Group for his own use and benefit. Although Comu has claimed that Bernard Brown is the officer actually controlling The Barclay Group, he is actually dealing with Brown as a broker in European markets to wash his illegal sales of restricted stock. He has concealed interests in various business enterprises owned through The Barclay Group which should have been fully disclosed herein. These business interests, assets, and opportunities include but are not limited to the following:

- ▸ Consulting services and disguised ownership interest in Partners National Real Estate, LLC, and subsidiaries;

- ▸ Ownership rights for Artfest International, Inc., and/or Artfest Overseas;

- ▸ Consulting services and other interests in Art Channel, Inc.;

- ▸ Valuable sports memorabilia actually owned by Sun Sports Entertainment, Inc., a public company of which Comu was CEO, which mysteriously disappeared when Sun Sports ceased doing business, and which are believed to have been concealed from creditors by Comu;

**PLAINTIFFS' FIRST AMENDED COMPLAINT TO**
**REVOKE DISCHARGE PURSUANT TO SECTION 727(d)**
**OF THE UNITED STATES BANKRUPTCY CODE**                                    **- PAGE 7**

▸ On information and belief, Comu has a practice of receiving restricted stock in companies for whom he consults through The Barclay Group, and washes such stock through affiliated relationships in the French Riviera, selling the same, and concealing the illegal proceeds overseas;

▸ While in bankruptcy, Comu, through The Barclay Group, loaned $90,000 to Green Automotive Company, Inc., and, on information and belief, obtained certain stock or stock options as part of the consideration (*see*, Exhibit "C" attached hereto);

▸ Consulting services and other involvement with Eller Industries, Inc.;

▸ Dealings with Mars Orbit Fund, Ltd.;

▸ Dealings with Capital Management Group, Inc.;

▸ Dealings with I.R.A. Oil & Gas, Inc.,;

▸ Dealings with JL Media Services LLC;

▸ Dealings with Temeku Financial;

▸ Dealings with various entities, referred to as "ARTI, AL, USR, VOIP, SR, MetiScan, Med Tech, Cool It, Donson, Houston, and Nano," none of which were listed; and

▸ Dealings with Ultimate Sports Resort, and receipt of $100,000 payment relating thereto.

All of such information should have been disclosed to the creditors herein, so that the Court and the creditors were fully advised of Comu's true financial condition.

26.    Over a period of years prior to filing for bankruptcy, Comu caused the public company which he was then controlling, Sun Sports Entertainment, to make numerous payments totalling tens of thousands of dollars to Sunset Pacific, for no apparent consideration. The purposes of such payments, and ultimate use and benefit therefrom, were not disclosed to this Court and the creditors of this Bankruptcy Proceeding, and were likely to be material to Comu's financial

**PLAINTIFFS' FIRST AMENDED COMPLAINT TO**
**REVOKE DISCHARGE PURSUANT TO SECTION 727(d)**
**OF THE UNITED STATES BANKRUPTCY CODE**                                    **- PAGE 8**

condition.

27.     In addition, on information and belief, Comu owns or controls an interest in an entity known as Grey Point Partners, LLC, which claims rights to broadcasting and presentation of Mixed Martial Arts ("MMA") programming.  Comu has claimed that such rights actually exist and have substantial value, but has failed to disclose his interest in such entity.

28.     On information and belief, Comu owns or controls an interest in an entity known as Marathon Management, the value of which has not been disclosed.

29.     On information and belief, Comu owns or controls an interest in an entity known as New Edge Consulting, the value of which has not been disclosed.

30.     For all these reasons, Plaintiffs have determined that Comu owns or controls, through Sunset Pacific and otherwise, substantial assets and sources of income which have been concealed from the Court and creditors herein, which were material to his financial condition and which were required by law to be disclosed.

## COUNT I.

31.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 30 above as if the same were fully set forth herein.

32.     Debtor has committed fraud by concealing and failing to disclose assets and sources of income which he was required by law to disclose, and has obtained a discharge by fraud.

33.     On information and belief, Debtor was the managing partner of Sunset Pacific until Debtor fraudulently transferred his controlling interest to his wife for no consideration. This fraudulent transfer was executed in order to shield the assets of Sunset Pacific from the bankruptcy proceeding.

**PLAINTIFFS' FIRST AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE**                                                      **- PAGE 9**

000227

34.     On further information and belief, Sunset Pacific, LP holds interests in various entities, including, but not limited to, The Barclay Group, Inc. Comu is the current CEO of The Barclay Group, Inc. The Barclay Group has substantial assets and recently loaned ninety-thousand dollars to Green Automotive Company Inc.  The full extent of the assets owned indirectly through Sunset Pacific was not fully disclosed to the creditors herein, as set forth above in greater detail. Further, the full extent of assets owned or controlled by Comu, as set forth above, was not fully and properly disclosed herein.

35.     Despite the fraudulent transfer of his interest in Sunset Pacific to his wife, Sunset Pacific and its subsidiary, The Barclay Group, are Comu's alter egos.  Comu is conducting business through Sunset Pacific and The Barclay Group, and such entities have substantial assets.  Because Comu misrepresented his property to the Trustee, he has committed  fraud.  As the Plaintiffs are bankruptcy creditors, Plaintiffs have been harmed by this fraud.

36.     This Complaint is being filed within one year after the date of discharge.  Plaintiffs are, therefore, entitled to an Order of this Court revoking the Debtor's discharge, pursuant to 11 U.S.C. §727(e)(1), and declaring that all assets of Sunset Pacific and The Barclay Group shall be considered assets of the Debtor.  Plaintiffs further pray for an order revoking all fraudulent transfers of the Debtor's assets, pursuant to 11 U.S.C. §544(b)(1) and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), §24.005(a)(1), TEX. BUS. AND COMM. CODE.

37.     Plaintiffs further request recovery of their reasonable and necessary attorney fees, expert witness fees, costs for copies of deposition, and costs of court for all proceedings in the Bankruptcy Court, the District Court, the Court of Appeals, and the Supreme Court.

**PLAINTIFFS' FIRST AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE** 
- PAGE 10

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, upon final judgment of the Court herein, that judgment be entered against Defendant Debtor revoking his discharge, that all fraudulent transfers be revoked, and that Plaintiffs recover their reasonable attorney's fees for all proceedings in the Bankruptcy Court, the District Court, the Court of Appeals, and the Supreme Court, and that Plaintiffs recover their costs of court, and general relief.

Respectfully submitted,

**LAW OFFICES OF LIPPE & ASSOCIATES**

By:      /s/  Emil Lippe, Jr.
         Emil Lippe, Jr.
         State Bar No. 12398300
         Law Offices of Lippe & Associates
         Plaza of the Americas, South Tower
         600 N. Pearl Street, Suite S2460
         Dallas, Texas  75201
         Telephone:     (214) 855-1850
         Facsimile:     (214) 720-6074
         Email:         emil@texaslaw.com

         ATTORNEYS FOR PLAINTIFFS KING LOUIE
         MINING, LLC, KING LOUIE ENTERPRISES, LLC,
         AND RONALD KATZ

**PLAINTIFFS' FIRST AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE**                                    **- PAGE 11**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this _8th_ day of November, 2010, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. Bankruptcy Court, Northern District of Texas, using the electronic case filing system of the Court, which will then send a notification of such filing to the following:

Dennis Olson
Olson, Nicoud & Gueck, L.L.P.
1201 Main St., Ste 2470
Dallas, TX 75202


_/s/   Emil Lippe, Jr._____
Emil Lippe, Jr.

**PLAINTIFFS' FIRST AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE** - PAGE 12

000230

000231

BY THE GRACE OF GOD FREE AND INDEPENDENT

*To all to whom these presents shall come or may concern, GREETING:*

**Know Ye,** That we having examined the records and files in the office of the Clerk of the County of New York and Clerk of the Supreme Court of said State for said County, do find a certain *Judgment*



there remaining, in the words and figures following, to wit:

(OVER)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
HUMITECH DEVELOPMENT CORPORATION,    :
KING LOUIE MINING, LLC, KING LOUIE          Index No. 06-602567
ENTERPRISES, LLC, and RONALD KATZ,   :
Individually, and as a Shareholder of Humitech
International Group, Inc., Suing in the Right of
Humitech International Group, Inc.,          :

                        Plaintiffs,          :            **JUDGMENT**

            - against -                      :

CENGIZ JAN COMU a/k/a C.J. COMU and IVAN   :
GATI,

                                             :

                        Defendants,          :

            and

HUMITECH INTERNATIONAL GROUP, INC.,   :

            Nominal Defendant.   :
-----------------------------------------------------------------X

        This action having been scheduled for trial on February 23, 2009, 9:30 A.M. in Part 40;

and the Court having made February 23, 2009 a final trial date; and Plaintiffs having been

granted leave to serve a Verified Second Amended Complaint; and Defendant Cengiz Jan Comu

("Comu") having been initially served with a Summons and Verified Complaint, the Verified

Amended Complaint and then the Verified Second Amended Complaint; and the causes of action

against defendant Ivan Gati having been severed from this action pursuant to the October 30,

2008 order of Hon. Doris Ling-Cohan, J.S.C.; and Defendant Comu having appeared and

answered the Verified Second Amended Complaint; and Defendant Comu having failed to

appear enter individually or by counsel for trial on February 23, 2009; the answer of Defendant

Comu having been stricken by the February 23, 2009 order of the Court; and upon the taking of

an inquest on February 23, 2009; and upon the February 23, 2009 order of Hon. Joan B. Carey,

J.S.C. directing the Judgment Clerk to enter judgment in the amounts set forth below, it is;

Ⓐ *have judgment* Cengiz Jan
*and*
**ADJUDGED** that the Plaintiff King Louie Mining, LLC recover from defendant Comu a/k/a C.J. Comu, Ⓑ

$1,386,748 and interest at the rate of 9% per annum accruing from May 21, 2004 ▬▬▬▬

✗ ▬▬ of $ 617,197.84 , aggregating the sum of $ 2,003,945.84 , and that plaintiff

has execution therefore.

Ⓐ *have judgment* Cengiz Jan
*and*
**ADJUDGED** that Plaintiff King Louie Enterprises LLC recover from defendant Comu a/k/a C.J. Comu, Ⓑ

the amount of $135,000 and interest at the rate of 9% per annum accruing from December 31,

2003 ▬▬▬▬▬▬ of $ 64,811.10 , aggregating the sum of

✗ $ 199,811.10 , and that plaintiff has execution therefore.

(✱) *have judgment* Cengiz Jan a/k/a C.J. Comu, Ⓑ
*and*
**ADJUDGED** that Plaintiff Ronald Katz recover from defendant Comu the amount of

$50,000 and interest at the rate of 9% per annum accruing from August 31, 2003 ▬▬▬▬

✗ ▬▬ of $ 25,508.22 , aggregating the sum of $ 75,508.22 , and

that plaintiff has execution therefore.

Judgment entered this 30ᵀᴴ day of April , 2009.

# FILED

APR 30 2009

**NEW YORK
COUNTY CLERK'S OFFICE**

Ⓐ Located at 8 Wheatley Ave, Searingtown, NY 11

Ⓑ Residing at 5301 Paladium Drive, Dallas, Texas

✱) Individually, and as a Shareholder of HumiTech International Group, Inc.,
Suing in The Right of HumiTech International Group, Inc., residing
at 8 Wheatley Ave, Searingtown, NY 11507

2

Case 3:14-cv-04163-B   Document 1-2   Filed 11/21/14   Page 40 of 256   PageID 275

000234

Humitech Development Corporation v. Comu (Index No. 602567)

## Interest Calculations at 9% Per Annum

| Amount | date from | date to | No. of days outstanding | interest at 9% per annum | interest per day | principal plus interest |
|---|---|---|---|---|---|---|
| $1,386,748.00 | 05/21/04 | 04/30/09 | 1805 | $617,197.84 | $341.94 | $2,003,945.84 |
| $135,000.00 | 12/31/03 | 04/30/09 | 1947 | $64,811.10 | $33.29 | $199,811.10 |
| $50,000.00 | 08/31/03 | 04/30/09 | 2069 | $25,508.22 | $12.33 | $75,508.22 |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------x

Humitech Development Corporation,
King Louie Mining, LLC      Plaintiff(s)
King Louie Enterprises, LLC, et.al.

-against-

Cengiz Jan Comu a/k/a C.J.
Comu                          Defendant(s)

---------------------------------------------------------------x

Index No.

602567/2006

AFFIRMATION

Anne F. McCaughey, an attorney duly admitted to practice in the state of New York, Affirms the following under the penalties of perjury:

I represent Plaintiffs in the above-entitled action. Plaintiffs hereby waive the right to seek costs and disbursements they are entitled to in this action.

**FILED**

APR 30 2009

NEW YORK
COUNTY CLERK'S OFFICE

Dated: April 30, 2009
New York, NY

Anne F. McCaughey

000235

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 602567-06

Humitech Development Corporation,
King Louie Mining, LLC, King Louie Enterprises, LLC,
Ronald Katz,

Plaintiff,

-against-

Cengiz Jan Comu a/k/a C.J. Comu

Defendants.

Judgment

Wachtel + Masyr, LLP
110 East 59th Street
New York, New York 10022
(212) 909-9528
Attorneys for Plaintiffs

1 - 3

**FILED AND
DOCKETED**

APR 30 2009

AT          3:17 P M
N.Y., CO. CLK'S OFFICE

000236

Witness, Hon. EDWARD H. LEHNER a Justice of the Supreme

Court of the State of New York for the County of New York, the 30th

day of *April* in the year of our Lord two thousand and

*Nine*, and of our independence the two hundred and

*Thirty Two*

*Norman Goodman*
County Clerk and Clerk of the
Supreme Court, New York County

EDWARD H. LEHNER

a Justice of the Supreme Court of the State of New York for the County of New York,
the same being a Court of Record, do hereby certify that the foregoing attestation is
in due and proper form and by the proper officer.

Dated New York, MAY -1 2009 20 09

Justice of the Supreme Court
of the State of New York.

State of New York,
County of New York, } ss.:

I, NORMAN GOODMAN, County Clerk and Clerk of the
Supreme Court of the State of New York, County of New
York, do hereby certify that Hon. EDWARD H. LEHNER
whose name is subscribed to the preceding certificate is
a Justice of the Supreme Court of said State in and for
the County of New York, duly elected and qualified, and
that the signature of said Justice to said certificate is genuine.

IN TESTIMONY WHEREOF, I have hereunto set my
hand and affixed the Seal of said County and Court this
30 day of *April* 20 09 .

*Norman Goodman*
County Clerk and Clerk of the
Supreme Court, New York County.

15041

No. F

## CONFIDENTIAL MEMORANDUM

**TO:** HUMITECH INTERNATIONAL GROUP INC

**FROM:** CJ COMU

**SUBJECT:** HUMITECH LOAN

**DATE:** { DATE \* MERGEFORMAT }

**CC:** MORRIS GORE – ATTORNEY AT LAW, GLAST PHILLIPS & MURRAY

---

FINAL NOTICE-

THIS IS YOUR **FINAL NOTICE** OF DEMAND PAYMENT FOR THE TWENTY FIVE THOUSAND DOLLAR ($25,000) LOAN THAT WAS ISSUED ON APRIL 30TH 2005 FOR YOUR PAYROLL ACCOUNT.

THESE FUNDS WERE DISBURSED WITH THE UNDERSTANDING THAT THEY WOULD BE PAID BACK IN FULL ON OR BEFORE THE NEXT PAYROLL PERIOD OF MAY 15TH 2005. A PENALTY OF $500 WAS STATED FOR FAILURE TO PAY THIS DEMAND LOAN WITHIN A MAXIMUM OF 30 DAYS.

I HAVE ATTEMPTED TO COLLECT ON THESE FUNDS AND HAVE MADE REPEATED ATTEMPTS. YOUR FAILURE TO HONOR THIS OBLIGATION AND THE FINES ATTACHED NOW REQUIRES ME TO PURSUE LEGAL REMEDY TO ENFORCE A LAWSUIT AND A CLAIM FOR DAMAGES.

THIS IS YOUR FINAL NOTICE TO MAKE PAYMENT OF YOUR OUTSTANDING LIABILITY IN FULL TO THE FOLLOWING;

**SUNSET PACIFIC LP**
**C/O CJ COMU**
**5301 PALADIUM DRIVE**
**DALLAS, TX, 75254**

CJ Comu, Managing Partner
Sunset Pacific, LP

000238

**Green Automotive Company Inc. (GACR.PK)**

15851 Dallas Parkway Suite 540 Addison, Texas 75001 USA

Tel: 972.770.5048 Fax: 972.770.5051

www.usaelectricauto.com

**"We previously were a shell company, therefore the exemption offered pursuant to Rule 144 is not available. Anyone who purchased securities directly or indirectly from us or any of our affiliates in a transaction or chain of transactions not involving a Version 9.7 Updated on 07/22/2009 public offering cannot sell such securities in an open market transaction."**

## Part A General Company Information

Item I The exact name of the issuer and its predecessor (if any).

Green Automotive Company Inc.
Previously (Ganas Corporation)

**Item II The address of the issuer's principal executive offices.**

**Green Automotive Company Inc. (GACR.PK)**

15851 Dallas Parkway Suite 540 Addison, Texas 75001 USA

Tel: 972.770.5048 Fax: 972.770.5051

www.usaelectricauto.com

**Item III The jurisdiction(s) and date of the issuer's incorporation or organization.**

Provide the issuer's jurisdiction(s) of incorporation or jurisdiction(s) of organization (if the issuer is not a corporation) and the date on which it was incorporated or organized.

12-96 State of incorporation New Jersey changed to Delaware

Formerly Royal Finance Corp. until 2-98

Formerly Royal Acceptance Corp. until 3-2008

Formerly Ganas Corp. until 1-2010

## Part B Share Structure

**Item IV The exact title and class of securities outstanding.**

In answering this item, provide the exact title and class of each class of outstanding securities. In addition, please provide the CUSIP and trading symbol.

Common Stock                              Cusip #39260A GACR

Class A Convertible Preferred Stock       Cusip #

**Item V Par or stated value and description of the security.**

A. *Par or Stated Value*. Provide the par or stated value for each class of outstanding securities.

Common - $.001

Preferred - $.001

B. *Common or Preferred Stock*.

1. For common equity, describe any dividend, voting and preemption rights.

Each Shareholder is allowed 1 vote per share.

Common stock holders have first rights to dividends.

Board of directors can be voted out via majority share holder vote at any time with out cause, at a meeting held for that purpose. Each board of director serves one year. No poison pills.

The Barclay Group Holds an Anti-duilion provision that it will have always 40% of outstanding common stock until November 2010

2. For preferred stock, describe the dividend, voting, conversion and liquidation rights as well as redemption or sinking fund provisions.

The share entitles holder to 51% voting majority of stock

It is convertible to 4 common shares

Preferred stock is not entitled to dividends

3. Describe any other material rights of common or preferred stockholders.

Not Applicable

4. Describe any provision in issuer's charter or by-laws that would delay, defer or prevent a change in control of the issuer.

Not Applicable

**Item VI The number of shares or total amount of the securities outstanding for each class of securities authorized.**

In answering this item, provide the information below for each class of securities authorized**.** Please provide this information (i) as of the end of the issuer's most recent fiscal quarter and (ii) as of the end of the issuer's last two fiscal years.

(i) Period end date;

(ii) Number of shares authorized;

000240

(iii) Number of shares outstanding;
(iv) Freely tradable shares (public float);
(v) Total number of beneficial shareholders; and
(vi) Total number of shareholders of record.

Common - Last Fiscal Quarter:/Year End
(i) Period end date; 12.31.09
(ii) Number of shares authorized; 699,999,999
(iii) Number of shares outstanding; 239,367,042
(iv) Freely tradable shares (public float); 3,600,000
(v) Total number of beneficial shareholders; 156
(vi) Total number of shareholders of record. 156

Common - Last Fiscal Year (2nd year)

(i) Period end date; 12.31.08
(ii) Number of shares authorized; 699,999,999
(iii) Number of shares outstanding; 95,746,817
(iv) Freely tradable shares (public float); 3,600,000
(v) Total number of beneficial shareholders; 156
(vi) Total number of shareholders of record. 156


Preferred - Last Fiscal Quarter:/Year End
(i) Period end date; 12.31.09
(ii) Number of shares authorized; 1
(iii) Number of shares outstanding; 1
(iv) Freely tradable shares (public float); 1
(v) Total number of beneficial shareholders; 1
(vi) Total number of shareholders of record. 1

Common - Last Fiscal Year (2nd year)

(i) Period end date; 12.31.08
(ii) Number of shares authorized; 1
(iii) Number of shares outstanding; 1
(iv) Freely tradable shares (public float); 1
(v) Total number of beneficial shareholders; 1


## Part C Business Information

### Item VII The name and address of the transfer agent*.

Old Monmouth Stock Transfer Co, Inc
200 Memorial Parkway
Atlantic Heights, NJ 07716
732.872.2727
Registered under the Exchange Act? Yes

000241

In answering this item, please also provide the telephone number of the transfer agent, indicate whether or not the transfer agent is registered under the Exchange Act, and state the appropriate regulatory authority of the transfer agent.

*To be included in OTCQX or the Current Information OTC Market Tier, the issuer's transfer agent *must* be registered under the Exchange Act.

**Item VIII The nature of the issuer's business.**

In describing the issuer's business, please provide the following information:

A. <u>Business Development</u>. Describe the development of the issuer and material events during the last three years so that a potential investor can clearly understand the history and development of the business. If the issuer has not been in business for three years, provide this information for any predecessor company. This business development description must also include:

GNAS Corp company was formerly a shell company after it ceased operations and has been laying dormant for years. No bank accounts. Fees for transfer agents were paid by third parties. In September 2009 the majority of shares were purchased by The Barclay Group, Inc. GNAS Corp. then purchased Go Green USA, LLC (Go), a Nevada Limited Liability Company, organized April 28th, 2009, on November 4,th 2009 in exchange for the issuance of shares of common stock. For each 1% membership interest in Go, the company issued 1,436,202.25 shares of common stock, par value of $.001 of GNAS. Effective in 2009, Go entered into a business importing and distributing automobiles manufactured by or for Zoyte with the territory of the United States through the Zotye Memorandum Dated August 21, 2009 that was contractually ratified on January 29, 2010. GNAS Corp changed its name in January to Green Automotive to reflect the material change in business.

1. the form of organization of the issuer (e.g., corporation, partnership, limited liability company, etc.);

Corporation

2. the year that the issuer (or any predecessor) was organized;

1996

3. the issuer's fiscal year end date;

December 31st

4. Whether the issuer (or any predecessor) has been in bankruptcy, receivership or any similar proceeding;

Not Applicable

5. any material reclassification, merger, consolidation, or purchase or sale of a significant amount of assets;

The Company completed an acquisition and reclassification as of November 2009

6.  any default of the terms of any note, loan, lease, or other indebtedness or financing arrangement requiring the issuer to make payments;

Company is currently in default of a $30,000, 60 day note to the Barclay Group:  The terms are: 12% Interest.  And a 100,000 shares per day late fee.  The note has been in default since Jan 20th 2010.

7.  any change of control;

As of November 2009, control has gone from The Barclay Group Inc, to the management team of Green Automotive

8.  any increase of 10% or more of the same class of outstanding equity securities;

Yes, common due to the acquisition of Go Green USA in November 2009

9.  any past, pending or anticipated stock split, stock dividend, recapitalization, merger, acquisition, spin-off, or reorganization;

Anticipating a reverse stock split

10. any delisting of the issuer's securities by any securities exchange or deletion from the OTC Bulletin Board; and

Not Applicable

11. any current, past, pending or threatened legal proceedings or administrative actions either by or against the issuer that could have a

3 For the purpose of this section a "shell company" means an issuer, other than a business combination related shell company, as defined by Securities Act Rule 405, or an asset-backed issuer, as defined by Item 1101(b) of Regulation AB, that has:
(1) No or nominal operations; and
(2) Either:
(A) No or nominal assets;
(B) Assets consisting solely of cash and cash equivalents; or
(C) Assets consisting of any amount of cash and cash equivalents and nominal other assets.

material effect on the issuer's business, financial condition, or operations and any current, past or pending trading suspensions by a securities regulator. State the names of the principal parties, the nature and current status of the matters, and the amounts involved.

Not Applicable

B. <u>Business of Issuer</u>. Describe the issuer's business so a potential investor can clearly understand it. To the extent material to an understanding of the issuer, please also include the following:

The Company Seeks to Import Electric Vehicles.

1. the issuer's primary and secondary SIC Codes;

5012 Automobiles

2. if the issuer has never conducted operations, is in the development stage, or is currently conducting operations;

Development Stage Company

3. whether the issuer is or has at any time been a "shell company";3

Yes

> *Instruction to paragraph B.3 of Item VIII:*
> If the issuer discloses that it is or has at any time been a shell company, it must also include the following disclosure on the front page of its disclosure statement in boldface, 12 point type:
> If the issuer is currently a shell company:
>> **"We are a shell company, therefore the exemption offered pursuant to Rule 144 is not available. Anyone who purchased securities directly or indirectly from us or any of our affiliates in a transaction or chain of transactions not involving a public offering cannot sell such securities in an open market transaction."**
> If the issuer was formerly a shell company:
>> **"We previously were a shell company, therefore the exemption offered pursuant to Rule 144 is not available. Anyone who purchased securities directly or indirectly from us or any of our affiliates in a transaction or chain of transactions not involving a Version 9.7 Updated on 07/22/2009 public offering cannot sell such securities in an open market transaction."**

4. the names of any parent, subsidiary, or affiliate of the issuer, and its business purpose, its method of operation, its ownership, and whether it is included in the financial statements attached to this disclosure statement;

Not Applicable

5. the effect of existing or probable governmental regulations on the business;

The EPA, Department of Transportation as well as State Regulations have jurisdiction over our products. We must get their approval before selling vehicles in the US.

6. an estimate of the amount spent during each of the last two fiscal years on research and development activities, and, if applicable, the extent to which the cost of such activities are borne directly by customers;

The management team has spent a year prior to the merger research and negotiating the exclusive contract with the vehicle manufacturer. There will not be much expenses that need to be recouped, the vehicle production is done in China.

7. costs and effects of compliance with environmental laws (federal, state and local); and

The costs of Compliance with US law, US Federal regulation and State regulation is expected to be 1.5 million.

8. the number of total employees and number of full-time employees.

There are currently 5 employees.

> For issuers engaged in mining, oil and gas production and real estate activities, substantial additional disclosure of the issuer's business is required. Contact Pink OTC Markets for more information.

## Item IX The nature of products or services offered.
In responding to this item, please describe the following so that a potential investor can clearly understand the products and services of the issuer:
A. principal products or services, and their markets;

The company offers imported electric cars for sale to dealerships in the US

B. distribution methods of the products or services;

Distribution will be through existing and new Car Dealerships

C. status of any publicly announced new product or service;

The company has signed a 3 year distribution contract and looks to sign dealerships. There is a risk that dealers may not be interested in selling the Zotye product

D. competitive business conditions, the issuer's competitive position in the industry, and methods of competition;

Competitors are 1 year away and include BYD,GM,NISSAN,FORD AND CODA. Investors must know that there is significant competition in the market.

E. sources and availability of raw materials and the names of principal suppliers;

Zotye will be our principle supplier, we plan to add additional over time. We are completely dependent on the Zoyte and they will be our exclusive

F. dependence on one or a few major customers;

We will have many dealerships and therefore will not be dependent on any one or group.

G. patents, trademarks, licenses, franchises, concessions, royalty agreements or labor contracts, including their duration; and

The company holds the agreement with Zotye to distribute their vehicle. As far other important agreements, are the agreements between Green Automotive and dealerships which will be negotiated on a case by case basis.

H. the need for any government approval of principal products or services and the status of any requested government approvals.

The company must get EPA/DOT approval before it's cars can be sold in the US. The car is expected to pass but investors must be aware there is significant risk of failing. Before the car can sell more than 10,000 units the cars must pass federal crash testing and test at least 10 vehicles. Investors must know that there is significant risk of failing crash testing.

**Item X The nature and extent of the issuer's facilities.**

The goal of this section is to provide a potential investor with a clear understanding of all assets, properties or facilities owned, used or leased by the issuer.
In responding to this item, please clearly describe the assets, properties or facilities of the issuer, give the location of the principal plants and other property of the issuer and describe the condition of the properties. If the issuer does not have complete ownership or control of the property (for example, if others also own the property or if there is a mortgage on the property), describe the limitations on the ownership.
If the issuer leases any assets, properties or facilities, clearly describe them as above and the terms of their leases.

The company has no major facilities. It is currently leasing office space, owns general office materials, holds two vehicles for promotion and two electric vehicles for demo/sales purposes. GACR primary business activity is an importer and not a manufacture. It plans to hold inventory but only after is it paid for in orders from its dealership/clients.

## Part D Management Structure and Financial Information

**Item XI The name of the chief executive officer, members of the board of directors, as well as control persons.**

000246

The goal of this section is to provide an investor with a clear understanding of the identity of all the persons or entities that are involved in managing, controlling or advising the operations, business development and disclosure of the issuer, as well as the identity of any significant shareholders.

    A. <u>Officers and Directors</u>. In responding to this item, please provide the following information for each of the issuer's executive officers, directors, general partners and control persons, as of the date of this information statement:

1.  Full name;

Please see below

2.  Business address;

Please see below

3.  Employment history (which must list all previous employers for the past 5 years, positions held, responsibilities and employment dates);

Please see below

1.  Board memberships and other affiliations;

Not Applicable

2.  Compensation by the issuer; and
3.  Number and class of the issuer's securities beneficially owned by each such person.

Steve Fly – Chairman & CEO:

Shares owned:
Compensation:
5 year Employment History with dates:
Works out of company HQ

Steve Wells - President:

Shares owned:
Compensation:
5 year Employment History with dates:
Works out of company HQ

Steve Evans, Vice-President of Dealership Business Development:
Shares owned:
Compensation:
5 year Employment History with dates:
Works out of company HQ

000247

David Sheedy - Director of Parts and Service:
Shares owned:
Compensation:
5 year Employment History with dates:
Works out of company HQ


Fredrick Lockhart- National Sales Director:

Shares owned:
Compensation:
5 year Employment History with dates:
Works out of company HQ


Nancy Painter - Controller:
Shares owned:
Compensation:
5 year Employment History with dates:
Works out of company HQ

There are no other shareholders with more than 5%


    4 The term "family relationship" means any relationship by blood, marriage or adoption, not more remote than first cousin.

Not Applicable


      B. <u>Legal/Disciplinary History</u>. Please identify whether any of the foregoing persons have, in the last five years, been the subject of:

1. A conviction in a criminal proceeding or named as a defendant in a pending criminal proceeding (excluding traffic violations and other minor offenses);

2. The entry of an order, judgment, or decree, not subsequently reversed, suspended or vacated, by a court of competent jurisdiction that permanently or temporarily enjoined, barred, suspended or otherwise limited such person's involvement in any type of business, securities, commodities, or banking activities;

Not Applicable

3. A finding or judgment by a court of competent jurisdiction (in a civil action), the Securities and Exchange Commission, the Commodity Futures Trading Commission, or a state securities regulator of a violation of federal or state securities

or commodities law, which finding or judgment has not been reversed, suspended, or vacated; or

Not Applicable

4. The entry of an order by a self-regulatory organization that permanently or temporarily barred, suspended or otherwise limited such person's involvement in any type of business or securities activities.

Not Applicable

   C. Disclosure of Family Relationships. Describe any family relationships4 among and between the issuer's directors, officers, persons nominated or chosen by the issuer to become directors or officers, or beneficial owners of more than five percent (5%) of the any class of the issuer's equity securities.

Not Applicable

   D. Disclosure of Related Party Transactions. Describe any transaction during the issuer's last two full fiscal years and the current fiscal year or any currently proposed transaction, involving the issuer, in which (i) the amount involved exceeds the lesser of $120,000 or one percent of the average of the issuer's total assets at year-end for its last three fiscal years and (ii) any related person had or will have a direct or indirect material interest. Disclose the following information regarding the transaction:
      1. The name of the related person and the basis on which the person is related to the issuer;
      2. The related person's interest in the transaction;
      3. The approximate dollar value involved in the transaction (in the case of indebtedness, disclose the largest aggregate amount of principal outstanding during the time period for which disclosure is required, the

5 "Immediate family members" means any child, stepchild, parent, stepparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law.

   amount thereof outstanding as of the latest practicable date, the amount of principal and interest paid during the time period for which disclosure is required, and the rate or amount of interest payable on the indebtedness);
      4. The approximate dollar value of the related person's interest in the transaction; and
      5. Any other information regarding the transaction or the related person in the context of the transaction that is material to investors in light of the circumstances of the particular transaction.

The Company, on November 30th 2010 entered into a Loan Agreement with The Barclay Group (TGB). TBG loaned the Company $30,000. The Note Payable is at 12% daily compounding interest. The Note was due December 30,th 2009. The Note is Unsecured.
The Company is currently in default. No repayment has been made

The Company, on January 8th 2010 entered into a Loan Agreement with The Barclay Group. TBG loaned the Company $10,000. The Note is payable at 12% interest. It is due March 8th 2010. The Note is Unsecured No payment has been made

The Company, on January 15th 2010 the Company entered into a loan agreement with The Barclay Group. It loaned the company 50,000 at 12%. The Note is Unsecured.
The Company has a Note Payable at 9.14% with monthly payments of $1,078 due August 2013 secured by vehicles. Payments are being made.

The Company has a Note Payable at 3.90% with monthly payments of $738 due June 2015 secured by vehicles. Payments are being made.
Certain officers have advanced monies to the company on an unsecured basis and non-interest bearing. Payment will be made out of cash flows once the Company begins operations.


*Instruction to paragraph D of Item XI:*

    1. For the purposes of paragraph D of this Item XI, the term "related person" means any director, executive officer, nominee for director, or beneficial owner of more than five percent (5%) of any class of the issuer's equity securities, immediate family members5 of any such person, and any person (other than a tenant or employee) sharing the household of any such person.

    2. For the purposes of paragraph D of this Item XI, a "transaction" includes, but is not limited to, any financial transaction, arrangement or relationship (including any indebtedness or guarantee of indebtedness) or any series of similar transactions, arrangements or relationships.

    3. The "amount involved in the transaction" shall be computed by determining the dollar value of the amount involved in the transaction in question, which shall include:

        a. In the case of any lease or other transaction providing for periodic payments or installments, the aggregate amount of all periodic payments or installments due on or after the beginning of the issuer's last fiscal year, including any required or optional payments due during or at the conclusion of the lease or other transaction providing for periodic payments or installments; and

        b. In the case of indebtedness, the largest aggregate amount of all indebtedness outstanding at any time since the beginning of the issuer's last fiscal year and all amounts of interest payable on it during the last fiscal year.

    4. In the case of a transaction involving indebtedness:

a. The following items of indebtedness may be excluded from the calculation of the amount of indebtedness and need not be disclosed:

amounts due from the related person for purchases of goods and services subject to usual trade terms, for ordinary business travel and expense payments and for other transactions in the ordinary course of business; and

Not Applicable

b. Disclosure need not be provided of any indebtedness transaction for beneficial owners of more than five percent (5%) of any class of the issuer's equity securities or such person's family members.

Not Applicable

5. Disclosure of an employment relationship or transaction involving an executive officer and any related compensation solely resulting from that employment relationship or transaction need not be provided. Disclosure of compensation to a director also need not be provided.

Not Applicable

6. A person who has a position or relationship with a firm, corporation, or other entity that engages in a transaction with the issuer shall not be deemed to have an indirect material interest for purposes of paragraph D of this Item XI where:

Not Applicable

a. The interest arises only:
   i. From such person's position as a director of another corporation or organization that is a party to the transaction; or
   ii. From the direct or indirect ownership by such person and all other related persons, in the aggregate, of less than a ten percent (10%) equity interest in another entity (other than a partnership) which is a party to the transaction; or
   iii. From both such position and ownership; or
b. The interest arises only from such person's position as a limited partner in a partnership in which the person and all other related persons have an interest of less than ten percent (10%), and the person is not a general partner of and does not hold another position in the partnership.

Not Applicable

7. Disclosure need not be provided pursuant to paragraph D of this Item XI if:
   a. The transaction is one where the rates or charges involved in the transaction are determined by competitive bids, or the transaction involves the rendering of services as a common or contract carrier, or public utility, at rates or charges fixed in conformity with law or governmental authority;

Not Applicable

        b. The transaction involves services as a bank depositary of funds, transfer agent, registrar, trustee under a trust indenture, or similar services; or

Not Applicable

        c. The interest of the related person arises solely from the ownership of a class of equity securities of the issuer and all holders of that class of equity securities of the issuer received the same benefit on a pro rata basis.

Not Applicable

8. Include information for any material underwriting discounts and commissions upon the sale of securities by the issuer where any of the specified persons was or is to be a principal underwriter or is a controlling person or member of a firm that was or is to be a principal underwriter.

Not Applicable

    E. Disclosure of Conflicts of Interest. Describe any conflicts of interest. Describe the circumstances, parties involved and mitigating factors for any executive officer or director with competing professional or personal interests.

Not Applicable


**Item XII Financial information for the issuer's most recent fiscal period.**

    *Instruction to Item XII:* The issuer shall post the financial statements required by this Item XII through the OTC Disclosure and News Service under the appropriate report name for the applicable period end. (If the financial statements relate to a fiscal year end, publish it as an "*Annual Report,*" or if the financial statements relate to a quarter end, publish it as a "*Quarterly Report*" or "*Interim Report*") **The issuer must state in its disclosure statement that such financial statements are incorporated by reference.** The issuer must also (i) provide a list in the disclosure statement describing the financial statements that are incorporated by reference, (ii) clearly explain where the incorporated documents can be found, and (iii) provide a clear cross-reference to the specific location where the information requested by this Item can be found in the incorporated documents.

The issuer shall provide the following financial statements for the most recent fiscal period (whether fiscal quarter or fiscal year).

1) balance sheet;
2) statement of income;
3) statement of cash flows;
4) statement of changes in stockholders' equity;
5) financial notes; and
6) audit letter, if audited

Annual report has been posted to PinkSheets.com

7)  Foreign private issuers that have furnished financial statements pursuant to Rule 12g3-2(b) under the Exchange Act can provide those same financial statements as an alternative to U.S. GAAP. For information regarding U.S. GAAP, see http://cpaclass.com/gaap/gaap-us-01a.htm.

The financial statements requested pursuant to this item shall be prepared in accordance with generally accepted accounting principles (GAAP)6 by persons with sufficient financial skills.

Information contained in annual financial statements will not be considered current more than 90 days after the end of the issuer's fiscal year immediately following the fiscal year for which such statement are provided, or with respect to quarterly financial statements, more than 45 days after the end of the quarter immediately following the quarter for which such statements are provided.

**Item XIII Similar financial information for such part of the two preceding fiscal years as the issuer or its predecessor has been in existence.**

Please provide the financial statements described in Item XII above for the issuer's two preceding fiscal years.

*Instruction to Item XIII:* The issuer shall either (i) attach the financial statements required by this Item XIII to its initial disclosure statement or (ii) post such financial statements through the OTC Disclosure and News Service as a separate report under the name of "*Annual Report*" for the applicable fiscal year end. **The issuer must state in its disclosure statement that such financial statements are incorporated by reference.** The issuer must also (x) provide a list in the disclosure statement describing the financial statements that are incorporated by reference, (y) clearly explain where the incorporated documents can be found, and (z) provide a clear cross-reference to the specific location where the information requested by this Item can be found in the incorporated documents.

Financial Information has been posted to PinkSheets.com

**Item XIV Beneficial Owners.**

Provide a list of the name, address and shareholdings of all persons beneficially owning more than five percent (5%) of any class of the issuer's equity securities. To the extent not otherwise disclosed, if any of the above shareholders are corporate shareholders, provide the name and address of the person(s) owning or controlling such corporate shareholders and the resident agents of the corporate shareholders.

Not Applicable

**Item XV The name, address, telephone number, and email address of each of the following outside providers that advise the issuer on matters relating to operations, business development and disclosure:**

1. Investment Banker

CJ Comu – The Barclay Group
14999 Preston Road,
Dallas, TX 75254-9116
(972) 386-3686

2. Promoters

Not Applicable

3. Counsel

Steve Block
BLOCK & GARDEN, LLP
Sterling Plaza
5949 Sherry Lane, Suite 900
Dallas, TX 75225
P: 214-866-0990
F: 214-866-0991

4. Accountant or Auditor - the information shall clearly (i) describe if an outside accountant provides audit or review services, (ii) state the work done by the outside accountant and (iii) describe the responsibilities of the accountant and the responsibilities of management (i.e. who audits, prepares or reviews the issuer's financial statements, etc.). The information shall include the accountant's phone number and email address and a description of the accountant's licensing and qualifications to perform such duties on behalf of the issuer.

Fred V. Schiemann, CPA
Biz2Biz.Com
429 W. Plumb Lane
Reno, NV 89509
(o)775-324-2012 Ext. 11
Accountant provided review services
Accountant assisted in putting together annual report
Management provided all information and assembled disclosure and report

5. Public Relations Consultant(s)

Not Applicable

6. Investor Relations Consultant

000254

Not Applicable

7. Any other advisor(s) that assisted, advised, prepared or provided information with respect to this disclosure statement - the information shall include the telephone number and email address of each advisor.

Not Applicable

## Item XVI Management's Discussion and Analysis or Plan of Operation.

*Instructions to Item XVI*
Issuers that have not had revenues from operations in each of the last two fiscal years, or the last fiscal year and any interim period in the current fiscal year for which financial statements are furnished in the disclosure statement, shall provide the information in paragraphs A and C of this item. All other issuers shall provide the information in paragraphs B and C of this item.
The discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition.
Issuers are not required to supply forward-looking information. This is distinguished from presently known data that will impact upon future operating results, such as known future increases in costs of labor or materials. This latter data may be required to be disclosed.
    A. Plan of Operation.
        1. Describe the issuer's plan of operation for the next twelve months. This description should include such matters as:

The company plans to distribute Zoyte automobiles in North America.

        i. a discussion of how long the issuer can satisfy its cash requirements and whether It will have to raise additional funds in the next twelve months;

The company will immediately need to raise funds to execute its business plan.  The continuation of the business is a going concern.

        ii. a summary of any product research and development that the issuer will perform for the term of the plan;

Not Applicable

        iii. any expected purchase or sale of plant and significant equipment; and

In accordance with business plan, the company intends to raise capital for 10 vehicles to be used for crash testing.

000255

iv. any expected significant changes in the number of employees.

May hire 5-10 employees

B. <u>Management's Discussion and Analysis of Financial Condition and Results of Operations</u>.

1. *Full fiscal years.* Discuss the issuer's financial condition, changes in financial condition and results of operations for each of the last two fiscal years. This discussion should address the past and future financial condition and results of operation of the issuer, with particular emphasis on the prospects for the future. The discussion should also address those key variable and other qualitative and quantitative factors that are necessary to an understanding and evaluation of the issuer. If material, the issuer should disclose the following:

i. Any known trends, events or uncertainties that have or are reasonably likely to have a material impact on the issuer's short-term or long-term liquidity;

The company is dependent on additional financing for operations. If there is a lack of financing operations will not continue. The company is currently in default of an unsecured note from The Barclay Group. The TBG can attempt to attain capital from the Company. The continuation of the business is a going concern.

ii. Internal and external sources of liquidity;

The company will make sales and sell dealership rights. The company is also seeking growth capital to fund internal growth.

iii. Any material commitments for capital expenditures and the expected sources of funds for such expenditures;

The company is expected to raise and spend Five Million Dollars in executing its business plan. This calls for getting Department of Transportation and EPA approval for its cars. Also the marketing of the vehicles to existing dealerships.

iv. Any known trends, events or uncertainties that have had or that are reasonably expected to have a material impact on the net sales or revenues or income from continuing operations;

General economy will have impact on sales.

v. Any significant elements of income or loss that do not arise from the issuer's continuing operations;

Non Applicable

000256

vi. The causes for any material changes from period to period in one or more line items of the issuer's financial statements; and

Not Applicable

vii. Any seasonal aspects that had a material effect on the financial condition or results of operation.

Not Applicable

> 2. *Interim Periods.* Provide a comparable discussion that will enable the reader to assess material changes in financial condition and results of operations since the end of the last fiscal year and for the comparable interim period in the preceding year.

The company has acquired assets and taken on debt for those assets.  The company has also secured a material agreement to be a distributor for Zoyte.

> C. <u>Off-Balance Sheet Arrangements</u>.
> 1. In a separately-captioned section, discuss the issuer's off-balance sheet arrangements that have or are reasonably likely to have a current or future effect on the issuer's financial condition, changes in financial condition, revenues or expenses, results of operations, liquidity, capital expenditures or capital resources that is material to investors. The disclosure shall include the items specified in paragraphs C(1)(i), (ii), (iii) and (iv) of this Item XVI to the extent necessary to an understanding of such arrangements and effect and shall also include such other information that the issuer believes is necessary for such an understanding.

Not Applicable

> i. The nature and business purpose to the issuer of such off-balance sheet arrangements;

Not Applicable

> ii. The importance to the issuer of such off-balance sheet arrangements in respect of its liquidity, capital resources, market risk support, credit risk support or other benefits;

Not Applicable

> iii. The amounts of revenues, expenses and cash flows of the issuer arising from such arrangements; the nature and amounts of any interests retained, securities issued and other indebtedness incurred by the issuer in connection with such

arrangements; and the nature and amounts of any other obligations or liabilities (including contingent obligations or liabilities) of the issuer arising from such arrangements that are or are reasonably likely to become material and the triggering events or circumstances that could cause them to arise; and

Not Applicable

iv. Any known event, demand, commitment, trend or uncertainty that will result in or is reasonably likely to result in the termination, or material reduction in availability to the issuer, of its off-balance sheet arrangements that provide material benefits to it, and the course of action that the issuer has taken or proposes to take in response to any such circumstances.

2. As used in paragraph C of this Item XVI, the term off-balance sheet arrangement means any transaction, agreement or other contractual arrangement to which an entity unconsolidated with the issuer is a party, under which the issuer has:

i. Any obligation under a guarantee contract that has any of the characteristics identified in paragraph 3 of FASB Interpretation No. 45, Guarantor's Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees of Indebtedness of Others (November 2002) ("FIN 45"), as may be modified or supplemented, and that is not excluded from the initial recognition and measurement provisions of FIN 45 pursuant to paragraphs 6 or 7 of that Interpretation;

ii. A retained or contingent interest in assets transferred to an unconsolidated entity or similar arrangement that serves as credit, liquidity or market risk support to such entity for such assets;

iii. Any obligation, including a contingent obligation, under a contract that would be accounted for as a derivative instrument, except that it is both indexed to the issuer's own stock and classified in stockholders' equity in the issuer's statement of financial position, and therefore excluded from the scope of FASB Statement of Financial Accounting Standards No. 133, Accounting for Derivative Instruments and Hedging Activities (June 1998), pursuant to paragraph 11(a) of that Statement, as may be modified or supplemented; or

iv. Any obligation, including a contingent obligation, arising out of a variable interest (as referenced in FASB Interpretation No. 46, Consolidation of Variable Interest Entities (January 2003), as may be modified or supplemented) in an unconsolidated entity that is held by, and material to, the issuer, where such entity provides financing, liquidity, market risk or credit risk support to, or engages in leasing, hedging or research and development services with, the issuer.

*Instructions to paragraph C of Item XVI*

i. No obligation to make disclosure under paragraph C of this Item XVI shall arise in respect of an off-balance sheet arrangement until a definitive agreement that is unconditionally binding or subject only to customary closing conditions exists or, if there is no such agreement, when settlement of the transaction occurs.

Case 10-03269-sgj Doc 8-4 Filed 11/08/10    Entered 11/08/10 13:58:30    Page 21 of 24

Case 3:14-cv-04163-B   Document 1-2   Filed 11/21/14   Page 65 of 256   PageID 300

ii. Issuers should aggregate off-balance sheet arrangements in groups or categories that provide material information in an efficient and understandable manner and should avoid repetition and disclosure of immaterial information. Effects that are common or similar with respect to a number of off-balance sheet arrangements must be analyzed in the aggregate to the extent the aggregation increases understanding. Distinctions in arrangements and their effects must be discussed to the extent the information is material, but the discussion should avoid repetition and disclosure of immaterial information.

iii. For purposes of paragraph C of this Item XVI only, contingent liabilities arising out of litigation, arbitration or regulatory actions are not considered to be off-balance sheet arrangements.

iv. Generally, the disclosure required by paragraph C of this Item XVI shall cover the most recent fiscal year. However, the discussion should address changes from the previous year where such discussion is necessary to an understanding of the disclosure.

In satisfying the requirements of paragraph C of this Item XVI, the discussion of off-balance sheet arrangements need not repeat information provided in the footnotes to the financial statements, provided that such discussion clearly cross-references to specific information in the relevant footnotes and integrates the substance of the footnotes into such discussion in a manner designed to inform readers of the

significance of the information that is not included within the body of such discussion.

## Part E Issuance History

**Item XVII List of securities offerings and shares issued for services in the past two years.**

List below any events, in chronological order, that resulted in changes in total shares outstanding by the issuer (1) within the two-year period ending on the last day of the issuer's most recent fiscal year and (2) since the last day of the issuer's most recent fiscal year.

The list shall include all offerings of securities, whether private or public, and shall indicate:

Not Applicable

(i) The nature of each offering (e.g., Securities Act Rule 504, intrastate, etc.);
(ii) Any jurisdictions where the offering was registered or qualified;
(iii) The number of shares offered;
(iv) The number of shares sold;
(v) The price at which the shares were offered, and the amount actually paid to the issuer;
(vi) The trading status of the shares; and

(vii) Whether the certificates or other documents that evidence the shares contain a legend

Not Applicable

(1) stating that the shares have not been registered under the Securities Act and (2) setting forth or referring to the restrictions on transferability and sale of the shares under the Securities Act.

The list shall also include all shares or any other securities or options to acquire such securities issued for services in the past two fiscal years and any interim periods, describing (1) the securities, (2) the persons or entities to whom such securities were issued and (3) the services provided by such persons or entities.
With respect to private offerings of securities, the list shall also indicate the identity of the persons who purchased securities in such private offering; *provided*, *however*, that in the event that any such person is an entity, the list shall also indicate (a) the identity of each natural person beneficially owning, directly or indirectly, more than five percent (5%) of any class of equity securities of such entity and (b) to the extent not otherwise disclosed, the identity of each natural person who controlled or directed, directly or indirectly, the purchase of such securities for such entity.

Not Applicable

## Part F Exhibits

The following exhibits must be either described in or attached to the disclosure statement:

**Item XVIII Material Contracts.**

A. Every material contract, not made in the ordinary course of business, that will be performed after the disclosure statement is posted through the OTC Disclosure and News Service or was entered into not more than two years before such posting. Also include the following contracts:

1) Any contract to which directors, officers, promoters, voting trustees, security holders named in the disclosure statement, or the Designated Advisor for Disclosure are parties other than contracts involving only the purchase or sale of current assets having a determinable market price, at such market price;

Not Applicable

2) Any contract upon which the issuer's business is substantially dependent, including but not limited to contracts with principal customers, principal suppliers, and franchise agreements;

000260

Not Applicable

> 3) Any contract for the purchase or sale of any property, plant or equipment for consideration exceeding 15 percent of such assets of the issuer; or

Not Applicable

> 4) Any material lease under which a part of the property described in the disclosure statement is held by the issuer.

Not Applicable

> B. Any management contract or any compensatory plan, contract or arrangement, including but not limited to plans relating to options, warrants or rights, pension, retirement or deferred compensation or bonus, incentive or profit sharing (or if not set forth in any formal document, a written description thereof) in which any director or any executive officer of the issuer participates shall be deemed material and shall be included; and any other management contract or any other compensatory plan, contract, or arrangement in which any other executive officer of the issuer participates shall be filed unless immaterial in amount or significance.

Not Applicable

> C. The following management contracts or compensatory plans need not be included:

> All material contracts have:

> 1) Ordinary purchase and sales agency agreements;

Not Applicable

> 2) Agreements with managers of stores in a chain organization or similar organization;

Not Applicable

> 3) Contracts providing for labor or salesmen's bonuses or payments to a class of security holders, as such; and

Not Applicable

> 4) Any compensatory plan that is available to employees, officers or directors generally and provides for the same method of allocation of benefits between management and non-management participants

Not Applicable

## Item XIX Articles of Incorporation and Bylaws.

A. A complete copy of the issuer's articles of incorporation or in the event that the issuer is not a corporation, the issuer's certificate of organization. Whenever amendments to the articles of incorporation or certificate of organization are filed, a complete copy of the articles of incorporation or certificate of organization as amended shall be filed.

Articles of Incorporation and Amendment to Articles of Incorporation have been posted on pink sheets

B. A complete copy of the issuer's bylaws. Whenever amendments to the bylaws are filed, a complete copy of the bylaws as amended shall be filed.

Not Applicable

## Item XX Purchases of Equity Securities by the Issuer and Affiliated Purchasers.

| A. In the following tabular format, provide the information specified in paragraph (B) of this Item XX with respect to any purchase made by or on behalf of the issuer or any "Affiliated Purchaser" (as defined in paragraph (C) of this Item XX) of shares or other units of any class of the issuer's equity securities. **Version 9.7 Updated on 07/22/2009** Page 23 of 39 **ISSUER PURCHASES OF EQUITY SECURITIES** |||||
|---|---|---|---|---|
| Period | Column (a)<br>Total Number of Shares (or Units) Purchased | Column (b)<br>Average Price Paid per Share (or Unit) | Column (c)<br>Total Number of Shares (or Units) Purchased as Part of Publicly Announced Plans or Programs | Column (d)<br>Maximum Number (or Approximate Dollar Value) of Shares (or Units) that May Yet Be Purchased Under the Plans or Programs |
| **Month #1**<br>(identify beginning and ending dates) | | | | |
| **Month #2**<br>(identify beginning and ending dates) | | | | |
| **Month #3**<br>(identify beginning and ending dates) | | | | |
| **Total** | | | | |

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CHAPTER 7 |
| CENGIZ J. COMU a/k/a CJ COMU, | § § | CASE NO.  09-38820-sgj7 |
| | § § | |
| Debtor. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § § § | |
| Defendant. | § | |

### PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND SUPPORTING BRIEF

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

King Louie Mining, LLC, King Louie Enterprises, LLC, and Ronald Katz, Plaintiffs, hereby

file this Response to Defendant's Motion to Dismiss, and in support thereof would show as follows:

### MOTION FOR LEAVE TO AMEND

Although Plaintiffs vigorously dispute Defendant's claims that their allegations are deficient,

Plaintiffs are simultaneously filing their Motion for Leave to Amend their Complaint by filing their

proposed First Amended Complaint, to which reference is made.  Although Plaintiffs dispute that

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS AND SUPPORTING BRIEF–**                                                    **Page 1**

all the detail set forth therein is necessary to state a claim under 11 U.S.C. §727(d), rather than

allowing any argument whatsoever, Plaintiffs would prefer to add the detail set forth therein because

the same will in any event be detailed in discovery and disclosure responses.

## BACKGROUND FACTS

Plaintiffs brought this action for relief under Section 727(d) of the United States Bankruptcy

Code, seeking an immediate revocation of the bankruptcy discharge. As set forth in Plaintiffs'

complaint, the Defendant achieved the discharge by fraudulently concealing and failing to disclose

assets and sources of income that he was required by law to disclose, and has obtained a discharge

by fraud upon the Court, the Trustee, and the Creditors herein.

Defendant was the managing partner of Sunset Pacific, L.P.[1] until he transferred his

controlling interest in said entity to his wife for no consideration, and began utilizing his wife as a

front for continuation of his management of assets which he indirectly owns and controls, in an effort

to hide the same from his creditors. This no-consideration transfer of the controlling interest by

Defendant in Sunset Pacific, L.P. was fraudulent.  Amended Complaint at 6-7.

Sunset Pacific was the entity into which Comu paid the $500,000 kickback that he received

from the transaction in 2004, while he was CEO of a public company, Humitech International Group,

Inc. ("Humitech International"), as a part of a $2 million purchase of worthless mining claims.

Amended Complaint at 4-5.   Sunset Pacific holds interests in various entities, including, but not

limited to, The Barclay Group, Inc. Defendant is the current CEO of The Barclay Group and The

---

[1] *See* "Confidential Memorandum", attached as Exhibit "B", to Plaintiffs' Proposed First
Amended Complaint (hereafter "Amended Complaint"), sent from CJ Comu as the Managing
Director of Sunset Pacific, L.P.".

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS AND SUPPORTING BRIEF–**                                    **Page 2**

Barclay Group has substantial assets, having recently loaned ninety-thousand dollars to a third-party.[2]

A limited ownership interest in Sunset Pacific, and indirectly owned interest in the Barclay Group, was disclosed in Comu's Schedules. At the First Meeting of Creditors herein, Defendant testified that he had fully disclosed his assets and liabilities on the Schedules he filed with the Court. He further claimed that his interest in certain corporations, partnerships, and other entities was correctly disclosed in these Schedules.

Subsequent investigation, however, following the First Meeting and the automatic entry of discharge, has disclosed the following. Plaintiffs have subsequently discovered numerous fraudulent transfers, hidden assets and employment positions of Comu which existed prior to the Order of Discharge herein, which were required to be disclosed, and which were not disclosed. Such assets and fraudulent transfers were material and materially impacted the true net worth of the Defendant. As such, Defendant fraudulently concealed eligible bankruptcy assets in violation of the Bankruptcy Code. As the Plaintiffs are Bankruptcy Creditors, Plaintiffs have been harmed by this fraud.

## ARGUMENT

## I.

## THE COMPLAINT STATES A CLAIM
## FOR RELIEF UNDER RULE 12(b)(6)

Motions to dismiss for failure to state a claim under Rule 12(b)(6)[3] are viewed with disfavor

---

[2] *See* "Offering Disclosure Sheet" attached as Exhibit "C", to Amended Complaint, which identifies The Barclay Group, represented by CJ Comu, as the "Investment Banker" for a stock offering. Further, this offering sheet states that The Barclay Group recently loaned Green Automotive Company, Inc. ninety-thousand dollars.

[3] USCS Fed. Rules Civ. Proc. R. 12(b)(6).

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS AND SUPPORTING BRIEF–**                                    **Page 3**

and are rarely granted.[4] Accordingly, the Court must take all factual allegations in the Plaintiff's pleading as true.[5] In evaluating a motion to dismiss for failure to state a claim, "all questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor."[6]

"Given the Federal Rules' simplified standard for pleading, [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[7] And unless it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed for failure to state a claim .[8]

Defendant's Motion to Dismiss contends that Plaintiff's Complaint failed to state a claim for relief.  In support of this contention, Defendants assert that the Plaintiffs' claims are based on vague and conclusory allegations and that, Plaintiffs have not alleged a single fact that Defendant engaged in fraud in obtaining his bankruptcy discharge.

On the contrary, Plaintiffs have alleged the following facts:

- Defendant transferred substantial assets, including a controlling interest in Sunset Pacific, L.P., to his wife for little

---

[4] *Southern Christian Leadership Conference v. Supreme Court*, 252 F.3d 781, 786 (5th Cir. 2001).

[5] *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001); accord *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 310 (5th Cir. 2002).

[6] *Id.*

[7] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quotation omitted)

[8] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS AND SUPPORTING BRIEF–**                                    **Page 4**

or no consideration.[9]

- Defendant executed such transfers in order to shield the assets from judgments or bankruptcy proceedings.[10]

- Defendant's wife is a front for Sunset Pacific, L.P. and Defendant remains in control of the company.[11]

- Sunset Pacific, L.P. was the benefactor of at least five-hundred thousand dollars ($500,000) in fraudulently obtained funds.[12]

- Defendant failed to disclose his interests in Sunset Pacific, L.P. to the Bankruptcy Creditors.[13]

- Sunset Pacific, L.P. presently controls substantial assets, including an ownership interest in The Barclay Group, Inc.[14]

- Defendant controls The Barclay Group, Inc.[15]

- The Barclay Group, Inc. has substantial assets.[16]

As Defendant's transfer of his control in Sunset Pacific, L.P. to his wife was for no

_____

[9] *See* Plaintiffs' "Complaint to Revoke Discharge Pursuant to Section 727(d) of the United States Bankruptcy Code", page 5.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* at 5 - 7.

[14] *Id.* at 6.

[15] *Id.*

[16] *Id.*

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION**
**TO DISMISS AND SUPPORTING BRIEF–**                                    **Page 5**

consideration, it was fraudulent.[17] At the time of the transfer, Comu was fully aware of not only the claims of Plaintiffs that as CEO he had taken an illegal kickback (*see* Amended Complaint at 4-5 and Exhibit "A" thereto), but he was also a defendant in a lawsuit alleging fraud filed by a former investor in an earlier public company of which he had served as CEO. [18] As the transfer of Comu's controlling interest in Sunset Pacific for no consideration and as a sham was fraudulent and subject to revocation, Defendant had a duty to disclose such transaction, and all assets of Sunset Pacific, to the Bankruptcy Creditors. By failing to disclose his interests in these assets, Defendant fraudulently obtained a discharge from this Court. As Creditors herein, Plaintiffs were direct victims of the fraud.

Plaintiffs have discovered that Comu failed to disclose all of the assets he indirectly owned through Sunset Pacific and The Barclay Group, including but not limited to the following:

- ► Consulting services and disguised ownership interest in Partners National Real Estate, LLC, and subsidiaries;

- ► Ownership rights for Artfest International, Inc., and/or Artfest Overseas;

- ► Consulting services and other interests in Art Channel, Inc.;

- ► Valuable sports memorabilia actually owned by Sun Sports Entertainment,

---

[17] 11 U.S.C. §544(b)(1) and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), §24.005(a)(1), TEX. BUS. AND COMM. CODE; *see, Faulkner v. Kornman*, 413 B. R. 438, 468 (Bankr. N. D. Tex. 2009).

[18] In *New Millennium Capital Partners II, LLC and AJW Partners LLC v. Humitech International Group Inc., and CJ Comu*, Case No: 3:06-CV-1180-L, formerly pending in the United States District Court for the Northern District of Texas, Dallas Division, Comu was accused of fraudulent transfers and diversion of corporate opportunities from the company of which he was CEO, Airtech International Group, Inc., to form Humitech International Group, Inc. This case, the third making substantially identical allegations, was the refiling of claims made years earlier, but dismissed by agreement tolling the statute of limitations. Such allegations had been pending, therefore, against Comu since approximately May, 2003. Amended Complaint at 4.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS AND SUPPORTING BRIEF–** **Page 6**

Inc., a public company of which Comu was CEO, which mysteriously disappeared when Sun Sports ceased doing business, and which are believed to have been concealed from creditors by Comu;

▸ On information and belief, Comu has a practice of receiving restricted stock in companies for whom he consults through The Barclay Group, and washes such stock through affiliated relationships in the French Riviera, selling the same, and concealing the illegal proceeds overseas;

▸ While in bankruptcy, Comu, through The Barclay Group, loaned $90,000 to Green Automotive Company, Inc., and, on information and belief, obtained certain stock or stock options as part of the consideration (*see*, Exhibit "C" attached hereto);

▸ Consulting services and other involvement with Eller Industries, Inc.;

▸ Dealings with Mars Orbit Fund, Ltd.;

▸ Dealings with Capital Management Group, Inc.;

▸ Dealings with I.R.A. Oil & Gas, Inc.,;

▸ Dealings with JL Media Services LLC;

▸ Dealings with Temeku Financial;

▸ Dealings with various entities, referred to as "ARTI, AL, USR, VOIP, SR, MetiScan, Med Tech, Cool It, Donson, Houston, and Nano," none of which were listed; and

▸ Dealings with Ultimate Sports Resort, and receipt of $100,000 payment relating thereto.

Amended Complaint at 7-8.

Plaintiffs have stated a claim upon which relief may be granted and the Court must deny this motion to dismiss for failure to state a claim under Rule 12(b)(6).

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS AND SUPPORTING BRIEF–**                                        **Page 7**

## II.

## THE COMPLAINT SATISFIES RULE 9(b)

Plaintiff s have pleaded with particularity in their original Complaint, and have included actual details of the fraudulent conduct; therefore the Court must deny this motion to dismiss under Rule 9(b)[19]. "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out."[20] Plaintiffs have alleged that Defendant CJ Comu (**who**) knowingly or recklessly misrepresented his assets to this Court in order to obtain a discharge (**what**) during this bankruptcy proceeding (**when and where**) by not including various assets, including his true extent of interests in Sunset Pacific, L.P. and The Barclay Group, Inc., and all assets indirectly owned and controlled through those entities (**how**).

In reliance upon Defendant's representations, this Court granted Defendant a bankruptcy discharge. As Creditors in the Bankrupty proceedings, Plaintiffs suffered direct injury when the discharge was granted.  As under Rule 12(b)(6), in a Rule 9(b) motion to dismiss, "the court must accept the factual allegations set forth in the complaint as true and must draw all reasonable inferences in favor of the plaintiff."[21]  Accordingly, Plaintiffs have satisfied every requirement of Rule 9(b).

---

[19]  USCS Fed. Rules Civ. Proc. R. 9(b).

[20] *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. Tex. 2003) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)); *see also Herrmann Holdings, Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (holding that 9(b) requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.")

[21] *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS AND SUPPORTING BRIEF–**                                     **Page 8**

000270

## III.

## ALTERNATIVELY, PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND

In the event that the Court agrees with any of Defendant's arguments that greater specificity is required than presently in the Original Complaint, Plaintiffs alternatively request that they be granted leave to amend by filing their First Amended Complaint, which adds much greater detail concerning assets not fully disclosed.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, Defendant Debtor's Motion to Dismiss be denied, and that Plaintiffs recover their reasonable attorney's fees incurred defending the Motion, and for general relief.

Respectfully submitted,

**LAW OFFICES OF LIPPE & ASSOCIATES**

By:      /s/   Emil Lippe, Jr.
Emil Lippe, Jr.
State Bar No. 12398300
Law Offices of Lippe & Associates
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas  75201
Telephone:      (214) 855-1850
Facsimile:      (214) 720-6074
Email:            emil@texaslaw.com

ATTORNEYS FOR PLAINTIFFS KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS AND SUPPORTING BRIEF–**                                    **Page 9**

000271

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this $\underline{\;8^{th}\;}$ day of November, 2010, I electronically

submitted the foregoing document with the Clerk of the Court for the U.S. Bankruptcy Court,

Northern District of Texas, using the electronic case filing system of the Court, which will then send

a notification of such filing to the following:

    Dennis Olson
    Olson, Nicoud & Gueck, L.L.P.
    1201 Main St., Ste 2470
    Dallas, TX 75202


                            /s/  Emil Lippe, Jr.
                            Emil Lippe, Jr.


**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS AND SUPPORTING BRIEF–**                       **Page 10**



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_(signature)_

**United States Bankruptcy Judge**

Signed January 07, 2011

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| IN RE: | § § § | CHAPTER 7 |
| CENGIZ J. COMU a/k/a CJ COMU, | § § § § | CASE NO.  09-38820-sgj7 |
| Debtor. | § | |

|  |  |  |
|---|---|---|
| KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § § § | |
| Defendant. | § | |

**ORDER ON MOTION TO DISMISS AND MOTION TO AMEND**

On the 9th day of November, 2010, came on for hearing Defendant CJ Comu's Motion to

Dismiss Complaint, pursuant to Fed. Rules Civil Procedure 12(b)(6).  After hearing the arguments

of counsel, and upon consideration of the matters on file herein, and upon other due consideration,

**ORDER ON MOTION TO DISMISS AND MOTION TO AMEND - PAGE  1**

the Court is of the opinion that the following Order should be entered.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff is given leave to amend, and the proposed First Amended Complaint in the form previously tendered shall be received by the Clerk and deemed filed as of the date of entry of this Order.  Defendant shall answer or otherwise respond to Plaintiffs' First Amended Complaint within ten (10) days after the filing of the Amended Complaint.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Motion to Dismiss is DENIED as moot.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the case is removed from the docket of this Court for the week of January 11, 2011.  Counsel for the parties are ORDERED to confer and submit a proposed amended scheduling order for the trial of this case, to be submitted within ten (10) days from the date of this Order.

IT IS SO ORDERED.

### ###END OF ORDER###

**ORDER ON MOTION TO DISMISS AND MOTION TO AMEND - PAGE  2**

Dennis Olson
State Bar No. 15273500
OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 – Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

ATTORNEYS FOR CJ COMU

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CENGIZ J. COMU a/k/a | § | CASE NO. 09-38820-sgj-7 |
| CJ COMU, | § | |
|     Debtor. | § | CHAPTER 7 |
| _____ | § | |
| | § | |
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, | § | |
| and RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Adversary Case no. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a | § | |
| CJ COMU | § | |
|     Defendant. | § | |

**DEFENDANT CJ COMU'S SECOND MOTION TO DISMISS
COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**

NOW COMES Defendant CJ Comu, and in response to the Plaintiffs' First Amended

Complaint to Revoke Discharge Pursuant to Section 727 (d) of the United States Bankruptcy

Code ("Complaint"), files this his Second Motion to Dismiss the Complaint, Pursuant to Fed.

Rules Civ. Proc. Rule 12(b)(6) ("Motion") and in support thereof would respectfully show the

**DEFENDANT CJ COMU'S SECOND MOTION TO DISMISS
COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**        **Page - 1**

Court as follows:

1.      The Plaintiffs' allegations are fairly succinctly set forth in Plaintiff's' Complaint.

2.      Basically, the Complaint seeks to revoke the discharge of this individual Debtor because his discharge was obtained by fraud.

3.      Assuming, arguendo, that Plaintiff can introduce evidence to support the allegations in the Complaint, Defendant files this Motion pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief can be granted. Defendant reurges his Brief (Docket Entry #6) and incorporates it by reference in support of this Motion.

4.      The Plaintiffs' allegations do not establish that the Debtor's discharge was obtained by fraud in fact, nor do the allegations establish that the fraud in fact was not discovered by Plaintiffs until after the discharge was entered.

5.      Plaintiffs have not pled with sufficient specificity, as required to do, in order to state a cause of action against the individual Debtor for fraud in obtaining a discharge under Section 727 (d) of the Bankruptcy Code.

6.      Indeed, Plaintiff cannot show any act by the individual Debtor that would constitute such fraud.

7.      All that has happened in this case is that the Plaintiffs rehash allegations that are years old, allegations that Plaintiffs have heard about and raised for years.

8.      Plaintiffs had actual notice of this bankruptcy, and their attorney of record for them did in fact attend the meeting of creditors in this case and reviewed additional documents

**DEFENDANT CJ COMU'S SECOND MOTION TO DISMISS**
**COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**                    **Page - 2**

produced by the Debtor to the Trustee after the meeting of creditors.

9.      Neither the Trustee nor the Plaintiffs requested any additional documents, nor did they request a Rule 2004 examination, nor did they file an exception or objection to discharge.

10.     Plaintiffs' Complaint does not establish, with the requisite specificity, what it is, if anything, that has been discovered since entry of the discharge that constitutes fraud in fact in obtaining the Debtor's discharge.

WHEREFORE, PREMISES CONSIDERED, Defendant CJ Comu prays that the Court, after notice and hearing, will dismiss the Complaint by Plaintiffs, deny all relief sought by the Plaintiffs, grant the Defendant his costs incurred, and grant Defendant CJ Comu such other and further relief as to which he may be justly entitled, either at law or in equity.

Respectfully submitted,

OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 - Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

By: /s/   Dennis Olson
        Dennis Olson
        State Bar No. 15273500

ATTORNEYS FOR CJ COMU

**DEFENDANT CJ COMU'S SECOND MOTION TO DISMISS**
**COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**                    **Page - 3**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Defendant CJ Comu's Second Motion to Dismiss Complaint, Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6) was served upon:

Emil Lippe, Jr.
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S 2460
Dallas, Texas 75201

via electronic means and by cm,rrr, on the 20th day of January, 2011.


 /s/ Dennis Olson
Dennis Olson


**DEFENDANT CJ COMU'S SECOND MOTION TO DISMISS**
**COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**          **Page - 4**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO.  09-38820-sgj7 |
| | § | |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, KING | § | |
| LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
SECOND MOTION TO DISMISS AND SUPPORTING BRIEF**

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

King Louie Mining, LLC, King Louie Enterprises, LLC, and Ronald Katz, Plaintiffs, hereby

file this Response to Defendant's Motion to Dismiss, and in support thereof would show as follows:

**BRIEF BACKGROUND FACTS**

1.    Plaintiffs have alleged that Defendant CJ Comu has concealed the existence of, or

misrepresented the value and extent of, assets which he owns and controls, primarily through a

complex corporate structure involving Sunset Pacific, L.P. , and a company that he controls through

his control of Sunset Pacific, known as The Barclay Group, Inc. ("The Barclay Group"), either

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
SECOND MOTION TO DISMISS AND SUPPORTING BRIEF - Page 1**

000279

failing to disclose or purposely undervaluing, numerous business interests, valuable stock, and other assets.[1] Although other people, including Comu's wife, are listed as having controlling interests in Sunset Pacific and The Barclay Group, such entities are mere alter egos of Defendant Comu that exist for his personal use and benefit.

2.      A limited ownership interest in Sunset Pacific, and an indirectly owned interest in the Barclay Group, was disclosed in Comu's Schedules. At the First Meeting of Creditors herein, Defendant testified that he had fully disclosed his assets and liabilities on the Schedules he filed with the Court. He further claimed that his interest in certain corporations, partnerships, and other entities was correctly disclosed in these Schedules.

3.      Investigation by the Plaintiffs after the discharge was granted revealed that Defendant Comu's true interests in Sunset Pacific and The Barclay Group, Inc. were grossly misrepresented to the Creditors herein. Plaintiffs have determined that in fact Comu is exercising complete control and dominance of such companies and their assets, that Comu has been receiving an ongoing influx of new opportunities and business through such entities, and even somehow loaned $50,000 to a company in which he indirectly had an interest at the same time that he was allegedly bankrupt. Accordingly, Plaintiffs have alleged that the discharge was obtained by the fraud under Section 727(d) of the United States Bankruptcy Code.

4.      Defendant Comu now seeks to dismiss Plaintiffs' First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, having filed his second motion to dismiss in

---

[1] *See* PLAINTIFFS' FIRST AMENDED COMPLAINT, Filed November 8, 2010, Docket No. 8.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
SECOND MOTION TO DISMISS AND SUPPORTING BRIEF - Page 2**

an attempt to continue forestalling the need to answer Plaintiffs' allegations on the merits.[2]

# ARGUMENT

## I.

## THE COMPLAINT STATES A CLAIM
## FOR RELIEF UNDER RULE 12(b)(6)

5.    Motions to dismiss for failure to state a claim under Rule 12(b)(6) are viewed with disfavor and are rarely granted.[3] Accordingly, the Court must take all factual allegations in the Plaintiff's pleading as true.[4] In evaluating a motion to dismiss for failure to state a claim, "all questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor."[5]

6.    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] And unless it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would

---

[2] USCS FED. RULES CIV. PROC. R. 12(b)(6).

[3] *Southern Christian Leadership Conference v. Supreme Court*, 252 F.3d 781, 786 (5th Cir. 2001).

[4] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001); *accord McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 310 (5th Cir. 2002).

[5] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[6] *Iqbal*, 129 S. Ct. at 1949 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**SECOND MOTION TO DISMISS AND SUPPORTING BRIEF - Page 3**

entitle him to relief," the complaint should not be dismissed for failure to state a claim .[7]  While much has been said about the recent decisions of the Supreme Court which supposedly have tightened the pleading requirements, it is still clear that specific allegation of all facts is not necessary.  As the Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), allegations simply need to set forth a plausible basis for relief, not mere formulaic recitations:

> While a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does not need detailed factual allegations, *ibid.,* a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.  Applying these general standards to a § 1 claim, stating a claim requires a complaint with enough factual matter to suggest an agreement.  Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.

*Id.*  In applying these standards to Plaintiffs' Amended Complaint, it is clear that the Complaint adequately alleges specific facts, and sets forth a plausible basis for recovery.

7.     Defendant's Second Motion to Dismiss contends that Plaintiffs' Complaint failed to state a claim for upon which relief can be granted. In doing so, Defendant points to no specific defect in the Plaintiffs' complaint.  Ironically, it is the Second Motion to Dismiss which violates the proscription of *Bell Atlantic Corp. v. Twombly*, by resorting to conclusory allegations, labels and conclusions, and a formulaic recital of boilerplate assertions.

8.     Plaintiffs have alleged that Defendant Comu obtained a bankruptcy discharge by failing to disclose his true interests in a variety of businesses and assets, primarily his alter egos Sunset Pacific, L.P. and The Barclay Group, Inc. Plaintiffs have asserted a number of facts upon

---

[7] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

which said allegation is based.[8]  Plaintiffs have further asserted that the discovery of this alleged

fraud did not occur until after the discharge was granted.[9] Because, for purposes of Rule 12(b)(6),

the Court must accept all of Plaintiffs' factual allegations as true, Plaintiffs have absolutely stated

a claim upon which relief may be granted and Defendant's motion must be denied.

## II.

### PLAINTIFFS' COMPLAINT DOES NOT LACK THE REQUIRED SPECIFICITY UNDER SECTION 727(d) AND EVEN IF IT DID, SUCH A DEFECT WOULD NOT MAKE THE COMPLAINT SUBJECT TO A RULE 12(b)(6) DISMISSAL

9.     Additionally, Defendant argues that Plaintiffs' Complaint lacks the specificity

required under Section 727(d) of the United States Bankruptcy Code. Though Defendant did not

reference Rule 9(b) of the Federal Rules of Civil Procedure in his motion, the "who, what, when,

where and why" standard for specificity and/or particularity used for Rule 9(b) is similarly used for

727(d).[10]  Plaintiffs have alleged that through fraudulent transfers, Defendant CJ Comu has hidden

and misrepresented the true nature of his holdings in multiple business entities, which he operates

as alter egos, and numerous other assets in order to obtain a bankruptcy discharge from this court.

Such allegations satisfy the "who, what, when, where and why" pleading standard for Section 727(d).

10.     Further, so long as the circumstances constituting the fraud have been sufficiently set

forth, it is not necessary for the Plaintiffs to plead each fraudulent detail.[11]  Again, the overarching

requirement is that the "plausibility" standard of *Bell Atlantic Corp. v. Twombly* must be met.

---

[8] *See* PLAINTIFFS' FIRST AMENDED COMPLAINT, Filed November 8, 2010, Docket No. 8.

[9] *Id.*

[10] *Rezin v. Barr (In re Barr)*, 207 B.R. 168, 173 (Bankr. N.D. Ill. 1997).

[11] *See e.g., Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 653 (7th Cir. 1984).

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**SECOND MOTION TO DISMISS AND SUPPORTING BRIEF - Page 5**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In fact, because Plaintiff did not discover this fraud until after the discharge, Plaintiffs did not have the ability to request additional documents or conduct any discovery into the matter. Plaintiffs cannot plead the full extent of Defendant's fraud until they obtain discovery.[12]

11.     As noted, Plaintiffs are confident that the present pleadings contain the required specificity or particularity required under Section 727(d), but even if the pleadings did not, such a defect would not support a Rule 12(b)(6) motion to dismiss:

> " While the Amended Complaint-paragraphs 28 and 30 in particular-lack the required specificity, the Court cannot conclude that MEI has failed to state a claim under § 727(d)(1) upon which relief can be granted. MEI has alleged fraudulent pre- and post-petition conduct which was not discovered until after entry of the discharge. These allegations are sufficient for Rule 12(b)(6) purposes, and the Court cannot conclude at this point in the proceeding that MEI is incapable of proving a set of facts upon which the discharge must be revoked." [13]

At this point in the proceedings, Plaintiffs are not required to plead the 727(d) claims with particularity or specificity.[14] Plaintiffs must merely satisfy Rule 12(b)(6) and state a claim upon which relief may be granted. Even so, as discussed previously, Plaintiffs have pleaded with the required 727(d) specificity and, more importantly, Plaintiffs allegations assuredly satisfy Rule 12(b)(6).

---

[12] *See Katz v. Household Inter., Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996)(holding that a Plaintiff is not required to plead to fraudulent facts that they have yet to discover prior to discovery).

[13] *Motor Enters., Inc. v. Gonzalez (In re Gonzalez)*, 2003 Bankr. LEXIS 2166 (Bankr. S.D. Ind. Oct. 20, 2003)(internal citations removed).

[14] *See id.*

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**SECOND MOTION TO DISMISS AND SUPPORTING BRIEF - Page 6**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, Defendant Debtor's Second Motion to Dismiss be denied, and that Plaintiffs recover their reasonable attorney's fees incurred defending the Motion, and for general relief.

Respectfully submitted,

**LAW OFFICES OF LIPPE & ASSOCIATES**

By:   /s/   Emil Lippe, Jr.
Emil Lippe, Jr.
State Bar No. 12398300
Law Offices of Lippe & Associates
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas  75201
Telephone:      (214) 855-1850
Facsimile:      (214) 720-6074
Email:            emil@texaslaw.com

ATTORNEYS FOR PLAINTIFFS KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this  11th  day of February, 2011, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. Bankruptcy Court, Northern District of Texas, using the electronic case filing system of the Court, which will then send a notification of such filing to the following:

      Dennis Olson
      Olson, Nicoud & Gueck, L.L.P.
      1201 Main St., Ste 2470
      Dallas, TX 75202

                           /s/  Emil Lippe, Jr.
                           Emil Lippe, Jr.



US BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____

**United States Bankruptcy Judge**

**Signed February 24, 2011**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CENGIZ J. COMU a/k/a | § | CASE NO. 09-38820-sgj-7 |
| CJ COMU, | § | |
|     Debtor. | § | CHAPTER 7 |
| _____ | § | |
| | § | |
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, | § | |
| and RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Adversary Case no. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a | § | |
| CJ COMU | § | |
|     Defendant. | § | |

**<u>ORDER CONDITIONALLY DENYING SECOND MOTION TO DISMISS</u>**

On February 14, 2011, the Court heard Defendant C.J. Comu's Second Motion to

Dismiss Complaint, Pursuant to Fed. Rules Civ. Proc. 12(b)(6) ("Defendant's Second Motion").

Plaintiffs and Defendant were represented by their respective attorneys of record.    After

000287

reviewing the pleadings and arguments of Plaintiffs and Defendant, the Court finds that, for the reasons stated and the cases cited by the Court on the record, Plaintiffs should be given one more chance to amend their complaint and plead with sufficient specificity their allegations against Defendant. The Court further finds that Plaintiffs' next amended complaint must particularly identify the subsection(s) of Section 727(d) that Plaintiffs rely upon, and state when and how Plaintiffs learned the facts which are the basis for their complaint. The Court further finds that, if Plaintiffs are alleging that part of their Complaint is based upon one or more fraudulent transfers, Plaintiffs must in each instance state, to the best of their present ability without obtaining discovery, when the transfer was made and explain the standing of Plaintiffs to prosecute the fraudulent transfer claim.

Therefore, it is ORDERED that Defendant's Second Motion is conditionally Denied. Plaintiffs are ORDERED to file their next amended complaint within twenty days of the entry of this order. Defendant is ORDERED to file an answer or other responsive pleading within twenty days of the filing of Plaintiffs' next amended complaint. If Plaintiffs do not timely file their next amended complaint, the Court will enter an Order dismissing this adversary proceeding.

# # # End of Order # # #

APPROVED AS TO FORM:

/s/ Dennis Olson
Dennis Olson
OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 – Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

/s/   Emil Lippe, Jr.
Emil Lippe, Jr.
State Bar No. 12398300
Law Offices of Lippe & Associates
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas  75201
Telephone:    (214) 855-1850
Facsimile:    (214) 720-6074
Email:            emil@texaslaw.com

000289

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO. 09-38820-sgj7 |
| | § | |
| | § | |
| Debtor. | § | |

---

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ, | § | § |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
| Defendant. | § | |

**MOTION OF PLAINTIFFS FOR
LEAVE TO PROSECUTE ACTION**

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs, King Louie Mining, LLC, and King Louie Enterprises, LLC, and Ronald Katz, hereby file, this their motion for leave to prosecute action, seeking leave to file their Second Amended Complaint to Revoke Discharge, in the form which is being simultaneously filed herein, and state the following.

1.     Pursuant to *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir.1987), Plaintiffs hereby seek leave of Court to prosecute the causes of action in their Second Amended Complaint for fraudulent transfers, pursuant to 11 U.S.C. §544(b)(1) and the Texas Uniform

**MOTION OF PLAINTIFFS FOR
LEAVE TO PROSECUTE ACTION– Page 1**
f:\....\pleadings\mot.leave.prosecute.wpd

Fraudulent Transfer Act ("TUFTA"), §24.005(a)(1), TEX. BUS. AND COMM. CODE, for the following reasons. Plaintiffs have presented the Complaint to the Bankruptcy Trustee and requested that the Trustee join in and prosecute such action, and the Trustee has unreasonably refused to join the action. Attached hereto and incorporated by this reference as Exhibit "A" is the letter whereby Plaintiffs have requested that the Trustee take such action. No response has been received thereto. The claims presented in Plaintiffs' Second Amended complaint are colorable and Plaintiffs stand prepared to see the action through to its conclusion.

2.      In the interest of justice, Plaintiffs should be allowed leave to prosecute claims for fraudulent transfers,  so that the they may pursue their Second Amended Complaint and so that the merits of this case may be properly presented to the Court.

WHEREFORE, Plaintiffs pray that the Court grant them leave to prosecute all claims as set forth in their Second Amended Complaint on file herein for fraudulent transfers, pursuant to 11 U.S.C. §544(b)(1) and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), §24.005(a)(1), TEX. BUS. AND COMM. CODE,  and grant them general relief.

Respectfully submitted,

**LAW OFFICES OF LIPPE & ASSOCIATES**

By:    /s/   Emil Lippe, Jr.
       Emil Lippe, Jr.
       State Bar No. 12398300
       Law Offices of Lippe & Associates
       Plaza of the Americas, South Tower
       600 N. Pearl Street, Suite S2460
       Dallas, Texas  75201
       Telephone:     (214) 855-1850

**MOTION OF PLAINTIFFS FOR
LEAVE TO PROSECUTE ACTION– Page 2**
f:\....\pleadings\mot.leave.prosecute.wpd

Facsimile:      (214) 720-6074
Email:          emil@texaslaw.com

ATTORNEYS FOR PLAINTIFFS KING LOUIE
MINING, LLC, KING LOUIE ENTERPRISES, LLC,
AND RONALD KATZ

### CERTIFICATE OF CONFERENCE

The undersigned certifies that he has attempted to confer with the Trustee and has received

no response.   Signed this   2nd   day of March, 2011.


/s/ Emil Lippe, Jr.


### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this   2nd   day of March, 2011, I electronically

submitted the foregoing document with the Clerk of the Court for the U.S. Bankruptcy Court,

Northern District of Texas, using the electronic case filing system of the Court, which will then send

a notification of such filing to the following:

Dennis Olson
Olson, Nicoud & Gueck, L.L.P.
1201 Main St., Ste 2470
Dallas, TX 75202


/s/  Emil Lippe, Jr.
Emil Lippe, Jr.


**MOTION OF PLAINTIFFS FOR
LEAVE TO PROSECUTE ACTION– Page 3**
f:\....\pleadings\mot.leave.prosecute.wpd

000292

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CHAPTER 7 |
| CENGIZ J. COMU a/k/a CJ COMU, | § § | CASE NO.  09-38820-sgj7 |
| | § § | |
| Debtor. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § § | |
| Defendant. | § § | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO REVOKE DISCHARGE PURSUANT TO SECTION 727(d)  OF THE UNITED STATES BANKRUPTCY CODE**

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

King Louie Mining, LLC, King Louie Enterprises, LLC, and Ronald Katz, Plaintiffs,

pursuant to Section 727(d) of the United States Bankruptcy Code (11 U.S.C.§§101, *et seq.,* the

"Bankruptcy Code") and Sections 544, 547, and 550 of the United States Bankruptcy Code, and

Rules 7001, *et seq.* of the Federal Bankruptcy Rules, complain of Debtor, Cengiz J. Comu a/k/a CJ

Comu("Debtor"), as Defendant, and hereby file this their First Amended Complaint to Revoke

Discharge Pursuant to Section 727(d) of the United States Bankruptcy Code, and in support thereof

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO**
**REVOKE DISCHARGE PURSUANT TO SECTION 727(d)**
**OF THE UNITED STATES BANKRUPTCY CODE**                                  **- PAGE 1**

would respectfully show as follows:

## A. PARTIES, JURISDICTION AND VENUE

1.      Plaintiff King Louie Mining, LLC, is a Delaware limited liability company with principal offices and place of business at 8 Wheatley Avenue, Albertson, New York 11507. Plaintiff King Louie Mining is, among other things, asserting herein complaints for fraudulent transfers pursuant to 11 U.S.C. §§544, 547, and 550, on behalf of all creditors herein because the Trustee has failed and refused to prosecute this cause of action.

2.      Plaintiff King Louie Enterprises, LLC, is a Delaware limited liability company with principal offices and place of business at 8 Wheatley Avenue, Albertson, New York 11507. Plaintiff King Louie Enterprises is, among other things, asserting herein complaints for fraudulent transfers pursuant to 11 U.S.C. §§544, 547, and 550, on behalf of all creditors herein because the Trustee has failed and refused to prosecute this cause of action.

3.      Ronald Katz is a resident of the State of New York and is a creditor herein. Plaintiff Ronald Katz is, among other things, asserting herein complaints for fraudulent transfers pursuant to 11 U.S.C. §§544, 547, and 550, on behalf of all creditors herein because the Trustee has failed and refused to prosecute this cause of action.

4.      Pursuant to *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir.1987), Plaintiffs have made demand upon Diane G. Reed, Trustee, to pursue the causes of action set forth herein, and the Trustee has unjustifiably failed and refused to pursue these claims. The claims asserted herein are colorable and substantial. Plaintiffs therefore seek leave, to the extent required by law, to bring these causes of action on behalf of themselves and the other creditors herein.

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO**
**REVOKE DISCHARGE PURSUANT TO SECTION 727(d)**
**OF THE UNITED STATES BANKRUPTCY CODE**                                    **- PAGE 2**

5.      Debtor, Cengiz Jan Comu a/k/a C.J. Comu, is an individual residing in Dallas County, Texas.  Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 31, 2009 (the "Petition Date"), in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), and was granted a discharge on April 14, 2010.

6.      Debtor may be served with process by serving his attorney of record in this bankruptcy case, Dennis Oliver Olson, Olson, Nicoud & Gueck, LLP, 1201 Main Street, Suite 2470, Dallas, TX 75202.

7.      This Court has jurisdiction over the parties and this controversy under 28 U.S.C. §§157 and 1334.  Although Debtor has been granted a discharge, his discharge must be set aside pursuant to 11 U.S.C. §§727(d)(1) and (2).  This adversary proceeding is a core proceeding under 28 U.S.C.§157(b)(2)(J).

8.      Venue of this proceeding is proper under 28 U.S.C.§1409.

## B.  FACTUAL BACKGROUND

9.      On January 15, 2010, Debtor filed his Schedules, Statement of Financial Affairs, Chapter 7 Individual Debtor's Statement of Intention, and Chapter 7 Statement of Current Monthly Income and Means-Test Calculation(collectively, the "Bankruptcy Filings").  On April 14, 2010, in reliance upon the schedules filed by the Debtor, the Court granted a discharge.  On information and belief, the Trustee likewise relied upon the schedules filed by the Debtor in failing to file any actions contesting discharge.  Plaintiffs bring this action to revoke the discharge because the same was procured through a fraud upon the Court.

10.     Comu has a long prior record of white-collar crimes and nefarious business practices,

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO**
**REVOKE DISCHARGE PURSUANT TO SECTION 727(d)**
**OF THE UNITED STATES BANKRUPTCY CODE**                                    **- PAGE 3**

and is subject to a permanent injunction issued by the United States Securities and Exchange Commission ("SEC"). On November 1, 1989, the SEC entered an Order of Permanent Injunction against Comu based on his dealings with a company called Oreo Mines, Inc., prohibiting him from selling unregistered securities. The SEC order also demanded that Comu disgorge $80,000, but waived this demand because of his inability to pay.

11.     On April 9, 1999, the State of Wisconsin – Division of Securities found that Comu had sold unregistered securities in violation of Wisconsin securities law and entered a permanent injunction barring Comu from selling unregistered securities in Wisconsin. Also, Comu was placed on criminal probation for two years in Texas in or around the early 1990s in connection with a car leasing operation he started under the name of Transworld Leasing. In or around 2002, Comu was investigated by the SEC in connection with his activities as chief executive officer in a company called AirTech International Group, Inc., and he invoked his Fifth Amendment right against self-incrimination during testimony taken by the SEC.

12.     Comu was the founder and CEO of a company known as Humitech International Group, Inc. ("Humitech"). Humitech was a publicly-owned company. Comu was previously the CEO of another public-owned company, Airtech International Group, Inc.("Airtech"). Comu obtained the idea and business opportunity to found Humitech while CEO of Airtech, and diverted such opportunity to the new company, which he controlled.

13.     Ever since at least May, 2003, the lenders of Airtech had been pursuing claims against Comu for such diversion of corporate opportunity, fraud, and fraudulent transfer. The claims were twice dismissed under stipulations that the dismissals would be without prejudice and the statutes

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE**                                                    **- PAGE 4**

of limitations were tolled. Ultimately, Comu was a Defendant in *New Millennium Capital Partners II, LLC and AJW Partners LLC v. Humitech International Group Inc., and CJ Comu*, Case No: 3:06-CV-1180-L, formerly pending in the United States District Court for the Northern District of Texas, Dallas Division, in which case a judgment was ultimately obtained against him.

14.     While the New Millenium claims were pending against him, Comu conducted the fraudulent kickback scheme discussed below involving Humitech, and caused the illegal proceeds of such scheme to be paid to his alter ego, Sunset Pacific, L.P.

15.     Humitech was in the business of selling humidity control products for refrigeration units  to regulate humidity, reduce temperatures, and absorb odors.   The principal component of Humitech's products was a type of diatomaceous earth, which Humitech referred to as "Sorbite," contained in panels installed in the refrigeration units.

16.     In 2003, through an introduction by a mutual acquaintance,  Comu approached Ronald Katz ("Katz") to obtain funds for Humitech to purchase the Defendants' purported mining rights.  This ultimately led to Katz's company, King Louie Mining, LLC ("KLM"), lending money to Humitech for this purpose.

17.     On May 21, 2004, in a simultaneous closing, KLM loaned $3,000,000 to Humitech, and HDC purchased certain worthless mining rights for $1,940,000, and Comu received a $500,000 kickback from the seller. Although Comu owed fiduciary duties to his employer, Humitech, and its lender, KLM, to fully disclose such kickback, he fraudulently withheld such information.

18.     Katz did not discover the kickback scheme until over two years later, when Humitech defaulted on the loan from KLM, and KLM foreclosed on the stock of HDC.  Investigation of the

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE**                                          **- PAGE 5**

000297

files left behind by Comu, after the foreclosure, disclosed this illegal scheme. Comu had arranged with the seller to receive such kickback by a payment to his alter ego, a partnership known as Sunset Pacific, LP, ("Sunset Pacific").

19.    Throughout his tenure at Humitech, Comu diverted monies from the company for his own use and benefit, causing substantial damages to the corporation and its shareholders. As a result of his fraudulent conduct and mismanagement of Humitech, it defaulted on its obligations to King Louie Mining, causing over $2,000,000 in damages to KLM. As stated above, after KLM foreclosed on the stock of HDC and took control thereof, and investigated the company and its financial dealings, the kickback scheme was discovered.

20.    On April 30, 2009, KLM obtained a Judgment in New York state court against Comu for a total of $2,279,265.16, a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by reference. KLM subsequently domesticated this as a Texas judgment, and was pressing for postjudgment discovery from Comu when he filed this bankruptcy proceeding.

21.    For years, Comu has operated Sunset Pacific, as his alter ego, to shield his assets from creditors, being aware of existing and potential claims of victims of his ongoing fraudulent activities. Comu caused the $500,000 kickback to be paid to Sunset Pacific, thereby diverting the fruits of his illegal actions into this alter ego of his to shield it from those whom he had defrauded. Plaintiffs have learned, through information and belief obtained through various sources after April 14, 2010, that in truth and in fact, despite such conveyance, Comu has continued to operate Sunset Pacific on his own as his own personal entity, with no active involvement or assistance from his wife, and that the conveyance to her was done for the purposes of defrauding creditors. On information and belief,

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO**
**REVOKE DISCHARGE PURSUANT TO SECTION 727(d)**
**OF THE UNITED STATES BANKRUPTCY CODE**                                              **- PAGE 6**

although in form the conveyance to his wife occurred more than a year prior to January 15, 2010, in truth the so-called "conveyance" was done less than six months prior to such date, and back-dated to attempt to avoid having such conveyance set aside in bankruptcy.

22.    Comu filed this Bankruptcy Proceeding at a time when Plaintiffs were pressing their efforts in Texas State Court to collect upon the judgment against Comu, and had filed a motion to compel production of financial information to assist in collecting the judgment.  Comu filed his Bankruptcy Schedules, claiming a small minority interest in Sunset Pacific, and a business owned by Sunset Pacific, known as The Barclay Group.  Reference is hereby made to the Schedules on file with this Court.

23.    At the First Meeting of Creditors herein, Comu testified that he had fully disclosed his assets and liabilities on his Schedules.  He further claimed that his interest in certain corporations, partnerships, and other entities was correctly disclosed in his Schedules.  Comu did not testify, however, that he in fact dominated and controlled Sunset Pacific despite his apparent minority interest.

24.    In truth and in fact, however, Plaintiffs have determined that Comu has hidden, through a complex corporate structure involving Sunset Pacific, and a company that he controls through his control of Sunset Pacific, known as The Barclay Group, Inc. ("The Barclay Group"), numerous business interests, valuable stock, and other assets.  Although other people, including Comu's wife, are listed as having controlling interests in Sunset Pacific and The Barclay Group, Comu actually directs and controls such entities for his personal use and benefit.

25.    Among other things, Comu transferred nominal controlling interests in Sunset Pacific, L.P., to his wife for no consideration, and has utilized his wife as a front for continuation of his

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE**                                                    **- PAGE 7**

000299

management of assets which he indirectly owns and controls, in an effort to hide the same from his creditors.  On information and belief, although such "transfer" was dated more than a year prior to the filing of the Bankruptcy Petition herein, in truth and in fact it occurred, on paper, within six months of the filing of bankruptcy herein.  Further, such "transfer" was in fact a sham, sin Comu's wife does not truly operate Sunset Pacific, and is only a figurehead "owner" thereof, to facilitate Comu's concealment of assets.  On information and belief, both prior to, during the pendency of, and after, the bankruptcy proceedings herein, Comu has dominated and controlled Sunset Pacific.

26.     At the time of such sham "transfer" to Comu's wife, there were numerous claims pending against Comu, including both the claims of Plaintiffs herein, and the claims of New Millenium described in paragraph 13 above.  The interests in Sunset Pacific were "transferred" to his wife, on information and belief, for no value, and within six (6) months of the filing of the Bankruptcy Petition herein, and were for the purpose and intent of defrauding creditors, in violation of 11 U.S.C. §544(b)(1) and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), specifically §24.005(a)(1), TEX. BUS. AND COMM. CODE.

27.     Plaintiffs have standing to bring these causes of action pursuant to the doctrine of *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir.1987), because they are asserting colorable claims, they have made demand upon the Trustee to prosecute these causes of action and the Trustee has unjustifiably failed and refused to pursue these claims.

28.     Plaintiffs were not aware of these fraudulent transfers, hidden assets and employment positions of Comu prior to the Discharge herein, as set forth below in greater detail.  Instead, Plaintiffs first learned of information concerning such concealed assets and fraudulent transfers beginning around June, 2010, from informants who had dealt personally with Comu Upon

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE                                    - PAGE 8**

000300

information and belief, these fraudulent transfers occurred within one year of the bankruptcy filing but were backdated in order to shield the assets from bankruptcy. Such assets and fraudulent transfers were material and materially impacted the true net worth of the Debtor, and were fraudulently concealed in violation of law.

29.    Plaintiffs have been hindered in obtaining full disclosure of all facts relating to the illegal conduct of Comu by his repeated refusal to produce discovery prior to the filing of the bankruptcy petition herein, his wilful concealment of assets and misrepresentation of ownership on his schedules, and his failure and refusal to produce disclosures as required by Scheduling Orders herein.  Plaintiffs cannot, without discovery, fully set forth all details of Comu's illegal schemes, and all dates on which his illegal conduct occurred.

30.    To the extent that Comu disclosed any assets owned by Sunset Pacific, he fraudulently misrepresented his interest therein by asserting that he only owned 1% of Sunset Pacific, since in truth and in fact he dominates and controls such entity exclusively.  To the extent that Comu disclosed any assets owned by The Barclay Group, he fraudulently misrepresented his interest therein by asserting that he only owned 1% of Sunset Pacific, and only indirectly owns a minority interest in The Barclay Group, since in truth and in fact he dominates and controls The Barclay Group exclusively.

31.    On information and belief, which Plaintiffs learned from informants beginning in June, 2010, and through at least September, 2010, through his control of The Barclay Group, Comu has hidden substantial assets and has failed properly and fully to disclose the full extent of such assets, and the fact that he actually controls The Barclay Group for his own use and benefit.  Although Comu has claimed that Bernard Brown is the officer actually controlling The Barclay

Group, he is actually dealing with Brown as a broker in European markets to wash his illegal sales of restricted stock.  Comu has concealed interests in various business enterprises owned through The Barclay Group which should have been fully disclosed herein.  These business interests, assets, and opportunities include but are not limited to the following:

- Consulting services and disguised ownership interest in Partners National Real Estate, LLC, and subsidiaries;

- Ownership rights for Artfest International, Inc., and/or Artfest Overseas;

- Income from The Barclay Group and Sunset Pacific earned or accrued before the filing of the bankruptcy, the receipt of which was deferred until after the Discharge.

- Consulting services and other interests in Art Channel, Inc.;

- Valuable sports memorabilia actually owned by Sun Sports Entertainment, Inc., a public company of which Comu was CEO, which mysteriously disappeared when Sun Sports ceased doing business, and which are believed to have been concealed from creditors by Comu;

- On information and belief, Comu has a practice of receiving restricted stock in companies for whom he consults through The Barclay Group, and washes such stock through affiliated relationships in the French Riviera, selling the same, and concealing the illegal proceeds overseas;

- While in bankruptcy, Comu, through The Barclay Group, loaned $90,000 to Green Automotive Company, Inc., and, on information and belief, obtained certain stock or stock options as part of the consideration (*see*, Exhibit "B" attached hereto);

- Consulting services and other involvement with Eller Industries, Inc.;

- Dealings with Mars Orbit Fund, Ltd.;

- Dealings with Capital Management Group, Inc.;

- Dealings with I.R.A. Oil & Gas, Inc.,;

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO**
**REVOKE DISCHARGE PURSUANT TO SECTION 727(d)**
**OF THE UNITED STATES BANKRUPTCY CODE**                                    **- PAGE 10**

&#9654;    Dealings with JL Media Services LLC;

&#9654;    Dealings with Temeku Financial;

&#9654;    Dealings with various entities, referred to as "ARTI, AL, USR, VOIP, SR, MetiScan, Med Tech, Cool It, Donson, Houston, and Nano," none of which were listed; and

&#9654;    Dealings with Ultimate Sports Resort, and receipt of $100,000 payment relating thereto.

All of such information should have been disclosed to the creditors herein, so that the Court and the creditors were fully advised of Comu's true financial condition.

32.    Over a period of years prior to filing for bankruptcy, Comu caused the public company which he was then controlling, Sun Sports Entertainment, to make numerous payments totalling tens of thousands of dollars to Sunset Pacific, for no apparent consideration.  The purposes of such payments, and ultimate use and benefit therefrom, were not disclosed to this Court and the creditors of this Bankruptcy Proceeding, and were likely to be material to Comu's financial condition.  Plaintiffs did not learn of such payments until June-September, 2010, from various informants.

33.    In addition, on information and belief, Comu owns or controls an interest in an entity known as Grey Point Partners, LLC, which claims rights to broadcasting and presentation of Mixed Martial Arts ("MMA") programming.  Comu has claimed that such rights actually exist and have substantial value, but has failed to disclose his interest in such entity.

34.    On information and belief, Comu owns or controls an interest in an entity known as Marathon Management, the value of which has not been disclosed.

35.    On information and belief, Comu owns or controls an interest in an entity known as

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE**          **- PAGE 11**

000303

New Edge Consulting, the value of which has not been disclosed.

36.     For all these reasons, Plaintiffs have determined that Comu owns or controls, through Sunset Pacific and otherwise, substantial assets and sources of income which have been concealed from the Court and creditors herein, which were material to his financial condition and which were required by law to be disclosed.

## COUNT I.

37.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 36 above as if the same were fully set forth herein.

38.     Debtor has committed fraud by concealing and failing to disclose assets and sources of income which he was required by law to disclose, and has obtained a discharge by fraud in violation of 11 USC 727(d)(1).

39.     On information and belief, Debtor was the managing partner of Sunset Pacific until Debtor fraudulently transferred his controlling interest to his wife for no consideration. This fraudulent transfer was executed within a year of the bankruptcy filing in order to shield the assets of Sunset Pacific from the bankruptcy proceeding.  Further, such "transfer" was a sham because Comu continued to control and dominate such entity as if it were exclusively his own.

40.     On further information and belief, Sunset Pacific, LP holds interests in various entities, including but not limited to The Barclay Group, Inc. Comu is the current CEO of The Barclay Group, Inc. The Barclay Group has substantial assets, and recently loaned $90,000.00 to Green Automotive Company Inc. The full extent of the assets owned indirectly through Sunset Pacific was not fully disclosed to the creditors herein, as set forth above in greater detail, and the true

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE                                         - PAGE 12**

000304

ownership interest of Comu was not accurately disclosed herein. Further, the full extent of assets owned or controlled by Comu, as set forth above, was not fully and properly disclosed herein.

41.     Despite the fraudulent transfer of his interest in Sunset Pacific to his wife, Sunset Pacific and its subsidiary, The Barclay Group, are Comu's alter egos. Comu is conducting business through Sunset Pacific and The Barclay Group, and such entities have substantial assets. Further, upon information and belief, Comu earned income before the bankruptcy filing, payment of which was deferred until after the Discharge herein, to conceal the same from the Court, the Trustee, and the creditors. Because Comu misrepresented his property to the Trustee, he has committed fraud. As the Plaintiffs are bankruptcy creditors, Plaintiffs have been harmed by this fraud.

42.     Plaintiffs discovered these frauds after the bankruptcy discharge, beginning around June, 2010, and on various occasions until September, 2010, and even occurring in January, 2011, from informants. This information was not previously known to Plaintiffs, and was fraudulently concealed from the Court, the Trustee, and the creditors.

43.     This Complaint is being filed within one year after the date of discharge. Plaintiffs are, therefore, entitled to an Order of this Court revoking the Debtor's discharge, pursuant to 11 U.S.C. §727(e)(1), and declaring that all assets of fraudulently concealed by the debtor, including but not limited to the assets of Sunset Pacific and The Barclay Group, shall be considered assets of the Debtor. Plaintiffs further pray for an order revoking all fraudulent transfers of the Debtor's assets that occurred within the statute of limitations, pursuant to 11 U.S.C. §544(b)(1) and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), §24.005(a)(1), TEX. BUS. AND COMM. CODE.

44.     Plaintiffs further request recovery of their reasonable and necessary attorney fees,

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO**
**REVOKE DISCHARGE PURSUANT TO SECTION 727(d)**
**OF THE UNITED STATES BANKRUPTCY CODE**                                    **- PAGE 13**

expert witness fees, costs for copies of depositions, and costs of court for all proceedings in the Bankruptcy Court, the District Court, the Court of Appeals, and the Supreme Court.

## COUNT II.

45.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 44 above as if the same were fully set forth herein.

46.     Upon information and belief, Comu earned income from Sunset Pacific and the Barclay Group before filing the bankruptcy petition. Upon further information and belief, this income was deferred until after the filing in order to shield it from the bankruptcy proceeding and defraud the trustee herein in violation of 11 USC 727(d)(2).

47.     Also, as described in further detail above, Comu acquired rights or entitlement to other property that properly belonging to the Estate, disclosure of which was fraudulently withheld from the trustee and the Court in further violation of 11 USC 727(d)(2).

48.     Accordingly, as this action is filed within one year of the discharge, Plaintiffs are entitled to an Order of this Court revoking the Debtor's discharge, pursuant to 11 U.S.C. §727(e)(2), and declaring all assets acquired by Comu properly belonging to the estate that were fraudulently withheld from the Court and/or the Trustee to be property of the Estate.

49.     Plaintiffs further request recovery of their reasonable and necessary attorney fees, expert witness fees, costs for copies of depositions, and costs of court for all proceedings in the Bankruptcy Court, the District Court, the Court of Appeals, and the Supreme Court.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, upon final judgment of the Court herein, that judgment be entered against Defendant Debtor revoking his discharge, that all

fraudulent transfers be revoked, and that Plaintiffs recover their reasonable attorney's fees for all proceedings in the Bankruptcy Court, the District Court, the Court of Appeals, and the Supreme Court, and that Plaintiffs recover their costs of court, and general relief.

Respectfully submitted,

**LAW OFFICES OF LIPPE & ASSOCIATES**

By:    /s/  Emil Lippe, Jr.               

Emil Lippe, Jr.
State Bar No. 12398300
Law Offices of Lippe & Associates
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas  75201
Telephone:    (214) 855-1850
Facsimile:    (214) 720-6074
Email:       emil@texaslaw.com

ATTORNEYS FOR PLAINTIFFS KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO REVOKE DISCHARGE PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE**         **- PAGE 15**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this __3rd__ day of March, 2011,  I electronically

submitted the foregoing document with the Clerk of the Court for the U.S. Bankruptcy Court,

Northern District of Texas, using the electronic case filing system of the Court, which will then send

a notification of such filing to the following:

>Dennis Olson
>Olson, Nicoud & Gueck, L.L.P.
>1201 Main St., Ste 2470
>Dallas, TX 75202

>_/s/   Emil Lippe, Jr._____
>Emil Lippe, Jr.

**PLAINTIFFS' SECOND AMENDED COMPLAINT TO
REVOKE DISCHARGE PURSUANT TO SECTION 727(d)
OF THE UNITED STATES BANKRUPTCY CODE**                                    **- PAGE 16**

000308



BY THE GRACE OF GOD FREE AND INDEPENDENT

*To all to whom these presents shall come or may concern, GREETING:*

**Know Ye**, That we having examined the records and files in the office of the Clerk of the County of New York and Clerk of the Supreme Court of said State for said County, do find a certain *Judgment*

there remaining, in the words and figures following, to wit:

000309

(OVER)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
HUMITECH DEVELOPMENT CORPORATION,            :
KING LOUIE MINING, LLC, KING LOUIE
ENTERPRISES, LLC, and RONALD KATZ,            :       Index No. 06-602567
Individually, and as a Shareholder of Humitech
International Group, Inc., Suing in the Right of      :
Humitech International Group, Inc.,
                                              :
                    Plaintiffs,               :       **JUDGMENT**
             - against -                      :

CENGIZ JAN COMU a/k/a C.J. COMU and IVAN      :
GATI,
                                              :

                    Defendants,               :

             and

HUMITECH INTERNATIONAL GROUP, INC.,           :

                    Nominal Defendant.        :
------------------------------------------------------------X

This action having been scheduled for trial on February 23, 2009, 9:30 A.M. in Part 40;

and the Court having made February 23, 2009 a final trial date; and Plaintiffs having been

granted leave to serve a Verified Second Amended Complaint; and Defendant Cengiz Jan Comu

("Comu") having been initially served with a Summons and Verified Complaint, the Verified

Amended Complaint and then the Verified Second Amended Complaint; and the causes of action

against defendant Ivan Gati having been severed from this action pursuant to the October 30,

2008 order of Hon. Doris Ling-Cohan, J.S.C.; and Defendant Comu having appeared and

answered the Verified Second Amended Complaint; and Defendant Comu having failed to

appear enter individually or by counsel for trial on February 23, 2009; the answer of Defendant

Comu having been stricken by the February 23, 2009 order of the Court; and upon the taking of

000310

an inquest on February 23, 2009; and upon the February 23, 2009 order of Hon. Joan B. Carey,

J.S.C. directing the Judgment Clerk to enter judgment in the amounts set forth below, it is;

**ADJUDGED** that the Plaintiff King Louie Mining, LLC (A) have judgment recover from defendant Comu a/k/a C.J. Cengiz Jan and Comu, (B)

$1,386,748 and interest at the rate of 9% per annum accruing from May 21, 2004 ~~in the amount~~

of $ 617,197.84 , aggregating the sum of $ 2,003,945.84 , and that plaintiff

has execution therefore.

**ADJUDGED** that Plaintiff King Louie Enterprises LLC (A) have judgment and recover from defendant Comu a/k/a C.J. Cengiz Jan Comu, (B)

the amount of $135,000 and interest at the rate of 9% per annum accruing from December 31,

2003 ~~in the amount~~ of $ 64,811.10 , aggregating the sum of

$ 199,811.10 , and that plaintiff has execution therefore.

**ADJUDGED** that Plaintiff Ronald Katz (*) have judgment and recover from defendant Comu, Cengiz Jan a/k/a C.J. Comu, (B) the amount of

$50,000 and interest at the rate of 9% per annum accruing from August 31, 2003 ~~in~~

~~the amount~~ of $ 25,508.22 , aggregating the sum of $ 75,508.22 , and

that plaintiff has execution therefore.

Judgment entered this 30TH day of April , 2009.

# FILED

APR 30 2009

**NEW YORK**
**COUNTY CLERK'S OFFICE**

(A) Located at 8 Wheatley Ave, Searingtown, NY 11

(B) Residing at 5301 Paladium Drive, Dallas, Texas

*) Individually, and as a Shareholder of HumiTech International Group, Inc.,
Suing in The Right of HumiTech International Group, Inc., residing
at 8 Wheatley Ave, Searingtown, NY 11507

2

000311

000312

Humitech Development Corporation v. Comu (Index No. 602567)

## Interest Calculations at 9% Per Annum

| Amount | date from | date to | No. of days outstanding | interest at 9% per annum | interest per day | principal plus interest |
|---|---|---|---|---|---|---|
| $1,386,748.00 | 05/21/04 | 04/30/09 | 1805 | $617,197.84 | $341.94 | $2,003,945.84 |
| $135,000.00 | 12/31/03 | 04/30/09 | 1947 | $64,811.10 | $33.29 | $199,811.10 |
| $50,000.00 | 08/31/03 | 04/30/09 | 2069 | $25,508.22 | $12.33 | $75,508.22 |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------x

Humitech Development Corporation,
King Louie Mining, LLC
King Louie Enterprises, LLC, et.al-     Plaintiff(s)

-against-

Cengiz Jan Comu a/k/a C.J.
Comu                                    Defendant(s)

-------------------------------------------------x

Index No.

602567/2006

AFFIRMATION

Anne F. McCaughey, an attorney duly admitted to
practice in the state of New York, Affirms
the following under the penalties of
perjury.
        I represent
Plaintiffs in the above-entitled action.
Plaintiffs hereby waive the right to
seek costs and disbursements they
are entitled to in this action.

**FILED**

APR 30 2009

NEW YORK
COUNTY CLERK'S OFFICE

Dated: April 30, 2009
      New York, NY

Anne F. McCaughey

000313

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 602567-06

Humitech Development Corporation,
King Louie Mining, LLC, King Louie Enterprises, LLC,
Ronald Katz,

Plaintiff,

-against-

Cengiz Jan Comu a/k/a C.J. Comu

Defendants.

Judgment

Wachtel + Masyr, LLP
110 East 59th Street
New York, New York 10022
(212) 909-9528
Attorneys for Plaintiffs

1 - 3

**FILED AND**
**DOCKETED**

APR 30 2009

AT      3:17 P M
N.Y., CO. CLK'S OFFICE

000314

Witness, Hon. EDWARD H. LEHNER a Justice of the Supreme

Court of the State of New York for the County of New York, the 30ᵗʰ

day of *April* in the year of our Lord two thousand and

*Nine* , and of our independence the two hundred and

*Thirty Two*

*Norman Goodman*
County Clerk and Clerk of the
Supreme Court, New York County

EDWARD H. LEHNER

a Justice of the Supreme Court of the State of New York for the County of New York,
the same being a Court of Record, do hereby certify that the foregoing attestation is
in due and proper form and by the proper officer.

Dated, New York,       MAY -1 2009    20 09

Justice of the Supreme Court
of the State of New York.

State of New York,
County of New York,   } ss.:

I, NORMAN GOODMAN, County Clerk and Clerk of the
Supreme Court of the State of New York, County of New
York, do hereby certify that Hon. EDWARD H. LEHNER
whose name is subscribed to the preceding certificate is
a Justice of the Supreme Court of said State in and for
the County of New York, duly elected and qualified, and
that the signature of said Justice to said certificate is genuine.

IN TESTIMONY WHEREOF, I have hereunto set my
hand and affixed the Seal of said County and Court this
30 day of *April* 20 09 .

*Norman Goodman*
County Clerk and Clerk of the
Supreme Court, New York County.

15041

No. F_____

000315

**Green Automotive Company Inc. (GACR.PK)**

15851 Dallas Parkway Suite 540 Addison, Texas 75001 USA

Tel: 972.770.5048 Fax: 972.770.5051

www.usaelectricauto.com

**"We previously were a shell company, therefore the exemption offered pursuant to Rule 144 is not available. Anyone who purchased securities directly or indirectly from us or any of our affiliates in a transaction or chain of transactions not involving a Version 9.7 Updated on 07/22/2009 public offering cannot sell such securities in an open market transaction."**

## Part A General Company Information

Item I The exact name of the issuer and its predecessor (if any).

Green Automotive Company Inc.
Previously (Ganas Corporation)

**Item II The address of the issuer's principal executive offices.**

Green Automotive Company Inc. (GACR.PK)
15851 Dallas Parkway Suite 540 Addison, Texas 75001 USA
Tel: 972.770.5048 Fax: 972.770.5051
www.usaelectricauto.com

**Item III The jurisdiction(s) and date of the issuer's incorporation or organization.**

Provide the issuer's jurisdiction(s) of incorporation or jurisdiction(s) of organization (if the issuer is not a corporation) and the date on which it was incorporated or organized.

12-96 State of incorporation New Jersey changed to Delaware

Formerly Royal Finance Corp. until 2-98

Formerly Royal Acceptance Corp. until 3-2008

Formerly Ganas Corp. until 1-2010

## Part B Share Structure

**Item IV The exact title and class of securities outstanding.**

In answering this item, provide the exact title and class of each class of outstanding securities. In addition, please provide the CUSIP and trading symbol.

Common Stock                       Cusip #39260A GACR

Class A Convertible Preferred Stock     Cusip #

**Item V Par or stated value and description of the security.**

A. *Par or Stated Value*. Provide the par or stated value for each class of outstanding securities.

Common - $.001

Preferred - $.001

B. *Common or Preferred Stock*.

1. For common equity, describe any dividend, voting and preemption rights.

Each Shareholder is allowed 1 vote per share.

Common stock holders have first rights to dividends.

Board of directors can be voted out via majority share holder vote at any time with out cause, at a meeting held for that purpose. Each board of director serves one year. No poison pills.

The Barclay Group Holds an Anti-duilion provision that it will have always 40% of outstanding common stock until November 2010

2. For preferred stock, describe the dividend, voting, conversion and liquidation rights as well as redemption or sinking fund provisions.

The share entitles holder to 51% voting majority of stock

It is convertible to 4 common shares

Preferred stock is not entitled to dividends

3. Describe any other material rights of common or preferred stockholders.

Not Applicable

4. Describe any provision in issuer's charter or by-laws that would delay, defer or prevent a change in control of the issuer.

Not Applicable

**Item VI The number of shares or total amount of the securities outstanding for each class of securities authorized.**

In answering this item, provide the information below for each class of securities authorized**.** Please provide this information (i) as of the end of the issuer's most recent fiscal quarter and (ii) as of the end of the issuer's last two fiscal years.

(i) Period end date;

(ii) Number of shares authorized;

000317

(iii) Number of shares outstanding;
(iv) Freely tradable shares (public float);
(v) Total number of beneficial shareholders; and
(vi) Total number of shareholders of record.

**Common - Last Fiscal Quarter:/Year End**
(i) Period end date; 12.31.09
(ii) Number of shares authorized; 699,999,999
(iii) Number of shares outstanding; 239,367,042
(iv) Freely tradable shares (public float); 3,600,000
(v) Total number of beneficial shareholders; 156
(vi) Total number of shareholders of record. 156

**Common - Last Fiscal Year (2ⁿᵈ year)**

(i) Period end date; 12.31.08
(ii) Number of shares authorized; 699,999,999
(iii) Number of shares outstanding; 95,746,817
(iv) Freely tradable shares (public float); 3,600,000
(v) Total number of beneficial shareholders; 156
(vi) Total number of shareholders of record. 156


**Preferred - Last Fiscal Quarter:/Year End**
(i) Period end date; 12.31.09
(ii) Number of shares authorized; 1
(iii) Number of shares outstanding; 1
(iv) Freely tradable shares (public float); 1
(v) Total number of beneficial shareholders; 1
(vi) Total number of shareholders of record. 1

**Common - Last Fiscal Year (2ⁿᵈ year)**

(i) Period end date; 12.31.08
(ii) Number of shares authorized; 1
(iii) Number of shares outstanding; 1
(iv) Freely tradable shares (public float); 1
(v) Total number of beneficial shareholders; 1


## Part C Business Information

**Item VII The name and address of the transfer agent\*.**
Old Monmouth Stock Transfer Co, Inc
200 Memorial Parkway
Atlantic Heights, NJ 07716
732.872.2727
Registered under the Exchange Act? Yes

In answering this item, please also provide the telephone number of the transfer agent, indicate whether or not the transfer agent is registered under the Exchange Act, and state the appropriate regulatory authority of the transfer agent.

*To be included in OTCQX or the Current Information OTC Market Tier, the issuer's transfer agent *must* be registered under the Exchange Act.

**Item VIII The nature of the issuer's business.**

In describing the issuer's business, please provide the following information:

A. Business Development. Describe the development of the issuer and material events during the last three years so that a potential investor can clearly understand the history and development of the business. If the issuer has not been in business for three years, provide this information for any predecessor company. This business development description must also include:

GNAS Corp company was formerly a shell company after it ceased operations and has been laying dormant for years. No bank accounts. Fees for transfer agents were paid by third parties. In September 2009 the majority of shares were purchased by The Barclay Group, Inc. GNAS Corp. then purchased Go Green USA, LLC (Go), a Nevada Limited Liability Company, organized April 28th, 2009, on November 4,th 2009 in exchange for the issuance of shares of common stock. For each 1% membership interest in Go, the company issued 1,436,202.25 shares of common stock, par value of $.001 of GNAS. Effective in 2009, Go entered into a business importing and distributing automobiles manufactured by or for Zoyte with the territory of the United States through the Zotye Memorandum Dated August 21, 2009 that was contractually ratified on January 29, 2010. GNAS Corp changed its name in January to Green Automotive to reflect the material change in business.

1. the form of organization of the issuer (e.g., corporation, partnership, limited liability company, etc.);

Corporation

2. the year that the issuer (or any predecessor) was organized;

1996

3. the issuer's fiscal year end date;

December 31st

4. Whether the issuer (or any predecessor) has been in bankruptcy, receivership or any similar proceeding;

Not Applicable

5. any material reclassification, merger, consolidation, or purchase or sale of a significant amount of assets;

The Company completed an acquisition and reclassification as of November 2009

6. any default of the terms of any note, loan, lease, or other indebtedness or financing arrangement requiring the issuer to make payments;

Company is currently in default of a $30,000, 60 day note to the Barclay Group: The terms are: 12% Interest. And a 100,000 shares per day late fee. The note has been in default since Jan 20th 2010.

7. any change of control;

As of November 2009, control has gone from The Barclay Group Inc, to the management team of Green Automotive

8. any increase of 10% or more of the same class of outstanding equity securities;

Yes, common due to the acquisition of Go Green USA in November 2009

9. any past, pending or anticipated stock split, stock dividend, recapitalization, merger, acquisition, spin-off, or reorganization;

Anticipating a reverse stock split

10. any delisting of the issuer's securities by any securities exchange or deletion from the OTC Bulletin Board; and

Not Applicable

11. any current, past, pending or threatened legal proceedings or administrative actions either by or against the issuer that could have a

3 For the purpose of this section a "shell company" means an issuer, other than a business combination related shell company, as defined by Securities Act Rule 405, or an asset-backed issuer, as defined by Item 1101(b) of Regulation AB, that has:
(1) No or nominal operations; and
(2) Either:
(A) No or nominal assets;
(B) Assets consisting solely of cash and cash equivalents; or
(C) Assets consisting of any amount of cash and cash equivalents and nominal other assets.

material effect on the issuer's business, financial condition, or operations and any current, past or pending trading suspensions by a securities regulator. State the names of the principal parties, the nature and current status of the matters, and the amounts involved.

Not Applicable

000320

B. <u>Business of Issuer</u>. Describe the issuer's business so a potential investor can clearly understand it. To the extent material to an understanding of the issuer, please also include the following:

**The Company Seeks to Import Electric Vehicles.**

1. the issuer's primary and secondary SIC Codes;

**5012 Automobiles**

2. if the issuer has never conducted operations, is in the development stage, or is currently conducting operations;

**Development Stage Company**

3. whether the issuer is or has at any time been a "shell company";3

**Yes**

> *Instruction to paragraph B.3 of Item VIII:*
> If the issuer discloses that it is or has at any time been a shell company, it must also include the following disclosure on the front page of its disclosure statement in boldface, 12 point type:
> If the issuer is currently a shell company:
>> "**We are a shell company, therefore the exemption offered pursuant to Rule 144 is not available. Anyone who purchased securities directly or indirectly from us or any of our affiliates in a transaction or chain of transactions not involving a public offering cannot sell such securities in an open market transaction.**"
> If the issuer was formerly a shell company:
>> "**We previously were a shell company, therefore the exemption offered pursuant to Rule 144 is not available. Anyone who purchased securities directly or indirectly from us or any of our affiliates in a transaction or chain of transactions not involving a Version 9.7 Updated on 07/22/2009 public offering cannot sell such securities in an open market transaction.**"

4. the names of any parent, subsidiary, or affiliate of the issuer, and its business purpose, its method of operation, its ownership, and whether it is included in the financial statements attached to this disclosure statement;

**Not Applicable**

5. the effect of existing or probable governmental regulations on the business;

The EPA, Department of Transportation as well as State Regulations have jurisdiction over our products. We must get their approval before selling vehicles in the US.

6.  an estimate of the amount spent during each of the last two fiscal years on research and development activities, and, if applicable, the extent to which the cost of such activities are borne directly by customers;

The management team has spent a year prior to the merger research and negotiating the exclusive contract with the vehicle manufacturer.  There will not be much expenses that need to be recouped, the vehicle production is done in China.

7.  costs and effects of compliance with environmental laws (federal, state and local); and

The costs of Compliance with US law, US Federal regulation and State regulation is expected to be 1.5 million.

8.  the number of total employees and number of full-time employees.

There are currently 5 employees.

> For issuers engaged in mining, oil and gas production and real estate activities, substantial additional disclosure of the issuer's business is required. Contact Pink OTC Markets for more information.

## Item IX The nature of products or services offered.

In responding to this item, please describe the following so that a potential investor can clearly understand the products and services of the issuer:

A. principal products or services, and their markets;

The company offers imported electric cars for sale to dealerships in the US

B. distribution methods of the products or services;

Distribution will be through existing and new Car Dealerships

C. status of any publicly announced new product or service;

The company has signed a 3 year distribution contract and looks to sign dealerships.  There is a risk that dealers may not be interested in selling the Zotye product

D. competitive business conditions, the issuer's competitive position in the industry, and methods of competition;

Competitors are 1 year away and include BYD,GM,NISSAN,FORD AND CODA.  Investors must know that there is significant competition in the market.

E. sources and availability of raw materials and the names of principal suppliers;

Zotye will be our principle supplier, we plan to add additional over time. We are completely dependent on the Zoyte and they will be our exclusive

F. dependence on one or a few major customers;

We will have many dealerships and therefore will not be dependent on any one or group.

G. patents, trademarks, licenses, franchises, concessions, royalty agreements or labor contracts, including their duration; and

The company holds the agreement with Zotye to distribute their vehicle. As far other important agreements, are the agreements between Green Automotive and dealerships which will be negotiated on a case by case basis.

H. the need for any government approval of principal products or services and the status of any requested government approvals.

The company must get EPA/DOT approval before it's cars can be sold in the US. The car is expected to pass but investors must be aware there is significant risk of failing. Before the car can sell more than 10,000 units the cars must pass federal crash testing and test at least 10 vehicles. Investors must know that there is significant risk of failing crash testing.

**Item X The nature and extent of the issuer's facilities.**

The goal of this section is to provide a potential investor with a clear understanding of all assets, properties or facilities owned, used or leased by the issuer.
In responding to this item, please clearly describe the assets, properties or facilities of the issuer, give the location of the principal plants and other property of the issuer and describe the condition of the properties. If the issuer does not have complete ownership or control of the property (for example, if others also own the property or if there is a mortgage on the property), describe the limitations on the ownership.
If the issuer leases any assets, properties or facilities, clearly describe them as above and the terms of their leases.

The company has no major facilities. It is currently leasing office space, owns general office materials, holds two vehicles for promotion and two electric vehicles for demo/sales purposes. GACR primary business activity is an importer and not a manufacture. It plans to hold inventory but only after is it paid for in orders from its dealership/clients.

## Part D Management Structure and Financial Information

**Item XI The name of the chief executive officer, members of the board of directors, as well as control persons.**

000323

The goal of this section is to provide an investor with a clear understanding of the identity of all the persons or entities that are involved in managing, controlling or advising the operations, business development and disclosure of the issuer, as well as the identity of any significant shareholders.

    A. <u>Officers and Directors</u>. In responding to this item, please provide the following information for each of the issuer's executive officers, directors, general partners and control persons, as of the date of this information statement:

1. Full name;

**Please see below**

2. Business address;

**Please see below**

3. Employment history (which must list all previous employers for the past 5 years, positions held, responsibilities and employment dates);

**Please see below**

1. Board memberships and other affiliations;

Not Applicable

2. Compensation by the issuer; and
3. Number and class of the issuer's securities beneficially owned by each such person.

**Steve Fly – Chairman & CEO:**

**Shares owned:**
**Compensation:**
**5 year Employment History with dates:**
**Works out of company HQ**

**Steve Wells - President:**

**Shares owned:**
**Compensation:**
**5 year Employment History with dates:**
**Works out of company HQ**

**Steve Evans, Vice-President of Dealership Business Development:**
**Shares owned:**
**Compensation:**
**5 year Employment History with dates:**
**Works out of company HQ**

David Sheedy - Director of Parts and Service:
Shares owned:
Compensation:
5 year Employment History with dates:
Works out of company HQ


Fredrick Lockhart- National Sales Director:

Shares owned:
Compensation:
5 year Employment History with dates:
Works out of company HQ


Nancy Painter - Controller:
Shares owned:
Compensation:
5 year Employment History with dates:
Works out of company HQ

There are no other shareholders with more than 5%


    4 The term "family relationship" means any relationship by blood, marriage or adoption, not more remote than first cousin.

Not Applicable


    B. <u>Legal/Disciplinary History</u>. Please identify whether any of the foregoing persons have, in the last five years, been the subject of:

1.  A conviction in a criminal proceeding or named as a defendant in a pending criminal proceeding (excluding traffic violations and other minor offenses);

2.  The entry of an order, judgment, or decree, not subsequently reversed, suspended or vacated, by a court of competent jurisdiction that permanently or temporarily enjoined, barred, suspended or otherwise limited such person's involvement in any type of business, securities, commodities, or banking activities;

Not Applicable

3.  A finding or judgment by a court of competent jurisdiction (in a civil action), the Securities and Exchange Commission, the Commodity Futures Trading Commission, or a state securities regulator of a violation of federal or state securities

or commodities law, which finding or judgment has not been reversed, suspended, or vacated; or

Not Applicable

4.  The entry of an order by a self-regulatory organization that permanently or temporarily barred, suspended or otherwise limited such person's involvement in any type of business or securities activities.

Not Applicable

     C. Disclosure of Family Relationships. Describe any family relationships4 among and between the issuer's directors, officers, persons nominated or chosen by the issuer to become directors or officers, or beneficial owners of more than five percent (5%) of the any class of the issuer's equity securities.

Not Applicable

     D. Disclosure of Related Party Transactions. Describe any transaction during the issuer's last two full fiscal years and the current fiscal year or any currently proposed transaction, involving the issuer, in which (i) the amount involved exceeds the lesser of $120,000 or one percent of the average of the issuer's total assets at year-end for its last three fiscal years and (ii) any related person had or will have a direct or indirect material interest. Disclose the following information regarding the transaction:
        1. The name of the related person and the basis on which the person is related to the issuer;
        2. The related person's interest in the transaction;
        3. The approximate dollar value involved in the transaction (in the case of indebtedness, disclose the largest aggregate amount of principal outstanding during the time period for which disclosure is required, the
        5 "Immediate family members" means any child, stepchild, parent, stepparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law.
        amount thereof outstanding as of the latest practicable date, the amount of principal and interest paid during the time period for which disclosure is required, and the rate or amount of interest payable on the indebtedness);
        4. The approximate dollar value of the related person's interest in the transaction; and
        5. Any other information regarding the transaction or the related person in the context of the transaction that is material to investors in light of the circumstances of the particular transaction.

The Company, on November 30th 2010 entered into a Loan Agreement with The Barclay Group (TGB).  TBG loaned the Company $30,000.  The Note Payable is at 12% daily compounding interest.  The Note was due December 30,th 2009.  The Note is Unsecured.
The Company is currently in default.  No repayment has been made

The Company, on January 8th 2010 entered into a Loan Agreement with The Barclay Group. TBG loaned the Company $10,000.  The Note is payable at 12% interest.  It is due March 8th 2010.   The Note is Unsecured No payment has been made

The Company, on January 15th 2010 the Company entered into a loan agreement with The Barclay Group.  It loaned the company 50,000 at 12%.  The Note is Unsecured.
The Company has a Note Payable at 9.14% with monthly payments of $1,078 due August 2013 secured by vehicles.  Payments are being made.

The Company has a Note Payable at 3.90% with monthly payments of $738 due June 2015 secured by vehicles.  Payments are being made.
Certain officers have advanced monies to the company on an unsecured basis and non-interest bearing.  Payment will be made out of cash flows once the Company begins operations.


*Instruction to paragraph D of Item XI:*
1. For the purposes of paragraph D of this Item XI, the term "related person" means any director, executive officer, nominee for director, or beneficial owner of more than five percent (5%) of any class of the issuer's equity securities, immediate family members5 of any such person, and any person (other than a tenant or employee) sharing the household of any such person.
2. For the purposes of paragraph D of this Item XI, a "transaction" includes, but is not limited to, any financial transaction, arrangement or relationship (including any indebtedness or guarantee of indebtedness) or any series of similar transactions, arrangements or relationships.
3. The "amount involved in the transaction" shall be computed by determining the dollar value of the amount involved in the transaction in question, which shall include:
a. In the case of any lease or other transaction providing for periodic payments or installments, the aggregate amount of all periodic payments or installments due on or after the beginning of the issuer's last fiscal year, including any required or optional payments due during or at the conclusion of the lease or other transaction providing for periodic payments or installments; and
b. In the case of indebtedness, the largest aggregate amount of all indebtedness outstanding at any time since the beginning of the issuer's last fiscal year and all amounts of interest payable on it during the last fiscal year.
4. In the case of a transaction involving indebtedness:
a. The following items of indebtedness may be excluded from the calculation of the amount of indebtedness and need not be disclosed:

000327

amounts due from the related person for purchases of goods and services subject to usual trade terms, for ordinary business travel and expense payments and for other transactions in the ordinary course of business; and

Not Applicable

  b. Disclosure need not be provided of any indebtedness transaction for beneficial owners of more than five percent (5%) of any class of the issuer's equity securities or such person's family members.

Not Applicable

5. Disclosure of an employment relationship or transaction involving an executive officer and any related compensation solely resulting from that employment relationship or transaction need not be provided. Disclosure of compensation to a director also need not be provided.

Not Applicable

6. A person who has a position or relationship with a firm, corporation, or other entity that engages in a transaction with the issuer shall not be deemed to have an indirect material interest for purposes of paragraph D of this Item XI where:

Not Applicable

  a. The interest arises only:
    i. From such person's position as a director of another corporation or organization that is a party to the transaction; or
    ii. From the direct or indirect ownership by such person and all other related persons, in the aggregate, of less than a ten percent (10%) equity interest in another entity (other than a partnership) which is a party to the transaction; or
    iii. From both such position and ownership; or
  b. The interest arises only from such person's position as a limited partner in a partnership in which the person and all other related persons have an interest of less than ten percent (10%), and the person is not a general partner of and does not hold another position in the partnership.

Not Applicable

7. Disclosure need not be provided pursuant to paragraph D of this Item XI if:
  a. The transaction is one where the rates or charges involved in the transaction are determined by competitive bids, or the transaction involves the rendering of services as a common or contract carrier, or public utility, at rates or charges fixed in conformity with law or governmental authority;

Not Applicable

b. The transaction involves services as a bank depositary of funds, transfer agent, registrar, trustee under a trust indenture, or similar services; or

Not Applicable

c. The interest of the related person arises solely from the ownership of a class of equity securities of the issuer and all holders of that class of equity securities of the issuer received the same benefit on a pro rata basis.

Not Applicable

8. Include information for any material underwriting discounts and commissions upon the sale of securities by the issuer where any of the specified persons was or is to be a principal underwriter or is a controlling person or member of a firm that was or is to be a principal underwriter.

Not Applicable

E. Disclosure of Conflicts of Interest. Describe any conflicts of interest. Describe the circumstances, parties involved and mitigating factors for any executive officer or director with competing professional or personal interests.

Not Applicable


**Item XII Financial information for the issuer's most recent fiscal period.**

Instruction to Item XII: The issuer shall post the financial statements required by this Item XII through the OTC Disclosure and News Service under the appropriate report name for the applicable period end. (If the financial statements relate to a fiscal year end, publish it as an "Annual Report," or if the financial statements relate to a quarter end, publish it as a "Quarterly Report" or "Interim Report") The issuer must state in its disclosure statement that such financial statements are incorporated by reference. The issuer must also (i) provide a list in the disclosure statement describing the financial statements that are incorporated by reference, (ii) clearly explain where the incorporated documents can be found, and (iii) provide a clear cross-reference to the specific location where the information requested by this Item can be found in the incorporated documents.

The issuer shall provide the following financial statements for the most recent fiscal period (whether fiscal quarter or fiscal year).

1) balance sheet;
2) statement of income;
3) statement of cash flows;
4) statement of changes in stockholders' equity;
5) financial notes; and
6) audit letter, if audited

Annual report has been posted to PinkSheets.com

7)  Foreign private issuers that have furnished financial statements pursuant to Rule 12g3-2(b) under the Exchange Act can provide those same financial statements as an alternative to U.S. GAAP. For information regarding U.S. GAAP, see http://cpaclass.com/gaap/gaap-us-01a.htm.

The financial statements requested pursuant to this item shall be prepared in accordance with generally accepted accounting principles (GAAP)6 by persons with sufficient financial skills.

Information contained in annual financial statements will not be considered current more than 90 days after the end of the issuer's fiscal year immediately following the fiscal year for which such statement are provided, or with respect to quarterly financial statements, more than 45 days after the end of the quarter immediately following the quarter for which such statements are provided.

Item XIII Similar financial information for such part of the two preceding fiscal years as the issuer or its predecessor has been in existence.

Please provide the financial statements described in Item XII above for the issuer's two preceding fiscal years.

Instruction to Item XIII: The issuer shall either (i) attach the financial statements required by this Item XIII to its initial disclosure statement or (ii) post such financial statements through the OTC Disclosure and News Service as a separate report under the name of "Annual Report" for the applicable fiscal year end. The issuer must state in its disclosure statement that such financial statements are incorporated by reference. The issuer must also (x) provide a list in the disclosure statement describing the financial statements that are incorporated by reference, (y) clearly explain where the incorporated documents can be found, and (z) provide a clear cross-reference to the specific location where the information requested by this Item can be found in the incorporated documents.

Financial Information has been posted to PinkSheets.com

Item XIV Beneficial Owners.

Provide a list of the name, address and shareholdings of all persons beneficially owning more than five percent (5%) of any class of the issuer's equity securities. To the extent not otherwise disclosed, if any of the above shareholders are corporate shareholders, provide the name and address of the person(s) owning or controlling such corporate shareholders and the resident agents of the corporate shareholders.

Not Applicable

Item XV The name, address, telephone number, and email address of each of the following outside providers that advise the issuer on matters relating to operations, business development and disclosure:

1. Investment Banker

CJ Comu – The Barclay Group
14999 Preston Road,
Dallas, TX 75254-9116
(972) 386-3686

2. Promoters

Not Applicable

3. Counsel

Steve Block
BLOCK & GARDEN, LLP
Sterling Plaza
5949 Sherry Lane, Suite 900
Dallas, TX 75225
P: 214-866-0990
F: 214-866-0991

4. Accountant or Auditor - the information shall clearly (i) describe if an outside accountant provides audit or review services, (ii) state the work done by the outside accountant and (iii) describe the responsibilities of the accountant and the responsibilities of management (i.e. who audits, prepares or reviews the issuer's financial statements, etc.). The information shall include the accountant's phone number and email address and a description of the accountant's licensing and qualifications to perform such duties on behalf of the issuer.

Fred V. Schiemann, CPA
Biz2Biz.Com
429 W. Plumb Lane
Reno, NV 89509
(o)775-324-2012 Ext. 11
Accountant provided review services
Accountant assisted in putting together annual report
Management provided all information and assembled disclosure and report

5. Public Relations Consultant(s)

Not Applicable

6. Investor Relations Consultant

000331

Not Applicable

7. Any other advisor(s) that assisted, advised, prepared or provided information with respect to this disclosure statement - the information shall include the telephone number and email address of each advisor.

Not Applicable

## Item XVI Management's Discussion and Analysis or Plan of Operation.

Instructions to Item XVI

Issuers that have not had revenues from operations in each of the last two fiscal years, or the last fiscal year and any interim period in the current fiscal year for which financial statements are furnished in the disclosure statement, shall provide the information in paragraphs A and C of this item. All other issuers shall provide the information in paragraphs B and C of this item.

The discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition.

Issuers are not required to supply forward-looking information. This is distinguished from presently known data that will impact upon future operating results, such as known future increases in costs of labor or materials. This latter data may be required to be disclosed.

A. <u>Plan of Operation</u>.

1. Describe the issuer's plan of operation for the next twelve months. This description should include such matters as:

The company plans to distribute Zoyte automobiles in North America.

i. a discussion of how long the issuer can satisfy its cash requirements and whether It will have to raise additional funds in the next twelve months;

The company will immediately need to raise funds to execute its business plan. The continuation of the business is a going concern.

ii. a summary of any product research and development that the issuer will perform for the term of the plan;

Not Applicable

iii. any expected purchase or sale of plant and significant equipment; and

In accordance with business plan, the company intends to raise capital for 10 vehicles to be used for crash testing.

iv. any expected significant changes in the number of employees.

May hire 5-10 employees

B. <u>Management's Discussion and Analysis of Financial Condition and Results of Operations</u>.

1. Full fiscal years. Discuss the issuer's financial condition, changes in financial condition and results of operations for each of the last two fiscal years. This discussion should address the past and future financial condition and results of operation of the issuer, with particular emphasis on the prospects for the future. The discussion should also address those key variable and other qualitative and quantitative factors that are necessary to an understanding and evaluation of the issuer. If material, the issuer should disclose the following:

i. Any known trends, events or uncertainties that have or are reasonably likely to have a material impact on the issuer's short-term or long-term liquidity;

The company is dependent on additional financing for operations. If there is a lack of financing operations will not continue. The company is currently in default of an unsecured note from The Barclay Group. The TBG can attempt to attain capital from the Company. The continuation of the business is a going concern.

ii. Internal and external sources of liquidity;

The company will make sales and sell dealership rights. The company is also seeking growth capital to fund internal growth.

iii. Any material commitments for capital expenditures and the expected sources of funds for such expenditures;

The company is expected to raise and spend Five Million Dollars in executing its business plan. This calls for getting Department of Transportation and EPA approval for its cars. Also the marketing of the vehicles to existing dealerships.

iv. Any known trends, events or uncertainties that have had or that are reasonably expected to have a material impact on the net sales or revenues or income from continuing operations;

General economy will have impact on sales.

v. Any significant elements of income or loss that do not arise from the issuer's continuing operations;

Non Applicable

000333

vi. The causes for any material changes from period to period in one or more line items of the issuer's financial statements; and

Not Applicable

vii. Any seasonal aspects that had a material effect on the financial condition or results of operation.

Not Applicable

> 2. Interim Periods. Provide a comparable discussion that will enable the reader to assess material changes in financial condition and results of operations since the end of the last fiscal year and for the comparable interim period in the preceding year.

The company has acquired assets and taken on debt for those assets.  The company has also secured a material agreement to be a distributor for Zoyte.

> C. Off-Balance Sheet Arrangements.
> 1. In a separately-captioned section, discuss the issuer's off-balance sheet arrangements that have or are reasonably likely to have a current or future effect on the issuer's financial condition, changes in financial condition, revenues or expenses, results of operations, liquidity, capital expenditures or capital resources that is material to investors. The disclosure shall include the items specified in paragraphs C(1)(i), (ii), (iii) and (iv) of this Item XVI to the extent necessary to an understanding of such arrangements and effect and shall also include such other information that the issuer believes is necessary for such an understanding.

Not Applicable

> i. The nature and business purpose to the issuer of such off-balance sheet arrangements;

Not Applicable

> ii. The importance to the issuer of such off-balance sheet arrangements in respect of its liquidity, capital resources, market risk support, credit risk support or other benefits;

Not Applicable

> iii. The amounts of revenues, expenses and cash flows of the issuer arising from such arrangements; the nature and amounts of any interests retained, securities issued and other indebtedness incurred by the issuer in connection with such

arrangements; and the nature and amounts of any other obligations or liabilities (including contingent obligations or liabilities) of the issuer arising from such arrangements that are or are reasonably likely to become material and the triggering events or circumstances that could cause them to arise; and

Not Applicable

iv. Any known event, demand, commitment, trend or uncertainty that will result in or is reasonably likely to result in the termination, or material reduction in availability to the issuer, of its off-balance sheet arrangements that provide material benefits to it, and the course of action that the issuer has taken or proposes to take in response to any such circumstances.

2. As used in paragraph C of this Item XVI, the term off-balance sheet arrangement means any transaction, agreement or other contractual arrangement to which an entity unconsolidated with the issuer is a party, under which the issuer has:

i. Any obligation under a guarantee contract that has any of the characteristics identified in paragraph 3 of FASB Interpretation No. 45, Guarantor's Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees of Indebtedness of Others (November 2002) ("FIN 45"), as may be modified or supplemented, and that is not excluded from the initial recognition and measurement provisions of FIN 45 pursuant to paragraphs 6 or 7 of that Interpretation;

ii. A retained or contingent interest in assets transferred to an unconsolidated entity or similar arrangement that serves as credit, liquidity or market risk support to such entity for such assets;

iii. Any obligation, including a contingent obligation, under a contract that would be accounted for as a derivative instrument, except that it is both indexed to the issuer's own stock and classified in stockholders' equity in the issuer's statement of financial position, and therefore excluded from the scope of FASB Statement of Financial Accounting Standards No. 133, Accounting for Derivative Instruments and Hedging Activities (June 1998), pursuant to paragraph 11(a) of that Statement, as may be modified or supplemented; or

iv. Any obligation, including a contingent obligation, arising out of a variable interest (as referenced in FASB Interpretation No. 46, Consolidation of Variable Interest Entities (January 2003), as may be modified or supplemented) in an unconsolidated entity that is held by, and material to, the issuer, where such entity provides financing, liquidity, market risk or credit risk support to, or engages in leasing, hedging or research and development services with, the issuer.

Instructions to paragraph C of Item XVI
i. No obligation to make disclosure under paragraph C of this Item XVI shall arise in respect of an off-balance sheet arrangement until a definitive agreement that is unconditionally binding or subject only to customary closing conditions exists or, if there is no such agreement, when settlement of the transaction occurs.

ii. Issuers should aggregate off-balance sheet arrangements in groups or categories that provide material information in an efficient and understandable manner and should avoid repetition and disclosure of immaterial information. Effects that are common or similar with respect to a number of off-balance sheet arrangements must be analyzed in the aggregate to the extent the aggregation increases understanding. Distinctions in arrangements and their effects must be discussed to the extent the information is material, but the discussion should avoid repetition and disclosure of immaterial information.

iii. For purposes of paragraph C of this Item XVI only, contingent liabilities arising out of litigation, arbitration or regulatory actions are not considered to be off-balance sheet arrangements.

iv. Generally, the disclosure required by paragraph C of this Item XVI shall cover the most recent fiscal year. However, the discussion should address changes from the previous year where such discussion is necessary to an understanding of the disclosure.

In satisfying the requirements of paragraph C of this Item XVI, the discussion of off-balance sheet arrangements need not repeat information provided in the footnotes to the financial statements, provided that such discussion clearly cross-references to specific information in the relevant footnotes and integrates the substance of the footnotes into such discussion in a manner designed to inform readers of the

significance of the information that is not included within the body of such discussion.

## Part E Issuance History

Item XVII List of securities offerings and shares issued for services in the past two years.

List below any events, in chronological order, that resulted in changes in total shares outstanding by the issuer (1) within the two-year period ending on the last day of the issuer's most recent fiscal year and (2) since the last day of the issuer's most recent fiscal year.

The list shall include all offerings of securities, whether private or public, and shall indicate:

Not Applicable

(i) The nature of each offering (e.g., Securities Act Rule 504, intrastate, etc.);
(ii) Any jurisdictions where the offering was registered or qualified;
(iii) The number of shares offered;
(iv) The number of shares sold;
(v) The price at which the shares were offered, and the amount actually paid to the issuer;
(vi) The trading status of the shares; and

000336

(vii) Whether the certificates or other documents that evidence the shares contain a legend

Not Applicable

(1) stating that the shares have not been registered under the Securities Act and (2) setting forth or referring to the restrictions on transferability and sale of the shares under the Securities Act.

The list shall also include all shares or any other securities or options to acquire such securities issued for services in the past two fiscal years and any interim periods, describing (1) the securities, (2) the persons or entities to whom such securities were issued and (3) the services provided by such persons or entities.
With respect to private offerings of securities, the list shall also indicate the identity of the persons who purchased securities in such private offering; provided, however, that in the event that any such person is an entity, the list shall also indicate (a) the identity of each natural person beneficially owning, directly or indirectly, more than five percent (5%) of any class of equity securities of such entity and (b) to the extent not otherwise disclosed, the identity of each natural person who controlled or directed, directly or indirectly, the purchase of such securities for such entity.

Not Applicable

## Part F Exhibits

The following exhibits must be either described in or attached to the disclosure statement:

Item XVIII Material Contracts.

A. Every material contract, not made in the ordinary course of business, that will be performed after the disclosure statement is posted through the OTC Disclosure and News Service or was entered into not more than two years before such posting. Also include the following contracts:

1) Any contract to which directors, officers, promoters, voting trustees, security holders named in the disclosure statement, or the Designated Advisor for Disclosure are parties other than contracts involving only the purchase or sale of current assets having a determinable market price, at such market price;

Not Applicable

2) Any contract upon which the issuer's business is substantially dependent, including but not limited to contracts with principal customers, principal suppliers, and franchise agreements;

000337

Not Applicable

> 3) Any contract for the purchase or sale of any property, plant or equipment for consideration exceeding 15 percent of such assets of the issuer; or

Not Applicable

> 4) Any material lease under which a part of the property described in the disclosure statement is held by the issuer.

Not Applicable

> B. Any management contract or any compensatory plan, contract or arrangement, including but not limited to plans relating to options, warrants or rights, pension, retirement or deferred compensation or bonus, incentive or profit sharing (or if not set forth in any formal document, a written description thereof) in which any director or any executive officer of the issuer participates shall be deemed material and shall be included; and any other management contract or any other compensatory plan, contract, or arrangement in which any other executive officer of the issuer participates shall be filed unless immaterial in amount or significance.

Not Applicable

> C. The following management contracts or compensatory plans need not be included:

> All material contracts have:

> 1) Ordinary purchase and sales agency agreements;

Not Applicable

> 2) Agreements with managers of stores in a chain organization or similar organization;

Not Applicable

> 3) Contracts providing for labor or salesmen's bonuses or payments to a class of security holders, as such; and

Not Applicable

> 4) Any compensatory plan that is available to employees, officers or directors generally and provides for the same method of allocation of benefits between management and non-management participants

000338

Not Applicable

Item XIX Articles of Incorporation and Bylaws.

    A. A complete copy of the issuer's articles of incorporation or in the event that the issuer is not a corporation, the issuer's certificate of organization. Whenever amendments to the articles of incorporation or certificate of organization are filed, a complete copy of the articles of incorporation or certificate of organization as amended shall be filed.

    Articles of Incorporation and Amendment to Articles of Incorporation have been posted on pink sheets

    B. A complete copy of the issuer's bylaws. Whenever amendments to the bylaws are filed, a complete copy of the bylaws as amended shall be filed.

Not Applicable

Item XX Purchases of Equity Securities by the Issuer and Affiliated Purchasers.

| A. In the following tabular format, provide the information specified in paragraph (B) of this Item XX with respect to any purchase made by or on behalf of the issuer or any "Affiliated Purchaser" (as defined in paragraph (C) of this Item XX) of shares or other units of any class of the issuer's equity securities. Version 9.7 Updated on 07/22/2009 Page 23 of 39 ISSUER PURCHASES OF EQUITY SECURITIES | | | | |
|---|---|---|---|---|
| Period | Column (a) Total Number of Shares (or Units) Purchased | Column (b) Average Price Paid per Share (or Unit) | Column (c) Total Number of Shares (or Units) Purchased as Part of Publicly Announced Plans or Programs | Column (d) Maximum Number (or Approximate Dollar Value) of Shares (or Units) that May Yet Be Purchased Under the Plans or Programs |
| Month #1 (identify beginning and ending dates) | | | | |
| Month #2 (identify beginning and ending dates) | | | | |
| Month #3 (identify beginning and ending dates) | | | | |
| Total | | | | |

000339



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_United States Bankruptcy Judge_

Signed March 23, 2011

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CHAPTER 7 |
| CENGIZ J. COMU a/k/a CJ COMU, | § § | CASE NO.  09-38820-sgj7 |
| | § § | |
| Debtor. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ, | § § § | |
| | § | |
| Plaintiffs, | § § | |
| v. | § § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § § § | |
| Defendant. | § | |

**ORDER DENYING MOTION WITHOUT PREJUDICE TO REFILING WITH PROPER
NOTICE TO TRUSTEE AND ALL PARTIES**

On this day, the Court considered the Motion of Plaintiffs to Leave to Prosecute Action.  The

Motion seeks approval/standing to prosecute certain Chapter 5 claims in the above-referenced

adversary proceeding that would be property of the estate and the Trustee would have standing to

ORDER  - PAGE  1

000340

pursue.  The Motion represents that Movant has made a demand that Trustee pursue the claims and she has unjustifiably refused.  Although the Motion states that it attaches an Exhibit A demand letter sent to the Trustee, no Exhibit A was attached to the Motion.  Moreover, the Certificate of Service does not reflect that the Motion was served on the Trustee.  Moreover, the Motion should have been filed in the main bankruptcy case with notice top creditors.  WHEREFORE

IT IS ORDERED, ADJUDGED, AND DECREED that the Motion of Plaintiffs for Leave to Prosecute Action is hereby DENIED without prejudice to refiling in the main case, with notice to the Trustee and creditors, and with the Exhibit A attached.

IT IS SO ORDERED.

### ###END OF ORDER###

ORDER  - PAGE  2

Dennis Olson
State Bar No. 15273500
OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 – Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

ATTORNEYS FOR CJ COMU

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CENGIZ J. COMU a/k/a | § | CASE NO. 09-38820-sgj-7 |
| CJ COMU, | § | |
| Debtor. | § | CHAPTER 7 |
| _____ | § | |
| | § | |
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, | § | |
| and RONALD KATZ, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary Case no. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a | § | |
| CJ COMU | § | |
| Defendant. | § | |

**DEFENDANT CJ COMU'S THIRD MOTION TO DISMISS
COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**

NOW COMES Defendant CJ Comu, and in response to the Plaintiffs' Second Amended

Complaint to Revoke Discharge Pursuant to Section 727 (d) of the United States Bankruptcy

Code ("Complaint"), files this Third Motion to Dismiss the Complaint, Pursuant to Fed. Rules

Civ. Proc. Rule 12(b)(6) ("Motion") and in support thereof would respectfully show the Court as

**DEFENDANT CJ COMU'S THIRD MOTION TO DISMISS
COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**                    **Page - 1**

follows:

1.      This Court's Order Conditionally Denying Second Motion to Dismiss, entered on February 24, 2011 has not been complied with by Plaintiffs.

2.      Specifically, this Court's Order entered March 23, 2011 denies Plaintiffs standing to pursue the Chapter 5 claims in the above-referenced adversary proceeding, and those claims should be deleted from Plaintiffs' pleadings, so that Defendant need not respond to them.

3.      A fair reading of Plaintiffs' Second Amended Complaint does not particularly identify the subsections of Section 727(d) that Plaintiffs rely on, and state when and how Plaintiffs learned the facts which are the basis for their complaint, as required by this Court's prior Order.   Because the Plaintiffs do not have standing to prosecute the fraudulent transfer claims and have not complied with the remaining portions of this Court's Order, Defendant reurges his Motion to Dismiss.

4.      Defendant reurges his Second Motion to Dismiss (Docket Entry No. 12) and incorporates it by reference in support of this Motion.

5.      Defendant reurges his Brief (Docket Entry No. 6) and incorporates it by reference in support of this Motion.

6.      The Trustee, after this Court's Order entered February 24, 2011, moved this Court for permission to employ an attorney, and by this Court's Order entered March 14, 2011 (Docket Entry No. 31 in the main case), the Trustee has now retained counsel who has standing and authority to prosecute any fraudulent transfer claims under Chapter 5 in this bankruptcy case.

**DEFENDANT CJ COMU'S THIRD MOTION TO DISMISS**
**COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**                **Page - 2**

WHEREFORE, PREMISES CONSIDERED, Defendant CJ Comu prays that the Court, after notice and hearing, will dismiss the Complaint by Plaintiffs, deny all relief sought by the Plaintiffs, grant the Defendant his costs incurred, and grant Defendant CJ Comu such other and further relief as to which he may be justly entitled, either at law or in equity.

Respectfully submitted,

OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 - Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

By: /s/   Dennis Olson
Dennis Olson
State Bar No. 15273500

ATTORNEYS FOR CJ COMU

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Defendant CJ Comu's Third Motion to Dismiss Complaint, Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6) was served upon:

Emil Lippe, Jr.                                    Diane Reed, Trustee
Plaza of the Americas, South Tower                 Reed & Elmquist, P.C.
600 N. Pearl Street, Suite S 2460                  604 Water Street
Dallas, Texas 75201                                Waxahachie, Texas 75165-3361

via electronic means and by cm,rrr, on the 24th day of March, 2011.

 /s/ Dennis Olson
Dennis Olson

**DEFENDANT CJ COMU'S THIRD MOTION TO DISMISS
COMPLAINT, PURSUANT TO FED. RULES CIV. PROC. RULE 12(b)(6)**          **Page - 3**

000344



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed April 19, 2011**

_____

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO.  09-38820-sgj7 |
| | § | |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, KING | § | |
| LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
| Defendant. | § | |

### AGREED ORDER

On this day, the Court considered the Unopposed Motion for Extension of Time to File Response.  Upon due consideration, the Court is of the opinion that the following order should be entered.

**AGREED ORDER  - PAGE 1**

000345

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiffs' Unopposed Motion for Extension of Time to File Response is hereby GRANTED.  Plaintiffs' response to C.J. Comu's Third Motion to Dismiss Complaint is to be submitted on April 28, 2011.

IT IS SO ORDERED.

AGREED:


/s/   Emil Lippe, Jr.
Emil Lippe, Jr., Counsel for Plaintiffs


/s/   Dennis Olson
Dennis Olson, Counsel for Defendant


**###END OF ORDER###**

**AGREED ORDER  - PAGE 2**

000346

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO. 09-38820-sgj7 |
| | § | |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, KING | § | |
| LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
THIRD MOTION TO DISMISS AND SUPPORTING BRIEF**

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

King Louie Mining, LLC, King Louie Enterprises, LLC, and Ronald Katz, Plaintiffs, hereby

file this Response to Defendant's Third Motion to Dismiss Complaint, and in support thereof would

show as follows:

**BACKGROUND**

1.     Plaintiffs have alleged that Defendant CJ Comu has concealed the existence of, or

misrepresented the value and extent of, assets that he owns and controls, primarily through a

complex corporate structure involving Sunset Pacific, L.P. , and a company that he controls through

000347

his control of Sunset Pacific, known as The Barclay Group, Inc. ("The Barclay Group"), either by failing to disclose the assets or purposely undervaluing numerous business interests, valuable stock, and other assets.[1] Although other people, including Comu's wife, are listed as having controlling interests in Sunset Pacific and The Barclay Group, such entities are mere alter egos of Defendant Comu that exist for his personal use and benefit. On information and belief, in at least one instance, and likely more, the transfer of these controlling interests occurred shortly before Comu filed for bankruptcy, but were postdated to shield the assets from the bankruptcy proceedings.

2.      A limited ownership interest in Sunset Pacific, and an indirectly owned interest in the Barclay Group, were disclosed in Comu's Schedules. At the First Meeting of Creditors herein, Defendant testified that he had fully disclosed his assets and liabilities on the Schedules he filed with the Court. He further claimed that his interest in certain corporations, partnerships, and other entities was correctly disclosed in these Schedules.

3.      Investigation by the Plaintiffs after the discharge was granted revealed that Defendant Comu's true interests in Sunset Pacific and The Barclay Group, Inc., were grossly misrepresented to the Creditors herein. Plaintiffs have determined that Comu is exercising complete control and dominance of such companies and their assets, that Comu has been receiving an ongoing influx of new opportunities and business through such entities, and even somehow loaned $50,000 to a company in which he indirectly had an interest at the same time that he was allegedly bankrupt. Defendant Comu has numerous other additional valuable interests, as identified in Plaintiffs' Second Amended Complaint, that were not disclosed to the creditors herein.  Accordingly, Plaintiffs have

---

[1] *See* PLAINTIFFS' SECOND AMENDED COMPLAINT, Filed March 2, 2011, Docket No. 20.

PLAINTIFFS' RESPONSE TO DEFENDANT'S
THIRD MOTION TO DISMISS AND SUPPORTING BRIEF - Page 2

alleged that the discharge was obtained by fraud under Section 727(d)(1) of the United States Bankruptcy Code, and further that Comu earned income and acquired interests in property that were not reported to the trustee in violation of Section 727(d)(2) of the United States Bankruptcy Code.

4.    Defendant Comu now seeks to dismiss Plaintiffs' Second Amended Complaint, having filed his third motion to dismiss, again attempting to forestall the need to answer Plaintiffs' allegations on the merits.

**ARGUMENT**

**I.**

**THE TRUSTEE HAS JOINED OR WILL JOIN THIS PROCEEDING**

5.    The Trustee was granted permission by this Court on March 14, 2011, to employ the firm of Reed & Elmquist, P.C. On information and belief, the Trustee has employed the aforementioned firm in order to represent the Trustee in the prosecution of this adversarial action. Because the Trustee has joined or will join the proceeding, there is no question of standing related to this action.

6.    Further, although Defendant's Third Motion to Dismiss asserts that this Court denied standing for Plaintiffs in its March 23, 2011 Order, said Order merely denied Plaintiffs' Motion for Leave without prejudice so that Plaintiffs could refile the Motion in the main bankruptcy case to give notice to top creditors. Plaintiffs have not refiled the Motion because the Trustee has joined or will join this proceeding. In an abundance of caution, Plaintiffs incorporate and reurge their arguments for standing found in their Motion for Leave filed herein at Docket No.19.

## II.

## PLAINTIFFS HAVE SATISFIED THIS COURT'S PLEADING ORDER

7.      This Court's Order Conditionally Denying Second Motion to Dismiss, entered on February 24, 2011, has been fully satisfied by the Plaintiffs. Plaintiffs' Second Amended Complaint clearly identifies the sections of 727(d) under which Plaintiffs seek relief. *See* PLAINTIFFS' SECOND AMENDED COMPLAINT, ¶ 38, 46-47 (identifying 727(d)(1) and 727(d)(2)). Further, Plaintiffs have stated how and when they learned of the facts which serve the basis of the complaint:

> "Plaintiffs were not aware of these fraudulent transfers, hidden assets and employment positions of Comu prior to the Discharge herein, as set forth below in greater detail. Instead, Plaintiffs first learned of information concerning such concealed assets and fraudulent transfers beginning around June, 2010, from informants who had dealt personally with Comu "

PLAINTIFFS' SECOND AMENDED COMPLAINT, ¶ 28. Plaintiffs have acted reasonably prudent in their discovery of the claims and the bringing of this proceeding. Plaintiffs' investigation into the fraudulent conduct of the Defendant continues to this day, but discovery is required to full discern his elaborate, fraudulent scheme.

## III.

## PLAINTIFFS' COMPLAINT STATES A CLAIM
## FOR RELIEF UNDER RULE 12(b)(6)

8.      Motions to dismiss for failure to state a claim under Rule 12(b)(6) are viewed with disfavor and are rarely granted.[2] Accordingly, the Court must take all factual allegations in the

---

[2] *Southern Christian Leadership Conference v. Supreme Court*, 252 F.3d 781, 786 (5th Cir. 2001).

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**THIRD MOTION TO DISMISS AND SUPPORTING BRIEF - Page 4**

Plaintiff's pleading as true.[3]  In evaluating a motion to dismiss for failure to state a claim, "all questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." [4]

9.     "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] And unless it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed for failure to state a claim.[6]  While much has been said about the recent decisions of the Supreme Court which supposedly have tightened the pleading requirements, it is still clear that specific allegation of all facts is not necessary.  As the Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), allegations simply need to set forth a plausible basis for relief, not mere formulaic recitations:

> While a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does not need detailed factual allegations, *ibid.,* a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.  Applying these general standards to a § 1 claim, stating a claim requires a complaint with enough factual matter to suggest an agreement.  Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.

---

[3]  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009)*; Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001); *accord McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 310 (5th Cir. 2002).

[4]  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[5]  *Iqbal*, 129 S. Ct. at 1949 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[6]  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
THIRD MOTION TO DISMISS AND SUPPORTING BRIEF - Page 5**

*Id.* In applying these standards to Plaintiffs' Amended Complaint, it is clear that the Complaint adequately alleges specific facts, and sets forth a plausible basis for recovery.

10. Defendant again contends that Plaintiffs' Second Amended Complaint failed to state a claim for which relief can be granted by reincorporating its previous motions to dismiss. In doing so, Defendant relies upon previous motions that point to no specific defect in the Plaintiffs' complaint. Ironically, it is the Second Motion to Dismiss which violates the spirit of *Bell Atlantic Corp. v. Twombly*, by resorting to conclusory allegations, labels and conclusions, and a formulaic recital of boilerplate assertions.

11. Plaintiffs have alleged that Defendant Comu obtained a bankruptcy discharge by failing to disclose his true interests in a variety of businesses and assets, including but certainly not limited to his alter egos Sunset Pacific, L.P. and The Barclay Group, Inc., in violation of 11 U.S.C. §727(d)(1) and §727(d)(2). Plaintiffs have asserted a number of facts upon which said allegation is based.[7] Plaintiffs have further asserted that the discovery of this alleged fraud did not occur until after the discharge was granted, beginning around June, 2010 with additional details and facts being discovered continuously up to present.[8] Because, for purposes of Rule 12(b)(6), the Court must accept all of Plaintiffs' factual allegations as true, Plaintiffs have absolutely stated a claim upon which relief may be granted, clearly putting Defendant on notice of Plaintiffs' claims, and Defendant's motion must be denied.

---

[7] *See* PLAINTIFFS' SECOND AMENDED COMPLAINT, Filed March 2, 2011, Docket No. 20.

[8] *Id.*

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**THIRD MOTION TO DISMISS AND SUPPORTING BRIEF - Page 6**

## IV.

### PLAINTIFFS' COMPLAINT DOES NOT LACK THE REQUIRED SPECIFICITY UNDER SECTION 727(d) AND EVEN IF IT DID, SUCH A DEFECT WOULD NOT MAKE THE COMPLAINT SUBJECT TO A RULE 12(b)(6) DISMISSAL

12.     Additionally, Defendant, through incorporating his previous Motions in his latest Motion to Dismiss, argues that Plaintiffs' Second Amended Complaint lacks the specificity required under Section 727(d)(1) of the United States Bankruptcy Code. Though Defendant did not reference Rule 9(b) of the Federal Rules of Civil Procedure in his motion, the "who, what, when, where and why" standard for specificity and/or particularity used for Rule 9(b) is similarly used for 727(d)(1).[9] Plaintiffs have alleged that through fraudulent transfers, Defendant CJ Comu has hidden and misrepresented the true nature of his holdings in multiple business entities, which he operates as alter egos, and numerous other assets in order to obtain a bankruptcy discharge from this Court. Such allegations satisfy the "who, what, when, where and why" pleading standard for Section 727(d)(1).

13.     Further, so long as the circumstances constituting the fraud have been sufficiently set forth, it is not necessary for the Plaintiffs to plead each fraudulent detail.[10] Again, the overarching requirement is that the "plausibility" standard of *Bell Atlantic Corp. v. Twombly* must be met. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In fact, because Plaintiff did not discover this fraud until after the discharge, Plaintiffs did not have the ability to request additional documents or conduct any discovery into the matter. Plaintiffs cannot plead the full extent of Defendant's fraud

---

[9] *Rezin v. Barr (In re Barr)*, 207 B.R. 168, 173 (Bankr. N.D. Ill. 1997).

[10] *See e.g., Sutliff, Inc. v. Donovan Companies, Inc*., 727 F.2d 648, 653 (7th Cir. 1984).

until they obtain discovery.[11]

14.    As noted, Plaintiffs are confident that the present pleadings contain the required specificity or particularity required under Section 727(d)(1), but even if the pleadings did not, such a defect would not support a Rule 12(b)(6) motion to dismiss:

> " While the [complaints] lack the required specificity, the Court cannot conclude that MEI has failed to state a claim under §727(d)(1) upon which relief can be granted. MEI has alleged fraudulent pre- and post-petition conduct which was not discovered until after entry of the discharge. These allegations are sufficient for Rule 12(b)(6) purposes, and the Court cannot conclude at this point in the proceeding that MEI is incapable of proving a set of facts upon which the discharge must be revoked." [12]

At this point in the proceedings, Plaintiffs are not required to plead the 727(d)(1) claims with particularity or specificity.[13] Plaintiffs must merely satisfy Rule 12(b)(6) and state a claim upon which relief may be granted. Even so, as discussed previously, Plaintiffs have pleaded with the required fraud specificity and, more importantly, Plaintiffs allegations assuredly satisfy Rule 12(b)(6).

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, Defendant Debtor's Third Motion to Dismiss be denied, and that Plaintiffs recover their reasonable attorney's fees incurred defending the Motion, and for general relief.

Respectfully submitted,

---

[11] *See Katz v. Household Inter., Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996)(holding that a Plaintiff is not required to plead to fraudulent facts that they have yet to discover prior to discovery).

[12] *Motor Enters., Inc. v. Gonzalez (In re Gonzalez)*, 2003 Bankr. LEXIS 2166 (Bankr. S.D. Ind. Oct. 20, 2003)(internal citations removed).

[13] *See id.*

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**THIRD MOTION TO DISMISS AND SUPPORTING BRIEF - Page 8**

**LAW OFFICES OF LIPPE & ASSOCIATES**

By:    /s/  Emil Lippe, Jr.
Emil Lippe, Jr.
State Bar No. 12398300
Law Offices of Lippe & Associates
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas  75201
Telephone:    (214) 855-1850
Facsimile:    (214) 720-6074
Email:    emil@texaslaw.com

ATTORNEYS FOR PLAINTIFFS KING LOUIE
MINING, LLC, KING LOUIE ENTERPRISES, LLC,
AND RONALD KATZ

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
THIRD MOTION TO DISMISS AND SUPPORTING BRIEF - Page 9**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this __28th__ day of April, 2011, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. Bankruptcy Court, Northern District of Texas, using the electronic case filing system of the Court, which will then send a notification of such filing to the following:

Dennis Olson
Olson, Nicoud & Gueck, L.L.P.
1201 Main St., Ste 2470
Dallas, TX 75202

　　　　　　　　　　　　　　　　　 /s/   Emil Lippe, Jr.
　　　　　　　　　　　　　　　　　 Emil Lippe, Jr.

David W. Elmquist - SBT #06591300
Tina E. Tuccelli – SBT #24042067
**REED & ELMQUIST, P.C.**
604 Water Street
Waxahachie, Texas 75165
(972) 938-7339
1+(972) 923-0430 (fax)

**ATTORNEYS FOR DIANE G. REED,**
**CHAPTER 7 TRUSTEE FOR CENGIZ J. COMU**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
| Defendant. | § | |

**UNOPPOSED MOTION FOR CONTINUANCE OF HEARING ON**
**THIRD MOTION TO DISMISS COMPLAINT, OF DOCKET CALL**
**AND RELATED PRETRIAL DEADLINES**

TO THE HONORABLE STACEY G.C. JERNIGAN, U.S. BANKRUPTCY JUDGE:

Diane G. Reed, Chapter 7 Trustee of the estate of Cengiz J. Comu, Defendant herein (the

"Trustee"), files this Unopposed Motion for Continuance of Hearing on Third Motion to Dismiss

(the "Motion"), of Docket Call and Related Pretrial Deadlines, and in support thereof would

show this Court the following:

UNOPPOSED MOTION FOR CONTINUANCE OF HEARING ON THIRD MOTION TO DISMISS COMPLAINT, OF DOCKET
CALL AND RELATED PRETRIAL DEADLINES - PAGE 1 OF 4

000357

1.    On December 31, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. The Trustee was appointed the chapter 7 trustee.

2.    On September 3, 2010, the Plaintiffs commenced the above-styled adversary proceeding against the Debtor (the "Adversary Proceeding").

3.    On February 1, 2011, the Court entered an Amended Scheduling Order setting forth the deadlines in this adversary proceeding, and setting trial docket call for June 13, 2011 with trial the week of June 20, 2011 (the "Scheduling Order").[1]

4.    On March 2, 2011, the Plaintiffs filed their Second Amended Complaint to Revoke Discharge (Docket No. 20).

5.    Also on March 2, 2011, the Plaintiffs filed their Motion for Leave to Prosecute Action (Docket No. 19; the "Motion to Prosecute"). By order entered March 23, 2011, the Motion to Prosecute was denied without prejudice by this Court (Docket No. 23).

6.    On March 24, 2011, the Defendant filed his Third Motion to Dismiss Complaint, Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6) (the "Motion to Dismiss"). A hearing on the Motion to Dismiss has been set for May 9, 2011.

7.    On March 12, 2011, this Court approved the Trustee's employment of the undersigned as her counsel in the Debtor's bankruptcy case. The Trustee, by and through counsel, has been evaluating whether or not to move to intervene in the prosecution of the Adversary Proceeding to revoke the Debtor's discharge and to prosecute on behalf of the Debtors' bankruptcy estate the fraudulent transfer claim set forth in the Second Amended Complaint.

8.    Due to the recent introduction of the undersigned counsel to the Trustee to these proceedings, the Trustee requests sufficient time for the review and analysis of this Adversary

_____
[1] Docket No. 14.

000358

Proceeding to determine whether intervention should be requested. The Trustee also anticipates filing a motion to abate the Adversary Proceeding so that the Trustee may investigate the claims asserted through a Rule 2004 examination of the Debtor. Finally, the undersigned counsel to the Trustee was already scheduled to be out of state on May 9, 2011 when the hearing on the Motion to Dismiss was set.

9. For the foregoing reasons, the Trustee requests a continuance of the May 9, 2011 hearing on the Motion to Dismiss for at least 60 days. In addition, the Trustee requests a continuance of the June 13, 2011 trial docket call for at least 90 days, with the related discovery and other pretrial deadlines to be extended as provided in the Scheduling Order.

10. This continuance is not sought for the purpose of delay, but rather in the interest of justice and to save judicial and legal resources.

WHEREFORE, Diane G. Reed, Trustee respectfully requests that the Court: 1) continue the May 9, 2011 hearing on the Motion to Dismiss in this case for at least 60 days; 2) continue the June 13, 2011 trial docket call in this case for at least 90 days, and extend the related pretrial deadlines that have not yet occurred accordingly; and 3) grant such other and further relief to which she may be entitled.

Dated: May 4, 2011.

Respectfully submitted,

REED & ELMQUIST, P.C.
604 Water Street
Waxahachie, TX 75165
(972) 938-7339
1+(972) 923-0430 (fax)

By:/s/ David W. Elmquist
    David W. Elmquist – SBT #06591300
    Tina E. Tuccelli – SBT #24042067

**ATTORNEYS FOR DIANE REED, TRUSTEE
FOR CENGIZ J. COMU**

UNOPPOSED MOTION FOR CONTINUANCE OF HEARING ON THIRD MOTION TO DISMISS COMPLAINT, OF DOCKET
CALL AND RELATED PRETRIAL DEADLINES - PAGE 3 OF 4

000359

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that prior to the filing of this Motion, I conferred with Dennis Olson, counsel to Defendant, and Emil Lippe, counsel to Plaintiffs, who both stated that their respective clients do not oppose the relief requested herein.

*/s/ David W. Elmquist*
David W. Elmquist

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 4, 2011, a true and correct copy of the foregoing Motion was served electronically on counsel to Plaintiffs and Defendant in this case.

*/s/ David W. Elmquist*
David W. Elmquist

UNOPPOSED MOTION FOR CONTINUANCE OF HEARING ON THIRD MOTION TO DISMISS COMPLAINT, DOCKET CALL AND RELATED PRETRIAL DEADLINES - PAGE 4 OF 4

000360

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed May 06, 2011**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

_____

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING UNOPPOSED MOTION FOR CONTINUANCE OF
HEARING ON THIRD MOTION TO DISMISS COMPLAINT, OF DOCKET CALL
AND RELATED PRETRIAL DEADLINES**

On this date the Court considered the Unopposed Motion for Continuance of Hearing on

Third Motion to Dismiss Complaint, of Docket Call and Related Pretrial Deadlines filed by

Diane G. Reed, Chapter 7 Trustee of the estate of Cenzig J. Comu, Defendant herein (the

"Trustee"), on May 4, 2011 (the "Motion"). Through the Motion, the Court has been informed

ORDER GRANTING UNOPPOSED MOTION FOR CONTINUANCE OF HEARING ON THIRD MOTION TO DISMISS
COMPLAINT, OF DOCKET CALL AND RELATED PRETRIAL DEADLINES - PAGE 1 OF 1

000361

that the parties do not oppose the requested continuance of the hearing on the Third Motion to Dismiss, currently set for May 9, 2011, or the trial docket call in this matter currently scheduled for June 13, 2011, or the related discovery and other pretrial deadlines as provided in the Amended Scheduling Order entered on February 1, 2011 (the "Scheduling Order"), and that cause exists for granting the continuance extensions requested by the Trustee.

It is therefore ORDERED that the Motion is granted.

It is further ORDERED that the hearing on the Third Motion to Dismiss is continued until **July 11, 2011 at 10:30 a.m.**

It is further ORDERED that the trial docket call in this matter is continued until **September 12, 2011 at 1:30 p.m.**

It is further ORDERED that the discovery and other pretrial deadlines are extended as provided in the Amended Scheduling Order.

# # # END OF ORDER # # #

**ORDER GRANTING UNOPPOSED MOTION FOR CONTINUANCE OF HEARING ON THIRD MOTION TO DISMISS COMPLAINT, OF DOCKET CALL AND RELATED PRETRIAL DEADLINES - PAGE 2 OF 2**

000362

David W. Elmquist - SBT #06591300
Tina E. Tuccelli – SBT #24042067
**REED & ELMQUIST, P.C.**
604 Water Street
Waxahachie, Texas 75165
(972) 938-7339
1+(972) 923-0430 (fax)

**ATTORNEYS FOR DIANE G. REED,**
**CHAPTER 7 TRUSTEE FOR CENGIZ J. COMU**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
|     Defendant. | § | |

## SECOND UNOPPOSED MOTION FOR CONTINUANCE OF HEARING ON THIRD MOTION TO DISMISS COMPLAINT, OF DOCKET CALL AND RELATED PRETRIAL DEADLINES

TO THE HONORABLE STACEY G.C. JERNIGAN, U.S. BANKRUPTCY JUDGE:

Diane G. Reed, Chapter 7 Trustee of the estate of Cengiz J. Comu, Defendant herein (the

"Trustee"), files this Second Unopposed Motion for Continuance of Hearing on Third Motion to

Dismiss (the "Motion"), of Docket Call and Related Pretrial Deadlines, and in support thereof

would show this Court the following:

SECOND UNOPPOSED MOTION FOR CONTINUANCE OF HEARING ON THIRD MOTION TO DISMISS COMPLAINT,
DOCKET CALL AND RELATED PRETRIAL DEADLINES - PAGE 1 OF 4

000363

1.      On December 31, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. The Trustee was appointed the chapter 7 trustee.

2.      On September 3, 2010, the Plaintiffs commenced the above-styled adversary proceeding against the Debtor (the "Adversary Proceeding").

3.      On February 1, 2011, the Court entered an Amended Scheduling Order setting forth the deadlines in this adversary proceeding, and setting trial docket call for June 13, 2011 with trial the week of June 20, 2011 (the "Scheduling Order").[1]

4.      On March 2, 2011, the Plaintiffs filed their Second Amended Complaint to Revoke Discharge (Docket No. 20).

5.      Also on March 2, 2011, the Plaintiffs filed their Motion for Leave to Prosecute Action (Docket No. 19; the "Motion to Prosecute"). By order entered March 23, 2011, the Motion to Prosecute was denied without prejudice by this Court (Docket No. 23).

6.      On March 24, 2011, the Defendant filed his Third Motion to Dismiss Complaint, Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6) (the "Motion to Dismiss"). A hearing on the Motion to Dismiss has been set for May 9, 2011.

7.      On March 12, 2011, this Court approved the Trustee's employment of the undersigned as her counsel in the Debtor's bankruptcy case. Since that time, the Trustee, by and through counsel, has been evaluating whether or not to move to intervene in the prosecution of the Adversary Proceeding to revoke the Debtor's discharge and to prosecute on behalf of the Debtors' bankruptcy estate the fraudulent transfer claim set forth in the Second Amended Complaint.

8.      On May 4, 2011, the Trustee filed her Unopposed Motion for Continuance of Hearing on Third Motion to Dismiss Complaint, of Docket Call and Related Pretrial Deadlines

---

[1] Docket No. 14.

SECOND UNOPPOSED MOTION FOR CONTINUANCE OF HEARING ON THIRD MOTION TO DISMISS COMPLAINT,
DOCKET CALL AND RELATED PRETRIAL DEADLINES - PAGE 2 OF 4

000304

(the "Trustee's First Continuance Motion").[2]  An order was entered by this Court on May 6, 2011 granting the Trustee's First Continuance Motion which reset the hearing on the Motion to Dismiss to July 11, 2011, and the trial docket call until September 12, 2011.[3]

      9.     The undersigned counsel to the Trustee has met with the Debtor's/Defendant's counsel and continues to review and analyze this Adversary Proceeding to determine whether intervention should be requested.  In that regard, the Trustee intends to shortly file a motion for Rule 2004 examination of the Debtor to investigate the claims asserted.  The Trustee also anticipates filing a motion to abate the Adversary Proceeding.

      10.    For the foregoing reasons, the Trustee requests a continuance of the July 11, 2011 hearing on the Motion to Dismiss for at least 60 days.  In addition, the Trustee requests a continuance of the September 12, 2011 trial docket call for at least 90 days, with the related discovery and other pretrial deadlines to be extended as provided in the Scheduling Order.

      11.    This continuance is not sought for the purpose of delay, but rather in the interest of justice and to save judicial and legal resources.

      WHEREFORE, Diane G. Reed, Trustee respectfully requests that the Court:  1) continue the July 11, 2011 hearing on the Motion to Dismiss in this case for at least 60 days;  2) continue the September 12, 2011 trial docket call in this case for at least 90 days, and extend the related pretrial deadlines that have not yet occurred accordingly; and  3) grant such other and further relief to which she may be entitled.

---

[2] Docket No. 31.
[3] Docket No. 33.

Dated: July 6, 2011.

Respectfully submitted,

**REED & ELMQUIST, P.C.**
604 Water Street
Waxahachie, TX 75165
(972) 938-7339
1+(972) 923-0430 (fax)

By:/s/ David W. Elmquist
    David W. Elmquist – SBT #06591300
    Tina E. Tuccelli – SBT #24042067

**ATTORNEYS FOR DIANE REED, TRUSTEE
FOR CENGIZ J. COMU**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that prior to the filing of this Motion, I conferred with Dennis Olson, counsel to Defendant, and Emil Lippe, counsel to Plaintiffs, who both stated that their respective clients do not oppose the relief requested herein.

/s/ David W. Elmquist
David W. Elmquist

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 6, 2011, a true and correct copy of the foregoing Motion was served electronically on counsel to Plaintiffs and Defendant in this case.

/s/ David W. Elmquist
David W. Elmquist



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_[signature]_

_____
**United States Bankruptcy Judge**

**Signed July 07, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

---

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING SECOND UNOPPOSED MOTION FOR CONTINUANCE OF
HEARING ON THIRD MOTION TO DISMISS COMPLAINT, OF DOCKET CALL
AND RELATED PRETRIAL DEADLINES**

On this date the Court considered the Second Unopposed Motion for Continuance of

Hearing on Third Motion to Dismiss Complaint, of Docket Call and Related Pretrial Deadlines

filed by Diane G. Reed, Chapter 7 Trustee of the estate of Cenzig J. Comu, Defendant herein (the

"Trustee"), on July 6, 2011 (the "Motion"). Through the Motion, the Court has been informed

that the parties do not oppose the requested continuance of the hearing on the Third Motion to Dismiss, currently set for July 11, 2011, or the trial docket call in this matter currently scheduled for September 12, 2011, or the related discovery and other pretrial deadlines as provided in the Amended Scheduling Order entered on February 1, 2011 (the "Scheduling Order"), and that cause exists for granting the continuance extensions requested by the Trustee.

It is therefore ORDERED that the Motion is granted.

It is further ORDERED that the hearing on the Third Motion to Dismiss is continued until **September 15, 2011 at 9:30 a.m.**

It is further ORDERED that the trial docket call in this matter is continued until **December 12, 2011 at 1:30 p.m.**

It is further ORDERED that the discovery and other pretrial deadlines are extended as provided in the Amended Scheduling Order.

### # # # END OF ORDER # # #

**ORDER GRANTING SECOND UNOPPOSED MOTION FOR CONTINUANCE OF HEARING ON THIRD MOTION TO DISMISS COMPLAINT, OF DOCKET CALL AND RELATED PRETRIAL DEADLINES - PAGE 2 OF 2**

000368

David W. Elmquist – SBT #06591300
Tina E. Tuccelli – SBT #24042067
**REED & ELMQUIST, P.C.**
604 Water Street
Waxahachie, Texas 75165
(972) 938-7339
1+(972) 923-0430 (fax)

**ATTORNEYS FOR DIANE G. REED,**
**CHAPTER 7 TRUSTEE FOR CENGIZ J. COMU**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

_____

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
| Defendant. | § | |

## AGREED MOTION TO ABATE ADVERSARY PROCEEDING

TO THE HONORABLE STACEY G.C. JERNIGAN, U.S. BANKRUPTCY JUDGE:

Diane G. Reed, Chapter 7 Trustee of the estate of Cengiz J. Comu, Defendant herein (the "Trustee"), files this Agreed Motion to Abate Adversary Proceeding (the "Motion"), and in support thereof would show this Court the following:

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and FED. R. BANKR. P. 7001. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

2.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**AGREED MOTION TO ABATE ADVERSARY PROCEEDING - PAGE 1 OF 5**

000369

3. On December 31, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code"). The Trustee was appointed the chapter 7 trustee.

4. On September 3, 2010, the Plaintiffs commenced the above-styled adversary proceeding against the Debtor (the "Adversary Proceeding").

5. On February 1, 2011, the Court entered an Amended Scheduling Order setting forth the deadlines in this adversary proceeding, and setting trial docket call for June 13, 2011 with trial the week of June 20, 2011 (the "Scheduling Order").[1]

6. On March 2, 2011, the Plaintiffs filed their Second Amended Complaint to Revoke Discharge.[2]

7. Also on March 2, 2011, the Plaintiffs filed their Motion for Leave to Prosecute Action (Docket No. 19; the "Motion to Prosecute"). By order entered March 23, 2011, the Motion to Prosecute was denied without prejudice by this Court (Docket No. 23).

8. On March 24, 2011, the Defendant filed his Third Motion to Dismiss Complaint, Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6) (the "Motion to Dismiss").

9. On March 12, 2011, this Court approved the Trustee's employment of the undersigned as her counsel in the Debtor's bankruptcy case. Since that time, the Trustee, by and through counsel, has been evaluating whether or not to move to intervene in the prosecution of the Adversary Proceeding to revoke the Debtor's discharge and to prosecute on behalf of the Debtors' bankruptcy estate the fraudulent transfer claim set forth in the Second Amended Complaint.

10. On May 4, 2011, the Trustee filed her Unopposed Motion for Continuance of Hearing on Third Motion to Dismiss Complaint, of Docket Call and Related Pretrial Deadlines

---

[1] Docket No. 14.
[2] Docket No. 20.

(the "Trustee's First Continuance Motion").[3] An order was entered by this Court on May 6, 2011 granting the Trustee's First Continuance Motion which reset the hearing on the Motion to Dismiss to July 11, 2011, and the trial docket call until September 12, 2011.[4]

11. On July 6, 2011, the Trustee filed her Second Unopposed Motion for Continuance of Hearing on Third Motion to Dismiss Complaint, of Docket Call and Related Pretrial Deadlines (the "Trustee's Second Continuance Motion").[5] An order was entered by this Court on July 8, 2011 granting the Trustee's Second Continuance Motion which reset the hearing on the Motion to Dismiss to September 15, 2011, and the trial docket call until December 12, 2011.[6]

12. The undersigned counsel to the Trustee has met with the Debtor's/Defendant's counsel and continues to review and analyze this Adversary Proceeding to determine whether intervention should be requested. In that regard, the Trustee intends to shortly file a motion for Rule 2004 examination of the Debtor to investigate the claims asserted.

13. For the foregoing reasons, the Trustee requests that the Court abate the Adversary Proceeding until the Trustee determines whether or not to intervene.

14. Plaintiffs and Defendant have agreed to this request for abatement as evidenced by the signature of their counsel below.

WHEREFORE, Diane G. Reed, Trustee respectfully requests that the Court issue an Order abating this Adversary Proceeding as set out above, and that this Court grant such other and further relief to which she may be entitled.

---

[3] Docket No. 31.
[4] Docket No. 33.
[5] Docket No. 36.
[6] Docket No. 37.

000371

Dated: August 24, 2011.

Respectfully submitted,

**REED & ELMQUIST, P.C.**
604 Water Street
Waxahachie, TX 75165
(972) 938-7339
1+(972) 923-0430 (fax)

By: */s/ David W. Elmquist*
      David W. Elmquist – SBT #06591300
      Tina E. Tuccelli – SBT #24042067

**ATTORNEYS FOR DIANE REED, TRUSTEE**
**FOR THE ESTATE OF CENGIZ J. COMU**

**AGREED:**

**LAW OFFICES OF LIPPE & ASSOCIATES**
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite 2460
Dallas, TX 75201
(214) 855-1850
Fax : (214) 720-6074
Email: texaslaw@airmail.net

By:     */s/ Emil Lippe, Jr.*
      Emil Lippe, Jr. - SBT #12398300

**ATTORNEYS FOR PLAINTIFFS**

**OLSON NICOUD & GUECK, L.L.P.**
1201 Main Street, Suite 2470
Dallas, TX 75202
(214) 979-7302
Fax : (214) 979-7301
Email: denniso@dallas-law.com

By:     */s/ Dennis Olson*
      Dennis Olson - SBT #15273500

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 24, 2011, a true and correct copy of the foregoing Motion was served electronically on counsel to Plaintiffs and Defendant in this case.

*/s/ David W. Elmquist*
David W. Elmquist

000373



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____

**United States Bankruptcy Judge**

**Signed August 30, 2011**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

_____

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
| Defendant. | § | |

**AGREED ORDER GRANTING**
**AGREED MOTION TO ABATE ADVERSARY PROCEEDING**

On this day came on for consideration the Agreed Motion to Abate Adversary Proceeding

filed by Diane G. Reed, Chapter 7 Trustee of the estate of Cengiz J. Comu, Defendant herein (the

"Trustee"), on August 5, 2011 (the "Motion"). The Court finds that the parties have agreed to

abate the adversary proceeding pending the Trustee's determination of whether or not to

intervene in this adversary proceeding, as evidenced by their signatures on the Motion and this
Agreed Order. It is therefore

ORDERED that Adversary Proceeding No. 10-03269-sgj, styled *King Louie Mining,
LLC, King Louis Enterprises, LLC, and Ronald Katz, Plaintiffs v. Cengiz J. Comu, Defendant*,
including any hearing on the Motion to Dismiss, is abated until further order of the Court.

It is further ORDERED that all discovery and other pretrial deadlines as provided in the
Amended Scheduling Order are abated until such time as the Court terminates this abatement by
further order.

# # # END OF ORDER # # #

**AGREED:**

**REED & ELMQUIST, P.C.**
604 Water Street
Waxahachie, TX 75165
(972) 938-7339
Fax: 1+(972) 923-0430
Email: delmquist@bcylawyers.com

By: */s/ David W. Elmquist*
David W. Elmquist – SBT #06591300

**ATTORNEYS FOR DIANE REED, TRUSTEE
FOR THE ESTATE OF CENGIZ J. COMU**

**LAW OFFICES OF LIPPE & ASSOCIATES**
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, TX 75201
(214) 855-1850
Fax : (214) 720-6074
Email: texaslaw@airmail.net

By: */s/ Emil Lippe, Jr.*
Emil Lippe, Jr. - SBT #12398300

**ATTORNEYS FOR PLAINTIFFS**

**OLSON NICOUD & GUECK, L.L.P.**
1201 Main Street, Suite 2470
Dallas, TX 75202
(214) 979-7302
Fax : (214) 979-7301
Email: denniso@dallas-law.com


By:____/s/ Dennis Olson_____
     Dennis Olson - SBT #15273500

**ATTORNEYS FOR DEFENDANT**

**AGREED ORDER GRANTING AGREED MOTION TO ABATE ADVERSARY PROCEEDING**
**- Page 3 of 3**

000376

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS



**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed May 15, 2012**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

_____

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
| Defendant. | § | |

**SUPPLEMENTAL ORDER GRANTING**
**AGREED MOTION TO ABATE ADVERSARY PROCEEDING**

ON May 2, 2012, a status conference was held in this adversary proceeding during which
the Court further considered the Agreed Motion to Abate Adversary Proceeding filed by Diane
G. Reed, Chapter 7 Trustee of the estate of Cengiz J. Comu, Defendant herein (the "Trustee"), on
August 24, 2011 (the "Motion"). The Court finds that the parties have agreed to continue to

**SUPPLEMENTAL ORDER GRANTING AGREED MOTION TO ABATE ADVERSARY PROCEEDING**
**- Page 1 of 2**

abate the adversary proceeding pending the Trustee's determination of whether or not to intervene in this adversary proceeding. It is therefore

ORDERED that Adversary Proceeding No. 10-03269-sgj, styled *King Louie Mining, LLC, King Louis Enterprises, LLC, and Ronald Katz, Plaintiffs v. Cengiz J. Comu, Defendant*, including any hearing on the Motion to Dismiss, is abated until August 1, 2012.

It is further ORDERED that the parties shall appear for a status conference to be held during the week of July 30, 2012, unless the Trustee has filed prior to the date of such status conference a motion to intervene in this adversary proceeding. Upon the filing of such motion, the Trustee shall promptly notify the Court, cancel the status conference and set the motion to intervene for hearing.

It is further ORDERED that all discovery and other pretrial deadlines as provided in the Amended Scheduling Order are abated until further order of the Court.

# # # END OF ORDER # # #

**SUPPLEMENTAL ORDER GRANTING AGREED MOTION TO ABATE ADVERSARY PROCEEDING
- Page 2 of 2**

000378



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed August 06, 2012**

_____

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| CENGIZ J. COMU a/k/a/ CJ COMU, | § | Case No. 09-38820-SGJ-7 |
|     Debtor. | § | |

_____

| | | |
|---|---|---|
| KING LOUIE MINING, *et al.*, | § | |
|     Plaintiffs. | § | |
| | § | |
| v. | § | Adversary No. 10-03269-SGJ |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |

### ORDER TERMINATING ABATEMENT OF ADVERSARY PROCEEDING AND REQUIRING: (A) TRUSTEE'S COMPLAINT IN INTERVENTION TO BE FILED BY 8/31/2012; AND (B) PARTIES TO UPLOAD AGREED SCHEDULING ORDER, OR IN THE ALTERNATIVE, COURT WILL ENTER ITS OWN SCHEDULING ORDER

The court conducted a status conference (the "Status Conference") on July 31, 2012 in the above-referenced adversary proceeding (the "Adversary Proceeding"). At the Status Conference, the court heard reports from counsel regarding ongoing Rule 2004 examinations as well as an intent by the

chapter 7 trustee in the underlying bankruptcy case, Diane G. Reed (the "Trustee"), to file a Complaint in Intervention.  Based on these representations at the Status Conference, it is

**ORDERED** that the abatement of this Adversary Proceeding is terminated; it is further

**ORDERED** that the Complaint in Intervention shall be filed by the Trustee by **August 31, 2012**; it is further

**ORDERED** that the parties in the Adversary Proceeding shall upload an agreed form of scheduling order by **September 14, 2012** (the "Agreed Scheduling Order"), which includes specific deadlines pertaining to the pending Motion to Dismiss filed by the defendant, Cengiz J. Comu [DE # 24] (the "Motion to Dismiss"); and it is further

**ORDERED** that if the parties do not upload the Agreed Scheduling Order, the court will upload its own form of scheduling order, which contemplates a January 2013 trial docket call and certain specific deadlines pertaining to the Motion to Dismiss.

**###END OF ORDER###**

000380

David W. Elmquist - SBT #06591300
Tina E. Tuccelli – SBT #24042067
**REED & ELMQUIST, P.C.**
604 Water Street
Waxahachie, Texas 75165
(972) 938-7339
1+(972) 923-0430 (fax)

**ATTORNEYS FOR DIANE G. REED,**
**CHAPTER 7 TRUSTEE FOR CENGIZ J. COMU**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |

| | | |
|---|---|---|
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-plaintiff and | § | |
|     Third-party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CENGIZ J. COMU, | § | |
|     Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| PHYLLIS E. COMU, | § | |
| BERNARD D. BROWN, | § | |
| THE BARCLAY GROUP, INC. AND | § | |
| SUNSET PACIFIC, L.P., | § | |
|     Third-party Defendants. | § | |

**TRUSTEE'S COMPLAINT IN INTERVENTION - Page 1**

## TRUSTEE'S COMPLAINT IN INTERVENTION

Diane G. Reed, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Cengiz J. Comu ("Comu" or the "Debtor"), files this her Complaint in Intervention, and in support thereof would show this Court as follows:

### I. JURISDICTION AND VENUE

1.        This Court has subject matter jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1334(b) and 157. The claims asserted herein concern the administration of the Debtor's bankruptcy estate and is, therefore, a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper for this Complaint in Intervention pursuant to 28 U.S.C. § 1409.

### II. PARTIES

2.        The Trustee, the intervenor, co-plaintiff and third-party plaintiff herein, is the duly appointed Chapter 7 trustee for the Comu bankruptcy estate.

3.        Co-plaintiff King Louie Mining, LLC ("KLM") is a Delaware limited liability company with its principal office and place of business at 8 Wheatley Avenue, Albertson, New York 11507. KLM is a judgment creditor of Comu and has filed an unsecured proof of claim in the amount of $2,003,945.84.

4.        Co-plaintiff King Louie Enterprises, LLC ("KLE") is a Delaware limited liability company with its principal office and place of business at 8 Wheatley Avenue, Albertson, New York 11507. KLE is a judgment creditor of Comu and has filed an unsecured proof of claim in the amount of $199,811.10.

5.        Co-plaintiff Ronald Katz ("Katz") is a resident of the State of New York and is a creditor herein. Katz is a judgment creditor of Comu and has filed an unsecured proof of claim in the amount of $75,508.22.

000382

6.    Comu is an individual residing in Dallas County, Texas, and may be served with process by serving his attorney of record in this bankruptcy case, Dennis Olson, who has agreed to accept service in his behalf.

7.    Third-party Defendant Phyllis E. Comu ("Phyllis Comu") is an individual resident of Dallas County, Texas, and may be served by serving her attorney, Dennis Olson, who has agreed to accept service in her behalf.

8.    Third-party Defendant Bernard D. Brown ("Brown") is an individual and may be served with process pursuant to FED. R. CIV. P. 4(f).

9.    Third-party Defendant Sunset Pacific, L.P. ("Sunset Pacific") is a Texas limited partnership[1] and may be served by serving its attorney, Dennis Olson, who has agreed to accept service in its behalf.

10.    Third-party Defendant The Barclay Group, Inc. ("TBG") is a Texas corporation[2] and may be served by serving its chief executive officer, Comu.

## III. FACTUAL BACKGROUND

### A. TBG

11.    Comu commenced his Chapter 7 case on December 31, 2009 (the "Petition Date"), approximately eight months after co-plaintiffs KLM, KLE and Katz had obtained a default judgment against him in New York state court in the approximate amount of $2,280,000. This judgment debt represents approximately 95% of the total debt owed by Comu as evidenced by the claims filed in this case.

---

[1] On or about March 16, 2012, the Texas Secretary of State ("Texas SOS") issued an involuntary termination of Sunset Pacific's Certificate of Formation due to its failure to file periodic reports as required by Section 153.301 of the Texas Business Organizations Code.
[2] On or about January 28, 2011, the Texas SOS forfeited TBG's Certificate of Incorporation due to TBG's failure to file franchise tax returns and/or pay state franchise taxes.

TRUSTEE'S COMPLAINT IN INTERVENTION - Page 3

000383

12.     On January 15, 2010 Comu filed his bankruptcy schedules. In Comu's Schedule B he listed a one percent (1%) ownership interest in TBG (presumably common stock). According to Comu's Schedule B, the other ninety-nine percent (99%) shareholder of TBG is Third-party Defendant Brown. Although Brown is listed as a ninety-nine percent (99%) owner, Comu has not produced to the Trustee any document evidencing this ownership interest, including a stock ledger or any stock certificates issued to Brown and/or Comu.

13.     TBG was incorporated on or about March 7, 1996 by John Potter ("Potter"). The original directors listed in the Articles of Incorporation are Comu and Potter.

14.     On or about February 11, 2000, the Texas SOS forfeited TBG's authority to transact business in Texas due to TBG's failure to file franchise tax returns and/or to pay state franchise taxes.

15.     On or about January 18, 2008, approximately eight years after the initial forfeiture of TBG's corporate charter and the forfeiture of its authority to transact business, TBG's corporate charter was reinstated.

16.     On or about December 31, 2007, 2008 and 2009, Comu filed with the Texas SOS, on behalf of TBG, Texas Franchise Tax Public Information Reports. In each of these reports Comu listed himself as the sole officer and director of TBG.

17.     Although TBG's authority to transact business in the State of Texas was revoked from February 11, 2000 to January 18, 2008, and from January 11, 2011 to the present, Comu has caused TBG to engage in various business transactions during these forfeiture periods as discussed generally below.

18.     In the fall of 2009 through January 10, 2010, Comu caused TBG to participate in and help facilitate a corporate merger transaction by and between Go Green USA LLC ("Go Green"), a Nevada limited liability company, and Ganas Corp. ("Ganas"), a Delaware corporation. The terms of the merger transaction were set forth in a Merger Agreement and Plan of Reorganization dated as of

November 4, 2009 by and among Ganas, Go Green, and, solely for purposes of Section 1.12 of the agreement, TBG (the "Merger Agreement"). The Merger Agreement between Go Green and Ganas provided that Go Green would be merged with and into Ganas, and Ganas would be the surviving corporation, which would be re-named Green Automotive Company, Inc. ("Green Automotive").

19.     At the time the Merger Agreement was entered into, Ganas was a shell corporation in that it conducted no business operations, but, according to Comu, its stock could be publicly traded through brokers/dealers registered with certain over-the-counter ("OTC") stock markets. At the time of the merger transaction, Go Green's future business plan was to be the exclusive distributor of an electric sports utility vehicle that was being developed in China.

20.     At or about the time of the closing of the Merger Agreement, which occurred on January 10, 2010, TBG received 40% of the common stock issued by Ganas. The total number of shares issued by Ganas and/or Green Automotive in January 2010 is not known. However, based upon the terms of the Merger Agreement, it appears that there was a total of approximately 143,620,000 shares of Green Automotive common stock that was issued in connection with the merger. Sixty percent (60%) of the stock issued at that time was issued to the three members of Go Green, and the other 40% was issued to TBG.

21.     In conjunction with the closing of the Merger Agreement on or about January 10, 2010, Comu caused TBG to enter into three separate Stock Purchase Agreements to sell certain of the restricted stock of Green Automotive that was issued to TBG. The purchasers of this stock were Third-party Defendant Sunset Pacific and two Canadian family trusts known as the TKY Trust and the Daptco Trust, which were formed by Comu's mother, Sevim Comu. The trustee of these two trusts is Comu's brother, Cem Comu.

22.     Pursuant to a Stock Purchase Agreement dated January 10, 2010, TBG sold to Sunset Pacific 2,500,000 shares of Green Automotive common stock for a purchase price of $200,000. This

purchase price was to be paid through a promissory note dated January 10, 2010, executed by Sunset Pacific and payable to TBG in the amount of $200,000 (the "Sunset Pacific Note"). The Sunset Pacific Note provides that it is payable in quarterly installments of interest only, commencing on June 1, 2010 and continuing quarterly until maturity of the note on March 1, 2015, when all principal and interest is due and payable. According to Comu, no payments have been made on the Sunset Pacific Note.

23.     On or about January 10, 2010, TBG sold to the TKY Trust 5,000,000 shares of Green Automotive common stock for a purchase price of $500,000. As with the Sunset Pacific sale, the purchase price was to be paid through a $500,000 promissory note dated January 10, 2010 (the "TKY Note"). The basic payment terms of the TKY Note are the same as the Sunset Pacific Note.

24.     Until January 12, 2012 there were no payments on the TKY Note; however, according to Comu, from January 5, 2012 through March 9, 2012, there have been periodic payments on the TKY Note totaling $116,500. As discussed below, the source of these payments were sales by the TKY Trust of 4,800,000 shares of the restricted Green Automotive Stock which TBG sold to the TKY Trust in January 2010.

25.     On or about January 10, 2010, Comu also caused TBG to sell to the Daptco Trust 2,000,000 shares of Green Automotive common stock for a purchase price of $200,000. The consideration for the purchase was a promissory note dated January 10, 2010 in the original principal amount of $200,000, payable on the same terms as the Sunset Pacific Note and the TKY Note (the "Daptco Note").

26.     The first payment made on the Daptco Note was on or about March 20, 2012. According to Comu, from March 22, 2012 to June 1, 2012, there have been payments on the Daptco Note totaling $30,185.00. The source of these payments was sales by the Daptco Trust of 1,400,000 shares of the restricted Green Automotive stock that TBG sold to the Daptco Trust in January 2010.

27.     On or about August 13, 2010, Green Automotive issued to TBG an additional 1,800,000 shares of Green Automotive common stock. Upon information and belief, this stock was issued to TBG pursuant to the anti-dilution provision contained in section 1.12 of the Merger Agreement. In other words, additional stock was issued to TBG so that it would maintain a forty percent (40%) interest in Green Automotive.

28.     Unlike the certificates issued to TBG in January 2010, certificates issued on August 13, 2010 were unrestricted. Thus, upon information and belief, this stock can be publicly traded through a corporate dealer/broker who is authorized to sell this stock on the OTC market.

29.     On or about June 16, 2011, Comu caused TBG to enter into an Escrow Agreement with Olde Monmouth Stock Transfer Co. ("Olde Monmouth"), the stock transfer agent for Green Automotive. Comu caused TBG to enter into the Escrow Agreement so that he could proceed to sell 10,000,000 shares of the restricted common stock that Green Automotive had issued to TBG in January 2010. Pursuant to the terms of the Escrow Agreement Olde Monmouth agreed to serve as escrow agent and in that capacity agreed to maintain an escrow account to hold funds to be received from the purchasers of the Green Automotive restricted stock and to also hold in escrow the shares of stock to be transferred to the purchasers.

30.     According to Comu, from June 23, 2011 through January 10, 2012, Comu caused TBG to sell 9,998,091 shares of Green Automotive restricted stock. The total purchase price for this stock is not known; however, the amount is believed to be well in excess of $3,000,000. However, according to Comu, after paying commissions to the various brokers involved in these purchase and sale transactions, the net amount received by TBG from the sale of these shares was only $686,476.

31.     In addition to TBG's sales of Green Automotive restricted stock, Comu also arranged for the Daptco Trust and the TKY Trust to sell the majority of their shares of Green Automotive restricted stock. According to Comu, between December 23, 2011 and March 16, 2012, the TKY

Trust sold 4,800,000 of the 5,000,000 shares that TBG sold to it. According to Comu, the amount the TKY Trust received from these sales is not known; however TBG received $116,500 of proceeds from these sales, which Comu applied to the TKY Note.

32. Between March 22, 2012 and June 1, 2012, Comu also arranged for the sale of 1,400,000 of the 2,000,000 shares of Green Automotive restricted stock that TBG sold to the Daptco Trust. Through these sales TBG received $30,185, which Comu applied to the Daptco Trust Note.

33. The 2010 federal income tax return for TBG reflects total income of $2,366,775 and total expenses of $2,324,571, resulting in taxable income of $42,204. Of the $2,324,571 in reported operating expenses, $2,137,733 was purportedly for consulting fees and expenses. However, no documents have been produced to the Trustee that substantiate or evidence the consulting fees paid by TBG, nor do any of the documents produced indicate the recipients of these payments. Also, TBG did not issue Form 1099's to the recipients of these consulting fees.

34. Upon information and belief, no consulting services were actually provided to TBG and all of the consulting fees paid by TBG were paid to Comu through one or more business entities that Comu owns and/or controls, including but not limited to Marathon Management Limited Company ("Marathon") and Regus Advisors, Inc. ("Regus").

35. In 2011 TBG reported total income of $1,373,688, of which $318,072 was reported as a capital gain from the sale of Green Automotive stock. TBG reported deductions or operating expenses totaling $1,327,648, of which approximately $500,000 was for consulting, approximately $236,000 was for "advisory services," $178,200 was for "business analysis," $125,000 was for "exchange registration expense," and approximately $68,550 was for "valuation services."

36. Upon information and belief, no consulting services were actually provided to TBG and all of the consulting fees paid by TBG were paid to Comu through one or more business entities that Comu owns and/or controls, including but not limited to Marathon and Regus.

<u>TRUSTEE'S COMPLAINT IN INTERVENTION</u> - **Page 8**

37. Upon information and belief, during its entire corporate existence TBG has never held a board meeting nor a shareholder meeting. Also, there are no corporate bylaws for TBG nor other documents that address the manner in which the business of TBG is to be conducted. There are also no employees of TBG and Comu is the only officer or director that has entered into business transactions on behalf of TBG. As the sole officer and director of TBG Comu has completely dominated and controlled the business activities of TBG for the principal benefit of Comu and his wife, Phyllis Comu. For example, upon information and belief, all or substantially all of the income derived from the sale of Green Automotive stock, as described above, has been transferred to Comu or to entities he owns and/or controls. Upon information and belief, some of the proceeds of these sales have been remitted to Phyllis Comu.

**B.      Sunset Pacific**

38. Sunset Pacific was formed as a Texas limited partnership on or about October 30, 1996 by Cecil S. Mathis ("Mathis"). In the Certificate of Limited Partnership Mathis was listed as the original limited partner of Sunset Pacific, and Coral Group, LLC ("Coral Group") was listed as the initial general partner of Sunset Pacific.

39. The documents the Trustee received from Comu include a draft of a limited partnership agreement for Sunset Pacific dated October 30, 1996. The draft received does not reflect the initial capital contributions by the partners, nor does it reflect the partnership interests other than the one percent (1%) general partnership interest of Coral Group. However, the draft does indicate that Comu was to be the sole limited partner of Sunset Pacific.

40. By a notice dated August 9, 2000, the Texas SOS notified Sunset Pacific that due to its failure to file reports required under Texas law the partnership's right to transact business in this state was forfeited. This notice was followed up by a letter dated February 7, 2001, in which the Texas SOS notified Sunset Pacific that its certificate of limited partnership was canceled.

000389

41.    On or about March 19, 2001, Sunset Pacific's certificate of limited partnership was reinstated by Comu's filing of the required periodic reports and, presumably, payment of requisite fees.

42.    On or about July 7, 2005, Marathon and Coral Group entered into a so-called Revised and Restated Agreement of Limited Partnership (the "Revised Partnership Agreement") which purports to revise and restate the Agreement of Limited Partnership dated October 30, 1996. The Revised Partnership Agreement reflects the following partnership interests: Marathon, one percent (1%) general partnership interest and Coral Group, ninety-nine percent (99%) limited partnership interest. Comu signed the Revised Partnership Agreement on behalf of both Marathon and Coral Group. The Revised Partnership Agreement was not signed by Mathis who according to the original certificate of limited partnership was the sole original limited partner of Sunset Pacific.

43.    On July 28, 2005, Comu filed on behalf of Sunset Pacific an amendment to Sunset Pacific's certificate of limited partnership whereby Comu purported to replace the general partner of Sunset Pacific. Pursuant to this amendment, the Coral Group was removed as the general partner, and Marathon was named as the new general partner. Marathon is a Nevada limited liability company that is owned and/or controlled by Comu.

44.    On or about January 1, 2006, Marathon and Coral Group signed a document entitled "Consent of General Partner of Sunset Pacific" (the "Consent"). Pursuant to this Consent, Coral Group resigned as a limited partner of Sunset Pacific, Comu was admitted as a one percent (1%) limited partner, and Phyllis Comu was admitted as a ninety-eight percent (98%) limited partner. This Consent further reflects that the "total capital contribution" was as follows: Marathon, $100; Comu, $10; and Phyllis Comu, $980.

45.    The partnership interests reflected in the Consent are inconsistent with the partnership interests reflected in Sunset Pacific's federal income tax return. According to the 2005 federal

TRUSTEE'S COMPLAINT IN INTERVENTION - Page 10

income tax return for Sunset Pacific the two partners of Sunset Pacific were Comu and Belleville Settlement, LP, a foreign limited partnership, each of which purportedly owned 50% of the partnership interests.

46.     By a notice dated December 13, 2006, the Texas SOS once again forfeited Sunset Pacific's right to transact business in Texas due to its failure to file periodic reports required under Texas law. The Texas SOS also again canceled Sunset Pacific's limited partnership certificate.

47.     On September 27, 2007, Comu caused to be filed with the Texas SOS one or more periodic reports which caused Sunset Pacific to be reinstated as a Texas limited partnership.

48.     On March 16, 2012, the Texas SOS terminated for a third time Sunset Pacific's certificate of limited partnership due to Sunset Pacific's failure to file periodic reports with the Texas SOS. As of the filing of this Complaint in Intervention, Sunset Pacific's limited partnership certificate has not been reinstated.

49.     Throughout its existence Sunset Pacific has conducted virtually no business operations. According to Comu, Sunset Pacific acts as a holding company holding investments on certain investment property. Between 2005 and 2011 Sunset Pacific's federal income tax returns reflect no income or expenses.

50.     The 2007 federal income tax return for Sunset Pacific reflects assets totaling $527,750, consisting of a $250,000 annuity and a loan to Sun Sports Entertainment, Inc. ("Sun Sports") in the amount of $277,750. Sun Sports is an entity that was owned and/or controlled by Comu.

51.     Upon information and belief, the source of the funds for the purchase of the annuity and for the loan to Sun Sports was money that Comu received or was entitled to receive in connection with the sale in 2004 of certain mining rights owned by Humitech International Group,

Inc. ("Humitech"). At the time of the 2004 transaction, Comu was the chairman and CEO of Humitech.

52.     Upon information and belief, all business decisions relating to the acquisition and disposition of Sunset Pacific's assets, and its limited business operations have been made exclusively by Comu.

## IV. CAUSES OF ACTION

### Count 1: Declaratory Judgment

53.     Paragraphs 1 through 52 are incorporated herein by reference as if set forth in full.

54.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and based on the allegations set forth herein, the Trustee requests the Court declare that: (1) TBG and Sunset Pacific are the alter egos of Comu; (2) Comu is the *de facto* owner of TBG; (3) Phyllis Comu's purported ninety-eight percent (98%) limited partnership interest in Sunset Pacific is property of the Comu bankruptcy estate pursuant to § 541(a)(2)(A) because this partnership interest is under the exclusive control of Comu or, alternatively, under the joint management and control of Comu and Phyllis Comu; and (4) as of the Petition Date the assets of TBG and Sunset Pacific are property of the Comu bankruptcy estate.

55.     In order to state a claim for declaratory relief under 28 U.S.C. § 2201, a party must provide sufficient facts to demonstrate (1) a substantial controversy, (2) the controversy is between parties having adverse legal interests, and (3) the imminent and real nature of the controversy. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 959-60 (1969). In this action a substantial controversy exists with respect to the declaratory relief sought by the Trustee in that the Trustee is seeking to establish ownership rights and interests which are inconsistent with the ownership claims of Comu and Phyllis Comu. In addition, the declaratory judgment sought by the Trustee, that TBG and Sunset Pacific are the alter egos of Comu, is at odds with the ownership claims that Comu has

000392

set forth in his bankruptcy schedules with respect to the ownership of TBG and Sunset Pacific. The declaratory relief sought by the Trustee is imminent and real and creates adverse legal interests by and among the Defendant Comu and the Third-party Defendants.

## Count 2: Reverse Corporate Veil Piercing

56.     Paragraphs 1 through 55 are incorporated herein by reference as if set forth in full.

57.     Under Texas law to establish reverse veil piercing and determine that a corporation is the alter ego of an individual, the Trustee must show that: (1) the individual has an actual ownership interest or a *de facto* ownership in the corporation; (2) the corporation was organized and/or operated as a mere tool or business conduit for the individual, considering the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal and/or illegal or improper purposes; and (3) applying the reverse veil piercing will not prejudice non-culpable shareholders or other stakeholders or creditors. *Cadle Co. v. Brunswick Homes, LLC (In re Moore)*, 379 B.R. 284, 289 (Bankr. N.D. Tex. 2007) (hereinafter "*Moore*").

58.     Reverse piercing of the corporate veil is a Texas remedies doctrine which permits creditors (or a bankruptcy trustee) to hold a corporation liable for the debts of a controlling shareholder of the entity when such controlling shareholder has used the corporation to perpetuate fraud on his creditors by, *inter alia*, using the corporation to shield personal assets from preexisting personal liability. *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 243-44 (5th Cir. 1990); *Moore*, 379 B.R. at 295.

59.     Based upon the allegations set forth herein, there is a legal basis to reverse veil pierce TBG and Sunset Pacific on the grounds that these entities are the alter egos of Comu; that there is

**TRUSTEE'S COMPLAINT IN INTERVENTION - Page 13**

such unity between Comu and TBG and Sunset Pacific that the separate corporate existence of TBG and Sunset Pacific does not exist; and that TBG and Sunset Pacific were used as conduits to secrete assets in fraud of Comu's creditors, including in particular KLE, KLM and Katz.

### Count 3:  Turnover of Property of the Estate

60.     Paragraphs 1 through 59 are incorporated herein by reference as if set forth in full.

61.     After this Court grants the relief requested in Counts 1 and 2 of the Complaint in Intervention, the Trustee requests an order of this Court pursuant to § 542 of the Bankruptcy Code directing the turnover of all property and assets of TBG and Sunset Pacific that still exist.  In addition, to the extent the assets of TBG and/or Sunset Pacific have been sold or otherwise disposed of since the Petition Date, the Trustee requests that this Court enter a judgment against Comu, TBG and Sunset Pacific, jointly and severally for the value of the assets that existed on the Petition Date and that are not turned over to the Trustee because they have been sold or otherwise disposed of by Comu.

WHEREFORE, Diane G. Reed, Trustee respectfully requests that upon trial of this Complaint in Intervention this Court enter a judgment granting the relief as requested in Counts 1, 2 and 3, and that the Trustee be granted such other and further relief to which she may be justly entitled.

Dated:  September 5, 2012.         Respectfully submitted,

**REED & ELMQUIST, P.C.**
604 Water Street
Waxahachie, TX 75165
(972) 938-7339
1+(972) 923-0430 (fax)

By:*/s/ David W. Elmquist*
    David W. Elmquist – SBT #06591300
    Tina E. Tuccelli – SBT #24042067

**ATTORNEYS FOR DIANE REED, TRUSTEE FOR THE ESTATE OF CENGIZ J. COMU**



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed September 04, 2012**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

_____

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING TRUSTEE'S UNOPPOSED MOTION TO EXTEND DEADLINE
TO FILE A COMPLAINT IN INTERVENTION**

On this day came on for consideration the Trustee's Unopposed Motion to Extend

Deadline to File a Complaint in Intervention filed by Diane G. Reed, Chapter 7 Trustee of the

estate of Cengiz J. Comu, Defendant herein (the "Trustee"), on August 31, 2012 (the "Motion").

The Court finds that the Plaintiffs and Defendant do not oppose the relief requested in the

**ORDER GRANTING TRUSTEE'S UNOPPOSED MOTION TO EXTEND DEADLINE TO FILE A
COMPLAINT IN INTERVENTION - Page 1 of 2**

000395

Motion and that good cause exists for granting the extension of the deadline requested by the Trustee.  It is therefore

ORDERED that the deadline of August 31, 2012 for the Trustee to file a complaint in intervention established in this Court's Order Terminating Abatement of Adversary Proceeding and Requiring:  (A) Trustee's Complaint in Intervention to be Filed by 8/31/2012; and (B) Parties to Upload Agreed Scheduling Order, or in the Alternative, Court Will Enter its Own Scheduling Order [Docket No. 50], is hereby extended to September 5, 2012.

# # # END OF ORDER # # #



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed September 19, 2012**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

_____

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |
| | § | |

_____

| | | |
|---|---|---|
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-plaintiff and | § | |
|     Third-party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CENGIZ J. COMU, | § | |
|     Defendant | § | |
| | § | |
| and | § | |
| | § | |
| PHYLLIS E. COMU, | § | |

**AGREED SCHEDULING ORDER - Page 1**

000397

| | |
|---|---|
| BERNARD D. BROWN, | § |
| THE BARCLAY GROUP, INC. AND | § |
| SUNSET PACIFIC , LP, | § |
|      Third-party Defendants. | § |

## AGREED SCHEDULING ORDER

The parties represent that they have agreed to the terms of this Agreed Scheduling Order. It is hereby **ORDERED** that the following schedule of deadlines shall be in effect until further order of this Court:

| | |
|---|---|
| **September 30, 2012** | Deadline for response to Defendant Cengiz J. Comu's Third Amended Motion to Dismiss. |
| **October 9, 2012** | Deadline for Defendants' answers to Trustee's Complaint in Intervention (or otherwise respond to the Complaint in Intervention). |
| **October 9, 2012** | Deadline for reply to Plaintiffs' response to Defendant Cengiz J. Comu's Third Amended Motion to Dismiss. |
| **October 12, 2012** | Parties to hold settlement and discovery conference pursuant to Rule 7026(f). |
| **October 26, 2012** | Initial disclosures under Rule 7026(a) shall be exchanged. |
| <u>**October 31, 2012 at 9:30 a.m.**</u> | Hearing on Defendant Cengiz J. Comu's Third Amended Motion to Dismiss. |
| **March 8, 2013** | Deadline for Plaintiffs' expert reports. |
| **April 8, 2013** | Deadline for Defendants' expert reports. |
| **May 8, 2013** | Discovery must be completed. |
| **May 17, 2013** | Deadline for filing dispositive motions. |
| **May 24, 2013** | Deadline for filing Daubert motions. |
| **June 24, 2013** | Deadline for filing witness and exhibit lists and exchange of marked exhibits. |
| **June 24, 2013** | Deadline for hearing on Daubert motions. |
| **June 28, 2013** | Deadline for filing joint pre-trial order. |

<u>AGREED SCHEDULING ORDER</u> - Page 2

000398

| | |
|---|---|
| **June 28, 2013** | Deadline for filing proposed findings of fact and conclusions of law. |
| **June 28, 2013** | Deadline for filing trial briefs. |
| **July 1, 2013** | Deadline to hold Pretrial Conference *(if trial will exceed 1 day)*. |
| <u>**July 8, 2013 at 1:30 p.m.**</u> | Trial docket call. |
| **July 15, 2013** | Trial week. |

**IT IS FURTHER ORDERED** at Docket Call, all parties and their counsel must certify to full compliance with this Order.  If a resetting is allowed by the Court, the Plaintiffs' attorneys shall notify all parties in interest and shall file with the Clerk a certificate of service indicating the manner, date and to whom the notice was given.

**IT IS FURTHER ORDERED** sanctions may be imposed for failure to comply with this Order.

### END OF ORDER ###

**AGREED:**

**REED & ELMQUIST, P.C.**
604 Water Street
Waxahachie, TX 75165
(972) 938-7339
Fax: 1+(972) 923-0430
Email: delmquist@bcylawyers.com

By:   */s/ David W. Elmquist*
    David W. Elmquist – SBT #06591300

**ATTORNEYS FOR INTERVENOR, CO-PLAINTIFF,
AND THIRD-PARTY PLAINTIFF**

000399

**LAW OFFICES OF LIPPE & ASSOCIATES**
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, TX 75201
(214) 855-1850
Fax : (214) 720-6074
Email: texaslaw@airmail.net

By: _____ */s/ Emil Lippe, Jr.* _____
     Emil Lippe, Jr. - SBT #12398300

**ATTORNEYS FOR PLAINTIFFS**


**OLSON NICOUD & GUECK, L.L.P.**
1201 Main Street, Suite 2470
Dallas, TX 75202
(214) 979-7302
Fax : (214) 979-7301
Email: denniso@dallas-law.com

By: _____ */s/ Dennis Olson* _____
     Dennis Olson - SBT #15273500

**ATTORNEYS FOR DEFENDANT AND
THIRD-PARTY DEFENDANTS**

000400

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CHAPTER 7 |
| CENGIZ J. COMU a/k/a CJ COMU, | § § § § | CASE NO.  09-38820-sgj7 |
| Debtor. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § § | |
| Defendant. | § | |

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT'S
THIRD MOTION TO DISMISS AND SUPPORTING BRIEF**

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

King Louie Mining, LLC, King Louie Enterprises, LLC, and Ronald Katz, Plaintiffs, hereby

file this Supplemental Response to Defendant's Third Motion to Dismiss, and in support thereof

would show as follows:

1.      Plaintiffs have brought claims against Defendant CJ Comu alleging that he has hidden

and misrepresented, primarily through a complex corporate structure involving Sunset Pacific, L.P.,

and a company that he controls through Sunset Pacific, known as The Barclay Group, Inc. ("The

Barclay Group"), numerous business interests, valuable stock, and other assets. Defendant has since

filed three Motions to Dismiss, particularly related to Plaintiffs' standing absent the Trustee.[1]

2.      On September 5, 2012, the Trustee filed her complaint in intervention, as Co-Plaintiff, against Defendant Comu, adding Phyllis E. Comu (Defendant CJ Comu's wife), Bernard D. Brown (an alleged business partner of Defendant CJ Comu), The Barclay Group, and Sunset Pacific as third-party defendants.[2] The Trustee's allegations in said complaint generally trace those found in Plaintiffs' complaint.

3.      Though this Court has previously ruled that Plaintiffs did not have standing to pursue fraudulent transfer claims under Chapter 5 of the Bankruptcy Code, it is undisputed that the Trustee has such standing. Further, Plaintiffs have brought detailed and specific claims pursuant to Section 727(d) seeking a revocation of the discharge herein. By the clear terms of the statute, Plaintiffs have standing to bring such claims and Plaintiffs remain proper parties before this Court. *See* 11 USCS § 727(d). Plaintiffs respectfully submit that, if any assets are omitted from disclosure because they are held in the name of other entities that are alter egos of the Debtor, or the recipients of fraudulent conveyances, the omission of such assets from the schedules is a violation of law. *See e.g. Meisel v. Gratch (In re Gratch)*, 2010 Bankr. LEXIS 2876 (Bankr. D.N.J. Aug. 25, 2010).

4.      Defendant's Third Motion to Dismiss asserts that Plaintiffs have not pled their claims with the required specificity under FRCP 12(b)(6) and that Plaintiffs claims should be dismissed. Plaintiffs have previously responded this argument in their Response to Defendant's Third Motion

---

[1] Today, concurrent to the filing of this supplemental response, Plaintiff filed their Third Amended Complaint adding additional claims based upon discovery obtained during several Rule 2004 examinations herein.

[2] Trustee's Complaint in Intervention, Docket No. 53.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT'S THIRD MOTION TO DISMISS AND SUPPORTING BRIEF - Page 2**

to Dismiss, Docket No. 30, filed April 28, 2011. Plaintiffs would reurge the arguments contained therein.

5.       Specifically, Plaintiffs have met, and exceeded, the pleading standards under Rule 12(b)(6), which requires merely that a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Further, the information discovered in the Rule 2004 examination of Comu substantially bolsters Plaintiffs claims and, indeed, has provided Plaintiffs with yet more relevant facts related to Comu's fraudulent conduct. *See Katz v. Household Inter., Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996)(holding that a Plaintiff is not required to plead to fraudulent facts that they have yet to discover). These facts are now pled in Plaintiffs' Third Amended Complaint, filed concurrent to this filing. Though Plaintiffs are confident their previous complaint satisfies the applicable pleading standards, there can be no doubt that their new complaint goes far beyond any relevant pleading standard.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, Defendant Debtor's Third Motion to Dismiss be denied, and that Plaintiffs recover their reasonable attorney's fees incurred defending the Motion, and for general relief.

Respectfully submitted,

**LAW OFFICES OF LIPPE & ASSOCIATES**

By:     /s/   Emil Lippe, Jr.
        Emil Lippe, Jr.
        State Bar No. 12398300
        Law Offices of Lippe & Associates
        Plaza of the Americas, South Tower
        600 N. Pearl Street, Suite S2460
        Dallas, Texas  75201
        Telephone:     (214) 855-1850

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT'S
THIRD MOTION TO DISMISS AND SUPPORTING BRIEF - Page 3**

Facsimile:    (214) 720-6074

Email:      emil@texaslaw.com

ATTORNEYS FOR PLAINTIFFS KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this __28th__ day of September, 2012, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. Bankruptcy Court, Northern District of Texas, using the electronic case filing system of the Court, which will then send a notification of such filing to the following:

> Dennis Olson
> Olson, Nicoud & Gueck, L.L.P.
> 1201 Main St., Ste 2470
> Dallas, TX 75202

> __/s/   Emil Lippe, Jr._____
> Emil Lippe, Jr.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CHAPTER 7 |
| CENGIZ J. COMU a/k/a CJ COMU, | § § | CASE NO. 09-38820-sgj7 |
| Debtor. | § § § | |

| | | |
|---|---|---|
| DIANE G. REED, TRUSTEE OF THE ESTATE OF CENZIG J. COMU, KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ, | § § § § § § | |
| Plaintiffs and Intervenor, | § § | |
| v. | § § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, SUNSET PACIFIC, L.P., THE BARCLAY GROUP, INC., TKY TRUST, DAPTCO TRUST, MARATHON MANAGEMENT LIMITED COMPANY, REGUS ADVISORS, INC., PHYLLIS E. COMU, and BERNARD D. BROWN, , | § § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE**

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

King Louie Mining, LLC, King Louie Enterprises, LLC, and Ronald Katz, Plaintiffs,

pursuant to Sections 544, 547, 550, and 727(d) of the United States Bankruptcy Code (11

PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 1

000406

U.S.C.§§101, *et seq.,* the "Bankruptcy Code") and Rules 7001, *et seq.* of the Federal Bankruptcy

Rules, complain of Debtor, Cengiz J. Comu a/k/a CJ Comu ("Debtor"), Sunset Pacific L.P., The

Barclay Group, Inc.,TKY Trust, DAPTCO Trust, Phyllis E. Comu, and Bernard D. Brown, as

Defendants, and hereby file this their Third Amended Complaint to Revoke Discharge Pursuant to

Section 727(d) of the United States Bankruptcy Code, and in support thereof would respectfully

show as follows:

## A. PARTIES, JURISDICTION AND VENUE

1.      Plaintiff King Louie Mining, LLC, is a Delaware limited liability company with

principal offices and place of business at 8 Wheatley Avenue, Albertson, New York 11507.

2.      Plaintiff King Louie Enterprises, LLC, is a Delaware limited liability company with

principal offices and place of business at 8 Wheatley Avenue, Albertson, New York 11507.

3.      Ronald Katz is a resident of the State of New York and is a creditor herein.

4.      Debtor, Cengiz Jan Comu a/k/a C.J. Comu, is an individual residing in Dallas County,

Texas.  Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 31,

2009 (the "Petition Date"), in the United States Bankruptcy Court for the Northern District of Texas,

Dallas Division (the "Bankruptcy Court"), and fraudulently obtained a discharge on April 14, 2010.

Debtor may be served with process by serving his attorney of record in this bankruptcy case, Dennis

Oliver Olson, Olson, Nicoud & Gueck, LLP, 1201 Main Street, Suite 2470, Dallas, TX 75202.

5.      Defendant Sunset Pacific L.P. is limited partnership formed under the laws of the

State of Texas and may be served with process through its general partner, CJ Comu, through his

attorney of record, Dennis Oliver Olson, Olson, Nicoud & Gueck, LLP, 1201 Main Street, Suite

2470, Dallas, TX 75202.

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE**
**PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 2**

6.      Defendant The Barclay Group, Inc. is a Texas corporation and may be served with process through its officer and "managing partner," CJ Comu, through his attorney of record, Dennis Oliver Olson, Olson, Nicoud & Gueck, LLP, 1201 Main Street, Suite 2470, Dallas, TX 75202. Barclay is the alter ego of Debtor and is under his domination and control.

7.      Defendant Marathon Management Limited Company ("Marathon")   is, on information and belief, a Nevada limited liability company, which has had its charter revoked, of which Comu is the Managing Member.  Marathon is the alter ego of Comu, and may be served with process by serving Comu through  his attorney of record, Dennis Oliver Olson, Olson, Nicoud & Gueck, LLP, 1201 Main Street, Suite 2470, Dallas, TX 75202.

8.      Defendant Regus Advisors, Inc., ("Regus") is a business name utilized by Comu, who holds himself out as its "Managing Partner."  It purports to be the successor to Barclay, claiming to have "over twenty years" of experience, although it was only recently created.  It may be served with process by serving Comu through  his attorney of record, Dennis Oliver Olson, Olson, Nicoud & Gueck, LLP, 1201 Main Street, Suite 2470, Dallas, TX 75202.

9.      Defendant TKY Trust is, on information and belief, a trust formed under the laws of Canada purportedly belonging to Defendant CJ Comu's brother, Cem Comu, but which has been at all times since its formation under the control of Debtor, and is his alter ego.  TKY Trust is transacting business within the State of Texas within the meaning of §17.042 of the Texas Civil Practice and Remedies Code, by entering into a contract with a Texas resident to be performed by either party within the State, and by committing a tort within the State of Texas.  Accordingly, such Defendant has been deemed to have appointed the Texas Secretary of State as its agent for service of process pursuant to §17.044 of the Texas Civil Practice and Remedies Code, who shall forward

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE**
**PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE            - PAGE 3**

the citation and complaint via certified mail, return receipt requested, to such Defendant in care of Cem Comu, 7391 Williams Road, Richmond, British Columbia, CANADA V7A 1E8.

10.    Defendant DAPTCO Trust is, on information and belief, a trust formed under the laws of Canada purportedly belonging to Defendant CJ Comu's brother, Cem Comu, but which has been at all times since its formation under the control of Debtor, and is his alter ego.   DAPTCO Trust is transacting business within the State of Texas within the meaning of §17.042 of the Texas Civil Practice and Remedies Code, by entering into a contract with a Texas resident to be performed by either party within the State, and by committing a tort within the State of Texas.  Accordingly, such Defendant has been deemed to have appointed the Texas Secretary of State as its agent for service of process pursuant to §17.044 of the Texas Civil Practice and Remedies Code, who shall forward the citation and complaint via certified mail, return receipt requested, to such Defendant in care of Cem Comu, 7391 Williams Road, Richmond, British Columbia, CANADA V7A 1E8.

11.    Defendant Phyllis E. Comu, the wife of Debtor CJ Comu, is an individual resident of Dallas County, Texas, who may be served through service upon her attorney, Dennis Oliver Olson, Olson, Nicoud & Gueck, LLP, 1201 Main Street, Suite 2470, Dallas, TX 75202.  At all material times, Phyllis Comu has been the wife of Debtor, and, pursuant to the community property laws of the State of Texas, her assets were deemed to be those of the Debtor also.

12.    Defendant Bernard D. Brown is an individual who is a resident of a foreign country, who is transacting business within the State of Texas within the meaning of §17.042 of the Texas Civil Practice and Remedies Code, by entering into a contract with a Texas resident to be performed by either party within the State, and by committing a tort within the State of Texas.  Accordingly, such Defendant has been deemed to have appointed the Texas Secretary of State as his agent for

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 4**

000409

service of process pursuant to §17.044 of the Texas Civil Practice and Remedies Code, who shall forward the citation and complaint via certified mail, return receipt requested, to such Defendant at his home address. Alternatively, such Defendant may be served by serving his attorney of record.

13.     This Court has jurisdiction over the parties and this controversy under 28 U.S.C. §§157 and 1334. Although Debtor has been granted a discharge, his discharge must be set aside pursuant to 11 U.S.C. §§727(d)(1) and (2). This adversary proceeding is a core proceeding under 28 U.S.C.§157(b)(2)(J).

14.     Venue of this proceeding is proper under 28 U.S.C.§1409.

## B. FACTUAL BACKGROUND

### Procedural Background

15.     On January 15, 2010, Debtor filed his Schedules, Statement of Financial Affairs, Chapter 7 Individual Debtor's Statement of Intention, and Chapter 7 Statement of Current Monthly Income and Means-Test Calculation(collectively, the "Bankruptcy Filings"). On April 14, 2010, in reliance upon the schedules filed by the Debtor, the Court granted a discharge. On information and belief, the Trustee likewise relied upon the schedules filed by the Debtor in failing to file any actions contesting discharge prior to the date of discharge. Plaintiffs bring this action to revoke the discharge because the same was procured through a fraud upon the Court and in violation of law. Subsequently, the Trustee conducted 2004 examinations, and has intervened herein to assert claims parallel to those of Plaintiffs.

### C.J. Comu background

16.     Comu has a long prior record of white-collar crimes and nefarious business practices, and is subject to a permanent injunction issued by the United States Securities and Exchange

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE**
**PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 5**

000410

Commission ("SEC").  On November 1, 1989, the SEC entered an Order of Permanent Injunction against Comu based on his dealings with a company called Oreo Mines, Inc., prohibiting him from selling unregistered securities.  The SEC order also demanded that Comu disgorge $80,000, but waived this demand because of his inability to pay.

17.     On April 9, 1999, the State of Wisconsin – Division of Securities found that Comu had sold unregistered securities in violation of Wisconsin securities law and entered a permanent injunction barring Comu from selling unregistered securities in Wisconsin.  Also, Comu was placed on criminal probation for two years in Texas in or around the early 1990s in connection with a car leasing operation he started under the name of Transworld Leasing. In or around 2002, Comu was investigated by the SEC in connection with his activities as chief executive officer in a company called AirTech International Group, Inc., and he invoked his Fifth Amendment right against self-incrimination during testimony taken by the SEC.

18.     Comu was the founder and CEO of a company known as Humitech International Group, Inc. ("Humitech"). Humitech was a publicly-owned company. Comu was previously the CEO of another public-owned company, Airtech International Group, Inc.("Airtech"). Comu obtained the idea and business opportunity to found Humitech while CEO of Airtech, and diverted such opportunity to the new company, which he controlled.

19.     Ever since at least May, 2003, the lenders of Airtech had been pursuing claims against Comu for such diversion of corporate opportunity, fraud, and fraudulent transfer.  The claims were twice dismissed under stipulations that the dismissals would be without prejudice and the statutes of limitations were tolled.  Ultimately, Comu was a Defendant in *New Millennium Capital Partners II, LLC and AJW Partners LLC v. Humitech International Group Inc., and CJ Comu*, Case No: 3:06-

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE**
**PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 6**

CV-1180-L, formerly pending in the United States District Court for the Northern District of Texas,

Dallas Division, in which case a judgment was ultimately obtained against him.  On information and

belief, beginning with the creation of Humitech and the filing of the New Millenium lawsuit, Comu

has been engaged in systematically concealing assets and making fraudulent transfers to keep his

assets from creditors.

### Plaintiffs' Involvement with Comu and his Schemes

20.    In 2003, through an introduction by a mutual acquaintance, Comu approached Ronald

Katz ("Katz") to obtain funds for Humitech to purchase certain alleged mining rights for the material

utilized by Humitech in manufacturing its products.  This ultimately led to Katz's company, King

Louie Mining, LLC ("KLM"), lending money to Humitech for this purpose.

21.    On May 21, 2004, in a simultaneous closing, KLM loaned $3,000,000 to Humitech,

and HDC purchased certain worthless mining rights for $1,940,000, and Comu received a $500,000

kickback from the seller. Although Comu owed fiduciary duties to his employer, Humitech, and its

lender, KLM, to fully disclose such kickback, he fraudulently withheld such information.

22.    Katz did not discover the kickback scheme until over two years later, when Humitech

defaulted on the loan from KLM, and KLM foreclosed on the stock of HDC.   Comu had arranged

with the seller to receive such kickback by a payment to his alter ego, a partnership known as Sunset

Pacific, LP, ("Sunset Pacific").

23.    Plaintiffs filed suit against Comu, and, on April 30, 2009, KLM obtained a Judgment

in New York state court against Comu for a total of $2,279,265.16.  KLM subsequently domesticated

this as a Texas judgment, and was pressing for postjudgment discovery from Comu when this

bankruptcy proceeding was filed.  For years prior to the filing of the petition herein, and certainly

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE**
**PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE            - PAGE 7**

000412

throughout the year 2009, Debtor was fully aware of the claims being made by Plaintiffs herein, and was operating to hide his assets from creditors such as Plaintiffs.

24.     Comu filed this Bankruptcy Proceeding at a time when Plaintiffs were pressing their efforts in Texas State Court to collect upon the judgment against Comu, and had filed a motion to compel production of financial information to assist in collecting the judgment.  Between April 30, 2009, and the filing of the Bankruptcy Petition herein on December 31, 2009, Comu frantically engaged in a scheme to place his assets even further from his creditors' reach.

## Filing of Fraudulent Bankruptcy Schedules

25.     Immediately after the filing of his Bankruptcy Petition, Comu and his wife, Defendant Phyllis Comu, went on an extended cruise, an interesting action to take immediately after claiming to be bankrupt with little or no assets to pay creditors.  After returning, refreshed and recharged, from his cruise, Comu filed his Bankruptcy Schedules on January 15, 2010.  In his schedules, Comu claimed to own only a 1% interest in Sunset Pacific, L.P., and a 1% indirect interest in The Barclay Group, Inc.  Comu completely concealed from the Bankruptcy Court the fact that his wife, Defendant Phyllis Comu, purportedly owned 98% of Sunset Pacific, even though they were Texas residents and, under Texas community property law, the ownership of Sunset Pacific was an asset of this Estate.

26.     At the First Meeting of Creditors herein, Comu falsely testified that he had fully disclosed his assets and liabilities on his Schedules.  He further claimed that his interest in certain corporations, partnerships, and other entities was correctly disclosed in his Schedules.

## Sunset Pacific, L.P.

27.     Allegedly in 2006, Comu purportedly transferred 98% ownership of Sunset Pacific to his wife, Phyllis Comu, for no consideration.  This was done shortly after Katz had discovered

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE        - PAGE 8**

000413

Comu's illegal kickback scheme and was beginning to pursue litigation against Comu, and was done to attempt to remove the value of Sunset Pacific from the reach of Comu's creditors. Comu further caused Sunset Pacific to use part of its ill-gotten gains from the kickback transaction to purchase a $250,000 annuity.

28.     The 98% interest in Sunset Pacific was "transferred" to Comu's wife, Defendant Phyllis Comu, for no value, according to her own testimony, and was done for the purpose and intent of defrauding creditors, in violation of 11 U.S.C. §544(b)(1) and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), specifically §24.005(a)(1), TEX. BUS. AND COMM. CODE. Such transfer was concealed from the creditors and Trustee herein until after the petition herein was filed. The transfer to Phyllis Comu was a sham and a fraud, for no legitimate business purpose, because Phyllis Comu had not previously done anything to operate Sunset Pacific, and Comu continued to control its activities after the alleged conveyance.

29.     Throughout the existence of Sunset Pacific, Comu has dominated and controlled its activities, and has described such entity as one of his "nominees." Sunset Pacific's charter has been forfeited at various times, from August, 2000, to March, 2001, from December, 2006, to September, 2007, and from March, 2012, forward. Comu is, and has been at all times, the sole manager of such entity, and uses it to shield his assets from his creditors. Phyllis Comu has received large payments from Sunset Pacitfic for her spending money, despite the fact that she has done nothing to manage the entity or to earn such distributions.

### The Barclay Group

30.     Comu caused the incorporation of the Barclay Group ("Barclay") in March, 1996. Although the corporate charter of Barclay was forfeited by the Texas Secretary of State from

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE**          **- PAGE 9**

000414

February 11, 2000, to January 18, 2008, Comu continued doing business under the name of The Barclay Group and acting as its sole director and officer. Barclay's charter was again forfeited in January,2011, and Comu continues operating through such name.

31. Comu has dominated and controlled Barclay throughout its existence. He is the sole person operating the company, and exercises sole dominion over it. Although Defendant Bernard Brown purportedly owns 99% of Barclay, he apparently takes no active role in the company. Comu regularly utilizes Barclay's checking account as if it were his own personal checking account, utilizing it for his everyday living expenses.

32. On information and belief, throughout the history of The Barclay Group, Comu has utilized such entity, utterly in violation of his ongoing permanent injunction obtained by the SEC, to facilitate and participate in distribution of securities. Barclay has followed the business model and pattern first utilized by Comu with Airtech and Humitech, which goes as follows. Comu first takes control of a non-public company. Then he acquires control of a public shell corporation, and merges the two entities, such that the business of the non-public entity is now owned by the former shell company which is already a public company. He then obtains large numbers of shares of stock in the "new" public entity, and distributes them to hundreds of unsuspecting investors through a maze of brokers and middlemen. Comu has used this business model repeatedly, raising millions of dollars through illegal stock sales being done in violation of the permanent SEC injunction, and The Barclay Group has been his primary mechanism for conducting such activities for over a decade.

33. As he was approaching his day of reckoning, when Plaintiffs had obtained the New York judgment, domesticated the same in Texas, and were pursuing postjudgment asset discovery which would have disclosed the assets of Sunset Pacific and Barclay, Comu conducted a desperate

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE        - PAGE 10**

000415

maneuver to place a highly valuable asset of Barclay beyond the reach of his creditors.

34.     In 2009, Comu caused Barclay to obtain control of a business claiming to own the exclusive rights to distribute in the United States  an electric powered automobile manufactured in China, using the name Green Automotive.  At first glance, given the rising prices of gasoline, and increasingly demanding requirements that automobiles sold in the United States have ever-improving gas mileage, the concept of marketing an economical electric-powered automobile appears to be a very profitable concept.  Comu had enticed the persons owning the rights to such distributorship to utilize Barclay to raise capital and to take their company public, and had assured that Barclay would have control of the business.  Once he realized that his assets were going to be seized in postjudgment collection activities, however, he engaged in a scheme to hide these assets.

**Creation of Barclay rights to Green Automotive stock immediately prior to filing of bankruptcy**

35.     On or about November 4, 2009, Comu caused Barclay to enter into a Merger Agreement and Plan of Reorganization between Go Green USA, LLC, a Nevada limited liability company, and GANAS Corp., a Delaware corporation, which was a public company existing as a shell entity.  GANAS then changed its name to Green Automotive Company, Inc.  ("Green Automotive").  Under the Merger Agreement, Barclay retained rights to continued ownership of 40% of Green Automotive.   Barclay advanced monies in the form of loans to Green Automotive, both immediately before and immediately after Comu filed his Bankruptcy Petition herein, which had the unusual provision that in the event of failures to repay the loans timely, Barclay would be issued stock for each day that the payments were late, thereby further increasing the stock ownership position of Barclay.

36.     On or about November 9, 2009, CJ Comu emailed Steven Fly, the former chairman

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 11**

000416

of Green Automotive, and Steven Evans, a former vice-president of Green Automotive, regarding

a meeting to be held the next day, on November 10, 2009. Attached to CJ Comu's email was an

agenda for the meeting, a draft of potential private placement financing, and draft of corporate

valuation documents for Green Automotive Company. In the meeting agenda attached to the email,

which is on The Barclay Group letterhead, it is noted that the meeting concerns Green Automotive

and that CJ Comu, Steven Evans, Steven Fly, and additional Green Automotive executives would

be in attendance. The agenda lists the following items to be discussed: "1. GoGreen — Public

Company Rules of Engagement; 2. GoGreen — Operations and Finance; 3. GoGreen — Marketing

and Distribution; 4. Initial Order and Use of Vehicles; 5. Press Campaign and National Car Tour;

and 6. Financing Option and Discussion." During this meeting the next day, CJ Comu proposed a

complicated lending process through which Green Automotive could obtain financing through his

alter ego, The Barclay Group. This lending process, which was fictitious, allowed CJ Comu to

camouflage a transfer of stock to The Barclay Group. The aforementioned stock was acquired by the

Barclay Group through the personal efforts and work of Comu.

37.     On information and belief, Green Automotive issued 143,620,000 shares of common

stock, 40% of which was issued to Barclay.  All or most of the stock issued to Barclay was initially

unregistered and was restricted.  On January 13, 2010, Comu received directly, in his name, 300,000

shares of stock of Green Automotive, which was not disclosed on his schedules, but which he had

earned prior to filing of the petition herein.

38.     Although Comu controlled and dominated Barclay, and its assets were actually his

assets, none of these transactions, and none of these valuable assets, were disclosed in his bankruptcy

schedules, and to the extent that any disclosure was made, the percentages of ownership disclosed

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 12**

000417

were fraudulent.  The rights of Barclay and of Comu individually to stock in Green Automotive were established prior to the filing of bankruptcy, and both the value of these rights and Comu's actual interest therein should have been disclosed to the Court. Comu thereby concealed material assets of his, knowingly and wilfully, for the purpose of defrauding this Honorable Court and the creditors of this Estate.

### Distribution of Green Automotive stock and sales thereof

39.　　At or around the time of filing his Bankruptcy Petition herein, Comu caused the creation of TKY Trust and DAPTCO Trust.  Shortly after returning from his post-filing luxury cruise, he caused Barclay to convey 5,000,000 shares of Green Automotive to TKY Trust for no cash, but instead for a $500,000 promissory note.  He further caused Barclay to convey 2,500,000 shares of Green Automotive stock to Sunset Pacific, also for a note, in the amount of $200,000.  He also caused Barclay to convey 2,000,000 shares of Green Automotive stock to the DAPTCO Trust in exchange for a $200,000 promissory note.

40.　　Although these promissory notes called for quarterly payments of interest, Sunset Pacific has made no payments for the Green Automotive stock which it obtained.  The only payments made by TKY Trust and DAPTCO Trust have been from sales of unregistered shares of Green Automotive stock sold by Comu through a network of "brokers" who are charging "commissions" far in excess of the maximum amount of lawful commissions allowed for sale of securities.

41.　　According to information supplied by Comu, the payments to Barclay by TKY Trust and DAPTCO Trust from their sales of Green Automotive stock have totalled approximately $150,000.

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE　　　　- PAGE 13**

000418

42.    On or about August 13, 2010, Green Automotive issued an additional 1,800,000 shares of its stock to Barclay pursuant to the anti-dilution provision of the Merger Agreement. This stock, on information and belief, was unrestricted.

43.    On or about June 16, 2011, Comu caused Barclay to enter into an Escrow Agreement with Olde Monmouth Stock Transfer Co. Pursuant to such Escrow Agreement, Barclay deposited some 10,000,000 shares of Green Automotive stock with Olde Monmouth so that this restricted stock could be sold, using Olde Monmouth to hold the shares of stock. According to information furnished by Comu, from June, 2011, through January, 2012, Comu caused Barclay to sell 9,998,091 shares of Green Automotive stock, for gross consideration believed to be approximately $3,000,000. According to Comu, however, after paying exorbitant "commissions" to the "brokers" who arranged the sales of such stock, the net amount actually received by Barclay was only $686,476. Plaintiffs reserve the right to amend and add further defendants when the true "commission" structure is disclosed, since "commissions" at such high rates are illegal and far in excess of the amounts allowed by law.

44.    The monies received by Barclay have been disseminated to other alter egos of Comu, including but not limited to Defendants Marathon Management and Regus Advisors, to make it appear that Barclay had virtually no taxable income. These distributions are believed to amount to over $2,000,000 for 2010 alone.

45.    Comu has acquired interests in numerous other business entities which he controls under the name of The Barclay Group, and/or Regus Advisors, including but not limited to interests or stock, or both, in Algae International Group, Inc., T3 Networks, Metiscan, Artfest International, Puration, Iconosys, Paragon GPS, Spectrum Biometrics, Uni-One Advisors, and others. All of these

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 14**

000419

assets are assets of Comu, and are subject to the claims of creditors herein.

**Expansion to Europe: Eurocap Investments, PLC**

46.     Not content to defraud investors in the United States, Comu has now expanded his business operations to Europe, utilizing the stock obtained through rights which he negotiated prior to the filing of his bankruptcy schedules herein.

47.     In July, 2011, a new company was formed in England known as Eurocap Investments, PLC.  Through a Share Exchange Agreement dated October 31, 2011, Comu, in the name of Barclay, exchanged 10,000,000 shares of Green Automotive stock for all the outstanding stock of Eurocap, thereby obtaining control of such entity.  According to Comu, the business plan of such company is to acquire stock in companies trading in European stock markets utilizing the Green Automotive stock.

**Other Valuable Assets of Comu were not Disclosed**

48.     On information and belief, which Plaintiffs learned from informants beginning in June, 2010, and through at least September, 2010, through his control of The Barclay Group, Comu has hidden substantial assets and has failed properly and fully to disclose the full extent of such assets, as well as the fact that he actually controls The Barclay Group for his own use and benefit. Although Comu has claimed that Bernard Brown is the officer actually controlling The Barclay Group, he is actually dealing with Brown as a broker in European markets to wash his illegal sales of restricted stock. He has concealed interests in various business enterprises owned through The Barclay Group which should have been fully disclosed herein.  These business interests, assets, and opportunities include but are not limited to the following:

> ▸     Consulting services and disguised ownership interest in Partners National Real Estate, LLC, and subsidiaries;

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 15**

000420

- ◄ Ownership rights for Artfest International, Inc., and/or Artfest Overseas;

- ◄ Income from The Barclay Group and Sunset Pacific earned or accrued before the filing of the bankruptcy, the receipt of which was deferred until after the Discharge;

- ◄ Consulting services and other interests in Art Channel, Inc.;

- ◄ Valuable sports memorabilia actually owned by Sun Sports Entertainment, Inc., a public company of which Comu was CEO, which mysteriously disappeared when Sun Sports ceased doing business, and which are believed to have been concealed from creditors by Comu;

- ◄ On information and belief, Comu has a practice of receiving restricted stock in companies for whom he consults through The Barclay Group, and washes such stock through affiliated relationships in the French Riviera, selling the same, and concealing the illegal proceeds overseas;

- ◄ Consulting services and other involvement with Eller Industries, Inc.;

- ◄ Dealings with Mars Orbit Fund, Ltd.;

- ◄ Dealings with Capital Management Group, Inc.;

- ◄ Dealings with I.R.A. Oil & Gas, Inc.,;

- ◄ Dealings with JL Media Services LLC;

- ◄ Dealings with Temeku Financial;

- ◄ Dealings with various entities, referred to as "ARTI, AL, USR, VOIP, SR, MetiScan, Med Tech, Cool It, Donson, Houston, and Nano," none of which were listed; and

- ◄ Dealings with Ultimate Sports Resort, and receipt of $100,000 payment relating thereto.

All of such information should have been disclosed to the creditors herein, so that the Court and the creditors were fully advised of Comu's true financial condition.

49.    Over a period of years prior to filing for bankruptcy, Comu caused the public

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE**
**PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE           - PAGE 16**

company which he was then controlling, Sun Sports Entertainment, to make numerous payments totaling tens of thousands of dollars to Sunset Pacific, for no apparent consideration.  The purposes of such payments, and ultimate use and benefit therefrom, were not disclosed to this Court and the creditors of this Bankruptcy Proceeding, and were likely to be material to Comu's financial condition.  Plaintiffs did not learn of such payments until June-September, 2010, from various informants.

50.     In addition, on information and belief, Comu owns or controls an interest in an entity known as Grey Point Partners, LLC, which claims rights to broadcasting and presentation of Mixed Martial Arts ("MMA") programming.  Comu has claimed that such rights actually exist and have substantial value, but has failed to disclose his interest in such entity.

51.     On information and belief, Comu owns or controls an interest in an entity known as New Edge Consulting, the value of which has not been disclosed.

52.     For all these reasons, Plaintiffs have determined that Comu owns or controls, through Sunset Pacific, Barclay, Regus, and otherwise, substantial assets and sources of income which have been concealed from the Court and creditors herein, which were material to his financial condition and which were required by law to be disclosed.

## COUNT I.

## DECLARATORY JUDGMENT

53.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 52 above as if the same were fully set forth herein.

54.     This is a cause of action for declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE**
**PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 17**

000422

55.     Plaintiffs seek a declaration from the Court of the following:

(1)     that Sunset Pacific, The Barclay Group, Marathon Management, TKY Trust, DAPTCO Trust, and Regus Advisors are the alter egos of Comu;

(2)     that Comu, as of December 30, 2009, is the *de facto* 100% owner of Barclay, Sunset Pacific, Marathon Management, and Regus;

(3)     that the alleged partnership interest of 98% interest in Sunset Pacific allegedly owned by Phyllis Comu is property of the Bankruptcy Estate because such interest is community property, such entity was under the sole management of Comu, and was fraudulently conveyed to Phyllis Comu in violation of 11 U.S.C. §544(b)(1) and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), specifically §24.005(a)(1), TEX. BUS. AND COMM. CODE;

(4)     that the Green Automotive stock conveyed to TKY Trust and DAPTCO Trust were conveyed in violation of 11 U.S.C. §544(b)(1) and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), specifically §24.005(a)(1), TEX. BUS. AND COMM. CODE, and should be returned to the Barclay Group, and all monies obtained through such conveyance be returned to the Barclay Group, which in turn shall be determined property of the Estate; and

(5)     that all assets, monies, and entities owned at the present by Barclay, Regus, Sunset Pacific, TKY Trust, DAPTCO Trust, or Marathon Management, specifically including but not limited to Eurocap Investments, PLC, and any deposits or property held by Olde Monmouth, are the property of the Bankruptcy Estate.

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 18**

56.    Plaintiffs further seek the entry of injunctive relief implementing such findings and protecting the rights of the Estate to preserve the assets thereof, ordering the conveyance of such property to the Estate, and restraining and enjoining Defendants, their agents, representatives, affiliates, successors, assigns, and attorneys, from transferring or alienating any property of the Estate or selling any assets of the Estate.

57.    Further pursuant to such statutes, Plaintiffs seek recovery of their reasonable and necessary attorneys' fees, for all proceedings in this Court, and on appeal, to be awarded in the discretion of the Court, pursuant to 28 U.S.C. §2201, *et seq.*

## COUNT II.

## REVOCATION OF DISCHARGE

58.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 57 above as if the same were fully set forth herein.

59.    Debtor has committed fraud by concealing and failing to disclose assets and sources of income which he was required by law to disclose, and has obtained a discharge by fraud in violation of 11 U.S.C.§727(d)(1).

60.    As alleged above, Debtor owned or controlled a massive array of companies and investments, amounting to tens of millions of dollars, prior to filing his Bankruptcy Petition and Schedules herein, and wilfully and purposely withheld disclosure thereof.  Debtor purposely manipulated and concealed the true extent of his assets through dummy corporations and entities, and concealed his true ownership thereof.

61.    Further, upon information and belief, Comu earned income or obtained rights to assets, before the bankruptcy filing, payment of which was deferred until after the Discharge herein,

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 19**

000424

to conceal the same from the Court, the Trustee, and the creditors. At the time Comu filed for bankruptcy, Comu knew that he would gain rights to stock in Green Automotive Company, Inc., both individually and through his alter egos, and hid the stock from the Court in order to defraud his creditors. Comu, at all times since the stock was acquired, has had the right to transfer the stock (or funds from its sale) to himself personally, but failed to do so to better his the assets from the Court. Because Comu misrepresented his property to the Trustee, he has committed fraud. As the Plaintiffs are bankruptcy creditors, Plaintiffs have been harmed by this fraud.

62.     Plaintiffs discovered these frauds after the bankruptcy discharge, beginning around June, 2010, and on various occasions including September, 2010, and even occurring in January, 2011, from informants. Further information establishing that Comu had committed such fraud and concealed his assets from the Court was disclosed in the Rule 2004 examinations conducted herein by the Trustee. The information was not previously known to Plaintiffs, and was fraudulently concealed from the Court, the Trustee, and the creditors.

63.     The Original Complaint herein is being filed within one year after the date of discharge. Plaintiffs are, therefore, entitled to an Order of this Court revoking the Debtor's discharge, pursuant to 11 U.S.C. §727(e)(1), and declaring that all assets of fraudulently concealed by the debtor, including but not limited to the assets of Sunset Pacific, The Barclay Group, Regus Advisors, TKY Trust, DAPTCO Trust, shall be considered assets of the Debtor. Plaintiffs further pray for an order revoking all fraudulent transfers of the Debtor's assets that occurred within the statute of limitations, pursuant to 11 U.S.C. §544(b)(1) and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), §24.005(a)(1), TEX. BUS. AND COMM. CODE.

64.     Plaintiffs further request recovery of their reasonable and necessary attorney fees,

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE**
**PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 20**

000425

expert witness fees, costs for copies of deposition, and costs of court for all proceedings in the

Bankruptcy Court, the District Court, the Court of Appeals, and the Supreme Court.

## COUNT III.

### RECOVERY OF DEFERRED PROPERTY OR INCOME

65.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 64 above

as if the same were fully set forth herein.

66.    Upon information and belief, Comu earned income from Sunset Pacific and The

Barclay Group before filing the Bankruptcy Petition. This income was deferred until after the filing

in order to shield it from the bankruptcy proceeding and defraud the trustee herein in violation of 11

U.S.C. §727(d)(2).

67.    Also, as described in further detail above, Comu acquired rights or entitlement to

other property that properly belonging to the Estate, including but not limited to stock in Green

Automotive Company, Inc. worth millions of dollars, disclosure of which was fraudulently withheld

from the Trustee and the Court in further violation of 11 U.S.C. §727(d)(2).  Not only did Comu

conceal the true assets of Barclay, which were really his assets, he also failed and refused to disclose

that he obtained issuance of 300,000 shares of Green Automotive stock issued in his name on

January 13, 2010, which he was receiving due to work done in connection with the November, 2009,

Merger Agreement.  Such stock certificate alone, worth $300,000 or more based upon existing stock

sales of Green Automotive stock, was material to the financial condition of Debtor.

68.    Accordingly, as this action is filed within one year of the discharge, Plaintiffs are

entitled to an Order of this Court revoking the Debtor's discharge, pursuant to 11 U.S.C. §727(e)(2),

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE**
**PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 21**

and declaring all assets acquired by Comu properly belonging to the Estate that were fraudulently withheld from the Court and/or the Trustee to be property of the Estate.

      69.    Plaintiffs further request recovery of their reasonable and necessary attorney fees, expert witness fees, costs for copies of depositions, and costs of Court for all proceedings in the Bankruptcy Court, the District Court, the Court of Appeals, and the Supreme Court.

      WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, upon final trial hereof, the Court award declaratory relief and injunctive relief to implement the same, as alleged herein, that judgment be entered against Defendant Debtor revoking his discharge, that all fraudulent transfers be revoked, and all assets of the Debtor be adjudged property of the Estate,  that Plaintiffs recover their reasonable attorney's fees for all proceedings in the Bankruptcy Court, the District Court, the Court of Appeals, and the Supreme Court, and that Plaintiffs recover their costs of court, and general relief.

      Respectfully submitted,

      **LAW OFFICES OF LIPPE & ASSOCIATES**

By:       /s/ Emil Lippe, Jr.
            Emil Lippe, Jr.
            State Bar No. 12398300
            Law Offices of Lippe & Associates
            Plaza of the Americas, South Tower
            600 N. Pearl Street, Suite S2460
            Dallas, Texas  75201
            Telephone:     (214) 855-1850
            Facsimile:      (214) 720-6074
            Email:          emil@texaslaw.com

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE
PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE**      **- PAGE 22**

000427

**ATTORNEYS FOR PLAINTIFFS KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this __28th__ day of September, 2012, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. Bankruptcy Court, Northern District of Texas, using the electronic case filing system of the Court, which will then send a notification of such filing to the following:

Dennis Olson
Olson, Nicoud & Gueck, L.L.P.
1201 Main St., Ste 2470
Dallas, TX 75202


David W. Elmquist
604 Water Street
Waxahachie, TX 75165


    /s/   Emil Lippe, Jr.
Emil Lippe, Jr.

**PLAINTIFFS' THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE**
**PURSUANT TO SECTION 727(d) OF THE UNITED STATES BANKRUPTCY CODE          - PAGE 23**

000428

Dennis Olson
State Bar No. 15273500
OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 – Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

ATTORNEYS FOR CJ COMU

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CENGIZ J. COMU a/k/a | § | CASE NO. 09-38820-sgj-7 |
| CJ COMU, | § | |
|     Debtor. | § | CHAPTER 7 |
| | § | |
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, | § | |
| and RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| v. | § | Adversary Case no. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a | § | |
| CJ COMU | § | |
|     Defendant. | § | |
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-Plaintiff and | § | |
|     Third-party Plaintiff, | § | |
| v. | § | |
| CENGIZ J. COMU, | § | |
|     Defendant, | § | |
| and | § | |
| | § | |
| PHYLLIS E. COMU, | § | |
| BERNARD D. BROWN, | § | |
| THE BARCLAY GROUP, INC. AND | § | |
| SUNSET PACIFIC, L.P., | § | |
|     Third-party Defendants. | § | |

**ANSWER BY DEFENDANT AND ALL THIRD –PARTY**
**DEFENDANTS TO TRUSTEE'S COMPLAINT IN INTERVENTION**                    **Page - 1**

000429

**ANSWER BY DEFENDANT AND ALL THIRD-PARTY DEFENDANTS TO
TRUSTEE'S COMPLAINT IN INTERVENTION**

NOW COME the Defendant and the Third-Party Defendants named in the above-captioned adversary proceeding, and in response to the Trustee's Complaint in Intervention file their Answer by Defendant and All Third-Party Defendants to Trustee's Complaint in Intervention, and in support thereof would respectfully show the Court as follows:

1.      The Defendant and all the Third-Party Defendants admit the allegations contained in the following numbered paragraphs of the Trustee's Complaint in Intervention:

Paragraphs 1 through 16; Paragraphs 18 through 32; Paragraph 35; Paragraphs 38 through 49; the first sentence of Paragraph 50.

2.      Defendant and all Third-Party Defendants deny the allegations contained in the following paragraphs of the Trustee's Complaint in Intervention:

Paragraph 17; Paragraphs 33 and 34; Paragraphs 36 and 37; the last sentence of Paragraph 50, Paragraphs 51 and 52.

3.      Defendant and all Third-Party Defendants submit that no response is required for the allegations contained in Paragraphs 53 through 61 of the Trustee's Complaint in Intervention; however, if a response is required, the Defendant all Third-Party Defendants deny the allegations contained in Paragraphs 53 through 61 of the Trustee's Complaint in Intervention.

4.      Third-Party Defendant Bernard D. Brown asserts that the 99% stock ownership in The Barclay Group, Inc., attributed to him in the bankruptcy schedules filed by Defendant Comu, is actually owned by a United Kingdom Corporation named Brown and Lampe, PLC, as shown

**ANSWER BY DEFENDANT AND ALL THIRD –PARTY
DEFENDANTS TO TRUSTEE'S COMPLAINT IN INTERVENTION**                    **Page - 2**

000430

on the income tax returns filed by The Barclay Group, Inc.

5.      Third-Party Defendant Phyllis E. Comu asserts that 98% of Sunset Pacific, L.P. and its assets are her separate property.

WHEREFORE, PREMISES CONSIDERED, Defendant and all Third-Party Defendants pray that the Court, after notice and hearing, deny the Trustee all relief sought herein and grant Defendant and all Third-Party Defendants such other and further relief as to which they may be entitled, either at law or in equity.

Respectfully submitted,

OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 - Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

By: /s/   Dennis Olson
        Dennis Olson
        State Bar No. 15273500

ATTORNEYS FOR DEFENDANT AND
ALL THIRD-PARTY DEFENDANTS

**ANSWER BY DEFENDANT AND ALL THIRD –PARTY
DEFENDANTS TO TRUSTEE'S COMPLAINT IN INTERVENTION**                    **Page - 3**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Notice of Hearing on Defendant's Third Motion to Dismiss was served upon:

Emil Lippe, Jr.                                David W. Elmquist
Plaza of the Americas, South Tower            Reed & Elmquist, P.C.
600 N. Pearl Street, Suite S 2460             604 Water Street
Dallas, Texas 75201                           Waxahachie, Texas 75165-3361

via electronic means or by U.S. First Class Mail, on the 9th day of October, 2012.


 /s/ Dennis Olson
Dennis Olson


**ANSWER BY DEFENDANT AND ALL THIRD –PARTY**
**DEFENDANTS TO TRUSTEE'S COMPLAINT IN INTERVENTION**                    **Page - 4**

Dennis Olson
State Bar No. 15273500
OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 – Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

ATTORNEYS FOR CJ COMU

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CENGIZ J. COMU a/k/a | § | CASE NO. 09-38820-sgj-7 |
| CJ COMU, | § | |
|     Debtor. | § | CHAPTER 7 |
| | § | |
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, | § | |
| and RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| v. | § | Adversary Case no. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a | § | |
| CJ COMU | § | |
|     Defendant. | § | |
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-Plaintiff and | § | |
|     Third-party Plaintiff, | § | |
| v. | § | |
| CENGIZ J. COMU, | § | |
|     Defendant, | § | |
| and | § | |
| | § | |
| PHYLLIS E. COMU, | § | |
| BERNARD D. BROWN, | § | |
| THE BARCLAY GROUP, INC. AND | § | |
| SUNSET PACIFIC, L.P., | § | |
|     Third-party Defendants. | § | |

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**THIRD MOTION TO DISMISS AND SUPPORTING BRIEF AND TO**
**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT'S**
**THIRD MOTION TO DISMISS AND SUPPORTING BRIEF**                    Page - 1

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S
THIRD MOTION TO DISMISS AND SUPPORTING BRIEF AND TO
PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT'S
THIRD MOTION TO DISMISS AND SUPPORTING BRIEF**

TO THE HONORABLE STACEY G.C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Cengiz J. Comu, aka CJ Comu, the Defendant in the above-captioned adversary proceeding, and in reply to Plaintiffs' Response to Defendant's Third Motion to Dismiss and Supporting Brief (Docket no. 30) and Plaintiffs' Supplemental Response to Defendant's Third Motion to Dismiss and Supporting Brief (Docket no. 61) would respectfully show the Court as follows:

1.     A review of the docket sheet in this adversary proceeding will reveal that Plaintiffs' original Complaint (Docket no. 1) was met with Defendant's Motion to Dismiss (Docket no. 5).

2.     Plaintiffs filed their Amended Complaint (attached to Docket no. 8), and Defendant then filed his Second Motion to Dismiss (Docket no. 12).

3.     After the Court heard argument on February 14, 2011, the Court's Order gave Plaintiffs one more chance to amend their complaint and plead with sufficient specificity their allegations against Defendant (Docket no. 17).

4.     Plaintiffs then filed their Second Amended Complaint (Docket no. 20), and Defendant filed his Third Motion to Dismiss (Docket no. 24).

5.     Despite the fact that Plaintiffs filed their response to Defendant's Third Motion to Dismiss (Docket no. 30), on April 28, 2011, this Court's Agreed Scheduling Order in this adversary proceeding nevertheless afforded Plaintiffs one more opportunity to respond to

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S
THIRD MOTION TO DISMISS AND SUPPORTING BRIEF AND TO
PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT'S
THIRD MOTION TO DISMISS AND SUPPORTING BRIEF**                    Page - 2

000434

Defendant's Third Amended Motion to Dismiss.

6.      This Court's Agreed Scheduling Order, entered on September 20, 2012, did <u>not</u>
grant Plaintiffs leave to file a Third Amended Complaint, adding new parties and new causes of
action, attempting to pursue fraudulent transfers and complaining about actions of the Defendant
taken years after the Defendant filed his bankruptcy and obtained his discharge.

7.      At this Court's hearing on October 31st, the Court should dismiss both Plaintiffs'
Second Amended Complaint and their Third Amended Complaint, for the reasons stated below.

8.      Defendant stands on his Second Motion to Dismiss (Docket no. 12), his Third
Motion to Dismiss (Docket no. 30) and his Brief (Docket no. 6) and incorporates them by
reference at this point in this pleading as fully as though they were retyped verbatim herein.

9.      This Court previously held that Plaintiffs did not establish standing to pursue their
alleged fraudulent transfers, in this Court's Order entered February 24, 2011 (Docket no. 17), and
again in this Court's Order entered March 23, 2011, (Docket No. 23) the Court denied, without
prejudice, Plaintiffs' motion for leave to prosecute certain Chapter 5 Claims.

10.     After a year and a half of massive discovery conducted by the Trustee, the
Trustee's attorney has reported to the Court that he does not see a basis to revoke the Debtor's
discharge nor to pursue fraudulent transfers; however, the he did report that he intended to pursue
recovery of certain assets as property of the bankruptcy estate.

11.     The Trustee has filed that Complaint and the Defendant has answered that
Complaint.

12.     As an additional basis for dismissal of Plaintiffs Third Amended Complaint, the
Court should strike that Complaint because leave of court was not first obtained, and the filing of

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**THIRD MOTION TO DISMISS AND SUPPORTING BRIEF AND TO**
**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT'S**
**THIRD MOTION TO DISMISS AND SUPPORTING BRIEF**                    **Page - 3**

said Complaint was not contemplated by the Agreed Scheduling Order in this case.

WHEREFORE, PREMISES CONSIDERED, Defendant prays the Court, after hearing on October 31, 2012, dismiss Plaintiffs' Second and Third Amended Complaints in this adversary proceeding and grant Defendant such other and further relief as to which he is entitled, either at law or in equity.

Respectfully submitted,

OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 - Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

By: /s/   Dennis Olson
      Dennis Olson
      State Bar No. 15273500

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Notice of Hearing on Defendant's Third Motion to Dismiss was served upon:

Emil Lippe, Jr.                          David W. Elmquist
Plaza of the Americas, South Tower       Reed & Elmquist, P.C.
600 N. Pearl Street, Suite S 2460        604 Water Street
Dallas, Texas 75201                      Waxahachie, Texas 75165-3361

via electronic means or by U.S. First Class Mail, on the 9th day of October, 2012.

      /s/ Dennis Olson
      Dennis Olson

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S
THIRD MOTION TO DISMISS AND SUPPORTING BRIEF AND TO
PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT'S
THIRD MOTION TO DISMISS AND SUPPORTING BRIEF**                    **Page - 4**

BBN 105a (rev. 1/00)

Receipt No.: _____

Initials: _____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

In Re:  CENGIZ J. COMU a/k/a
        CJ COMU

                            §
                            §    Case No.:    09-38820-sgj7
              Plaintiff(s)  §
                            §
                            §
v.      KING LOUIE MINING, LLC,  §    Adversary No.:   10-03269-SGJ
        et al.              §
                            §
              Defendant(s)  §
                            §

## APPLICATION FOR ADMISSION *PRO HAC VICE*

1.  Name: __Wander_____ __David_____ __H____
                 *Last*              *First*           *MI*

2.  Firm Name: __Davidoff Hutcher & Citron LLP_____

3.  Address: __605 Third Avenue, 34th Floor_____
             __New York, NY 10158_____
             _____

4.  Phone: __212-557-7200_____   FAX: __212-286-1884_____

5.  Name used to sign *all* pleadings: __David Wander_____

6.  Retained by: __Ronald Katz, King Louie Mining, LLC_____

7.  Admitted on __March 4, 1985_____ and presently a member in good standing of
    the bar of the highest court of the state of __New York_____ and
    issued the bar license number of __1998962_____.

8.  Admitted to practice before the following courts:

| Court: | Admission Date: |
|---|---|
| United States Bankruptcy Court-SDNY | 12/3/1985 |
| United States Bankruptcy Court-EDNY | 5/27/1986 |
| United States Bankruptcy Court-WDNY | 11/21/2002 |

*Continued.*

000437

9.    Are you presently a member in good standing of the bars of the courts listed above?

☒ Yes ☐ No

If "No," please list all courts which you are no longer admitted to practice:

10.    Have you ever been subject to a grievance proceeding or involuntary removal proceeding while a member of the bar of any state or federal court?

☐ Yes ☒ No

If "Yes," please provide details:

11.    Other than minor traffic offenses, have you ever been charged, arrested, or convicted of a criminal offense or offenses?

☐ Yes ☒ No

If "Yes," please provide details:

12.    Please list all cases in the United States Bankruptcy Court, Northern District of Texas in which you have filed for *pro hac vice* in the past three years:

| Date of Application | Case No. and Style |
|---|---|
| N/A | N/A |
| | |
| | |

13.    Local counsel of record:    Emil Lippe, Jr.

14.    Local counsel's address:    Lippe & Associates, 600 N. Pearl Street, Ste. 2460

*Continued.*

000438

I respectfully request to be admitted to practice in the United States Bankruptcy Court for the Northern District of Texas for this cause only.

I certify that I have read *Dondi Properties Corp. V Commerce Savs. & Loan Ass'n*, 121 F.D.R. 284 (N.D. Tex. 1988) (en banc), and the local civil and bankruptcy rules of this court and will comply with the standards of practice adopted in *Dondi* and with the local civil and bankruptcy rules.

☒ I am an ECF filer. I also certify that I have served a true and correct copy of this document upon each attorney of record and filed the application via ECF with the payment of $25.00

☐ I am not an ECF filer. I also certify that I have served a true and correct copy of this document upon each attorney of record and the original upon the US Bankrutpcy Court accompanied with the $25.00 filing fee on _____.


David Wander                                    10/25/12
_____                         _____
Printed Name of Applicant                       Date


_____
Signature of Applicant


000439

# Appellate Division of the Supreme Court
## of the State of New York
### First Judicial Department

I, Susanna Rojas, Clerk of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, certify that

## DAVID HENRY WANDER

was duly licensed and admitted to practice as an Attorney and Counsellor at Law in all the courts of the State of New York on **March 4, 1985**, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counsellors at Law on file in my office, has duly registered with the administrative office of the courts, and according to the records of this court is in good standing as an attorney and counsellor at law.

In Witness Whereof, I have hereunto set my hand and affixed the seal of this court on

October 26, 2012

7096

Clerk of the Court

000440

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO. 09-38820-sgj7 |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| DIANE G. REED, TRUSTEE OF THE | § | |
| ESTATE OF CENZIG J. COMU; KING | § | |
| LOUIE MINING, LLC; KING | § | |
| LOUIE ENTERPRISES, LLC; AND | § | |
| RONALD KATZ, | § | |
| | § | |
| Plaintiffs and Intervenor, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU; | § | |
| SUNSET PACIFIC, L.P.; THE BARCLAY | § | |
| GROUP, INC.;PHYLLIS E. COMU; | § | |
| and BERNARD D. BROWN, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE
THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT**

TO THE HONORABLE STACY JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

Pursuant to Federal Rule of Bankruptcy Procedure 7015 and Federal Rule of Civil Procedure

15(a), Plaintiffs King Louie Mining, LLC, King Louie Enterprises, LLC, and Ronald Katz

("Plaintiffs"), hereby move for leave to amend, seeking leave to file their Third Amended Complaint

**PLAINTIFFS' MOTION FOR LEAVE TO FILE
THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT- Page 1**

000441

in the form previously filed herein as ECF# 62, and state the following.

## BACKGROUND & PROCEDURAL POSTURE

Plaintiffs originally filed this adversary action on September 3, 2010 against Debtor Cengiz J. Comu ("CJ Comu"), seeking a revocation of the discharge herein and alleging numerous fraudulent transfer actions related to CJ Comu's wrongful utilization of a complex corporate structure involving Sunset Pacific, L.P. and The Barclay Group, Inc. to conceal and secret assets properly belonging to the Bankruptcy Estate. On October 7, 2010, CJ Comu filed a motion to dismiss alleging failure to state a claim and a lack of standing.

After Plaintiffs filed a motion for leave to amend, a round of briefing on the motion to dismiss, and a hearing on both, the Court ordered that Plaintiffs should be allowed leave to amend their complaint and denied the motion to dismiss as moot. Shortly thereafter, on January 20, 2011, CJ Comu filed his second motion to dismiss. On February 14, 2011, in open court, the Court conditionally denied the second motion to dismiss to provide Plaintiffs an additional opportunity to amend their pleading. Particularly, the Court questioned whether or not Plaintiffs had standing to bring the claims as alleged.

On March 2, 2011, Plaintiffs filed a motion for leave to prosecute the action in the place of the Diane G. Reed, Trustee of the Estate herein, in order to gain the questioned standing. The Court denied the motion without prejudice on March 23, 2011 in order to ensure the Trustee had sufficient notice of the motion. Subsequently, the Trustee began to investigate the claims brought in the adversary action.

On March 24, 2011, Defendants filed their third motion to dismiss, focusing specifically on the Plaintiffs' alleged lack of standing. Plaintiffs filed their response shortly thereafter.

**PLAINTIFFS' MOTION FOR LEAVE TO FILE**
**THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT- Page 2**

The Trustee's investigation then continued thereafter for more than a year.  The Trustee moved to abate, and this Court, abated, this adversary proceeding to allow the Trustee to conduct Rule 2004 examinations.  On September 5, 2012, satisfied with the evidence against CJ Comu related to the claims previously brought by Plaintiffs, the Trustee filed her Complaint in Intervention. The filing of such complaint necessarily modified Plaintiffs' posture in the case and quelled any concerns of standing. Plaintiffs filed their Third Amended Complaint on September 28, 2012 to better reflect the information gained during the Trustee's investigation and Plaintiffs' continued claims in this adversary action.  Defendant has now objected to the filing thereof, and moved to strike the same, although no formal motion to strike has been filed.  By this Motion, Plaintiffs are asking the Court to allow such filing.

**ARGUMENT**

**I.**

**LEAVE TO AMEND SHOULD BE GRANTED
TO ALLOW PLEADING OF NEWLY DISCOVERED FACTS**

Pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure, "Rule 15 F.R.Civ.P. applies in adversary proceedings." Federal Rule of Civil Procedure 15(a) contemplates that a court will freely grant leave to file an amended complaint when the interests of justice so require. It is well-settled law that leave to amend the complaint is rarely denied and may be denied only where there is a demonstrable showing of prejudice to an opposing party. *Forman v. Davis*, 371 U.S.178, 83 S.Ct.227, 9 L.Ed. 2d 222 (1962); *Jackson v. Bank of Hawaii*, 902 F. 2d 1385(9th Cir. 1990); *Harkiess v. Sweeny Independent School District*, 544 F 2d 1353 (5th Cir. 1977); *United Steelworkers of America v. Mesker Bros. Industries, Inc.*, 457 F2d 91(8th Cir. 1971). In fact, it may be an abuse

of discretion for the Court to deny leave to amend absent a demonstrable showing of prejudice. *Id*.

As the Trustee conducted her investigation into the claims herein, and discovery has progressed in this matter, Plaintiffs have received and discovered substantial additional information and facts relevant to their previously pled causes of action herein. Plaintiffs are now in possession of documents evidencing substantial assets that were fraudulently withheld from the Bankruptcy Estate, and **specifically demonstrating the materiality of such omission because of the large values generated by subsequent sales and transfers**,[1] supporting their claims for a revocation of the discharge herein pursuant to 11 U.S.C. §727(d)(1)-(2).[2] Further, the Trustee has intervened in this action, causing all issues of standing to be made moot, though amendments are required to clean up remnants of previous complaints herein.

As noted above, Federal Rule of Civil Procedure 15(a) requires that leave to file an amended complaint be "freely given when justice so requires." This standard is readily met here, as the more detailed description of the events and facts surrounding Plaintiffs' revocation claims clearly goes to the pursuit of justice. Indeed, the U.S. Supreme Court determined that "[i]n the absence of . . . undue delay, bad faith or dilatory motive . . . undue prejudice . . . futility of amendment, etc. – the leave sought should . . . be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).[3] No such prejudice exists here. The facts described

---

[1] *See*, *In re Cooper*, 426 B.R. 227 (Bkr.N.D.Tex.2010)(Jernigan, Bankruptcy Judge), for a discussion of the facts in that case where a subsequent sale was deemed to evidence the value of assets either omitted from the debtor's schedules or undervalued.

[2] Pursuant to 11 U.S.C. §727(e), Plaintiffs have independent standing to bring their causes of action for violations of 11 U.S.C. §727(d)(1)-(2).

[3] Plaintiffs do not argue against the potential futility of this amendment because the amendment is not required to overcome CJ Comu's motions to dismiss, as Plaintiffs have clearly

**PLAINTIFFS' MOTION FOR LEAVE TO FILE
THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT- Page 4**

in the Third Amended Complaint are well-known to CJ Comu, because he produced the documents and information, or directly undertook the actions, upon which the amendments are based, and the claims are based upon Rule 2004 examinations in which Comu was either personally present or represented by counsel. Additionally, the Third Amended Complaint does not significantly change Plaintiff's causes of action, but rather narrows the claims to assert only those that Plaintiff has standing to assert, given the Trustee's intervention, and more clearly describes and updates the facts and events upon which Plaintiffs' remaining claims are based. The amendments are vital to ensuring an efficient resolution of this case, and prevent ongoing issues related to any motion to dismiss.

Plaintiffs note specifically that the Court has previously stated that Plaintiffs would be limited in their ability to amend their Complaint. Respectfully, Plaintiffs suggest that, in the year since that previous ruling, much has occurred in the case that necessitates Plaintiffs perfecting their complaint. Given the intervention, Plaintiffs would suffer harm if not allowed to amend their complaint to better fit with the current posture of this case, and to add the necessary claims, factual contentions, and additional parties.

As stated above, CJ Comu suffers no prejudice in Plaintiffs being allowed leave to amend their Complaint as there are no significant changes to the causes of action alleged in Plaintiff's Third Amended Complaint and Defendant is, and has been, aware of each of the amended facts. Obviously, then, these allegations will come as no surprise to CJ Comu. It would instead be Plaintiffs who suffer

---

stated a plausible claim for relief under *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) in their prior complaints. That said, Plaintiff's Fourth Amended Complaint goes above and beyond in raising facts that "accepted as true, [...] state a claim to relief that is plausible on its face." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)(*quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).

**PLAINTIFFS' MOTION FOR LEAVE TO FILE**
**THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT- Page 5**

grave prejudice and harm in not being allowed to amend their complaint, as they would be subject to a motions to dismiss filed more than sixteen months ago, before the full extent of CJ Comu's fraud and deceit were known.

Accordingly, Plaintiffs should be allowed leave to amend their complaint. *See, e.g., Security Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995) (holding that the district court abused its discretion in denying leave to amend a complaint when the opposing party made no showing of prejudice from the delay); *United States v. Wood*, 877 F.2d 453, 456 (6th Cir. 1989) (allowing a plaintiff to add a claim fourteen months after suit was filed, after discovery had closed, and three weeks before trial); *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981) (holding that the district court abused its discretion in denying leave to amend the complaint to add a new count when no prejudice resulted from two and one-half year delay and the facts underlying the new and old counts were similar).

## II.

### PLAINTIFFS HAVE STANDING TO ALLEGE
### THE CAUSES OF ACTION WHICH HAVE BEEN PLED

Defendant is simply wrong in asserting that Plaintiffs lack standing to allege their various causes of action. Pursuant to 11 U.S.C. §727(e), Plaintiffs have independent standing to bring their causes of action for violations of 11 U.S.C. §727(d)(1)-(2). 11 U.S.C. §727(e)("The trustee, **a creditor**, or the United States trustee may request a revocation of a discharge-")(emphasis added); *see Reed v. Cooper (In re Cooper)*, 426 B.R. 227 (Bankr. N.D. Tex. 2010)(Jernigan). Plaintiffs' Third Amended Complaint is rooted only in 727(d) claims, which Plaintiffs clearly have standing

**PLAINTIFFS' MOTION FOR LEAVE TO FILE
THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT- Page 6**

to bring.[4]

Further, to the extent Plaintiffs presently lack standing to bring **any** claim in this matter, it is only because the Trustee has now brought such claims. *See Official Committee of Unsecured Creditors of Cybergenics v. Chinery*, 330 F.3d 548, 561 (3rd Cir. 2003)(discussing standards for creditor derivative standing); *see also Louisiana World Exposition v. Federal Insurance Co.*, 858 F.2d 233, 247 (5th Cir. 1988). Before the Trustee began her full investigation into the claims herein, Plaintiffs were in the process of seeking leave to obtain derivative standing on the basis that: (1) Plaintiffs' claims were "colorable," and (2) that the Trustee had  unjustifiably refused to pursue the claim. *Louisiana World Exposition*, 858 F.2d at 247.[5]

Further, insofar as the Plaintiff has previously raised or presently raises any claim that the Trustee does not bring in her Complaint in Intervention that is found to be property of the bankruptcy estate, Plaintiff reserves the right to seek derivative standing to bring the claims.

## III.

## THE ADDITIONAL PARTIES HAVE BEEN PROPERLY JOINED

The newly added parties– Comu's wife, the purported 99% owner of Sunset Pacific, L.P., Bernard Brown, the faceless, absent, purported 99% owner of The Barclay Group, TKY Trust, a trust

---

[4]  The Bankruptcy Court in  *In re Penner*, 107 B.R.171 (Bkr.N.D.Ind.1989) noted that often it is difficult to distinguish between fraudulent concealment claims and §727 claims, and this Court has written that property can be concealed by placing it in another's name, and therefore justify the denial of a discharge. *Mullen v. Jones*, 455 B.R. 677, 722 (Bkr.N.D.Tex.2011) (Jernigan, Bankruptcy Judge)

[5]  Plaintiffs also intended to discuss purchasing the claims from the Trustee in order to perfect standing should leave not be granted. *See In re Moore*, 608 F.3d 253, 261-262 (5th Cir. 2010)(holding that avoidance actions that are property of the estate may be sold under 11 U.S.C. § 363 and pursued by an non-Trustee party).

**PLAINTIFFS' MOTION FOR LEAVE TO FILE**
**THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT- Page 7**

established to hold shares of stock obtained from Barclay which were properly part of the Estate, DAPTCO Trust, another trust formed for the same purpose, and The Barclay Group, Comu's alter ego entity which he solely manages and controls for his personal benefit– have all been properly added because, as the investigation during the 2004 examinations has established, they all hold assets that were diverted from Comu's bankruptcy estate, that should have been included in his Estate, and were fraudulently concealed from the Court in violation of § 727. In any suit at which a fraudulent transfer and/or wrongful concealment of property from the bankruptcy estate is at issue both the debtor and the holder of the property[6] should be named as necessary parties in the suit. *See* 5 Collier on Bankruptcy 548, 548-54, note 1 (16th ed. revised 2011)(*citing In re Farmer's Market*, 22 B.R. 71 (9th Cir. B.A.P., 1982); Fed. R. Bankr. P. 7019)); *see also Slone v. Lorenz (In re Lorenz)*, 2011 Bankr. LEXIS 738 (Bankr. S.D. Ohio Mar. 8, 2011); *Forman v. Jeffrey Matthews Fin. Group, LLC (In re Halpert & Co.)*, 254 B.R. 104, 116 (Bankr. D.N.J. 1999).

## CONCLUSION

Leave should be "freely given when justice so requires." Plaintiffs meet this standard here and justice requires that they be allowed to amend their complaint to better state and update their claims in light of the Trustee's intervention. CJ Comu will suffer no prejudice if Plaintiffs are allowed to file their amended complaint as CJ Comu was aware of every single fact that has been amended and the factual nexus of Plaintiffs' claims remains unchanged.

WHEREFORE, Plaintiffs King Louie Mining, LLC, King Louie Enterprises, LLC, and Ronald Katz respectfully requests and prays that this Court grant leave to file their Third Amended Complaint.

---

[6] These parties could also be construed as the transferor and transferee.

**PLAINTIFFS' MOTION FOR LEAVE TO FILE**
**THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT- Page 8**

Respectfully submitted,

**LAW OFFICES OF LIPPE & ASSOCIATES**

By:     /s/ Emil Lippe, Jr.
        Emil Lippe, Jr.
        State Bar No. 12398300
        Law Offices of Lippe & Associates
        Plaza of the Americas, South Tower
        600 N. Pearl Street, Suite S2460
        Dallas, Texas  75201
        Telephone:     (214) 855-1850
        Facsimile:     (214) 720-6074
        Email:         emil@texaslaw.com

**ATTORNEYS FOR PLAINTIFFS KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ**

### CERTIFICATE OF CONFERENCE

Counsel for Plaintiffs has contacted Defendant's counsel of record concerning the substance of this motion, and has been advised that the motion is opposed.

Certified to the   29th   day of October, 2012, by    /s/ Emil Lippe, Jr.   .

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this   29th   day of October, 2012, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. Bankruptcy Court,

**PLAINTIFFS' MOTION FOR LEAVE TO FILE**
**THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT- Page 9**

Northern District of Texas, using the electronic case filing system of the Court, which will then send

a notification of such filing to the following:

Dennis Olson
Olson, Nicoud & Gueck, L.L.P.
1201 Main St., Ste 2470
Dallas, TX 75202


David W. Elmquist
604 Water Street
Waxahachie, TX 75165


/s/   Emil Lippe, Jr.
Emil Lippe, Jr.

**PLAINTIFFS' MOTION FOR LEAVE TO FILE
THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT- Page 10**

000450