UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | | |
|---|---|---|
| In Re: Cengiz J. Comu | Debtor | § Case No. 09-58820 SGJ7 |
| **Cengiz J. Comu, et al** | | § |
| | Appellant | § |
| vs. | | § 10-03269 |
| **King Louie Mining, LLC, et al** | | § |
| | Appellee | § |

## 148 Judgment revoking discharge of debtor Entered 7/8/14
## VOLUME 4
## APPELLANT RECORD

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |

| | | |
|---|---|---|
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-plaintiff and | § | |
|     Third-party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CENGIZ J. COMU, | § | |
|     Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| PHYLLIS E. COMU, | § | |
| BERNARD D. BROWN, | § | |
| THE BARCLAY GROUP, INC. AND | § | |
| SUNSET PACIFIC, L.P., | § | |
|     Third-party Defendants. | § | |

EXIDEX

**APPELLANT'S FIRST AMENDED DESIGNATION
OF RECORD AND ISSUES ON APPEAL**                                    **Page 1**

## APPELLANT'S FIRST AMENDED DESIGNATION OF RECORD
## AND ISSUES ON APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Cengiz J. Comu, Appellant, and files this his First Amended Designation

of Record and Issues on Appeal for the Judgment entered July 8, 2014 [Document No. 148] as

follows:

I.      Appellant designates the following documents from the docket sheet in Adversary Case

No. 10-03269 for the Record on Appeal:

[Intentionally left blank]

| Filing Date | # | Docket Text |
|---|---|---|
| 08/27/2014 | 164 | Notice of appeal . Fee Amount $298 filed by Defendant Cengiz J. Comu (RE: related document(s)148 Judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Related document(s) 20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 53 Intervenor complaint filed by Intervenor-Plaintiff Diane G. Reed)). Appellant Designation due by 9/10/2014. (Moroles, D.) |
| 07/08/2014 | 148 | Judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Related document(s) 20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 53 Intervenor complaint filed by Intervenor-Plaintiff Diane G. Reed) (Rielly, Bill). |
| 07/08/2014 | 147 | Findings of fact and conclusions of law in support of judgment: (A) Revoking discharge of debtor, pursuant to 11 U.S.C. 727(d); (B) Declaring certain property to be "Property of the Estate"; (C) Requiring turnover of certain property to the trustee; (D) Awarding monetary damages to trustee for the benefit of the estate; and (E) Separately awarding reasonable attorney's fees and expenses to plaintiffs Entered on 7/8/2014. (Rielly, Bill) |
| 09/09/2014 | | Docket Sheet |
| 10/07/2010 | 5 | Motion to dismiss adversary proceeding*Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6)* filed by Defendant Cengiz J. Comu (Olson, Dennis) |
| 11/08/2010 | 8 | Motion for leave *to Amend* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/29/2010. (Attachments: 1 First Amended Complaint2 Exhibit A3 Exhibit B4 Exhibit C) (Lippe, Emil) |
| 11/08/2010 | 9 | Response opposed to (related document(s): 5 Motion to dismiss adversary proceeding*Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 01/10/2011 | 10 | Order denying motion to dismiss adversary proceeding as moot (related document # 5), granting motion for leave to amend complaint(related document # 8) Entered on 1/10/2011. Case is removed from docket for week of January 11, 2011. Counsel ORDERED to confer and submit proposed amended scheduling order for the trial of this case, to be submitted within 10 days from date of this Order. (Mathews, M.) |

*Vol. 2*
*000211*

*000215*

*000263*

*000273*

_Vol. 2_

| | | | |
|---|---|---|---|
| 006275 | 01/20/2011 | 12 | Motion to dismiss adversary proceeding*(SECOND)* filed by Defendant Cengiz J. Comu (Olson, Dennis) |
| 000279 | 02/11/2011 | 16 | Response opposed to (related document(s): 12 Motion to dismiss adversary proceeding*(SECOND)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 000287 | 02/24/2011 | 17 | Order conditionally denying second motion to dismiss adversary proceeding (related document # 12) Entered on 2/24/2011. Plaintiffs are ORDERED to file amended complaint within 20 days of entry of this order. Defedant is ORDERED to file an answeror responsive pleading within 20 days of filing of the amended complaint. (Mathews, M.) |
| 000290 | 03/02/2011 | 19 | Motion for leave *to Prosecute Action* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 3/23/2011. (Lippe, Emil) |
| 000293 | 03/02/2011 | 20 | Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature. filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Attachments: 1 Exhibit A2 Exhibit B) (Lippe, Emil) |
| 000340 | 03/23/2011 | 23 | Order denying motion for leave to prosecute action without prejudice (related document # 19) Entered on 3/23/2011. (Simpson, B) |
| 000342 | 03/24/2011 | 24 | Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu (Olson, Dennis) |
| 000345 | 04/19/2011 | 28 | Agreed Order granting 27 Motion to extend time to file response to motion to dismiss until 4/28/2011. Entered on 4/19/2011. (Simpson, B) |
| 000347 | 04/28/2011 | 30 | Response opposed to (related document(s): 24 Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 000351 | 05/04/2011 | 31 | Motion to continue hearing on (related documents 20 Amended complaint, 24 Motion to dismiss adversary proceeding)*[Unopposed]* filed by Interested Party Diane G. Reed, Trustee (Elmquist, David) |
| 000361 | 05/06/2011 | 32 | Order granting motion to continue hearing on (related document # 31) (related documents Motion to dismiss adversary proceeding*(THIRD)* and 20 Amended Complaint) Entered on 5/6/2011. Hearing to be held on 7/11/2011 at 10:30 AM Dallas Judge Jernigan Ctrm for 24, Trial Docket Call date reset for 9/12/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Mathews, M.) Modified text on 5/6/2011 (Mathews, M.). |
| 000363 | 07/06/2011 | 36 | Second Motion to continue hearing on (related documents 20 Amended complaint, 24 Motion to dismiss adversary proceeding)*[unopposed]* filed by Interested Party Diane G. Reed, Trustee (Elmquist, David) |

*Vol. 2*

| | 07/08/2011 | 37 | Order granting second unopposed motion to continue hearing on (related document # 36) (related documents Amended complaint, Motion to dismiss adversary proceeding*(THIRD)*) Entered on 7/8/2011. Hearing to be held on 9/15/2011 at 09:30 AM Dallas Judge Jernigan Ctrm for 24 Third motion to dismiss and for Trial Docket Call date set for 12/12/2011 at 01:30 PM at Dallas Judge Jernigan Ctrm. Further conditions per Order. (Mathews, M.) |
|---|---|---|---|
| 000367 | | | |
| 000369 | 08/24/2011 | 39 | Agreed Motion to Abate Adversary Proceeding (related document(s)1 Complaint) Filed by Interested Party Diane G. Reed (Elmquist, David) Modified TEXT on 8/25/2011 (Blanco, J.). |
| 000374 | 08/31/2011 | 40 | Agreed Order granting motion to abate adversary proceeding (related document # 39) Entered on 8/31/2011. (Mathews, M.) |
| 000377 | 05/24/2012 | 48 | Supplemental Order granting agreed motion to abate adversary proceeding including any hearing on the motion to dismiss, abated until August 1, 2012 further conditions per order (related document # 39 agreed motion to abate ) Entered on 5/24/2012. (Moroles, D.) |
| 000379 | 08/07/2012 | 50 | Order terminating abatement of adversary proceeding and requiring: (A) Trustee's Complaint in Intervention to be filed by August 31, 2012; and (B) parties to upload Agreed Scheduling Order, or in the alternative, Court will enter its own Scheduling Order (related document # 39) Entered on 8/7/2012. Further details per Order. (Mathews, M.) |
| 000381 | 09/05/2012 | 53 | Intervenor complaint by Diane G. Reed against Sunset Pacific, L.P., The Barclay Group, Inc., Bernard D Brown, Phyllis E Comu, Cengiz J. Comu. (Elmquist, David) |
| 000395 | 09/06/2012 | 54 | Order granting Trustee's Unopposed Motion to Extend Deadline to File a Complaint in Intervention 52 Motion to extend time. Ordered that the deadline is hereby extended to September 5, 2012. Entered on 9/6/2012. (Tello, Chris) |
| 000397 | 09/20/2012 | 59 | Agreed Scheduling Order Entered on 9/20/2012 (RE: related document(s)20 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial Docket Call date set for 7/8/2013 at 01:30 PM at Dallas Judge Jernigan Ctrm. Hearing on Defendant Cengiz J. Comu's Third Amended Motion to Dismiss Case is set for 10/31/2012 at 9:30 AM. (Mathews, M.) MODIFIED hearing dates on 9/21/2012 (Mathews, M.). |
| 000401 | 09/28/2012 | 61 | Supplemental Response opposed to (related document(s): 24 Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Lippe, Emil) |
| 000406 | 09/28/2012 | 62 | Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against |

| | | | |
|---|---|---|---|
| *Vol. 2* | | | Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 41 (Objection / revocation of discharge - 727(c),(d),(e)). (Lippe, Emil) Modified text on 9/7/2010 (Luna, G). filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Lippe, Emil) |
| *000429* | 10/09/2012 | 64 | Answer to Intervenor complaint (Related document: 53 Intervenor complaint by Diane G. Reed against Sunset Pacific, L.P., The Barclay Group, Inc., Bernard D Brown, Phyllis E Comu, Cengiz J. Comu. (Elmquist, David) filed by Bernard D Brown, Cengiz J. Comu, Phyllis E. Comu, Sunset Pacific, L.P., The Barclay Group, Inc.. (Olson, Dennis) Modified text on 10/9/2012 (Tello, Chris). |
| *000433* | 10/09/2012 | 65 | Reply to (related document(s): 30 Response filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz, 61 Response filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) filed by Defendant Cengiz J. Comu. (Olson, Dennis) |
| *000437* | 10/26/2012 | 66 | Motion to appear pro hac vice for David H. Wander. Fee Amount $25 filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit) (Lippe, Emil) |
| *000441* | 10/29/2012 | 68 | Motion for leave *to File Third Amended Complaint and Brief in Support* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/23/2012. (Lippe, Emil) |
| *Vol. 3* *000451* | 10/30/2012 | 69 | Motion for leave *to File Surreply to Defendant's Response to Plaintiffs' Supplemental Response to Third Motion to Dismiss* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC Objections due by 11/23/2012. (Attachments: # 1 Exhibit A - Surreply# 2 Proposed Order) (Lippe, Emil) |
| *000470* | 10/31/2012 | 70 | Order granting motion to appear pro hac vice adding David H. Wander for Ronald Katz and King Louie Mining, LLC (related document # 66) Entered on 10/31/2012. (Mathews, M.) |
| *000471* | 11/02/2012 | 71 | Order denying Plaintiffs' motion for leave to file Third Amended Complaint (related document # 68) Entered on 11/2/2012. (Mathews, M.) |
| *000473* | 11/02/2012 | 72 | Order denying Plaintiffs' motion for leave to File Surreply to Defendant's Response to Plaintiffs' Supplemental Response to Third Motion to Dismiss (related document # 69) Entered on 11/2/2012. (Mathews, M.) |
| *000475* | 11/14/2012 | 76 | Order denying motion to dismiss adversary proceeding (related document # 24) Entered on 11/14/2012. (Mathews, M.) |
| *000477* | 12/07/2012 | 78 | Answer to complaint *(Second Amended) to Revoke Discharge* filed by Cengiz J. Comu. (Olson, Dennis) |
| *000481* | 06/07/2013 | 88 | Motion to substitute attorney Emil Lippe, Jr., Law Offices of Lippe & Associates with Shari L. Heyen, Kendyl T. Hanks and Charles P. Floyd, Greenberg Traurig, LLP *and for Withdrawal of Attorney Emil Lippe, Jr., Law Offices of Lippe & Associates,* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Heyen, Shari) |

*Vol. 3*

| | | | |
|---|---|---|---|
| 000785 | 06/12/2013 | 89 | Agreed Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit A - Proposed Agreed Scheduling Order) (Heyen, Shari) |
| 000795 | 06/21/2013 | 90 | Agreed order granting motion to amend scheduling order (related document # 89) Trial Docket Call date set for 9/9/2013 at 01:30 PM Dallas Judge Jernigan Ctrm for 20, Entered on 6/21/2013. (Rielly, Bill) |
| 000797 | 06/21/2013 | 91 | Order granting motion to substitute attorney adding Shari L. Heyen for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, Kendyl T. Hanks for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, Charles P. Floyd for King Louie Mining, LLC; Ronald Katz and King Louie Enterprises, LLC, terminating Emil Lippe, Jr.. (related document # 88) Entered on 6/21/2013. (Rielly, Bill) |
| 000562 | 07/19/2013 | 94 | Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates (Attachments: # 1 Exhibit # 2 Affidavit # 3 Exhibit 1 # 4 Exhibit 2 # 5 Proposed Order) (Lippe, Emil) |
| 000539 | 08/12/2013 | 96 | Response opposed to (related document(s): 94 Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC. (Heyen, Shari) |
| 000598 | 08/14/2013 | 97 | Reply to (related document(s): 96 Response filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6) (Lippe, Emil) |
| 000606 | 08/21/2013 | 98 | Order denying motion to intervene (related document # 94) Entered on 8/21/2013. (Rielly, Bill) |
| 000608 | 08/23/2013 | 99 | Agreed Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit A - Agreed Order to Amend Scheduling Order) (Heyen, Shari) |
| 000617 | 09/13/2013 | 101 | Agreed order granting motion to amend scheduling order (related document # 99) Trial Docket Call date set for 12/9/2013 at 01:30 PM Dallas Judge Jernigan Ctrm for 20, Entered on 9/13/2013. (Rielly, Bill) |
| 000621 | 11/25/2013 | 103 | Witness and Exhibit List *for Trial, per Scheduling Order* filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)62 Amended complaint). (Olson, Dennis) |
| 000624 | 11/25/2013 | 104 | Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding) filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Attachments: # 1 Exhibit A - Proposed Order) (Heyen, Shari) |

*Vol. 3*

| | | | |
|---|---|---|---|
| 000630 | 11/27/2013 | 105 | Support/supplemental document*(Supplement to Plaintiffs' Motion for Continuance of Scheduling Order Deadlines and Trial)* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)104 Motion to amend scheduling order. (related documents 4 Standing scheduling order in an adversary proceeding)). (Heyen, Shari) |
| 000633 | 12/09/2013 | 106 | Agreed order granting motion to amend scheduling order (related document # 104) Entered on 12/9/2013. Trial Docket Call date set for 3/3/2014 at 01:30 PM at Dallas Judge Jernigan Ctrm. (Rielly, Bill) |
| 000637 | 12/20/2013 | 108 | Motion for preliminary injunction *(expedited)* filed by Intervenor-Plaintiff Diane G. Reed (Elmquist, David) |
| 000647 | 12/20/2013 | 109 | Motion for expedited hearing(related documents 108 Motion for preliminary injunction) filed by Intervenor-Plaintiff Diane G. Reed (Elmquist, David) |
| 000651 | 12/20/2013 | 110 | Order granting ex parte motion for expedited hearing (Related Doc# 109)(document set for hearing: 108 Motion for preliminary injunction) Entered on 12/20/2013. Hearing to be held on 12/23/2013 at 09:30 AM Dallas Judge Jernigan Ctrm for 108, (Rielly, Bill) |
| 000653 | 12/20/2013 | 111 | Agreed order granting motion for temporary restraining order (related document 108) Entered on 12/20/2013. Preliminary injunction hearing to be held on 1/3/2014 at 09:30 AM Dallas Judge Jernigan Ctrm (Rielly, Bill) |
| 000656 | 01/03/2014 | 116 | Agreed Order Continuing Temporary Restraining Order (related document # 108) Entered on 1/3/2014. (Jones, A.) |
| 000659 | 02/24/2014 | 118 | Amended Witness and Exhibit List filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)103 List (witness/exhibit/generic)). (Olson, Dennis) |
| 000662 | 02/24/2014 | 119 | Witness and Exhibit List *for Trial* filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)62 Amended complaint). (Elmquist, David) |
| *Vol.4* 000670 | 02/24/2014 | 120 | Witness and Exhibit List filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)62 Amended complaint). (Heyen, Shari) |
| 000722 | 02/26/2014 | 121 | Stipulation by Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC and All Defendants. filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)106 Order on motion to amend scheduling order). (Heyen, Shari) |
| 000726 | 03/03/2014 | 124 | Stipulation by Diane G. Reed and Plaintiffs and Defendants. filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)53 Intervenor complaint, 62 Amended complaint). (Elmquist, David) |
| 000729 | 03/03/2014 | 125 | Proposed findings of fact and conclusions of law filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)53 Intervenor complaint). (Elmquist, David) |

Vol. 4

| | 03/04/2014 | 126 | Proposed findings of fact and conclusions of law filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)62 Amended complaint). (Olson, Dennis) |
|---|---|---|---|
| 000741 | | | |
| 000796 | 03/04/2014 | 127 | Proposed findings of fact and conclusions of law filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)62 Amended complaint). (Heyen, Shari) |
| 000778 | 03/05/2014 | 130 | Order setting trial Entered on 3/5/2014 (RE: related document(s)62 Amended complaint filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). Trial date set for 3/17/2014 at 09:30 AM at Dallas Judge Jernigan Ctrm. (Rielly, Bill) |
| 000780 | 03/11/2014 | 132 | Amended Witness and Exhibit List *for Trial* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)120 List (witness/exhibit/generic)). (Heyen, Shari) |
| 000805 | 03/13/2014 | 134 | Amended Witness and Exhibit List filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)119 List (witness/exhibit/generic)). (Elmquist, David) |
| 000813 | 03/14/2014 | 135 | Amended Witness and Exhibit List *Second Amended* filed by Defendants Bernard D Brown, Cengiz J. Comu, Phyllis E Comu, Sunset Pacific, L.P., The Barclay Group, Inc. (RE: related document(s)118 List (witness/exhibit/generic)). (Olson, Dennis) |
| 000816 | 03/16/2014 | 137 | Amended Witness and Exhibit List *(Second)* filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (RE: related document(s)132 List (witness/exhibit/generic)). (Heyen, Shari) |
| 000842 | 03/17/2014 | 138 | First Amended Proposed Joint Pre-Trial order Entered on 3/17/2014. (Rebecek, B) |
| 000871 | 04/04/2014 | 142 | Extended temporary restraining order and mandatory injunction Entered on 4/4/2014. (Rielly, Bill) |
| 000878 | 04/23/2014 | 144 | Notice *of Trustee's Status Report of Compliance* filed by Intervenor-Plaintiff Diane G. Reed (RE: related document(s)142 Temporary restraining order). (Elmquist, David) |
| 000892 | 07/29/2014 | 161 | Motion to extend time to appeal - Rule 8002c (RE: related document(s)148 Judgment) Filed by Defendant Cengiz J. Comu (Blanco, J.) (Entered: 08/20/2014) |
| 000896 | 07/30/2014 | 153 | Application for compensation *Plaintiffs Preliminary Application for Attorneys' Fees and Expenses Awarded in the Court's July 8, 29014 Judgment* for Shari L. Heyen, Creditor's Attorney, Period: 10/26/2011 to 7/28/2014, Fee: $946,504.90, Expenses: $12,800.00. Filed by Attorney Shari L. Heyen (Heyen, Shari) |
| 000906 | 07/30/2014 | 154 | Motion to extend time to To Submit Affidavit and Evidence in Support of Application for Attorneys' Fees & Expenses Awarded in the Court's July 8, 2014 Judgment Filed by Plaintiffs Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC (Heyen, Shari) |
| 000914 | 08/20/2014 | 162 | Order granting motion for leave to file notice of appeal out of time 161 |

*Vol. 4*

*000916*

*000919*

| | | | |
|---|---|---|---|
| | | | Motion to extend time to appeal - Rule 8002c. Entered on 8/20/2014. (Rielly, Bill) |
| | 08/27/2014 | 165 | Order granting motion to extend time to file application for attorney's fees and expenses 154 Motion to extend time. Entered on 8/27/2014. (Rielly, Bill) |
| | 08/29/2014 | 168 | Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)164 Notice of appeal filed by Defendant Cengiz J. Comu) (Blanco, J.) |

II.     Appellant also designates all exhibits admitted at trial, March 17 through March 21, 2014. *Not Provided by Appellant*

III.    Appellant also designates the following transcripts:

*Vol. 5*

| | | |
|---|---|---|
| 000921 | 11/09/2010<br><br>177 | Hearing held on 11/9/2010. (RE: related document(s)5 Motion to dismiss adversary proceeding Pursuant to Fed. Rules Civ. Proc. Rule 12(b)(6) filed by Defendant Cengiz J. Comu filed by Defendant Cengiz J. Comu) APPEARANCES: D. Olson for Debtor; E. Lippe for Plaintiff. Nonevidentiary hearing. Announcement of an agreed order having been submitted that contemplates Plaintiff's agreement to file Amended Complaint with Debtor's reservation of right to re-urge motion to dismiss. Court will sign order. (Womack, Jennifer) (Entered: 11/12/2010) |
| 000927 | 02/14/2011<br><br>178 | Hearing held on 2/14/2011. (RE: related document(s)12 Motion to dismiss adversary proceeding*(SECOND)* filed by Defendant Cengiz J. Comu filed by Defendant Cengiz J. Comu) Appearances: D. Olsen for Defendant/Debtor; E. Lippe for Plaintiff. Nonevidentiary hearing. Motion denied, conditional on Plaintiff, within 20 days, amending Complaint again to provide more specificity regarding specific provisions of Section 727(d) being alleged, when acts were discovered and how, and addressing his standing, versus the Chapter 7 Trustees, to seek avoidance of alleged fraudulent transfers. If not amendment within 20 days, complaint will be dismissed. If amendment, then Defendant has 20 days thereafter to answer/respond. Counsel to submit order. (Harden, D.) (Entered: 02/18/2011) |
| 000952 | 05/02/2012<br><br>179 | Status conference held (RE: related document(s)20 Amended complaint) Appearances: E. Lippe and D. Wander (telephonically) for Plaintiffs; D. Elmquist for Trustee; D. Olson for Debtor. Nonevidentiary hearing. Based on statements of counsel, court will continue abatement through 8/1/12 and counsel shall contact courtroom deputy for another status conference the first week of August 2012. Counsel shall upload an order continuing abatement. (Davis, T.) (Entered: 05/14/2012) |
| 000964 | 07/31/2012<br><br>180 | Hearing held on 7/31/2012. (RE: related document(s)20 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Cengiz J. Comu No change to nature of suit. (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature. filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz). (Attachments: 1 Exhibit A2 Exhibit B) filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz) Appearances: D. Elmquist for Trustee; E. Lippe and D. Wander (telephonically) for Plaintiff; D. Olson for Debtor. Nonevidentiary status conference. Court heard reports regarding Rule 2004 examinations that have been ongoing and Trustees intention to file a Complaint in Intervention by 8/31/12. Court will enter Order terminating the abatement of this Adversary Proceeding and requiring: (a) Trustees Complaint in Intervention to be filed by 8/31/12; and (b) parties to upload Agreed Scheduling Order by 9/14/12 (inclusive of deadlines pertaining to the pending Rule 12(b)(6) |

*Vol. 5*

| | | | |
|---|---|---|---|
| | | | motion) or, in the alternative, court will enter its own Scheduling Order thereafter setting a January 2013 trial docket call and deadlines pertaining to the Rule 12(b)(6) motion. (Baird, Dennis) (Entered: 08/01/2012) |
| 000975 | 10/31/2012 | 181 | Hearing held on 10/31/2012. (RE: related document(s)24 Motion to dismiss adversary proceeding*(THIRD)* filed by Defendant Cengiz J. Comu) Appearances: D. Olson for Movant/Defendant/Debtor; D. Elmquist for Trustee; E. Lippe and D. Wander (telephonically) for Plaintiff/King Louie Mining. Nonevidentiary hearing. Motion denied. Court also denied a pending Motion for Leave by Plaintiff/King Louie Mining to File Third Amended Complaint. Thus, Second Amended Complaint of King Louie Mining (Section 727 count only) and Complaint in Intervention of Trustee are now governing pleadings in this Adversary Proceeding. Mr. Lippe to upload orders on motion to dismiss and motion for leave. (Baird, Dennis) |
| 001004 | 08/15/2013 | 182 | Hearing held on 8/15/2013. (RE: related document(s)94 Motion to intervene filed by Intervenor-Plaintiff Lippe & Perry, P.C., d/b/a Law Offices of Lippe & Associates (Attachments: # 1 Exhibit # 2 Affidavit # 3 Exhibit 1 # 4 Exhibit 2 # 5 Proposed Order)) Appearances: E. Lippe for his firm; K. Hanks and C. Floyd for Plaintiffs other than the Trustee; D. Elmquist for Trustee; R. Nicoud for Debtor. Nonevidentiary hearing. Motion denied. Ms. Hanks to upload order. (Harden, D.) (Entered: 08/21/2013) |
| 001035 | 03/04/2014 | 183 | Pre-trial conference held on 3/4/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit: (RE: related document(s)1 Adversary case 10-03269. Complaint by King Louie Mining, LLC, King Louie Enterprises, LLC, Ronald Katz against Cengiz J. Comu. Fee Amount $250. Nature(s) of suit: 41 (Objection / revocation of discharge - 727(c),(d),(e)). (Lippe, Emil) Modified text on 9/7/2010 (Luna, G). filed by Plaintiff King Louie Mining, LLC, Plaintiff King Louie Enterprises, LLC, Plaintiff Ronald Katz).) Appearances: K. Hanks and V. Vital for Creditor/Plaintiffs; D. Elmquist for Intervenor/Plaintiff; D. Olson for Defendants. Nonevidentiary status conference. Court will issue order setting trial for March 17, 2014 at 9:30 am, continuing through March 21, 2014. Parties to upload final Pre-Trial Order by March 14, 2014. (Harden, D.) (Entered: 03/06/2014) |
| 001052 | 03/17/2014 | 184 | Trial held on 3/17/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) |

| *Vol. 6* | | | Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/18/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| *001277* | 03/18/2014 | *185* | Trial held on 3/18/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/19/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| *Vol. 7* *001538* | 03/19/2014 | *186* | Trial held on 3/19/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/20/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| *Vol. 8* *001787* | 03/20/2014 | *187* | Trial held on 3/20/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial continued to 3/21/14 at 9:30 am. (Harden, D.) (Entered: 03/25/2014) |
| *Vol. 9* *001909* | 03/21/2014 | *188* | Trial held on 3/21/2014. (RE: related document(s)62 Amended complaint by Emil Lippe Jr. on behalf of Ronald Katz, King Louie Enterprises, LLC, King Louie Mining, LLC against Phyllis E. Comu, Regus Advisors, Inc., Marathon Management Limited Company, Daptco Trust, TKY Trust, The Barclay Group, Inc., Sunset Pacific, L.P., Bernard D Brown, Cengiz J. Comu Adding nature(s) of suit.) Appearances: K. Hanks, V. Vital and N. Sarokhanian for Plaintiffs; D. Elmquist for Trustee; D. Olson for Defendants. Evidentiary trial. Trial concluded. Court gave bench ruling: (a) revocation of discharge shall be ordered as to the Debtor, pursuant to Section 727(d)(1) & (2) of the Bankruptcy Code, based on fraud and concealment of assets of which Plaintiffs (and Trustee) were unaware until after the granting of discharge, and also based on Debtors acquiring or becoming entitled to acquire property that was or would be property of the estate and knowingly and fraudulently failing to report, deliver and surrender it to Ttrustee; (b) The Barclay Group, Inc. and Sunset Pacific are the alter |

egos of Debtor and their veil should be pierced; (c) Debtor should turnover previously undisclosed Turkish Bank Account and the equity/asset-control of The Barclay Group, Inc. and Sunset Pacific to Trustee; (d) parties may submit post-trial briefing regarding possible monetary damages to the estate. Counsel will upload an amended restraining order and injunction, as soon as possible, to protect dissipation of Green Auto stock or other assets of The Barclay Group, Inc. and Sunset Pacific. Counsel will subsequently upload proposed Findings of Fact, Conclusions of Law and Judgment that are consistent with the courts oral ruling and otherwise consistent with the evidence. (Harden, D.) (Entered: 03/25/2014)

IV.    Appellant states the following Issues presented on Appeal:

1.    The Bankruptcy Judge erred in revoking the Debtor's discharge.

2.    The Bankruptcy Judge erred in finding that the Barclay Group and Sunset Pacific are the alter egos of the Debtor.

3.    The Bankruptcy Judge erred in calculating the amount of the damages for which the Debtor was found to be liable.

[Signature on following page]

Respectfully submitted,

Cengiz J. Comu
14873 Oaks North Place
Dallas, Texas 75254
(972) 965-2545 – Telephone
Email: cjcomu@gmail.com

By: _____
        Cengiz J. Comu
        *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on the __11__ day of September, 2014, a true and correct copy of the foregoing document was sent via electronic means or by first class mail, postage prepaid to the persons shown below:

Kendyl T. Hanks
Greenberg Traurig, LLP
300 West 6th Street, Suite 2050
Austin, Texas 78701

David W. Elmquist
Reed & Elmquist, P.C.
501 N. College Street
Waxahachie, Texas 75165



By: _____
        Cengiz J. Comu

Shari L. Heyen
Texas Bar No. 09564750
Email: heyens@gtlaw.com
Kendyl T. Hanks
Texas Bar No. 24032273
Email: hanksk@gtlaw.com
Charles P. Floyd
Texas Bar No. 24055487
Email: floydc@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

**ATTORNEYS FOR PLAINTIFFS KING LOUIE MINING, LLC,
KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 7 |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO. 09-38820-sgj7 |
| | § | |
|     DEBTOR. | § | |
| KING LOUIE MINING, LLC, *et al.*, | § | |
| | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-Plaintiff, and | § | |
|     Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant, | § | |
| and | § | |
| PHYLLIS E. COMU, *et al.* | § | **Trial Docket Call:  March 3, 2014** |
|     Third-Party Defendants. | § | **at 1:30 pm.** |

### PLAINTIFFS WITNESS AND EXHIBIT LIST FOR TRIAL

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

## I.  ANTICIPATED PRE-ADMISSION OF EXHIBITS

In order to streamline trial proceedings, the parties have agreed to confer prior to trial and pre-admit exhibits for each party to the extent possible, and specifically identify any disputes regarding admissibility of any particular exhibit for resolution by agreement or, only if necessary, by the Court prior to the commencement of witness testimony.

## II.  REQUEST FOR JUDICIAL ADMISSION

Plaintiffs request pursuant to Federal Rule of Evidence 201 that the Court take judicial notice of the pleadings and papers filed in this Court, and appearing on the docket sheet for this Adversary and in the main bankruptcy case.

## III.  PLAINTIFFS' DESIGNATION OF WITNESSES FOR TRIAL

Plaintiffs hereby designate the following Witnesses for trial:

1.  Ronald Katz, individually and as representative of King Louie Mining, LLC, King Louie Enterprises, LLC.

2.  Frederick Luke

3.  Justeene Blankenship

4.  Alvin Dahl (by deposition)

5.  Bernard D. Brown (by deposition).

6.  David Parsley (by deposition)

7.  Edward Baxter (by deposition).

8.  Steven A. Evans (by deposition)

9.  Matthew Troster (by deposition)

10.  Any witness identified or called by the Trustee as Intervenor or by Defendants.

11.  Any rebuttal or impeachment witness.

**IV.** **PLAINTIFFS' DESIGNATION OF EXHIBITS OF TRIAL**

Plaintiffs hereby designate the following Exhibits for trial, subject to the parties' agreement and understanding regarding amendment to include items recently produced in response to third party subpoenas by Action Stock Transfer and Green Automotive.

1. Order and Judgment dated April 3, 2007, entered in *King Louie Mining, LLC v. Humitech International Group, Inc.*, Index No. 603402-06, in the Supreme Court of the State of New York, County of New York.

2. Verified Second Amended Complaint filed November 12, 2008, filed in *Humitech International Group, Inc., et. al v. Cengiz Jan Comu, et. al*, Index No. 06-602567, in the Supreme Court of the State of New York, County of New York.

3. Answer to Second Amended Complaint, filed December 3, 2008, filed in *Humitech International Group, Inc., et. al v. Cengiz Jan Comu, et. al*, Index No. 06-602567, in the Supreme Court of the State of New York, County of New York.

4. Judgment dated April 30, 2009, filed in *Humitech International Group, Inc., et. al v. Cengiz Jan Comu, et. al*, Index No. 06-602567, in the Supreme Court of the State of New York, County of New York.

5. Notice of Entry of Judgment, filed June 9, 2009, filed in *Humitech International Group, Inc., et. al v. Cengiz Jan Comu, et. al*, Index No. 06-602567, in the Supreme Court of the State of New York, County of New York.

6. Notice of Appeal by Cengiz Jan Comu dated July 1, 2009, filed in *Humitech International Group, Inc., et. al v. Cengiz Jan Comu, et. al*, Index No. 06-602567, in the Supreme Court of the State of New York, County of New York.

7. Notice of Filing Foreign Judgment, dated June 2, 2009, filed in Case No. DC-09-06981, in the 134th District Court, Dallas County Texas.

8. Plaintiffs' Motion to Compel Discovery, filed November 23, 2009, in Case No. DC-09-06981, in the 134th District Court, Dallas County Texas.

9. Order granting Motion to Compel Discovery, dated December 14, 2009, entered in Case No. DC-09-06981, in the 134th District Court, Dallas County Texas.

10. Suggestion of Bankruptcy, dated January 4, 2010, filed in Case No. DC-09-06981, in the 134th District Court, Dallas County Texas.

11. Notice of Settlement dated September 9, 2008, filed in *New Millennium Capital Partners II, LLC, et. al v. C.J. Comu, et. al*, Doc. #55, Case No. 3-06-CV-1180-L, in the United Stated District Court for the Northern District of Texas, Dallas Division.

*AUS 536291742v2*

000672

12. Stipulation of Dismissal, filed October 24, 2008, in *New Millennium Capital Partners II, LLC, et. al v. C.J. Comu, et. al*, Doc. #55, Case No. 3-06-CV-1180-L, in the United Stated District Court for the Northern District of Texas, Dallas Division.

13. Service copies of pleadings in *Sun Sports & Entertainment v. Humitech International Group*, Case No. 3-09CV0063-0, filed January 12, 2009 in the U.S. District Court for the Northern District of Texas, transmitted January 14, 2009 from Lloyd Ward to Ron Katz.

14. Merger Agreement and Plan of Reorganization by and among GANAS, Corp., Go Green USA, LLC, and The Barclay Group, Inc., dated November 4, 2009. (Source: Block & Garden Closing Binder).

15. Verified Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order, dated March 27, 2013, filed in *Green Automotive Company v. The Barclay Group, Inc., et. al*., Case No. 130902103, in the Third District Court, Salt Lake County, State of Utah.

16. Declaration of Justeene Blankenship, dated March 22, 2013, filed in *Green Automotive Company v. The Barclay Group, Inc., et. al*., Case No. 130902103, in the Third District Court, Salt Lake County, State of Utah.

17. Memorandum Decision and Order, dated May 7, 2013, filed in *Green Automotive Company v. The Barclay Group, Inc., et. al*., Case No. 130902103, in the Third District Court, Salt Lake County, State of Utah.

18. Public Corporate filings for Regus Advisors, Inc.

19. Public Corporate filings for Regus Capital Fund, LP.

20. Public Corporate filings for Regus Realty Partners, LLC.

21. Regus Advisors, Inc., Bank of America bank statements January – October 2011.

22. Wells Fargo bank statements for The Barclay Group (2009).

23. Wells Fargo bank statements for CJ Comu (2011).

24. Wells Fargo bank statements for The Barclay Group (2011).

25. Wells Fargo bank statements for Marathon Management.

26. Wells Fargo bank statements for Sunset Pacific.

27. Coral Group public corporate filings.

28. Public corporate filings for Sunset Pacific, LP.

29. T3 Networks, Inc. stock certificates issued in the name of The Barclay Group.

30. Mano-A-Mano trademark application filed April 17, 2009.

31. Public corporate filings for Global Energy Technology Group.

32. Advisory Agreement by and between Green Automotive Company Corporation and The Barclay Group, Inc., January 2010 (Source: Brown Deposition, Exhibit 13.)

33. Promissory Note between Green Automotive Company, Inc. and The Barclay Group Inc., dated January 8, 2010. (Source: Brown Deposition, Exhibit 14.)

34. Regus Advisors, Inc. Profit & Loss statement, January through December 2011. (Source: Parsley Deposition, Exhibit 5.)

35. The Barclay Group letter to OMST, dated August 25, 2011. (Source: Parsley Deposition, Exhibit 6.)

36. Letter from The Barclay Group to OMST, dated December 29, 2011 (with handwritten notes). (Source: Baxter Deposition, Exhibit 11.)

37. Handwritten notes dated September 8, 2009. (Source: Evans Deposition, Exhibit 7.)

38. Handwritten corporate minutes dated September 10, 2009. (Source: Evans Deposition, Exhibit 8.)

39. Email from Christopher McNeill to Steven Fly and Steven Evans, CCd to CJ Comu, dated October 16, 2009. (Source: Evans Deposition, Exhibit 9.)

40. Confidential Memorandum from CJ Comu to Steven Fly, dated September 9, 2009. (Source: Evans Deposition, Exhibit 5.)

41. Confidential Advisory Agreement between The Barclay Group and Go Green USA, LLC, dated September 1, 2009. (Source: Evans Deposition, Exhibit 2.)

42. Green Automotive Certificate Transaction Journal, Transaction #377, July 28, 2011. (Source: Troster Deposition, Exhibit 15.)

43. Email from Barclay Group to Matt Troster, dated June 30, 2011. (Source: Troster Deposition, Exhibit 8.)

44. Green Auto Stock Certificate #04151. (Source: Troster Deposition, Exhibit 9.)

45. Green Automotive Certificate Transaction Journal, Transaction #348, June 23, 2011. (Source: Troster Deposition, Exhibit 10.)

46. Email from The Barclay Group to Matt Troster, dated July 7, 2011. (Source: Troster Deposition, Exhibit 11.)

47. The Barclay Group Letter to OMST, dated July 14, 2011. (Source: Troster Deposition, Exhibit 12.)

48. The Barclay Group – Escrow Funds (chart). (Source: Troster Deposition, Exhibit 13.)

49. Email from CJ Comu to Matt Troster with attachments, dated July 28, 2011. (Source: Troster Deposition, Exhibit 16.)

50. Wire Transfer Instructions to OMST. (Source: Troster Deposition, Exhibit 17.)

51. Email from The Barclay Group to Matt Troster with attachments, dated October 14, 2011. (Source: Troster Deposition, Exhibit 20.)

52. Email from The Barclay Group to Matt Troster with attachments, dated November 10, 2011. (Source: Troster Deposition, Exhibit 21.)

53. Eurocap Investments PLC, public UK Companies House filings.

54. Inner Core Management Plc, a/k/a Hampshire Consultants Plc public UK Companies House filings.

55. Puration and UniOne Technology public UK Companies House filings.

56. The Barclay Group, Inc. Bank of America account statements (2011).

57. CJ Comu Bank of America statements (2011).

58. Email from CJ Comu to multiple recipients, dated February 12, 2010. (Source: Evans Deposition, Exhibit 23.)

59. Email from CJ Comu to Steven Evans, dated March 5, 2010. (Source: Evans Deposition, Exhibit 24.)

60. Email from Steve Fly to CJ Comu and related documents. (Source: Evans Deposition, Exhibit 16.)

61. Presentation Slides for Green Automotive Company. (Source: Evans Deposition, Exhibit 17.)

62. Steve Evans email, with attachments, dated February 1, 2010. (Source: Evans Deposition, Exhibit 18.)

63. Email from Steve Fly to CJ Comu. (Source: Evans Deposition, Exhibit 19.)

64. Email from CJ Comu to Steven Fly, dated October 21, 2009. (Source: Evans Deposition, Exhibit 12.)

65. Email from CJ Comu to Steven Fly, with attachments, dated November 9, 2009. (Source: Evans Deposition, Exhibit 13.)

66. Email from CJ Comu to Steve Fly and others, dated November 17, 2009. (Source: Evans Deposition, Exhibit 14.)

67.

68.  Confidential Private Placement Memorandum No. 114 for Green Automotive Company Inc. (Source: Evans Deposition, Exhibit 25.)

69.  Letter from Fred Luke to CJ Comu dated October 18, 2011. (Source: Evans Deposition, Exhibit 27.)

70.  Email from Matt Troster to Justeene Blankenship with attachments, dated April 19, 2012. (Source: Troster Deposition, Exhibit 23.)

71.  Green Auto Stock Certificate #5211. (Source: Troster Deposition, Exhibit 24.)

72.  Email from CJ Comu to Matt Troster, dated March 15, 2012. (Source: Troster Deposition, Exhibit 26.)

73.  Fax from Charles Peters to Michael Pierce, with handwritten notes, dated December 20, 2011. (Source: Troster Deposition, Exhibit 28.)

74.  Letter from TKY Trust to OMST, with handwritten notes, dated January 5, 2012. (Source: Troster Deposition, Exhibit 30.)

75.  Irrevocable Stock Power for Green Auto stock certificate No, 01032, dated October 31, 2011. (Source: Troster Deposition, Exhibit 32.)

76.  Green Auto Transaction Journal (2010). (Source: Troster Deposition, Exhibit 37.)

77.  Green Auto Transaction Journal (2011). (Source: Troster Deposition, Exhibit 38.)

78.  OMST stock trading ledger for The Barclay Group – Green Auto.  (Source: Troster Deposition, Exhibit 41.)

79.  OMST stock trading ledger for DAPTCO Trust – Green Auto.  (Source: Troster Deposition, Exhibit 42.)

80.  OMST stock trading ledger for TKY Trust – Green Auto.  (Source: Troster Deposition, Exhibit 43.)

81.  Email from "Consultant" to Matt Troster dated March 15, 2012.  (Source: Troster Deposition, Exhibit 44.)

82.  Email from "Consultant" to Matt Troster dated March 22, 2012.  (Source: Troster Deposition, Exhibit 45.)

83.  Letter from DAPTCO Trust to OMST dated March 22, 2012. (Source: Troster Deposition, Exhibit 46.)

84.  Email from CJ Comu to Matt Troster and others, dated April 9, 2012. (Source: Troster Deposition, Exhibit 47.)

85. Email from The Barclay Group to Matt Troster, dated December 30, 2011. (Source: Troster Deposition, Exhibit 48.)

86. Email from CJ Comu to Matt Troster dated January 10, 2012. (Source: Troster Deposition, Exhibit 49.)

87. Email from CJ Comu to Matt Troster dated January 4, 2012. (Source: Troster Deposition, Exhibit 50.)

88. Letter from The Barclay Group to OMST dated January 5, 2012. (Source: Troster Deposition, Exhibit 52.)

89. Letter from The Barclay Group to OMST, with handwritten notes, dated January 5, 2012. (Source: Troster Deposition, Exhibit 53.)

90. Email from CJ Comu to Matt Troster dated March 12, 2012. (Source: Troster Deposition, Exhibit 54.)

91. Email from The Barclay Group to Matt Troster dated December 27, 2011. (Source: Troster Deposition, Exhibit 55.)

92. Email from David Parsley to Matt Troster with attachments, dated June 1, 2012. (Source: Troster Deposition, Exhibit 56.)

93. Email from "Consultant" to Matt Troster, dated December 30, 2011. (Source: Troster Deposition, Exhibit 57.)

94. Email from David Parsley to Matt Troster, dated June 3, 2012. (Source: Troster Deposition, Exhibit 58.)

95. Email from David Parsley to Matt Troster, dated June 5, 2012. (Source: Troster Deposition, Exhibit 59.)

96. Email from David Parsley to Matt Troster, dated June 5, 2012. (Source: Troster Deposition, Exhibit 60.)

97. Email from Matt Troster to David Parsley, CCd to CJ Comu, with attachments, dated June 6, 2012. (Source: Troster Deposition, Exhibit 61.)

98. Email from Matt Troster to Justeene Blankenship with attachments, dated Ju;y 5, 2012. (Source: Troster Deposition, Exhibit 62.)

99. Letter from The Barclay Group OMST, dated December 1, 2011. (Source: Troster Deposition, Exhibit 63.)

100. Letter from The Barclay Group to OMST, dated December 8, 2011. (Source: Troster Deposition, Exhibit 64.)

101. Letter from The Barclay Group to OMST, dated December 22, 2011. (Source: Troster Deposition, Exhibit 66.)

102. Email from The Barclay Group to Matt Troster, CCd to CJ Comu, dated December 22, 2011. (Source: Troster Deposition, Exhibit 67.)

103. Letter from TKY Trust to OMST dated December 29, 2011. (Source: Troster Deposition, Exhibit 68.)

104. Letter from DAPTCO Trust to OMST dated April 5, 2012. (Source: Troster Deposition, Exhibit 86.)

105. Letter from DAPTCO Trust to OMST dated April 12, 2012. (Source: Troster Deposition, Exhibit 87.)

106. Letter from DAPTCO Trust to OMST dated April 19, 2012. (Source: Troster Deposition, Exhibit 88.)

107. Letter from DAPTCO Trust to OMST dated June 1, 2012. (Source: Troster Deposition, Exhibit 89.)

108. Fedex Mailing Receipt, from Justeene Blankenship to World-Wide Auric, dated March 22, 2012. (Source: Troster Deposition, Exhibit 90.)

109. Green Auto stock certificate #5169. (Source: Troster Deposition, Exhibit 91.)

110. Letter from DAPTCO Trust to OMST dated March 29, 2012. (Source: Troster Deposition, Exhibit 85.)

111. Check Images. (Source: Phyllis Comu 2004 Exam, Exhibit 5.)

112. Check Images. (Source: Phyllis Comu 2004 Exam, Exhibit 2.)

113. Voided check from The Barclay Group to Phyllis Comu. (Source: Phyllis Comu 2004 Exam, Exhibit 3.)

114. Allstate Annuity for Sunset Pacific, LP, dated January 12, 2007. (Source: Comu 1st Depo, Exhibit 4.)

115. Handwritten Notes dated December 31, 2006. (Source: Comu 1st Depo, Exhibit 7.)

116. Handwritten Notes. (Source: Comu 1st Depo, Exhibit 17.)

117. Promissory Note by Green Automotive in favor of The Barclay Group, dated January 15, 2010. (Source: Comu 1st Depo, Exhibit 24.)

118. Email from CJ Comu to Emil Lippe, dated May 1, 2006. (Source: Comu 1st Depo, Exhibit 39.)

119. Puration, Inc. stock certificate #1, in the name of Regus Advisors, Inc., dated August 23, 2011. (Source: Comu 1st Depo, Exhibit 37.)

120. Ledger – TBG Banking 2009-2010, Wells Fargo Account Transactions. (Source: Comu 1st Depo, Exhibit 53.)

121. Letter from Synergy Lawyers to CJ Comu re: Establishment of the TKY Trust, dated December 24, 2009. (Source: Comu 1st Depo, Exhibit 61.)

122. Email from Christopher McNeill to CJ Comu dated October 15, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 3; CJ 35488.)

123. Email from CJ Comu to Christopher McNeill dated November 30, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 4; CJ 56463.)

124. Email from CJ Comu to John Troster dated January 13, 2010. (Source: Comu Nov. 2013 Depo, Exhibit 16; CJ 57802.)

125. Email from Dale Changoo to CJ Comu dated January 13, 2010. (Source: Comu Nov. 2013 Depo, Exhibit 12; CJ 40678.)

126. Email from CJ Comu to Lawrence Biggs and Steven Fly, dated December 16, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 6; CJ 57117.)

127. Email to CJ Comu dated March 16, 2010. (Source: Comu Nov. 2013 Depo, Exhibit 27; CJ 66926.)

128. Email from Christopher McNeill to CJ Comu dated November 1, 2010. (Source: Comu Nov. 2013 Depo, Exhibit 34; CJ 45840.)

129. Email from Dave Welch to Robert Kasprzak dated November 20, 2010. (Source: Comu Nov. 2013 Depo, Exhibit 35; CJ 47500.)

130. Email from CJ Comu to Christoipher McNeill dated November 1, 2010. (Source: Comu Nov. 2013 Depo, Exhibit 36; CJ 52319.)

131. Email from Perry West to CJ Comu dated June 2, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 49; CJ 26.)

132. Business Plan for Global Energy Technology Group. (Source: Comu Nov. 2013 Depo, Exhibit 44; CJ 61043.)

133. Email from CJ Comu to Aylin Burdett, dated December 8, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 53; CJ 56745.)

134. Meeting Agenda addressed to CJ Comu and others, dated August 7, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 54; CJ 565.)

135. Email from Perry West to CJ Comu and other recipients, dated August 29, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 55; CJ 73314.)

136. Email from Dave Welch to CJ Comu dated February 9, 2010. (Source: Comu Nov. 2013 Depo, Exhibit 56; CJ 68281.)

137. Email from Robert Feeback, CCd to CJ Comu, dated November 1, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 57; CJ 70795.)

138. Email from Dennis Olson to Kendyl Hanks, with attachment, dated November 25, 2013.

139. Email from Mark Pinter to CJ Comu dated December 9, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 60; CJ 1322.)

140. Regus Advisors, Inc. Powerpoint. (Source: Produced by Debtor August, 2013; DEBTOR 000001-17.)

141. Certificate of Title for Mercedes owned by Sunset Pacific LP. (Source: Produced by Debtor August, 2013; DEBTOR 0000025.)

142. CJ Comu Form W-2 for Regus Advisors Inc. (2012). (Source: Produced by Debtor August, 2013; DEBTOR 0000026-27.)

143. Statement of Account from Synergy Business Lawyers, dated December 30, 2009. (produced by Debtor)

144. Sunset Pacific bank statements through June, 2009 to March, 2010. (produced by Debtor).

145. Regus Advisors letter to Filter2Go Inc., dated May 20, 2011 (produced by Debtor).

146. Regus Advisors letter to Diversity in Promotsion, dated July 1, 2011 (produced by Debtor).

147. Marathon Management 2009 Tax Return, dated April 18, 2011 (produced by Debtor).

148. Marathon Management 2010 Tax Return, dated April 19, 2011 (produced by Debtor).

149. Regis Advisors, Inc. 2010 Tax Return, dated April 20, 2011 (produced by Debtor).

150. Letter from Steven Fly to CJ Comu, dated April 20, 2010 (produced by Debtor).

151. Letter from Brian Rudy of Synergy Business Lawyers to Cem Comu and Aylin Burdett dated January 14, 2010 (produced by Debtor).

152. Confidential Offering Memorandum for Iconosys, Inc. dated January 20, 2011 (produced by Debtor).

153.    Promissory Note for $25,000, dated August 20, 2010, executed by Green Automotive Company Inc. in favor of The Barclay Group Inc. (produced by Debtor).

154.    Letter from Sevim Comu to Cem Comu and Aylin Burdett, dated December 24, 2009 (produced by Debtor).

155.    Green Automotive – List of Active Shares as of October 3, 2011 (produced by Debtor).

156.    Private Placement Memorandum for T3Networks, dated July 1, 2011 (produced by Debtor).

157.    Private Placement Memorandum for Global Energy Technology Group, Inc. dated February 20, 2011 (produced by Debtor).

158.    Finders Fee Agreement between Green Automotive Corporation and The Barclay Group, dated June 15, 2011 (produced by Debtor).

159.    Email from CJ Comu to Steven Fly dated February 12, 2010 (produced by Debtor).

160.    Letter from Compushare Investor Services to The Barclay Group, dated November 7, 2008 (produced by Debtor).

161.    Binder of Organizational Documents of Marathon Management Limited Company, Coral Group, LLC, and Sunset Pacific, LP (produced by Debtor).

162.    Confidential Offering Memorandum for Paragon GPS, Inc., dated December 1, 2010 (produced by Debtor).

163.    Letter from Green Automotive Company to Campus Investments Plc, dated May 16, 2011 (produced by Debtor).

164.    Private Placement Memorandum for Puration, Inc., dated June 15, 2011 (produced by Debtor).

165.    Regis Advisors, Inc. 2011 Tax Return, dated August 7, 2012 (received from Trustee).

166.    Cengiz J. Comu & Phyliss E. Comu, 2005 Individual Tax Return, dated August 6, 2012 (received from Trustee).

167.    Cengiz J. Comu & Phyliss E. Comu, 2006 Individual Tax Return, dated August 6, 2012 (received from Trustee).

168.    Memo from CJ Comu to Dennis Olson, dated February 10, 2010 (received from Trustee).

169.    2007 W-2 issued to CJ Comu from Team Texas II LP (received from Trustee).

170.  2007 W-2 issued to CJ Comu from Odyssey One Source, Inc. (received from Trustee).

171.  2007 Enhanced 1099 for CJ Comu from Wachovia Securities (received from Trustee).

172.  Form 1099-INT for 2007 Tax Year provided to Phyllis Comu from Compass Bank (received from Trustee).

173.  2007 Composite Form 1099 provided to CJ Comu from Emmett A Larkin Company, Inc. (received from Trustee).

174.  2007 Enhanced 1099 – Summary, provided to CJ Comu from Wachovia Securities (received from Trustee).

175.  E*Trade Financial Year End Summary Statement for CJ Comu, dated December 31, 2007 (received from Trustee).

176.  Oppenheimer Consolidated 1099 for CJ Comu, for year-end 2007 (received from Trustee).

177.  2007 Form 1099-INT for Sunset Pacific, LP, provided by Advantage Advisers Xanthus Fund, LLC (received from Trustee).

178.  2007 Tax Reporting Statement from Merrill Lynch for Sunset Pacific LP (received from Trustee).

179.  Marathon Management LLC 2007 Income Tax Return, dated August 4, 2008 with handwritten notes (received from Trustee).

180.  Marathon Management LLC 2008 Income Tax Return, dated August 22, 2008 (received from Trustee).

181.  Marathon Management LLC 2006 Income Tax Return, dated August 6, 2012 (received from Trustee).

182.  Marathon Management LLC 2011 Income Tax Return, dated August 7, 2012 (received from Trustee).

183.  Invoice from Alvin Dahl to CJ Comu, dated August 22, 2009, with attached tax documents for Comu and various entities.  (received from Trustee).

184.  2008 W-2 provided to CJ Comu from Sun Sports & Entertainment (received from Trustee).

185.  2008 W-2 provided to CJ Comu from Odyssey One Source, Inc. (received from Trustee).

186.  2007 W-2 provided to CJ Comu from Team Texas II LP (received from Trustee).

*AUS 536291742v2*

000682

187. 2007 Individual Tax Return for CJ Comu and Phyliss Comu, dated August 4, 2008, with attached W-2 (received from Trustee).

188. CJ Comu, Chase Checking Account statement, January 7, 2010, with check copies (received from Trustee).

189. Business Records Affidavit from Texas Capital Title, dated February 23, 2014, with documents produced by Capital Title marked "Capital Title 000001-287."

190. Affiliated Business Disclosure Statement, dated October 15, 2010, addressed to Continental Partnership Inc. from Seller of 14873 Oaks North Place (Source: Underwood 000022.)

191. Email correspondence between CJ Comu and Lisa Baker re: 14873 Oaks North Place (Source: Underwood 000052-54.)

192. Email correspondence between CJ Comu and Bobby Pelerose re: 14873 Oaks North Place (Source: Underwood 000066-70.)

193. Email correspondence among CJ Comu and Pelerose re: closing for 14873 Oaks North Place (Source: Underwood 000076-81.)

194. Email correspondence among Bobby Pelerose and Lisa Kelley re: closing for 14873 Oaks North Place (Source: Underwood 000099-103.)

195. Email correspondence among Lisa Baker and Lisa Kelley re: purchase of 14873 Oaks North Place (Source: Underwood 000136-138.)

196. Disbursement records re: purchase of 14873 Oaks North Place (Source: Underwood 000156-160.)

197. Continental Partnership, Inc. documents provided as part of purchase of 14873 Oaks North Place (Source: Underwood 000172-178.)

198. American Home Shield home warranty documents related to 14873 Oaks North Place (Source: Underwood 000181-193.)

199. Residential Sale Contract for 14873 Oaks North Place, dated September 18, 2010 (Source: Underwood 000240-48.)

200. Promissory Note for $50,000 executed by CJ Comu in favor of Marathon Management Inc., dated June 23, 2012 (DEBTOR 000058-59.)

201. AAA Life Insurance Policy for Cengiz J. Comu, statement dated May 17, 2013 (DEBTOR 000060-62.)

202. Stock Purchase Agreement between The Barclay Group and Sunset Pacific LP, dated January 10, 2010 (DEBTOR 000077-78.)

203.   Residential Least for 14873 Oaks North Place, dated October 15, 2010 (DEBTOR 000082-95.)

204.   Green Automotive Company Corporation, Financial Statements as of December 31, 2009, and for the period April 28, 2009 through December 31, 2009 (Public OTC Filing).

205.   Green Automotive Company, Form 10-K, for the fiscal year ended December 31, 2012 (SEC public filing).

206.   Escrow Agreement by and between The Barclay Group, Inc. and OMST dated June 16, 2011, with handwritten notes revising as of November 10, 2011.   (Debtor electronic production).

207.   Puration, Inc., Annual Report, for the Year Ended December 31, 2011, filed February 29, 2012 (Public OTC Filing).

208.   Algae International Group, Inc. investment presentation powerpoint, Prepared by Regus Capital Fund LP (Algae International website).

209.   Article: Ann Marie Shambaugh, Latino fighters to go Mano a Mano in Mesquite, dated July 8, 2009.

210.   Regus Advisors Inc. – website capture. (Source: www.regusadvisors.com)

211.   The Barclay Group – website capture.  (Source: www.thebarclaygroup.com)

212.   Green Automotive Company, Form 10-Q, for the fiscal year ended March 31, 2013 (SEC public filings).

213.   Email from Tunch Kashif to CJ Comu, with attachments, dated May 29, 2009.  (CJ 5-7.)

214.   Email from Dave Welch to CJ Comu, with attachments, dated May 31, 2009.  (CJ 18-22.)

215.   Email from Greg Gordon to CJ Comu, dated June 1, 2009.  (Source: CJ 24.)

216.   Email from Greg Gordon to CJ Comu, dated June 5, 2009.  (Source: CJ 46.)

217.   Email from Tunch Kashif to CJ Comu, with attachments, dated June 8, 2009.  (CJ 70-71.)

218.   Email from Tunch Kashif to CJ Comu, with attachments, dated June 9, 2009.  (CJ 78-79.)

219.   Email from Tunch Kashif to CJ Comu, dated June 9, 2009.  (CJ 84.)

220.   Email from Neal Epstein to CJ Comu, dated June 11, 2009.  (CJ 100.)

221.   Email from Dave Welch to CJ Comu and other recipients, with attachments, dated June 11, 2009.  (CJ 102-114.)

222.   Email from Neal Epstein to CJ Comu, dated June 12, 2009.  (CJ 115.)

223.   Email from Tunch Kashif to birolnadir@gmail.com, with attachments, dated June 12, 2009.  (CJ 117-18.)

224.   Email from Dave Welch to CJ Comu, dated June 15, 2009.  (CJ 148.)

225.   Email from Dave Welch to CJ Comu and other recipients, with attachments, dated June 22, 2009.  (CJ 187-88.)

226.   Email from Tunch Kashif to CJ Comu and other recipients, with attachments, dated June 24, 2009.  (CJ 200-01.)

227.   Email from Dave Welch to CJ Comu, with attachments, dated June 28, 2009.  (CJ 224-25.)

228.   Email from Dave Welch to CJ Comu and John Potter, with attachments, dated June 29, 2009.  (CJ 244-47.)

229.   Email from Xpress Copying to CJ Comu, with attachments, dated July 6, 2009.  (CJ 278-79.)

230.   Email from John Potter to CJ Comu, dated Jul 11, 2009.  (Source: CJ 311.)

231.   Email from Dave Welch to CJ Comu, dated July 11, 2009.  (CJ 313.)

232.   Email from Dave Knight to CJ Comu and other recipients, with attachments, dated July 24, 2009.  (CJ 433-35.)

233.   Email from Dave Welch to CJ Comu and Perry West, dated August 2, 2009.  (CJ 491.)

234.   Email from Dave Welch to CJ Comu, with attachments, dated August 8, 2009.  (CJ 564-65.)

235.   Email from Al Dias to CJ Comu, dated August 10, 2009.  (Source: CJ 572.)

236.   Email from Tunch Kashif to CJ Comu, with attachments, dated August 18, 2009.  (CJ 639-40.)

237.   Email from Tunch Kashif to CJ Comu and other recipient, with attachments, dated August 18, 2009.  (CJ 643-44.)

238.   Email from Tunch Kashif to CJ Comu, with attachments, dated August 23, 2009.  (CJ 681-83.)

239. Email from Harry Chauhan to CJ Comu, dated August 25, 2009. (Source: CJ 708.)

240. Email from Dave Welch to CJ Comu, dated August 27, 2009. (CJ 722.)

241. Email from Dave Welch to CJ Comu and John Potter, with attachments, dated August 28, 2009. (CJ 726-28.)

242. Email from Dave Welch to CJ Comu and John Potter, with attachments, dated August 28, 2009. (CJ 730-31.)

243. Email from Dave Welch to CJ Comu, with attachments, dated August 29, 2009. (CJ 739-40.)

244. Email from Chris (tradin1@airmail.net) to CJ Comu, dated August 31, 2009. (CJ 746.)

245. Email from Troy Phillips to CJ Comu and other recipients, dated September 3, 2009. (CJ 797.)

246. Email from Troy Phillips to CJ Comu, dated September 7, 2009. (CJ 819.)

247. Email from Jean Marc Lopez to CJ Comu, dated September 8, 2009. (CJ 853.)

248. Email from Troy Phillips to CJ Comu, with attachments, dated September 10, 2009. (CJ 885-88.)

249. Email from Steven Fly to CJ Comu, with attachments, dated September 11, 2009. (CJ 918-19.)

250. Email from Scott Harkness to CJ Comu, with attachments, dated September 14, 2009. (CJ 924-27.)

251. Email from Steven Fly to CJ Comu, with attachments, dated September 14, 2009. (CJ 928-29.)

252. Email from Steven Fly to CJ Comu, with attachments, dated September 14, 2009. (CJ 930-32.)

253. Email from Steven Fly to CJ Comu, with attachments, dated September 16, 2009. (CJ 945-47.)

254. Email from Steven Block to CJ Comu and other recipients, dated October 13, 2009. (CJ 1057.)

255. Email from Fawn Gomez to CJ Comu and other recipients, with attachments, dated November 3, 2009. (CJ 1174-75.)

256. Email from Fawn Gomez to CJ Comu and other recipients, with attachments, dated November 10, 2009. (Source: CJ 1202-04.)

257.    Email from Laurence Biggs to CJ Comu, dated November 18, 2009.   (Source: CJ 1234.)

258.    Email from Aylin Burdett to CJ Comu, dated November 18, 2009.   (Source: CJ 1235.)

259.    Email from Laurence Biggs to CJ Comu, dated November 18, 2009.   (Source: CJ 1236.)

260.    Email from Dwight Hilton to CJ Comu, dated November 18, 2009.   (Source: CJ 1237.)

261.    Email from Mark Maston to CJ Comu, dated November 18, 2009.  (Source: CJ 1238.)

262.    Email from bt2119@gmail.com to CJ Comu, dated November 18, 2009.  (Source: CJ 1239.)

263.    Emails from Heather Jackson to CJ Comu, with attachments, November 20, 2009. (Source: CJ 1251-53.)

264.    Email from Laurence Biggs to CJ Comu, dated December 4, 2009.   (Source: CJ 1289.)

265.    Email from Laurence Biggs.com to CJ Comu and Steven Fly, dated December 4, 2009.  (Source: CJ 1290.)

266.    Email from Laurence Biggs.com to CJ Comu and Steven Fly, with attachments, dated December 4, 2009.  (Source: CJ 1291-92.)

267.    Email from Laurence Biggs.com to CJ Comu and Steven Fly, dated December 4, 2009.  (Source: CJ 1293.)

268.    Email from Tunch Kashif to CJ Comu, dated December 7, 2009.  (CJ 1305.)

269.    Email from Laurence Biggs to CJ Comu, with attachments, dated December 8, 2009. (Source: CJ 1308-09.)

270.    Email from Laurence Biggs to CJ Comu, with attachments, dated December 8, 2009. (Source: CJ 1311-12.)

271.    Email from Laurence Biggs to CJ Comu, with attachments, dated December 8, 2009. (Source: CJ 1314-15.)

272.    Email from Laurence Biggs to CJ Comu and Steven Fly, dated December 8, 2009. (Source: CJ 1316.)

273. Email from Mark Pinter to CJ Comu, with attachments, dated December 8, 2009. (Source: CJ 1322-26.)

274. Email from Fawn Gomez to CJ Comu, dated December 9, 2009. (CJ 1327.)

275. Email from Steven Block to CJ Comu and other recipients, dated December 9, 2009. (CJ 1328.)

276. Emails to/from btvproduction@aol.com and CJ Comu, dated December 13, 2009 (CJ 1336.)

277. Email from Chas Gordon to CJ Comu, with attachments, dated April 13, 2010. (Source: CJ 1789-92.)

278. Email from David Knight to CJ Comu and other recipients, with attachments, dated September 24, 2010. (Source: CJ 2527-33.)

279. Email from Tunch Kashif to CJ Comu and other recipients, with attachments, dated September 24, 2010. (CJ 2534-35.)

280. Email from John Harris to CJ Comu and other recipients, dated October 20, 2010. (CJ 2684.)

281. Email from John Harris to CJ Comu and other recipients, dated October 20, 2010. (CJ 2686.)

282. Email from David Knight to CJ Comu and other recipients, with attachments, dated October 23, 2010. (Source: CJ 2704-07.)

283. Email from David Knight to CJ Comu and other recipients, with attachments, dated November 21, 2010. (CJ 2851-53.)

284. Email from Bryan Emerson to CJ Comu, dated December 9, 2010. (CJ 2919.)

285. Email from Ian Stuart to CJ Comu, with attachments, dated March 8, 2010. (CJ 3985-86.)

286. Email from Dave Welch to CJ Comu, with attachments, dated March 9, 2010. (CJ 4113-14.)

287. Email from Reuben Anstock to CJ Comu and other recipients, dated March 12, 2010. (CJ 4381.)

288. Email from Patrick Kelly to CJ Comu, with attachments, dated March 13, 2010. (CJ 4399-4402.)

289. Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated March 15, 2010. (CJ 4430-33.)

290. Email from Charlotte Jacob to CJ Comu and other recipients, dated March 15, 2010. (CJ 4435.)

291. Email from Mansion House Capital to CJ Comu, with attachments, dated March 18, 2010. (CJ 4623-26.)

292. Email from Charlotte Jacob to CJ Comu and other recipients, dated March 24, 2010. (CJ 4932.)

293. Email from Steven Fly to CJ Comu, with attachments, dated March 25, 2010. (CJ 4948-50.)

294. Email from Charlotte Jacob to CJ Comu and other recipients, dated March 25, 2010. (CJ 4968.)

295. Email from Charlotte Jacob to CJ Comu and other recipients, dated March 29, 2010. (CJ 5150.)

296. Email from Charlotte Jacob to CJ Comu and other recipients, dated March 29, 2010. (CJ 5155.)

297. Email from Perry West to CJ Comu and other recipients, dated March 29, 2010. (CJ 5159.)

298. Email from Perry West to CJ Comu, dated March 29, 2010. (CJ 5170.)

299. Email from Charlotte Jacob to CJ Comu and other recipients, dated March 30, 2010. (CJ 5282.)

300. Email from David Knight to CJ Comu and other recipients, with attachments, dated March 31, 2010. (CJ 5349-51.)

301. Email from John Potter to CJ Comu, with attachments, dated April 1, 2010. (CJ 5433-34.)

302. Email from Mansion House Capital to CJ Comu and Garry McCann, dated April 5, 2010. (CJ 5659.)

303. Email from Mansion House Capital to CJ Comu and Garry McCann, dated April 6, 2010. (CJ 5686.)

304. Email from Mansion House Capital to CJ Comu, with attachments, dated April 6, 2010. (CJ 5687-88.)

305. Email from CJ Comu to Jean Marc Lopez, with attachments, dated March 30, 2010. (CJ 5756-61.)

306. Email from Charlotte Jacob to CJ Comu and other recipients, dated April 23, 2010. (CJ 6926.)

307. Email from Charlotte Jacob to CJ Comu and other recipients, dated April 23, 2010. (CJ 6931.)

308.   Email from Charlotte Jacob to CJ Comu and other recipients, dated April 23, 2010. (CJ 6946.)

309.   Email from Mansion House Capital to CJ Comu, with attachments, dated April 24, 2010. (CJ 6994-95.)

310.   Email from Wells Fargo Online to CJ Comu, dated April 26, 2010.  (CJ 7090.)

311.   Email from John Potter to CJ Comu, dated April 27, 2010.  (CJ 7145.)

312.   Email from Garry McCann to CJ Comu and other recipients, dated April 30, 2010. (CJ 7513.)

313.   Email from Marc Bryant to CJ Comu, dated May 5, 2010.  (CJ 7908.)

314.   Email from Marc Bryant to CJ Comu and other recipients, with attachments, dated May 5, 2010.  (CJ 7910-11.)

315.   Email from Marc Bryant to CJ Comu and other recipients, with attachments, dated May 6, 2010.  (CJ 8009-10.)

316.   Email from Charlotte Jacob to CJ Comu and other recipients, dated May 10, 2010. (CJ 8188.)

317.   Email from Dave Welch to CJ Comu and other recipients, with attachments, Dated May 10, 2010.  (CJ 8389-.95)

318.   Email from Charlotte Jacob to CJ Comu and other recipients, dated May 14, 2010. (CJ 8544.)

319.   Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated May 17, 2010. (CJ 8700-8702.)

320.   Email from Charlotte Jacob to CJ Comu and other recipients, dated May 17, 2010. (CJ 8715.)

321.   Email from Charlotte Jacob to CJ Comu and other recipients, dated May 18, 2010. (CJ 8716.)

322.   Email from Charlotte Jacob to CJ Comu and other recipients, dated May 19, 2010. (CJ 8934.)

323.   Email from Wells Fargo Online to CJ Comu, dated  May 23, 2010.  (CJ 9296.)

324.   Email from Wells Fargo Online to CJ Comu, dated  May 24, 2010.  (CJ 9330.)

325.   Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated May 25, 2010. (CJ 9399-9400.)

326.   Email from Charlotte Jacob to CJ Comu and other recipients, dated May 25, 2010. (CJ 9412.)

327.   Email from Dave Welch to CJ Comu, with attachments, dated June 1, 2010.  (CJ 9697-99.)

328.   Email from Marc Bryant to CJ Comu, dated June 3, 2010.  (CJ 9981.)

329.   Email from Dave Welch to CJ Comu and other recipients, dated June 13, 2010.  (CJ 10536.)

330.   Email from "admin@wwauric" to CJ Comu and other recipients, dated June 14, 2010. (CJ 10633.)

331.   Email from Reuben Anstock to CJ Comu and other recipients, with attachments, dated June 16, 2010. (CJ 10738-41.)

332.   Email from Perry West to CJ Comu, with attachments, dated June 17, 2010.  (CJ 10839-40.)

333.   Email from Perry West to CJ Comu and other recipients, with , dated June 17, 2010. (CJ 10847-48.)

334.   Email from Michelle Anderson to CJ Comu, dated  June 18, 2010.  (CJ 10900.)

335.   Email from Michelle Anderson to CJ Comu, dated  June 18, 2010.  (CJ 10915.)

336.   Email from GoDaddy.com to CJ Comu, dated  June 22, 2010.  (CJ 11141.)

337.   Email from DomainsbyProxy.com to CJ Comu, dated  June 22, 2010.  (CJ 11142.)

338.   Email from GoDaddy.com to CJ Comu, dated  June 22, 2010.  (CJ 11150.)

339.   Email from Dave Welch to CJ Comu, dated June 22, 2010.  (CJ 11153.)

340.   Email from Jonathan Alexander to CJ Comu, dated June 23, 2010.  (CJ 11180.)

341.   Email from Reuben Anstock to CJ Comu and other recipients, dated June 28, 2010. (CJ 11493.)

342.   Email from Priya Beeharry to CJ Comu and other recipients, dated June 29, 2010. (CJ 11569.)

343.   Email from Laura Zaber to CJ Comu, with attachments, dated June 30, 2010.  (CJ 11670-71.)

344.   Email from Xpress Copying to CJ Comu, with attachments, dated June 30, 2010.  (CJ 11718-20.)

345. Email from Peter Knight to CJ Comu, with attachments, dated July 1, 2010. (CJ 11817-19.)

346. Email from Maggie Kwong Chian to CJ Comu and other recipients, dated July 2, 2010. (CJ 11843.)

347. TrustFax email notification to CJ Comu, with attachment, dated July 2, 2010. (CJ 11972-28.)

348. Email from Bank of America to CJ Comu, dated July 2, 2010. (CJ 11930.)

349. Email from Nevada SOS to CJ Comu, dated July 2, 2010. (CJ 11931.)

350. Email from Bank of America to CJ Comu, dated July 2, 2010. (CJ 11932.)

351. Email from Peter Knight to CJ Comu and Dave Welch, with attachments, dated July 7, 2010. (CJ 12340-41.)

352. Email from Peter Knight to CJ Comu and other recipients, dated July 7, 2010. (CJ 12342.)

353. Email from Perry West to CJ Comu and other recipients, with attachments, dated July 14, 2010. (CJ 12822-24.)

354. Email from Dave Welch to CJ Comu and March Bryant, with attachments, dated July 14, 2010. (CJ 12839-45.)

355. Email from Perry West to CJ Comu and other recipients, with attachments, dated July 28, 2010. (CJ 13610-11.)

356. Email from Maggie Kwong Chian to CJ Comu and other recipients, dated August 3, 2010. (CJ 13911.)

357. Email from John Potter to CJ Comu and other recipients, dated August 5, 2010 (CJ 14105.)

358. Email from Reuben Anstock to CJ Comu and other recipients, with attachments, dated August 6, 2010. (CJ 14151-52.)

359. Email from Aylin Burdett to CJ Comu, dated August 11, 2010. (CJ 14421.)

360. Email from Dave Welch to Perry West, with attachments, dated August 15, 2010. (CJ 14567-68.)

361. Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated August 16, 2010. (CJ 14584-85.)

362. Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated August 17, 2010. (CJ 14675-76.)

363. Email from Reuben Anstock to CJ Comu and other recipients, with attachments, dated August 24, 2010. (CJ 15341-46.)

364. Email from Edward Baxter to CJ Comu, dated August 31, 2010. (CJ 15783.)

365. Email from Cem Comu to Cigdem Beykoylu, dated September 2, 2010. (CJ 15917.)

366. Email from Cem Comu to CJ Comu, dated September 2, 2010 (CJ 15920.)

367. Email from Cem Comu to CJ Comu, with attachments, dated September 3, 2010. (CJ 16016-17.)

368. Email from Regus.com to CJ Comu, dated September 13, 2010. (CJ 16441.)

369. Email from CJ Comu to Christopher McNeill, with attachments, dated October 28, 2010. (CJ 16596-97.)

370. Email from Michael Pierce, dated September 14, 2010. (CJ 16640.)

371. Email from Cem Comu to CJ Comu, with attachments, dated September 16, 2010. (CJ 16771-75.)

372. Email from CJ Comu to Cem Comu, with attachments, dated March 18, 2010. (CJ 17643-46.)

373. Email from CJ Comu to Mansion House Capital, dated March 18, 2010. (CJ 17647.)

374. Email from CJ Comu to Timothy Kingsbury, dated March 23, 2010. (CJ 17761-62.)

375. Email from CJ Comu to Al Dahl, with attachments, dated March 23, 2010. (CJ 17768-69.)

376. Email from CJ Comu to Steven Block and Christopher McNeill, with attachments, dated March 23, 2010. (CJ 17770-71.)

377. Email from CJ Comu to Dave Welch, with attachments, dated March 23, 2010. (CJ 17787-92.)

378. Email from CJ Comu to Charlotte Jacob and other recipients, with attachments, dated March 24, 2010. (CJ 17826-32.)

379. Email from CJ Comu to Charlotte Jacob and other recipients, with attachments, dated March 24, 2010. (CJ 17845-46.)

380. Email from CJ Comu to Charlotte Jacob and other recipients, dated March 24, 2010. (CJ 17849.)

381. Email from CJ Comu to Patrick Kelly and Mansion House Capital, with attachments, dated March 24, 2010. (CJ 17851-52.)

382.   Email from CJ Comu to Cem Comu, with attachments, dated March 24, 2010.  (CJ 17853-56.)

383.   Email from CJ Comu to Charlotte Jacob and other recipients, with attachments, dated March 25, 2010.  (CJ 17874-75.)

384.   Email from CJ Comu to Charlotte Jacob and other recipients, with attachments, dated March 29, 2010.  (CJ 17940-41.)

385.   Email from CJ Comu to Perry West and other recipients, dated March 29, 2010.  (CJ 17934.)

386.   Email from CJ Comu to Perry West and other recipients, dated March 29, 2010.  (CJ 17946.)

387.   Email from CJ Comu to Charlotte Jacob and other recipients, with attachments, dated March 30, 2010.  (CJ 17988-89.)

388.   Email from CJ Comu to Troy Phillips and Reed Wallace, with attachments, dated April 13, 2010.  (CJ 18447-48.)

389.   Email from CJ Comu to Ann Boureau and other recipients, with attachments, dated April 23, 2010.  (CJ 18799-18800.)

390.   Email from CJ Comu to Cem Comu, with attachments, dated April 24, 2010.  (CJ 18829-30.)

391.   Email from CJ Comu to Jonathan Alexander, dated April 29, 2010.  (CJ 18970.)

392.   Email from CJ Comu to Ann Boureau and other recipients, dated May 2, 2010.  (CJ 19033.)

393.   Email from CJ Comu to Dave Welch and John Potter, dated May 3, 2010.  (CJ 19043.)

394.   Email from CJ Comu to Dave Welch and John Potter, with attachments, dated May 3, 2010.  (CJ 19047-48.)

395.   Email from CJ Comu to Dave Welch, with attachments, dated May 3, 2010.  (CJ 19049-50.)

396.   Email from CJ Comu to Dave Welch, with attachments, dated May 4, 2010.  (CJ 19087-88.)

397.   Email from CJ Comu to Dave Welch and Peter Knight, dated May 12, 2010.  (CJ 19501.)

398.   Email from CJ Comu to Charlotte Jacob and other recipients, dated May 14, 2010.  (CJ 19554.)

399.    Email from CJ Comu to Charlotte Jacob and other recipients, with attachments, dated May 17, 2010.  (CJ 19657-58.)

400.    Email from CJ Comu to Charlotte Jacob, dated May 18, 2010.  (CJ 19662.)

401.    Email from CJ Comu to Reed Wallace, with attachments, dated June 3, 2010.  (CJ 20125-26.)

402.    Email from CJ Comu to Marc Bryant and Dave Welch, with attachments, dated June 3, 2010.  (CJ 20133-34.)

403.    Email from CJ Comu to Marc Bryant and Dave Welch, dated June 3, 2010.  (CJ 20138.)

404.    Email from CJ Comu to Perry West and other recipients, with attachments, dated June 8, 2010.  (CJ 20203-204.)

405.    Email from CJ Comu to Tunch Kashif, with attachments, dated June 8, 2010.  (CJ 20205-06.)

406.    Email from CJ Comu to John Potter, with attachments, dated June 8, 2010.  (CJ 20214-15.)

407.    Email from CJ Comu to "admin@wwauric.com" and other recipients, with attachments, dated June 11, 2010.  (CJ 20274-76.)

408.    Email from CJ Comu to Charlotte Jacob and other recipients, with attachments, dated June 13, 2010.  (CJ 20309-11.)

409.    Email from CJ Comu to Dave Welch, with attachments, dated June 17, 2010.  (CJ 20471-72.)

410.    Email from CJ Comu to Michelle Anderson, dated June 18, 2010.  (CJ 20546.)

411.    Email from CJ Comu to Michelle Anderson, dated June 18, 2010.  (CJ 20547.)

412.    Email from CJ Comu to Troy M2, dated June 19, 2010.  (CJ 20550.)

413.    Email from CJ Comu to Jonathan Alexander, dated June 21, 2010.  (CJ 20595.)

414.    Email from CJ Comu to Dave Welch, dated June 28, 2010.  (CJ 20868.)

415.    Email from CJ Comu to Priya Beeharry and other recipients, with attachments, dated June 29, 2010.  (CJ 21078-82.)

416.    Email from CJ Comu to Spencer Hartstein, dated June 29, 2010.  (CJ 21106.)

417.    Email from CJ Comu to Xpress Copy, with attachments, dated June 29, 2010.  (CJ 21125-26.)

418. Email from CJ Comu to Marc Bryant and Dave Welch, with attachments, dated July 1, 2010. (CJ 21225-31.)

419. Email from CJ Comu to Peter Knight, dated July 4, 2010. (CJ 21382.)

420. Email from CJ Comu to Peter Knight, dated July 4, 2010. (CJ 21383.)

421. Email from CJ Comu to Peter Knight, dated July 4, 2010. (CJ 21386.)

422. Email from CJ Comu to Peter Knight, dated July 4, 2010. (CJ 21387.)

423. Email from CJ Comu to Peter Knight, dated July 9, 2010. (CJ 21751.)

424. Email from Tunch Kashif to CJ Comu and other recipients, with attachments, dated April 7, 2009. (CJ 22293-306.)

425. Email from Paragon GPS to CJ Comu, with attachments, dated March 18, 2009. (CJ 22522-23.)

426. Email from Joseph Visconti to CJ Comu, dated May 6, 2010. (CJ 22648.)

427. Email from Bruce Baker to CJ Comu and other recipients, with attachments, dated March 18, 2009. (CJ 22733-37.)

428. Email from Edward Vakser to CJ Comu, with attachments, dated March 3, 2009. (CJ 22885-91.)

429. Email from Robert Feeback to CJ Comu and other recipients, dated February 17, 2009. (CJ 22973.)

430. Email from Paragon GPS to CJ Comu, with attachments, dated February 13, 2009. (CJ 23027-28.)

431. Email from Tunch Kashif to various recipients, with attachments, dated January 1, 2009. (CJ 23145-47.)

432. Email from Tunch Kashif to CJ Comu, dated January 26, 2009. (CJ 23173.)

433. Email from Tunch Kashif to CJ Comu and other recipients, with attachments, dated May 28, 2009. (CJ 23398-99.)

434. Email from Clyde Gentry to CJ Comu, with attachments, dated June 11, 2009. (CJ 25386-87.)

435. Email from Clyde Gentry to CJ Comu and other recipients, with attachments, dated June 18, 2009. (CJ 26172-83.)

436. Email from CJ Comu to Zach Kozak, dated July 20, 2009. (Source: CJ 30311.)

437. Email from Zach Kozak to CJ Comu, dated July 20, 2009.  (Source: CJ 30318.)

438.

439. Email from Zach Kozak to CJ Comu, dated July 20, 2009.  (Source: CJ 30320.)

440. Email from Zach Kozak to CJ Comu, dated July 28, 2009.  (Source: CJ 31170.)

441. Email from Zach Kozak to CJ Comu, dated July 28, 2009.  (Source: CJ 31220.)

442. Email from CJ Comu to Dennis Olson, dated August 7, 2009.  (CJ 31600.)

443. Email from Alex Miller to CJ Comu, with attachments, dated August 7, 2009 (Source: CJ 31609-12.)

444. Email from Dennis Olson to CJ Comu, dated August 9, 2009.  (Source: CJ 31620.)

445. Email from CJ Comu to Dennis Olson, dated August 9, 2009.  (Source: CJ 31621.)

446. Email from Dennis Olson to CJ Comu, dated August 9, 2009.  (Source: CJ 31622.)

447. Email from CJ Comu to Al Dias, dated August 10, 2009.  (Source: CJ 31644.)

448. Email from CJ Comu to Lloyd Ward and other recipients, dated August 10, 2009 (Source: CJ 31645.)

449. Email from Lloyd Ward to CJ Comu, dated August 10, 2009.  (Source: CJ 31650.)

450. Email from CJ Comu to Dennis Olson, with attachments, dated August 14, 2009. (Source: CJ 31766-68.)

451. Email from CJ Comu to Dennis Olson, dated August 9, 2009.  (CJ 31621.)

452. Email from Sergei Lomako to CJ Comu and other recipients, with attachments, August 12, 2009.  (CJ 31750-51.)

453. Email from Dennis Olson to CJ Comu, with attachments, dated August 14, 2009.  (CJ 31766-68.)

454. Email from CJ Comu to Dennis Olson, with attachments, dated August 17, 2009. (Source: CJ 31837-38.)

455. Email from Dennis Olson to CJ Comu, dated August 18, 2009.  (Source: CJ 31906.)

456. Email from CJ Comu to Dennis Olson, dated August 18, 2009.  (Source: CJ 31908.)

457. Email from CJ Comu to Matthew Edmund and other recipients, dated August 20, 2009.  (CJ 31933.)

458. Email from Matthew Edmund to CJ Comu and other recipients, dated August 21, 2009. (CJ 31952.)

459. Email from CJ Comu to John Potter and other recipients, with attachments, dated August 26, 2009. (CJ 32055-56.)

460. Email from Troy Phillips to CJ Comu, with attachments, dated August 27, 2009. (CJ 32121-22.)

461. Email from CJ Comu to Chris Roundtree and other recipients, with attachments, dated August 31, 2009. (CJ 32401-402.)

462. Email from CJ Comu to Sergei Lomako and other recipients, with attachments, dated September 2, 2009. (CJ 32533-34.)

463. Email from CJ Comu to Robert Wiley and other recipients, with attachments, dated September 2, 2009. (CJ 32543-44.)

464. Email from CJ Comu to Dave Welch and Dave Knight, with attachments, dated September 2, 2009. (CJ 32555-56.)

465. Email from CJ Comu to Robert Wiley, with attachments, dated September 3, 2009. (CJ 32606-607.)

466. Email from Bruce Scambler to CJ Comu, with attachments, dated September 3, 2009. (CJ 32618-19.)

467. Email from Bruce Scambler to CJ Comu, with attachments, dated September 3, 2009. (CJ 32620-21.)

468. Email from CJ Comu to Robert Wiley and Dave Welch, dated September 3, 2009. (CJ 32629.)

469. Email from CJ Comu to Dennis Olson, dated September 3, 2009. (Source: CJ 32637.)

470. Email from CJ Comu to Gary Zinn and Dave Welch, with attachments, dated September 3, 2009. (CJ 32640-41.)

471. Email from Dennis Olson to CJ Comu, dated September 4, 2009. (Source: CJ 32648.)

472. Email from CJ Comu to Dennis Olson, dated September 4, 2009. (Source: CJ 32650.)

473. Email from Dennis Olson to CJ Comu, dated September 4, 2009. (Source: CJ 32652.)

474. Email from CJ Comu to Bruce Scambler, with attachments, dated September 4, 2009. (CJ 32693-94.)

475. Email from Bruce Scambler to CJ Comu, dated September 4, 2009. (CJ 32696.)

476. Email from CJ Comu to Bruce Scambler, dated September 4, 2009. (CJ 32697.)

477. Email from CJ Comu to Dennis Olson, dated September 6, 2009. (Source: CJ 32719.)

478. Email from CJ Comu to Dave Welch and other recipients, dated September 8, 2009 (CJ 32819.)

479. Email from CJ Comu to Phillip Offill and other recipients, dated September 8, 2009. (CJ 32825.)

480. Email from Chris Roundtree to CJ Comu and other recipients, with attachments, dated September 8, 2009. (CJ 32868-69.)

481. Email from CJ Comu to Chris Roundtree and Dave Welch, dated September 8, 2009. (CJ 32915.)

482. Email from Chris Roundtree to CJ Comu, with attachments, dated September 8, 2009. (CJ 32916-18.)

483. Email from CJ Comu to FedEx, with attachments, dated September 9, 2009. (CJ 32945-47.)

484. Email from CJ Comu to FedEx, with attachments, dated September 9, 2009. (CJ 32948-49.)

485. Email from CJ Comu to FedEx, with attachments, dated September 9, 2009. (CJ 32953-54.)

486. Email from CJ Comu to Chris Roundtree, dated September 9, 2009. (CJ 32958.)

487. Email from CJ Comu to Chris Roundtree, dated September 9, 2009. (CJ 32960.)

488. Email from Bolisha Enaibe to CJ Comu, dated September 8, 2009. (Source: CJ 32938.)

489. Email from CJ Comu to Troy Phillips, dated September 11, 2009. (CJ 33086.)

490. Email from Troy Phillips to CJ Comu, with attachments, dated September 11, 2009. (CJ 33142-43.)

491. Email from CJ Comu to Bruce Scambler and Steven Fly, with attachments, dated September 11, 2009. (CJ 33151-53.)

492. Email from CJ Comu to Chris Roundtree and Dave Welch, with attachments, September 11, 2009. (CJ 33173-74.)

493. Email from Steven Evans to CJ Comu and Steve Fly, with attachments, dated September 12, 2009. (CJ 33191-92.)

494. Email from CJ Comu to Dave Welch, with attachments, dated September 13, 2009. (CJ 33210-11.)

495. Email from CJ Comu to Bruce Scambler and Steven Fly, with attachments, dated September 14, 2009. (CJ 33238-39.)

496. Email from CJ Comu to Steve Fly, with attachments, September 14, 2009. (CJ 33248-51.)

497. Email from Phillip Offill to CJ Comu and other recipients, dated September 15, 2009. (CJ 33343.)

498. Email from CJ Comu to Phillip Offill and other recipients, with attachments, dated September 15, 2009. (CJ 33353-55.)

499. Email from CJ Comu to Phillip Offill and other recipients, dated September 15, 2009. (CJ 33356.)

500. Email from Phillip Offill to CJ Comu, dated September 15, 2009. (CJ 33357.)

501. Email from CJ Comu to Phillip Offill, dated September 15, 2009. (CJ 33361.)

502. Email from Chris Roundtree to CJ Comu, with attachments, dated September 15, 2009. (CJ 33369-71.)

503. Email from CJ Comu to Phillip Offill and Dave Welch, with attachments, dated September 15, 2009. (CJ 33364-76.)

504. Email from Phillip Offill to CJ Comu, dated September 15, 2009. (CJ 33377.)

505. Email from CJ Comu to Phillip Offill, dated September 15, 2009. (CJ 33378.)

506. Email from Phillip Offill to CJ Comu, dated September 15, 2009. (CJ 33379.)

507. Email from Dave Welch to CJ Comu, dated September 15, 2009. (CJ 33382.)

508. Email from CJ Comu to Bruce Scambler, with attachments, dated September 17, 2009. (CJ 33490-93.)

509. Email from Michael Coogan to CJ Comu, dated September 17, 2009. (CJ 33532.)

510. Email from CJ Comu to Michael Coogan, dated September 17, 2009. (CJ 33534.)

511.   Email from CJ Comu to Tunch Kashif and Patrick Kelly, dated September 18, 2009. (CJ 33538.)

512.   Email from Michael Coogan to CJ Comu, dated September 21, 2009.  (CJ 33722.)

513.   Email from Simon Ferguson to CJ Comu, with attachments, dated September 22, 2009.  (CJ 33773-74.)

514.   Email from CJ Comu to Michael Coogan, dated September 22, 2009.  (CJ 33931.)

515.   Email from Michael Coogan to CJ Comu, dated September 22, 2009.  (CJ 33932.)

516.   Email from Chris Roundtree to CJ Comu, dated September 22, 2009.  (CJ 33943.)

517.   Email from Steven Fly to CJ Comu, dated September 23, 2009.  (CJ 33974.)

518.   Email from CJ Comu to Steven Fly, dated September 23, 2009.  (CJ 34022.)

519.   Email from Steven Fly to CJ Comu, dated September 23, 2009.  (CJ 34023.)

520.   Email from CJ Comu to Dave Welch, with attachments, September 23, 2009.  (CJ 34047-48.)

521.   Email from Simon Ferguson to CJ Comu and Paul Alexander, with attachments, dated September 24, 2009.  (CJ 34095-96.)

522.   Email from CJ Comu to Lester Bedford, with attachments, September 24, 2009.  (CJ 34097-98.)

523.   Email from Lester Bedford to CJ Comu, dated September 27, 2009.  (CJ 34190.)

524.   Email from Michael Coogan to CJ Comu, dated September 29, 2009.  (CJ 34316.)

525.   Email from CJ Comu to Michael Coogan, dated September 29, 2009.  (CJ 34327.)

526.   Email from CJ Comu to Jean Marc Lopez and other recipients, with attachments, September 29, 2009.  (CJ 34331-35.)

527.   Email from Simon Ferguson to CJ Comu, dated October 1, 2009.  (CJ 34521.)

528.   Email from Simon Ferguson to CJ Comu, dated October 1, 2009.  (CJ 34523.)

529.   Email from John Florey to CJ Comu and Jean Marc Lopez, with attachments, dated October 4, 2009.  (CJ 34623-25.)

530.   Email from John Florey to CJ Comu, with attachments, dated October 5, 2009.  (CJ 34656-57.)

531.    Email from John Florey to CJ Comu and Jean Marc Lopez, with attachments, ated October 5, 2009. (CJ 34658-59.)

532.    Email from John Florey to CJ Comu, with attachments, dated October 5, 2009. (CJ 34666-68.)

533.    Email from John Florey to CJ Comu and Jean Marc Lopez, with attachments, dated October 5, 2009. (CJ 34669-70.)

534.    Email from Leida Speller to CJ Comu, dated October 5, 2009. (Source: CJ 34747.)

535.    Email from Simon Ferguson to CJ Comu and other recipients, with attachments, dated October 6, 2009. (CJ 34774-75.)

536.    Email from Patrick Kelly to Simon Ferguson to CJ Comu and other recipients, with attachments, dated October 14, 2009. (CJ 35334-36.)

537.    Email from Steven Block to CJ Comu, with attachments, dated October 15, 2009. (CJ 35446-47.)

538.    Email from Christopher McNeill to CJ Comu and other recipients, with attachments, dated October 15, 2009. (CJ 35466-67.)

539.    Email from Christopher McNeill to CJ Comu and other recipients, with attachments, dated October 15, 2009. (CJ 35474-75.)

540.    Email from Christopher McNeill to CJ Comu and other recipients, dated October 15, 2009. (CJ 35480.)

541.    Email from Christopher McNeill to CJ Comu, with attachments, dated October 15, 2009. (CJ 35485-86.)

542.    Email from Christopher McNeill to CJ Comu, dated October 15, 2009. (CJ 35490.)

543.    Email from Laurence Briggs to CJ Comu, dated October 16, 2009. (CJ 35518.)

544.    Email from Christopher McNeill to CJ Comu and other recipients, with attachments, dated October 16, 2009. (CJ 35532-34.)

545.    Email from Xpress Copying to CJ Comu, dated October 19, 2009. (CJ 35584.)

546.    Email from Xpress Copying to CJ Comu, with attachments, dated October 19, 2009. (CJ 35590-91.)

547.    Email from Xpress Copying to CJ Comu, with attachments, dated October 19, 2009. (CJ 35601-05.)

548.    Email from Steven Fly to CJ Comu, with attachments, dated October 19, 2009. (CJ 35615-16.)

549.   Email from Steven Fly to CJ Comu, dated October 20, 2009.  (CJ 35663.)

550.   Email from Christopher McNeill to CJ Comu and other recipients, dated October 20, 2009.  (CJ 35666.)

551.   Email from Steven Fly to CJ Comu, with attachments, dated October 20, 2009.  (CJ 35672-73.)

552.   Email from Steven Fly to CJ Comu, dated October 20, 2009.  (CJ 35674.)

553.   Email from Steven Fly to CJ Comu, with attachments, dated October 20, 2009.  (CJ 35681-82.)

554.   Email from Steven Fly to CJ Comu, with attachments, dated October 20, 2009.  (CJ 35686-87.)

555.   Email from Steven Fly to CJ Comu, with attachments, dated October 20, 2009.  (CJ 35694-95.)

556.   Email from Steven Fly to CJ Comu, dated October 20, 2009.  (CJ 35698.)

557.   Email from Reed Wallace to CJ Comu, with attachments, dated October 21, 2009.  (CJ 35731-32.)

558.   Email from Steven Fly to CJ Comu, dated October 21, 2009.  (CJ 35748.)

559.   Email from Steven Fly to CJ Comu, with attachments, dated October 21, 2009.  (CJ 35750-51.)

560.   Email from Steven Fly to CJ Comu, dated October 21, 2009.  (CJ 35803.)

561.   Email from Steven Block to CJ Comu and other recipients, dated October 23, 2009.  (CJ 35898.)

562.   Email from Christopher McNeill to CJ Comu and other recipients, dated October 23, 2009.  (CJ 35899.)

563.   Email from Christopher McNeill to CJ Comu and other recipients, dated October 23, 2009.  (CJ 35900.)

564.   Email from Jean Marc Lopez to CJ Comu, dated October 25, 2009.  (CJ 35923.)

565.   Email from John Florey to CJ Comu and Jean Marc Lopez, with attachments, dated October 26, 2009.  (CJ 35933-39.)

566.   Email from Christopher McNeill to CJ Comu and other recipients, dated October 26, 2009.  (CJ 35963.)

567.   Email from Steven Fly to CJ Comu, dated October 26, 2009.  (CJ 35970.)

568. Email from Christopher McNeill to CJ Comu, with attachments, dated October 28, 2009. (CJ 36108-109.)

569. Email from Christopher McNeill to CJ Comu and other recipients, with attachments, dated October 30, 2009. (CJ 36210-11.)

570. Email correspondence among CJ Comu and multiple recipients, dated November 4, 2009. (Source: CJ 36450.)

571. Email from Troy Phillips to CJ Comu, with attachments, dated November 5, 2009. (CJ 36505-06.)

572. Email from Troy Phillips to CJ Comu, with attachments, dated November 5, 2009. (CJ 36511-12.)

573. Email from Robert Feeback to CJ Comu and other recipients, dated November 6, 2009. (CJ 36543.)

574. Email from Reed Wallace to CJ Comu, dated November 6, 2009. (CJ 36618.)

575. Email from Saul Albom to CJ Comu, with attachments, dated November 8, 2009. (CJ 36696-97.)

576. Email from Troy Phillips to CJ Comu, dated November 10, 2009. (CJ 36809.)

577. Email from Christopher McNeill to CJ Comu and other recipients, with attachments, dated November 10, 2009. (Source: CJ 36882-84.)

578. Email from Troy Phillips to CJ Comu, dated November 10, 2009. (CJ 36904.)

579. Email from Christopher McNeill to CJ Comu and other recipients, with attachments, dated November 11, 2009. (Source: CJ 37006-11.)

580. Email from Christopher McNeill to CJ Comu and other recipients, dated November 12, 2009. (CJ 37040.)

581. Email from Matt Troster to CJ Comu and other recipients, with attachments, dated November 12, 2009. (Source: CJ 37048-51.)

582. Email from Christopher McNeill to CJ Comu and other recipients, dated November 12, 2009. (CJ 37052.)

583. Email from Matt Troster to CJ Comu and other recipients, dated November 12, 2009. (Source: CJ 37053.)

584. Email from Christopher McNeill to CJ Comu and other recipients, dated November 12, 2009. (CJ 37054.)

585.    Email from Christopher McNeill to CJ Comu and other recipients, with attachments, dated November 12, 2009.  (Source: CJ 37056-57.)

586.    Email from Chris Roundtree to CJ Comu, dated November 13, 2009.  (CJ 37078.)

587.    Email from Matt Troster to CJ Comu, dated November 13, 2009.   (Source: CJ 37083.)

588.    Email from Dave Welch to CJ Comu, dated November 15, 2009.  (Source: CJ 37242.)

589.    Email from Steve Fly to multiple recipients, with attachment, dated November 16, 2009.  (Source: CJ 37333-34.)

590.    Email from CJ Comu to multiple recipients, dated September 15, 2009.  (Source: CJ 33372.)

591.    Email from CJ Comu to Reed Wallace, dated November 19, 2009.  (CJ 37540.)

592.    Email from Christopher McNeill to Matt Troster, CJ Comu and Steven Fly, with attachments, dated November 19, 2009.  (Source: CJ 37542-43.)

593.    Email from Christopher McNeill to CJ Comu, with attachments, dated November 19, 2009.  (Source: CJ 37544-45.)

594.    Email from Christopher McNeill to Matt Troster, CJ Comu and Steven Fly, with attachments, dated November 20, 2009.  (Source: CJ 37569-71.)

595.    Email from Matt Troster to Christopher McNeill, CJ Comu and Steven Fly, with attachments, dated November 20, 2009.  (Source: CJ 37572-73.)

596.    Email from Christopher McNeill to Steven Fly and CJ Comu, with attachments, dated November 20, 2009.  (Source: CJ 37584-87.)

597.    Email from Steven Fly to CJ Comu and other recipients, dated November 20, 2009. (Source: CJ 37599.)

598.    Email from David Knight to CJ Comu and other recipients, with attachments, dated December 1, 2009.  (Source: CJ 38227-34.)

599.    Email from Troy Phillips to CJ Comu, dated December 4, 2009.  (Source: CJ 38450.)

600.    Email from Chris Roundtree to CJ Comu, dated December 5, 2009.   (Source: CJ 38508.)

601.    Email from Matt Troster to CJ Comu and other recipients, with attachments, dated December 8, 2009, 2009.  (Source: CJ 38682-83.)

602.    Email from Robert Feeback to CJ Comu, dated December 9, 2009.   (Source: CJ 38714.)

603. Email from Laurence Briggs to CJ Comu and other recipients, with attachments, dated December 10, 2009, 2009. (Source: CJ 38843-46.)

604. Email from Perry West to CJ Comu and Dave Welch, dated December 11, 2009. (Source: CJ 38933.)

605. Email from Perry West to CJ Comu and Dave Welch, dated December 12, 2009. (Source: CJ 39007.)

606. Email from Perry West to CJ Comu, dated December 14, 2009. (Source: CJ 39110.)

607. Email from Christopher McNeill to CJ Comu and Steven Block, with attachments, dated December 15, 2009. (Source: CJ 39212-13.)

608. Email from Dave Welch to CJ Comu and other recipients, with attachments, dated December 15, 2009. (Source: CJ 39226-27.)

609. Email from Sheri Robinson to CJ Comu and other recipients, dated December 17, 2009. (Source: CJ 39306.)

610. Email from Sheri Robinson to CJ Comu and other recipients, with attachments, dated December 30, 2009. (Source: CJ 39837-46.)

611. Email from Perry West to CJ Comu and other recipients, with attachments, dated December 31, 2009. (Source: CJ 39877-78.)

612. Email from Cem Comu to CJ Comu and Aylin Burdett, dated January51, 2010. (Source: CJ 40130.)

613. Email from Brian Rudy to CJ Comu, dated January 5, 2010. (Source: CJ 40131.)

614. Email from Chris Troster to CJ Comu, with attachments, dated January 6, 2009. (CJ 40152-54.)

615. Email from Chris Troster to CJ Comu, with attachments, dated January 6, 2009. (CJ 40156-57.)

616. Email from Dave Welch to CJ Comu and other recipients, dated January 6, 2009. (CJ 40180.)

617. Email from Christopher McNeill to CJ Comu and Chris Roundtree, dated January 7, 2009. (CJ 40219.)

618. Email from Mike Yannacopoulos to CJ Comu, dated January 7, 2009. (CJ 40237.)

619. Email from Chris Troster to CJ Comu, dated January 13, 2009. (CJ 40649.)

620. ~~Email from Dale Changoo to CJ Comu, dated January 13, 2009. (CJ 40678.)~~

621. Email from Chris Troster to CJ Comu, with attachments, dated January 14, 2009. (CJ 40697-98.)

622. Email from Cem Comu to CJ Comu, dated January 15, 2009. (CJ 40761.)

623. Email from David Knight to CJ Comu and Dave Welch, with attachments, dated January 16, 2009. (CJ 40822-24.)

624. Email from David Welch to CJ Comu, with attachments, dated January 18, 2009. (CJ 40854-56.)

625. Email from David Welch to CJ Comu and other recipients, with attachments, dated January 18, 2009. (CJ 40888-89.)

626. Email from Reed Wallace to CJ Comu, dated January 20, 2009. (CJ 41036.)

627. Email from Chris Troster to CJ Comu, with attachments, dated January 21, 2009. (CJ 41079-80.)

628. Email from Reed Wallace to CJ Comu, dated January 21, 2009. (CJ 41113.)

629. Email from Tory Phillips to CJ Comu, dated January 28, 2009. (CJ 41596.)

630. Email from Tory Phillips to CJ Comu, dated January 29, 2009. (CJ 41625.)

631. Email from Perry West to CJ Comu, with attachments, dated February 6, 2009. (CJ 42221-25.)

632. Email from Charlotte Jacobs to Cem Comu and CJ Comu, with attachments, dated September 21, 2010. (CJ 43349-50.)

633. Email from Cem Comu to Charlotte Jacobs and CJ Comu, with attachments, dated September 22, 2010. (CJ 43444-46.)

634. Email from Dave Welch to CJ Comu, with attachments, dated September 29, 2010. (CJ 43961-62.)

635. Email from Tunch Kashif to CJ Comu and Charlotte Smith, with attachments, dated October 4, 2010. (CJ 44164-65.)

636. Email from David Welch to various recipients, with attachments, dated October 4, 2010. (CJ 44227-30.)

637. Email from David Parsely to CJ Comu, with attachments, dated October 14, 2010. (CJ 44904-06.)

638. Email from Cem Comu to CJ Comu, with attachments, dated October 19, 2010. (CJ 45137-39.)

639.   Email from John Potter to CJ Comu and other recipients, dated October 28, 2010. (CJ 45651.)

640.   Email from Marc Bryant to Dave Welch and CJ Comu, with attachments, dated November 4, 2010.  (CJ 46043-44.)

641.   Email from Marc Bryant to CJ Comu, dated November 24, 2010.  (CJ 47828.)

642.   Email from David Parsley to CJ Comu, with attachments, dated November 27, 2010. (CJ 47931-32)

643.   Email from Chas Gordon to CJ Comu, with attachments, dated November 29, 2010. (CJ 48080-81.)

644.   Email from Chris Troster to CJ Comu, with attachments, dated December 4, 2010. (CJ 48337-42)

645.   Email from Chris Troster to CJ Comu, with attachments, dated December 4, 2010. (CJ 48343-47)

646.   Email from David Knight to CJ Comu and other recipients, with attachments, dated December 10, 2010.  (CJ 48671-74)

647.   Email from CJ Comu to Ed Baxter, with attachments, dated August 21, 2010.  (CJ 50506-07)

648.   Email from CJ Comu to Robert Naranjo, with attachments, dated August 23, 2010. (CJ 50520-22.)

649.   Email from CJ Comu to Ian Gander, dated August 23, 2010.  (CJ 50533.)

650.   Email from CJ Comu to Dave Welch, dated August 25, 2010.  (CJ 50575.)

651.   Email from CJ Comu to Edward Baxter, with attachments, dated August 31, 2010. (CJ 50690-91.)

652.   Email from CJ Comu to Reuben Anstock, dated September 1, 2010.  (CJ 50764.)

653.   Email from CJ Comu to Cem Comu, dated September 2, 2010.  (CJ 50771.)

654.   Email from CJ Comu to Cem Comu, dated September 3, 2010.  (CJ 50787.)

655.   Email from CJ Comu to Tunch Kashif, with attachments, dated September 7, 2010. (CJ 50859-60.)

656.   Email from CJ Comu to Tunch Kashif, with attachments, dated September 7, 2010. (CJ 50861-63.)

657.   Email from CJ Comu to Bruce Taylor, dated September 13, 2010.  (CJ 50955.)

658. Email from CJ Comu to Christ Troster and other recipients, with attachments, dated September 13, 2010. (CJ 50989-90.)

659. Email from CJ Comu to Aundrea Whalen, dated September 15, 2010. (CJ 51018.)

660. Email from CJ Comu to Edward Baxter, dated September 21, 2010. (CJ 51179.)

661. Email from CJ Comu to Edward Baxter, with attachments, dated September 21, 2010. (CJ 51191-92.)

662. Email from CJ Comu to Chris Troster and other recipients, with attachments, dated September 22, 2010. (CJ 51214-15.)

663. Email from CJ Comu to Tunch Kashif, with attachments, dated September 26, 2010. (CJ 51306-07.)

664. Email from CJ Comu to Perry West and other recipients, with attachments, dated October 5, 2010. (CJ 51538-39.)

665. Email from CJ Comu to Cem Comu, with attachments, dated October 5, 2010. (CJ 51566-68.)

666. Email from CJ Comu to Perry West and Dave Welch and other recipients, dated October 6, 2010. (CJ 51628.)

667. Email from CJ Comu to Chris Troster and other recipients, with attachments, dated October 8, 2010. (CJ 51674-75.)

668. Email from CJ Comu to Charlie Skylis, dated October 18, 2010. (CJ 51965.)

669. Email from CJ Comu to Cem Comu, with attachments, dated October 19, 2010. (CJ 51971-72.)

670. Email from CJ Comu to Marc Bryant and Dave Welch, with attachments, dated October 27, 2010. (CJ 52202-03.)

671. Email from CJ Comu to Troy Phillips, with attachments, dated November 3, 2010. (CJ 52359-61.)

672. Email from CJ Comu to "Administration," with attachments, dated November 6, 2010. (CJ 52496-97.)

673. Email from CJ Comu to Edward Baxter, dated November 17, 2010. (CJ 52904.)

674. Email from CJ Comu to Thad Balkman and Dave Welch, dated November 18, 2010. (CJ 53004.)

675. Email from CJ Comu to Dave Welch and Marc Bryant, dated November 24, 2010. (CJ 53183.)

676.    Email from CJ Comu to Dave Welch and other recipients, with attachments, dated December 6, 2010. (CJ 53390-91.)

677.    Email from CJ Comu to Simon Ferguson, dated October 1, 2009. (CJ 54115.)

678.    Email from CJ Comu to Jean Marc Lopez and other recipients, with attachments, dated October 1, 2009. (CJ 54147-48.)

679.    Email from CJ Comu to Steven Fly, dated October 5, 2009. (CJ 54257.)

680.    Email from CJ Comu to Simon Ferguson, with attachments, dated October 6, 2009. (CJ 54284-86.)

681.    Email from CJ Comu to Christian Briggs and other recipients, with attachments, dated October 6, 2009. (CJ 54313-14.)

682.    Email from CJ Comu to Steven Evans, with attachments, dated October 8, 2009. (CJ 54370-72.)

683.    Email from CJ Comu to "ted@titanrealtycorp.com," with attachments, dated October 9, 2009. (CJ 54397-54400.)

684.    Email from CJ Comu to Steven Block and other recipients, dated October 9, 2009. (CJ 54404.)

685.    Email from CJ Comu to Chris Roundtree, dated October 11, 2009. (CJ 54416.)

686.    Email from CJ Comu to Steven Block and other recipients, dated October 12, 2009. (CJ 54433.)

687.    Email from CJ Comu to Steven Block and other recipients, with attachments, dated October 12, 2009. (CJ 54443-45.)

688.    Email from CJ Comu to Chris Roundtree, dated October 13, 2009. (CJ 54496.)

689.    Email from CJ Comu to Reed Wallace, with attachments, dated October 13, 2009. (CJ 54522-24.)

690.    Email from CJ Comu to Christian Briggs and other recipients, with attachments, dated October 13, 2009. (CJ 54539-41.)

691.    Email from CJ Comu to Simon Ferguson, dated October 15, 2009. (CJ 54567.)

692.    Email from CJ Comu to Steven Block and other recipients, dated October 15, 2009. (CJ 54568.)

693.    Email from CJ Comu to Dave Welch, with attachments, dated October 15, 2009. (CJ 54570-71.)

694. Email from CJ Comu to Steven Block and Dave Welch, dated October 15, 2009. (CJ 54574.)

695. Email from CJ Comu to Simon Ferguson, with attachments, dated October 15, 2009. (CJ 54581-82.)

696. Email from CJ Comu to Christopher McNeill, dated October 15, 2009. (CJ 54585.)

697. Email from CJ Comu to John Potter, with attachments, dated October 15, 2009. (CJ 54588-90.)

698.  Email from CJ Comu to Christopher McNeill and other recipients, dated October 15, 2009. (CJ 54596.)

699. Email from CJ Comu to Dave Welch, with attachments, dated October 15, 2009. (CJ 54597-98.)

700. Email from CJ Comu to Christopher McNeill and other recipients, dated October 15, 2009. (CJ 54599.)

701. Email from CJ Comu to Christopher McNeill, dated October 15, 2009. (CJ 54608.)

702. Email from CJ Comu to Steven Fly, with attachments, dated October 15, 2009. (CJ 54622-26.)

703. Email from CJ Comu to Christopher McNeill, dated October 16, 2009. (CJ 54644.)

704. Email from CJ Comu to Christopher McNeill and other recipients, with attachments, dated October 16, 2009. (CJ 54648-49.)

705. Email from CJ Comu to Christopher McNeill and Steven Block, dated October 16, 2009. (CJ 54650.)

706. Email from CJ Comu to Christopher McNeill and Steven Block, with attachments, dated October 16, 2009. (CJ 54652-54.)

707. Email from CJ Comu to Christopher McNeill, dated October 16, 2009. (CJ 54657.)

708. Email from CJ Comu to Christopher McNeill and other recipients, with attachments, dated October 16, 2009. (CJ 54658-60.)

709. Email from CJ Comu to Jorn Follmer, dated October 18, 2009. (CJ 54688.)

710. Email from CJ Comu to Express Copying, dated October 18, 2009. (CJ 54710.)

711. Email from CJ Comu to Steven Fly, dated October 19, 2009. (CJ 54713.)

712. Email from CJ Comu to Steven Fly, dated October 19, 2009. (CJ 54715.)

713.    Email from CJ Comu to multiple recipients, dated October 19, 2009.  (Source: CJ 54720.)

714.    Email from CJ Comu to Doug Davis, with attachments, dated October 19, 2009.  (CJ 54738-39.)

715.    Email from CJ Comu to Steven Fly, dated October 20, 2009.  (CJ 54764.)

716.    Email from CJ Comu to Christopher McNeill and other recipients, dated October 20, 2009.  (CJ 54765.)

717.    Email from CJ Comu to Steven Fly, dated October 20, 2009.  (CJ 54767.)

718.    Email from CJ Comu to Steven Fly, with attachments, dated October 20, 2009.  (CJ 54774-75.)

719.    Email from CJ Comu to multiple recipients, dated October 20, 2009.  (Source: CJ 54776.)

720.    Email from CJ Comu to Steven Fly, dated October 20, 2009.  (CJ 54790.)

721.    Email from CJ Comu to Steven Fly, dated October 20, 2009.  (CJ 54796.)

722.    Email from CJ Comu to Steven Fly and other recipients, with attachments, dated October 21, 2009.  (CJ 54834-35.)

723.    Email from CJ Comu to Christopher McNeill and other recipients, dated October 23, 2009.  (CJ 54883.)

724.    Email from CJ Comu to Christ Roundtree and other recipients, dated October 23, 2009.  (CJ 54884.)

725.    Email from CJ Comu to Christopher McNeill and other recipients, dated October 23, 2009.  (CJ 54885.)

726.    Email from CJ Comu to Christopher McNeill and other recipients, dated October 26, 2009.  (CJ 54911.)

727.    Email from CJ Comu to Steven Fly, dated October 26, 2009.  (CJ 54918.)

728.    Email from CJ Comu to Christopher McNeill, dated October 26, 2009.  (CJ 54922.)

729.    Email from CJ Comu to multiple recipients, dated October 27, 2009.  (CJ 54941.)

730.    Email from CJ Comu to multiple recipients, with attachments, dated November 4, 2009 (CJ 55205-06.)

731.    Email from CJ Comu to Robert Naranjo, with attachments, dated November 4, 2009. (CJ 55309-10.)

732. Email from CJ Comu to Saul Albom and Dave Welch, with attachments, dated November 4, 2009. (CJ 55322-26.)

733. Email from CJ Comu to Heather Jackson, with attachments, dated November 5, 2009. (CJ 55332-33.)

734. Email from CJ Comu to Perry West, with attachments, dated November 5, 2009. (CJ 55336-37.)

735. Email from CJ Comu to Simon Ferguson, dated November 5, 2009. (CJ 55499.)

736. Email from CJ Comu to Saul Albom and Steve Kanaval, with attachments, dated November 5, 2009. (CJ 55500-01.)

737. Email from CJ Comu to Christian Briggs, dated November 7, 2009. (CJ 55585.)

738. Email from CJ Comu to Christopher McNeill and other recipients, dated November 12, 2009. (CJ 55795.)

739. Email from CJ Comu to Matt Troster and other recipients, with attachments, dated November 12, 2009. (CJ 55800-805.)

740. Email from CJ Comu to Christ Roundtree and other recipients, with attachments, dated November 12, 2009. (CJ 55806-809.)

741. Emails from CJ Comu to multiple recipients dated November 16, 2009. (CJ 55905-06, 55916-17.)

742. Email from CJ Comu to Troy Phillips, with attachments, dated November 17, 2009. (CJ 55995-98.)

743. Email from CJ Comu to Troy Phillips, dated November 17, 2009. (CJ 55999.)

744. Email from CJ Comu to Matthew Papish and other recipients, with attachments, dated November 17, 2009. (CJ 56004-07.)

745. Email from CJ Comu to Perry West, dated November 19, 2009. (CJ 56065.)

746. Email from CJ Comu to Dennis Olson, dated November 30, 2009. (CJ 56447.)

747. Email from CJ Comu to Steven Fly and other recipients, with attachments, dated December 2, 2009. (CJ 56544-45.)

748. Email from CJ Comu to Gary Zinn and Dave Welch, with attachments, dated December 3, 2009. (CJ 56605-06.)

749. Email from CJ Comu to Troy Phillips, with attachments, dated December 4, 2009. (CJ 56607-10.)

750.     Email from CJ Comu to Christian Briggs, with attachments, dated December 4, 2009. (CJ 56635-36.)

751.     Email from CJ Comu to Aylin Burdett, dated December 8, 2009.  (CJ 56745.)

752.     Email from CJ Comu to Troy Phillips, dated December 10, 2009.  (CJ 56823.)

753.     Email from CJ Comu to Lester Bedford, dated December 11, 2009.  (CJ 56894.)

754.     Email from CJ Comu to Perry West and Dave Welch, dated December 11, 2009.  (CJ 56935.)

755.     Email from CJ Comu to Dave Welch, with attachments, dated December 15, 2009. (CJ 57056-57.)

756.     Email from CJ Comu to Dave Welch and Gary Zinn, with attachments, dated December 15, 2009.  (CJ 57092-93.)

757.     Email from CJ Comu to Cem Comu, Aylin Burdett and Mom, dated December 17, 2009.  (CJ 57136.)

758.     Email from CJ Comu to Robert Kasprzak, with attachments, dated December 18, 2009.  (CJ 57158-59.)

759.     Email from CJ Comu to Sherri Robinson and other recipients, with attachments, dated December 18, 2009.  (CJ 57160-61.)

760.     Email from CJ Comu to Laurence Briggs, dated December 18, 2009.  (CJ 57165.)

761.     Email from CJ Comu to John Potter and other recipients, with attachments, dated January 1, 2010.  (CJ 57478-79.)

762.     Email from CJ Comu to multiple recipients, with attachments, dated January 5, 2010. (CJ 57480-83.)

763.     Email from CJ Comu to Sherri Robinson and other recipients, dated January 5, 2010. (CJ 57495.)

764.     Email from CJ Comu to Troy Phillips, with attachments, dated January 6, 2010.  (CJ 57537-39.)

765.     Email from CJ Comu to Tunch Kashif, dated January 6, 2010.  (CJ 57552.)

766.     Email from CJ Comu to Kevin Vance, with attachments, dated January 12, 2010.  (CJ 57728-30.)

767.     Email from CJ Comu to Christ Troster and other recipients, with attachments, dated January 12, 2010.  (CJ 57753-54.)

768.  Email from CJ Comu to Robert Kasprzak, with attachments, dated January 12, 2010. (CJ 57757-58.)

769.  Email from CJ Comu to Wakabayashi Fund, dated January 14, 2010. (CJ 57832.)

770.  Email from CJ Comu to Dave Welch and Gary Zinn, with attachments, dated January 14, 2010. (CJ 57834-35.)

771.  Email from CJ Comu to Charles Greenberg, dated January 18, 2010. (CJ 57960.)

772.  Email from CJ Comu to Dennis Olson, with attachments, dated December 10, 2009. (CJ 56854-55.)

773.  Email from CJ Comu to Dennis Olson, dated December 18, 2009. (CJ 57153.)

774.  Email from CJ Comu to Dennis Olson, with attachments, dated December 30, 2009. (CJ 57371-72.)

775.  Email from CJ Comu to Dennis Olson, with attachments, dated January 4, 2010. (CJ 57431-33.)

776.  Email from CJ Comu to Dennis Olson, with attachments, dated January 11, 2010. (CJ 57701-02.)

777.  Email from CJ Comu to Dave Welch and Gary Zinn, with attachments, dated January 14, 2010. (CJ 57834-35.)

778.  Email from CJ Comu to ChrisTroster, with attachments, dated January 20, 2010. (CJ 58016-17.)

779.  Email from CJ Comu to Reed Wallace, dated January 20, 2010. (CJ 58040.)

780.  Email correspondence between CJ Comu to ChrisTroster, with attachments, dated January 21, 2010. (CJ 58078-79.)

781.  Email from CJ Comu to Christina Briggs, with attachments, dated January 21, 2010. (CJ 58091-93.)

782.  Email from CJ Comu, with attachments, dated January 25, 2010. (CJ 58168-73.)

783.  Email from CJ Comu to Pamela at "palmbeachpamela@yahoo.com," with attachments, dated January 27, 2010. (CJ 58331-38.)

784.  Email from CJ Comu to John Potter and other recipients, with attachments, dated January 28, 2010. (CJ 58373-74.)

785.  Email from CJ Comu to John Potter and other recipients, with attachments, dated January 28, 2010. (CJ 58376-78.)

786. Email from CJ Comu to Dave Welch, dated January 28, 2010. (CJ 58391.)

787. Email from CJ Comu to Troy Phillips, with attachments, dated February 2, 2010. (CJ 58501-02.)

788. Email from CJ Comu to Troy Phillips, with attachments, dated February 6, 2010. (CJ 58663-64.)

789. Email from CJ Comu to David Parsley, dated February 17, 2010. (CJ 59066.)

790. Email from CJ Comu to Jeff Scolastico, dated February 23, 2010. (CJ 59515.)

791. Email from CJ Comu to Rob Jonas, dated February 23, 2010. (CJ 59516.)

792. Email from Dave Welch to CJ Comu, with attachments, dated January 30, 2009. (CJ 59917-19.)

793. Email from Dave Welch to CJ Comu and other recipients, with attachments, dated February 16, 2009. (CJ 59922-25.)

794. Email from Dave Welch to Erick Guerra, with attachments, dated March 27, 2009. (CJ 59951-54.)

795. Email from Dave Welch to CJ Comu, with attachments, dated June 20, 2009. (CJ 59971-72.)

796. Email from Dave Welch to CJ Comu, John Potter and Dave Knight, with attachments, dated July 2, 2009. (CJ 59980-81.)

797. Email from John Potter to CJ Comu and Dave Welch, dated July 30, 2009. (CJ 60002.)

798. Email from Cigdem Beykoylu to CJ Comu, dated August 4, 2009. (CJ 60015.)

799. Email from CJ Comu (at cj@globalenergymngt.com) to CJ Comu (at cj@thebarclaygroup.com), with attachments, dated August 5, 2009. (CJ 60034-37.)

800. Email from Dave Welch to Perry West, CJ Comu, and Dave Knight, dated August 26, 2009. (CJ 60095.)

801. Email from Dave Welch to CJ Comu, with attachments, dated August 29, 2009. (CJ 60102-103.)

802. Email from Nick Toscano to CJ Comu, dated July 2, 2010. (CJ 61864.)

803. Email from Reuben Anstock to CJ Comu and other recipients, with attachments, dated June 25, 2010. (CJ 62510-12.)

804. Email from Perry West to Tim Burroughts, with attachments, dated June 23, 2010. (CJ 62657-63.)

805. Email from Dave Welch to CJ Comu, Dave Knight and Perry West, with attachments, dated June 18, 2010. (CJ 62983-85.)

806. Email from Perry West to CJ Comu, with attachments, dated June 17, 2010. (CJ 62999-63005.)

807. Email from Perry West to CJ Comu, dated June 17, 2010. (CJ 63006.)

808. Email from Perry West to CJ Comu, John Potter, and David Knight, with attachments, dated June 17, 2010. (CJ 63011-13.)

809. Email from Tim Burroughts to Perry West and CJ Comu, with attachments, dated June 16, 2010. (CJ 63081-87.)

810. Email from Perry West to CJ Comu, dated May 5, 2010. (CJ 64326.)

811. Email from Dave Welch to CJ Comu and other recipients, with attachments, dated April 18, 2010. (CJ 65185-87.)

812. Email from Perry West to CJ Comu, dated April 1, 2010. (CJ 66253.)

813. Email from Charlotte Jacob to CJ Comu and other recipients, dated April 1, 2010. (CJ 66254.)

814. Email from Perry West to CJ Comu, Dave Welch, and David Knight, with attachments, dated April 1, 2010. (CJ 66262-68.)

815. Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated April 1, 2010. (CJ 66367-69.)

816. Email from Perry West to CJ Comu, dated April 1, 2010. (CJ 66370.)

817. Email from Charlotte Jacob to CJ Comu and other recipients, dated March 25, 2010. (CJ 66709.)

818. Email from Charlotte Jacob to CJ Comu and other recipients, dated March 24, 2010. (CJ 66764.)

819. Email from Mansion House Capital to CJ Comu, with attachments, dated March 18, 2010. (CJ 66940-46.)

820. Email from Dave Welch to CJ Comu, dated March 15, 2010. (CJ 67047.)

821. Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated March 15, 2010. (CJ 66367-6967094-100.)

822.   Email from Perry West to CJ Comu and David Knight, dated March 12, 2010.  (CJ 67169.)

823.   Email from Dave Welch to CJ Comu, dated March 13, 2010.  (CJ 67306.)

824.   Email from Patrick Kelly to CJ Comu, with attachments, dated March 13, 2010.  (CJ 67307-15.)

825.   Email from Patrick Kelly to CJ Comu, with attachments, dated March 13, 2010.  (CJ 67316-22.)

826.   Emails between Dave Welch and CJ Comu, dated February 9, 2010.  (CJ 68281-82.)

827.   Email from Perry West to CJ Comu, dated February 8, 2010.  (CJ 68321.)

828.   Email from Perry West to CJ Comu, dated January 29, 2010.  (CJ 68592.)

829.   Email from Dave Welch to CJ Comu, with attachments, dated January 8, 2010.  (CJ 69115-17.)

830.   Email from Perry West to CJ Comu and Dave Welch, dated December 12, 2009.  (CJ 69603.)

831.   Email from David Knight to Perry West and CJ Comu and other recipients, with attachments, dated November 13, 2009.  (CJ 70339-49.)

832.   Email from Perry West to CJ Comu, with attachments, dated  November 7, 2009.  (CJ 70588-89.)

833.   Email from Robert Feeback to Craig Ragsdale, Mark Pinter, and CJ Comu, dated November 1, 2009.  (CJ 70795.)

834.   Email from Robert Feeback to CJ Comu and other recipients, dated November 1, 2009.  (CJ 70796.)

835.   Email from Chris Roundtree to CJ Comu, with attachments, dated October 30, 2009.  (CJ 70832-35.)

836.   Email from Robert Feeback to CJ Comu, with attachments, dated October 31, 2009.  (CJ 70846-48.)

837.   Email from Reed Wallace to CJ Comu, with attachments, dated October 21, 2009.  (CJ 71010-11.)

838.   Email from Steven Fly to CJ Comu, with attachments, dated October 21, 2009.  (CJ 71018-19.)

839.   Email from Christopher McNeill to CJ Comu and other recipients, with attachments, dated October 16, 2009.  (CJ 71128-30.)

840. Email from Jean Marc Lopez to CJ Comu, with attachments, dated October 4, 2009. (CJ 71564-76.)

841. Email from Steven Fly to CJ Comu, with attachments, dated September 29, 2009. (CJ 71694-96.)

842. Email from Dave Welch to CJ Comu, with attachments, dated September 28, 2009. (CJ 71795-99.)

843. Email from Simon Ferguson to CJ Comu, with attachments, dated September 22, 2009. (CJ 72103-13.)

844. Email from Chris Roundtree to CJ Comu, with attachments, dated September 15, 2009. (CJ 72448-52.)

845. Email from Steven Fly to CJ Comu, with attachments, dated September 16, 2009. (CJ 72496-500.)

846. Email from Steven Fly to CJ Comu, with attachments, dated September 14, 2009. (CJ 72513-17.)

847. Email from Steven Fly to CJ Comu, with attachments, dated September 11, 2009. (CJ 72588-90.)

848. Email from Steven Evans to Steven Fly and CJ Comu, with attachments, dated September 12, 2009. (CJ 72601-03.)

849. Email from John Potter to CJ Comu and other recipients, with attachments, dated September 4, 2009. (CJ 73182-90.)

850. Email from Perry West to CJ Comu and other recipients, dated August 29, 2009. (CJ 73314.)

851. Email from Charlotte Jacbob to CJ Comu and Reuben Anstock, with attachments, dated August 17, 2010. (CJ 82143-45.)

852. Email from Perry West to CJ Comu and other recipients, with attachments, dated August 4, 2010. (CJ 82540-41.)

853. Email from Perry West to CJ Comu, with attachments, dated August 5, 2010. (CJ 82553-55.)

854. Email from Perry West to CJ Comu, dated August 1, 2010. (CJ 82622.)

855. Email from Dave Welch to CJ Comu, dated August 1, 2010. (CJ 82625.)

856. Email from Perry West to CJ Comu, John Potter, Dave Welch, and David Knight, dated July 28, 2010. (CJ 82708.)

857. Email from Perry West to CJ Comu, John Potter, Dave Welch, and David Knight, with attachments, dated September 7, 2010. (CJ 82934-38.)

858. Email from Cem Comu to CJ Comu, with attachments, dated September 3, 2010. (CJ 83078-80.)

859. Email from Fergus Anstock to CJ Comu and other recipients, dated September 2, 2010. (CJ 83203.)

860. Email from Fergus Anstock to CJ Comu and other recipients, dated August 24, 2010. (CJ 83702-12.)

861. Email from Perry West to CJ Comu, with attachments, dated September 20, 2010. (CJ 84093-95.)

862. Email from Perry West to CJ Comu, with attachments, dated September 20, 2010. (CJ 84098-99.)

863. Email from Cem Comu to Charlotte Jacobs and CJ Comu, with attachments, dated September 16, 2010. (CJ 84205-13.)

864. Email from Perry West to CJ Comu and Dave Knight, with attachments, dated September 13, 2010. (CJ 84393-99.)

865. Email from Perry West to John Potter, CJ Comu and other recipients, dated September 13, 2010. (CJ 84424.)

866. TKY Trust Distributions Ledger, as of March 14, 2012. (CJ 88556.)

867. OTC Pink Sheet Quarterly Disclosure Statement for Savanna East Africa, Inc. (f/k/a Nova Energy, Inc., dated May 15, 2013. (OTC public filing).

868. Exhibits for impeachment purposes and as or in rebuttal.

869. Plaintiffs reserve the right to use and rely upon any exhibit identified by the Trustee as Intervenor or by Defendants.

870. Plaintiffs reserve the right to offer additional exhibits to "complete" exhibits offered by the Trustee as Intervenor or by Defendants.

DATED: February 24, 2014.

**GREENBERG TRAURIG, LLP**

By: */s/ Shari L. Heyen*
    Shari L. Heyen
    Texas Bar No. 09564750
    1000 Louisiana, Suite 1700
    Houston, Texas 77002
    Telephone: (713) 374-3500
    Facsimile: (713) 374-3505
    Email: heyens@gtlaw.com

    Kendyl T. Hanks
    Texas Bar No. 24032273
    300 West 6th Street, Suite 2050
    Austin, Texas 78701
    Telephone: (512) 320-7200
    Facsimile: (512) 320-7210
    Email: hanksk@gtlaw.com

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the above and foregoing has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on February 24, 2014.

*/s/ Shari L. Heyen*
Shari L. Heyen

*AUS 536291742v2*

000721

Shari L. Heyen
Texas Bar No. 09564750
Email: heyens@gtlaw.com
Kendyl T. Hanks
Texas Bar No. 24032273
Email: hanksk@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

**ATTORNEYS FOR PLAINTIFFS KING LOUIE MINING, LLC,
KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 7 |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO. 09-38820-sgj7 |
| | § | |
| DEBTOR. | § | |
| KING LOUIE MINING, LLC, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| Defendant. | § | |
| DIANE G. REED, TRUSTEE, | § | |
| Intervenor, Co-Plaintiff, and | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| Defendant, | § | |
| and | § | |
| PHYLLIS E. COMU, *et al.* | § | Trial Docket Call: March 3, 2014 |
| Third-Party Defendants. | § | at 1:30 pm. |

## STIPULATION EXTENDING DEADLINE FOR PRETRIAL FILINGS

1

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

Pursuant to the Agreed Amended Scheduling Order currently in effect (Docket No. 106), the deadline for the parties to file their joint pre-trial order, proposed findings of fact and conclusions of law, and trial briefs is Wednesday, February 26, 2014. The parties have conferred, and have stipulated to extend the deadline for these filings to Monday, March 3, 2014 at 12:00 p.m.

DATED: February 25, 2014.

GREENBERG TRAURIG, LLP

By: /s/ Shari L. Heyen
Shari L. Heyen
Texas Bar No. 09564750
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Email: heyens@gtlaw.com

Kendyl T. Hanks
Texas Bar No. 24032273
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210
Email: hanksk@gtlaw.com

000723

**AGREED BY THE PARTIES:**

GREENBERG TRAURIG, LLP
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

By: _____
Kendyl T. Hanks – SBT #24032273

ATTORNEYS FOR PLAINTIFFS KING LOUIE
MINING, LLC, KING LOUIE ENTERPRISES,
LLC AND RONALD KATZ

OLSON, NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302
(214) 979-7301 (fax)

By: _____
Dennis Olson – SBT #15273500

ATTORNEYS FOR CENGIZ J. /COMU, A/K/A CJ
COMU, DEBTOR AND DEFENDANT, AND
PHYLLIS E. COMU, BERNARD D. BROWN,
THE BARCLAY GROUP, INC. AND SUNSET
PACIFIC, L.P., THIRD-PARTY DEFENDANTS

REED & ELQUIST, P.C.
501 N. College Street
Waxahachie, Texas 75165
(972) 938-7339
(972) 923-0430 (fax)

By: _____
David W. Elmquist

ATTORNEYS FOR DIANE G. REED, TRUSTEE,
INTERVENOR, CO-PLAINTIFF AND THIRD
PARTY PLAINTIFF

3

000724

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on February 26, 2014.

/s/ Shari L. Heyen
Shari L. Heyen

4

AUS 536291875v1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 7 |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO. 09-38820-sgj7 |
| | § | |
| DEBTOR. | § | |
| KING LOUIE MINING, LLC, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| Defendant. | § | |
| DIANE G. REED, TRUSTEE, | § | |
| Intervenor, Co-Plaintiff, and | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| Defendant, | § | |
| and | § | |
| PHYLLIS E. COMU, *et al.* | § | **Trial Docket Call: March 4, 2014** |
| Third-Party Defendants. | § | **at 2:30 p.m.** |

### AMENDED STIPULATION EXTENDING DEADLINE FOR PRETRIAL FILINGS

**TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:**

Pursuant to the Agreed Amended Scheduling Order currently in effect (Docket No. 106),

and the Stipulation Extending Deadline for Pretrial Filings filed by the parties on February 25,

2014, the deadline for the parties to file their joint pre-trial order, proposed findings of fact and

conclusions of law, and trial briefs (together, "pretrial filings") is Monday, March 3, 2014 at

12:00 p.m.

1

000726

Due to inclement weather, the Court has rescheduled the trial docket call in this adversary proceeding until March 4, 2014, at 2:30 p.m. In light of these conditions, the delay of the Pre-Trial Hearing, and to afford counsel an opportunity to further discuss and agree to stipulated facts and other issues pertaining to trial, the parties have conferred, and have stipulated to extend the deadline for pretrial filings and amended witness and exhibit lists until 12:30 p.m. March 4, 2014.

The parties have further agreed to meet and confer on Tuesday, March 11, 2014, to discuss and agree to stipulated facts and other issues pertaining to trial. Therefore, to the extent the Court reschedules the Pre-Trial Hearing in this matter before March 11, 2014, the parties agree that their joint and respective pretrial filings and any amended witness and exhibit lists filed in accordance with this stipulation shall be subject to amendment by Friday, March 14, 2014, to reflect the parties' discussions and agreements on March 11, 2014.

DATED: March 3, 2014.

*AUS 536293208v1*

000727

**AGREED BY THE PARTIES:**

GREENBERG TRAURIG, LLP
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

By: _____
Kendyl T. Hanks – SBT #24032273

ATTORNEYS FOR PLAINTIFFS KING LOUIE
MINING, LLC, KING LOUIE ENTERPRISES,
LLC AND RONALD KATZ

OLSON, NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302
(214) 979-7301 (fax)

By: _____
Dennis Olson – SBT #15273500

ATTORNEYS FOR CENGIZ J. /COMU, A/K/A CJ
COMU, DEBTOR AND DEFENDANT, AND
PHYLLIS E. COMU, BERNARD D. BROWN,
THE BARCLAY GROUP, INC. AND SUNSET
PACIFIC, L.P., THIRD-PARTY DEFENDANTS

REED & ELMQUIST, P.C.
501 N. College Street
Waxahachie, Texas 75165
(972) 938-7339
(972) 923-0430 (fax)

By: _____
David W. Elmquist

ATTORNEYS FOR DIANE G. REED, TRUSTEE,
INTERVENOR, CO-PLAINTIFF AND THIRD
PARTY PLAINTIFF

3

000728

Case 3:14-cv-04163-B Document 1-4 Filed 11/21/14 Page 76 of 267 PageID 802

David W. Elmquist - SBT #06591300
**REED & ELMQUIST, P.C.**
501 N. College Street
Waxahachie, Texas 75165
(972) 938-7339
1+(972) 923-0430 (fax)

**ATTORNEYS FOR DIANE G. REED,**
**CHAPTER 7 TRUSTEE FOR CENGIZ J. COMU**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |

| | | |
|---|---|---|
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-plaintiff and | § | |
|     Third-party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CENGIZ J. COMU, | § | |
|     Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| PHYLLIS E. COMU, | § | |
| BERNARD D. BROWN, | § | |
| THE BARCLAY GROUP, INC. AND | § | |
| SUNSET PACIFIC, L.P., | § | **Trial Docket Call:** |
|     Third-party Defendants. | § | **March 4, 2014 at 2:30 p.m.** |

**000729**

## INTERVENOR'S PROPOSED FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

Diane G. Reed, Chapter 7 Trustee of the bankruptcy estate of Cengiz J. Comu ("Comu" or the "Debtor"), the intervenor, co-plaintiff and third-party plaintiff herein ("Intervenor" and/or "Trustee"), files this *Intervenor's Proposed Findings of Fact and Conclusions of Law.*

## I.    FINDINGS OF FACT

1.    Comu filed for bankruptcy protection on December 31, 2009 (the "Petition Date"), approximately eight months after co-plaintiffs King Louie Mining, LLC ("KLM"), King Louie Enterprises, LLC ("KLE"), and Ronald Katz ("Katz") had obtained a default judgment against him in New York state court in the approximate amount of $2,280,000.

2.    The judgment debt of KLM, KLE and Katz represents approximately 95% of the total debt owed by Comu as evidenced by the claims filed in Comu's bankruptcy case.

3.    In Comu's Schedule B he listed a one percent (1%) ownership interest in The Barclay Group, Inc. ("TBG") (presumably common stock). According to Comu's Schedule B, the other ninety-nine percent (99%) shareholder of TBG is Third-party Defendant Bernard D. Brown ("Brown").

4.    TBG was incorporated on or about March 7, 1996 by John Potter ("Potter"). The original directors listed in the Articles of Incorporation are Comu and Potter.

5.    On or about February 11, 2000, the Texas Secretary of State (the "Texas SOS") forfeited TBG's authority to transact business in Texas due to TBG's failure to file franchise tax returns and/or to pay state franchise taxes.

6.    On or about January 18, 2008, approximately eight years after the initial forfeiture of TBG's corporate charter and the forfeiture of its authority to transact business, TBG's corporate charter was reinstated.

7.      On or about December 31, 2007, 2008 and 2009, Comu filed with the Texas SOS, on behalf of TBG, Texas Franchise Tax Public Information Reports.  In each of these reports Comu listed himself as the sole officer and director of TBG.

8.      Although TBG's authority to transact business in the State of Texas was revoked from February 11, 2000 to January 18, 2008, and from January 11, 2011 to the present, Comu caused TBG to engage in various business transactions during these forfeiture periods.

9.      In the fall of 2009 through January 10, 2010, Comu caused TBG to participate in and help facilitate a corporate merger transaction by and between Go Green USA LLC ("Go Green"), a Nevada limited liability company, and Ganas Corp. ("Ganas"), a Delaware corporation.

10.     The terms of the merger transaction were set forth in a Merger Agreement and Plan of Reorganization dated as of November 4, 2009 by and among Ganas, Go Green, and, solely for purposes of Section 1.12 of the agreement, TBG (the "Merger Agreement").

11.     The Merger Agreement between Go Green and Ganas provided that Go Green would be merged with and into Ganas, and Ganas would be the surviving corporation, which would be re-named Green Automotive Company, Inc. ("Green Automotive").

12.     At the time the Merger Agreement was entered into, Ganas was a shell corporation in that it conducted no business operations, but, according to Comu, its stock could be publicly traded through brokers/dealers registered with certain over-the-counter ("OTC") stock markets.

13.     At the time of the merger transaction, Go Green's future business plan was to be the exclusive distributor of an electric sports utility vehicle that was being developed in China.

14.     At or about the time of the closing of the Merger Agreement, which occurred on January 10, 2010, TBG received 40% of the common stock issued by Ganas.

15. Based upon the terms of the Merger Agreement, 143,620,000 shares of Green Automotive common stock were issued in connection with the merger.

16. Sixty percent (60%) of the stock issued by Ganas and/or Green Automotive in January 2010 was issued to the three members of Go Green, and the other 40% was issued to TBG.

17. In conjunction with the closing of the Merger Agreement on or about January 10, 2010, Comu caused TBG to enter into three separate Stock Purchase Agreements to sell certain of the restricted stock of Green Automotive that was issued to TBG.

18. The purchasers of the Green Automotive stock under the Stock Purchase Agreements were Third-party Defendant Sunset Pacific, L.P. ("Sunset Pacific") and two Canadian family trusts known as the TKY Trust and the Daptco Trust.

19. The TKY Trust and the Daptco Trust were formed by Comu's mother, Sevim Comu.

20. The trustee of the TKY Trust and the Daptco Trust is Comu's brother, Cem Comu.

21. Pursuant to a Stock Purchase Agreement dated January 10, 2010, TBG sold to Sunset Pacific 2,500,000 shares of Green Automotive common stock for a purchase price of $200,000.

22. The purchase price for the 2,500,000 shares of Green Automotive common stock sold to Sunset Pacific was to be paid through a promissory note dated January 10, 2010, executed by Sunset Pacific and payable to TBG in the amount of $200,000 (the "Sunset Pacific Note").

23. The Sunset Pacific Note provides that it is payable in quarterly installments of interest only, commencing on June 1, 2010 and continuing quarterly until maturity of the note on March 1, 2015, when all principal and interest is due and payable.

24. No payments have been made on the Sunset Pacific Note.

INTERVENOR'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

25. On or about January 10, 2010, TBG sold to the TKY Trust 5,000,000 shares of Green Automotive common stock for a purchase price of $500,000.

26. The purchase price for the 5,000,000 shares of Green Automotive common stock sold to the TKY Trust was to be paid through a $500,000 promissory note dated January 10, 2010 (the "TKY Note").

27. The basic payment terms of the TKY Note are the same as the Sunset Pacific Note.

28. Until January 12, 2012 there were no payments on the TKY Note.

29. From January 5, 2012 through March 9, 2012, there were payments on the TKY Note totaling $116,500.

30. The source of the payments on the TKY Note were sales by the TKY Trust of 4,800,000 shares of the restricted Green Automotive Stock which TBG sold to the TKY Trust in January 2010.

31. On or about January 10, 2010, Comu caused TBG to sell to the Daptco Trust 2,000,000 shares of Green Automotive common stock for a purchase price of $200,000.

32. The consideration for the purchase by the Daptco Trust of the 2,000,000 shares of Green Automotive common stock was a promissory note dated January 10, 2010 in the original principal amount of $200,000 (the "Daptco Note").

33. The Daptco Note is payable on the same terms as the Sunset Pacific Note and the TKY Note.

34. The first payment made on the Daptco Note was on or about March 20, 2012.

35. From March 22, 2012 to June 1, 2012, there were payments on the Daptco Note totaling $30,185.00.

36.  The source of the payments on the Daptco Note was sales by the Daptco Trust of 1,400,000 shares of the restricted Green Automotive stock that TBG sold to the Daptco Trust in January 2010.

37.  On or about August 13, 2010, Green Automotive issued to TBG an additional 1,800,000 shares of Green Automotive common stock.

38.  The additional 1,800,000 shares of Green Automotive common stock was issued to TBG pursuant to the anti-dilution provision contained in section 1.12 of the Merger Agreement.

39.  The additional 1,800,000 shares of Green Automotive common stock was issued to TBG so that it would maintain a forty percent (40%) interest in Green Automotive.

40.  On or about June 16, 2011, Comu caused TBG to enter into an Escrow Agreement with Olde Monmouth Stock Transfer Co. ("Olde Monmouth"), the stock transfer agent for Green Automotive.

41.  Comu caused TBG to enter into the Escrow Agreement with Olde Monmouth so that he could proceed to sell 10,000,000 shares of the restricted common stock that Green Automotive had issued to TBG in January 2010.

42.  From June 23, 2011 through January 10, 2012, Comu caused TBG to sell 9,998,091 shares of Green Automotive restricted stock.

43.  The total purchase price for the 9,998,091 shares of Green Automotive restricted stock sold by TBG was in excess of $3,000,000.

44.  After paying commissions to the various brokers involved in the purchase and sale transactions of the 9,998,091 shares of Green Automotive restricted stock, the net amount received by TBG from the sale of these shares was $686,476.

45.  Between December 23, 2011 and March 16, 2012, the TKY Trust sold 4,800,000 of the 5,000,000 shares of Green Automotive restricted stock that TBG sold to it.

46. TBG received $116,500 of proceeds from TKY Trust's sales of its 4,800,000 shares of Green Automotive restricted stock, which Comu applied to the TKY Note.

47. Between March 22, 2012 and June 1, 2012, Comu arranged for the sale of 1,400,000 of the 2,000,000 shares of Green Automotive restricted stock that TBG sold to the Daptco Trust.

48. Through the sales by the Daptco Trust of its 1,400,000 shares of Green Automotive restricted stock, TBG received $30,185, which Comu applied to the Daptco Trust Note.

49. The 2010 federal income tax return for TBG reflects total income of $2,366,775 and total expenses of $2,324,571. Of the $2,324,571 in reported operating expenses, $2,137,733 was purportedly for consulting fees and expenses.

50. TBG did not issue Form 1099's to the recipients of the consulting fees as shown on its 2010 federal income tax return.

51. All of the consulting fees paid by TBG were paid to Comu through one or more business entities that Comu owns and/or controls, including but not limited to Marathon Management Limited Company ("Marathon") and Regus Advisors, Inc. ("Regus").

52. In 2011 TBG reported total income of $1,373,688, of which $318,072 was reported as a capital gain from the sale of Green Automotive stock.

53. In 2011, TBG reported deductions or operating expenses totaling $1,327,648, of which approximately $500,000 was for consulting, approximately $236,000 was for "advisory services," $178,200 was for "business analysis," $125,000 was for "exchange registration expense," and approximately $68,550 was for "valuation services."

54. During its entire corporate existence TBG has never held a board meeting nor a shareholder meeting.

55. There are no corporate bylaws for TBG nor other documents that address the manner in which the business of TBG is to be conducted.

56. TBG was used as a conduit to secrete assets in fraud of Comu's creditors, including, in particular, KLE, KLM and Katz.

57. Comu is the only officer or director that has entered into business transactions on behalf of TBG.

58. As the sole officer and director of TBG Comu has completely dominated and controlled the business activities of TBG for the principal benefit of Comu and his wife, Phyllis Comu.

59. All or substantially all of the income derived from the sale of Green Automotive stock has been transferred to Comu or to entities he owns and/or controls.

60. Sunset Pacific was formed as a Texas limited partnership on or about October 30, 1996 by Cecil S. Mathis ("Mathis").

61. In the Sunset Pacific Certificate of Limited Partnership Mathis was listed as the original limited partner of Sunset Pacific, and Coral Group, LLC ("Coral Group") was listed as the initial general partner of Sunset Pacific.

62. On or about July 7, 2005, Marathon and Coral Group entered into a so-called Revised and Restated Agreement of Limited Partnership (the "Revised Partnership Agreement") which purports to revise and restate the Agreement of Limited Partnership dated October 30, 1996.

63. The Revised Partnership Agreement reflects the following partnership interests: Marathon, one percent (1%) general partnership interest, and Coral Group, ninety-nine percent (99%) limited partnership interest.

64. Comu signed the Revised Partnership Agreement on behalf of both Marathon and Coral Group.

65. The Revised Partnership Agreement was not signed by Mathis who according to the original certificate of limited partnership was the sole original limited partner of Sunset Pacific.

66. On July 28, 2005, Comu filed on behalf of Sunset Pacific an amendment to Sunset Pacific's certificate of limited partnership.

67. The July 28, 2005 amendment to Sunset Pacific's certificate of limited partnership reflects that the Coral Group was removed as the general partner, and Marathon was named as the new general partner.

68. Marathon is a Nevada limited liability company that is owned and/or controlled by Comu.

69. On or about January 1, 2006, Marathon and Coral Group signed a document entitled "Consent of General Partner of Sunset Pacific" (the "Consent").

70. Pursuant to the Consent, Coral Group resigned as a limited partner of Sunset Pacific, Comu was admitted as a one percent (1%) limited partner, and Phyllis Comu was admitted as a ninety-eight percent (98%) limited partner.

71. The Consent further reflects that the total capital contributions were as follows: Marathon, $100; Comu, $10; and Phyllis Comu, $980.

72. By a notice dated December 13, 2006, the Texas SOS forfeited Sunset Pacific's right to transact business in Texas due to its failure to file periodic reports required under Texas law and canceled Sunset Pacific's limited partnership certificate.

73. On September 27, 2007, Comu caused to be filed with the Texas SOS one or more periodic reports which caused Sunset Pacific to be reinstated as a Texas limited partnership.

74. On March 16, 2012, the Texas SOS terminated for a third time Sunset Pacific's certificate of limited partnership due to Sunset Pacific's failure to file periodic reports with the Texas SOS.

75. After the March 16, 2012 termination of Sunset Pacific's limited partnership certificate by the Texas SOS, it has not been reinstated.

76. Throughout its existence Sunset Pacific has conducted virtually no business operations.

77. Between 2005 and 2011 Sunset Pacific's federal income tax returns reflect no income or expenses.

78. The 2007 federal income tax return for Sunset Pacific reflects assets totaling $527,750, consisting of a $250,000 annuity and a loan to Sun Sports Entertainment, Inc. ("Sun Sports") in the amount of $277,750.

79. All business decisions relating to the acquisition and disposition of Sunset Pacific's assets, and its limited business operations have been made exclusively by Comu.

80. Brown and Lampe, PLC was never formed as a legal entity.

81. Brown and Lampe, PLC has never owned stock in TBG.

82. 98% of Sunset Pacific and its assets are not the separate property of Phyllis Comu.

83. Phyllis Comu's purported ninety-eight percent (98%) limited partnership interest in Sunset Pacific is under the joint management and control of Comu and Phyllis Comu.

84. Sunset Pacific was used as a conduit to secrete assets in fraud of Comu's creditors, including, in particular, KLE, KLM and Katz.

85. To the extent any finding of fact constitutes a conclusion of law, it shall be construed as a conclusion of law.

## II.    CONCLUSIONS OF LAW

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This is a proceeding to determine that, as of the Petition Date, the assets of TBG and Sunset Pacific are property of the Debtor's bankruptcy estate. The declaratory judgment action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

3.      This is a proceeding for turnover of property of the estate, and therefore is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

4.      Venue for this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409.

5.      Comu is the *de facto* owner of TBG.

6.      Phyllis Comu's purported ninety-eight percent (98%) limited partnership interest in Sunset Pacific is property of the Comu bankruptcy estate pursuant to § 541(a)(2)(A).

7.      TBG is the alter ego of Comu.

8.      Sunset Pacific is the alter ego of Comu.

9.      Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the Trustee is entitled to a judgment declaring that, as of the Petition Date, the assets of TBG and Sunset Pacific are property of the Debtor's bankruptcy estate.

10.     Pursuant to 11 U.S.C. § 542, the Trustee is entitled to an order directing the turnover of all property and assets of TBG that still exist.

11.     Pursuant to 11 U.S.C. § 542, the Trustee is entitled to an order directing the turnover of all property and assets of Sunset Pacific that still exist.

12.     To the extent the assets of TBG and/or Sunset Pacific have been sold or otherwise disposed of since the Petition Date, the Trustee is entitled to a judgment pursuant to 11 U.S.C. § 542 against Comu, TBG and Sunset Pacific, jointly and severally for the value of the assets that

000739

existed on the Petition Date and that are not turned over to the Trustee because they have been sold or otherwise disposed of by Comu.

13.    To the extent any conclusion of law constitutes a finding of fact, it shall be construed as a finding of fact.

Dated: March 3, 2014.

Respectfully submitted,

**REED & ELMQUIST, P.C.**
501 N. College Street
Waxahachie, TX 75165
(972) 938-7339 (direct)
(972) 923-0430 (fax)

By: _/s/ David W. Elmquist_
    David W. Elmquist – SBT #06591300

**ATTORNEYS FOR INTERVENOR, CO-PLAINTIFF, AND THIRD-PARTY PLAINTIFF DIANE G. REED, CHAPTER 7 TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 3, 2014, a true and correct copy of the foregoing Proposed Findings of Fact and Conclusions of Law has been served electronically on Kendyl Hanks, attorney of record for Plaintiffs, and on Dennis Olson, attorney of record for Defendants.

_/s/ David W. Elmquist_
David W. Elmquist

Dennis Olson
State Bar No. 15273500
OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 – Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

ATTORNEYS FOR DEFENDANTS

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CENGIZ J. COMU a/k/a | § | CASE NO. 09-38820-sgj-7 |
| CJ COMU, | § | |
| Debtor. | § | CHAPTER 7 |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, | § | |
| and RONALD KATZ, | § | |
| Plaintiffs, | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| Defendant. | § | |

| | |
|---|---|
| DIANE G. REED, TRUSTEE | § |
| Intervenor, Co-Plaintiff, and | § |
| Third-Party Plaintiff, | § |
| v. | § |
| CENGIZ J. COMU, | § |
| Defendant, | § |
| and | § |
| PHYLLIS E. COMU, BERNARD D. | § |
| BROWN, THE BARCLAY GROUP, INC. | § |
| AND SUNSET PACIFIC, L.P. | § |
| Third-Party Defendants. | § |

## DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants, Cengiz J. Comu, Phyllis E. Comu, Bernard D. Brown, The Barclay Group,

**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**          **Page - 1**

Inc. and Sunset Pacific, L.P., file Defendants' Proposed Findings of Facts and Conclusions of Law.

## I.    FINDINGS OF FACT

1.    Comu filed for bankruptcy protection on December 31, 2009 (the "Petition Date"), approximately eight months after co-plaintiffs King Louie Mining, LLC ("KLM"), King Louie Enterprises, LLc (KLE"), and Ronald Katz ("Katz") had obtained a default judgment against him in New York state court in the approximately amount of $2,280,000.

2.    The judgment debt of KLM, KLE and Katz represents approximately 95% of the total debt owed by Comu as evidenced by the claims filed in Comu's bankruptcy case.

3.    In Comu's Schedule B he listed a one percent (1%) ownership interest in the Barclay Group, Inc. (TBG").  According to Comu's Schedule B, the other ninety-nine percent (99%) shareholder of TBG is Third-party Defendant Bernard D. Brown ("Brown").

4.    In the fall of 2009 through January 10, 2010 TBG participated in and helped facilitate a corporate merger transaction by and between Go Green USA LLC ("Go Green"), a Nevada limited liability company, and Ganas Corp. ("Ganas"), a Delaware corporation.

5.    The terms of the merger transaction were set forth in a Merger Agreement and Plan of Reorganization dated as of November 4, 2009 by and among Ganas, Go Green, and, solely for purposes of Section 1.12 of the agreement, TBG (the "Merger Agreement").

6.    The Merger Agreement between Go Green and Ganas provided that Go Green would be merged with and into Ganas, and Ganas would be the surviving corporation, which would be re-named Green Automotive Company, Inc. ("Green Automotive").

7.    At the time the Merger Agreement was entered into, Ganas was a shell

**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**            **Page - 2**

000742

corporation in that it conducted no business operations, but, according to Comu, its stock could be publicly traded through brokers/dealers registered with certain over-the-counter ("OTC") sotck markets.

8.      At the time of the merger transaction, Go Green's future business plan was to be the exclusive distributor of an electric sports utility vehicle that was being developed in China.

9.      At or about the time of the closing of the Merger Agreement, which occurred on January 10, 2010, TBG received 40% of the common stock issued by Ganas.

10.      As a 1% owner of TBG, Comu received from TBG 1% of the Green Auto shares which TBG received post-peitition.

11.      Sunset Pacific was formed as a Texas limited partnership on or about October 30, 1996 by Cecil S. Mathis ("Mathis").

12.      On January 1, 2006, Comu gave Phyllis Comu 98% of Sunset Pacific.

13.      On or about January 1, 2006, Marathon and Coral Group signed a document entitled "Consent of General Partner of Sunset Pacific" (the "Consent").

14.      Pursuant to the Consent, Coral Group resigned as a limited partner of Sunset Pacific, Comu was admitted as a one percent (1%) limited partner, and Phyllis Comu was admitted a ninety-eight (98%) limited partner.

15.      The Consent further reflects that the total capital contributions were as follows: Marathon, $100; Comu, $10; and Phyllis Comu, $980.

16.      98% of sunset Pacific and its assets are the separate property of Phyllis Comu.

17.      Plaintiffs did not timely object to Comu's discharge.

18.      Plaintiffs did not discover any facts post-discharge that they did not already know

**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**                    **Page - 3**

or were not already inquiring about before the discharge.

19.     Plaintiffs did not seek Rule 2004 discovery or an extension of the discharge deadlines.

20.     To the extent any finding of fact constitutes a conclusion of law, it shall be construed as a conclusion of law.

## II.     CONCLUSIONS OF LAW

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.     This is a proceeding to determine whether the Debtor's discharge should be revoked, and whether, as of the Petition Date, the assets of TBG and Sunset Pacific are property of the Debtor's bankruptcy estate.   These actions are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

3.     This is also a proceeding for turnover of alleged property of the estate, and therefore is also a core proceeding pursuant to 28 U.S.C. § 157(B)(2)(E).

4.     Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409.

5.     The Green Auto stock received by TBG post-petition is not property of the estate.

6.     Comu is not the *de facto* owner of TBG.

7.     Phyllis Comu's purported ninety-eight (98%) limited partnership interest in Sunset Pacific is not property of the Comu bankruptcy estate pursuant to § 541(a)(2)(A).

8.     TBG is not the alter ego of Comu.

9.     Sunset Pacific is not the alter ego of Comu.

10.    Plaintiffs are not entitled to any relief sought in their Second Amended Complaint.

11.    The Trustee is not entitled to any relief sought in her Complaint in Intervention.

12.    To the extent any conclusion of law constitutes a finding of act, it shall be construed as a finding of fact.

Dated:   March 4, 2014

Respectfully submitted,

OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 - Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

By: /s/ Dennis Olson
         Dennis Olson
         State Bar No. 15273500

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 4, 2014 a true and correct copy of the foregoing Proposed Findings of Fact and Conclusions of Law has been served electronically on Kendyl Hanks, attorney of record for Plaintiffs, and on David Elmquist, attorney of record for the Trustee, Diane Reed.

   /s/ Dennis Olson
Dennis Olson

**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**          **Page - 5**

## IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

---

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |

---

| | | |
|---|---|---|
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-plaintiff and | § | |
|     Third-party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CENGIZ J. COMU, | § | |
|     Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| PHYLLIS E. COMU, | § | |
| BERNARD D. BROWN, | § | |
| THE BARCLAY GROUP, INC. AND | § | |
| SUNSET PACIFIC, L.P., | § | **Trial Docket Call:** |
|     Third-party Defendants. | § | **March 4, 2014 at 2:30 p.m.** |

### PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

*AUS 536293304v2*

000746

Plaintiffs King Louis Mining, LLC, King Louis Enterprises, LLC, and Ronald Katz (together, "Plaintiffs") submit the following proposed findings of fact and conclusions of law.

## PROPOSED FINDINGS OF FACT

### A. Findings and Conclusions

1. The determinations, findings, judgments, decrees, and orders set forth and incorporated in this order (the "Order") constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Bankruptcy Rule 7058. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact. The Court hereby orders all of the findings of fact and conclusions of law contained herein.

### B. Parties and Background

2. Plaintiffs King Louis Enterprises, LLC ("KLM") and King Louis Mining, LLC ("KLE") are privately-held Delaware limited liability companies. Plaintiff Ronald Katz ("Katz"), a resident of the State of New York, owns 75% of KLM and 100% of KLE.

3. Defendant Cengiz J. Comu a/k/a CJ Comu ("Debtor" or "Comu") is a Canadian citizen and resident of Dallas, Texas.

4. On July 20, 2006, Plaintiffs Katz, KLM and KLE commenced an action in the Supreme Court of the State of New York, County of New York to recover damages

*AUS 536293304v2*

000747

against Comu for, among other things, common law fraud and securities fraud, *Humitech Int'l Group, Inc., et al. v. Comu, et al*, Index No. 06-602567 (the "New York Action").

5.      Over the three years in which the New York Action was litigated, Comu defended Plaintiffs' claims by filing a motion to dismiss, a verified answer asserting various affirmative defenses to Plaintiffs' claims, and affirmative counterclaims for breach of fiduciary duty and tortious interference contract.

6.      Trial in the New York Action was scheduled for February 23, 2009. Even though he had actively defended the claims against him, Comu failed to appear for trial. The court thereafter signed, filed, and docketed a default judgment against Comu on April 30, 2009, awarding Plaintiffs a total of $2,279,265.16 plus interest accruing at 9% (the "New York Judgment"). Plaintiffs filed a "Notice of Entry of Judgment" in the New York Action on June 9, 2009, which commenced appellate deadlines. On August 6, 2009, Comu filed a notice of intent to appeal the New York Judgment, but did not perfect his appeal, and did not stay enforcement of the New York Judgment.

7.      Accrued interest on the New York Judgment, as of March 17, 2014, is $1,002,064.88, and thus the total debt owed by virtue of the New York Judgment is currently at least $3,281,330.04.

8.      On June 2, 2009, Plaintiffs commenced a new Texas state court action against Comu in Dallas, Texas seeking to collect on the New York Judgment (the "Texas Domestication Action"). *King Louie Mining, LLC, et. al v. Cengiz Jan Comu*, Cause No. 09-0680891, in the 134th Judicial District Court, Dallas County, Texas

9.      Comu was served subpoena duces tecum on August 2, 2009, which sought discovery regarding Comu's assets for the purpose of recovering the debt owed by virtue

*AUS 536293304v2*

000748

of the New York Judgment, and noticed Comu's live deposition for August 19, 2009. Comu filed no objections to the subpoena. The day before his deposition was to be taken, Comu, through his attorney Dennis Olson ("Olson") informed Plaintiffs that he was unavailable, and asked to reschedule the deposition.

10.     Between August and November, 2009, Plaintiffs made repeated attempts to reschedule Comu's deposition, to which Comu failed to respond. Plaintiffs filed a Motion to Compel on November 23, 2009, which was set for hearing on December 14, 2009. Olson appeared at the December 14, 2009 hearing, and on Comu's behalf agreed to an order granting the Motion to Compel, in which the court awarded $350 for Plaintiffs' fees incurred with respect to the motion, and ordered Comu to appear for deposition on January 5, 2010.

11.     While Plaintiffs were attempting to secure Comu's deposition in the Texas Action between August and November 2009, Comu was preparing to file his petition in the Bankruptcy Case No. 09-38820-sgj7 (the "Bankruptcy Case"). On December 31, 2009, Comu and his wife, Phyllis Comu ("Phyllis Comu"), took a cruise to the Caribbean, which Comu paid for with his credit card.

12.     Comu filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Case on December 31, 2009 (the "Petition Date").

13.     On January 4, 2010 – the day before Comu's court-ordered deposition in the Texas Action – Comu filed a "Suggestion of Bankruptcy" staying the Texas Action pursuant to 11 U.S.C. § 362.

14.     Diane G. Reed was appointed as the Chapter 7 Trustee in the Debtor's underling bankruptcy case (the "Trustee").

AUS 536293304v2

15.     On January 4, 2010, the Court issued a "Notice of Deficiency" in the Bankruptcy Case, due to Comu's failure to file Debtor's Schedules A – J (the "Schedules"), copies of employee records, a Statement of Current Monthly Income, and other documents with his Petition, and instructed him that these filings were due within 14 days of the Petition Date (of January 14, 2010).  Comu did not meet this deadline.

16.     On January 15, 2010, the Debtor filed his Schedules, Statement of Financial Affairs, Chapter 7 Individual Debtor's Statement of Intention, and Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Statement of Current Monthly Income") (collectively, the "Bankruptcy Filings").  Debtor's Statement of Current Monthly Income provides no information about Comu's income and expenses. Debtor's Debtor did not amend his Schedules or Statement of Financial Affairs at any point during the Bankruptcy Case to correct, update or clarify his disclosures.

17.     On February 9, 2010, the Trustee held the Meeting of Creditors as required by 11 U.S.C. § 341 (the "Meeting of Creditors").

18.     On February 11, 2010, Plaintiffs each timely filed proof of claims in the Bankruptcy Case, seeking to recover their share of the New York Judgment from the bankruptcy estate.  Specifically, Katz filed an unsecured claim for $75,508.22, KLE filed an unsecured claim for $199,811, and KLM filed an unsecured claim for $2,003,945.84. Plaintiffs' claims in the Bankruptcy Case constitute over 95% of creditor claims.

19.     On April 14, 2010, the Debtor was granted a discharge (the "Discharge") by the Court.  Such discharge was granted in reliance on the truthfulness of the statements in Debtor's Bankruptcy Filings.

*AUS 536293304v2*

000750

20.     Plaintiffs commenced this adversary proceeding, Case No. 10-03269 (the "Adversary") on September 3, 2010, seeking revocation of discharge pursuant to Section 727(d) of the United States Bankruptcy Code.  On March 2, 2011, Plaintiffs filed their Second Amended Complaint to Revoke Discharge Pursuant to Section 727(d) of the United States Bankruptcy Code (the "KLM Complaint").

### C.  Facts Supporting Revocation of Discharge

21.     In Schedule B of his Bankruptcy Filings, and in sworn testimony given in the Bankruptcy Case and this Adversary Proceeding, Comu has claimed to own only 1% of The Barclay Group, Inc. ("TBG"), and that he is only a TBG employee.  Comu has alternatively claimed that the other 99% of TBG is owned by Bernard Brown or by Brown & Lampe, Plc ("B&L").  Comu claims that he owns only 1% of TBG by virtue of an "Acquisition Agreement and Plan of Share Exchange" with B&L purportedly executed in 2007, by which Comu claims he acquired 99% of B&L.  Assuming, without finding, this agreement had the effect of transferring Comu's 99% interest in TBG to Bernard Brown or B&L, Comu intentionally failed to disclose his 99% interest in B&L in his Bankruptcy Filings.

22.     In addition, public filings with the Texas Secretary of State and other evidence, including TBG account statements and Comu's internal communications, indicate that Comu owns and controls 100% of TBG, and that he and Phyllis Comu use TBG accounts to pay personal expenses (including taxes on their home, country club fees, charitable donations, fitness club dues, and one cash payment to Phyllis Comu on the Petition Date), and thus the Court finds Comu's claim to own only 1% of TBG to be at least deliberately misleading.  Public filings and tax returns indicate that the legal name

*AUS 536293304v2*

000751

of TBG is actually "Barclay Group, Inc.," and that "The Barclay Group, Inc." is a different legal entity in which Comu may or may not have any interest.  Comu's disclosures in his Bankruptcy Filings and in subsequent testimony under oath were deliberately misleading with regard to the nature and extent of Comu's interest in TBG.

23.     In a further effort to conceal his assets and business interests in TBG, Comu formed entity Regus Advisors, Inc. ("Regus"), along with related entities, in mid-2010 as a new vehicle for completing TBG projects that commenced before the Petition Date.  Comu owns 100% of Regus either directly or indirectly through TKY Trust, a Canadian trust, and has transferred TBG assets to Regus,

24.     Comu did not disclose any interest in TKY Trust ("TKY") in his Bankruptcy Filings.   When questioned about TKY, Comu admitted that he is a beneficiary of TKY, but claimed that the trust was set up for him by his family after the Petition Date.  But Comu's email internal correspondence confirms that Comu (not his brother) began the process of establishing TKY in late 2009 in anticipation of his bankruptcy.  Comu prepared the TKY trust documents in December, 2009 and sent them to his family for signature.  Comu funded TKY with a transfer of 5 million shares of Green Auto stock (discussed below) in January, 2010.  Comu directed the disposition of TKY assets and the distribution of TKY funds in 2010.  TKY was therefore a vehicle employed by Comu to conceal and liquidate assets that should have been available to the bankruptcy estate.

25.     Comu has also used DAPTCO Trust ("DAPTCO"), another Canadian Trust that Comu claims is held in his brother's name as trustee, for the purposes of concealing and liquidating assets attributable to the estate.  For example, on January 5,

2010 – just days after filing his Petition in the Bankruptcy Case – Comu contacted his brother to inform him that he would "like to issue some stock to you" and Comu's sister, Aylin." Comu subsequently transferred 2 million shares of Green Auto stock (described below) to DAPTCO. As discussed below, Comu used DAPTCO as a vehicle for concealing and liquidating TBG assets.

26.     In Schedule B, Comu discloses an account in the name of "Marathon Management, Inc." ("Marathon Management") with a current value of $78.50. In his Statement of Financial Affairs, Comu discloses that within the last six years he had been an "Officer/Director" of Marathon Management. These disclosures were incomplete and misleading, and calculated to underplay the true nature of Comu's interests in Marathon Management. Public filings and internal correspondence confirm that Comu actually owns 100% of Marathon Management, and his tax returns and bank records reflect that he received pre-petition income from Marathon Management, which was not disclosed in his Statement of Financial Affairs. In addition, TBG's back records indicate substantial cash transfers to Marathon Management for Comu's benefit – include a wire transfer for $225,000 in September, 2011. Comu used some of this cash to purchase a Mercedes Benz S-550 for his personal use, but held in Marathon Management's name.

27.     In Schedule B, Comu claimed to own 1 % of Sunset Pacific, LP ("Sunset Pacific"), with the remainder of the entity being owned by his wife (Phyllis Comu, 98%) and his brother Gem Comu (1%). This was a false statement intended to conceal Comu's true interest in Sunset Pacific. First, Comu shares equal control and enjoyment of the assets in Sunset Pacific with his wife, Phyllis Comu, who confirmed that Sunset Pacific's assets are used to support their personal lifestyle. Second, even assuming Sunset Pacific

AUS 536293304v2

000753

were owned 98% by Phyllis Comu as Comu claims, public documents confirm that Gem Comu is not a 1% owner of Sunset Pacific – Marathon Management is the remaining 1% partner. As noted above, Marathon Management is owned 100% by Comu. Therefore, Comu deliberately concealed his true ownership interest in Sunset Pacific, an entity he uses to hold substantial assets.

28.　　Comu failed to disclose in any Bankruptcy Filing his interest and involvement in a November, 2009 reverse merger (the "Green Auto Merger") between Go Green USA, LLC ("Go Green") and GANAS, Corp. ("GANAS"), by virtue of which Go Green merged into GANAS, and GANAS changed its name to Green Automotive Company Corporation ("Green Auto"). In August through October of 2009, Comu was personally involved with drafting the merger documents and arranging for financing.

29.　　On October 26, 2009, TBG acquired 95,420,116 out of 95,746,817 outstanding shares from GANAS shareholders, thereby becoming the owner of GANAS. Comu personally executed the agreements by which TBG acquired these shares, and personally received the physical GANAS stock certificates. Assuming, without finding, that Comu's claim to own only 1% of TBG is truthful, Comu failed to disclose his 1% interest in these 95 million shares of GANAS stock (roughly equivalent to 950,000 shares).

30.　　Two days later, on October 28, 2009, Comu was elected as "President" and "Director" of GANAS. The Green Auto Merger agreements were executed on November 4, 2009. Comu executed the merger documents as "President" of TBG and as "President" and "Director" of GANAS. Comu did not disclose these positions as required in his Statement of Financial Affairs.

AUS 536293304v2

000754

31.     At the Effective Time of the merger, GANAS became the "Surviving Corporation," meaning that GANAS's "existence, and all its purposes, powers, and objectives will continue unaffected and unimpaired by the Merger," except that "[t]he name of the Surviving Corporation from and after the Effective Time shall be 'Green Automotive Company Corporation.'"  As a result, TBG's 95 million shares of stock in GANAS – acquired on October 26, 2009 – automatically converted into a right to received Green Auto stock certificates as of November 5, 2009.

32.     The merger agreement also granted TBG "anti-dilution rights" in Green Auto, which became effective on the same date as the merger, and which ensured TBG would retain – with no further consideration – 40% of Green Auto for two years after the merger.   This anti-dilution clause represented a valuable interest in Green Auto over and above the over 95 million shares TBG initially acquired in 2009.  TBG received millions of shares of Green Auto stock in 2010 by virtue of this anti-dilution clause, none of which was disclosed in Comu's Bankruptcy Filings.

33.     Comu did not disclose his pre-petition equitable interest in Green Auto stock (whether via his direct interest, or by virtue of his interest in TBG or his interest in B&L), nor did he disclose his valuable interest in the anti-dilution clause – which represented a valuable right to receive stock in the future (and actually did result in the distribution of additional shares to TBG).  In addition, in his Schedules, Comu claimed to have no equitable or future interests, rights or powers exercisable for the benefit of the Debtor, other than those disclosed in Schedule A – Real Property, which did not disclose any interest in Green Auto or GANAS stock.

10

34.     In addition to his failure to disclose any information about the Green Auto Merger in his Bankruptcy Filings, Comu attempted to actively conceal his involvement with the deal and its relevance to the bankruptcy estate.  When questioned under oath about his involvement and interest in the Green Auto Merger, Comu gave deliberately misleading testimony that was calculated to conceal his interest in the Green Auto Merger, and the assets he acquired shortly before the Petition Date by virtue of the deal. Comu first testified that the GANAS stock was initially acquired by Maybourne, and not TBG – which is contradicted by the agreements Comu personally executed on behalf of TBG.  Comu subsequently testified that the Green Auto merger was not effective until after he filed his bankruptcy petition on December 31, 2009.  But by the terms of the merger agreement, the Green Auto Merger became effective "at the date and time the Merger Certificates are filed with the latter of the respective offices of the Secretary of State of the State of Delaware and the Secretary of State of the State of Nevada (the '**Effective Time**')."  On November 4, 2009, the Certificate of Merger for GANAS and Go Green was filed with the Delaware Secretary of State, and on November 5, 2009 a certified copy of the Articles of Merger between GO Green and GANAs were filed with the Nevada Secretary of State.   Comu executed both documents on behalf of GANAS.

35.     Comu's own internal correspondence confirms his knowledge and understanding that the Green Auto Merger was effective before the Petition Date.  On November 10, 2009, Comu received an email from Christopher McNeill, one of the attorneys handling the Green Auto Merger, stating, "We have received confirmation that the merger certificates have been accepted by both Delaware and Nevada, with an effective date for the merger of November 5, 2009."   Green Auto's filings with the

AUS 536293304v2

000756

Securities and Exchange Commission ("SEC") also acknowledge the merger's effective as of November, 2009.  And on December 28, 2009 – just three days before filing his Petition – Comu sent an email stating he was "back in corporate finance and just recently listed another company Green Automotive Company (Symbol: GNAS) in November with three more in new year."  This evidence supports the Court's finding that Comu's lack of disclosure and misleading testimony regarding his involvement with the Green Auto Merger was with fraudulent intent.

36.    Because the Green Auto Merger was effective before the Petition Date, TBG's ownership and Comu's interest (whether direct or indirect) in over 95 million shares of Green Auto stock (the "Pre-Petition Stock") arose prior to the Petition Date. This fact is further confirmed by TBG accounts, which indicate that TBG started receiving cash payments from investors purchasing Green Auto stock as early as November, 2009.

37.    Both before and after the Petition Date, Comu personally controlled and directed how the Pre-Petition Stock was transferred and distributed, and he did so in a manner that was deliberately orchestrated to conceal his and TBG's interests in Pre-Petition Stock.  First, on behalf of TBG, Comu executed a "Memorandum of Understanding" (the "MOU") dated November 24, 2009 with The Maybourne Group, Ltd., a foreign entity ("Maybourne") and First Market Services, Inc. ("FMS"), which set forth a plan to divide the Pre-Petition Stock among the three parties, and to place the Pre-Petition Stock "into a new Corporation for the equal benefit and equal ownership" of all three parties.  Evidence indicates that Comu helped set up Maybourne for this specific

purpose.  No apparent consideration was given for the MOU, and by its own terms TBG retained "equal ownership" of the Pre-Petition Stock.

38.    In accordance with the MOU, less than two weeks after Comu filed his Petition in the Bankruptcy Case, Comu sent a FedEx package to Olde Monmouth Stock Transfer ("OMST") (the transfer agent for Green Auto) in January, 2010 with the GANAS stock certificates TBG had acquired in October, 2009, and instructions for OMST to issue new Green Auto stock certificates to various recipients – including Maybourne, FMS and TBG.  The new stock certificates were issued on January 13, 2010 – two days before Comu filed his Schedules and Statement of Financial Affairs.  This had the effect of shifting two-thirds of TBG's Pre-Petition Stock into the names of FMS and Maybourne, thus concealing TBG' interest in the Pre-Petition Stock without depriving TBG of its value.  Comu did not disclose TBG's interest in the MOU in his Bankruptcy Filings.

39.    In accordance with the anti-dilution clause in the Green Auto merger agreement, between January 15, 2010 and July 31, 2010, TBG received at least 15 million shares of Green Auto stock (the "Post-Petition Stock") in addition to the Pre-Petition Stock.  Because these shares were issued in accordance with TBG's rights set forth in the Green Auto merger agreement, they constitute an interest attributable to the bankruptcy estate.  Comu did not disclose his direct or indirect interest in this stock, nor did he turn this stock or related proceeds over to the trustee for inclusion in the estate.

40.    In addition to shifting approximately two-thirds of TBG's Pre-Petition Stock into the certificates held in the name of Maybourne and FMS, Comu further directed OMST to divide the remaining one-third of TBG's Pre-Petition Stock and TBG's

13

000758

Post-Petition Stock among various entities in which Comu held a direct or indirect interest, including but not limited to TBG, Sunset Pacific, Maybourne, FMS, DAPTCO Trust, TKY Trust, EuroCap, World Wide Auric, and Newhaven Nominees.

41.     Comu also instructed OMST to issue a certificate for 300,000 shares in Comu's name (the "Comu Stock Certificate").  The Comu Stock Certificate was not disclosed in Comu's Bankruptcy Filings, and was not disclosed in any filing in the Bankruptcy Case until Feb. 29, 2012, when the Trustee filed an interim report disclosing that Comu had a "Right to receive" 300,000 shares Green Auto stock, which would be included in the estate.  Some of the Pre-Petition Stock remains in the possession of TBG, Sunset Pacific, and other Comu-controlled entities, but most of the Pre-Petition Stock has been liquidated for cash.

42.     Beginning in 2009 and through at least the end of 2013, Comu gradually liquidated TBG's Pre-Petition Stock and Post-Petition Stock for cash, in a series of transactions that were effected directly through TBG, DAPCTO, or TKY, or indirectly through affiliates or entities Comu set up for the purpose of holding or liquidating the TBG's Green Auto holdings.  For example, between June, 2011 and March, 2012, TKY received a least $1,033,882.95 and TBG received at least $2,839,857 as a result of the sale of Green Auto stock through OMST.  Those cash payments were distributed, at Comu's direction, among TKY, TBG and other Comu-controlled entities and accounts. At Comu's direction, cash proceeds exceeding at least $4 million were distributed to various entities or accounts controlled by or held for the benefit of Comu, including TBG, Marathon Management, Newhaven Nominees, World Wide Auric, DAPTCO and TKY.

AUS 536293304v2

000759

43.    In 2010 Comu also facilitated the creation of a new entity called Electronic Registry, Inc. ("ERI").   TBG, FMS and Maybourne transferred millions of shares of Green Auto stock – all of which was originally derived from the Pre-Petition Stock – to ERI for sale to the investing public.  Stock transfers to ERI were made in accordance with Comu's own instructions to OMST, and were made for no apparent consideration.  Between May 5, 2010 and November 3, 2010, approximately 60 million shares of Green Auto stock originating from TBG's Pre-Petition Stock and the Post-Petition Stock were transferred or sold through ERI, and ERI has continued to conduct transactions involving Green Auto stock since then.  TBG bank records indicate cash  of over $800,000 from ERI in 2010 alone.  ERI was therefore a vehicle employed by Comu to conceal his direct and indirect interest in Green Auto stock, and to collect the cash proceeds derived from the sale of that stock without conducting transactions in his own name.

44.    Comu has also used EuroCap Investments PLC ("Eurocap"), a UK entity that Comu founded and controls, as a vehicle for concealing assets and liquidating TBG's holdings of Green Auto stock.  Comu caused TBG to transfer at least $125,000 is cash to Eurocap in 2011.  On November 8, 2011, Comu also caused TBG to transfer 10 million shares of restricted Green Auto stock to EuroCap.  Comu has also used Eurocap to liquidate Green Auto stock in return for cash.

45.    In Section 1 of his Statement of Financial Affairs, Comu knowingly and intentionally misrepresented his actual income from 2008 and 2009, and deliberately underestimated his 2010 income, in his Bankruptcy Filings.  In his Schedules, Debtor estimated that his combined average monthly income for 2010 was $5,000, and in his

AUS 536293304v2

000760

Statement of Financial Affairs he estimated that his total income from employment or operation of business for 2010 would be $0. Comu also claimed that his total income for 2009 from employment or operation of business was $20,000 received from TBG, and he disclosed no income from Sun Sports for 2009. Comu knew these were false or misleading statement because in his draft Bankruptcy Filings (dated January, 2010), Comu estimated that his income from TBG actually varied from $5,000 to $10,000 per month. And in his 341 Exam, taken in November, 2011, Comu also testified that when he resigned from Sun Sports in 2009 his salary was $60,000 per year. Similarly, for 2008, Debtor claimed in his SFA that his total gross income for 2008 from employment or operation of business was $27,693 received from Sun Sports and Entertainment. Comu did not disclose $16,465.12 in 2008 income from an entity called "Odessey One Source, Inc." Comu never amended his Schedules or Statement of Financial Affairs to reflect the full amount or actual sources of his income for 2008, 2009 and 2010 – and information obtained after discharge confirmed that he realized substantial income in 2010 (a great deal of which resulted from 2009 business activities).

46. In Section 18 of Comu's Statement of Financial Affairs, Comu was required to disclose the names, tax EIN numbers, nature of the businesses, and beginning and ending dates of all businesses in which Comu was an officer, director, partner, or managing executive for the six years preceding the Petition Date. The information provided in in this section is not only incomplete for the four positions Comu did disclose, but Comu also intentionally failed to disclose his interests and executive positions in a number of different entities, including Grey Point Partners, LLC, GANAS, Corp., Coral Group, LLC., Global Energy Technology Group, Inc., Harpcrest Ltd.,

AUS 536293304v2

000761

Campus Investments PLC, A-Venture Capital, LLC, and Revolution Fight Club LLC. Comu also affirmatively denied any interest in or affiliation with at least some of these entities when being examined under oath in the Bankruptcy Case and the Adversary Proceeding. Therefore, Comu engaged in an active and ongoing effort to conceal his interests and involvement in these entities from the Trustee and his creditors.

47.     In Schedule B, Section 24, of his Bankruptcy Filings, Comu claimed to have no interest in any intellectual property. This was a false statement because, on April 17, 2009, Comu personally filed a trademark application in his name for "Man-A-Mano," which he has never disclosed in the bankruptcy. Mano-A-Mano was relevant to Comu's position as CEO of Sun Sports & Entertainment (from which he resigned on July 31, 2009), which produced mixed martial arts ("MMA") events, and was relevant to MMA projects Comu pursued from August, 2009 through March, 2010. Therefore, the Mano-A-Mano trademark (as well as the MMA projects in which he was involved) were material to the bankruptcy and should have been disclosed. Comu also failed to disclose numerous domain names owned by him through accounts at GoDaddy.com, including thebarclaygroup.com, sunorganization.com, artofwarlive.com and numerous other domain names related to his businesses.

48.     Comu alleged in Schedule F of his Bankruptcy Filings a total of unsecured debts in the amount of $6,122,686.71. This was a false statement, made with fraudulent intent, for the purpose of concealing Comu's true financial condition, which was much better than he claimed. Specifically, the following "debts" identified in Comu's Schedules are false or duplicate debts elsewhere claimed, thus creating a dramatically exaggerated illusion of indebtedness: (1) a judgment for $1,960,000 related to

AUS 536293304v2

000762

"Humitech," referencing "Ann F. McCaughey and John Reichman of Wachtel & Masyr, LLP," (2) a judgment for $1,234,766.02 in favor of AJW Partners LLC, by virtue of a Civil Judgment in Case No 01-Civ-10841 (RCC), (3) a judgment for $672,969 in favor of AJW Partners LLC, by virtue of a Civil Judgment in Case No. 3:06-CV-01180-l. Comu also failed to disclose other unsecured creditors, including an American Express account that he identified as debt in a draft document prepared for his counsel for the purpose of creating his Bankruptcy Filings.

49.    In his 341 Exam, Comu admitted to receiving compensation in 2010 or 2011 in the form of stock and cash for his role in deals for entities called "T3 Networks" and "ParagonGPS." Comu's work on these projects began in 2009, before the Petition Date. Therefore, Comu received stock and cash for services performed prior to the Petition date, which constitutes assets of the estate.

50.    In "Schedule A – Real Property," Comu claimed as his homestead a property at 5301 Paladium Drive (the "Paladium Home"). In 2010, Comu moved out of the Paladium Home and leased the property to renters, thus generating a monthly income from the property that, as of the Petition Date, was claimed as a homestead. Comu and his wife moved into a new home on Oaks North Place in Dallas, Texas (the "Oaks North Home") that was purchased in 2010 by a British Virgin Islands entity called Continental Partnership, Inc. ("Continental Partnership"). Comu has claimed under oath in the Bankruptcy Case and this Adversary Proceeding that the Oaks North Home was purchased, and is owned, by Comu's brother Gem Comu as the owner of Continental Partnership, and that Comu pays rent to his brother for use of the Oaks North Home. To the contrary, evidence indicates that, utilizing the services of Newhaven Nominees

("Newhaven"), Comu himself established and controlled Continental Partnership, as well as a related UK entity called Continental Investments Holding Company, and that Comu also established a bank account at Turkish Bank through which the funds to purchase the Oaks North Home were transferred. There is no evidence that Comu actually pays rent to his brother or to Continental Partnership for use of the Oaks North Home.

51. The Court finds that the above facts exhibit a deliberate and ongoing scheme by Comu to conceal assets and hide income, and to prevent Plaintiffs from recovering on the New York Judgment.

52. The Court finds that Comu's actions, omissions, and misrepresentations described above were material to the bankruptcy estate, and reflect Comu's fraudulent intent and reckless disregard for the truth.

53. The Court further finds that Comu's fraud herein is separate, apart from, and in addition to the allegations of fraud made by Plaintiffs against Comu in the underlying the New York Judgment.

54. Plaintiffs discovered the truth of Comu's financial situation, and uncovered the scope of Plaintiffs' fraud – which involved millions of dollars in cash transactions effected at the direction of, and for the benefit of, the Debtor – only after reviewing tens of thousands of electronic documents produced from Comu's and TBG's computers in late 2013.

55. The Court finds that to the extent the above facts constitute false oaths or undisclosed pre-petition assets, Plaintiffs did not know of Comu's fraud until after discharge was granted. To the extent Comu made any partial disclosures of facts pertaining to the above to the Trustee or Plaintiffs, such disclosures were incomplete,

19

000764

inaccurate and misleading, and calculated to deflect investigation by creditors and the Trustee into Comu's true financial circumstances and assets. Comu's deliberate efforts to conceal the truth prevented the Plaintiffs from discovering the truth about Comu's business activities, assets and interests before discharge was granted. Therefore, to the extent Comu partially disclosed any facts pertaining to the above false oaths and undisclosed pre-petition assets, such disclosures do not constitute knowledge on the part of Plaintiffs of Comu's fraud before discharge.

### PROPOSED CONCLUSIONS OF LAW

### A.  Jurisdiction & Standard of Proof

56.    The Court has jurisdiction over the instant adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adjudicating this Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

57.    This Adversary Proceeding is brought pursuant to 11 U.S.C. §§727(d)(1) and (d)(2).

58.    This Adversary Proceeding is timely because it was filed within (1) one year of the Discharge being granted in accordance with 11 U.S.C. §727(e)(1) and (e)(2).

59.    Plaintiffs bear the burden of establishing the elements of their revocation claims by a preponderance of the evidence.[1]

### B.  Debtor's Continuing Duty to Make Complete and Accurate Disclosures

---

[1]     *See, e.g.*, *Reed v. Cooper (In re Cooper)*, 426 B.R. 227, 238 (Bankr. N.D. Tex. 2010), *aff'd*, 443 Fed. App'x 888 (5th Cir. 2011); *see also First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d , 1157 (10th Cir. 1991); In re Kaliana, 202 B.R. 600, 6-4 (Bankr.N.D.Ill. Nov 27, 1996); *Bowman v. Belt Valley Bank (In re Bowman)*, 173 B.R. 922, 925 (9th Cir. BAP 1994).

20

000765

60.     As this Court has stated "[a] discharge in bankruptcy is a privilege, not a

right.  To obtain (and retain) this privilege, a debtor must act with absolute candor and

cooperation *vis-a-vis* the trustee."[2]  In order to avail himself of that privilege, Comu was

subject to the disclosure rules in the Bankruptcy Code, which "clearly imposes upon the

debtor a duty to disclose assets as a matter of law."[3]  In other words, "the debtor's duty of

full disclosure ... is the *quid pro quo* for the fresh start provided by the discharge."[4]

61.     While objections to discharge should be narrowly construed in furtherance

of the policy of a fresh start for the debtor, the purpose of provisions like section 727 is to

ensure that those who seek bankruptcy protection "do not play fast and loose with their

assets or with the reality of their affairs."[5]

62.     Therefore, it is well-settled that "[a] debtor has a duty to carefully examine

the schedules and to be very sure that all information listed is completely correct."[6] Comu

had the burden "to use reasonable diligence in completing [his] schedules and list of

debts,"[7] and he had "a ***continuous, affirmative duty*** to disclose the following in a

---

[2]     *In re Cooper*, 426 B.R. 227, 240 (Bankr. N.D. Tex. 2010); *see also Hughes v. Wells (In re Wells)*, 426 B.R. 579, 98 (Bankr. N.D. Tex. 2006) ("Discharge is a privilege, not a right, and it should only be provided 'to those debtors who put forth a good faith effort in producing an entire picture of their financial affairs.'") (quoting *J.P. Morgan Chase Bank v. Hobbs (In re Hobbs)*, 333 B.R. 751, 755 (Bankr. N.D. Tex. 2005)).

[3]     *Lowe v. King (In re King)*, 2006 WL 3861097, at *3–5 (Bankr. W.D. Tex. Dec. 29, 2006) (citing 11 U.S.C. §§ 521(1) and 521(3)).

[4]     *In re Hicks*, 184 B.R. 954, 957 (Bankr. C.D. Cal. 1995).

[5]     *In re Hughes*, 353 B.R. 486, 499 (Bankr. N.D. Tex. 2006).

[6]     *Roberts v. McVay (In re Roberts)*, NO. CIVA SA-07-CV583-XR, 2010 WL 376399, at *5 (W.D. Tex. Jan. 25, 2010) (citing *Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 593–94 (Bankr. N.D. Tex. 1991) ("A debtor has a paramount duty to carefully consider all questions posed on his schedules and statement of affairs and see that each question is answered completely in all respects.")).

[7]     *Banc One, Texas, N.A. v. Braymer (In re Braymer)*, 126 B.R. 499, 502 (Bankr. N.D. Tex. 1991)

AUS 536293304v2

000766

***complete and accurate*** manner: (a) a list of creditors; (b) schedules of assets, liabilities, current income, and current expenditures; and (c) a statement of financial affairs."[8]

63.     Comu's disclosures in his Statement of Financial Affairs and Schedules "serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true."[9] As one bankruptcy court stated:

> We cannot emphasize strongly enough that it is important that debtors complete their Schedules accurately. They are, of course, prepared on a self-declaratory "honor system." They must therefore be considered highly significant, at least when invoked against a debtor to attempt to hold it to its own "honor-system" declarations.[10]

64.     Debtor's good faith compliance with this "honor system" is crucial because creditors are entitled to truthful statements in a debtor's statement of financial affairs so that they may conduct their own investigations of those affairs [11] "[N]ondisclosure can prevent a trustee [or a creditor] from even knowing of the assets' existence in time to object to discharge, resulting in the discharge being procured by the debtor's failure to fulfill his duty to disclose."[12] As stated in *Banc One, Texas, N.A. v. Braymer (In re Braymer)*, 126 B.R. 499, 503 (Bankr. N.D. Tex. 1991) (citations omitted):

> Bankruptcy law presupposes that one who seeks its protection will deal honestly and fairly with creditors by furnishing a complete and accurate schedule of assets. The trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has

---

[8]     *In re Landry*, 350 B.R. 51, 58 (Bankr. E.D. La. 2006) (emphasis added).

[9]     *In re Landry*, 350 B.R. 51, 58 (Bankr. E.D. La. 2006).

[10]     B. *Cohen & Sons Caterers, Inc. v. New Plan Realty Trust (In re B. Cohen & Sons Caterers, Inc.)*, 97 B.R. 808, 817 (Bankr. E.D. Pa. 1989); *see also In re Seaton*, 462 B.R. 582, 595 (Bankr. E.D. Va. 2011); *Croge v. Katz (In re Katz)*, 203 B.R. 227, 233 (Bankr. E.D. Pa. 1996).

[11]     *In re Cycle Accounting Services*, 43 B.R. 264, 272 (Bankr. E.D. Tenn. 1984)

[12]     *Lowe v. King (In re King)*, 2006 WL 3861097, at *3–5 (Bankr. W.D. Tex. Dec. 29, 2006) (citing *Matter of Yonikus*, 974 F.2d at 904; *In re Edmonds*, 924 F.2d, at 180; *see also In re Peli*, 31 B.R. 952, 955 (Bankr. E.D.N.Y. 1983).

22

> passed through the debtor's hands during the period prior to bankruptcy. A debtor has a paramount duty to consider all questions posed on statement or schedules carefully and see that question is answered completely in all respects. Additionally, a debtor has an ongoing obligation to disclose all transfers, attempted transfers, unlisted assets and other relevant information.

*See also Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 593 (Bankr. N.D. Tex. 1991).

65.     The issue is not necessarily the value of the debtor's undisclosed assets, but the "completeness and accuracy" of the description of the interests, business affiliations he is required to disclose in his SFA and Schedules.[13] "A debtor must be scrupulous in giving notice of all assets to which others may make a legitimate claim, and may not avoid questions by failing to disclose the asset even though he or she may think it may be theirs to keep."[14] "[D]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate."[15]

66.     Moreover, Debtor's duty to disclose his assets and business activities does not just apply to valuable assets or assets held directly in his own name. "The basic principle behind the Statement of Financial Affairs is to give both the UST and any creditors an accurate portrait of the debtor's financial situation, and exclusions based upon the debtor's belief they have no value do not help fulfill that purpose."[16] Even if an

---

[13]     *In re Loew*, 2012 WL 1229904 (Bankr. D. Mass. Apr. 11, 2012); *see also In re King*, 2006 WL 3861097 (Bankr. W.D. Tex. Dec. 29, 2006) (debtor failed to disclose ownership of various properties and interests in businesses in his bankruptcy schedules and statement of affairs and such omissions constituted false oaths because the schedules were filed under penalty of perjury).

[14]     *Banc One, Texas, N.A. v. Braymer (In re Braymer)*, 126 B.R. 499, 502 (Bankr. N.D. Tex. 1991) (citing *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 616 (Bankr. 9th Cir. 1988)).

[15]     *Neary v. Darby (In re Darby)*, 376 B.R. 534, 540 (Bankr. E.D. Tex. 2007) (quoting *Matter of Yonikus*, 974 F.2d 901, 904 (7th Cir.1992)).

[16]     *Roberts*, 2010 WL 376399 at *5.

23

account is not held in the debtor's name, it must be disclosed if the debtor utilizes the account. [17]   A debtor is also required to provide details regarding any pre-petition transfers. [18]   And even if a particular asset should ultimately be excluded from the property of the estate, a debtor's interest in that asset must be disclosed – and failure to do so constitutes fraud by the debtor.[19]

### C.   Fraudulent Intent Supporting Revocation

67.     Under both 11 U.S.C. §§727(d)(1) and (d)(2), Plaintiffs must establish Debtor's fraudulent intent by a preponderance of the evidence.  "Fraudulent intent may be proved by showing either actual intent to deceive or a reckless indifference for the truth."[20]

68.     As this Court stated in *Reed v. Cooper*, "'proving a knowing and fraudulent intent is not a simple matter, for rare will be the debtor who provides direct evidence of his fraudulent intent.'"[21]   Therefore, "'fraudulent intent is most often found by relying on inferences drawn from a course of conduct.'"[22]

---

[17]      *See, e.g.*, *In re Katz*, 203 B.R. at 234 (funds belonging to the Debtor admittedly flowed in and out of that account, even if the account was not in the Debtor's name and other persons utilized it); *In re Essres*, 122 B.R. 422, 427 (Bankr. D. Colo. 1990), *aff'd*, 139 B.R. 958 (D. Colo. 1992) (citing debtors for failing to disclose seven bank accounts which, though not in their name, were utilized by them).

[18]      *Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 428 (Bankr. N.D. Ohio 2004).

[19]      *See, e.g.*, *Banc One, Texas, N.A. v. Braymer (In re Braymer)*, 126 B.R. 499, 502 (Bankr. N.D. Tex. 1991); *Croge v. Katz (In re Katz)*, 203 B.R. 227,  (Bankr. E.D. Pa. 1996) ("At least the existence of the trust of whic*In re Donald*, 240 B.R. 141 (1st Cir.BAP (Mass.) Oct 26, 1999)h the Debtor is a beneficiary should have been disclosed.").

[20]      *In re Cooper*, 426 B.R. 227, 239 (Bankr. N.D. Tex. 2010), *aff'd*, 443 F. App'x 888 (5th Cir. 2011);  *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 504 (Bankr. N.D. Tex. 2006); *see also Sholdra v. Chilmark Fin., LLP (In re Sholdra)*, 249 F.3d 380, 382–83 (5th Cir. 2001).

[21]      *Reed v. Cooper (In re Cooper)*, 426 B.R. 227 (Bankr. N.D. Tex. 2010), *aff'd*, 443 Fed. App'x 888 (5th Cir. 2011) (quoting *McNally v. Echart (In re Echart)*, 374 B.R. 596, 599 (Bankr. E.D. Tex. 2007)).

[22]      *Reed v. Cooper*, 426 B.R. at 227, 238; *see also Matter of Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992) ("[A] finding of fraudulent intent may be based on inferences drawn from a course of conduct ... [or] from all of the surrounding circumstances."); *Matter of Reed*, 700 F.2d 986, 991

24

69.     "[M]ultiple inaccuracies" in a Debtor's bankruptcy filings "are usually evidence of a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent."[23]

70.     Fraud may be presumed for purposes of § 727(d)(1) when there are material omissions in a debtor's bankruptcy schedules.[24] Similarly, a debtor's failure to disclose information in response to direct questioning at the Meeting of Creditors or in depositions supports a finding of fraudulent intend required to support revocation.[25]

71.     Although it is contemplated that honest errors may be made in the filing of a bankruptcy petition, a debtor has the obligation to correct any omissions or mistakes in his Bankruptcy Filings.[26] Even if information is ultimately disclosed through amended Schedules or Statement of Financial Affairs, a debtor's disclosure of relevant information only upon questioning by creditors or the trustee can create a negative implication from which the bankruptcy court may infer fraudulent intent.[27]

72.     Similarly, a debtor's inclusion of some information about a particular asset or activity in his Schedules does not excuse his failure to supply *all* materials information

---

(5th Cir. 1983) (whole pattern of conduct supported finding of fraudulent intent."); *Job v. Calder (In re Calder)*, 907 F.2d 953, 955 (10th Cir. 1990) ("Fraudulent intent may be deduced from the facts and circumstances of a case."); *Neary v. Darby (In re Darby)*, 376 B.R. 534, 540 (Bankr. E.D. Tex. 2007) ("[T]he existence of a fraudulent intent is most often betrayed by an examination of a course of conduct."); *Banc One, Texas, N.A. v. Braymer (In re Braymer)*, 126 B.R. 499, 503-04 (Bankr. N.D. Tex. 1991) (citing facts that "reveal a pattern of the Debtor's attempts to hide assets from her creditors").

[23]     *In re Landry*, 350 B.R. 51, 58 (Bankr. E.D. La. 2006); *see also Oldendorf*, 173 B.R. at 105 ("[T]he existence of more than one falsehood, together with the failure to clear up all the inconsistencies when filing amended schedules, may constitute reckless indifference to the truth, and, therefore, the requisite intent to deceive.").

[24]     *Pelletier v. Donald (In re Donald)*, 240 B.R. 141, 146 (1st Cir. BAP 1999); *In re Hayes*, 270 B.R. 183, 186 fn. 2 (Bankr. S. D.N.Y. 2001).

[25]     *See, e.g.*, *Yoppolo v. Sayre (In re Sayre)*,, 321 B.R. 424, 427 (Bankr. N.D. Ohio 2004).

[26]     *See* Bankr. Rule 1009.

[27]     *Sholdra v. Childmark Fin. L.L.P. (In re Sholdra)*, 249 F.3d 380, 382–83 (5th Cir. 2001); *Yoppolo v. Sayre (In re Sayre)*,, 321 B.R. 424, 427 (Bankr. N.D. Ohio 2004).

25

about that asset or activity where elsewhere requested in Bankruptcy Filings or upon questioning.[28]  As one court noted in a similar case, "it is not uncommon for persons engaged in a wrongful activity to hedge their bets by taking steps to give their actions less of an appearance of impropriety."[29]  Therefore, where a debtor's Bankruptcy Filings "only represent half the picture," and the debtor deliberately obfuscates the whole picture, the court can infer fraudulent intent necessary to support revocation.[30]

73.     And as this Court has noted, where a debtor fails to disclose information based on "a *mistaken* and stubborn belief," which is coupled by evidence that the debtor "*concealed* the fact" in question, and that he "admitted" the fact only after "the Trustee *discovered and confronted*," then the debtor's omission becomes "*more* than *simply mistaken beliefs and stubbornness*," and the debtor's omission of the fact supports fraudulent intent required for revocation.[31]

**D.     *Count One* – § 727(d)(1)**

74.     Section 727(d)(1) of the Bankruptcy Code provides that the Court "shall revoke a discharge" if "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1).

---

[28]      *See, e.g.*, *Yoppolo v. Sayre (In re Sayre)*,, 321 B.R. 424, 428 (Bankr. N.D. Ohio 2004).

[29]      *See, e.g.*, *Yoppolo v. Sayre (In re Sayre)*,, 321 B.R. 424, 428 (Bankr. N.D. Ohio 2004).

[30]      *See, e.g.*, *Yoppolo v. Sayre (In re Sayre)*,, 321 B.R. 424, 428 (Bankr. N.D. Ohio 2004).

[31]      *Reed v. Cooper*, 426 B.R. at 239-40 (emphasis in original) ("[I]t became a situation of Mr. Cooper intentionally not disclosing, and then later, deliberately withholding property that he (whether he liked it or not and whether he thought it was fair or not) was required to deliver to the Trustee.").

26

000771

75.     There are two subsets of "fraud of the debtor" under § 727(d)(1) – the failure to disclose assets at the time of the bankruptcy Petition ("undisclosed assets"), and "false oaths."[32]

76.     The first subset of "fraud by the debtor" under § 727(d)(1) is undisclosed assets at the commencement of the bankruptcy.  Comu's failure to disclose the existence of assets in his bankruptcy filings support revocation under § 727(d)(1) if  the omissions were knowingly and fraudulently made, they were material, and Plaintiffs were unaware of the facts at issue when the Debtor sought his discharge.[33]

77.     The second subset of "fraud by the debtor" under § 727(d)(1) is false oaths.  The elements of a false oath claim for revocation include a statement that: (1) was made under oath; (2) was false; (3) Debtor knew was false; (4) was made with fraudulent intent; and (5) related materially to the bankruptcy case.[34]  "False oaths may be in the form of either false statements or omissions on the schedules and statement of financial affairs or false statements by the debtor during the course of the bankruptcy proceedings."[35]

78.     Under both subsets of § 727(d)(1), an omission is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of

---

[32]     *See, e.g.. In re Jones*, 178 B.R. at 4; *Walton v. Staub (In re Staub)*, 208 B.R. 602, 604 (Bankr. S.D. Ga. 1997) (§ 727(d)(1) revocation based on § 727(a)(4) false oath or account); *In re Wilson*, 2002 WL 1067450, at *5 ("A complaint seeking to revoke a debtor's discharge pursuant to section 727(d)(1) may be based upon a determination under section 727(a)(2) that the debtor has concealed or transferred assets with fraudulent intent or a determination under section 727(a)(4)(A) that the debtor knowingly and fraudulent [sic] made a false oath or account in connection with his or her bankruptcy case."). (citations omitted.)

[33]     *Neary v. Darby (In re Darby)*, 376 B.R. 534, 539-40 (Bankr. E.D. Tex. 2007).

[34]     *In re Landry*, 350 B.R. 51, 58 (Bankr. E.D. La. 2006).

[35]     *In re Landry*, 350 B.R. 51, 58 (Bankr. E.D. La. 2006).

27

000772

assets, business dealings, or the existence and disposition of his property."[36] A finding of materiality is not dependent upon the value of the omitted assets or whether the omission was detrimental to creditors.[37]

79.   As set forth *supra*, the Court has found that Comu failed to disclose numerous and substantial assets and valuable interests (the most egregious example of which is Comu's direct and indirect interest in 95 million shares of GANAS stock acquired by TBG in October, 2009, which was converted into Green Auto stock in November, 2009).[38] Comu was obligated, but failed, to disclose this information in his Schedules and Statement of Financial Affairs filed January 15, 2010. Comu deliberately concealed these assets and interests by failing to amend his Schedules or Statement of Financial Affairs to reflect full and accurate disclosures, and by being evasive or untruthful in response to questioning by the Trustee and creditors. The Court concludes that Comu deliberately concealed these pre-petition assets and interests, which were material to the bankruptcy, in an attempt to exclude them from the bankruptcy estate and evade his creditors (in particular, Plaintiffs' claims), and thus Debtor's omissions were made with fraudulent intent, or at least with reckless disregard for the truth. The Court concludes that these misrepresentations and omissions constitute fraud by the debtor in the form of undisclosed pre-petition assets for the purposes of revocation of discharge under 727(d)(1).

---

[36]   *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992); *see also In re Darby*, 376 B.R. 534, 542 (Bankr. E.D. Tex. 2007).

[37]   *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005).

[38]   *See also, e.g.*, *Lawrence National Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991) (debtor's failure to disclose ownership of stock in a company constituted the "fraud in fact which would have barred the discharge had the fraud been known").

AUS 536293304v2

000773

80.    The Court has also found *supra* that Comu omitted material information from his Schedules and Statement of Financial Affairs about numerous business activities and affiliations, positions with privatively-held entities, and involvement with major business deals (such as the Green Auto Merger), and that Comu exaggerated his debts and underestimated his income and assets in an attempt to falsely portray his financial circumstances as dire, when in fact he was quite solvent and able to pay his creditors. The Court concludes that Comu made these misrepresentations and omissions under oath in his Bankruptcy Filings, in response to questioning by the Trustee and creditors at the Meeting of Creditors, and in subsequent depositions taken in this Adversary and the Bankruptcy Case. The Court concludes that these misrepresentations and omissions constitute false oaths for the purposes of revocation of discharge under 727(d)(1).

81.    The Court further concludes that because Comu engaged in an active and ongoing scheme to conceal his assets and business activities from the Trustee and his creditors, any partial disclosure of information made prior to discharge was, as a matter of law, insufficient constitute "knowledge" of the Plaintiff that would bar a revocation claim.   Debtor's continuing duty under the Bankruptcy Code to make full and accurate disclosure of all information material to the bankruptcy estate prohibits Debtor from relying on partial and misleading disclosures as evidence of Plaintiffs' knowledge of Debtor's fraud, particularly where other material facts were intentionally withheld or concealed. [39]   Therefore, the Court concludes that, for the purposes of § 727(d)(1), Plaintiffs "did not know" of the Debtor's fraud before discharge.

---

[39]        *Cf. Hill v. Muniz (In re Muniz)*, 320 B.R. 697, 699 (Bankr. D. Col. 2005) ("Those persons who seek the extraordinary relief of a bankruptcy discharge may not ignore their legal obligations to the court and the trustee and still expect to receive a discharge of debt.").

AUS 536293304v2

000774

82.     By uncovering Debtor's fraudulent scheme to defraud his creditors, and identifying substantial assets that are attributable to the estate, Plaintiffs' efforts have enhanced the estate, without which the Debtor would have succeeded in committing a fraud upon this Court, and thus Plaintiffs have made a substantial contribution to the estate.

83.     Accordingly, the Court concludes that Plaintiffs have satisfied their burden of establishing by a preponderance of the evidence that revocation of discharge is warranted under § 727(d)(1) due to fraud of the debtor.

**E.**     *Count Two – § 727(d)(2)*

84.     Section 727(d)(2) states as follows:

> "[o]n a request of the trustee, a creditor, or the United States Trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if ... (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee."

11 U.S.C. § 727(d)(2).

85.     The Plaintiffs "bear the burden to establish that the Debtors acquired or became entitled to acquire property of the estate, and knowingly and fraudulently failed to report or deliver the property to the trustee."[40]

86.     "A Chapter 7 debtor's exercise of dominion and control over, and indeed a subsequent conversion of, an estate asset to the exclusion of the bankruptcy estate ban be neither countenanced nor disregarded." *Echart*, 374 B.R. at 599; *see also Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207–08 (5th Cir. 1999) ("It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an

---

[40]     *In re Cooper*, 426 B.R. 227, 238 (Bankr. N.D. Tex. 2010).

AUS 536293304v2

000775

express, affirmative duty to disclose all assets.... Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized.").

87.     Lastly, "[a] Chapter 7 debtor's right to obtain a discharge is absolutely and unconditionally dependent upon an honest and complete disclosure of all assets and the tendering of all non-exempt assets to the trustee for administration.  As is often stated, the prompt and unconditional fulfillment of that duty is the *quid pro quo* for the protections offered by an order of discharge and any refusal by a debtor to fulfill those obligations, when taken with the requisite mental state, must trigger a corresponding deprivation of that remedy for which bankruptcy relief is sought." *Echart*, 374 B.R. at 600.

88.     Comu did not act with "absolute vigor and candor and cooperation vis-à-vis the Trustee" upon acquiring property which belonged to his bankruptcy estate.  In addition to Comu's intentional failure to disclose the acquisition of such property, and his intentional refusal to turn such property over to the Trustee, Comu engaged in an elaborate scheme to conceal property of the estate to avoid his creditors.

89.     Comu's failure to report or turn over property attributable to the bankruptcy estate was knowing and fraudulent.

90.     Accordingly, the Court concludes that Plaintiffs have satisfied their burden of establishing by a preponderance of the evidence that revocation of discharge is warranted under § 727(d)(2) due Debtor's failure to report and tender all non-exempt assets to the Trustee.

**F.     CONCLUSION**

91.     Based on the above, Debtor's discharge is hereby revoked without further delay pursuant to 11 U.S.C. § 727(d).

*AUS 536293304v2*

Dated: March 4, 2014        Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Shari L. Heyen* _____

Shari L. Heyen
Texas Bar No. 09564750
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Email: heyens@gtlaw.com

Kendyl T. Hanks
Texas Bar No. 24032273
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210
Email: hanksk@gtlaw.com

*AUS 536293304v2*

000777



**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 5, 2014**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 09-38820-SGJ-7** |
| **CENGIZ J. COMU a/ka/ CJ COMU,** | § | **(Chapter 7)** |
| Debtor. | § | |

| | | |
|---|---|---|
| **KING LOUIE MINING, LLC,** | § | |
| **KING LOUIE ENTERPRISES, LLC,** | § | |
| **and RONALD KATZ,** | § | |
| Plaintiffs, | § | |
| v. | § | **Adversary No. 10-03269** |
| | § | |
| **CENZIG J. COMU a/k/a CJ COMU,** | § | |

| | |
|---|---|
| **DIANE G. REED, TRUSTEE,** | § |
| Intervenor, Co-Plaintiff, and | § |
| Third-Party Plaintiff, | § |
| v. | § |
| | § |
| **CENGIZ J. COMU,** | § |
| Defendant, | § |
| -and- | § |
| **PHYLLIS E. COMU, BERNARD D.** | § |

Page **1** of **2**

000778

**BROWN, THE BARCLAY GROUP, INC.,**　§
**and SUNSET PACIFIC, L.P.,**　　　　§
　　　**Third-Party Defendants.**　　　§

## ORDER SETTING TRIAL

Based on the March 4, 2014, pre-trial conference,

**IT IS ORDERED** that the trial in this adversary proceeding is **SET** for **March 17, 2014,**

**at 9:30 a.m., continuing through March 21, 2014.**

**IT IS FURTHER ORDERED** that counsel shall bring to trial sufficient copies of the

Exhibits that they intend to introduce into evidence, which Exhibits shall be labeled and bound.

"Sufficient copies" includes two copies for the court, in addition to necessary copies for

witnesses and counsel.

### ###END OF ORDER###

000779

Shari L. Heyen
Texas Bar No. 09564750
Email: heyens@gtlaw.com
Kendyl T. Hanks
Texas Bar No. 24032273
Email: hanksk@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

**ATTORNEYS FOR PLAINTIFFS KING LOUIE MINING, LLC,
KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CHAPTER 7** |
| CENGIZ J. COMU a/k/a CJ COMU, | § | **CASE NO. 09-38820-sgj7** |
| | § | |
| DEBTOR. | § | |
| KING LOUIE MINING, LLC, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | **ADVERSARY NO. 10-03269-sgj** |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| Defendant. | § | |
| DIANE G. REED, TRUSTEE, | § | |
| Intervenor, Co-Plaintiff, and | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| Defendant, | § | |
| And | § | |
| PHYLLIS E. COMU, *et al.* | § | |
| Third-Party Defendants. | § | |

### PLAINTIFFS' AMENDED WITNESS AND EXHIBIT LIST FOR TRIAL

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

## I.    REQUEST FOR JUDICIAL ADMISSION

Plaintiffs request pursuant to Federal Rule of Evidence 201 that the Court take judicial notice of the pleadings and papers filed in this Court, and appearing on the docket sheet for this Adversary and in the main bankruptcy case.

## II.    PLAINTIFFS' DESIGNATION OF WITNESSES FOR TRIAL

Plaintiffs hereby designate the following Witnesses for trial:

1.    Ronald Katz, individually and as representative of King Louie Mining, LLC, King Louie Enterprises, LLC.

2.    Frederick Luke

3.    Justeene Blankenship

4.    Alvin Dahl (by deposition)

5.    Bernard D. Brown (by deposition).

6.    David Parsley (by deposition)

7.    Edward Baxter (by deposition).

8.    Steven A. Evans (by deposition)

9.    Matthew Troster (by deposition)

10.    Any witness identified or called by the Trustee as Intervenor or by Defendants.

11.    Any rebuttal or impeachment witness.

AUS 536294093v1

## III. PLAINTIFFS' DESIGNATION OF EXHIBITS OF TRIAL

Plaintiffs hereby designate the following Exhibits for trial, subject to the parties' agreement and understanding regarding amendment to include items recently produced in response to third party subpoenas by Action Stock Transfer and Green Automotive.

| | |
|---|---|
| KLM Exhibit 1 | Summons and Complaint, dated July 20, 2006, filed in *Humitech International Group, Inc., et. al v. Cengiz Jan Comu, et. al*, **Index No. 06-602567**, in the Supreme Court of the State of New York, County of New York (the "NY Fraud Action"). |
| KLM Exhibit 2 | Docket Sheet for the NY Fraud Action. |
| KLM Exhibit 3 | Notice of Entry of Judgment, dated June 9, 2009, filed the NY Fraud Action. |
| KLM Exhibit 4 | Notice of Filing Foreign Judgment, dated June 2, 2009, filed in *King Louie Mining, LLC, et. al. v. Cengiz Jan Comu, et. al*, **Case No. DC-09-06981**, in the 134th District Court, Dallas County Texas (attaching Notice of Entry of Judgment, filed in the NY Fraud Action on June 9, 2009) (the "Texas Domestication Action") |
| KLM Exhibit 5 | Docket Sheet for the Texas Domestication Action. |
| KLM Exhibit 6 | Plaintiffs' Motion to Compel Discovery, dated November 23, 2009, filed in the Texas Domestication Action. |
| KLM Exhibit 7 | Order granting Motion to Compel Discovery, dated December 14, 2009, entered in the Texas Domestication Action. |
| KLM Exhibit 8 | Suggestion of Bankruptcy, dated January 4, 2010, filed in the Texas Domestication Action. |
| KLM Exhibit 9 | Notice of Settlement dated September 9, 2008, filed in *New Millennium Capital Partners II, LLC, et. al v. C.J. Comu, et. al*, **Doc. #55, Case No. 3-06-CV-1180-L**, in the United Stated District Court for the Northern District of Texas, Dallas Division. |
| KLM Exhibit 10 | Stipulation of Dismissal, filed October 24, 2008, in *New Millennium Capital Partners II, LLC, et. al v. C.J. Comu, et. al*, **Doc. #55, Case No. 3-06-CV-1180-L**, in the United Stated District Court for the Northern District of Texas, Dallas Division. |
| KLM Exhibit 11 | Service copies of pleadings in *Sun Sports & Entertainment v. Humitech International Group*, **Case No. 3-09CV0063-0**, filed January |

000782

12, 2009 in the U.S. District Court for the Northern District of Texas, transmitted January 14, 2009 from Lloyd Ward to Ron Katz.

| | |
|---|---|
| KLM Exhibit 12 | Verified Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order, dated March 27, 2013, filed in *Green Automotive Company v. The Barclay Group, Inc., et. al.*, Case No. 130902103, in the Third District Court, Salt Lake County, State of Utah. |
| KLM Exhibit 13 | Memorandum Decision and Order, dated May 7, 2013, filed in *Green Automotive Company v. The Barclay Group, Inc., et. al.*, Case No. 130902103, in the Third District Court, Salt Lake County, State of Utah. |
| KLM Exhibit 14 | Public corporate filings for Regus Advisors, Inc. |
| KLM Exhibit 15 | Public Corporate filings for Regus Capital Fund, LP. |
| KLM Exhibit 16 | Public Corporate filings for Regus Realty Partners, LLC. |
| KLM Exhibit 17 | Regus Advisors, Inc., Bank of America bank statements January – October 2011. |
| KLM Exhibit 18 | Wells Fargo bank statements for The Barclay Group (2009). |
| KLM Exhibit 19 | Wells Fargo bank statements for The Barclay Group (2011). |
| KLM Exhibit 20 | Wells Fargo bank statements for CJ Comu (2011). |
| KLM Exhibit 21 | Coral Group public corporate filings. |
| KLM Exhibit 22 | Public corporate filings for Sunset Pacific, LP. |
| KLM Exhibit 23 | Public corporate filings for The Barclay Group, Inc. filed with the Texas Secretary of State. |
| KLM Exhibit 24 | Public corporate filings for Barclay Group, Inc. filed with the Texas Secretary of State. |
| KLM Exhibit 25 | Public corporate filings for Global Energy Technology Group. |
| KLM Exhibit 26 | T3 Networks, Inc. stock certificates issued in the name of The Barclay Group. |
| KLM Exhibit 27 | Mano-A-Mano trademark application filed April 17, 2009. |
| KLM Exhibit 28 | Advisory Agreement by and between Green Automotive Company Corporation and The Barclay Group, Inc., January 2010 (Source: Brown Deposition, Exhibit 13.) |

*AUS 536294093v1*

| | |
|---|---|
| <u>KLM Exhibit 29</u> | Promissory Note between Green Automotive Company, Inc. and The Barclay Group Inc., dated January 8, 2010. (Source: Brown Deposition, Exhibit 14.) |
| <u>KLM Exhibit 30</u> | The Barclay Group letter to OMST, dated August 25, 2011. (Source: Parsley Deposition, Exhibit 6.) |
| <u>KLM Exhibit 31</u> | Letter from The Barclay Group to OMST, dated December 29, 2011 (with handwritten notes). (Source: Baxter Deposition, Exhibit 11.) |
| <u>KLM Exhibit 32</u> | Advisory Agreement between The Barclay Group and Go Green USA, LLC, dated September 1, 2009. (Source: Evans Deposition, Exhibit 2.) |
| <u>KLM Exhibit 33</u> | Confidential Memorandum from CJ Comu to Steven Fly, dated September 9, 2009. (Source: Evans Deposition, Exhibit 5.) |
| <u>KLM Exhibit 34</u> | Handwritten notes by Steve Evans dated September 8, 2009. (Source: Evans Deposition, Exhibit 7.) |
| <u>KLM Exhibit 35</u> | Handwritten corporate minutes dated September 10, 2009. (Source: Evans Deposition, Exhibit 8.) |
| <u>KLM Exhibit 36</u> | Email from CJ Comu to Steven Fly, with attachments, dated November 9, 2009. (Source: Evans Deposition, Exhibit 13.) |
| <u>KLM Exhibit 37</u> | Confidential Private Placement Memorandum No. 114 for Green Automotive Company Inc. (Source: Evans Deposition, Exhibit 25.) |
| <u>KLM Exhibit 38</u> | Barclay Group Inc. 2011 Tax Return (dated August 7, 2012). (Source: Dahl 2004 Exam, Exhibit 10). |
| <u>KLM Exhibit 39</u> | The Barclay Group Letter to OMST, dated July 14, 2011. (Source: Troster Deposition, Exhibit 12.) |
| <u>KLM Exhibit 40</u> | The Barclay Group – Escrow Funds (chart). (Source: Troster Deposition, Exhibit 13.) |
| <u>KLM Exhibit 41</u> | Email from CJ Comu to Matt Troster with attachments, dated July 28, 2011. (Source: Troster Deposition, Exhibit 16.) |
| <u>KLM Exhibit 42</u> | Wire Transfer Instructions to OMST. (Source: Troster Deposition, Exhibit 17.) |
| <u>KLM Exhibit 43</u> | Email from The Barclay Group to Matt Troster with attachments, dated November 10, 2011. (Source: Troster Deposition, Exhibit 21.) |
| <u>KLM Exhibit 44</u> | Email from Matt Troster to Justeene Blankenship with attachments, dated April 19, 2012. (Source: Troster Deposition, Exhibit 23.) |

*AUS 536294093v1*

000784

| KLM Exhibit 45 | Email from CJ Comu to Matt Troster, dated March 15, 2012. (Source: Troster Deposition, Exhibit 26.) |
|---|---|
| KLM Exhibit 46 | Letter from TKY Trust to OMST, with handwritten notes, dated January 5, 2012. (Source: Troster Deposition, Exhibit 30.) |
| KLM Exhibit 47 | Irrevocable Stock Power for Green Auto stock certificate No, 01032, dated October 31, 2011. (Source: Troster Deposition, Exhibit 32.) |
| KLM Exhibit 48 | Corporate Resolution of TKY Trust dated October 31, 2011. (Source: Troster Deposition, Exhibit 33.) |
| KLM Exhibit 49 | Green Auto Transaction Journal (2010). (Source: Troster Deposition, Exhibit 37A.) |
| KLM Exhibit 50 | Green Auto Transaction Journal (2010). (Source: Troster Deposition, Exhibit 37B.) |
| KLM Exhibit 51 | Green Auto Transaction Journal (2011). (Source: Troster Deposition, Exhibit 38.) |
| KLM Exhibit 52 | OMST stock trading ledger for The Barclay Group – Green Auto. (Source: Troster Deposition, Exhibit 41.) |
| KLM Exhibit 53 | OMST stock trading ledger for DAPTCO Trust – Green Auto. (Source: Troster Deposition, Exhibit 42.) |
| KLM Exhibit 54 | OMST stock trading ledger for TKY Trust – Green Auto. (Source: Troster Deposition, Exhibit 43.) |
| KLM Exhibit 55 | Email from "Consultant" to Matt Troster dated March 15, 2012. (Source: Troster Deposition, Exhibit 44.) |
| KLM Exhibit 56 | Letter from DAPTCO Trust to OMST dated March 22, 2012. (Source: Troster Deposition, Exhibit 46.) |
| KLM Exhibit 57 | Email from The Barclay Group to Matt Troster, dated December 30, 2011. (Source: Troster Deposition, Exhibit 48.) |
| KLM Exhibit 58 | Email from CJ Comu to Matt Troster dated January 10, 2012. (Source: Troster Deposition, Exhibit 49.) |
| KLM Exhibit 59 | Email from CJ Comu to Matt Troster dated January 4, 2012. (Source: Troster Deposition, Exhibit 50.) |
| KLM Exhibit 60 | Letter from The Barclay Group to OMST, with handwritten notes, dated January 5, 2012. (Source: Troster Deposition, Exhibit 53.) |

AUS 536294093v1

| | |
|---|---|
| **KLM Exhibit 61** | Email from The Barclay Group to Matt Troster dated December 27, 2011. (Source: Troster Deposition, Exhibit 55.) |
| **KLM Exhibit 62** | Letter from The Barclay Group to OMST, dated December 1, 2011. (Source: Troster Deposition, Exhibit 63.) |
| **KLM Exhibit 63** | Letter from The Barclay Group to OMST, dated December 8, 2011. (Source: Troster Deposition, Exhibit 64.) |
| **KLM Exhibit 64** | Letter from The Barclay Group to OMST, dated December 22, 2011. (Source: Troster Deposition, Exhibit 66.) |
| **KLM Exhibit 65** | Letter from TKY Trust to OMST dated December 29, 2011 with wire transfer instructions, and handwritten notes.   (Troster Deposition, Exhibit 69.) |
| **KLM Exhibit 66** | Letter from TKY Trust to OMST dated January 12, 2012 with wire transfer instructions.  (Ex. 72 to Troster Depo.) |
| **KLM Exhibit 67** | Letter from TKY Trust to OMST dated January 25, 2012 with wire transfer instructions, with transmittal email from CJ Comu at The Barclay Group.  (Ex. 74 to Troster Depo.) |
| **KLM Exhibit 68** | Email from Matt Troster to CJ Comu attaching Jan. 25, 2012 TKY wire instructions, dated January 26, 2012.  (Ex. 76 to Troster Depo.) |
| **KLM Exhibit 69** | Letter from TKY Trust to OMST dated February 9, 2012 with wire transfer instructions, with transmittal email from David Parsley at Regus Advisors.  (Ex. 77 to Troster Depo.) |
| **KLM Exhibit 70** | Letter from TKY Trust to OMST dated February 16, 2012 with wire transfer instructions, with transmittal email from David Parsley at The Barclay Group.  (Ex. 78 to Troster Depo.) |
| **KLM Exhibit 71** | Letter from TKY Trust to OMST dated February 23, 2012 with wire transfer instructions, with transmittal email from David Parsley at The Barclay Group.  (Ex. 79 to Troster Depo.) |
| **KLM Exhibit 72** | Letter from TKY Trust to OMST dated March 1, 2012 with wire transfer instructions, with transmittal email from David Parsley at The Barclay Group.  (Ex. 80 to Troster Depo.) |
| **KLM Exhibit 73** | Letter from TKY Trust to OMST dated March 8, 2012 with wire transfer instructions, with transmittal email from CJ Comu's personal gmail account.  (Ex. 81 to Troster Depo.) |
| **KLM Exhibit 74** | Letter from TKY Trust to OMST dated March 12, 2012 with wire transfer instructions, with transmittal email from CJ Comu's TBG |

*AUS 536294093v1*

000786

email account, but email signed by David Parsley. (Ex. 82 to Troster Depo.)

| KLM Exhibit 75 | Letter from TKY Trust to OMST dated March 15, 2012 with wire transfer instructions. (Ex. 83 to Troster Depo.) |
| --- | --- |
| KLM Exhibit 76 | Letter from DAPTCO Trust to OMST dated March 22, 2012 with wire transfer instructions. (Ex. 84 to Troster Depo.) |
| KLM Exhibit 77 | Letter from DAPTCO Trust to OMST dated April 5, 2012. (Source: Troster Deposition, Exhibit 86.) |
| KLM Exhibit 78 | Letter from DAPTCO Trust to OMST dated April 12, 2012. (Source: Troster Deposition, Exhibit 87.) |
| KLM Exhibit 79 | Letter from DAPTCO Trust to OMST dated June 1, 2012. (Source: Troster Deposition, Exhibit 89.) |
| KLM Exhibit 80 | Fedex Mailing Receipt, from Justeene Blankenship to World-Wide Auric, dated March 22, 2012. (Source: Troster Deposition, Exhibit 90.) |
| KLM Exhibit 81 | Green Auto stock certificate #5169 for 500,000 shares of restricted stock issued to World Wide Auric International on March 22, 2012. (Source: Troster Deposition, Exhibit 91.) |
| KLM Exhibit 85 | Check Images. (Source: Phyllis Comu 2004 Exam, Exhibit 2.) |
| KLM Exhibit 86 | Voided check from The Barclay Group to Phyllis Comu. (Source: Phyllis Comu 2004 Exam, Exhibit 3.) |
| KLM Exhibit 87 | Check Images. (Source: Phyllis Comu 2004 Exam, Exhibit 5.) |
| KLM Exhibit 88 | Voided check from The Barclay Group to Phyllis Comu, dated December 31, 2009. (Source: Phyllis Comu Deposition, Exhibit 12.) |
| KLM Exhibit 89 | Voided checks from The Barclay Group to Phyllis Comu and other recipients. (Source: Phyllis Comu Deposition, Exhibit 13.) |
| KLM Exhibit 90 | Allstate Annuity for Sunset Pacific, LP, dated January 12, 2007. (Source: Comu 2011 Exam, Exhibit 4.) |
| KLM Exhibit 91 | Handwritten Notes by Defendants' counsel, Dennis Olson, at Debtor's November 30, 2011 Rule 2004 Exam. (Source: Comu 2011 Exam, Exhibit 17.) |
| KLM Exhibit 92 | Promissory Note by Green Automotive in favor of The Barclay Group, dated January 15, 2010. (Source: Comu 2011 Exam, Exhibit 24.) |

AUS 536294093v1

| | |
|---|---|
| **KLM Exhibit 93** | Metiscan, Inc. stock certificate #1713, in the name of The Barclay Group, dated February 4, 2009. (Source: Comu 2011 Exam, Exhibit 35.) |
| **KLM Exhibit 94** | Puration, Inc. stock certificate #1, in the name of Regus Advisors, Inc., dated August 23, 2011. (Source: Comu 2011 Exam, Exhibit 37.) |
| **KLM Exhibit 95** | Email from CJ Comu to Emil Lippe, dated May 1, 2006. (Source: Comu 2011 Exam, Exhibit 39.) |
| **KLM Exhibit 96** | Ledger – TBG Banking 2009-2010, Wells Fargo Account Transactions. (Source: Comu 2012 Exam, Exhibit 53.) |
| **KLM Exhibit 97** | Letter from Synergy Lawyers to CJ Comu re: Establishment of the TKY Trust, dated December 24, 2009. (Source: Comu 2012 Exam, Exhibit 61.) |
| **KLM Exhibit 98** | Email from CJ Comu to Christopher McNeill dated November 30, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 4; CJ 56463.) |
| **KLM Exhibit 99** | Email from CJ Comu to Lawrence Biggs and Steven Fly, dated December 16, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 6; CJ 57117.) |
| **KLM Exhibit 100** | Email from CJ Comu to John Troster dated January 13, 2010. (Source: Comu Nov. 2013 Depo, Exhibit 16; CJ 57802.) |
| **KLM Exhibit 101** | Email to CJ Comu dated March 16, 2010. (Source: Comu Nov. 2013 Depo, Exhibit 27; CJ 66926.) |
| **KLM Exhibit 102** | Business Plan for Global Energy Technology Group. (Source: Comu Nov. 2013 Depo, Exhibit 44; CJ 61043.) |
| **KLM Exhibit 103** | Email from CJ Comu to Aylin Burdett, dated December 8, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 53; CJ 56745.) |
| **KLM Exhibit 104** | Meeting Agenda addressed to CJ Comu and others, dated August 7, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 54; CJ 565.) |
| **KLM Exhibit 105** | Email from Robert Feeback, CCd to CJ Comu, dated November 1, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 57; CJ 70795.) |
| **KLM Exhibit 106** | Regus Advisors, Inc. Powerpoint. (Source: Produced by Debtor August, 2013; DEBTOR 000001-17.) |
| **KLM Exhibit 107** | Sunset Pacific bank statements through June, 2009 to March, 2010. (produced by Debtor). |

*AUS 536294093v1*

| | |
|---|---|
| **KLM Exhibit 108** | Regis Advisors, Inc. 2010 Tax Return, dated April 20, 2011 (produced by Debtor). |
| **KLM Exhibit 109** | Binder of Organizational Documents of Marathon Management Limited Company, Coral Group, LLC, and Sunset Pacific, LP (produced by Debtor). |
| **KLM Exhibit 110** | Marathon Management LLC 2008 Income Tax Return, dated August 22, 2009 (received from Trustee). |
| **KLM Exhibit 111** | Marathon Management LLC 2009 Tax Return, dated April 18, 2011 (produced by Debtor). |
| **KLM Exhibit 112** | Marathon Management LLC 2010 Tax Return, dated April 19, 2011 (produced by Debtor). |
| **KLM Exhibit 113** | Marathon Management, Inc., public corporate filings (Source: Nevada Secretary of State). |
| **KLM Exhibit 114** | Marathon Management Limited Company, public corporate filings (Source: Nevada Secretary of State). |
| **KLM Exhibit 115** | Promissory Note for $50,000 executed by CJ Comu in favor of Marathon Management Inc., dated June 23, 2012 (DEBTOR 000058-59.) |
| **KLM Exhibit 116** | Green Automotive Company Corporation, Financial Statements as of December 31, 2010 and 2009 (produced by Debtor). |
| **KLM Exhibit 117** | Green Automotive – List of Active Shares as of October 3, 2011 (produced by Debtor). |
| **KLM Exhibit 118** | Private Placement Memorandum for T3Networks, dated July 1, 2011 (produced by Debtor). |
| **KLM Exhibit 119** | Private Placement Memorandum for Global Energy Technology Group, Inc. dated February 20, 2011 (produced by Debtor). |
| **KLM Exhibit 120** | Confidential Offering Memorandum for Paragon GPS, Inc., dated December 1, 2010 (produced by Debtor). |
| **KLM Exhibit 121** | Finders Fee Agreement between Green Automotive Corporation and The Barclay Group, dated June 15, 2011 (produced by Debtor). |
| **KLM Exhibit 122** | Letter from Green Automotive Company to Campus Investments Plc, dated May 16, 2011 (produced by Debtor). |

*AUS 536294093v1*

000789

| | |
|---|---|
| KLM Exhibit 123 | Regis Advisors, Inc. 2011 Tax Return, dated August 7, 2012 (received from Trustee). |
| KLM Exhibit 124 | Cengiz J. Comu & Phyliss E. Comu, 2005 Individual Tax Return, dated August 6, 2012 (received from Trustee). |
| KLM Exhibit 125 | Cengiz J. Comu & Phyliss E. Comu, 2006 Individual Tax Return, dated August 6, 2012 (received from Trustee). |
| KLM Exhibit 126 | Memo from CJ Comu to Dennis Olson, dated February 10, 2010 (received from Trustee). |
| KLM Exhibit 127 | 2007 Tax Reporting Statement from Merrill Lynch for Sunset Pacific LP (received from Trustee). |
| KLM Exhibit 128 | 2007 Individual Tax Return for CJ Comu and Phyliss Comu, dated August 4, 2008, with attached W-2 (received from Trustee). |
| KLM Exhibit 129 | Invoice from Alvin Dahl to CJ Comu, dated August 22, 2009, with attached tax documents for Comu and various entities.  (received from Trustee). |
| KLM Exhibit 130 | Residential Sale Contract for 14873 Oaks North Place, dated September 18, 2010 (Source: Capital Title 000240-48.) |
| KLM Exhibit 131 | Email correspondence between CJ Comu and Lisa Baker re: 14873 Oaks North Place (Source: Capital Title 000052-54.) |
| KLM Exhibit 132 | Continental Partnership, Inc. documents provided as part of purchase of 14873 Oaks North Place (Source: Capital Title 000172-178.) |
| KLM Exhibit 133 | American Home Shield home warranty documents related to 14873 Oaks North Place (Source: Capital Title 000181-193.) |
| KLM Exhibit 134 | AAA Life Insurance Policy for Cengiz J. Comu, statement dated May 17, 2013 (DEBTOR 000060-62.) |
| KLM Exhibit 135 | 2012 Tax Statement for 5301 Paladium Dr (DEBTOR 000079-80.) |
| KLM Exhibit 136 | Residential Least for 14873 Oaks North Place, dated October 15, 2010 (DEBTOR 000082-95.) |
| KLM Exhibit 137 | Residential Lease for 5301 Paladium Drive, dated August 1, 2012 (DEBTOR 000096-109.) |
| KLM Exhibit 138 | Public filings for Grey Point Partners, LLC. |
| KLM Exhibit 139 | GACR Pink Sheets disclosure. (Source: Evans Deposition, Exhibit 26.) |

| KLM Exhibit 140 | Letter from Brian Rudy of Synergy Business Lawyers to Cem Comu and Aylin Burdett dated January 14, 2010 (produced by Debtor). |
|---|---|
| KLM Exhibit 141 | CJ Comu, Bank of America checking account statement, February 23, 2011 (produced by Debtor). |
| KLM Exhibit 142 | The Barclay Group – website capture, as of August 23, 2013.  (Source: www.thebarclaygroup.com) |
| KLM Exhibit 143 | The Barclay Group – web page capture, as of March 8, 2014. Source: www.thebarclaygroup.com) |
| KLM Exhibit 144 | Regus Advisors Inc. – website capture, as of August 23, 2013. (Source: www.regusadvisors.com) |
| KLM Exhibit 145 | Puration, Inc., Annual Report, for the Year Ended December 31, 2011, filed February 29, 2012 (Public OTC Filing). |
| KLM Exhibit 146 | Algae International Group, Inc. investment presentation powerpoint, Prepared by Regus Capital Fund LP (Algae International website). |
| KLM Exhibit 147 | MMA Games, LLC, Certificate of Formation, dated May 16, 2007 (Source: Texas Secretary of State.) |
| KLM Exhibit 148 | Article: Ann Marie Shambaugh, Latino fighters to go Mano a Mano in Mesquite, dated July 8, 2009. |
| KLM Exhibit 149 | Green Automotive Company Corporation, Financial Statements as of December 31, 2009, and for the period April 28, 2009 through December 31, 2009 (Public OTC Filing). |
| KLM Exhibit 150 | Green Automotive Company, Form 10-K, for the fiscal year ended December 31, 2012 (SEC public filing). |
| KLM Exhibit 151 | Green Automotive Company, Form 10-Q, for the fiscal year ended March 31, 2013 (SEC public filings). |
| KLM Exhibit 152 | Texas Franchise Public Information Report for Sun Management Group Inc, dated December 11, 2006. (Texas Secretary of State). |
| KLM Exhibit 153 | Stock transfer report by Action Stock Transfer reflecting instructions regarding Green Auto stock transfers from  Eurocap Investments PLC, dated December 12, 2013. |
| KLM Exhibit 154 | Stock transfer report by Action Stock Transfer reflecting instructions regarding Green Auto stock transfers from  Eurocap Investments PLC, dated November 11, 2013, and received by transfer agent on November 13, 2013. |

*AUS 536294093v1*

| | |
|---|---|
| <u>KLM Exhibit 155</u> | Stock transfer report by Action Stock Transfer reflecting transfer of Green Auto stock from First Market Services, Inc., to Bio-Global Resources, Inc., dated September 12, 2013. |
| <u>KLM Exhibit 156</u> | Stock transfer report by Action Stock Transfer reflecting transfer of Green Auto stock from Maybourne Limited to various recipients, dated May 29, 2013. |
| <u>KLM Exhibit 157</u> | Stock transfer report by Action Stock Transfer reflecting transfer of Green Auto stock from TKY Trust to various recipients, dated March 15, 2012. |
| <u>KLM Exhibit 158</u> | Stock transfer report by Action Stock Transfer reflecting transfer of Green Auto stock from DAPTCO Trust to various recipients, dated March 22, 2012. |
| <u>KLM Exhibit 159</u> | Stock transfer report by Action Stock Transfer reflecting transfer of Green Auto stock from Newhaven Nominees to Cede & Co, dated July 31, 2012. |
| <u>KLM Exhibit 160</u> | Individual shareholder report by Action Stock Transfer reflecting certain shareholders of Green Auto as of February 18, 2014. |
| <u>KLM Exhibit 161</u> | Green Auto Stock Transfer Report prepared by Action Stock Transfer reflecting transfers of Green Auto stock between November 29, 2011 and February 17, 2014. |
| <u>KLM Exhibit 162</u> | Email correspondence between CJ Comu and Perry West, dated June 2, 2009 (CJ 26). |
| <u>KLM Exhibit 163</u> | Email from Tunch Kashif to CJ Comu, with attachments, dated June 8, 2009. (CJ 70-71.) |
| <u>KLM Exhibit 164</u> | Email from Dave Welch to CJ Comu and John Potter, with attachments, dated June 29, 2009. (CJ 244-47.) |
| <u>KLM Exhibit 165</u> | Email from Dave Welch to CJ Comu and Perry West, dated August 2, 2009. (CJ 491.) |
| <u>KLM Exhibit 166</u> | Email from Tunch Kashif to CJ Comu, with attachments, dated August 18, 2009. (CJ 639-40.) |
| <u>KLM Exhibit 167</u> | Email from Chris (tradin1@airmail.net) to CJ Comu, dated August 31, 2009. (CJ 746.) |
| <u>KLM Exhibit 168</u> | Email from Troy Phillips to CJ Comu and other recipients, dated September 3, 2009. (CJ 797.) |

*AUS 536294093v1*

| | |
|---|---|
| <u>KLM Exhibit 169</u> | Email from Troy Phillips to CJ Comu, dated September 7, 2009.  (CJ 819.) |
| <u>KLM Exhibit 170</u> | Email from Fawn Gomez to CJ Comu and other recipients, with attachments, dated November 3, 2009.  (CJ 1174-75.) |
| <u>KLM Exhibit 171</u> | Email from Laurence Biggs to CJ Comu, dated November 18, 2009.  (Source: CJ 1234.) |
| <u>KLM Exhibit 172</u> | Emails to/from btvproduction@aol.com and CJ Comu, dated December 13, 2009 (CJ 1336.) |
| <u>KLM Exhibit 173</u> | Email from Ian Stuart to CJ Comu, with attachments, dated March 8, 2010. (CJ 3985-86.) |
| <u>KLM Exhibit 174</u> | Email from GoDaddy.com to CJ Comu, dated  March 10, 2010.  (CJ 4209.) |
| <u>KLM Exhibit 175</u> | Email from Reuben Anstock to CJ Comu and other recipients, dated March 12, 2010. (CJ 4381.) |
| <u>KLM Exhibit 176</u> | Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated March 15, 2010. (CJ 4430-33.) |
| <u>KLM Exhibit 177</u> | Email from Charlotte Jacob to CJ Comu and other recipients, dated March 15, 2010. (CJ 4435.) |
| <u>KLM Exhibit 178</u> | Email from Mansion House Capital to CJ Comu, with attachments, dated March 18, 2010. (CJ 4623-26.) |
| <u>KLM Exhibit 179</u> | Email from GoDaddy.com to CJ Comu, dated  March 21, 2010.  (CJ 4696.) |
| <u>KLM Exhibit 180</u> | Email from Mansion House Capital to CJ Comu, with attachments, dated April 24, 2010. (CJ 6994-95.) |
| <u>KLM Exhibit 181</u> | Email from Wells Fargo Online to CJ Comu, dated April 26, 2010. (CJ 7090.) |
| <u>KLM Exhibit 182</u> | Email from Marc Bryant to CJ Comu, dated May 5, 2010.  (CJ 7908.) |
| <u>KLM Exhibit 183</u> | Email from Marc Bryant to CJ Comu and other recipients, with attachments, dated May 5, 2010.  (CJ 7910-11.) |
| <u>KLM Exhibit 184</u> | Email from GoDaddy.com to CJ Comu, dated  June 1, 2010.  (CJ 9712.) |
| <u>KLM Exhibit 185</u> | Email from GoDaddy.com to CJ Comu, dated  June 7, 2010.  (CJ 10139.) |

AUS 536294093v1

000793

| KLM Exhibit 186 | Email from GoDaddy.com to CJ Comu, dated June 7, 2010. (CJ 10172.) |
|---|---|
| KLM Exhibit 187 | Email from Dave Welch to CJ Comu and other recipients, dated June 13, 2010. (CJ 10536.) |
| KLM Exhibit 188 | Email from "admin@wwauric" to CJ Comu and other recipients, dated June 14, 2010. (CJ 10633.) |
| KLM Exhibit 189 | Email from GoDaddy.com to CJ Comu, dated June 16, 2010. (CJ 10782.) |
| KLM Exhibit 190 | Email from GoDaddy.com to CJ Comu, dated June 16, 2010. (CJ 10789.) |
| KLM Exhibit 191 | Email from GoDaddy.com to CJ Comu, dated June 22, 2010. (CJ 11141.) |
| KLM Exhibit 192 | Email from DomainsbyProxy.com to CJ Comu, dated June 22, 2010. (CJ 11142.) |
| KLM Exhibit 193 | Email from GoDaddy.com to CJ Comu, dated June 22, 2010. (CJ 11150.) |
| KLM Exhibit 194 | Email from Dave Welch to CJ Comu, dated June 22, 2010. (CJ 11153.) |
| KLM Exhibit 195 | Email from Reuben Anstock to CJ Comu and other recipients, dated June 28, 2010. (CJ 11493.) |
| KLM Exhibit 196 | Email from Priya Beeharry to CJ Comu and other recipients, dated June 29, 2010. (CJ 11569.) |
| KLM Exhibit 197 | Email from Laura Zaber to CJ Comu, with attachments, dated June 30, 2010. (CJ 11671.) |
| KLM Exhibit 198 | Email from Peter Knight to CJ Comu, with attachments, dated July 1, 2010. (CJ 11817-19.) |
| KLM Exhibit 199 | Email from Bank of America to CJ Comu, dated July 2, 2010. (CJ 11932.) |
| KLM Exhibit 200 | Email from Dave Welch to CJ Comu and March Bryant, with attachments, dated July 14, 2010. (CJ 12839-45.) |
| KLM Exhibit 201 | Email from Maggie Kwong Chian to CJ Comu and other recipients, dated August 3, 2010. (CJ 13911.) |

*AUS 536294093v1*

| | |
|---|---|
| <u>KLM Exhibit 202</u> | Email from Reuben Anstock to CJ Comu and other recipients, with attachments, dated August 6, 2010.  (CJ 14151-52.) |
| <u>KLM Exhibit 203</u> | Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated August 16, 2010.  (CJ 14584-85.) |
| <u>KLM Exhibit 204</u> | Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated August 17, 2010.  (CJ 14675-76.) |
| <u>KLM Exhibit 205</u> | Email from GoDaddy.com to CJ Comu, dated  August 18 , 2010.  (CJ 15050.) |
| <u>KLM Exhibit 206</u> | Email from Reuben Anstock to CJ Comu and other recipients, with attachments, dated August 24, 2010. (CJ 15341-46.) |
| <u>KLM Exhibit 207</u> | Email from Cem Comu to Cigdem Beykoylu, dated September 2, 2010. (CJ 15917.) |
| <u>KLM Exhibit 208</u> | Email from Cem Comu to CJ Comu, dated September 2, 2010 (CJ 15920.) |
| <u>KLM Exhibit 209</u> | Email from Cem Comu to CJ Comu, with attachments, dated September 3, 2010.  (CJ 16016-17.) |
| <u>KLM Exhibit 210</u> | Email from Cem Comu to CJ Comu, with attachments, dated September 16, 2010.  (CJ 16771-75.) |
| <u>KLM Exhibit 211</u> | Email from CJ Comu to Mansion House Capital, dated March 18, 2010.  (CJ 17647.) |
| <u>KLM Exhibit 212</u> | Email from CJ Comu to Steven Block and Christopher McNeill, with attachments, dated March 23, 2010. (CJ 17770-71.) |
| <u>KLM Exhibit 213</u> | Email from CJ Comu to Charlotte Jacob and other recipients, with attachments, dated March 30, 2010. (CJ 17988-89.) |
| <u>KLM Exhibit 214</u> | Email from CJ Comu to Ann Boureau and other recipients, with attachments, dated April 23, 2010.  (CJ 18799-18800.) |
| <u>KLM Exhibit 215</u> | Email from CJ Comu to Cem Comu, with attachments, dated April 24, 2010.  (CJ 18829-30.) |
| <u>KLM Exhibit 216</u> | Email from CJ Comu to Jonathan Alexander, dated April 29, 2010.  (CJ.) |
| <u>KLM Exhibit 217</u> | Email from CJ Comu to Ann Boureau and other recipients, dated May 2, 2010.  (CJ 19033.) |

| | |
|---|---|
| **KLM Exhibit 218** | **Email from CJ Comu to Peter Knight and Dave Welch, dated May 12, 2010 (CJ 19501.)** |
| **KLM Exhibit 219** | **Email from CJ Comu to Marc Bryant and Dave Welch, with attachments, dated June 3, 2010.  (CJ 20133-34.)** |
| **KLM Exhibit 220** | **Email from CJ Comu to Tunch Kashif, with attachments, dated June 8, 2010.  (CJ 20205-06.)** |
| **KLM Exhibit 221** | **Email from CJ Comu to Dave Welch, dated June 28, 2010.  (CJ 20868.)** |
| **KLM Exhibit 222** | **Email from CJ Comu to Spencer Hartstein, dated June 29, 2010.  (CJ 21106.)** |
| **KLM Exhibit 223** | **Email from CJ Comu to Xpress Copy, with attachments, dated June 29, 2010.  (CJ 21125-26.)** |
| **KLM Exhibit 224** | **Email from CJ Comu to Marc Bryant and Dave Welch, with attachments, dated July 1, 2010.  (CJ 21225-31.)** |
| **KLM Exhibit 225** | **Email from CJ Comu to Peter Knight, dated July 4, 2010.  (CJ 21382.)** |
| **KLM Exhibit 226** | **Email from CJ Comu to Peter Knight, dated July 4, 2010.  (CJ 21386.)** |
| **KLM Exhibit 227** | **Email from CJ Comu to Peter Knight, dated July 9, 2010.  (CJ 21751.)** |
| **KLM Exhibit 228** | **Email from Robert Feeback to CJ Comu and other recipients, dated February 17, 2009.  (CJ 22973.)** |
| **KLM Exhibit 229** | **Email from Paragon GPS to CJ Comu, with attachments, dated February 13, 2009.  (CJ 23027-28.)** |
| **KLM Exhibit 230** | **Email from Sergei Lomako to CJ Comu and other recipients, with attachments, August 12, 2009.  (CJ 31750-51.)** |
| **KLM Exhibit 231** | **Email from CJ Comu to Dennis Olson, with attachments, dated August 14, 2009. (Source: CJ 31766-68.)** |
| **KLM Exhibit 232** | **Email from CJ Comu to Matthew Edmund and other recipients, dated August 20, 2009.  (CJ 31933.)** |
| **KLM Exhibit 233** | **Email from CJ Comu to Chris Roundtree and other recipients, with attachments, dated August 31, 2009.  (CJ 32401-402.)** |
| **KLM Exhibit 234** | **Email from CJ Comu to Chris Roundtree, dated September 9, 2009.  (CJ 32960.)** |

*AUS 536294093v1*

| KLM Exhibit 235 | Email from CJ Comu to Bruce Scambler and Steven Fly, with attachments, dated September 11, 2009.  (CJ 33151-53.) |
|---|---|
| KLM Exhibit 236 | Email from CJ Comu to Chris Roundtree and Dave Welch, with attachments, September 11, 2009.  (CJ 33173-74.) |
| KLM Exhibit 237 | Email from CJ Comu to Dave Welch, with attachments, dated September 13, 2009.  (CJ 33210-11.) |
| KLM Exhibit 238 | Email from CJ Comu to Bruce Scambler and Steven Fly, with attachments, dated September 14, 2009.  (CJ 33238-39.) |
| KLM Exhibit 239 | Email from CJ Comu to Phillip Offill and other recipients, dated September 15, 2009.  (CJ 33356.) |
| KLM Exhibit 240 | Email from CJ Comu to Bruce Scambler, with attachments, dated September 17, 2009.  (CJ 33490-93.) |
| KLM Exhibit 241 | Email from Simon Ferguson to CJ Comu, with attachments, dated September 22, 2009.  (CJ 33773-74.) |
| KLM Exhibit 242 | Email from CJ Comu to Lester Bedford, with attachments, September 24, 2009.  (CJ 34097-98.) |
| KLM Exhibit 243 | Email from CJ Comu to Michael Coogan, dated September 29, 2009.  (CJ 34327.) |
| KLM Exhibit 244 | Email from CJ Comu to Jean Marc Lopez and other recipients, with attachments, September 29, 2009.  (CJ 34331-35.) |
| KLM Exhibit 245 | Email from Simon Ferguson to CJ Comu, dated October 1, 2009.  (CJ 34521.) |
| KLM Exhibit 246 | Email from Simon Ferguson to CJ Comu, dated October 1, 2009.  (CJ 34523.) |
| KLM Exhibit 247 | Email from Michael Coogan to CJ Comu, with attachment, dated October 8, 2009 (CJ 34937 – 38.) |
| KLM Exhibit 248 | Email from Patrick Kelly to Simon Ferguson to CJ Comu and other recipients, with attachments, dated October 14, 2009.  (CJ 35334-36.) |
| KLM Exhibit 249 | Email from Christopher McNeill to CJ Comu and other recipients, with attachments, dated October 15, 2009.  (CJ 35466-67.) |
| KLM Exhibit 250 | Email from Christopher McNeill to CJ Comu and other recipients, dated October 15, 2009.  (CJ 35480.) |

| | |
|---|---|
| **KLM Exhibit 251** | Email from Christopher McNeill to CJ Comu, dated October 15, 2009. (CJ 35490.) |
| **KLM Exhibit 252** | Email from Xpress Copying to CJ Comu, with attachments, dated October 19, 2009. (CJ 35590-91.) |
| **KLM Exhibit 253** | Email from Robert Feeback to CJ Comu and other recipients, dated November 6, 2009. (CJ 36543.) |
| **KLM Exhibit 254** | Email from Saul Albom to CJ Comu, with attachments, dated November 8, 2009. (CJ 36696-97.) |
| **KLM Exhibit 255** | Email from Christopher McNeill to CJ Comu and other recipients, with attachments, dated November 10, 2009. (CJ 36882-84.) |
| **KLM Exhibit 256** | Email from Troy Phillips to CJ Comu, dated December 4, 2009. (Source: CJ 38450.) |
| **KLM Exhibit 257** | Email from Chris Roundtree to CJ Comu, dated December 5, 2009. (CJ 38508.) |
| **KLM Exhibit 258** | Email from Sheri Robinson to CJ Comu and other recipients, dated December 17, 2009. (CJ 39306.) |
| **KLM Exhibit 259** | Email from Sheri Robinson to CJ Comu and other recipients, with attachments, dated December 30, 2009. (CJ 39837-46.) |
| **KLM Exhibit 260** | Email from Perry West to CJ Comu and other recipients, with attachments, dated December 31, 2009. (Source: CJ 39877-78.) |
| **KLM Exhibit 261** | Email from Cem Comu to CJ Comu and Aylin Burdett, dated January 5, 2010. (Source: CJ 40130.) |
| **KLM Exhibit 262** | Email from Brian Rudy to CJ Comu, dated January 5, 2010. (Source: CJ 40131.) |
| **KLM Exhibit 263** | Email from Cem Comu to CJ Comu, dated January 15, 2009. (CJ 40761.) |
| **KLM Exhibit 264** | Email from Reed Wallace to CJ Comu, dated January 20, 2009. (CJ 41036.) |
| **KLM Exhibit 265** | Email from Tory Phillips to CJ Comu, dated January 28, 2009. (CJ 41596.) |
| **KLM Exhibit 266** | Email from Charlotte Jacobs to Cem Comu and CJ Comu, with attachments, dated September 21, 2010. (CJ 43349-50.) |

KLM Exhibit 267     Email from Cem Comu to Charlotte Jacobs and CJ Comu, with attachments, dated September 22, 2010.  (CJ 43444-46.)

KLM Exhibit 268     Email from Dave Welch to CJ Comu, with attachments, dated September 29, 2010.  (CJ 43961-62.)

KLM Exhibit 269     Email from Cem Comu to CJ Comu, with attachments, dated October 19, 2010.  (CJ 45137-39.)

KLM Exhibit 270     Email from Marc Bryant to CJ Comu, dated November 24, 2010.  (CJ 47828.)

KLM Exhibit 271     Email from CJ Comu to Ed Baxter, with attachments, dated August 21, 2010.  (CJ 50506-07.)

KLM Exhibit 272     Email from CJ Comu to Ian Gander, dated August 23, 2010.  (CJ 50533.)

KLM Exhibit 273     Email from CJ Comu to Dave Welch, dated August 25, 2010.  (CJ 50575.)

KLM Exhibit 274     Email from CJ Comu to Edward Baxter, with attachments, dated August 31, 2010.  (CJ 50690-91.)

KLM Exhibit 275     Email from CJ Comu to Reuben Anstock, dated September 1, 2010.  (CJ 50764.)

KLM Exhibit 276     Email from CJ Comu to Cem Comu, dated September 2, 2010.  (CJ 50771.)

KLM Exhibit 277     Email from CJ Comu to Cem Comu, dated September 3, 2010.  (CJ 50787.)

KLM Exhibit 278     Email from CJ Comu to Bruce Taylor, dated September 13, 2010.  (CJ 50955.)

KLM Exhibit 279     Email from CJ Comu to Aundrea Whalen, dated September 15, 2010.  (CJ 51018.)

KLM Exhibit 280     Email from CJ Comu to Edward Baxter, dated September 21, 2010.  (CJ 51179.)

KLM Exhibit 281     Email from CJ Comu to Cem Comu, with attachments, dated October 5, 2010.  (CJ 51566-68.)

KLM Exhibit 282     Email from CJ Comu to Dave Welch andEmail from CJ Comu to Perry West and Dave Welch and other recipients, dated October 6, 2010.  (CJ 51628.)

*AUS 536294093v1*

| | |
|---|---|
| <u>KLM Exhibit 283</u> | **Email from CJ Comu to Cem Comu, with attachments, dated October 19, 2010. (CJ 51971-72.)** |
| <u>KLM Exhibit 284</u> | **Email from CJ Comu to Marc Bryant and Dave Welch, with attachments, dated October 27, 2010. (CJ 52202-03.)** |
| <u>KLM Exhibit 285</u> | **Email correspondence among CJ Comu and others, dated November 9, 2010 (CJ 52593)** |
| <u>KLM Exhibit 286</u> | **Email from CJ Comu to Edward Baxter, dated November 17, 2010. (CJ 52904.)** |
| <u>KLM Exhibit 287</u> | **Email from CJ Comu to Dave Welch and Marc Bryant, dated November 24, 2010. (CJ 53183.)** |
| <u>KLM Exhibit 288</u> | **Email from CJ Comu to Jean Marc Lopez and other recipients, with attachments, dated October 1, 2009. (CJ 54147-48.)** |
| <u>KLM Exhibit 289</u> | **Email from CJ Comu to "ted@titanrealtycorp.com," with attachments, dated October 9, 2009. (CJ 54397-54400.)** |
| <u>KLM Exhibit 290</u> | **Email from CJ Comu to Christian Briggs and other recipients, with attachments, dated October 13, 2009. (CJ 54539-41.)** |
| <u>KLM Exhibit 291</u> | **Email from CJ Comu to Christopher McNeill and other recipients, dated October 15, 2009. (CJ 54599.)** |
| <u>KLM Exhibit 292</u> | **Email from CJ Comu to Christopher McNeill and other recipients, dated October 20, 2009. (CJ 54765.)** |
| <u>KLM Exhibit 293</u> | **Email from CJ Comu to Steven Fly, dated October 26, 2009. (CJ 54918.)** |
| <u>KLM Exhibit 294</u> | **Email from CJ Comu to Robert Naranjo, with attachments, dated November 4, 2009. (CJ 55309-10.)** |
| <u>KLM Exhibit 295</u> | **Email from CJ Comu to Heather Jackson, with attachments, dated November 5, 2009. (CJ 55332-33.)** |
| <u>KLM Exhibit 296</u> | **Email from CJ Comu to Simon Ferguson, dated November 5, 2009. (CJ 55499.)** |
| <u>KLM Exhibit 297</u> | **Email from CJ Comu to Saul Albom and Steve Kanaval, with attachments, dated November 5, 2009. (CJ 55500-01.)** |
| <u>KLM Exhibit 298</u> | **Emails from CJ Comu to multiple recipients dated November 16, 2009. (CJ 55905-06.)** |

AUS 536294093v1

000800

| KLM Exhibit 299 | Email from CJ Comu to Troy Phillips, with attachments, dated November 17, 2009.  (CJ 55995-98.) |
|---|---|
| KLM Exhibit 300 | Email from CJ Comu to Troy Phillips, with attachments, dated December 4, 2009.  (CJ 56607-10.) |
| KLM Exhibit 301 | Email from CJ Comu to Christian Briggs, with attachments, dated December 4, 2009.  (CJ 56635-36.) |
| KLM Exhibit 302 | Email from CJ Comu to Troy Phillips, dated December 10, 2009.  (CJ 56823.) |
| KLM Exhibit 303 | Email from CJ Comu to Lester Bedford, dated December 11, 2009.  (CJ 56894.) |
| KLM Exhibit 304 | Email from CJ Comu to Perry West and Dave Welch, dated December 11, 2009.  (CJ 56935.) |
| KLM Exhibit 305 | Email from CJ Comu to Dave Welch and Gary Zinn, with attachments, dated December 15, 2009.  (CJ 57092-93.) |
| KLM Exhibit 306 | Email from CJ Comu to Cem Comu, Aylin Burdett and Mom, dated December 17, 2009.  (CJ 57136.) |
| KLM Exhibit 307 | Email from CJ Comu to Sherri Robinson and other recipients, with attachments, dated December 18, 2009.  (CJ 57160-61.) |
| KLM Exhibit 308 | Email from CJ Comu to Laurence Briggs, dated December 18, 2009.  (CJ 57165.) |
| KLM Exhibit 309 | Email correspondence between Mike Yannacopoulos to CJ Comu, dated December 28, 2009.  (CJ 57261-62.) |
| KLM Exhibit 310 | Email from CJ Comu to Dennis Olson, with attachments, dated December 30, 2009. (CJ 57371-72.) |
| KLM Exhibit 311 | Email from CJ Comu to Troy Phillips, with attachments, dated January 6, 2010.  (CJ 57537-39.) |
| KLM Exhibit 312 | Email from CJ Comu to Dennis Olson, with attachments, dated January 11, 2010. (CJ 57701-02.) |
| KLM Exhibit 313 | Email from CJ Comu to Christ Troster and other recipients, with attachments, dated January 12, 2010.  (CJ 57753-54.) |
| KLM Exhibit 314 | Email from CJ Comu to Wakabayashi Fund, dated January 14, 2010.  (CJ 57832.) |

AUS 536294093v1

000801

| KLM Exhibit 315 | Email from CJ Comu to Dave Welch and Gary Zinn, with attachments, dated January 14, 2010. (CJ 57834-35.) |
| --- | --- |
| KLM Exhibit 316 | Email from CJ Comu to Charles Greenberg, dated January 18, 2010. (CJ 57960.) |
| KLM Exhibit 317 | Email from CJ Comu to Reed Wallace, dated January 20, 2010. (CJ 58040.) |
| KLM Exhibit 318 | Email from CJ Comu to Christina Briggs, with attachments, dated January 21, 2010. (CJ 58091-93.) |
| KLM Exhibit 319 | Email from Dave Welch to CJ Comu, with attachments, dated January 30, 2009. (CJ 59917-19.) |
| KLM Exhibit 320 | Email from Cigdem Beykoylu to CJ Comu, dated August 4, 2009. (CJ 60015.) |
| KLM Exhibit 321 | Email from CJ Comu (at cj@globalenergymngt.com) to CJ Comu (at cj@thebarclaygroup.com), with attachments, dated August 5, 2009. (CJ 60034-37.) |
| KLM Exhibit 322 | Email from CJ Comu to Charlotte Jacobs, dated February 10, 2012 (CJ 60992.) |
| KLM Exhibit 323 | Email from Nick Toscano to CJ Comu, dated July 2, 2010. (CJ 61864.) |
| KLM Exhibit 324 | Email from Perry West to CJ Comu, dated April 1, 2010. (CJ 66253.) |
| KLM Exhibit 325 | Email from Perry West to CJ Comu, Dave Welch, and David Knight, with attachments, dated April 1, 2010. (CJ 66262-68.) |
| KLM Exhibit 326 | Email from Perry West to CJ Comu, dated April 1, 2010. (CJ 66370.) |
| KLM Exhibit 327 | Email from Dave Welch to CJ Comu, with attachments, dated January 8, 2010. (CJ 69115-17.) |
| KLM Exhibit 328 | Email from Robert Feeback to CJ Comu and other recipients, dated November 1, 2009. (CJ 70796.) |
| KLM Exhibit 329 | Email from Robert Feeback to CJ Comu, with attachments, dated October 31, 2009. (CJ 70846-48.) |
| KLM Exhibit 330 | Email from Simon Ferguson to CJ Comu, with attachments, dated September 22, 2009. (CJ 72103-13.) |
| KLM Exhibit 331 | Email from Steven Fly to CJ Comu, with attachments, dated September 14, 2009. (CJ 72513-17.) |

AUS 536294093v1

000802

| KLM Exhibit 332 | Email from Steven Fly to CJ Comu, with attachments, dated September 11, 2009.  (CJ 72588-90.) |
| --- | --- |
| KLM Exhibit 333 | Email from Cem Comu to CJ Comu, with attachments, dated September 3, 2010.  (CJ 83078-80.) |
| KLM Exhibit 334 | Email from Fergus Anstock to CJ Comu and other recipients, dated September 2, 2010.  (CJ 83203.) |
| KLM Exhibit 335 | Email from Perry West to John Potter, CJ Comu and other recipients, dated September 13, 2010.  (CJ 84424.) |
| KLM Exhibit 336 | Exhibits for impeachment purposes and as or in rebuttal. |
| KLM Exhibit 337 | Plaintiffs reserve the right to use and rely upon any exhibit identified by the Trustee as Intervenor or by Defendants. |
| KLM Exhibit 338 | Plaintiffs reserve the right to offer additional exhibits to "complete" exhibits offered by the Trustee as Intervenor or by Defendants. |

DATED:  March 11, 2014.

GREENBERG TRAURIG, LLP

By: */s/ Shari L. Heyen*
   **Shari L. Heyen**
   **Texas Bar No. 09564750**
   **1000 Louisiana, Suite 1700**
   **Houston, Texas 77002**
   **Telephone: (713) 374-3500**
   **Facsimile: (713) 374-3505**
   **Email: heyens@gtlaw.com**

   **Kendyl T. Hanks**
   **Texas Bar No. 24032273**
   **300 West 6th Street, Suite 2050**
   **Austin, Texas 78701**
   **Telephone: (512) 320-7200**
   **Facsimile: (512) 320-7210**
   **Email: hanksk@gtlaw.com**

**CERTIFICATE OF SERVICE**

     I certify that a true and correct copy of the above and foregoing has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on March 11, 2014.


                        */s/ Shari L. Heyen*
                        Shari L. Heyen

*AUS 536294093v1*

000804

David W. Elmquist -- SBT #06591300
**REED & ELMQUIST, P.C.**
501 N. College Street
Waxahachie, TX 75165
(972) 938-7339
(972) 923-0430 (fax)

**ATTORNEYS FOR DIANE G. REED, CHAPTER 7 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |

| | | |
|---|---|---|
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-plaintiff and | § | |
|     Third-party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CENGIZ J. COMU, | § | |
|     Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| PHYLLIS E. COMU, | § | |
| BERNARD D. BROWN, | § | |
| THE BARCLAY GROUP, INC. AND | § | |
| SUNSET PACIFIC, L.P., | § | |
|     Third-party Defendants. | § | **Trial: March 17, 2014 at 9:30 a.m.** |

**INTERVENOR'S AMENDED WITNESS AND EXHIBIT LIST FOR TRIAL – Page 1**

000805

## INTERVENOR'S AMENDED WITNESS AND EXHIBIT LIST FOR TRIAL

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

Diane Reed, Chapter 7 Trustee of the estate of Cengiz J. Comu, Intervenor, Co-Plaintiff and Third-Party Plaintiff herein, files this her Amended Witness and Exhibit List for trial of this adversary proceeding, and respectfully designates the following potential witnesses and exhibits:

### Witnesses

1. Cengiz J. Comu

2. Phyllis E. Comu

3. Alvin Dahl

4. David Parsley

5. Edward Baxter

6. Christopher McNeill

7. Any witness identified or called by any other party

8. Any rebuttal or impeachment witness

### Exhibits

| Tab | Description |
|---|---|
| 1. | Consent of the General Partner of Sunset Pacific dated 1/1/2006 (Ex. 3 of 11/30/2011 C.J. Comu Exam) |
| 2. | Stock Certificate for Sunset Pacific 100 million shares in Global Energy Technology Group (Ex. 6 of 11/30/2011 C.J. Comu Exam) |
| 3. | Stock Certificate No. GA 01089 for CJ Comu 300,000 shares in GANAS (Ex. 10 of 11/30/2011 C.J. Comu Exam) |
| 4. | Stock Certificate No. 04908 for Eurocap Technologies 10 million shares in Green Auto (Ex. 12 of 11/30/2011 C.J. Comu Exam) |
| 5. | Stock Certificate No. 04909 for Sunset Pacific 2.5 million shares in Green Auto (Ex. 13 of 11/30/2011 C.J. Comu Exam) |
| 6. | Stock Purchase Agreement between TBG and Sunset Pacific dated 1/10/2010 (Ex. 14 of 11/30/2011 C.J. Comu Exam) |

7.  Stock Purchase agreement between TBG and TKY Trust dated 1/10/2010 (Ex. 15 of 11/30/2011 C.J. Comu Exam)

8.  Stock Purchase Agreement between TBG and Daptco Trust dated 1/10/2010 (Ex. 16 of 11/30/2011 C.J. Comu Exam)

9.  Stock Certificate No. 02549 for TBG 200,000 shares in Green Auto (Ex. 18 of 11/30/2011 C.J. Comu Exam)

10. Stock Certificate No. 02550 for TBG 200,000 Shares in Green Auto (Ex. 19 of 11/30/2011 C.J. Comu Exam)

11. Stock Certificate No. 02551 for TBG 200,000 Shares in Green Auto (Ex. 20 of 11/30/2011 C.J. Comu Exam)

12. Stock Certificate No. 02552 for TBG 200,000 shares in Green Auto (Ex. 21 of 11/30/2011 C.J. Comu Exam)

13. Stock Certificate No. 02553 for TBG 500,000 shares in Green Auto (Ex. 22 of 11/30/2011 C.J. Comu Exam)

14. Stock Certificate No. 02554 for TBG shares in Green Auto (Ex. 23 of 11/30/2011 C.J. Comu Exam)

15. 2007 Tax Return of TBG (Ex. 41 of 11/30/2011 C.J. Comu Exam)

16. 2008 Tax Return of TBG (Ex. 42 of 11/30/2011 C.J. Comu Exam)

17. 2009 Tax Return of TBG (Ex. 43 of 11/30/2011 C.J. Comu Exam)

18. 2010 Tax Return of TBG (Ex. 44 of 11/30/2011 C.J. Comu Exam)

19. Merger Agreement and Plan of Reorganization between GANAS, Go Green USA and members of the Go Green signatory dated 11/4/2009 (Ex. 46 of 8/8/2012 C.J. Comu Exam)

20. Eurocap Investments PLC Share Exchange Agreement between The Barclay Group and "persons executing this agreement" dated 10/31/2011 (Ex. 47 of 8/8/2012 C.J. Comu Exam)

21. TBG Profit and Loss 2011 (Ex. 54 of 8/8/2012 C.J. Comu Exam)

22. TBG Trial Balance as of 12/31/2011 (Ex. 55 of 8/8/2012 C.J. Comu Exam)

23. TBG Balance Sheet 8/2011 (Ex. 56 of 8/8/2012 C.J. Comu Exam)

24. TBG Financial worksheet 2009 (Ex. 57 of 8/8/2012 C.J. Comu Exam)

25.    TBG Transaction Accounting 2010 (Ex. 58 of 8/8/2012 C.J. Comu Exam)

26.    TBG General Ledger as of 12/31/2011 (Ex. 59 of 8/8/2012 C.J. Comu Exam)

27.    TKY Trust Discretionary Trust Agreement between Sevim Comu (settler) and Cem Comu and Aylin Burdett (initial trustees) dated 1/6/2010 (Ex. 60 of 8/8/2012 C.J. Comu Exam)

28.    Barclay Group Checks Payable to Phyllis Comu (Ex. 4 of 8/9/2012 Phyllis Comu Exam)

29.    Sunset Pacific Checks Payable to Phyllis Comu (Ex. 6 of 8/9/2012 Phyllis Comu Exam)

30.    U.S. Return of Partnership Income, Sunset Pacific, L.P., 2005 (Ex. 1 of 8/9/2012 Alvin Dahl Exam)

31.    U.S. Return of Partnership Income, Sunset Pacific, L.P., 2006 (Ex. 2 of 8/9/2012 Alvin Dahl Exam)

32.    U.S. Return of Partnership Income, Sunset Pacific, L.P., 2007 (Ex. 3 of 8/9/2012 Alvin Dahl Exam)

33.    U.S. Return of Partnership Income, Sunset Pacific, L.P., 2008 (Ex. 4 of 8/9/2012 Alvin Dahl Exam)

34.    U.S. Return of Partnership Income, Sunset Pacific, L.P., 2009 (Ex. 5 of 8/9/2012 Alvin Dahl Exam)

35.    U.S. Return of Partnership Income, Sunset Pacific, L.P., 2010 (Ex. 6 of 8/9/2012 Alvin Dahl Exam)

36.    U.S. Return of Partnership Income, Sunset Pacific, L.P., 2011 (Ex. 7 of 8/9/2012 Alvin Dahl Exam)

37.    The Barclay Group, Inc. Profit & Loss January – July 2012 (Ex. 1 of 8/15/2012 David Parsley Exam)

38.    The Barclay Group, Inc. Balance Sheet as of December 31, 2011 (Ex. 2 of 8/15/2012 David Parsley Exam)

39.    The Barclay Group, Inc. Balance Sheet as of July 31, 2012 (Ex. 3 of 8/15/2012 David Parsley Exam)

40.    Letter dated February 23, 2012 from TKY Trust to Matthew Troster at Olde Monmouth with attached spreadsheet of TKY Distributions (Ex. 7 of 8/15/2012 David Parsley Exam)

41. Letter dated April 19, 2012 from TKY Trust to Matthew Troster at Olde Monmouth with attached spreadsheet of Daptco Trust Distributions (Ex. 8 of 8/15/2012 David Parsley Exam)

42. Transcript of Matthew Troster Rule 2004 Examination taken March 6, 2013

43. Escrow Agreement by and between The Barclay Group, Inc. (Seller) of Green Automotive common stock and Olde Monmouth Stock Transfer Co. (Escrow Agent) entered into as of June 16, 2011 (Ex. 1 of 3/16/2013 Matthew Troster Exam)

44. The Barclay Group Escrow Funds spreadsheet for the period June 20, 2011 – January 5, 2012 (Ex. 2 of 3/16/2013 Matthew Troster Exam)

45. Instruction letter dated November 28, 2011 from C. Gem Comu, Trustee, Daptco Trust to Matthew Troster of Olde Monmouth to distribute shares (Ex. 2-A of 3/16/2013 Matthew Troster Exam)

46. Escrow Agreement by and between Daptco Trust (Seller) of Green Automotive common stock and Olde Monmouth Stock Transfer Co. (Escrow Agent) entered into as of December 1, 2011 (Ex. 3 of 3/16/2013 Matthew Troster Exam)

47. Daptco Trust Escrow Funds spreadsheet for the period March 16, 2011 – May 29, 2012 (Ex. 4 of 3/16/2013 Matthew Troster Exam)

48. Instruction letter dated November 28, 2011 from C. Gem Comu, Trustee, Daptco Trust, to Matthew Troster of Olde Monmouth to distribute shares (Ex. 4-A of 3/16/2013 Matthew Troster Exam)

49. Escrow Agreement by and between TKY Trust (Seller) of Green Automotive common stock and Olde Monmouth Stock Transfer Co (Escrow Agent) entered into as of December 1, 2011 (Ex. 5 of 3/16/2013 Matthew Troster Exam)

50. TKY Trust Escrow Funds spreadsheet for the period December 23, 2011 – March 16, 2012 (Ex. 6 of 3/16/2013 Matthew Troster Exam)

51. Green Automotive Company Corporation Certificate Transaction Journal with Transfer Date of July 1, 2011 (Ex. 7 of 3/16/2013 Matthew Troster Exam)

52. Letter dated July 22, 2011 from Edward Baxter, managing partner of The Barclay Group to Matthew Troster of Olde Monmouth Stock Transfer Co., Inc. containing breakdown of wires (Ex. 14 of 3/16/2013 Matthew Troster Exam)

53. E-mail dated April 19, 2012 from David Parsley of The Barclay Group to Matt Troster regarding Distribution Instructions (Ex. 22 of 3/16/2013 Matthew Troster Exam)

54. E-mail dated March 12, 2012 from C.J. Comu to Matt Troster regarding TKY Trust; Consultant (Ex. 27 of 3/16/2013 Matthew Troster Exam)

55. Letter dated January 5, 2012 from TKY Trust to Matthew Troster of Olde Monmouth Stock Transfer Co., Inc. containing wire instructions (Ex. 29 of 3/16/2013 Matthew Troster Exam)

56. Letter dated January 5, 2012 to Matthew Troster of Old Monmouth Stock Transfer Co., Inc. containing breakdown of wires (Ex. 51 of 3/16/2013 Matthew Troster Exam)

57. Letter dated December 15, 2011 from Ed Baxter of The Barclay Group to Matthew Troster of Ole Monmouth Stock Transfer Co., Inc. containing breakdown of wires (Ex. 65 of 3/16/2013 Matthew Troster Exam)

58. Letter dated January 19, 2012 from TKY Trust to Matthew Troster of Olde Monmouth Stock Transfer Co., Inc. containing wire instructions (Ex. 73 of 3/16/2013 Matthew Troster Exam)

59. Letter dated March 29, 2012 from Daptco Trust to Matthew Troster of Olde Monmouth Stock Transfer Co., Inc. containing breakdown of wire transfers (Ex. 85 of 3/16/2013 Matthew Troster Exam)

60. Transcript of Bernard D. Brown 2004 Examination dated March 18, 2013

61. Acquisition Agreement and Plan of Share Exchange ("Share Swap") by and among Brown & Lampe, PLC and The Barclay Group dated December 30, 2007 (Ex. 2 of 3/18/2013 Bernard D. Brown Exam)

62. Draft of Stock Purchase Agreement with Respect to Ganas, Corp. by and among The Barclay Group, Inc. and Ganas Corp. dated October __, 2009 (Ex. 10 of 3/18/2013 Bernard D. Brown Exam)

63. Texas Franchise Tax Public Information Report for Barclay Group, Inc. for the Year 2011 dated April 16, 2011 (Ex. 12 of 3/18/2013 Bernard D. Brown Exam)

64. Finders Fee Agreement by and between Green Automotive Corp. and The Barclay Group signed June 15, 2011 (Ex. 15 of 3/18/2013 Bernard D. Brown Exam)

65. The Barclay Group-Escrow Funds for the period June 20, 2011-January 5, 2012 (Ex. 17 of 3/18/2013 Bernard D. Brown Exam)

66. Share Exchange Agreement between Eurocap Investments, PLC and the Barclay Group, Inc. entered into as of October 31, 2011 (unsigned copy) (Ex. 18 of 3/18/2013 Bernard D. Brown Exam)

67. Letter dated July 22, 2011 from Edward Baxter of The Barclay Group to Matthew Troster of Olde Monmouth Stock Transfer Co., Inc. containing wire transfer instructions (Ex. 4 of 5/21/2013 Edward Baxter Deposition)

68. 2009 Federal Tax Return for Cengiz and Phyllis Comu

**INTERVENOR'S AMENDED WITNESS AND EXHIBIT LIST FOR TRIAL – Page 6**

69. 2010 Federal Tax Return for Cengiz and Phyllis Comu

70. 2011 Federal Tax Return for Cengiz and Phyllis Comu

71. Green Automotive Company, Inc. 2,500,000 shares of common stock owned by Sunset Pacific LP

72. GANAS, Corp. 2,000,000 shares of common stock owned by Daptco Trust

73. Memorandum of Understanding by and between The Maybourne Group, Ltd., The Barclay Group, Ltd. and First Market Services, Inc. entered into as of November 24, 2009

74. Stock Purchase Agreement with respect to GANAS, Corp by and among The Barclay Group and Roundtree & Associates, LLC dated October 26, 2009

75. Stock Purchase Agreement with respect to GANAS, Corp by and Among The Barclay Group and The Stockholders of GANAS, Corp dated October 26, 2009

76. Packet of Stock Certificates with Stock Power Letters

77. Stock Repurchase Agreement between The Barclay Group and GANAS, Corp dated October 28, 2009

78. Written Consent of the Majority Stockholder in lieu of a Special Meeting of the Stockholders of Ganas, Corp dated October 28, 2009

79. Unanimous written consent of the Directors in lieu of a Special Meeting of the Board of Directors of GANAS, Corp regarding Certificate of Amendment dated October 28, 2009

80. Unanimous written consent of the Directors in lieu of a Special Meeting of the Board of Directors of GANAS, Corp regarding election of officers dated October 28, 2009

81. Written consent of the Majority Stockholder in lieu of a Special Meeting of the Stockholders of GANAS, Corp dated October 28, 2009

82. State of Delaware Certificate of Amendment of the Certificate of Incorporation dated October 28, 2009

83. GANAS, Corp Officer's Certificate dated November 4, 2009

84. Go Green USA Officer's Certificate dated November 4, 2009

85. Secretary's Certificate of Go Green USA dated November 4, 2009

86. Unanimous Written Consent of the Members of Go Green USA dated October __, 2009

**INTERVENOR'S AMENDED WITNESS AND EXHIBIT LIST FOR TRIAL – Page 7**

000811

87.   Written Consent of the Majority Stockholder in lieu of a Special Meeting of the Stockholders of GANAS, Corp dated November 4, 2009

88.   Certified copy of Articles of Merger between Go Green USA and GANAS, Corp dated November 5, 2009

89.   State of Delaware Certificate of Merger GANAS, Corp and Go Green USA dated November 4, 2009

90.   Barclay Group customer claim form dated May 17, 2013 (Winstar Capital Group, Inc., Case No. 13-1331-bt (SIPA))

91.   2011 Tax Return of TBG (Ex. 10 of 8/9/2012 Alvin Dahl Exam)

92.   Any exhibit identified or offered by any other party

93.   Any rebuttal or impeachment exhibit


Dated:  March 13, 2014.


Respectfully submitted,

**REED & ELMQUIST, P.C.**
501 N. College Street
Waxahachie, TX 75165
(972) 938-7339
(972) 923-0430 (fax)


By:   /s/ David W. Elmquist
      David W. Elmquist – SBT #06591300

**ATTORNEYS FOR INTERVENOR,
CO-PLAINTIFF, AND THIRD-PARTY
PLAINTIFF DIANE G. REED,
CHAPTER 7 TRUSTEE**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 13, 2014, a true and correct copy of the foregoing Amended Witness and Exhibit List has been served electronically on Kendyl Hanks, attorney of record for Plaintiffs, and on Dennis Olson, attorney of record for Defendants.

/s/ David W. Elmquist
David W. Elmquist


**INTERVENOR'S AMENDED WITNESS AND EXHIBIT LIST FOR TRIAL – Page 8**

000812

Dennis Olson
State Bar No. 15273500
OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 – Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com

ATTORNEYS FOR DEFENDANT

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CENGIZ J. COMU a/k/a | § | CASE NO. 09-38820-sgj-7 |
| CJ COMU, | § | |
|     Debtor. | § | CHAPTER 7 |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, | § | |
| and RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |

| | |
|---|---|
| DIANE G. REED, TRUSTEE | § |
|     Intervenor, Co-Plaintiff, and | § |
|     Third-Party Plaintiff, | § |
| v. | § |
| CENGIZ J. COMU, | § |
|     Defendant, | § |
| and | § |
| PHYLLIS E. COMU, BERNARD D. | § |
| BROWN, THE BARCLAY GROUP, INC. | § |
| AND SUNSET PACIFIC, L.P. | § |
|     Third-Party Defendants. | § |

### DEFENDANTS' SECOND AMENDED LIST OF WITNESSES AND EXHIBITS

TO THE HONORABLE STACEY G C JERNIGAN
UNITED STATES BANKRUPTCY JUDGE:


    Now come the Defendants in the above-captioned adversary proceeding and file their list

of witnesses and exhibits, as follows:

A.    Witnesses

1.    Defendant C. J. Comu, individually, and as representative of Defendant The Barclay Group, Inc.

2.    Defendant Phyllis Comu, individually, and as representative of Defendant Sunset Pacific, L.P.

3.    Diane Reed, Trustee

4.    Alvin L. Dahl, CPA

5.    Cecil Mathis, Attorney

6.    Defendants reserve the right to call any witness listed by the Plaintiffs and the Trustee as Intervenor.

B.    Exhibits

1.    Order Conditionally Denying Second Motion to Dismiss signed February 24, 2011 [Doc no. 17].

2.    Order Denying Motion Without Prejudice to Refiling with Proper Notice to Trustee and All Parties signed March 23, 2011 [Doc no. 23].

3.    Order upon the Motion of Defendant CJ Comu to Dismiss Plaintiffs' Second Amended Complaint signed November 12, 2012 [Doc. No. 76].

4.    First Meeting of Creditors (February 9, 2011).

5.    CaseLink notes of Diane Reed, Trustee.

6.    Plaintiffs' Original Petition and Request for Disclosure filed July 19, 2013 against Emil Lippe in 101st District Court, Dallas County, Texas.

7.    Defendants reserve the right to use any exhibit identified by Plaintiffs or by the Trustee as Intervenor.

8.    Defendants reserve the right to offer additional exhibits to "complete" exhibits offered by Plaintiffs and the Trustee as Intervenor.

Respectfully submitted,

OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302 - Telephone
(214) 979-7301 – Facsimile
Email: denniso@dallas-law.com


By: /s/ Dennis Olson
      Dennis Olson
      State Bar No. 15273500

ATTORNEYS FOR DEFENDANTS


## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Defendants' Second Amended List of Witnesses and Exhibits was served upon:

Kendyl T. Hanks                David W. Elmquist
GREENBERG TRAURIG, LLP      Reed & Elmquist, P.C.
300 West 6th St., Ste 2050         604 Water Street
Austin, Texas 78701              Waxahachie, Texas 75165-3361


via electronic or by regular first class mail, on the 14th day of March, 2014.


                      /s/ Dennis Olson
                      Dennis Olson

Shari L. Heyen
Texas Bar No. 09564750
Email: heyens@gtlaw.com
Kendyl T. Hanks
Texas Bar No. 24032273
Email: hanksk@gtlaw.com
Victor D. Vital
Texas Bar No. 00794798
E-mail: vitalv@gtlaw.com
Nicholas A. Sarokhanian
Texas Bar No. 24075020
E-mail: sarokhaniann@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

**ATTORNEYS FOR PLAINTIFFS KING LOUIE MINING, LLC,
KING LOUIE ENTERPRISES, LLC, AND RONALD KATZ**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 7 |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO. 09-38820-sgj7 |
| | § | |
| DEBTOR. | § | |
| KING LOUIE MINING, LLC, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| Defendant. | § | |
| DIANE G. REED, TRUSTEE, | § | |
| Intervenor, Co-Plaintiff, and | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| Defendant, | § | |
| And | § | |
| PHYLLIS E. COMU, *et al.* | § | |
| Third-Party Defendants. | § | |

**PLAINTIFFS' SECOND AMENDED WITNESS AND EXHIBIT LIST FOR TRIAL**

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

COME NOW Plaintiffs in the above-captioned adversary proceeding and file their Second Amended Witness and Exhibit List for Trial, as follows:

I.   <u>ORDER OF WITNESSES FOR TRIAL</u>

Plaintiffs hereby designate the following Witnesses for trial:

1.   Ronald Katz, individually and as representative of King Louie Mining, LLC, King Louie Enterprises, LLC.

2.   Bernard D. Brown (by deposition).

3.   Steven A. Evans (by deposition)

4.   Baxter (Trustee)

5.   Christopher McNeill

6.   David Parsley

7.   Matthew Troster (by deposition)

8.   CJ Comu

9.   Phyllis Comu

10.   Emil Lippe – Rebuttal

11.   Alvin Dahl (by deposition)

II.   <u>PLAINTIFFS' DESIGNATION OF EXHIBITS OF TRIAL</u>

Plaintiffs hereby designate the following Exhibits for trial, subject to the parties' agreement and understanding regarding amendment to include items recently produced in response to third party subpoenas by Action Stock Transfer and Green Automotive.

<u>KLM Exhibit 1</u>   Summons and Complaint, dated July 20, 2006, filed in *Humitech International Group, Inc., et. al v. Cengiz Jan Comu, et. al*, **Index No. 06-602567, in the Supreme Court of the State of New York, County of New York (the "**<u>New York Action</u>**").**

| | |
|---|---|
| <u>KLM Exhibit 2</u> | Docket Sheet for the New York Action. |
| <u>KLM Exhibit 3</u> | Notice of Entry of Judgment, dated June 9, 2009, filed the New York Action (the "<u>New York Judgment</u>"). |
| <u>KLM Exhibit 4</u> | Notice of Filing Foreign Judgment, dated June 2, 2009, filed in *King Louie Mining, LLC, et. al. v. Cengiz Jan Comu, et. al*, Case No. DC-09-06981, in the 134th District Court, Dallas County Texas (New York Judgment) (the "<u>Texas Domestication Action</u>") |
| <u>KLM Exhibit 5</u> | Docket Sheet for the Texas Domestication Action. |
| <u>KLM Exhibit 6</u> | Plaintiffs' Motion to Compel Discovery, dated November 23, 2009, filed in the Texas Domestication Action. |
| <u>KLM Exhibit 7</u> | Order granting Motion to Compel Discovery, dated December 14, 2009, entered in the Texas Domestication Action. |
| <u>KLM Exhibit 8</u> | Suggestion of Bankruptcy, dated January 4, 2010, filed in the Texas Domestication Action. |
| <u>KLM Exhibit 9</u> | Notice of Settlement dated September 9, 2008, filed in *New Millennium Capital Partners II, LLC, et. al v. C.J. Comu, et. al*, Doc. #55, Case No. 3-06-CV-1180-L, in the United Stated District Court for the Northern District of Texas, Dallas Division. |
| <u>KLM Exhibit 10</u> | Stipulation of Dismissal, filed October 24, 2008, in *New Millennium Capital Partners II, LLC, et. al v. C.J. Comu, et. al*, Doc. #55, Case No. 3-06-CV-1180-L, in the United Stated District Court for the Northern District of Texas, Dallas Division. |
| <u>KLM Exhibit 11</u> | Service copies of pleadings in *Sun Sports & Entertainment v. Humitech International Group*, Case No. 3-09CV0063-0, filed January 12, 2009 in the U.S. District Court for the Northern District of Texas, transmitted January 14, 2009 from Lloyd Ward to Ron Katz. |
| <u>KLM Exhibit 12</u> | Verified Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order, dated March 27, 2013, filed in *Green Automotive Company v. The Barclay Group, Inc., et. al*., Case No. 130902103, in the Third District Court, Salt Lake County, State of Utah. |
| <u>KLM Exhibit 13</u> | Memorandum Decision and Order, dated May 7, 2013, filed in *Green Automotive Company v. The Barclay Group, Inc., et. al*., Case No. 130902103, in the Third District Court, Salt Lake County, State of Utah. |
| <u>KLM Exhibit 14</u> | Public corporate filings for Regus Advisors, Inc. |

AUS 536295102v1

| | |
|---|---|
| **KLM Exhibit 15** | Public Corporate filings for Regus Capital Fund, LP. |
| **KLM Exhibit 16** | Public Corporate filings for Regus Realty Partners, LLC. |
| **KLM Exhibit 17** | Regus Advisors, Inc., Bank of America bank statements January – October 2011. |
| **KLM Exhibit 18** | Wells Fargo bank statements for The Barclay Group (2009). |
| **KLM Exhibit 19** | Wells Fargo bank statements for The Barclay Group (2011). |
| **KLM Exhibit 20** | Wells Fargo bank statements for CJ Comu (2011). |
| **KLM Exhibit 21** | Coral Group public corporate filings. |
| **KLM Exhibit 22** | Public corporate filings for Sunset Pacific, LP. |
| **KLM Exhibit 23** | Public corporate filings for The Barclay Group, Inc. filed with the Texas Secretary of State. |
| **KLM Exhibit 24** | Public corporate filings for Barclay Group, Inc. filed with the Texas Secretary of State. |
| **KLM Exhibit 25** | Public corporate filings for Global Energy Technology Group. |
| **KLM Exhibit 26** | T3 Networks, Inc. stock certificates issued in the name of The Barclay Group. |
| **KLM Exhibit 27** | Mano-A-Mano trademark application filed April 17, 2009. |
| **KLM Exhibit 28** | Advisory Agreement by and between Green Automotive Company Corporation and The Barclay Group, Inc., January 2010 (Source: Brown Deposition, Exhibit 13.) |
| **KLM Exhibit 29** | Promissory Note between Green Automotive Company, Inc. and The Barclay Group Inc., dated January 8, 2010. (Source: Brown Deposition, Exhibit 14.) |
| **KLM Exhibit 30** | The Barclay Group letter to OMST, dated August 25, 2011. (Source: Parsley Deposition, Exhibit 6.) |
| **KLM Exhibit 31** | Letter from The Barclay Group to OMST, dated December 29, 2011 (with handwritten notes). (Source: Baxter Deposition, Exhibit 11.) |
| **KLM Exhibit 32** | Advisory Agreement between The Barclay Group and Go Green USA, LLC, dated September 1, 2009. (Source: Evans Deposition, Exhibit 2.) |
| **KLM Exhibit 33** | Confidential Memorandum from CJ Comu to Steven Fly, dated September 9, 2009. (Source: Evans Deposition, Exhibit 5.) |

AUS 536295102v1

| | |
|---|---|
| <u>KLM Exhibit 34</u> | Handwritten notes by Steve Evans dated September 8, 2009. (Source: Evans Deposition, Exhibit 7.) |
| <u>KLM Exhibit 35</u> | Handwritten corporate minutes dated September 10, 2009. (Source: Evans Deposition, Exhibit 8.) |
| <u>KLM Exhibit 36</u> | Email from CJ Comu to Steven Fly, with attachments, dated November 9, 2009. (Source: Evans Deposition, Exhibit 13.) |
| <u>KLM Exhibit 37</u> | Confidential Private Placement Memorandum No. 114 for Green Automotive Company Inc. (Source: Evans Deposition, Exhibit 25.) |
| <u>KLM Exhibit 38</u> | Barclay Group Inc. 2011 Tax Return (dated August 7, 2012). (Source: Dahl 2004 Exam, Exhibit 10; Trustee Exhibit 91) |
| <u>KLM Exhibit 39</u> | The Barclay Group Letter to OMST, dated July 14, 2011. (Source: Troster Deposition, Exhibit 12.) |
| <u>KLM Exhibit 40</u> | The Barclay Group – Escrow Funds (chart). (Source: Troster Deposition, Exhibit 13.) |
| <u>KLM Exhibit 41</u> | Email from CJ Comu to Matt Troster with attachments, dated July 28, 2011. (Source: Troster Deposition, Exhibit 16.) |
| <u>KLM Exhibit 42</u> | Wire Transfer Instructions to OMST. (Source: Troster Deposition, Exhibit 17.) |
| <u>KLM Exhibit 43</u> | Email from The Barclay Group to Matt Troster with attachments, dated November 10, 2011. (Source: Troster Deposition, Exhibit 21.) |
| <u>KLM Exhibit 44</u> | Email from Matt Troster to Justeene Blankenship with attachments, dated April 19, 2012. (Source: Troster Deposition, Exhibit 23.) |
| <u>KLM Exhibit 45</u> | Email from CJ Comu to Matt Troster, dated March 15, 2012. (Source: Troster Deposition, Exhibit 26.) |
| <u>KLM Exhibit 46</u> | Letter from TKY Trust to OMST, with handwritten notes, dated January 5, 2012. (Source: Troster Deposition, Exhibit 30.) |
| <u>KLM Exhibit 47</u> | Irrevocable Stock Power for Green Auto stock certificate No, 01032, dated October 31, 2011. (Source: Troster Deposition, Exhibit 32.) |
| <u>KLM Exhibit 48</u> | Corporate Resolution of TKY Trust dated October 31, 2011. (Source: Troster Deposition, Exhibit 33.) |
| <u>KLM Exhibit 49</u> | Green Auto Transaction Journal (2010). (Source: Troster Deposition, Exhibit 37A.) |

| KLM Exhibit 50 | Green Auto Transaction Journal (2010). (Source: Troster Deposition, Exhibit 37B.) |
|---|---|
| KLM Exhibit 51 | Green Auto Transaction Journal (2011). (Source: Troster Deposition, Exhibit 38.) |
| KLM Exhibit 52 | OMST stock trading ledger for The Barclay Group – Green Auto. (Source: Troster Deposition, Exhibit 41; Comu 2012 Exam 49.) |
| KLM Exhibit 53 | OMST stock trading ledger for DAPTCO Trust – Green Auto. (Source: Troster Deposition, Exhibit 42; Comu 2012 Exam 51.) |
| KLM Exhibit 54 | OMST stock trading ledger for TKY Trust – Green Auto. (Source: Troster Deposition, Exhibit 43; Comu 2012 Exam 50.) |
| KLM Exhibit 55 | Email from "Consultant" to Matt Troster dated March 15, 2012. (Source: Troster Deposition, Exhibit 44.) |
| KLM Exhibit 56 | Letter from DAPTCO Trust to OMST dated March 22, 2012. (Source: Troster Deposition, Exhibit 46.) |
| KLM Exhibit 57 | Email from The Barclay Group to Matt Troster, dated December 30, 2011. (Source: Troster Deposition, Exhibit 48.) |
| KLM Exhibit 58 | Email from CJ Comu to Matt Troster dated January 10, 2012. (Source: Troster Deposition, Exhibit 49.) |
| KLM Exhibit 59 | Email from CJ Comu to Matt Troster dated January 4, 2012. (Source: Troster Deposition, Exhibit 50.) |
| KLM Exhibit 60 | Letter from The Barclay Group to OMST, with handwritten notes, dated January 5, 2012. (Source: Troster Deposition, Exhibit 53.) |
| KLM Exhibit 61 | Email from The Barclay Group to Matt Troster dated December 27, 2011. (Source: Troster Deposition, Exhibit 55.) |
| KLM Exhibit 62 | Letter from The Barclay Group to OMST, dated December 1, 2011. (Source: Troster Deposition, Exhibit 63.) |
| KLM Exhibit 63 | Letter from The Barclay Group to OMST, dated December 8, 2011. (Source: Troster Deposition, Exhibit 64.) |
| KLM Exhibit 64 | Letter from The Barclay Group to OMST, dated December 22, 2011. (Source: Troster Deposition, Exhibit 66.) |
| KLM Exhibit 65 | Letter from TKY Trust to OMST dated December 29, 2011 with wire transfer instructions, and handwritten notes. (Troster Deposition, Exhibit 69.) |

AUS 536295102v1

000821

| | |
|---|---|
| **KLM Exhibit 66** | Letter from TKY Trust to OMST dated January 12, 2012 with wire transfer instructions.  (Ex. 72 to Troster Depo.) |
| **KLM Exhibit 67** | Letter from TKY Trust to OMST dated January 25, 2012 with wire transfer instructions, with transmittal email from CJ Comu at The Barclay Group.  (Ex. 74 to Troster Depo.) |
| **KLM Exhibit 68** | Email from Matt Troster to CJ Comu attaching Jan. 25, 2012 TKY wire instructions, dated January 26, 2012.  (Ex. 76 to Troster Depo.) |
| **KLM Exhibit 69** | Letter from TKY Trust to OMST dated February 9, 2012 with wire transfer instructions, with transmittal email from David Parsley at Regus Advisors.  (Ex. 77 to Troster Depo.) |
| **KLM Exhibit 70** | Letter from TKY Trust to OMST dated February 16, 2012 with wire transfer instructions, with transmittal email from David Parsley at The Barclay Group.  (Ex. 78 to Troster Depo.) |
| **KLM Exhibit 71** | Letter from TKY Trust to OMST dated February 23, 2012 with wire transfer instructions, with transmittal email from David Parsley at The Barclay Group.  (Ex. 79 to Troster Depo.) |
| **KLM Exhibit 72** | Letter from TKY Trust to OMST dated March 1, 2012 with wire transfer instructions, with transmittal email from David Parsley at The Barclay Group.  (Ex. 80 to Troster Depo.) |
| **KLM Exhibit 73** | Letter from TKY Trust to OMST dated March 8, 2012 with wire transfer instructions, with transmittal email from CJ Comu's personal gmail account.  (Ex. 81 to Troster Depo.) |
| **KLM Exhibit 74** | Letter from TKY Trust to OMST dated March 12, 2012 with wire transfer instructions, with transmittal email from CJ Comu's TBG email account, but email signed by David Parsley.  (Ex. 82 to Troster Depo.) |
| **KLM Exhibit 75** | Letter from TKY Trust to OMST dated March 15, 2012 with wire transfer instructions.  (Ex. 83 to Troster Depo.) |
| **KLM Exhibit 76** | Letter from DAPTCO Trust to OMST dated March 22, 2012 with wire transfer instructions.  (Ex. 84 to Troster Depo.) |
| **KLM Exhibit 77** | Letter from DAPTCO Trust to OMST dated April 5, 2012.  (Source: Troster Deposition, Exhibit 86.) |
| **KLM Exhibit 78** | Letter from DAPTCO Trust to OMST dated April 12, 2012.  (Source: Troster Deposition, Exhibit 87.) |

| | |
|---|---|
| KLM Exhibit 79 | Letter from DAPTCO Trust to OMST dated June 1, 2012. (Source: Troster Deposition, Exhibit 89.) |
| KLM Exhibit 80 | Fedex Mailing Receipt, from Justeene Blankenship to World-Wide Auric, dated March 22, 2012. (Source: Troster Deposition, Exhibit 90.) |
| KLM Exhibit 81 | Green Auto stock certificate #5169 for 500,000 shares of restricted stock issued to World Wide Auric International on March 22, 2012. (Source: Troster Deposition, Exhibit 91.) |
| KLM Exhibit 82 | Eurocap Investments PLC, public UK Companies House filings. |
| KLM Exhibit 83 | Inner Core Management Plc, a/k/a Hampshire Consultants Plc public UK Companies House filings. |
| KLM Exhibit 84 | Puration and UniOne Technology public UK Companies House filings. |
| KLM Exhibit 85 | Check Images. (Source: Phyllis Comu 2004 Exam, Exhibit 2.) |
| KLM Exhibit 86 | Voided check from The Barclay Group to Phyllis Comu. (Source: Phyllis Comu 2004 Exam, Exhibit 3.) |
| KLM Exhibit 87 | Check Images. (Source: Phyllis Comu 2004 Exam, Exhibit 5.) |
| KLM Exhibit 88 | Voided check from The Barclay Group to Phyllis Comu, dated December 31, 2009. (Source: Phyllis Comu Deposition, Exhibit 12.) |
| KLM Exhibit 89 | Voided checks from The Barclay Group to Phyllis Comu and other recipients. (Source: Phyllis Comu Deposition, Exhibit 13.) |
| KLM Exhibit 90 | Allstate Annuity for Sunset Pacific, LP, dated January 12, 2007. (Source: Comu 2011 Exam, Exhibit 4.) |
| KLM Exhibit 91 | Handwritten Notes by Defendants' counsel, Dennis Olson, at Debtor's November 30, 2011 Rule 2004 Exam. (Source: Comu 2011 Exam, Exhibit 17.) |
| KLM Exhibit 92 | Promissory Note by Green Automotive in favor of The Barclay Group, dated January 15, 2010. (Source: Comu 2011 Exam, Exhibit 24.) |
| KLM Exhibit 93 | Metiscan, Inc. stock certificate #1713, in the name of The Barclay Group, dated February 4, 2009. (Source: Comu 2011 Exam, Exhibit 35.) |
| KLM Exhibit 94 | Puration, Inc. stock certificate #1, in the name of Regus Advisors, Inc., dated August 23, 2011. (Source: Comu 2011 Exam, Exhibit 37.) |

AUS 536295102v1

000823

| | |
|---|---|
| **KLM Exhibit 95** | Email from CJ Comu to Emil Lippe, dated May 1, 2006. (Source: Comu 2011 Exam, Exhibit 39.) |
| **KLM Exhibit 96** | Ledger – TBG Banking 2009-2010, Wells Fargo Account Transactions. (Source: Comu 2012 Exam, Exhibit 53.) |
| **KLM Exhibit 97** | Letter from Synergy Lawyers to CJ Comu re: Establishment of the TKY Trust, dated December 24, 2009. (Source: Comu 2012 Exam, Exhibit 61.) |
| **KLM Exhibit 98** | Email from CJ Comu to Christopher McNeill dated November 30, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 4; CJ 56463.) |
| **KLM Exhibit 99** | Email from CJ Comu to Lawrence Biggs and Steven Fly, dated December 16, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 6; CJ 57117.) |
| **KLM Exhibit 100** | Email from CJ Comu to John Troster dated January 13, 2010. (Source: Comu Nov. 2013 Depo, Exhibit 16; CJ 57802.) |
| **KLM Exhibit 101** | Email to CJ Comu dated March 16, 2010. (Source: Comu Nov. 2013 Depo, Exhibit 27; CJ 66926.) |
| **KLM Exhibit 102** | Business Plan for Global Energy Technology Group. (Source: Comu Nov. 2013 Depo, Exhibit 44; CJ 61043.) |
| **KLM Exhibit 103** | Email from CJ Comu to Aylin Burdett, dated December 8, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 53; CJ 56745.) |
| **KLM Exhibit 104** | Meeting Agenda addressed to CJ Comu and others, dated August 7, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 54; CJ 565.) |
| **KLM Exhibit 105** | Email from Robert Feeback, CCd to CJ Comu, dated November 1, 2009. (Source: Comu Nov. 2013 Depo, Exhibit 57; CJ 70795.) |
| **KLM Exhibit 106** | Regus Advisors, Inc. Powerpoint. (Source: Produced by Debtor August, 2013; DEBTOR 000001-17.) |
| **KLM Exhibit 107** | Sunset Pacific bank statements through June, 2009 to March, 2010. (produced by Debtor). |
| **KLM Exhibit 108** | Regis Advisors, Inc. 2010 Tax Return, dated April 20, 2011 (produced by Debtor). |
| **KLM Exhibit 109** | Binder of Organizational Documents of Marathon Management Limited Company, Coral Group, LLC, and Sunset Pacific, LP (produced by Debtor). |

| KLM Exhibit 110 | Marathon Management LLC 2008 Income Tax Return, dated August 22, 2009 (received from Trustee). |
| --- | --- |
| KLM Exhibit 111 | Marathon Management LLC 2009 Tax Return, dated April 18, 2011 (produced by Debtor). |
| KLM Exhibit 112 | Marathon Management LLC 2010 Tax Return, dated April 19, 2011 (produced by Debtor). |
| KLM Exhibit 113 | Marathon Management, Inc., public corporate filings (Source: Nevada Secretary of State). |
| KLM Exhibit 114 | Marathon Management Limited Company, public corporate filings (Source: Nevada Secretary of State). |
| KLM Exhibit 115 | Promissory Note for $50,000 executed by CJ Comu in favor of Marathon Management Inc., dated June 23, 2012 (DEBTOR 000058-59.) |
| KLM Exhibit 116 | Green Automotive Company Corporation, Financial Statements as of December 31, 2010 and 2009 (produced by Debtor). |
| KLM Exhibit 117 | Green Automotive – List of Active Shares as of October 3, 2011 (produced by Debtor). |
| KLM Exhibit 118 | Private Placement Memorandum for T3Networks, dated July 1, 2011 (produced by Debtor). |
| KLM Exhibit 119 | Private Placement Memorandum for Global Energy Technology Group, Inc. dated February 20, 2011 (produced by Debtor). |
| KLM Exhibit 120 | Confidential Offering Memorandum for Paragon GPS, Inc., dated December 1, 2010 (produced by Debtor). |
| KLM Exhibit 121 | Finders Fee Agreement between Green Automotive Corporation and The Barclay Group, dated June 15, 2011 (produced by Debtor). |
| KLM Exhibit 122 | Letter from Green Automotive Company to Campus Investments Plc, dated May 16, 2011 (produced by Debtor). |
| KLM Exhibit 123 | Regis Advisors, Inc. 2011 Tax Return, dated August 7, 2012 (received from Trustee). |
| KLM Exhibit 124 | Cengiz J. Comu & Phyliss E. Comu, 2005 Individual Tax Return, dated August 6, 2012 (received from Trustee). |
| KLM Exhibit 125 | Cengiz J. Comu & Phyliss E. Comu, 2006 Individual Tax Return, dated August 6, 2012 (received from Trustee). |

| | |
|---|---|
| KLM Exhibit 126 | Memo from CJ Comu to Dennis Olson, dated February 10, 2010 (received from Trustee). |
| KLM Exhibit 127 | 2007 Tax Reporting Statement from Merrill Lynch for Sunset Pacific LP (received from Trustee). |
| KLM Exhibit 128 | 2007 Individual Tax Return for CJ Comu and Phyliss Comu, dated August 4, 2008, with attached W-2 (received from Trustee). |
| KLM Exhibit 129 | Invoice from Alvin Dahl to CJ Comu, dated August 22, 2009, with attached tax documents for Comu and various entities. (received from Trustee). |
| KLM Exhibit 130 | Residential Sale Contract for 14873 Oaks North Place, dated September 18, 2010 (Source: Capital Title 000240-48.) |
| KLM Exhibit 131 | Email correspondence between CJ Comu and Lisa Baker re: 14873 Oaks North Place (Source: Capital Title 000052-54.) |
| KLM Exhibit 132 | Continental Partnership, Inc. documents provided as part of purchase of 14873 Oaks North Place (Source: Capital Title 000172-178.) |
| KLM Exhibit 133 | American Home Shield home warranty documents related to 14873 Oaks North Place (Source: Capital Title 000181-193.) |
| KLM Exhibit 134 | AAA Life Insurance Policy for Cengiz J. Comu, statement dated May 17, 2013 (DEBTOR 000060-62.) |
| KLM Exhibit 135 | 2012 Tax Statement for 5301 Paladium Dr (DEBTOR 000079-80.) |
| KLM Exhibit 136 | Residential Lease for 14873 Oaks North Place, dated October 15, 2010 (DEBTOR 000082-95.) |
| KLM Exhibit 137 | Residential Lease for 5301 Paladium Drive, dated August 1, 2012 (DEBTOR 000096-109.) |
| KLM Exhibit 138 | Public filings for Grey Point Partners, LLC. |
| KLM Exhibit 139 | GACR Pink Sheets disclosure. (Source: Evans Deposition, Exhibit 26.) |
| KLM Exhibit 140 | Letter from Brian Rudy of Synergy Business Lawyers to Cem Comu and Aylin Burdett dated January 14, 2010 (produced by Debtor). |
| KLM Exhibit 141 | CJ Comu, Bank of America checking account statement, February 23, 2011 (produced by Debtor). |
| KLM Exhibit 142 | The Barclay Group – website capture, as of August 23, 2013. (Source: www.thebarclaygroup.com) |

AUS 536295102v1

| KLM Exhibit 143 | The Barclay Group – web page capture, as of March 8, 2014. Source: www.thebarclaygroup.com) |
| --- | --- |
| KLM Exhibit 144 | Regus Advisors Inc. – website capture, as of August 23, 2013. (Source: www.regusadvisors.com) |
| KLM Exhibit 145 | Puration, Inc., Annual Report, for the Year Ended December 31, 2011, filed February 29, 2012 (Public OTC Filing). |
| KLM Exhibit 146 | Algae International Group, Inc. investment presentation powerpoint, Prepared by Regus Capital Fund LP (Algae International website). |
| KLM Exhibit 147 | MMA Games, LLC, Certificate of Formation, dated May 16, 2007 (Source: Texas Secretary of State.) |
| KLM Exhibit 148 | Article: Ann Marie Shambaugh, Latino fighters to go Mano a Mano in Mesquite, dated July 8, 2009. |
| KLM Exhibit 149 | Green Automotive Company Corporation, Financial Statements as of December 31, 2009, and for the period April 28, 2009 through December 31, 2009 (Public OTC Filing). |
| KLM Exhibit 150 | Green Automotive Company, Form 10-K, for the fiscal year ended December 31, 2012 (SEC public filing). |
| KLM Exhibit 151 | Green Automotive Company, Form 10-Q, for the fiscal year ended March 31, 2013 (SEC public filings). |
| KLM Exhibit 152 | Texas Franchise Public Information Report for Sun Management Group Inc, dated December 11, 2006. (Texas Secretary of State). |
| KLM Exhibit 153 | Stock transfer report by Action Stock Transfer reflecting instructions regarding Green Auto stock transfers from Eurocap Investments PLC, dated December 12, 2013. |
| KLM Exhibit 154 | Stock transfer report by Action Stock Transfer reflecting instructions regarding Green Auto stock transfers from Eurocap Investments PLC, dated November 11, 2013, and received by transfer agent on November 13, 2013. |
| KLM Exhibit 155 | Stock transfer report by Action Stock Transfer reflecting transfer of Green Auto stock from First Market Services, Inc., to Bio-Global Resources, Inc., dated September 12, 2013. |
| KLM Exhibit 156 | Stock transfer report by Action Stock Transfer reflecting transfer of Green Auto stock from Maybourne Limited to various recipients, dated May 29, 2013. |

AUS 536295102v1

000827

| | |
|---|---|
| <u>KLM Exhibit 157</u> | **Stock transfer report by Action Stock Transfer reflecting transfer of Green Auto stock from TKY Trust to various recipients, dated March 15, 2012.** |
| <u>KLM Exhibit 158</u> | **Stock transfer report by Action Stock Transfer reflecting transfer of Green Auto stock from DAPTCO Trust to various recipients, dated March 22, 2012.** |
| <u>KLM Exhibit 159</u> | **Stock transfer report by Action Stock Transfer reflecting transfer of Green Auto stock from Newhaven Nominees to Cede & Co, dated July 31, 2012.** |
| <u>KLM Exhibit 160</u> | **Individual shareholder report by Action Stock Transfer reflecting certain shareholders of Green Auto as of February 18, 2014.** |
| <u>KLM Exhibit 161</u> | **Green Auto Stock Transfer Report prepared by Action Stock Transfer reflecting transfers of Green Auto stock between November 29, 2011 and February 17, 2014.** |
| <u>KLM Exhibit 162</u> | **Email correspondence between CJ Comu and Perry West, dated June 2, 2009 (CJ 26).** |
| <u>KLM Exhibit 163</u> | **Email from Tunch Kashif to CJ Comu, with attachments, dated June 8, 2009.  (CJ 70-71.)** |
| <u>KLM Exhibit 164</u> | **Email from Dave Welch to CJ Comu and John Potter, with attachments, dated June 29, 2009.  (CJ 244-47.)** |
| <u>KLM Exhibit 165</u> | **Email from Dave Welch to CJ Comu and Perry West, dated August 2, 2009.  (CJ 491.)** |
| <u>KLM Exhibit 166</u> | **Email from Tunch Kashif to CJ Comu, with attachments, dated August 18, 2009.  (CJ 639-40.)** |
| <u>KLM Exhibit 167</u> | **Email from Chris (tradin1@airmail.net) to CJ Comu, dated August 31, 2009.  (CJ 746.)** |
| <u>KLM Exhibit 168</u> | **Email from Troy Phillips to CJ Comu and other recipients, dated September 3, 2009.  (CJ 797.)** |
| <u>KLM Exhibit 169</u> | **Email from Troy Phillips to CJ Comu, dated September 7, 2009.  (CJ 819.)** |
| <u>KLM Exhibit 170</u> | **Email from Fawn Gomez to CJ Comu and other recipients, with attachments, dated November 3, 2009.  (CJ 1174-75.)** |
| <u>KLM Exhibit 171</u> | **Email from Laurence Biggs to CJ Comu, dated November 18, 2009.  (Source: CJ 1234.)** |

AUS 536295102v1

000828

| KLM Exhibit 172 | Emails to/from btvproduction@aol.com and CJ Comu, dated December 13, 2009 (CJ 1336.) |
|---|---|
| KLM Exhibit 173 | Email from Ian Stuart to CJ Comu, with attachments, dated March 8, 2010. (CJ 3985-86.) |
| KLM Exhibit 174 | Email from GoDaddy.com to CJ Comu, dated March 10, 2010. (CJ 4209.) |
| KLM Exhibit 175 | Email from Reuben Anstock to CJ Comu and other recipients, dated March 12, 2010. (CJ 4381.) |
| KLM Exhibit 176 | Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated March 15, 2010. (CJ 4430-33.) |
| KLM Exhibit 177 | Email from Charlotte Jacob to CJ Comu and other recipients, dated March 15, 2010. (CJ 4435.) |
| KLM Exhibit 178 | Email from Mansion House Capital to CJ Comu, with attachments, dated March 18, 2010. (CJ 4623-26.) |
| KLM Exhibit 179 | Email from GoDaddy.com to CJ Comu, dated March 21, 2010. (CJ 4696.) |
| KLM Exhibit 180 | Email from Mansion House Capital to CJ Comu, with attachments, dated April 24, 2010. (CJ 6994-95.) |
| KLM Exhibit 181 | Email from Wells Fargo Online to CJ Comu, dated April 26, 2010. (CJ 7090.) |
| KLM Exhibit 182 | Email from Marc Bryant to CJ Comu, dated May 5, 2010. (CJ 7908.) |
| KLM Exhibit 183 | Email from Marc Bryant to CJ Comu and other recipients, with attachments, dated May 5, 2010. (CJ 7910-11.) |
| KLM Exhibit 184 | Email from GoDaddy.com to CJ Comu, dated June 1, 2010. (CJ 9712.) |
| KLM Exhibit 185 | Email from GoDaddy.com to CJ Comu, dated June 7, 2010. (CJ 10139.) |
| KLM Exhibit 186 | Email from GoDaddy.com to CJ Comu, dated June 7, 2010. (CJ 10172.) |
| KLM Exhibit 187 | Email from Dave Welch to CJ Comu and other recipients, dated June 13, 2010. (CJ 10536.) |
| KLM Exhibit 188 | Email from "admin@wwauric" to CJ Comu and other recipients, dated June 14, 2010. (CJ 10633.) |

AUS 536295102v1

| KLM Exhibit 189 | Email from GoDaddy.com to CJ Comu, dated June 16, 2010. (CJ 10782.) |
|---|---|
| KLM Exhibit 190 | Email from GoDaddy.com to CJ Comu, dated June 16, 2010. (CJ 10789.) |
| KLM Exhibit 191 | Email from GoDaddy.com to CJ Comu, dated June 22, 2010. (CJ 11141.) |
| KLM Exhibit 192 | Email from DomainsbyProxy.com to CJ Comu, dated June 22, 2010. (CJ 11142.) |
| KLM Exhibit 193 | Email from GoDaddy.com to CJ Comu, dated June 22, 2010. (CJ 11150.) |
| KLM Exhibit 194 | Email from Dave Welch to CJ Comu, dated June 22, 2010. (CJ 11153.) |
| KLM Exhibit 195 | Email from Reuben Anstock to CJ Comu and other recipients, dated June 28, 2010. (CJ 11493.) |
| KLM Exhibit 196 | Email from Priya Beeharry to CJ Comu and other recipients, dated June 29, 2010. (CJ 11569.) |
| KLM Exhibit 197 | Email from Laura Zaber to CJ Comu, with attachments, dated June 30, 2010. (CJ 11671.) |
| KLM Exhibit 198 | Email from Peter Knight to CJ Comu, with attachments, dated July 1, 2010. (CJ 11817-19.) |
| KLM Exhibit 199 | Email from Bank of America to CJ Comu, dated July 2, 2010. (CJ 11932.) |
| KLM Exhibit 200 | Email from Dave Welch to CJ Comu and March Bryant, with attachments, dated July 14, 2010. (CJ 12839-45.) |
| KLM Exhibit 201 | Email from Maggie Kwong Chian to CJ Comu and other recipients, dated August 3, 2010. (CJ 13911.) |
| KLM Exhibit 202 | Email from Reuben Anstock to CJ Comu and other recipients, with attachments, dated August 6, 2010. (CJ 14151-52.) |
| KLM Exhibit 203 | Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated August 16, 2010. (CJ 14584-85.) |
| KLM Exhibit 204 | Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated August 17, 2010. (CJ 14675-76.) |

AUS 536295102v1

| | |
|---|---|
| <u>KLM Exhibit 205</u> | Email from GoDaddy.com to CJ Comu, dated August 18, 2010. (CJ 15050.) |
| <u>KLM Exhibit 206</u> | Email from Reuben Anstock to CJ Comu and other recipients, with attachments, dated August 24, 2010. (CJ 15341-46.) |
| <u>KLM Exhibit 207</u> | Email from Cem Comu to Cigdem Beykoylu, dated September 2, 2010. (CJ 15917.) |
| <u>KLM Exhibit 208</u> | Email from Cem Comu to CJ Comu, dated September 2, 2010 (CJ 15920.) |
| <u>KLM Exhibit 209</u> | Email from Cem Comu to CJ Comu, with attachments, dated September 3, 2010. (CJ 16016-17.) |
| <u>KLM Exhibit 210</u> | Email from Cem Comu to CJ Comu, with attachments, dated September 16, 2010. (CJ 16771-75.) |
| <u>KLM Exhibit 211</u> | Email from CJ Comu to Mansion House Capital, dated March 18, 2010. (CJ 17647.) |
| <u>KLM Exhibit 212</u> | Email from CJ Comu to Steven Block and Christopher McNeill, with attachments, dated March 23, 2010. (CJ 17770-71.) |
| <u>KLM Exhibit 213</u> | Email from CJ Comu to Charlotte Jacob and other recipients, with attachments, dated March 30, 2010. (CJ 17988-89.) |
| <u>KLM Exhibit 214</u> | Email from CJ Comu to Ann Boureau and other recipients, with attachments, dated April 23, 2010. (CJ 18799-18800.) |
| <u>KLM Exhibit 215</u> | Email from CJ Comu to Cem Comu, with attachments, dated April 24, 2010. (CJ 18829-30.) |
| <u>KLM Exhibit 216</u> | Email from CJ Comu to Jonathan Alexander, dated April 29, 2010. (CJ.) |
| <u>KLM Exhibit 217</u> | Email from CJ Comu to Ann Boureau and other recipients, dated May 2, 2010. (CJ 19033.) |
| <u>KLM Exhibit 218</u> | Email from CJ Comu to Peter Knight and Dave Welch, dated May 12, 2010 (CJ 19501.) |
| <u>KLM Exhibit 219</u> | Email from CJ Comu to Marc Bryant and Dave Welch, with attachments, dated June 3, 2010. (CJ 20133-34.) |
| <u>KLM Exhibit 220</u> | Email from CJ Comu to Tunch Kashif, with attachments, dated June 8, 2010. (CJ 20205-06.) |

AUS 536295102v1

000831

| | |
|---|---|
| <u>KLM Exhibit 221</u> | Email from CJ Comu to Dave Welch, dated June 28, 2010.  (CJ 20868.) |
| <u>KLM Exhibit 222</u> | Email from CJ Comu to Spencer Hartstein, dated June 29, 2010.  (CJ 21106.) |
| <u>KLM Exhibit 223</u> | Email from CJ Comu to Xpress Copy, with attachments, dated June 29, 2010.  (CJ 21125-26.) |
| <u>KLM Exhibit 224</u> | Email from CJ Comu to Marc Bryant and Dave Welch, with attachments, dated July 1, 2010.  (CJ 21225-31.) |
| <u>KLM Exhibit 225</u> | Email from CJ Comu to Peter Knight, dated July 4, 2010.  (CJ 21382.) |
| <u>KLM Exhibit 226</u> | Email from CJ Comu to Peter Knight, dated July 4, 2010.  (CJ 21386.) |
| <u>KLM Exhibit 227</u> | Email from CJ Comu to Peter Knight, dated July 9, 2010.  (CJ 21751.) |
| <u>KLM Exhibit 228</u> | Email from Robert Feeback to CJ Comu and other recipients, dated February 17, 2009.  (CJ 22973.) |
| <u>KLM Exhibit 229</u> | Email from Paragon GPS to CJ Comu, with attachments, dated February 13, 2009.  (CJ 23027-28.) |
| <u>KLM Exhibit 230</u> | Email from Sergei Lomako to CJ Comu and other recipients, with attachments, August 12, 2009.  (CJ 31750-51.) |
| <u>KLM Exhibit 231</u> | Email from CJ Comu to Dennis Olson, with attachments, dated August 14, 2009. (Source: CJ 31766-68.) |
| <u>KLM Exhibit 232</u> | Email from CJ Comu to Matthew Edmund and other recipients, dated August 20, 2009.  (CJ 31933.) |
| <u>KLM Exhibit 233</u> | Email from CJ Comu to Chris Roundtree and other recipients, with attachments, dated August 31, 2009.  (CJ 32401-402.) |
| <u>KLM Exhibit 234</u> | Email from CJ Comu to Chris Roundtree, dated September 9, 2009.  (CJ 32960.) |
| <u>KLM Exhibit 235</u> | Email from CJ Comu to Bruce Scambler and Steven Fly, with attachments, dated September 11, 2009.  (CJ 33151-53.) |
| <u>KLM Exhibit 236</u> | Email from CJ Comu to Chris Roundtree and Dave Welch, with attachments, September 11, 2009.  (CJ 33173-74.) |
| <u>KLM Exhibit 237</u> | Email from CJ Comu to Dave Welch, with attachments, dated September 13, 2009.  (CJ 33210-11.) |

AUS 536295102v1

000832

| | |
|---|---|
| **KLM Exhibit 238** | Email from CJ Comu to Bruce Scambler and Steven Fly, with attachments, dated September 14, 2009.  (CJ 33238-39.) |
| **KLM Exhibit 239** | Email from CJ Comu to Phillip Offill and other recipients, dated September 15, 2009.  (CJ 33356.) |
| **KLM Exhibit 240** | Email from CJ Comu to Bruce Scambler, with attachments, dated September 17, 2009.  (CJ 33490-93.) |
| **KLM Exhibit 241** | Email from Simon Ferguson to CJ Comu, with attachments, dated September 22, 2009.  (CJ 33773-74.) |
| **KLM Exhibit 242** | Email from CJ Comu to Lester Bedford, with attachments, September 24, 2009.  (CJ 34097-98.) |
| **KLM Exhibit 243** | Email from CJ Comu to Michael Coogan, dated September 29, 2009.  (CJ 34327.) |
| **KLM Exhibit 244** | Email from CJ Comu to Jean Marc Lopez and other recipients, with attachments, September 29, 2009.  (CJ 34331-35.) |
| **KLM Exhibit 245** | Email from Simon Ferguson to CJ Comu, dated October 1, 2009.  (CJ 34521.) |
| **KLM Exhibit 246** | Email from Simon Ferguson to CJ Comu, dated October 1, 2009.  (CJ 34523.) |
| **KLM Exhibit 247** | Email from Michael Coogan to CJ Comu, with attachment, dated October 8, 2009 (CJ 34937 – 38.) |
| **KLM Exhibit 248** | Email from Patrick Kelly to Simon Ferguson to CJ Comu and other recipients, with attachments, dated October 14, 2009.  (CJ 35334-36.) |
| **KLM Exhibit 249** | Email from Christopher McNeill to CJ Comu and other recipients, with attachments, dated October 15, 2009.  (CJ 35466-67.) |
| **KLM Exhibit 250** | Email from Christopher McNeill to CJ Comu and other recipients, dated October 15, 2009.  (CJ 35480.) |
| **KLM Exhibit 251** | Email from Christopher McNeill to CJ Comu, dated October 15, 2009.  (CJ 35490.) |
| **KLM Exhibit 252** | Email from Xpress Copying to CJ Comu, with attachments, dated October 19, 2009.  (CJ 35590-91.) |
| **KLM Exhibit 253** | Email from Robert Feeback to CJ Comu and other recipients, dated November 6, 2009.  (CJ 36543.) |

| KLM Exhibit 254 | Email from Saul Albom to CJ Comu, with attachments, dated November 8, 2009.  (CJ 36696-97.) |
| :-- | :-- |
| KLM Exhibit 255 | Email from Christopher McNeill to CJ Comu and other recipients, with attachments, dated November 10, 2009. (CJ 36882-84.) |
| KLM Exhibit 256 | Email from Troy Phillips to CJ Comu, dated December 4, 2009.  (Source: CJ 38450.) |
| KLM Exhibit 257 | Email from Chris Roundtree to CJ Comu, dated December 5, 2009.  (CJ 38508.) |
| KLM Exhibit 258 | Email from Sheri Robinson to CJ Comu and other recipients, dated December 17, 2009. (CJ 39306.) |
| KLM Exhibit 259 | Email from Sheri Robinson to CJ Comu and other recipients, with attachments, dated December 30, 2009.  (CJ 39837-46.) |
| KLM Exhibit 260 | Email from Perry West to CJ Comu and other recipients, with attachments, dated December 31, 2009.  (Source: CJ 39877-78.) |
| KLM Exhibit 261 | Email from Cem Comu to CJ Comu and Aylin Burdett, dated January 5, 2010.  (Source: CJ 40130.) |
| KLM Exhibit 262 | Email from Brian Rudy to CJ Comu, dated January 5, 2010.  (Source: CJ 40131.) |
| KLM Exhibit 263 | Email from Cem Comu to CJ Comu, dated January 15, 2009.  (CJ 40761.) |
| KLM Exhibit 264 | Email from Reed Wallace to CJ Comu, dated January 20, 2009.  (CJ 41036.) |
| KLM Exhibit 265 | Email from Tory Phillips to CJ Comu, dated January 28, 2009.  (CJ 41596.) |
| KLM Exhibit 266 | Email from Charlotte Jacobs to Cem Comu and CJ Comu, with attachments, dated September 21, 2010.  (CJ 43349-50.) |
| KLM Exhibit 267 | Email from Cem Comu to Charlotte Jacobs and CJ Comu, with attachments, dated September 22, 2010.  (CJ 43444-46.) |
| KLM Exhibit 268 | Email from Dave Welch to CJ Comu, with attachments, dated September 29, 2010.  (CJ 43961-62.) |
| KLM Exhibit 269 | Email from Cem Comu to CJ Comu, with attachments, dated October 19, 2010.  (CJ 45137-39.) |

| KLM Exhibit 270 | Email from Marc Bryant to CJ Comu, dated November 24, 2010.  (CJ 47828.) |
| --- | --- |
| KLM Exhibit 271 | Email from CJ Comu to Ed Baxter, with attachments, dated August 21, 2010.  (CJ 50506-07.) |
| KLM Exhibit 272 | Email from CJ Comu to Ian Gander, dated August 23, 2010.  (CJ 50533.) |
| KLM Exhibit 273 | Email from CJ Comu to Dave Welch, dated August 25, 2010.  (CJ 50575.) |
| KLM Exhibit 274 | Email from CJ Comu to Edward Baxter, with attachments, dated August 31, 2010.  (CJ 50690-91.) |
| KLM Exhibit 275 | Email from CJ Comu to Reuben Anstock, dated September 1, 2010.  (CJ 50764.) |
| KLM Exhibit 276 | Email from CJ Comu to Cem Comu, dated September 2, 2010.  (CJ 50771.) |
| KLM Exhibit 277 | Email from CJ Comu to Cem Comu, dated September 3, 2010.  (CJ 50787.) |
| KLM Exhibit 278 | Email from CJ Comu to Bruce Taylor, dated September 13, 2010.  (CJ 50955.) |
| KLM Exhibit 279 | Email from CJ Comu to Aundrea Whalen, dated September 15, 2010.  (CJ 51018.) |
| KLM Exhibit 280 | Email from CJ Comu to Edward Baxter, dated September 21, 2010.  (CJ 51179.) |
| KLM Exhibit 281 | Email from CJ Comu to Cem Comu, with attachments, dated October 5, 2010.  (CJ 51566-68.) |
| KLM Exhibit 282 | Email from CJ Comu to Dave Welch andEmail from CJ Comu to Perry West and Dave Welch and other recipients, dated October 6, 2010.  (CJ 51628.) |
| KLM Exhibit 283 | Email from CJ Comu to Cem Comu, with attachments, dated October 19, 2010.  (CJ 51971-72.) |
| KLM Exhibit 284 | Email from CJ Comu to Marc Bryant and Dave Welch, with attachments, dated October 27, 2010.  (CJ 52202-03.) |
| KLM Exhibit 285 | Email correspondence among CJ Comu and others, dated November 9, 2010 (CJ 52593) |

AUS 536295102v1

000835

| | |
|---|---|
| **KLM Exhibit 286** | Email from CJ Comu to Edward Baxter, dated November 17, 2010.  (CJ 52904.) |
| **KLM Exhibit 287** | Email from CJ Comu to Dave Welch and Marc Bryant, dated November 24, 2010.  (CJ 53183.) |
| **KLM Exhibit 288** | Email from CJ Comu to Jean Marc Lopez and other recipients, with attachments, dated October 1, 2009.  (CJ 54147-48.) |
| **KLM Exhibit 289** | Email from CJ Comu to "ted@titanrealtycorp.com," with attachments, dated October 9, 2009.  (CJ 54397-54400.) |
| **KLM Exhibit 290** | Email from CJ Comu to Christian Briggs and other recipients, with attachments, dated October 13, 2009.  (CJ 54539-41.) |
| **KLM Exhibit 291** | Email from CJ Comu to Christopher McNeill and other recipients, dated October 15, 2009.  (CJ 54599.) |
| **KLM Exhibit 292** | Email from CJ Comu to Christopher McNeill and other recipients, dated October 20, 2009.  (CJ 54765.) |
| **KLM Exhibit 293** | Email from CJ Comu to Steven Fly, dated October 26, 2009.  (CJ 54918.) |
| **KLM Exhibit 294** | Email from CJ Comu to Robert Naranjo, with attachments, dated November 4, 2009.  (CJ 55309-10.) |
| **KLM Exhibit 295** | Email from CJ Comu to Heather Jackson, with attachments, dated November 5, 2009.  (CJ 55332-33.) |
| **KLM Exhibit 296** | Email from CJ Comu to Simon Ferguson, dated November 5, 2009.  (CJ 55499.) |
| **KLM Exhibit 297** | Email from CJ Comu to Saul Albom and Steve Kanaval, with attachments, dated November 5, 2009.  (CJ 55500-01.) |
| **KLM Exhibit 298** | Emails from CJ Comu to multiple recipients dated November 16, 2009.  (CJ 55905-06.) |
| **KLM Exhibit 299** | Email from CJ Comu to Troy Phillips, with attachments, dated November 17, 2009.  (CJ 55995-98.) |
| **KLM Exhibit 300** | Email from CJ Comu to Troy Phillips, with attachments, dated December 4, 2009.  (CJ 56607-10.) |
| **KLM Exhibit 301** | Email from CJ Comu to Christian Briggs, with attachments, dated December 4, 2009.  (CJ 56635-36.) |

AUS 536295102v1

000836

| KLM Exhibit 302 | Email from CJ Comu to Troy Phillips, dated December 10, 2009. (CJ 56823.) |
|---|---|
| KLM Exhibit 303 | Email from CJ Comu to Lester Bedford, dated December 11, 2009. (CJ 56894.) |
| KLM Exhibit 304 | Email from CJ Comu to Perry West and Dave Welch, dated December 11, 2009. (CJ 56935.) |
| KLM Exhibit 305 | Email from CJ Comu to Dave Welch and Gary Zinn, with attachments, dated December 15, 2009. (CJ 57092-93.) |
| KLM Exhibit 306 | Email from CJ Comu to Cem Comu, Aylin Burdett and Mom, dated December 17, 2009. (CJ 57136.) |
| KLM Exhibit 307 | Email from CJ Comu to Sherri Robinson and other recipients, with attachments, dated December 18, 2009. (CJ 57160-61.) |
| KLM Exhibit 308 | Email from CJ Comu to Laurence Briggs, dated December 18, 2009. (CJ 57165.) |
| KLM Exhibit 309 | Email correspondence between Mike Yannacopoulos to CJ Comu, dated December 28, 2009. (CJ 57261-62.) |
| KLM Exhibit 310 | Email from CJ Comu to Dennis Olson, with attachments, dated December 30, 2009. (CJ 57371-72.) |
| KLM Exhibit 311 | Email from CJ Comu to Troy Phillips, with attachments, dated January 6, 2010. (CJ 57537-39.) |
| KLM Exhibit 312 | Email from CJ Comu to Dennis Olson, with attachments, dated January 11, 2010. (CJ 57701-02.) |
| KLM Exhibit 313 | Email from CJ Comu to Christ Troster and other recipients, with attachments, dated January 12, 2010. (CJ 57753-54.) |
| KLM Exhibit 314 | Email from CJ Comu to Wakabayashi Fund, dated January 14, 2010. (CJ 57832.) |
| KLM Exhibit 315 | Email from CJ Comu to Dave Welch and Gary Zinn, with attachments, dated January 14, 2010. (CJ 57834-35.) |
| KLM Exhibit 316 | Email from CJ Comu to Charles Greenberg, dated January 18, 2010. (CJ 57960.) |
| KLM Exhibit 317 | Email from CJ Comu to Reed Wallace, dated January 20, 2010. (CJ 58040.) |

AUS 536295102v1

000837

| | |
|---|---|
| **KLM Exhibit 318** | **Email from CJ Comu to Christina Briggs, with attachments, dated January 21, 2010.  (CJ 58091-93.)** |
| **KLM Exhibit 319** | **Email from Dave Welch to CJ Comu, with attachments, dated January 30, 2009.  (CJ 59917-19.)** |
| **KLM Exhibit 320** | **Email from Cigdem Beykoylu to CJ Comu, dated August 4, 2009.  (CJ 60015.)** |
| **KLM Exhibit 321** | **Email from CJ Comu (at cj@globalenergymngt.com) to CJ Comu (at cj@thebarclaygroup.com),  with  attachments,  dated  August  5, 2009.  (CJ 60034-37.)** |
| **KLM Exhibit 322** | **Email from CJ Comu to Charlotte Jacobs, dated February 10, 2012 (CJ 60992.)** |
| **KLM Exhibit 323** | **Email  from  Nick  Toscano  to  CJ  Comu,  dated  July  2,  2010.   (CJ 61864.)** |
| **KLM Exhibit 324** | **Email from Perry West to CJ Comu, dated April 1, 2010.  (CJ 66253.)** |
| **KLM Exhibit 325** | **Email from Perry West to CJ Comu, Dave Welch, and David Knight, with attachments, dated April 1, 2010.  (CJ 66262-68.)** |
| **KLM Exhibit 326** | **Email from Perry West to CJ Comu, dated April 1, 2010.  (CJ 66370.)** |
| **KLM Exhibit 327** | **Email from Dave Welch to CJ Comu, with attachments, dated January 8, 2010.  (CJ 69115-17.)** |
| **KLM Exhibit 328** | **Email from Robert Feeback to CJ Comu and other recipients, dated November 1, 2009.  (CJ 70796.)** |
| **KLM Exhibit 329** | **Email from Robert Feeback to CJ Comu, with attachments, dated October 31, 2009.  (CJ 70846-48.)** |
| **KLM Exhibit 330** | **Email from Simon Ferguson to CJ Comu, with attachments, dated September 22, 2009.  (CJ 72103-13.)** |
| **KLM Exhibit 331** | **Email  from  Steven  Fly  to  CJ  Comu,  with  attachments,  dated September 14, 2009.  (CJ 72513-17.)** |
| **KLM Exhibit 332** | **Email  from  Steven  Fly  to  CJ  Comu,  with  attachments,  dated September 11, 2009.  (CJ 72588-90.)** |
| **KLM Exhibit 333** | **Email  from  Cem  Comu  to  CJ  Comu,  with  attachments,  dated September 3, 2010.  (CJ 83078-80.)** |
| **KLM Exhibit 334** | **Email from Fergus Anstock to CJ Comu and other recipients, dated September 2, 2010.  (CJ 83203.)** |

AUS 536295102v1

| | |
|---|---|
| **KLM Exhibit 335** | Email from Perry West to John Potter, CJ Comu and other recipients, dated September 13, 2010. (CJ 84424.) |
| **KLM Exhibit 336** | Ledger of Equity Transactions (Comu 2012 Exam, Exhibit 52.) |
| **KLM Exhibit 337** | Certificate of Title for Mercedes owned by Sunset Pacific LP. (Source: Produced by Debtor August, 2013; DEBTOR 0000025.) |
| **KLM Exhibit 338** | Notice of Motion to Dismiss Complaint, verified by affidavit of CJ Comu, dated November 17, 2006, filed New York Action. |
| **KLM Exhibit 339** | Verified Answer filed by Cengiz J. Comu, dated August 28, 2007, filed in New York Action. |
| **KLM Exhibit 340** | Verified Second Amended Complaint dated November 12, 2008, filed in New York Action. |
| **KLM Exhibit 341** | Answer to Second Amended Complaint, dated December 3, 2008, filed in New York Action. |
| **KLM Exhibit 342** | Civil Docket Sheet for *New Millennium Capital Partners II, LLC v. Airtech Group, Inc.*, Civil Action No. 1:01-CV-10841-RCC, in the United States District Court for the Southern District of New York. |
| **KLM Exhibit 343** | Civil Docket Sheet for *New Millennium Capital Partners II, LLC, et. al v. Humitech International Group, Inc., et al.*, Civil Action No. 3:-06-CV-01180-L, in the United States District Court for the Northern District of Texas (Hon. Sam A. Lindsay). |
| **KLM Exhibit 344** | "Settlement Agreement and Mutual Release," dated October 23, 2008, and executed by CJ Comu, settling and releasing claims asserted against Comu in Case No. 3:-00-CV-01180-L, in the United States District Court for the Northern District of Texas. |
| **KLM Exhibit 345** | Errata Sheet from CJ Comu 2013 Deposition, signed December 2, 2013. |
| **KLM Exhibit 346** | Email from Dennis Olson to David Elmquist, dated December 4, 2013, re: proposed agreed injunction. |
| **KLM Exhibit 347** | Email from Christopher McNeill to CJ Comu and Steven Block, with attachments, dated December 15, 2009. (Source: CJ 39212-13.) |
| **KLM Exhibit 348** | Bank of America statements for The Barclay Group, Inc. (2011) |
| **KLM Exhibit 349** | Wells Fargo bank statements for Marathon Management, Inc. |

AUS 536295102v1

000839

| KLM Exhibit 350 | Email from Marc Bryant to Dave Welch and CJ Comu, with attachments, dated November 4, 2010. (CJ 46043-44.) |
|---|---|
| KLM Exhibit 351 | Email from CJ Comu to Chris Troster, with attachments, dated January 20, 2010. (CJ 58016-17.) |
| KLM Exhibit 352 | Email from Christopher McNeill to CJ Comu dated November 1, 2010. (Source: Comu Nov. 2013 Depo, Exhibit 34; CJ 45840.) |
| KLM Exhibit 353 | Email from CJ Comu to Dave Welch and other recipients, with attachments, dated December 6, 2010. (CJ 53390-91.) |
| KLM Exhibit 354 | Email from Perry West to CJ Comu and other recipients, dated August 29, 2009. (CJ 73314.) |
| KLM Exhibit 355 | Email from CJ Comu to Bruce Baker, with attachments, dated March 9, 2009. (CJ 22734-37.) |
| KLM Exhibit 356 | Green Auto business summary dated January 1, 2010. (CJ 52359-60.) |
| KLM Exhibit 357 | Email from Mark Maston to CJ Comu, dated November 18, 2009. (Source: CJ 1238.) |
| KLM Exhibit 358 | Email from Christopher McNeill to CJ Comu and other recipients, dated November 12, 2009. (CJ 37054.) |
| KLM Exhibit 359 | Email from Christopher McNeill to Matt Troster, CJ Comu and Steven Fly, with attachments, dated November 19, 2009. (Source: CJ 37542-43.) |
| KLM Exhibit 360 | Email from Christopher McNeill to CJ Comu, with attachments, dated November 19, 2009. (Source: CJ 37544-45.) |
| KLM Exhibit 361 | Email from CJ Comu to "admin@wwauric.com" and other recipients, with attachments, dated June 11, 2010. (CJ 20274-76.) |
| KLM Exhibit 362 | Email from CJ Comu to Priya Beeharry and other recipients, with attachments, dated June 29, 2010. (CJ 21078-82.) |
| KLM Exhibit 363 | Email from Charlotte Jacob to CJ Comu and other recipients, dated May 17, 2010. (CJ 8715.) |
| KLM Exhibit 364 | Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated May 17, 2010. (CJ 8700-8702.) |
| KLM Exhibit 365 | Email from Charlotte Jacob to CJ Comu and other recipients, with attachments, dated May 25, 2010. (CJ 9399-9400.) |

AUS 536295102v1

| | |
|---|---|
| <u>KLM Exhibit 366</u> | **Email from CJ Comu to Charlotte Jacob and other recipients, with attachments, dated May 17, 2010. (CJ 19657-58.)** |
| <u>KLM Exhibit 367</u> | **Email from CJ Comu to Charlotte Jacob, dated May 18, 2010. (CJ 19662.)** |
| <u>KLM Exhibit 368</u> | **Email from CJ Comu to Jonathan Alexander, dated April 29, 2010. (CJ 18970.)** |
| <u>KLM Exhibit 369</u> | **Exhibits for impeachment purposes and as or in rebuttal.** |
| <u>KLM Exhibit 370</u> | **Plaintiffs reserve the right to use and rely upon any exhibit identified by the Trustee as Intervenor or by Defendants.** |
| <u>KLM Exhibit 371</u> | **Plaintiffs reserve the right to offer additional exhibits to "complete" exhibits offered by the Trustee as Intervenor or by Defendants.** |

DATED:  March 16, 2014.

**GREENBERG TRAURIG, LLP**

By: */s/ Shari L. Heyen*

**Shari L. Heyen**
**Texas Bar No. 09564750**
**1000 Louisiana, Suite 1700**
**Houston, Texas 77002**
**Telephone: (713) 374-3500**
**Facsimile: (713) 374-3505**
**Email: heyens@gtlaw.com**

**Kendyl T. Hanks**
**Texas Bar No. 24032273**
**300 West 6th Street, Suite 2050**
**Austin, Texas 78701**
**Telephone: (512) 320-7200**
**Facsimile: (512) 320-7210**
**Email: hanksk@gtlaw.com**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on March 16, 2014.

*/s/ Shari L. Heyen*
**Shari L. Heyen**

AUS 536295102v1



**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 16, 2014**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

_____

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |

_____

| | |
|---|---|
| DIANE G. REED, TRUSTEE, | § |
|     Intervenor, Co-plaintiff and | § |
|     Third-party Plaintiff, | § |
| | § |
| v. | § |
| | § |
| CENGIZ J. COMU, | § |
|     Defendant, | § |
| | § |

000842

and                                         §
                                            §
PHYLLIS E. COMU,                            §
BERNARD D. BROWN,                           §
THE BARCLAY GROUP, INC. AND                 §
SUNSET PACIFIC, L.P.,                       §        **Trial Setting: March 17, 2014**
       Third-party Defendants.              §        **at 9:30 a.m.**

## <u>FIRST AMENDED PROPOSED JOINT PRE-TRIAL ORDER</u>

Plaintiffs King Louie Mining, LLC ("KLM"), King Louie Enterprises, LLC ("KLE"),

and Ronald Katz ("Katz;" jointly with KLM and KLE the "Plaintiffs"), Diane G. Reed, Trustee,

Intervenor, Co-Plaintiff and Third-Party Plaintiff herein (the "Trustee"), and Debtor Cengiz J.

Comu a/k/a CJ Comu ("Comu" or "Debtor"), Phyllis E. Comu ("Phyllis Comu"), Bernard D.

Brown ("Brown"), Barclay Group, Inc. a/k/a The Barclay Group, Inc. ("TBG"), and Sunset

Pacific, L.P. ("Sunset Pacific;" collectively the "Third-Party Defendants;" collectively with the

Debtor, the "Defendants"), file this First Amended Proposed Joint Pre-Trial Order as follows:

**1.**     **<u>Summary of the Claims and Defenses of Each Party</u>**

**a.**     **<u>Plaintiffs' Contentions:</u>**

Plaintiffs seek revocation of discharge pursuant to 11 U.S.C. § 727(d)(1), due to "fraud of

the debtor," and under §727(d)(2), due to Comu's failure to report or deliver property of the estate.

Plaintiffs contend that Comu, through intentional fraudulent conduct, and using TBG and other

entities under his control as conduits and fronts, orchestrated a scheme to conceal his assets,

business interests, and professional affiliations – both pre-petition and post-petition – in a manner

that created an illusion of indebtedness, and enabled Comu to receive, enjoy, and dissipate

substantial assets that constituted property of the bankruptcy estate.

Pursuant to § 727(d)(1), Plaintiffs seek revocation on two grounds: (a) undisclosed pre-

petition assets, and (b) false oaths.  First, Plaintiffs contend that revocation of discharge is warranted

because Comu, with fraudulent intent, failed to disclose substantial pre-petition assets and valuable interests that were material to the bankruptcy estate.

Second, Plaintiffs seek revocation under § 727(d)(1) due to Comu's false and misleading statements, incomplete or inaccurate disclosures, and omissions of material information subject to the Bankruptcy Code's mandatory and continuing disclosure requirements, which were made in Comu's Schedules and Statement of Financial Affairs (as well as in the failure to amend or supplement such filings with complete and accurate information), in addition to other deliberately false and misleading statements and omissions made by Comu during the course of the bankruptcy proceedings. Comu's misrepresentations and omissions were made knowingly and with fraudulent intent, and were material to the bankruptcy estate.

Plaintiffs contend in support of both grounds for revocation under § 727(d)(1) that they did not know of Comu's fraud until after discharge, and that Comu's deliberate concealment and partial disclosure of misleading information regarding his assets and business activities prevented the Trustee and Comu's creditors from discovering Comu's fraudulent conduct before discharge.

Finally, Plaintiffs seek revocation under § 727(d)(2) because Comu acquired property of the estate, or became entitled to acquire property that would be property of the estate, and Comu knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the Trustee.

In support of their revocation claims, Plaintiffs contend that Comu falsified or exaggerated debts on his Schedules, and deliberately omitted or misrepresented valuable assets and business interests at the commencement of his bankruptcy case, in order to convey a false impression that he was unable to pay the claims of his creditors. Plaintiffs further contend that Comu intentionally failed to disclose or deliberately misled his creditors regarding his professional involvement and substantial valuable interests (whether direct or indirect, immediate or equitable) in TBG and Sunset

Pacific, Marathon Management, TKY Trust, DAPTCO Trust, Regus Advisors, Inc., Global Energy

Technology Group, EuroCap Investments, Green Automotive Company Corporation f/k/a GANAS,

Corp., and other entities, affiliates, projects and accounts created or controlled by Comu, or utilized

by Comu for the purposes of concealing, transferring, and dissipating assets of the estate.  Plaintiffs

contend that Comu created and/or used these and other entities, accounts and affiliates to receive,

conceal, transfer, dissipate and liquidate millions of shares of stock and other assets that should have

been included in the bankruptcy estate.

      **b.**      <u>**The Trustee's Contentions:**</u>

In her Complaint in Intervention the Trustee has asserted three causes of action:  a request

for several declaratory judgments (count 1); imposition of reverse corporate veil piercing as to TBG

and Sunset Pacific (count 2); and turnover of property of the estate (count 3).

<u>**Count 1 (Declaratory Judgment)**</u>

The Trustee contends and seeks a declaratory judgment that the 300,000 shares of

GANAS, Corp. ("Ganas") stock certificate issued to Comu on January 13, 2010 (the "Comu

Green Auto Stock") is property of the Comu bankruptcy estate because Comu was entitled to

receive these shares as of December 31, 2009, the date this bankruptcy case was commenced (the

"Petition Date").

The Trustee further contends that Comu is the *de facto* owner of TBG.  This

contention is based on the fact that the transaction that supposedly gave rise to the 99% shareholder

interest of Brown & Lampe, PLC ("B&L"), purportedly a United Kingdom corporation, is a sham.

The Trustee further contends and is entitled to a declaratory judgment that TBG is

the alter ego of Comu.  This contention is based on the fact that from at least 2009 to the present

Comu has completely dominated and controlled the business and affairs of TBG and that Comu

utilized TBG as an instrument or means to hinder, delay or defraud his creditors.

The Trustee further contends and is entitled to a declaratory judgment that Phyllis Comu''s purported ninety-eight percent (98%) limited partnership interest in Sunset Pacific is property of the Comu bankruptcy estate pursuant to § 541(a)(2)(A).  This contention is based on the fact that this partnership interest was and is under the exclusive control of Comu or, alternatively, under the joint management and control of Comu and Phyllis Comu.

The Trustee further contends and is entitled to a declaratory judgment that the assets of TBG that existed as of the Petition Date were and are property of the Comu bankruptcy estate. This contention is based upon the fact that prior to the commencement of this case Comu utilized TBG as an instrument or means to hinder, delay or defraud his creditors.

## Count 2 (Reverse Corporate Veil Piercing)

The Trustee contends there is a legal basis to reverse-veil pierce TBG (*i.e.*, to hold it liable for the debts of Comu) on the grounds that this entity is the alter ego of Comu; that there is such unity between Comu and TBG that the separate corporate existence of TBG does not exist; and that TBG was used as a means to hinder, delay or defraud Comu's creditors, including, in particular, the Plaintiffs in this adversary proceeding.

The Trustee likewise contends there is a legal basis to reverse-veil pierce Sunset Pacific (*i.e.*, to hold it liable for the debts of Comu) on the grounds that this entity is the alter ego of Comu; that there is such unity between Comu and Sunset Pacific that the separate corporate existence of Sunset Pacific does not exist; and that Sunset Pacific was used as a means to hinder, delay or defraud Comu's creditors, including, in particular, the Plaintiffs in this adversary proceeding.

## Count 3 (Turnover of Property of the Estate)

The Trustee is entitled to an order pursuant to § 542 of the Bankruptcy Code directing the turnover of all property and assets of TBG and Sunset Pacific that still exist.  In

000846

addition, to the extent the assets of TBG and/or Sunset Pacific have been sold or otherwise disposed of since the Petition Date, the Trustee is entitled to a judgment against Comu, TBG and Sunset Pacific, jointly and severally, for the value of the assets that existed on the Petition Date and that are not turned over to the Trustee because they have been sold or otherwise disposed of by Comu.

     c.    **Defendants' Contentions:**

     1.    **Response to Plaintiffs' Claims.**

Plaintiffs missed the deadline to object to Comu's discharge, and the Plaintiffs have sued their former attorney for missing the deadline. Plaintiffs cannot demonstrate a basis to revoke Comu's discharge. Plaintiffs lack standing to pursue the transfers which they want to pursue.

     2.    **Response to Trustee's Claims.**

Defendants deny that the Trustee is entitled to the declaratory relief, reverse corporate veil piercing and property turnovers sought in the Trustee's complaint.

     3.    To the extent that Plaintiffs' contentions or the Trustee's contentions stated herein are not supported by their respective Complaints, Defendants do not agree that this Pretrial Order permits an amendment of their respective Complaints or permits the trial of issues unsupported by their respective Complaints.

**2.**    **Stipulations of Fact**

The Parties stipulate to the following facts:

     1)    Plaintiffs KLM and KLE are privately-held Delaware limited liability companies. Plaintiff Katz, a resident of the State of New York, owns 75% of KLM and 100% of KLE.

     2)    Defendant Comu is a Canadian citizen and resident of Dallas, Texas, and the Debtor in Bankruptcy Case No. 09-38820-sgj7 (the "Bankruptcy Case").

     3)    The Trustee is the duly appointed Chapter 7 Trustee in the Bankruptcy Case for the Comu bankruptcy estate.

4)      On July 20, 2006, Plaintiffs Katz, KLM and KLE commenced an action in the Supreme Court of the State of New York, County of New York to recover damages against Comu for, among other things, common law fraud and securities fraud, *Humitech Int'l Group, Inc., et al. v. Comu, et al*, Index No. 06-602567 (the "New York Action"). (<u>KLM Exhibit 1</u>; <u>KLM Exhibit 340</u>.)

5)      After the commencement of the New York Action, Comu defended Plaintiffs' claims by filing, *inter alia*, a verified motion to dismiss (<u>KLM Exhibit 338</u>), verified answers asserting various affirmative defenses to Plaintiffs' claims (<u>KLM Exhibit 339</u>; <u>KLM Exhibit 341</u>), and affirmative counterclaims for breach of fiduciary duty and tortious interference contract, seeking $1 million in actual damages, plus punitive damages (<u>KLM Exhibit 339</u>).  (*See also* <u>KLM Exhibit 2</u>.)

6)      Comu did not appear for trial in the New York Action, which was set in Febrary, 2009.  The court in the New York Action signed a default judgment against Comu on April 30, 2009, awarding the Plaintiffs obtained a judgment against Comu in the aggregate amount of $2,279,265.16 (the "New York Judgment").  (<u>KLM Exhibit 3</u>.)  The New York Judgment was entered on June 9, 2009.  (*Id.*)

7)      On June 2, 2009, Plaintiffs commenced a new Texas state court action against Comu in Dallas, Texas seeking to collect on the New York Judgment (the "Texas Domestication Action").  *King Louie Mining, LLC, et. al v. Cengiz Jan Comu*, Cause No. 09-0680891, in the 134th Judicial District Court, Dallas County, Texas. (<u>KLM Exhibit 4</u>; *see also* <u>KLM Exhibit 5</u>.)

8)      Plaintiffs filed a Motion to Compel in the Texas Domestication Action on November 23, 2009, which was set for hearing on December 14, 2009.  (<u>KLM Exhibit 6</u>.)  The court entered an agreed order granting the Motion to Compel, awarding $350 for Plaintiffs' fees

incurred with respect to the motion, and ordering Comu to appear for deposition on January 5, 2010. (KLM Exhibit 7.)

9)      Comu filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Case on December 31, 2009 (the "Petition Date"). (Bankr. Doc. No. 1.)

10)     On January 4, 2010, Comu filed a "Suggestion of Bankruptcy" staying the Texas Domestication Action pursuant to 11 U.S.C. § 362. (KLM Exhibit 8.)

11)     KLM, KLE and Katz each timely filed claims in the Bankruptcy Case, seeking to recover their share of the New York Judgment from the bankruptcy estate. (Bankr. Claims No. 2-1, 3-1, and 4-1.) Plaintiffs' claims represent approximately 95% of the claims filed in this case.

12)     On January 15, 2010 Comu filed his bankruptcy schedules (the "Schedules"), Statement of Financial Affairs ("SOFA"), Chapter 7 Individual Debtor's Statement of Intention, and Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Statement of Current Monthly Income") (collectively, the "Bankruptcy Filings").

13)     On April 14, 2010, the Debtor was granted a discharge (the "Discharge").

14)     In Comu's Schedule B he listed a one percent (1%) ownership interest in TBG, and listed Brown as the other ninety-nine percent (99%) owner. In the Answer to the Trustee's Complaint in Intervention, Defendants alleged the other ninety-nine percent (99%) owner of TBG is B&L, which Defendants alleged is a "United Kingdom Corporation."

15)     TBG was incorporated on or about March 7, 1996 by John Potter ("Potter"). The original Directors of TBG, as listed in the Articles of Incorporation, are Comu and Potter. (KLM Exhibit 24.)

16)     On or about February 11, 2000, the Texas Secretary of State ("SOS") forfeited TBG's authority to transact business in Texas due to TBG's failure to file franchise tax returns and/or to pay state franchise taxes. (KLM Exhibit 24.)

17) On or about January 18, 2008, TBG filed an "Application for Reinstatement and Request to Set Aside Revocation or Forfeiture" with the Texas SOS, which was executed by CJ Comu as Chief Executive Officer of TBG, and as a result of which TBG's corporate charter was reinstated. (KLM Exhibit 24.)

18) In 2007, 2008, 2009, and 2011, Comu filed with the Texas SOS, on behalf of TBG, Texas Franchise Tax Public Information Reports. In each of these reports Comu listed himself as the President, sole officer and director of TBG. (KLM Exhibit 24; Trustee Exhibit 63.)

19) TBG and B&L executed an Acquisition Agreement and Plan of Share Exchange dated December 30, 2007 (the "Acquisition Agreement") pursuant to which all of the outstanding shares of TBG were to be transferred to B&L in exchange for one million shares of B&L common stock. (Trustee Exhibit 61.)

20) Comu's Schedules did not disclose any ownership interest held by Comu in B&L.

21) At the time the Acquisition Agreement was signed B&L had not been formed as a U.K. corporation and has not been formed since that time.

22) The Acquisition Agreement is the basis upon which Comu contends that B&L is a 99% owner of TBG.

23) On October 26, 2009, Comu executed two stock purchase agreements on behalf of TBG, by virtue of which TBG acquired 95,420,116 out of 95,746,817 outstanding shares of Ganas common stock (the "Ganas Stock"). (Trustee Exhibit 74; Trustee Exhibit 75.) First, TBG acquired 91,920,116 shares of Ganas common stock from Ganas shareholders in return for $75,000. (Trustee Exhibit 75.) By virtue of irrevocable stock power assignments executed by Ganas's former shareholders on October 26, 2009, TBG received Ganas stock certificates representing 91,920,116 shares of Ganas stock (the "Ganas Certificates"). (Trustee Exhibit 76.) Second, TBG acquired an additional 3,500,000 shares of Ganas common stock from Ganas

000850

shareholder Roundtree & Associates, LLC, in return for a $25,000 promissory note, which was secured by stock certificates reflecting the 3,500,000 shares (the "R&A Shares"). (Trustee Exhibit 74.)

24)     On October 28, 2009, Comu was elected as "President" and "Director" of Ganas. (Trustee Exhibit 80; Trustee Exhibit 81.)

25)     Comu caused TBG to participate in and help facilitate a corporate merger transaction ("Green Auto Merger") by and between Go Green USA, LLC ("Go Green"), a Nevada limited liability company, and Ganas, a Delaware corporation. The terms of the merger transaction were set forth in a Merger Agreement and Plan of Reorganization dated as of November 4, 2009 by and among Ganas, Go Green, and, solely for purposes of Section 1.12 of the agreement, TBG (the "Merger Agreement"). (Trustee Exhibit 19.)

26)     The Merger Agreement provided that Go Green would be merged with and into Ganas, and Ganas would be the surviving corporation, which would be re-named Green Automotive Company Corporation ("Green Automotive").

27)     At the time the Merger Agreement was entered into, Ganas was a shell corporation in that it conducted no business operations, but its stock could be publicly traded through brokers/dealers registered with certain over-the-counter ("OTC") stock markets.

28)     Section 3.04 of the Merger Agreement acknowledged that 95,746,817 shares of GANAS common stock were outstanding at the time of the merger (95,420,116 of which had been acquired by TBG on October 26, 2009, as described above).

29)     Pursuant to Section 1.01 and Section 1.11 of the Merger Agreement, Ganas became the "Surviving Corporation" on the effective date of the Green Auto Merger, after which Ganas became known as Green Automotive.

30)    Section 1.12 of the Merger Agreement granted TBG "anti-dilution rights" in Green Automotive, which ensured TBG would retain – with no further consideration – 40% of Green Auto for two years after the Green Auto Merger.

31)    Comu approved the Green Auto Merger, and executed the Merger Agreement, as "President" of TBG and as "President" and "Director" of Ganas. (Trustee Exhibit 19 at 26; *see also* Trustee Exhibit 83; Trustee Exhibit 87.)

32)    On November 4, 2009, a Certificate of Merger for Ganas and Go Green was filed with the Delaware SOS (Trustee Exhibit 89), and on November 5, 2009 a certified copy of the Articles of Merger between GO Green and Ganas were filed with the Nevada SOS (Trustee Exhibit 88).  Comu executed both documents on behalf of Ganas.

33)    The effective date of the Green Auto Merger was November 5, 2009.  (*See, e.g.,* KLM Exhibit 255.)

34)    As of the effective date of the Green Auto Merger, TBG had the right to receive new stock certificates reflecting 95,420,116 shares of Green Automotive stock.

35)     In accordance with Section 1.04 of the Merger Agreement, Green Automotive issued 143,620,223 shares of common stock to the former members of Go Green, representing a sixty percent (60%) ownership interest in Green Automotive.  (*See also* KLM Exhibit 49 at 2.).

36)    Comu caused TBG to enter into three separate Stock Purchase Agreements dated January 10, 2010, by which TBG purported to sell certain restricted stock of Green Automotive acquired by TBG in connection with the Green Auto Merger.

37)    The purported purchasers of this stock under the Stock Purchase Agreements were Sunset Pacific, the TKY Trust and the DAPTCO Trust.  (*See* Trustee Exhibit 6 (the "Sunset Pacific SPA"); Trustee Exhibit 7 (the "TKY Trust SPA"); Trustee Exhibit 8 (the "DAPTCO Trust SPA").

000852

38)     TKY Trust and DAPTCO Trust are Canadian family business trusts.  DAPTCO Trust was formed by Comu's brother, Cem Comu, who is also the Trustee of the DAPTCO Trust.   Under the TKY Trust documents, Cem Comu is the Trustee and Comu is a named beneficiary.

39)     On January 13, 2010, Comu caused TBG to transfer to Sunset Pacific 2,500,000 shares of restricted Green Automotive common stock, which is reflected in Green Auto certificate #1091.  (KLM Exhibit 49 at 1.)  Comu alleges this transfer was made pursuant to the Sunset Pacific SPA, in return for a purchase price of $200,000, which was to be paid through a promissory note dated January 10, 2010, executed by Sunset Pacific and payable to TBG in the amount of $200,000 (the "Sunset Pacific Note").

40)     The Sunset Pacific Note provides that it is payable in quarterly installments of interest only, commencing on June 1, 2010 and continuing quarterly until maturity of the note on March 1, 2015 (when all principal and interest is due and payable.)

41)     No payments have been made on the Sunset Pacific Note.

42)     On January 13, 2010, Comu caused TBG to transfer to TKY Trust 5,000,000 shares of restricted Green Automotive common stock, which is reflected in Green Auto certificate #1092.  (KLM Exhibit 49 at 1.)  Comu alleges this transfer was made pursuant to the TKY Trust SPA, in return for a purchase price of $500,000, which was to be paid pursuant to a $500,000 promissory note dated January 10, 2010 (the "TKY Trust Note").

43)     The TKY Trust Note was payable on the same terms as the Sunset Pacific Note.

44)     On January 13, 2010, Comu caused TBG to transfer to DAPTCO Trust 2,000,000 shares of restricted Green Automotive common stock, which is reflected in Green Auto certificate #1093.  (KLM Exhibit 49 at 1.)  Comu alleges this transfer was made pursuant to the

000853

DAPTCO SPA, in return for a purchase price of $200,000, which was to be paid pursuant to a $200,000 promissory note dated January 10, 2010 (the "DAPTCO Trust Note").

45)    The DAPTCO Trust Note was payable on the same terms as the Sunset Pacific Note and the TKY Trust Note.

46)    The first stock certificates for Green Automotive were issued to shareholders on January 13, 2010 by Olde Monmouth Stock Transfer ("OMST"), the stock transfer agent for Green Automotive.  (KLM Exhibit 49 at 1.)

47)    On January 13, 2010, OMST cancelled TBG's Ganas Certificates, and issued 91,920,116 new Green Automotive stock certificates to various recipients.  (KLM Exhibit 49 at 1 – 2.)

48)    On March 9, 2010, TBG received stock certificate #1130 reflecting the 3,500,000 R&A Shares TBG acquired by TBG on October 26, 2009.  (KLM Exhibit 49 at 3.)

49)    On March 25, 2010, TBG received stock certificates #1157, #1158, #1159, #1160, #1161, and #1162, reflecting the issuance of 13,000,000 new shares of restricted Green Auto stock accordance with the anti-dilution clause in the Merger Agreement.  (KLM Exhibit 49 at 4.)

50)    On July 31, 2010, TBG received stock certificate #2504 reflecting the issuance of 2,000,000 new shares of restricted Green Auto stock in accordance with the anti-dilution clause in the Merger Agreement.  (KLM Exhibit 49 at 11.)

51)    On August 13, 2010, TBG received stock certificate #2531 reflecting the issuance of 10,000,000 new shares of restricted Green Auto stock in accordance with the anti-dilution clause in the Merger Agreement.  (KLM Exhibit 49 at 12.)

52)    On December 30, 2010, TBG received stock certificate #3431 reflecting the transfer of 11,000,000 shares of Green Auto stock from Steven Fly to TBG.  (KLM Exhibit 49 at 51.)

53)     On or about June 16, 2011, Comu caused TBG to enter into a certain Escrow Agreement (the "TBG Escrow Agreement") with OMST.

54)     Pursuant to the terms of the TBG Escrow Agreement, OMST agreed to serve as escrow agent and, in that capacity, agreed to maintain an escrow account to hold funds to be received from purchasers of the Green Automotive stock and to also hold in escrow the shares of stock to be transferred to the purchasers.

55)     As of February 18, 2014, TBG remained in possession of 3,804,529 Green Auto shares.  (KLM Exhibit 160 at 2 – 3.)

56)     According to an escrow ledger prepared by OMST, between June 20, 2011 and January 4, 2012, OMST collected over $2.7 million in gross cash proceeds from the sale of TBG's Green Auto stock.  (KLM Exhibit 52.)

57)     Based on a ledger of equity transactions prepared by Comu and produced in response to the Trustee's request in this Adversary (the "Equity Ledger"), Comu claims that TBG sold 9,998,019 shares of Green Auto stock between June 23, 2011 and January 10, 2012.  (KLM Exhibit 336 at 1.)  Comu claims that after paying commissions to various agents involved in these purchase and sale transactions, the net amount received by TBG from the sale of these shares was $686,476.  (KLM Exhibit 336 at 1.)

58)     According to the Equity Ledger, between December 23, 2011 and March 16, 2012, Comu arranged for the sale of 4,800,000 of the 5,000,000 shares of the Green Automotive restricted stock that the TKY Trust obtained from TBG.  (KLM Exhibit 336 at 2.)

59)     According to Comu, TBG received $116,500 of proceeds from the TKY Trust's sales of the Green Automotive stock, which Comu applied to the TKY Trust Note.  These proceeds are the only payments TBG has received on the TKY Trust Note.  (KLM Exhibit 336 at 2.)

000855

60)     According to an escrow ledger prepared by OMST, between December 23, 2011 and March 13, 2012, TKY Trust received $1,048,972.95 in gross proceeds from the sale of Green Auto stock.  (KLM Exhibit 54.)

61)     According to the Equity Ledger, between March 22, 2012 and June 1, 2012, Comu arranged for the sale of 1,400,000 of the 2,000,000 shares of Green Automotive restricted stock that the DAPTCO Trust obtained from TBG.  (KLM Exhibit 336 at 2.)

62)     According to Comu, TBG received $30,185 of the proceeds from the DAPTCO Trust's sales of the Green Automotive stock, which Comu applied to the DAPTCO Trust Note. These proceeds are the only payments TBG has received on the DAPTCO Trust Note.  (KLM Exhibit 336 at 2.)

63)     According to an escrow ledger prepared by OMST, between March 16 and April 17, 2012, DAPTCO Trust received $222,980 in gross proceeds from the sale of Green Auto stock.  (KLM Exhibit 53.)

64)     In its 2010 federal income tax return, TBG reported total income of $2,366,775 and total expenses of $2,324,571, resulting in taxable income of $42,204.  Of the $2,324,571 in reported operating expenses, $2,137,733 was purportedly for consulting fees and expenses.  In their 2010 federal income tax return, Comu and his wife, Phyllis Comu, reported total income of $16,584.

65)     In its 2011 federal income tax return, TBG reported total income of $1,373,688, of which $318,072 was reported as a capital gain from the sale of Green Automotive stock.  TBG reported deductions or operating expenses totaling $1,327,648, of which approximately $500,000 was for consulting, approximately $236,000 was for "advisory services," $178,200 was for "business analysis," $125,000 was for "exchange registration expense," and approximately $68,550 was for "valuation services."

000856

66)     On or about January 1, 2013, TBG opened a brokerage account with Westor Capital Group, Inc. ("Westor") and deposited with Westor 1,000,000 shares of Green Automotive stock. After the account was opened, Westor sold on behalf of TBG 8,100 shares of Green Automotive stock.

67)     On or about April 16, 2013, the Securities Investor Protection Corporation ("SIPC") commenced an action under the Securities Investor Protection Act ("SIPA") in the United States District Court for the Southern District of New York.

68)     On April 16, 2013, the District Court entered a liquidation order pursuant to the provisions of SIPA.  The District Court then transferred the action to the United States Bankruptcy Court for the Southern District of New York.

69)     On May 17, 2013, Comu caused to be filed on behalf of TBG a claim form in which Comu claimed on behalf of TBG a claim in the amount of $37,993.84, and a claim for the 991,900 shares of Green Automotive stock that was transferred to Westor for sale. In Comu's Schedule B he claimed to own a one percent (1%) ownership interest in Sunset Pacific, and listed Phyllis Comu as a ninety-eight percent (98%) owner, and Gem Comu (Comu's brother, a/k/a Cem Comu) as the owner of the remaining one percent (1%) interest in Sunset Pacific.

70)     Sunset Pacific was formed as a Texas limited partnership on or about October 30, 1996 by Cecil S. Mathis ("Mathis").

71)      In the Certificate of Limited Partnership for Sunset Pacific, Mathis was listed as the original limited partner of Sunset Pacific, and Coral Group, LLC ("Coral Group") was listed as the initial general partner of Sunset Pacific.

72)     On July 7, 2005 and August 1, 2005, Comu filed corporate documents for Coral Group with the Nevada SOS, in which he identified himself as the sole member of Coral Group.

(KLM Exhibit 21 at 7 – 8.)

73)     On July 28, 2005, Comu filed on behalf of Sunset Pacific an amendment to Sunset Pacific's certificate of limited partnership, whereby Marathon Management Limited Company, a Nevada limited liability company ("Marathon Management Ltd") replaced Coral Group as the general partner of Sunset Pacific. (KLM Exhibit 22 at 8.)  Comu executed the amendment on behalf of Marathon Management Ltd.

74)     On September 28, 2007, Comu filed on behalf of Sunset Pacific a Period Report with the Texas Secretary of State, which Comu executed as a "Member" of Sunset Pacific's general partner, Marathon Management Ltd.  (KLM Exhibit 22 at 10 – 11.)  On November 25, 2008, Cecil Mathis resigned as the registered agent for Sunset Pacific, and was replaced by CJ Comu.  (KLM Exhibit 22 at 12.)

75)     Marathon Management Ltd. and Coral Group are wholly-owned and/or controlled by Comu.

76)     With an effective date of January 1, 2006, the Sunset Pacific limited partnership agreement was amended to reflect that Marathon Management Ltd. holds a one percent (1%) interest as general partner, Comu holds a one percent (1%) interest as limited partner, and Phyllis Comu holds a ninety-eight percent (98%) interest as limited partner.  The amendment states that it is effective as of January 1, 2006, but the amendment was not notarized until September 14, 2007.

77)     On March 16, 2012, the Texas SOS terminated Sunset Pacific's certificate of limited partnership due to Sunset Pacific's failure to file periodic reports with the Texas SOS.

78)     Sunset Pacific's limited partnership certificate has not been reinstated.

79)     Throughout its existence Sunset Pacific has conducted virtually no business operations.

80)     Between 2005 and 2011 Sunset Pacific's federal income tax returns reflect no income or expenses.

81)     The 2007 federal income tax return for Sunset Pacific reflects assets totaling $527,750, consisting of a $250,000 annuity and a loan to Sun Sports Entertainment, Inc. ("Sun Sports") in the amount of $277,750.

82)     Subject to relevance objections, KLM Exhibits 1 –371, Trustee's Exhibits 1 – 91, and Defendants' Exhibits 1 – 6 are admitted for all purposes.

## 3.     Contested Issues of Fact

1)     Did Comu deliberately delay discovery in the Texas Domestication Action while preparing the Bankruptcy Petition with the intent of avoiding Plaintiffs' efforts to obtain discovery into his assets and business activities?

2)     Was the information contained in Comu's Bankruptcy Filings complete and accurate?

3)     Did Comu exaggerate, misrepresent, or make misleading partial disclosures regarding the nature and amount of his debts in his Bankruptcy Filings?

4)     Did Comu fail to disclose, misrepresent, or make misleading partial disclosures regarding the nature and amount of his assets, income, employment history, executive positions, business interests or affiliations in his Bankruptcy Filings?

5)     Did Comu fail to disclose, or deliberately conceal, equitable or contingent interests in property or assets in his Bankruptcy Filings?

6)     Did Comu intentionally or recklessly fail to amend or update his Bankruptcy Filings prior to discharge?

000859

7)     Did Comu make false statements or misleading partial disclosures, or fail to disclose information material to the bankruptcy estate, at the February 9, 2010 Creditors Meeting?

8)     Prior to discharge, did Comu misrepresent, conceal, or make deliberately incomplete or misleading disclosures regarding the nature and scope of his ownership of, position with, and/or interest in businesses, joint ventures, partnerships, assets or accounts?

9)     Did Comu make false statements or misleading partial disclosures, or fail to disclose information material to the bankruptcy estate, during the course of this Adversary Proceeding?

10)     Did Comu actively conceal his assets and business interests from his creditors and the Trustee, or deliberately mislead his creditors and the Trustee regarding his assets and business interests?

11)     Did Comu's omissions, misrepresentations, partial disclosures, and acts of concealment concern matters that were material to the bankruptcy estate?

12)     Did Comu's conduct hinder any reasonable due diligence, or prevent Plaintiffs from learning, before discharge, the truth about Comu's assets and true financial condition?

13)     Did Comu operate and/or utilize TBG and/or related accounts as part of a scheme to conceal and dissipate assets of the estate?

14)     Did Comu operate and/or utilize Sunset Pacific and/or related accounts as part of a scheme to conceal and dissipate assets of the estate?

15)     Did Comu establish, operate and/or utilize Regus Advisors, Inc. and/or related Regus entities and accounts as part of a scheme to conceal and dissipate assets of the estate?

16)     Did Comu establish, operate and/or utilize Electronic Registry, Inc. and/or related accounts as part of a scheme to conceal and dissipate assets of the estate?

17) Did Comu establish, operate and/or utilize Continental Partnership, Inc. and/or related accounts as part of a scheme to conceal and dissipate assets of the estate?

18) Did Comu establish, operate and/or utilize TKY Trust and related accounts as part of a scheme to conceal and dissipate assets of the estate?

19) Did Comu operate and/or utilize DAPTCO Trust and related accounts as part of a scheme to conceal and dissipate assets of the estate?

20) Did Comu acquire or have the right to receive property of the estate that was not disclosed to the Trustee or turned over to the estate?

21) Did Comu act with fraudulent intent, or with reckless disregard for the truth?

22) Did Defendants knowingly participate or assist in Comu's fraudulent concealment of material information pertaining to the bankruptcy estate?

23) Was discharge granted in reliance on the truthfulness, completeness, and accuracy of Comu's Bankruptcy Filings?

24) Is Plaintiffs' lawsuit against their former counsel, Emil Lippe, for failing to object to discharge of the New York Judgment (which was predicated on fraud that predated the Petition Date) relevant to Plaintiffs' request for revocation (which is based on fraud in the Bankruptcy Case and the Adversary)?

25) If Plaintiffs' malpractice claims against Lippe are relevant, can Comu rely on those claims to excuse his fraud on the Court, particularly where Plaintiffs are innvocent of wrongdoing?

26) Were the material terms and conditions of the Merger Agreement satisfied as of the Petition Date?

27)     Were any or all of the consulting fees paid by TBG paid to Comu through one or more business entities that Comu owns and/or controls, including but not limited to Marathon Management Limited Company ("Marathon") and Regus Advisors, Inc. ("Regus")?

28)     As the sole officer and director of TBG has Comu completely dominated and controlled the business activities of TBG?

29)     By virtue of his control of Marathon Management Ltd, the general partner of Sunset Pacific, does Comu control Sunset Pacific?

30)     Has Comu completely dominated and controlled the business activities of Sunset Pacific?

31)     What is the total amount of Green Automotive Stock that TBG has transferred or sold since the Petition Date?

32)     What is the total amount of income received by TBG from its sales of the Green Automotive Stock?

33)     Has all or substantially all of the income received by TBG from the sale of Green Automotive stock been transferred to Comu, or to entities he owns and/or controls?

34)     Did Comu directly or indirectly receive income after the Petition Date for services provided prior to the Petition Date?

35)     Has B&L ever owned any stock in TBG?

36)     Has Brown ever owned any stock in TBG?

37)     In Comu's Schedule B did he misrepresent his ownership interest in TBG?

38)     Was Comu's misrepresentation of his ownership interest in TBG a knowing misrepresentation?

39)     In Comu's Schedule B did he misrepresent the ownership interest of Brown in TBG?

40)    Was Comu's misrepresentation of Brown's ownership interest in TBG a knowing misrepresentation?

41)    Was the Acquisition Agreement a sham transaction?

42)    Has Comu violated the Agreed Temporary Restraining Order entered in this Adversary Proceeding on December 20, 2013?

43)    Prior to the entry of the Debtor's discharge in this case, did the Plaintiffs know of, or fail to exercise due diligence to learn of, the matters alleged in their Second Amended Complaint?

44)    What specific fraud did Plaintiffs discover after the discharge and include in their Second Amended Complaint?

To the extent that any of the above foregoing issues of fact constitute issues of law, they are deemed issues of law and shall be incorporated herein as such.

## 4.    **Stipulations of Law**

1)    This Court has jurisdiction over this adversary proceeding and the parties to this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2)    The claims asserted in this proceeding concern the administration of the Debtor's bankruptcy estate and are, therefore, core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A).

3)    Venue for this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409.

4)    This Adversary Proceeding is timely because it was filed within (1) one year of the Discharge being granted in accordance with 11 U.S.C. §727(e)(1) and (e)(2).

5)    Under both 11 U.S.C. §§727(d)(1) and (d)(2), Plaintiffs must establish Debtor's fraudulent intent by a preponderance of the evidence.

6) "Fraudulent intent may be proved by showing either actual intent to deceive or a reckless indifference for the truth." *Reed v. Cooper (In re Cooper)*, 426 B.R. 227, 239 (Bankr. N.D. Tex. 2010), *aff'd*, 443 F. App'x 888 (5th Cir. 2011); *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 504 (Bankr. N.D. Tex. 2006); *see also Sholdra v. Chilmark Fin., LLP (In re Sholdra)*, 249 F.3d 380, 382–83 (5th Cir. 2001).

7) Fraudulent intend may be inferred from a course of conduct. *Reed v. Cooper*, 426 B.R. at 227, 238.

8) Under Section 727(d)(1) of the Bankruptcy Code, the Court "shall revoke a discharge" if "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1). There are two subsets of "fraud of the debtor" under § 727(d)(1) – the failure to disclose assets at the time of the bankruptcy Petition ("undisclosed assets"), and "false oaths."

9) The first subset of "fraud by the debtor" under § 727(d)(1) is undisclosed assets at the commencement of the bankruptcy. A debtor's failure to disclose the existence of assets in his bankruptcy filings support revocation under § 727(d)(1) if the omissions were knowingly and fraudulently made, they were material, and Plaintiffs were unaware of the facts at issue when the Debtor sought his discharge. *See, e.g.*, *Neary v. Darby (In re Darby)*, 376 B.R. 534, 539-40 (Bankr. E.D. Tex. 2007).

10) The second subset of "fraud by the debtor" under § 727(d)(1) is false oaths. The elements of a false oath claim for revocation include a statement that: (1) was made under oath; (2) was false; (3) Debtor knew was false; (4) was made with fraudulent intent; and (5) related materially to the bankruptcy case. *See, e.g.*, *Lightfoot v. Landry (In re Landry)*, 350 B.R. 51, 58 (Bankr. E.D. La. 2006). "False oaths may be in the form of either false statements or omissions

on the schedules and statement of financial affairs or false statements by the debtor during the course of the bankruptcy proceedings." *Id.*

11)     Under both subsets of § 727(d)(1), an omission is material "if it bears a nrelationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992); *see also Neary v. Darby (In re Darby)*, 376 B.R. 534, 542 (Bankr. E.D. Tex. 2007). A finding of materiality is not dependent upon the value of the omitted assets or whether the omission was detrimental to creditors. *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005).

12)     Under Section 727(d)(2)., "the court shall revoke a discharge" if "the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee." 11 U.S.C. § 727(d)(2).

13)     Plaintiffs "bear the burden to establish that the Debtors acquired or became entitled to acquire property of the estate, and knowingly and fraudulently failed to report or deliver the property to the trustee." *Reed v. Cooper*, 426 B.R. at 238.

14)     "Property of the estate" includes "[a]ll legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). It also includes "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case" that is "under the sole, equal or joint management and control of the debtor," 11 U.S.C. § 541(a)(2)(A), and any "[p]roceeds, … rents, or profits of or from property of the estate, except such as are earning from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

15)    "[A]n interest of the debtor in property becomes property of the estate …
notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy
law … that restricts or conditions transfer of such interest by the debtor."  11 U.S.C. § 541(c)(1).
But, a "restriction on the transfer of a beneficial interest of the debtor in a trust that is
enforceable under applicable nonbankruptcy law is enforceable in a case under this title."  11
U.S.C. § 541(c)(2).

5.    **Contested Issues of Law**

1)    Given the truth regarding Comu's assets and liabilities on the Petition Date, did he
qualify for the relief of discharge from his debts under Chapter 7?

2)    Was Comu required to disclose his direct or indirect interests in Ganas and Green
Automotive, or in the Merger Agreement's anti-dilution clause, in his Bankruptcy Filings?

3)    Did the fact that Comu had not received physical stock certificates reflecting
Green Automotive Stock as of the Petition Date excuse him from disclosing his direct and
indirect, legal or equitable interest in that stock in his Bankruptcy Filings?

4)    Did the Ganas Stock or the Ganas Certificates constitute property of the estate?

5)    By virtue of the Merger Agreement, did TBG's 95 million shares of stock in
Ganas – acquired on October 26, 2009 – automatically convert into a right to received Green
Auto stock certificates as of November 5, 2009?

6)    Did stock received after the Petition Date pursuant to the Merger Agreement's
anti-dilution clause constitute property of the estate?

7)    Did TBG's pre-petition expectancy interest in Green Auto stock certificates that
were issued by OMST after the Petition Date constitute property of the estate?

8)    By virtue of the MOU by and between Maybourne, FMS, and TBG, did the Green
Auto stock issues to Maybourne and FMS constitute property of the estate?

9)      Was Comu required to disclose to the Trustee or turn over to the estate all or part of the Green Auto stock received by TBG pursuant to the Merger Agreement's anti-dilution clause after the Petition Date?

10)      Does the fact that a stock certificate is restricted, standing alone, affect the stock's nature as property of the bankruptcy estate?

11)      Did Comu have a duty to disclose his interests as a beneficiary of the TKY Trust in his Bankruptcy Filings?

12)      Does Comu's active concealment of his assets and business interests bar any claim that Plaintiffs knew or should have known of Comu's fraud before discharge?

13)      Was TBG used by Comu as a means to hinder, delay or defraud the payment of Comu's creditors?

14)      Was Sunset Pacific used by Comu as a means to hinder, delay or defraud Comu's creditors?

15)      Is TBG the alter ego of Comu?

16)      Is Comu the *de facto* owner of TBG?

17)      Is Sunset Pacific the alter ego of Comu?

18)      Is Phyllis Comu's purported ninety-eight percent (98%) limited partnership interest in Sunset Pacific property of the Comu bankruptcy estate pursuant to § 541(a)(2)(A)?

19)      Was Phyllis Comu's partnership interest in Sunset Pacific under the joint management and control of Comu and Phyllis Comu?

20)      Is the Comu Green Auto Stock property of the bankruptcy estate?

21)      Were the assets of TBG as of the Petition Date property of the Comu bankruptcy estate?

22)     Were the assets of Sunset Pacific as of the Petition Date property of the Comu bankruptcy estate?

23)     Does a substantial controversy exist with respect to the declaratory relief sought by the Trustee?

24)     Is the Trustee seeking to establish ownership rights and interests in TBG which are inconsistent with the ownership claims of Comu and Phyllis Comu?

25)     Is there such unity between Comu and TBG that the separate corporate existence of TBG does not exist?

26)     Is there such unity between Comu and Sunset Pacific that the separate corporate existence of Sunset Pacific does not exist?

27)     Is the Trustee entitled to the remedy of reverse-veil piercing of the corporate veil of TBG?

28)     Is the Trustee entitled to the remedy of reverse-veil piercing of the corporate veil of Sunset Pacific?

29)     Is the Trustee entitled to a judgment directing the turnover of all property and assets of TBG that still exist pursuant to 11 U.S.C. § 542?

30)     Is the Trustee entitled to a judgment directing the turnover of all property and assets of Sunset Pacific that still exist pursuant to 11 U.S.C. § 542?

31)     To the extent the assets of TBG and/or Sunset Pacific have been sold or otherwise disposed of since the Petition Date, is the Trustee entitled to a judgment against Comu, TBG and Sunset Pacific, jointly and severally for the value of the assets that existed on the Petition Date?

32)     May the Plaintiffs and/or the Trustee introduce evidence and pursue matters unsupported by their respective Complaints?

33)     Do the Plaintiffs have standing to pursue any alleged transfers, especially in light of this court's previous Orders in this adversary proceeding?

34)     Are any facts which happened after the filing of the Plaintiffs' Second Amended Complaint relevant on the issue of whether to revoke the Debtor's discharge?

35)     Are any facts discovered after the filing of the Plaintiffs' Second Amended Complaint relevant on the issue of whether to revoke the Debtor's discharge, if the newly discovered facts are not supported by the pleadings in the Plaintiffs' Second Amended Complaint?

36)     Is the Debtor entitled to a judgment that affirms his discharge?

37)     Should the Debtors discharge be revoked?

To the extent that any of the above foregoing issues of law constitute issues of fact, they are deemed issues of fact and shall be incorporated herein as such.

**6.      Estimated Length of Trial**

The parties estimate the trial of this Adversary Proceeding will take five (5) days.

**7.      Additional Matters That May Require the Court's Attention and/or Aid in the Disposition of the Action**

None.

### END OF ORDER ###

**SUBMITTED BY:**

**REED & ELMQUIST, P.C.**
501 N. College Street
Waxahachie, TX 75165
(972) 938-7339
(972) 923-0430 (fax)


By */s/  David W. Elmquist*
    David W. Elmquist, SBT #06591300

**ATTORNEYS FOR DIANE G. REED, TRUSTEE**


**OLSON NICOUD & GUECK, L.L.P.**
1201 Main Street, Suite 2470
Dallas, Texas 75202
(214) 979-7302
(214) 979-7301 (fax)


By */s/  Dennis Olson* (*with permission)*
Dennis Olson, SBT #15273500

**ATTORNEYS FOR DEFENDANTS**


**GREENBERG TRAURIG, LLP**
300 West 6th Street, Suite 2050
Austin, TX 78701
(512) 320-7200
(512) 320-7210 (fax)


By: *Kendyl T. Hanks* (*with permission)*
    Kendyl T. Hanks, SBT #24032273

**ATTORNEYS FOR PLAINTIFFS**

000870



**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 4, 2014**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

_____

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |

_____

| | | |
|---|---|---|
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-plaintiff and | § | |
|     Third-party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CENGIZ J. COMU, | § | |

**EXTENDED TEMPORARY RESTRAINING ORDER AND MANDATORY INJUNCTION – PAGE 1 OF 7**

|  |  |
|---|---|
| Defendant, | § |
|  | § |
| and | § |
|  | § |
| PHYLLIS E. COMU, | § |
| BERNARD D. BROWN, | § |
| THE BARCLAY GROUP, INC. AND | § |
| SUNSET PACIFIC, L.P., | § |
| Third-party Defendants. | § |

## EXTENDED TEMPORARY RESTRAINING ORDER
## AND MANDATORY INJUNCTION

On December 20, 2013, in the above-styled adversary proceeding (the "Adversary Proceeding"), by agreement of the parties, this Court entered an Agreed Temporary Restraining Order.

On January 3, 2014, again by agreement of the parties, this Court entered an Agreed Order Continuing the Temporary Restraining Order until the conclusion of the Adversary Proceeding (Adversary Docket No. 116).

From March 17 through March 21, 2014, this Court conducted a trial in this Adversary Proceeding, at the conclusion of which this Court orally issued certain findings and conclusions (the "bench rulings"), which will be incorporated into this Court's written findings of fact and conclusions of law to be entered pursuant to Bankruptcy Rule 7052. Among the Court's bench rulings was that judgment for the Plaintiffs and the Trustee as Intervenor, including damages and a permanent injunction, should be entered. The Court finds that this Extended Temporary Restraining Order and Mandatory Injunction is necessary in order to preserve and protect property which this Court has found to be property of the bankruptcy estate, and to prevent irreparable harm to the Plaintiffs and the Debtor's bankruptcy estate, pending entry of the Court's written findings of fact and conclusions of law and the Court's Judgment.

It is, therefore, ORDERED, ADJUDGED AND DECREED that the Defendants, and their respective officers, agents, servants, employees, attorneys, affiliates, or other persons acting in concert or participating with them (including, but not limited to, the DAPTCO Trust, the TKY Trust, Marathon Management, Inc., Continental Partnership, Inc., Continental Investments Holding Company, West Point Advisors, Inc., Eurocap Investments Plc, and Regus Advisors, Inc.) who receive actual notice of this Extended Temporary Restraining Order and Mandatory Injunction by personal service or otherwise, be and are hereby mandatorily enjoined from (1) selling, transferring, exchanging or encumbering any non-exempt assets of Defendants Cengiz J. Comu ("Comu") and/or Phyllis Comu and/or any assets of Sunset Pacific, L.P. ("SP" or "Sunset Pacific") and/or The Barclay Group, Inc. (a/k/a Barclay Group, Inc.; hereinafter "TBG"), including but not limited to any shares of stock of Green Automotive Company Corporation (f/k/a GANAS Corp., hereafter "Green Auto") that have been issued or sold to one or more of the Defendants (the "Green Auto Stock"); (2) entering into any agreement to sell, transfer, exchange or encumber any non-exempt assets of Comu and/or Phyllis Comu and/or any assets of TBG and/or SP, including but not limited to the Green Auto Stock; and (3) spending, transferring or encumbering any proceeds received by any one of the Defendants from the prior sale or sales of any non-exempt assets of Comu and/or Phyllis Comu and/or any assets of TBG and/or SP, including but not limited to the Green Auto Stock, except that Defendants Comu and/or Phyllis Comu may spend money from their personal checking accounts, homestead rents and current/future wages, to pay for gasoline, groceries, utilities, insurance and other reasonably necessary personal expenses during the period prior to entry of the Court's Judgment.

It is further ORDERED, ADJUDGED AND DECREED that Comu, on behalf of TBG and SP shall immediately turn over all assets of TBG and SP to the Trustee in accordance with

specific written instructions to be provided by the Trustee's attorney, David Elmquist, to Comu's attorney, Dennis Olson, except that because Comu exempted the use of the prior Mercedes Benz titled in SP, Comu may have the use of the 2010 Mercedes Benz titled in SP during the period prior to entry of the Court's Judgment.

It is further ORDERED, ADJUDGED AND DECREED that Comu and Phyllis Comu are directed to transfer to the Trustee their ownership interests in TBG and SP held by Comu and/or Phyllis Comu, or by any affiliate of Comu or Phyllis Comu.

It is further ORDERED, ADJUDGED AND DECREED that on or before April 14, 2014, Comu shall provide to the Trustee, by and through her attorney, a complete list of all assets and all liabilities of TBG and SP, including a list of all bank and/or brokerage accounts that are open or were open during the pendency of Comu's bankruptcy case.

It is further ORDERED, ADJUDGED AND DECREED that Comu shall make immediate arrangements to close his bank account, or accounts, at Turkish Bank, A.S. (including but not limited to the Account No. xxxxxx9653) (the "Turkish Bank Account(s)"), and that on or before April 14, 2014, Comu shall remit to the Trustee (in U.S. dollars) the funds in the Turkish Bank Account(s) at the time the account(s) is closed, and provide to the Trustee account statements for the Turkish Bank Account(s) from July 1, 2009, to the date the Turkish Bank Account(s) is closed.

It is further ORDERED, ADJUDGED AND DECREED that on or before April 14, 2014, Comu shall provide to the Trustee, by and through her attorney, all account statements from July 1, 2009 to present (except to the extent already provided to the Trustee) for the following accounts:

(1) CJ Comu Accounts

**EXTENDED TEMPORARY RESTRAINING ORDER AND MANDATORY INJUNCTION – PAGE 4 OF 7**

    a.  Emmett A. Larkin Co (nka Sterne Agee), Account No. xxxx7873

    b.  Chase Account No. xxxxxxxxxx3665

    c.  Bank of America Account No. xxxxxxxx3490

    d.  Titan Securities Account No. xxx-xx3439

    e.  Wells Fargo Account No. xxxxxx4899

    f.  Wells Fargo Account No. xxxxxx9533

(2) CJ & Phyllis Comu

    a.  Wachovia Securities (nka Wells Fargo), Account No. xxxx-xx83 (CJ), and Account No. xxxx-xx92 (Phyllis)

(3) Phyllis Comu: BBVA Compass Account No. xxxxxx7488

(4) Sunset Pacific LP

    a.  Merrill Lynch Account No. xxx-xx295

    b.  Wells Fargo Account No. xxxxxx9760

    c.  North Dallas Bank & Trust Account No. xx-x859-3

(5) TBG

    a.  Emmett A. Larkin Co (nka Sterne Agee) Account No. xxxx7868

    b.  Wells Fargo Account No. xxxxxx8429

    c.  Bank of America Account No. xxxxxxxx0229

(6) Marathon Management, Inc.: Wells Fargo Account No. xxxxxx5194

(7) Regus Advisors, Inc.: Bank of America Account No. xxxxxxxx0119

It is further ORDERED, ADJUDGED AND DECREED that on or before April 14, 2014, Defendants shall provide to the Trustee, by and through her attorney, all account statements from July 1, 2009 to present for any account not otherwise identified above that is or has been held in

**EXTENDED TEMPORARY RESTRAINING ORDER AND MANDATORY INJUNCTION – PAGE 5 OF 7**

the name of any Defendant, and any account to which CJ Comu or Phyllis Comu is a signatory. (*See* KLM Ex. 126 at 6.)

It is further ORDERED, ADJUDGED AND DECREED that on or before April 14, 2014, Defendants shall provide to the Trustee, by and through her attorney, all account statements from July 1, 2009 to present for any account not otherwise identified above that is or has been held in the name of Regus Advisors, Inc., Regus Capital Fund, LP, or Regus Realty Partners, LLC.

It is further ORDERED, ADJUDGED AND DECREED that on or before April 14, 2014, Comu shall provide to the Trustee, by and through her attorney, all account statements from July 1, 2009 to present for HSBC Plc account no. xxxxxx-xxxx7483 held by Newhaven Nominees Ltd/West Point Advisors, Inc. (KLM Ex. 365).

It is further ORDERED, ADJUDGED AND DECREED that on or before April 14, 2014, Comu shall provide to the Trustee, by and through her attorney, all account statements from July 1, 2009 to present for any American Express account for which CJ Comu or Phyllis Comu has or has had charging privileges from June 1, 2009 to present. (*See* KLM Ex. 310 at 2.)

It is further ORDERED, ADJUDGED AND DECREED that on or before April 14, 2014, Comu shall provide to the Trustee, by and through her attorney, all account statements from July 1, 2009 to present reflecting or pertaining to a one-year certificate of deposit for $20,000 held at Compass Bank. (*See* KLM Ex. 126 at 1.)

It is further ORDERED, ADJUDGED AND DECREED that on or before April 14, 2014, Comu shall provide to the Trustee, by and through her attorney, all financial account statements from July 1, 2009 to present for any account held in the name of Marathon Management, Inc. (Tax ID # xx-xxxx900) not otherwise identified above. (*See* KLM Ex. 126 at 6.)

It is further ORDERED, ADJUDGED AND DECREED that on or before April 18, 2014, Mr. Elmquist shall file a status report with the Court regarding Comu's compliance or non-compliance with the mandatory provisions of this Injunction.  If the Court finds that by such date Comu has not complied with the terms of this Injunction, then a show cause order shall be issued by this Court.

### END OF ORDER ###

SUBMITTED BY:

OLSON NICOUD & GUECK, L.L.P.
1201 Main Street, Suite 2470
Dallas, TX  75202
(214) 979-7302
(214) 979-7301 (fax)

By: /s/ Dennis Olson
    Dennis Olson – SBT #15273500

ATTORNEYS FOR CENGIZ J. COMU, A/K/A CJ COMU, DEFENDANT, AND PHYLLIS E. COMU, BERNARD D. BROWN, THE BARCLAY GROUP, INC. AND SUNSET PACIFIC, L.P., THIRD-PARTY DEFENDANTS

David W. Elmquist - SBT #06591300
**REED & ELMQUIST, P.C.**
501 N. College Street
Waxahachie, Texas 75165
(972) 938-7339
1+(972) 923-0430 (fax)

**ATTORNEYS FOR DIANE G. REED,**
**CHAPTER 7 TRUSTEE FOR CENGIZ J. COMU**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-38820-SGJ-7 |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant. | § | |

| | | |
|---|---|---|
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-plaintiff and | § | |
|     Third-party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CENGIZ J. COMU, | § | |
|     Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| PHYLLIS E. COMU, | § | |
| BERNARD D. BROWN, | § | |
| THE BARCLAY GROUP, INC. AND | § | |
| SUNSET PACIFIC, L.P., | § | |
|     Third-party Defendants. | § | |

**TRUSTEE'S STATUS REPORT OF COMPLIANCE WITH EXTENDED TEMPORARY RESTRAINING ORDER AND**
**MANDATORY INJUNCTION – PAGE 1 OF 10**

000878

## TRUSTEE'S STATUS REPORT OF COMPLIANCE WITH EXTENDED
## TEMPORARY RESTRAINING ORDER AND MANDATORY INJUNCTION

On April 4, 2014, following trial of the above-styled adversary proceeding (the "Adversary Proceeding"), this Court entered its Extended Temporary Restraining Order and Mandatory Injunction[1] (the "Injunction"). The Injunction provides, among other things, that the undersigned counsel to the Trustee file this status report regarding compliance or non-compliance by Cengiz J. Comu ("Comu") with the mandatory provisions of the Injunction. Accordingly, the Trustee reports as follows:

**Injunction Provision No. 1.** The Injunction orders the Defendants, and their respective officers, agents, servants, employees, attorneys, affiliates, or other persons acting in concert or participating with them (including, but not limited to, the DAPTCO Trust, the TKY Trust, Marathon Management, Inc., Continental Partnership, Inc., Continental Investments Holding Company, West Point Advisors, Inc., Eurocap Investments Plc, and Regus Advisors, Inc.) who receive actual notice of the Injunction by personal service or otherwise, be mandatorily enjoined from (1) selling, transferring, exchanging or encumbering any non-exempt assets of Defendants Comu and/or Phyllis Comu and/or any assets of Sunset Pacific, L.P. ("SP" or "Sunset Pacific") and/or The Barclay Group, Inc. (a/k/a Barclay Group, Inc.; hereinafter "TBG"), including but not limited to any shares of stock of Green Automotive Company Corporation (f/k/a GANAS Corp., hereafter "Green Auto") that have been issued or sold to one or more of the Defendants (the "Green Auto Stock"); (2) entering into any agreement to sell, transfer, exchange or encumber any non-exempt assets of Comu and/or Phyllis Comu and/or any assets of TBG and/or SP, including but not limited to the Green Auto Stock; and (3) spending, transferring or encumbering any proceeds received by any one of the Defendants from the prior sale or sales of any non-exempt assets of Comu and/or Phyllis Comu and/or any assets of TBG and/or SP, including but not limited to the Green Auto Stock, except that Defendants Comu and/or Phyllis Comu may spend money from their personal checking accounts, homestead rents and current/future wages, to pay for gasoline, groceries, utilities, insurance and other reasonably necessary personal expenses during the period prior to entry of the Court's Judgment.

**Status:** The Trustee and the Trustee's counsel are not aware of any violation by the Defendants of Injunction Provision No. 1.

**Injunction Provision No. 2.** The Injunction orders that Comu, on behalf of TBG and SP shall immediately turn over all assets of TBG and SP to the Trustee in accordance with specific written instructions to be provided by the Trustee's attorney, David Elmquist, to Comu's

---

[1] Docket No. 142.

**TRUSTEE'S STATUS REPORT OF COMPLIANCE WITH EXTENDED TEMPORARY RESTRAINING ORDER AND MANDATORY INJUNCTION – PAGE 2 OF 10**

000879

attorney, Dennis Olson, except that because Comu exempted the use of the prior Mercedes Benz titled in SP, Comu may have the use of the 2010 Mercedes Benz titled in SP during the period prior to entry of the Court's Judgment.

**Status:** Attached hereto as **Exhibit A** is a list of items that have been received by the Trustee's counsel from Comu's counsel, most of which were received on April 14, 2014. The items received include original cashier's checks and other checks issued by financial institutions. (See **Exhibit A**, item nos. 38 – 42, 76 and 82.) These checks are payable to either the Trustee, TBG or SP. The items received also include original stock certificates issued to TBG and SP. (See **Exhibit A**, item nos. 1, 4 - 9, 13 - 37.) The items received also include the original certificate of title to the 2010 Mercedes Benz. (See **Exhibit A**, item no. 58.) Comu, through his counsel, represents that all the bank accounts of TBG and SP have been closed and all the funds in these accounts as of the dates of the closing of the accounts have been delivered to the Trustee. Comu, through his counsel, further represents that neither TBG nor SP have any other assets anywhere else in the world and that the Trustee now has possession of all the assets of TBG and SP. The Trustee, through counsel, is working with Comu's counsel to obtain necessary endorsements on the checks payable to TBG and SP, and for the transfers of the stock certificates to the Trustee.

**Injunction Provision No. 3.** The Injunction orders that Comu and Phyllis Comu are directed to transfer to the Trustee their ownership interests in TBG and SP held by Comu and/or Phyllis Comu, or by any affiliate of Comu or Phyllis Comu.

**Status:** The Trustee's counsel is preparing documentation to effectuate the transfer of Comu's and Phyllis Comu's ownership interests in TBG and SP held by Comu and/or Phyllis Comu, or by any affiliate of Comu and/or Phyllis Comu.

**Injunction Provision No. 4.** The Injunction orders that on or before April 14, 2014, Comu shall provide to the Trustee, by and through her attorney, a complete list of all assets and all liabilities of TBG and SP, including a list of all bank and/or brokerage accounts that are open or were open during the pendency of Comu's bankruptcy case.

**Status:**  The Trustee has not received a list of all assets and all liabilities of TBG and SP. However, Comu has represented that the items the Trustee has received evidence all of the assets of TBG and SP.  As to liabilities, Comu has represented that neither TBG nor SP has any liabilities except potential federal income tax liabilities for 2013.

**Injunction Provision No. 5.**  The Injunction orders Comu to make immediate arrangements to close his bank account, or accounts, at Turkish Bank, A.S. (including but not limited to the Account No. xxxxxx9653) (the "Turkish Bank Account(s)"), and that on or before April 14, 2014, Comu shall remit to the Trustee (in U.S. dollars) the funds in the Turkish Bank Account(s) at the time the account(s) is closed, and provide to the Trustee account statements for the Turkish Bank Account(s) from July 1, 2009, to the date the Turkish Bank Account(s) is closed.

**Status:**  On April 14, 2014, Comu remitted $5,000 from Account No. xxxxxx9653 at Turkish Bank, A.S.  Then on April 17, 2014, Comu produced email correspondence to Turkish Bank instructing that this account be closed and the remaining balance of the funds therein be remitted to the Trustee, and requesting bank statements from July 1, 2009 to the present.  On April 14, 2014, Comu also produced bank statements for Sunset Pacific Account Nos. xxxx7603 and xxxx7597 at Turkish Bank (UK) covering at least from July 1, 2009 until 2010.  It appears that these two SP accounts were closed on or about March 23, 2010, and January 26, 2010, respectively.

**Injunction Provision No. 6.**  The Injunction orders that on or before April 14, 2014, Comu shall provide to the Trustee, by and through her attorney, all account statements from July 1, 2009 to present (except to the extent already provided to the Trustee) for the following accounts:

The Trustee has received the following account statements:

(1) CJ Comu Accounts

      a.  Emmett A. Larkin Co (nka Sterne Agee), Account No. xxxx7873

**Status:** All account statements were already provided to the Trustee through the date this account was closed, and the balance therein on the Petition Date was remitted to the Trustee in March 2010.

    b.   Chase Account No. xxxxxxxxxxx3665

**Status:** Almost all of the account statements were already provided to the Trustee through the date this account was closed. Statements for 5/7/10 – 7/7/10, and 11/5/10 – 12/6/10 are still needed. The balance in this account on the Petition Date was remitted to the Trustee in March 2010.

    c.   Bank of America Account No. xxxxxxxx3490

**Status:** This account was in existence on the Petition Date but was not scheduled by Comu. Account statements were already provided to the Trustee through 10/26/11; statements after that date through the present have not been provided.

    d.   Titan Securities Account No. xxx-xx3439

**Status:** This account was in existence on the Petition Date but was not scheduled by Comu. All account statements have been provided to the Trustee except for 3/1/14 through the present.

    e.   Wells Fargo Account No. xxxxxx4899

**Status:** The alleged balance in this account was remitted to the Trustee on April 16, 2014. Some account statements were already provided to the Trustee since this account was opened 1/11/10; however, statements for 8/1/10 – 8/31/10, 12/1/10 – 12/31/10, 6/1/11 – 6/30/11, and 8/1/11 through the present have not been provided.

    f.   Wells Fargo Account No. xxxxxx9533

**TRUSTEE'S STATUS REPORT OF COMPLIANCE WITH EXTENDED TEMPORARY RESTRAINING ORDER AND MANDATORY INJUNCTION – PAGE 5 OF 10**

000882

**Status:** Most account statements were already provided to the Trustee since this account was opened 1/13/10; however, statements for 5/12/10 – 6/9/10, 5/10/13 – 6/11/13, and 3/12/14 through the present are still needed.

(2) CJ & Phyllis Comu

    a. Wachovia Securities (nka Wells Fargo), Account No. xxxx-xx83 (CJ), and Account No. xxxx-xx92 (Phyllis)

**Status:** Almost all of the account statements for Account No. xxxx-xx83 (CJ) have been provided to the Trustee except 3/1/14 through the present are still needed. The balance in Account No. xxxx-xx83 (CJ) on the Petition Date was remitted to the Trustee in March 2010. Some of the account statements for Account No. xxxx-xx92 (Phyllis) were previously provided to the Trustee; however, statements for 11/1/11 through the present are still needed. On April 17, 2014, Comu produced email correspondence by Phyllis Comu requesting the bank statements needed.

(3) Phyllis Comu: BBVA Compass Account No. xxxxxx7488

**Status:** Almost all of the account statements for this account have been provided to the Trustee except 9/15/10 – 10/14/10, and 3/14/14 through the present are still needed.

(4) Sunset Pacific LP

    a. Merrill Lynch Account No. xxx-xx295

**Status:** Almost all of the account statements for this account have been provided to the Trustee except 1/1/10 – 1/29/10, 9/1/10 – 9/30/10, 3/1/12 – 3/30/12, 11/1/13 – 12/31/13, and 2/1/14 through the present are still needed.

    b. Wells Fargo Account No. xxxxxx9760 xx295

**Status:** All account statements were already provided to the Trustee through the date this account was closed in 2009.

    c. North Dallas Bank & Trust Account No. xx-x859-3

**Status:** The alleged balance in this account was remitted to the Trustee on April 14, 2014. Almost all of the account statements have been provided to the Trustee except 3/3/14 through the present.

    (5) TBG

      a. Emmett A. Larkin Co (nka Sterne Agee) Account No. xxxx7868

**Status:** Almost all of the account statements for this account have been provided to the Trustee except 7/1/12 – 8/31/12, and 10/1/13 through the present are still needed.

      b. Wells Fargo Account No. xxxxxx8429 xxxx7868

**Status:** The alleged balance in this account was remitted to the Trustee on April 14, 2014. All of the account statements have been provided to the Trustee.

      c. Bank of America Account No. xxxxxxxx0229

**Status:** The alleged balance in this account was remitted to the Trustee on April 14, 2014. Almost all of the account statements have been provided to the Trustee except for 11/1/11 – 1/11/12.

    (6) Marathon Management, Inc.: Wells Fargo Account No. xxxxxx5194

**Status:** All account statements were already provided to the Trustee through the date this account was closed, and the balance therein on the Petition Date was remitted to the Trustee in March 2010.

    (7) Regus Advisors, Inc.: Bank of America Account No. xxxxxxxx0119

**Status:** Almost all of the account statements for this account have been provided to the Trustee except 11/1/11 – 2/28/13, and 3/1/13 through the present are still needed.

**Injunction Provision No. 7.** The Injunction orders that on or before April 14, 2014, Defendants provide to the Trustee, by and through her attorney, all account statements from July 1, 2009 to present for any account not otherwise identified above that is or has been held in the

name of any Defendant, and any account to which CJ Comu or Phyllis Comu is a signatory.  (*See* KLM Ex. 126 at 6.)

**Status:** No other accounts not otherwise identified in the Injunction have been provided, and the Trustee and the Trustee's counsel are not aware of any other account.

**Injunction Provision No. 8.**   The Injunction orders that on or before April 14, 2014, Defendants shall provide to the Trustee, by and through her attorney, all account statements from July 1, 2009 to present for any account not otherwise identified above that is or has been held in the name of Regus Advisors, Inc., Regus Capital Fund, LP, or Regus Realty Partners, LLC.

**Status:**  Regus Capital Fund LP Wells Fargo Account No. xxxxxx1992: Account statements for 1/1/13 – 3/31/14 were provided.  Regus Realty Partners LLC Wells Fargo Account No. xxxxxx2008: Account statements for 1/1/13 – 3/31/14 were provided.

**Injunction Provision No. 9.**   The Injunction orders that on or before April 14, 2014, Comu shall provide to the Trustee, by and through her attorney, all account statements from July 1, 2009 to present for HSBC Plc account no. xxxxxx-xxxx7483 held by Newhaven Nominees Ltd/West Point Advisors, Inc. (KLM Ex. 365).

**Status:** Account statements for 5/20/10 – 3/5/13 were provided.

**Injunction Provision No. 10.**    The Injunction orders that on or before April 14, 2014, Comu shall provide to the Trustee, by and through her attorney, all account statements from July 1, 2009 to present for any American Express account for which CJ Comu or Phyllis Comu has or has had charging privileged from June 1, 2009 to present.  (See KLM Ex. 310 at 2).

**Status:** Account statements for Phyllis Comu account no. x91000 for 1/1/13 – 12/31/13 were provided.  Account statements for CJ Comu account no. x91026 for 3/2/12 – 2/24/14 were provided.

**Injunction Provision No. 11.**    The Injunction orders that on or before April 14, 2014, Comu shall provide to the Trustee, by and through her attorney, all account statements from July 1, 2009 to present reflecting or pertaining to a one-year certificate of deposit for $20,000 held at Compass Bank.  (See KLM Ex. 126 at 1.)

**TRUSTEE'S STATUS REPORT OF COMPLIANCE WITH EXTENDED TEMPORARY RESTRAINING ORDER AND MANDATORY INJUNCTION – PAGE 8 OF 10**

000885

**Status:** A spreadsheet prepared by Comu of interest accruals and balances for 6/19/06 – 1/22/14 for this CD was provided on April 14, 2014. No actual account statements issued by Compass Bank have been provided.

**Injunction Provision No. 12.** The Injunction orders that on or before April 14, 2014, Comu shall provide to the Trustee, by and through her attorney, all financial account statements from July 1, 2009 to present for any account held in the name of Marathon Management, Inc. (Tax ID # xx-xxxx900) not otherwise identified above. (See KLM Ex. 126 at 6.)

**Status:** Marathon Management, Inc. Wells Fargo Account No. xxxxxx0325: The alleged balance in this account was remitted to the Trustee on April 14, 2014. All of the account statements with the exception of 3/27/14 are still needed.

CONCLUSION

The Trustee and the Trustee's counsel believe that there has been a good faith effort by Comu to comply with the mandatory provisions of the Injunction. The Trustee and the Trustee's counsel also have reason to believe that Comu, with the assistance of his counsel, will continue to work with the Trustee and the Trustee's counsel to fully comply with the terms of the Injunction. Therefore, the Trustee does not believe it is necessary for this Court to issue a show cause order. The Trustee intends to issue a further status report to the Court on or before May 23, 2014.

000886

Dated: April 23, 2014.                 Respectfully submitted,

                                       **REED & ELMQUIST, P.C.**
                                       501 N. College Street
                                       Waxahachie, TX 75165
                                       (972) 938-7339 (direct)
                                       (972) 923-0430 (fax)

                                       By: _/s/ David W. Elmquist_____
                                            David W. Elmquist – SBT #06591300

                                       **ATTORNEYS FOR INTERVENOR,
                                       CO-PLAINTIFF, AND THIRD-PARTY
                                       PLAINTIFF DIANE G. REED,
                                       CHAPTER 7 TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 23, 2014, a true and correct copy of the foregoing Status Report has been served electronically on Kendyl Hanks, attorney of record for Plaintiffs, and on Dennis Olson, attorney of record for Defendants.

                                       _/s/ David W. Elmquist_____
                                       David W. Elmquist

TRUSTEE'S STATUS REPORT OF COMPLIANCE WITH EXTENDED TEMPORARY RESTRAINING ORDER AND
MANDATORY INJUNCTION – PAGE 10 OF 10

000887

## DOCUMENTS PRODUCED BY COMU

| Item No. | Description |
|---|---|
| 1. | Green Automotive Company 4,529 shares of common owned by The Barclay Group, Inc., dated 1/5/2012 (#5041) - restricted |
| 2. | Green Automotive Company 600,000 shares of common owned by DAPTCO Trust, dated 7/5/2012 (#5315) - restricted |
| 3. | Green Automotive Company 22,533 shares of common owned by TKY Trust, dated 3/15/2012 (#5166) - restricted |
| 4. | Green Automotive Company 2,500,000 shares of common owned by Sunset Pacific LP, dated 11/8/2011 (#04909) - restricted |
| 5. | Green Automotive Company 2,000,000 shares of common owned by The Barclay Group, Inc., dated 11/13/2013 (#6130) - restricted |
| 6. | Green Automotive Company 200,000 shares of common owned by The Barclay Group, Inc., dated 8/13/2010 (#02550) |
| 7. | Green Automotive Company 200,000 shares of common owned by The Barclay Group, Inc., dated 8/13/2010 (#02551) |
| 8. | Green Automotive Company 200,000 shares of common owned by The Barclay Group, Inc., dated 8/13/2010 (#02552) |
| 9. | Green Automotive Company 200,000 shares of common owned by The Barclay Group, Inc., dated 8/13/2010 (#02549) |
| 10. | Green Automotive Company 200,000 shares of common owned by Smarter, Inc., dated 8/18/2010 (#02563) |
| 11. | 5/2/2013 Email from Comu to SIPC requesting cash and securities from Westor Capital and claim form for $37,993.84 and 991,900 Green Auto shares |
| 12. | Green Automotive Company 200,000 shares of common owned by Bernard D. Brown, dated 1/13/2010 (#01090) - restricted |
| 13. | Sun Sports & Entertainment Inc. 77,760,497 shares of common owned by Sunset Pacific LP, dated 6/16/2009 (#SUN2963) - restricted |
| 14. | Sun Sports & Entertainment Inc. 1,331,203 shares of common owned by Sunset Pacific LP, dated 7/11/2008 (#SUN2819) - restricted |
| 15. | Global Energy Technology Group Inc. 10,000,000 shares of common owned by Sunset Pacific LP, dated 12/11/2008 (#GET2) - restricted |
| 16. | Artfest International, Inc. 105,000 shares of common owned by The Barclay Group, Inc., dated 4/29/2008 (#2065) |
| 17. | Metiscan, Inc. 4,000,000 shares of common owned by The Barclay Group, Inc., dated 2/4/2009 (#1713) |
| 18. | T3 Networks, Inc. 1,000,000 shares of common owned by The Barclay Group, Inc., dated 5/5/2011 (#1007) |
| 19. | T3 Networks, Inc. 1,000,000 shares of common owned by The Barclay Group, Inc., dated 5/5/2011 (#1008) |
| 20. | T3 Networks, Inc. 1,000,000 shares of common owned by The Barclay Group, Inc., dated 5/5/2011 (#1009) |
| 21. | T3 Networks, Inc. 1,000,000 shares of common owned by The Barclay Group, Inc., dated 5/5/2011 (#1011) |

**Exhibit A**

000888

| Item No. | Description |
|---|---|
| 22. | T3 Networks, Inc. 1,000,000 shares of common owned by The Barclay Group, Inc., dated 5/5/2011 (#1012) |
| 23. | T3 Networks, Inc. 1,000,000 shares of common owned by The Barclay Group, Inc., dated 5/5/2011 (#1013) |
| 24. | T3 Networks, Inc. 1,000,000 shares of common owned by The Barclay Group, Inc., dated 5/5/2011 (#1014) |
| 25. | T3 Networks, Inc. 1,000,000 shares of common owned by The Barclay Group, Inc., dated 5/5/2011 (#1015) |
| 26. | T3 Networks, Inc. 1,000,000 shares of common owned by The Barclay Group, Inc., dated 5/5/2011 (#1016) |
| 27. | T3 Networks, Inc. 1,000,000 shares of common owned by The Barclay Group, Inc., dated 5/5/2011 (#1017) |
| 28. | Paragon Global Positioning Systems 1,000,000 shares of common owned by The Barclay Group, Inc., dated 12/30/2010 (#PAR1010) - restricted |
| 29. | Paragon Global Positioning Systems 1,000,000 shares of common owned by The Barclay Group, Inc., dated 12/30/2010 (#PAR1011) - restricted |
| 30. | Paragon Global Positioning Systems 1,000,000 shares of common owned by The Barclay Group, Inc., dated 12/30/2010 (#PAR1012) - restricted |
| 31. | Paragon Global Positioning Systems 1,000,000 shares of common owned by The Barclay Group, Inc., dated 12/30/2010 (#PAR1013) - restricted |
| 32. | Paragon Global Positioning Systems 1,000,000 shares of common owned by The Barclay Group, Inc., dated 12/30/2010 (#PAR1014) - restricted |
| 33. | Paragon Global Positioning Systems 1,000,000 shares of common owned by The Barclay Group, Inc., dated 12/30/2010 (#PAR1015) - restricted |
| 34. | Paragon Global Positioning Systems 1,000,000 shares of common owned by The Barclay Group, Inc., dated 12/30/2010 (#PAR1016) - restricted |
| 35. | Paragon Global Positioning Systems 1,000,000 shares of common owned by The Barclay Group, Inc., dated 12/30/2010 (#PAR1017) - restricted |
| 36. | Paragon Global Positioning Systems 1,000,000 shares of common owned by The Barclay Group, Inc., dated 12/30/2010 (#PAR1018) - restricted |
| 37. | Paragon Global Positioning Systems 1,000,000 shares of common owned by The Barclay Group, Inc., dated 12/30/2010 (#PAR1019) - restricted |
| 38. | $9,848.00 Cashier's check dated 3/27/2014 to Sunset Pacific issued by North Dallas Bank & Trust to close account #38-6859-3 |
| 39. | $5,000.00 check dated 3/28/2014 to Trustee issued by Turkish Bank A.S. for account #xxxxxx9653 USD, letter in Turkish from Comu and statement in Turkish |
| 40. | $218.07 Cashier's check dated 3/27/2014 to Marathon Management Inc. issued by Wells Fargo Bank to close account #xxxxxx0325 |
| 41. | $5,163.46 Cashier's check dated 3/27/2014 to The Barclay Group Inc. issued by Wells Fargo Bank to close account #xxxxxx8429 |
| 42. | $7.84 Cashier's check dated 4/3/2014 to Trustee issued by Bank of America to close TBG account #xxxxxxxx0229 |
| 43. | Statement dated 3/28/2014 for TBG Bank of America account #xxxxxxxx0229 |
| 44. | Statement dated 3/27/2014 for Marathon Mgmt Wells Fargo account #xxxxxx0325 |

000889

| Item No. | Description |
|---|---|
| 45. | Statement dated 3/27/2014 for TBG Wells Fargo account #xxxxxx8429 |
| 46. | Letter dated 3/20/2014 from Wells Fargo Advisors to Comu confirming removal of securities from his account #xxxx1083 due to inability to locate market |
| 47. | Statements for Sunset Pacific North Dallas Bank & Trust account #xxx8593: 7/1/09 – 3/2/14 |
| 48. | Statements for TBG Bank of America account #xxxxxxxx0229: 1/1/12 – 2/28/14 |
| 49. | Statements for TBG Wells Fargo account #xxxxxx8429: 7/1/09 – 2/28/14 |
| 50. | Statements for CJ Comu Titan Securities account #xxxxx3439: 11/1/11 – 2/28/14 |
| 51. | Statements for TBG Sterne Agee account #xxxx7868: 4/1/12 – 6/30/12 9/1/12 – 9/30/13 |
| 52. | Statements for CJ Comu Wells Fargo account #xxxxxx9533: 12/10/10 – 5/9/13 6/12/13 – 3/11/14 |
| 53. | Statements for CJ & Phyllis Comu Bank of America account #xxxxxxxx3490: 12/28/11 – 2/25/14 |
| 54. | Statement for Sunset Pacific Turkish Bank (UK) account #xxxx7603: 1/26/07 – 3/23/10 |
| 55. | Statement for Sunset Pacific Turkish Bank (UK) account #xxxx7597: 1/26/07 – 1/26/10 |
| 56. | Corporate Installment Note dated 3/10/10 by Libart Enclosures, Inc. (Cem Comu) to Sunset Pacific for $300,000 |
| 57. | Letter dated 2/14/2012 from AAA Life Insurance Co. to Sunset Pacific transmitting $503,662 Accumulator Universal Life Insurance Policy |
| 58. | Certificate of Title dated 7/23/2012 to 2010 Mercedes S5F in name of Sunset Pacific |
| 59. | Statements for Phyllis Comu BBVA Compass account #xxxxxx7488: 12/15/10 – 3/13/14 |
| 60. | Spreadsheet (prepared by Comu) of $20,000 CD at BBVA Compass, interest accrual and balances 6/19/06 – 1/22/14 |
| 61. | Statements for Newhaven Nominees Limited HSBC Bank (London) account #xxxx7483: 5/20/10 – 3/5/13 |
| 62. | Statements for Regus Advisors, Inc. Bank of America account #xxxxxxxx0119: 3/1/13 – 2/28/14 |
| 63. | Statements for Regus Advisors, Inc. Bank of America account #xxxxxxxx0119: 7/2/10 – 2/28/13 |
| 64. | Statements for Regus Capital Fund LP Wells Fargo account #xxxxxx1992: 1/1/13 – 3/31/14 |
| 65. | Statements for Regus Realty Partners LLC Wells Fargo account #xxxxxx2008: 1/1/13 – 3/31/14 |
| 66. | Statements for CJ Comu Chase Bank account #xxxxxxxxxxx3665: 9/8/06 – 10/5/06 1/6/07 – 10/4/07 11/7/07 – 12/6/07 |
| 67. | Statements for Phyllis Comu American Express Card account #x91000: 1/1/13 – 12/31/13 |
| 68. | Statements for CJ Comu American Express Card account #x91026: 3/2/12 – 2/24/14 |

000890

| Item No. | Description |
|---|---|
| 69. | Statements for Marathon Management Inc. Wells Fargo account #xxxxxx0325: 9/8/11 – 2/28/14 |
| 70. | Statements for CJ Comu Wells Fargo Advisors account #xxxx1083: 7/1/09 – 2/28/14 |
| 71. | Eurocap Investments PLC 10,000,000 ordinary shares owned by The Barclay Group, Inc., dated 6/11/2012 (#00000011) |
| 72. | Accumulator Universal Life Insurance Policy, face amount $503,662, issued by AAA Life Insurance Co. to Sunset Pacific |
| 73. | Execution Page and Power of Attorney Limited Partnership Agreement Algae Fuel No. 1 Ltd. |
| 74. | Statements for Sunset Pacific Merrill Lynch Wealth Management account #xxxx7295: 11/1/11 – 2/29/12 3/31/12 – 10/31/13 1/1/14 – 1/31/14 |
| 75. | Statements for Marathon Mgmt Wells Fargo account #xxxxxx5194: 1/1/10 – 5/31/10 |
| 76. | $2,845.90 Cashier's check dated 4/16/2014 to Trustee issued by Wells Fargo Bank to close CJ Comu account #xxxxxx4899 |
| 77. | Statements for TBG Bank of America account #xxxxxxxx0229: 4/1/12 – 4/30/12 12/1/12 – 12/31/12 8/1/13 – 8/31/13 |
| 78. | Statements for TBG Sterne Agee account #xxxx7868: 10/1/11 – 3/31/12 |
| 79. | Email dated 4/15/14 from CJ Comu to Ebru Tunc at Turkish Bank requesting information and statements on account #xxxxxx9653 USD |
| 80. | Email chain dated 4/16/14 between CJ Comu and Perry West re Global Energy Technology Corp/New Global Energy Inc. requesting information and new certificate |
| 81. | Email dated 4/15/14 from Phyllis Comu to Sam Nuche at Wells Fargo Advisors requesting research of account #xxxx1092 in her name |
| 82. | $5,484.00 Check dated 4/17/2014 to Trustee issued by Merrill Lynch to close Sunset Pacific account #xxxx7295 |

000891

**FILED**

JUL 29 2014

TAWANA C. MARSHALL, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | <u>CASE NO. 09-38820-SGJ-7</u> |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, Appellees | § | |
| | § | |
| v. | § | <u>ADV. NO. 10-03269-sgi</u> |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant/Appellant | § | |

| | |
|---|---|
| DIANE G. REED, TRUSTEE, | § |
|     Intervenor, Co-plaintiff and | § |
|     Third-party Plaintiff, | § |
| | § |
| v. | § |
| | § |
| CENGIZ J. COMU, | § |
|     Defendant, | § |
| | § |
| and | § |
| | § |
| PHYLLIS E. COMU, | § |
| BERNARD D. BROWN, | § |
| THE BARCLAY GROUP, INC. AND | § |
| SUNSET PACIFIC, L.P., | § |
|     Third-party Defendants. | |

000892

## MOTION FOR LEAVE TO FILE NOTICE OF APPEAL OUT OF TIME

Defendant C. J. Comu (Defendant) hereby files this Motion for Leave to file Notice of Appeal out of Time with respect to the Judgment entered in the Adversary Proceeding identified above and would respectfully show the Court as follows:

1.      The Court entered its Judgment in the Adversary Proceeding on July 8, 2014.

2.      The Judgment included 141 pages of Findings of Fact and Conclusions of Law and over a thousand footnotes to the record.

3.      Defendant's engagement agreement with Counsel expired after the trial in this matter so Defendant was forced to review the Judgment and Findings of Fact and Conclusions of Law and determine if an appeal had merit without the benefit of counsel.  Defendant spent over a hundred hours reviewing and analyzing every detail of the Judgment and court findings to identify meritorious issues for appeal.

4.      At the same time, Defendant frantically sought assistance from friends and family to raise funds to pay for an appeals attorney.  At the time, Defendant believed that he had to have an attorney to appeal the Judgment, and considering the size of the record and the breadth of the Court's judgment, he understood that attorney's fees for the appeal would be substantial.

5.      Despite diligent and extensive actions, Defendant was unable to obtain the funds to retain counsel for the appeal.  Further, Defendant believed at all times during the notice period that an attorney was required to file the appeal.

6.      Defendant was distraught as the time period to file a notice of appeal expired on July 22, 2014.  Defendant had no idea that he could file the notice of appeal himself until, July 25, 2014 when he was advised of this right to proceed pro se during a conversation with friend.

000893

7.      After learning of his rights to proceed pro se, Defendant immediately began to research the appropriate Bankruptcy Rules and prepared this Motion and the attached Notice of Appeal and hereby seeks leave of Court to file the Notice of Appeal attached hereto as Exhibit "A".

8.      Defendant acknowledges that the Court must find excusable neglect for this appeal to proceed as provided in Bankruptcy Rule of Procedure 8002(c)(2), and asserts that the Court find excusable neglect in this instance because all of his efforts during the 14 day time period following the entry of the Judgment were focused entirely on raising funds and considering counsel based upon the mistaken belief that legal counsel was required to file the appeal on his behalf as it is for the entity defendants.

9.      Lastly, Defendant has taken action to assure that mistakes like this do not happen again.  He has studied the Bankruptcy Rules of Procedure, the Federal Rules of Appellate Procedure, and the Local Rules of this Court and is prepared to comply with them all from here forward.

WHEREFORE, PREMISES CONSIDERED, Defendant/Appellant files this Motion for Leave to Notice of Appeal Out of Time and respectfully requests the Court to enter its order authorizing Defendant to file the attached Notice of Appeal and for such other and further relief to which he may show himself entitled.

DEFENDANT/APPELLANT

C. J. COMU, PRO SE
15455 Dallas Parkway Suite 600,
Addison TX 75001
Tel: 972.965.2545
cjcomu@gmail.com

000894

EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | <u>CASE NO. 09-38820-SGJ-7</u> |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR | § | |

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, Appellees | § | |
| | § | |
| v. | § | ADV. NO. 10-03269-sgj |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant/Appellant | § | |

| | |
|---|---|
| DIANE G. REED, TRUSTEE, | § |
|     Intervenor, Co-plaintiff and | § |
|     Third-party Plaintiff, | § |
| | § |
| v. | § |
| | § |
| CENGIZ J. COMU, | § |
|     Defendant, | § |
| | § |
| and | § |
| | § |
| PHYLLIS E. COMU, | § |
| BERNARD D. BROWN, | § |
| THE BARCLAY GROUP, INC. AND | § |
| SUNSET PACIFIC, L.P., | § |
|     Third-party Defendants. | |

000895

## NOTICE OF APPEAL

Defendant C. J. Comu (Defendant) hereby files this Notice of Appeal with respect to the Judgment entered in the Adversary Proceeding identified above. The names of all parties to the Judgment, together with names, addresses and contact information of counsel for the parties is as follows:

**REED & ELMQUIST, P.C.**
David W. Elmquist – SBT #06591300
501 N. College Street
Waxahachie, TX 75165
Tel: (972) 938-7339
Fax: (972) 923-0430
Email: delmquist@bcylawyers.com

ATTORNEYS FOR DIANE G. REED, TRUSTEE,
INTERVENOR, CO-PLAINTIFF AND
THIRD PARTY PLAINTIFF

**GREENBERG TRAURIG, LLP**

**Shari L. Heyen**
Texas Bar No. 09564750
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Email: heyens@gtlaw.com

**Kendyl T. Hanks**
Texas Bar No. 24032273
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210
Email: hanksk@gtlaw.com

**Charles P. Floyd**
Texas Bar No. 24055487
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601
Email: floydc@gtlaw.com

**ATTORNEYS FOR PLAINTIFFS KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC AND RONALD KATZ**

**Emil Lippe, Jr.**
Bar No. 12398300
LAW OFFICES OF LIPPE & ASSOCIATES
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas 75201
Tel: (214) 855-1850
Fax: (214) 720-6074
Email: emil@texaslaw.com

<u>Former Attorney</u> for King Louie Mining, King Louie Enterprises LLC and Ronald Katz

**OLSON NICOUD & GUECK, L.L.P.**
Dennis Olson
SBT #15273500
1201 Main Street, Suite 2470
Dallas, TX 75202
Tel: (214) 979-7302
Fax: (214) 979-7301
Email: denniso@dallas-law.com

ATTORNEYS FOR CENGIZ J. COMU, A/K/A CJ COMU, DEFENDANT, AND PHYLLIS E. COMU, BERNARD D. BROWN, THE BARCLAY GROUP, INC. AND SUNSET PACIFIC, L.P., THIRD-PARTY DEFENDANTS

WHEREFORE, PREMISES CONSIDERED, Defendant/Appellant files this Notice of Appeal to be effective as of the date that the Motion for Leave to Appeal is granted.

DEFENDANT/APPELLANT

C. J. COMU, PRO SE
15455 Dallas Parkway Suite 600,
Addison TX 75001
Tel: 972.965.2545
cjcomu@gmail.com

000897

Shari L. Heyen
State Bar No. 09564750
HeyenS@gtlaw.com
Kendyl T. Hanks
State Bar No. 24032273
hanksk@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Telecopier: (713) 374-3505

**ATTORNEYS FOR PLAINTIFFS' KING LOUIE MINING, LLC,
KING LOUIE ENTERPRISES, LLC AND RONALD KATZ**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 7 |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO. 09-38820-sgj7 |
| | § | |
| DEBTOR. | § | |
| KING LOUIE MINING, LLC, KING | § | |
| LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| Defendant | § | |
| DIANE G. REED, TRUSTEE, | § | |
| Intervenor, Co-Plaintiff, and | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
| Defendant, | § | |
| And | § | |
| PHYLLIS E. COMU, BERNARD D. | § | |
| BROWN, THE BARCLAY GROUP, INC., | § | |
| AND SUSSET PACIFIC, L.P. | § | |
| Third-Party Defendants. | § | |

**PLAINTIFFS' PRELIMINARY APPLICATION FOR ATTORNEYS' FEES
AND EXPENSES AWARDED IN THE COURT'S JULY   ,      JUDGMENT,**

**MOTION FOR EXTENSION OF TIME
TO SUBMIT AFFIDAVIT AND EVIDENCE IN SUPPORT OF APPLICATION**

1

000898

Plaintiffs King Louie Mining, LLC ("KLM"), King Louie Enterprises, LLC ("KLE"), and Ronald Katz ("Katz") (collectively, "Plaintiffs") file this *Preliminary Application or Attorneys ees An E penses Awar e In The Court s July ,    Ju gment*, in conjunction with *Plainti s Motion or E tension   Time To Su mit A i avit An Evi ence In Support Application*, and in support hereof respectfully moves the Court as follows:

**I. P        A        F        E**

1.    On July 8, 2014, the Court entered in this Adversary Proceeding its *in ings o act an Conclusions o Law in Support o Ju gment A evo ing ischarge    e tor, Pursuant To    .S.C.    B eclaring Certain Property To Be Property The Estate C e uiring Turnover Certain Property To The Trustee   Awar ing Monetary amages To Trustee or The Bene it The Estate An E Separately Awar ing easona le Attorneys ees An E penses To Plainti s* Doc. 147  (herein the "Findings and Conclusions").

2.    In particular, and based on the existence of clear and convincing evidence of fraud, the Court found that "Comu's bankruptcy was plainly motivated not by a legitimate need for relief from debts he was unable to pay, but by a willful and malicious desire to thwart Plaintiffs' pursuit of state court remedies," and that "Comu's ongoing scheme to defraud his creditors   and Plaintiffs in particular   constitutes bad faith abuse of the bankruptcy process and the judicial system."

3.    Based on the Court's Findings and Conclusions, the Court entered its judgment  Doc. 148  (herein the "Judgment"), revoking Debtor's discharge and, *inter alia*, awarding $5,858,778 in damages to the Bankruptcy Trustee for the benefit of the bankruptcy estate.

4.    The Judgment further ordered, pursuant to § 105(a), that "due to the severe level of nondisclosures and fraud," and as a sanction for Debtor's bad faith established at trial and

2

000899

detailed in the Findings and Conclusions, "Plaintiffs shall be and are hereby granted an additional monetary award for their reasonable and necessary attorneys' fees and expenses, as a sanction because of the unusual level of bad faith inherent in this matter."

5.    Pursuant to the Court's Judgment, and based on unredacted fee and expense statements reviewed by counsel for Plaintiffs in the course and scope their representation in this Adversary Proceeding, Plaintiffs seek sanctions against Debtor in the total amount of $1,079,079.24, which reflects (1) $946,504.90 in billed attorneys' fees; (2) $12,800 in unbilled attorneys' fees; and (3) $74,378.53 in expenses incurred by Plaintiffs between October 2011 and July 2014.  This amount reflects most, but not all, of the reasonable and necessary fees and expenses incurred by Plaintiffs in their effort to revoke Comu's discharge, which the Court has found, based on clear and convincing evidence, was obtained through willful fraud and bad faith.

6.    The amount of Plaintiffs' reasonable and necessary fees and expenses was calculated using the prevailing "lodestar" method, by which courts calculate a reasonable fee by multiplying the number of hours reasonably expended in litigation by a reasonable hourly rate consistent with the relevant market and legal community.  *See, e.g.*, *In re Cahill*, 428 F.3d 536, 539–40 (5th Cir. 2005).   The lodestar is presumed to yield a reasonable fee.  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

7.    Plaintiffs' calculation of their reasonable and necessary fees and expenses further takes into account the relevant factors set forth in *Johnson v. Ga. Highway E press, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974).   The twelve *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether fee is fixed or contingent; (7) time limitations; (8) the amount

AUS 53632 9 6v3

involved and results obtained; (9) the experience, reputation and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-719.

8.     Plaintiffs' calculation of the amount of their reasonable and necessary fees requested in this Application further relied on the Court's Findings and Conclusions, which set forth in great detail the complex fraudulent scheme that Comu perpetrated through insiders and affiliates between 2010 and 2014, during which years Comu concealed, enjoyed, and dissipated millions of dollars to the further detriment of Plaintiffs – who represent 95   of creditor claims filed in the Bankruptcy Case.

9.     The Court's finding that Comu's scheme effectively concealed the truth from the Trustee and creditors, thereby increasing the difficulty of identifying and exposing Comu's fraud prior to the discharge date, supports a finding that the scope of fees and expenses required to uncover Comu's fraud is a result of Comu's own willful bad faith conduct.

10.     Where attorneys' fees are awarded as a sanction for bad faith abuse of the judicial system, courts consider the question of reasonableness in light of the dual purpose of sanctions to deter bad faith conduct and compensate litigants for harm suffered as a result of that conduct. *See, e.g.*, *In re All Trac Transp., Inc*., Civ. A. 3:04-CV-1759, 2005 WL 5012640 (N.D. Tex. July 28, 2005), *a    *, 223 Fed. App'x 299 (5th Cir. 2006); *see also    ells    argo Ban , N.A. v. Jones*, 391 B.R. 577, 581 (E.D. La. 2008) (distinguishing between a permissive award of attorneys' fees per statute and an award made as a sanction for bad faith conduct); *In re Atlantic Intern. Mortg. Co*.  373 B.R. 159, 161 (Bkrtcy. M.D. Fla. 2007) (" I t is important to note that this is not a typical application for compensation, but an award of sanctions against a recalcitrant party in order to deter such conduct in the future.  As such, strict conformance with the standards

000901

germane to a typical fee application is not required.").  Some courts have further noted, in bad faith cases, that enhancement of the lodestar amount may be warranted in order to achieve the sanction's dual deterrent and remedial purpose.  *See, e.g.*, *In re Khan*, 488 B.R. 515, 536 (Bankr. E.D.N.Y.)

**II. M          E          T**

11.     Following its award of attorneys' fees as a sanction for Debtor's bad faith conduct, the Court's Judgment provided that "Plaintiffs may submit their attorneys' fees and expense request in a separate submission, which shall be due to be filed in 21 days, and shall be the subject of a Supplemental Judgment."

12.     Plaintiffs' current counsel at Greenberg Traurig, who were retained by Plaintiffs in May of 2013, have worked diligently to prepare for the Court an application for reasonable fees and expenses that sets forth in more detail the underlying legal services and expenses included in Plaintiffs' attorneys' request, which that have been billed to Plaintiffs over the course of this Adversary Proceeding by the various law firms and third-party vendors in the pursuit of Plaintiffs' revocation claims.

13.     In particular, Plaintiffs' current counsel reviewed unredacted billing statements and invoices from three law firms and numerous third-party vendors (to the extent such statements remain in Plaintiffs' possession or have otherwise been made available to counsel), and prepared a draft affidavit setting forth specific facts that support the finding that $1,079,079.24 is a reasonable and necessary amount to be awarded as sanctions.

14.     Counsel's efforts in the last 48 hours to finalize Plaintiffs' application and counsel's supporting affidavit have been delayed, however, due to intervening concerns pertaining to the inadvertent disclosure of sensitive and/or privileged information related to this

AUS 53632 9 6v3

000902

Adversary Proceeding, as well as to a related malpractice action pending against Plaintiffs' prior trial counsel (which is briefly addressed in the Court's Findings and Conclusions).

15.     In order to adequately consider and address these concerns, Plaintiffs have submitted this preliminary application setting forth the *amount* of Plaintiffs' reasonable fees and expenses based on relevant factors, but counsel for Plaintiffs respectfully request a brief extension of time to address privilege concerns of all interested counsel, and modify the supporting affidavit and/or redact the evidence supporting in support of the reasonableness of Plaintiffs' request.

WHEREFORE, FOR THE FOREGOING REASONS, based on the facts set forth in the Court's Findings and Conclusions, Plaintiffs request that this Court enter a Supplemental Judgment awarding to Plaintiffs and against Comu sanctions in the amount of $1,079,079.24, which reflects the reasonable and necessary fees and expenses incurred by Plaintiffs in this Adversary Proceeding.  To the extent additional evidence or detail pertaining to the specific underlying legal services and expenses included in this amount is required, counsel for Plaintiffs respectfully request an extension of seven (7) days in which to confer with all counsel of interest, and to prepare a separate submission of an affidavit and properly redacted evidence in support of the reasonableness of Plaintiffs' fees requested herein. Plaintiffs further request the Court grant Plaintiffs such other and further relief, whether at law or equity, to which they are justly entitled.

AUS 53632 9 6v3

000903

Dated this 30th day of July, 2014

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: _____
Kendyl T. Hanks, SBT #24032273
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210
Email: hanksk@gtlaw.com

Shari L. Heyen
Texas Bar No. 09564750
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Email: heyens@gtlaw.com

*Attorneys for Plaintiffs King Louie Mining, LLC,*
*King Louie Enterprises, LLC, and Ronald Katz*

7

000904

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing *Preliminary Application  or Attorneys  ees An  E penses Awar e  In The Court s July  ,       Ju gment*, and *Motion  or E tension    Time To Su mit A  i  avit An  Evi ence In Support    Application* has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on July 30, 2014.

/s/ Shari L. Heyen
_____
Shari L. Heyen

8

Shari L. Heyen
State Bar No. 09564750
HeyenS@gtlaw.com
Kendyl T. Hanks
State Bar No. 24032273
hanksk@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 374-3500
Telecopier: (713) 374-3505

ATTORNEYS FOR PLAINTIFFS' KING LOUIE MINING, LLC,
KING LOUIE ENTERPRISES, LLC AND RONALD KATZ

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CHAPTER 7** |
| CENGIZ J. COMU a/k/a CJ COMU, | § | **CASE NO. 09-38820-sgj7** |
| | § | |
| DEBTOR. | § | |
| KING LOUIE MINING, LLC, KING | § | |
| LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | **ADVERSARY NO. 10-03269-sgj** |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant | § | |
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-Plaintiff, and | § | |
|     Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant, | § | |
| And | § | |
| PHYLLIS E. COMU, BERNARD D. | § | |
| BROWN, THE BARCLAY GROUP, INC., | § | |
| AND SUSSET PACIFIC, L.P. | § | |
|     Third-Party Defendants. | § | |

PLAINTIFFS' PRELIMINARY APPLICATION FOR ATTORNEYS' FEES
AND EXPENSES AWARDED IN THE COURT'S JULY 8, 2014 JUDGMENT,
*and*
MOTION FOR EXTENSION OF TIME
TO SUBMIT AFFIDAVIT AND EVIDENCE IN SUPPORT OF APPLICATION

1

Plaintiffs King Louie Mining, LLC ("KLM"), King Louie Enterprises, LLC ("KLE"), and Ronald Katz ("Katz") (collectively, "Plaintiffs") file this *Preliminary Application or Attorneys ees An E penses Awar e In The Court s July , Ju gment*, in conjunction with *Plainti s Motion or E tension Time To Su mit A i avit An Evi ence In Support Application*, and in support hereof respectfully moves the Court as follows:

## I. P A F E

1.      On July 8, 2014, the Court entered in this Adversary Proceeding its *in ings o act an Conclusions o Law in Support o Ju gment A evo ing ischarge e tor, Pursuant To .S.C. B eclaring Certain Property To Be Property The Estate C e uiring Turnover Certain Property To The Trustee Awar ing Monetary amages To Trustee or The Bene it The Estate An E Separately Awar ing easona le Attorneys ees An E penses To Plainti s* Doc. 147 (herein the "<u>Findings and Conclusions</u>").

2.      In particular, and based on the existence of clear and convincing evidence of fraud, the Court found that "Comu's bankruptcy was plainly motivated not by a legitimate need for relief from debts he was unable to pay, but by a willful and malicious desire to thwart Plaintiffs' pursuit of state court remedies," and that "Comu's ongoing scheme to defraud his creditors and Plaintiffs in particular constitutes bad faith abuse of the bankruptcy process and the judicial system."

3.      Based on the Court's Findings and Conclusions, the Court entered its judgment Doc. 148 (herein the "<u>Judgment</u>"), revoking Debtor's discharge and, *inter alia*, awarding $5,858,778 in damages to the Bankruptcy Trustee for the benefit of the bankruptcy estate.

4.      The Judgment further ordered, pursuant to § 105(a), that "due to the severe level of nondisclosures and fraud," and as a sanction for Debtor's bad faith established at trial and

2

AUS 53632 9 6v3

detailed in the Findings and Conclusions, "Plaintiffs shall be and are hereby granted an additional monetary award for their reasonable and necessary attorneys' fees and expenses, as a sanction because of the unusual level of bad faith inherent in this matter."

5.      Pursuant to the Court's Judgment, and based on unredacted fee and expense statements reviewed by counsel for Plaintiffs in the course and scope their representation in this Adversary Proceeding, Plaintiffs seek sanctions against Debtor in the total amount of $1,079,079.24, which reflects (1) $946,504.90 in billed attorneys' fees; (2) $12,800 in unbilled attorneys' fees; and (3) $74,378.53 in expenses incurred by Plaintiffs between October 2011 and July 2014. This amount reflects most, but not all, of the reasonable and necessary fees and expenses incurred by Plaintiffs in their effort to revoke Comu's discharge, which the Court has found, based on clear and convincing evidence, was obtained through willful fraud and bad faith.

6.      The amount of Plaintiffs' reasonable and necessary fees and expenses was calculated using the prevailing "lodestar" method, by which courts calculate a reasonable fee by multiplying the number of hours reasonably expended in litigation by a reasonable hourly rate consistent with the relevant market and legal community. *See, e.g.*, *In re Cahill*, 428 F.3d 536, 539–40 (5th Cir. 2005). The lodestar is presumed to yield a reasonable fee. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

7.      Plaintiffs' calculation of their reasonable and necessary fees and expenses further takes into account the relevant factors set forth in *Johnson v. Ga. Highway E press, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The twelve *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether fee is fixed or contingent; (7) time limitations; (8) the amount

AUS 53632 9 6v3

involved and results obtained; (9) the experience, reputation and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-719.

8.  Plaintiffs' calculation of the amount of their reasonable and necessary fees requested in this Application further relied on the Court's Findings and Conclusions, which set forth in great detail the complex fraudulent scheme that Comu perpetrated through insiders and affiliates between 2010 and 2014, during which years Comu concealed, enjoyed, and dissipated millions of dollars to the further detriment of Plaintiffs – who represent 95   of creditor claims filed in the Bankruptcy Case.

9.  The Court's finding that Comu's scheme effectively concealed the truth from the Trustee and creditors, thereby increasing the difficulty of identifying and exposing Comu's fraud prior to the discharge date, supports a finding that the scope of fees and expenses required to uncover Comu's fraud is a result of Comu's own willful bad faith conduct.

10.  Where attorneys' fees are awarded as a sanction for bad faith abuse of the judicial system, courts consider the question of reasonableness in light of the dual purpose of sanctions to deter bad faith conduct and compensate litigants for harm suffered as a result of that conduct. *See, e.g.*, *In re All Trac Transp., Inc*., Civ. A. 3:04-CV-1759, 2005 WL 5012640 (N.D. Tex. July 28, 2005), *a   *, 223 Fed. App'x 299 (5th Cir. 2006); *see also    ells   argo Ban , N.A. v. Jones*, 391 B.R. 577, 581 (E.D. La. 2008) (distinguishing between a permissive award of attorneys' fees per statute and an award made as a sanction for bad faith conduct); *In re Atlantic Intern. Mortg. Co.  373 B.R. 159, 161 (Bkrtcy. M.D. Fla. 2007) ("  I t is important to note that this is not a typical application for compensation, but an award of sanctions against a recalcitrant party in order to deter such conduct in the future.  As such, strict conformance with the standards

germane to a typical fee application is not required.").  Some courts have further noted, in bad faith cases, that enhancement of the lodestar amount may be warranted in order to achieve the sanction's dual deterrent and remedial purpose.  *See, e.g.*, *In re Khan*, 488 B.R. 515, 536 (Bankr. E.D.N.Y.)

## II. M          E          T

11.    Following its award of attorneys' fees as a sanction for Debtor's bad faith conduct, the Court's Judgment provided that "Plaintiffs may submit their attorneys' fees and expense request in a separate submission, which shall be due to be filed in 21 days, and shall be the subject of a Supplemental Judgment."

12.    Plaintiffs' current counsel at Greenberg Traurig, who were retained by Plaintiffs in May of 2013, have worked diligently to prepare for the Court an application for reasonable fees and expenses that sets forth in more detail the underlying legal services and expenses included in Plaintiffs' attorneys' request, which that have been billed to Plaintiffs over the course of this Adversary Proceeding by the various law firms and third-party vendors in the pursuit of Plaintiffs' revocation claims.

13.    In particular, Plaintiffs' current counsel reviewed unredacted billing statements and invoices from three law firms and numerous third-party vendors (to the extent such statements remain in Plaintiffs' possession or have otherwise been made available to counsel), and prepared a draft affidavit setting forth specific facts that support the finding that $1,079,079.24 is a reasonable and necessary amount to be awarded as sanctions.

14.    Counsel's efforts in the last 48 hours to finalize Plaintiffs' application and counsel's supporting affidavit have been delayed, however, due to intervening concerns pertaining to the inadvertent disclosure of sensitive and/or privileged information related to this

Adversary Proceeding, as well as to a related malpractice action pending against Plaintiffs' prior trial counsel (which is briefly addressed in the Court's Findings and Conclusions).

15.    In order to adequately consider and address these concerns, Plaintiffs have submitted this preliminary application setting forth the *amount* of Plaintiffs' reasonable fees and expenses based on relevant factors, but counsel for Plaintiffs respectfully request a brief extension of time to address privilege concerns of all interested counsel, and modify the supporting affidavit and/or redact the evidence supporting in support of the reasonableness of Plaintiffs' request.

WHEREFORE, FOR THE FOREGOING REASONS, based on the facts set forth in the Court's Findings and Conclusions, Plaintiffs request that this Court enter a Supplemental Judgment awarding to Plaintiffs and against Comu sanctions in the amount of $1,079,079.24, which reflects the reasonable and necessary fees and expenses incurred by Plaintiffs in this Adversary Proceeding.  To the extent additional evidence or detail pertaining to the specific underlying legal services and expenses included in this amount is required, counsel for Plaintiffs respectfully request an extension of seven (7) days in which to confer with all counsel of interest, and to prepare a separate submission of an affidavit and properly redacted evidence in support of the reasonableness of Plaintiffs' fees requested herein. Plaintiffs further request the Court grant Plaintiffs such other and further relief, whether at law or equity, to which they are justly entitled.

AUS 53632 9 6v3

000911

Dated this 30th day of July, 2014

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: _____
Kendyl T. Hanks, SBT #24032273
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210
Email: hanksk@gtlaw.com

Shari L. Heyen
Texas Bar No. 09564750
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Email: heyens@gtlaw.com

*Attorneys for Plaintiffs King Louie Mining, LLC,*
*King Louie Enterprises, LLC, and Ronald Katz*

AUS 53632 9 6v3

000912

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing *Preliminary Application or Attorneys ees An E penses Awar e In The Court s July , Ju gment,* and *Motion or E tension Time To Su mit A i avit An Evi ence In Support Application* has been served upon the parties eligible to receive notice through the Court's ECF facilities by electronic mail on July 30, 2014.


*/s/ Shari L. Heyen*_____
Shari L. Heyen

AUS 53632 9 6v3

000913



**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 20, 2014**

**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | <u>CASE NO. 09-38820-SGJ-7</u> |
| | § | |
| CENGIZ J. COMU, | § | CHAPTER 7 |
| | § | |
| DEBTOR | § | |

---

| | | |
|---|---|---|
| KING LOUIE MINING, LLC, | § | |
| KING LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, Appellees | § | |
| | § | |
| v. | § | <u>ADV. NO. 10-03269-sgj</u> |
| | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant/Appellant | § | |

---

| | |
|---|---|
| DIANE G. REED, TRUSTEE, | § |
|     Intervenor, Co-plaintiff and | § |
|     Third-party Plaintiff, | § |
| | § |
| | § |
| v. | § |
| | § |
| CENGIZ J. COMU, | § |
|     Defendant, | § |
| | § |

000914

and                                                §
                                                   §
PHYLLIS E. COMU,                                   §
BERNARD D. BROWN,                                  §
THE BARCLAY GROUP, INC. AND                        §
SUNSET PACIFIC, L.P.,                              §
     Third-party Defendants.

---

<u>ORDER GRANTING MOTION FOR LEAVE TO FILE NOTICE OF APPEAL OUT OF TIME</u>

    CAME ON FOR CONSIDERATION the Motion for Leave to file Notice of Appeal out of Time filed by C. J. Comu (the "Defendant"), and, upon due consideration, the Court finds that excusable neglect was present and the Motion should be granted.  It is, therefore,

    ORDERED that the Motion be and hereby is GRANTED.

    IT IS FURTHER ORDERED that the Defendant shall file the Notice of Appeal separately on the docket, and pay the required filing fee, within seven (7) days of the entry of this order.

          ***END OF ORDER***

000915



**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 27, 2014**

_____

**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 7 |
| CENGIZ J. COMU a/k/a CJ COMU, | § | CASE NO. 09-38820-sgj7 |
| | § | |
|     DEBTOR. | § | |
| | | |
| KING LOUIE MINING, LLC, KING | § | |
| LOUIE ENTERPRISES, LLC, AND | § | |
| RONALD KATZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03269-sgj |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant | § | |
| | | |
| DIANE G. REED, TRUSTEE, | § | |
|     Intervenor, Co-Plaintiff, and | § | |
|     Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| CENGIZ J. COMU a/k/a CJ COMU, | § | |
|     Defendant, | § | |
| And | § | |
| PHYLLIS E. COMU, BERNARD D. | § | |
| BROWN, THE BARCLAY GROUP, INC., | § | |
| AND SUSSET PACIFIC, L.P. | § | |
|     Third-Party Defendants. | § | |

**ORDER GRANTING PLAINTIFFS' MOTION TO EXTEND TIME
TO FILE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

On this day, the Court considered *Plainti s Preliminary Application or Attorneys ees an E penses Awar e in the Court s July ,   Ju gment, an Motion or E tension o Time to Su mit A i avit an Evi ence in Support o Application* Adv. Doc. 154  (the "Motion for Extension"), filed July 30, 2014 in the above-styled Adversary No. 10-03269-sgj (the "Adversary Proceeding"), which was prematurely closed on July 24, 2014.

The Court further acknowledges the filing by Plaintiffs on August 5, 2014, in Chapter 7 Case No. 09-38820-sgj7 (the "Bankruptcy Case"), of *Cre itors Application or Attorneys ees an E penses Awar e in the Court s July ,   Ju gment Entere in the A versary Procee ing,      sg* ("Plaintiffs' Fee Application")  Bankr. Doc. 82 , and the affidavits and exhibits filed therewith  Bankr. Doc. 82-1 – Bankr. Doc. 82-13 .

Upon consideration of the matters on file herein and for good cause shown, and upon other due consideration, the Court is of the opinion that the following Order should be entered.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Plaintiffs' Motion for Extension filed in this Adversary Proceeding is GRANTED; and

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Adversary Proceeding shall be reopened for the purpose of considering Plaintiffs' Fee Application, and awarding Plaintiffs the "additional monetary award for their reasonable and necessary attorneys' fees and expenses" that was granted in the Judgment entered in the Adversary Proceeding on July 8, 2014  Adv. Doc. 148 ; and

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, upon the reopening of the Adversary Proceeding, Plaintiffs' Fee Application shall be docketed in the Adversary

000917

Proceeding, and deemed timely filed on and as of August 5, 2014, the date on which it was filed

in the Bankruptcy Case.

IT IS SO ORDERED.

**END OF ORDER**

GREENBERG TRAURIG, LLP

Kendyl T. Hanks
Texas Bar No. 24032273
Email: hanksk@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas  78704
Telephone:  (512) 320-7200
Telecopier:  (512) 628-3184

*an*

Shari L. Heyen
GREENBERG TRAURIG, LLP
Texas Bar No. 09564750
Email: heyens@gtlaw.com
1000 Louisiana, Suite 1800
Houston, Texas  77002
Telephone:  (713) 374-3500
Telecopier:  (713) 374-3505

*Attorneys for Creditors King Louie Mining, LLC,*
*King Louie Enterprises, LLC, and Ronald Katz*

000918

Case 10-03269-sgj Doc 168 Filed 08/29/14 Entered 08/29/14 13:18:13 Page 1 of 2
Case 3:14-cv-04163-B Document 1-4 Filed 11/21/14 Page 266 of 267 PageID 992
BTXN 113 (rev. 06/13)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re: | § | |
| Cengiz J. Comu | § | |
| Debtor(s) | § | Case No.:  09−38820−sgj7 |
| Cengiz J. Comu, et al | § | |
| Appellant(s) | § | Adversary No.:    10−03269−sgj |
| vs. | § | |
| King Louie Mining, LLC, King Louie Enterprises, LLC and Ronald Katz et al | § | |
| Appellee(s) | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## NOTICE REGARDING THE RECORD FOR A BANKRUPTCY APPEAL

Federal Rule of Bankruptcy Procedure 8006 prescribes the deadlines for filing the designations of items to be included in the record, requires copies to be submitted to the bankruptcy clerk to prepare the record, and directs all parties to "take any other action necessary to enable the clerk to assemble and transmit the record." LBR. 8006.1 − 8006.5 of the United States District Court for the Northern District of Texas impose additional requirements on the bankruptcy clerk and the parties in preparing the record on appeal. The purpose of this notice is to provide guidance on the local application of these rules.

### DESIGNATION OF THE RECORD

- If you are the appellant, when designating items for inclusion in the record,

  - list the following items first, in this order: (1) the notice of appeal, (2) the judgment, order, or decree appealed from, (3) any opinion, findings of fact, and conclusions of law of the bankruptcy court, and (4) the docket sheet;

  - then list the *other* items to be included, leaving for the end of your list any sealed documents, any exhibits, and any transcripts.

- If you are the appellee, cross−appellant, or cross−appellee and are designating additional items,

  - list the following items first, in this order: (1) any notice of cross−appeal, (2) any judgment, order, or decree appealed from that the appellant has not designated, and (3) any opinion, findings of fact, and conclusions of law of the bankruptcy court that the appellant has not designated;

  - then list the *other* items to be included, leaving for the end of your list any sealed documents , any exhibits, and any transcripts.

- All parties designating items to be included in the record on appeal must

  - for each item, specify the document number shown on the docket sheet. If an item does not have a document number, specify the date the item was "filed".

000919

♦ If you have designated a transcript that has not been filed, order it immediately by contacting the presiding bankruptcy judge's courtroom deputy or following the instructions at http://www.txnb.uscourts.gov/content/transcript−and−tape−orders.

## ASSEMBLY OF THE RECORD

Pursuant to the Notice Regarding Application of Certain Local Bankruptcy Rules, LBR 8006.2 — which requires the parties to provide copies of items for inclusion in the record — is waived as to each item that is available in the ECF system. Within 14 days of filing your designation, submit to the bankruptcy clerk any item that is **not available in the ECF system**, using this procedure:

• Enclose sealed items and non−documentary items ( e.g., video disks) in 8.5" x 11" envelopes.

• Attach all other items in PDF files to a disk, organized in the sequence in which they were designated. Limit files to 5.0 mb in size and do not include color.

• Attach copies of court exhibits in PDF files to a disk, organized in the sequence in which they are designated. Limit files to 5.0 mb in size and do not include color. (Use a separate disk for each hearing.)

• Label any submission with the case caption and bankruptcy court case and/or adversary proceeding number.

## TRANSMITTAL OF THE RECORD

• The bankruptcy clerk will electronically transmit the record to the district clerk. The parties must provide a paper copy of the record, if required.

## REQUIREMENTS REGARDING PAPER RECORD

• If the district judge requires a paper copy, the district clerk will notify you that you are required to provide a copy of the items in **your** designation **to the bankruptcy clerk**, for quality review. The appellant will also be required to provide a paper copy of the mini−record described in LBR 8006.1(a).

• If you are notified to provide a paper copy, organize the record according to the volumes maintained in the **district court's ECF system**. The record must be prepared according to the requirements of the district court LBR 8006.1 −8006.5.

• Even if a paper copy is not required when an appeal is entered on the docket, the district judge or the district clerk may later notify you that a paper copy is required for the use of the district judge or the court of appeals.

DATED: 8/29/14

FOR THE COURT:
Tawana C. Marshall, Clerk of Court

by: /s/J. Blanco, Deputy Clerk

000920