UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CENGIZ J. COMU a/k/a CJ COMU, | § § | |
| Appellant, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-CV-4163-B (Appeal from Adv. No. 10-03269-SGJ) |
| KING LOUIE MINING, LLC, KING LOUIE ENTERPRISES, LLC, RONALD KATZ, and DIANE G. REED, | § § § § § | (Bankr. Case No. 09-38820-SGJ-7) |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal from an order of the Bankruptcy Court of this District entering judgment against Debtor/Appellant Cengiz J. Comu a/k/a CJ Comu ("Comu"). Comu argues in this appeal that the bankruptcy judge erred in (1) revoking his bankruptcy discharge pursuant to 11 U.S.C. § 727(d), and (2) calculating the monetary award entered against him. Finding the bankruptcy court did not err with respect to either of these rulings, the Court, as follows, **AFFIRMS** the judgment of the bankruptcy court.

### I.

### BACKGROUND

This appeal was taken from an adversary proceeding related to Appellant Comu's Chapter 7 bankruptcy case. Appellees King Louie Mining, LLC, King Louie Enterprises, LLC, and Ronald Katz (together, "Plaintiffs") initiated the underlying adversary proceeding, seeking to revoke the discharge previously entered in Comu's bankruptcy due to Comu's alleged fraud and failure to

disclose or deliver significant assets belonging to his bankruptcy estate. The Chapter 7 trustee in Comu's bankruptcy—Appellee Diane G. Reed ("Trustee")—later intervened seeking, *inter alia*, a turnover of assets that Comu allegedly concealed using a vast network of entity alter egos, insiders, and third party conduits.[1] After these claims proceeded through trial, the bankruptcy court entered judgment in favor of Plaintiffs and the Trustee pursuant to a 141-page order detailing the court's findings of fact and conclusions of law. *See King Louie Mining, LLC v. Comu (In re Comu)*, Bk. No. 09-38820-SGJ-7, Adv. No. 10-03269-SGJ, 2014 WL 3339593 (Bankr. N.D. Tex. July 8, 2014). Comu now appeals portions of these extensive findings and conclusions, the relevant facts for which the Court briefly discusses below.

Comu filed a voluntary petition for Chapter 7 bankruptcy on December 31, 2009. According to evidence produced at trial, including "his own testimony, Comu's bankruptcy filing was prompted by" a default judgment entered against Comu in a New York state court civil action. *Id.* at *4. This civil suit had been initiated by Plaintiffs, who charged Comu with common law fraud and securities fraud in connection with business dealings dating back to 2003. After Comu failed to appear for trial in February 2009, the New York court entered a default judgment in Plaintiffs' favor on April 30, 2009. The bankruptcy court later noted that as of March 2014, Comu owed Plaintiffs over $3 million in damages and accrued interest on the New York judgment, the total of which accounted for around 95% of the claimed debt in Comu's subsequent bankruptcy. *See id.* at *3.

After filing his bankruptcy petition, Comu attended a creditors meeting on February 9, 2010,

---

[1] In her Complaint in Intervention, the Trustee named some of these entities and insiders in Comu's network as Third Party Defendants, including Comu's wife (Phyllis Comu), the nominal owner of one of Comu's alter ego companies (Bernard D. Brown), and two of Comu's alter egos (The Barclay Group, Inc. and Sunset Pacific, L.P.). Comu alone, however, has filed this appeal. *See* R. 1-3 (Notice of Appeal).

at which Comu testified under oath regarding the veracity of his bankruptcy filings in response to questioning from, among others, the Trustee. Also testifying at the creditors meeting was John Buckeye Epstein, a former business associate of Comu who "alleged that Comu had not been truthful in his testimony" and "that Comu 'has since 1998 been on a spree of bilking investors.'" *Id.* at *26. Comu denied these allegations at the meeting, claiming that Mr. Epstein was merely "a disgruntled former employee." *Id.* Nevertheless, the Trustee noted certain inconsistencies in Comu's testimony and bankruptcy filings at the meeting, and therefore, suggested that Comu amend his filings and instructed him to produce further documentation evidencing his finances. While Comu sent the Trustee certain documents relating to his assets and business interests in March 2010, he never amended his bankruptcy filings.

Meanwhile, Plaintiffs' retained counsel at the time, Emil Lippe, Jr. ("Plaintiffs' Prior Counsel"), was also in attendance at the February 2010 creditors meeting. While there, the Trustee indicated that there are "several judgments against Mr. Comu already and I don't have any idea whether some of those companies will be seeking to establish nondischarability because of the claim of fraud," to which Plaintiffs' Prior Counsel responded "we will be." R. at 7471. There is also some evidence suggesting that Plaintiffs' Prior Counsel reviewed the documents Comu sent to the Trustee in March 2010, in which he allegedly disclosed details about his finances that were never included in his bankruptcy filings. *See id.* at 7484. Plaintiffs' Prior Counsel, nonetheless, failed to timely file an objection to Comu's scheduled bankruptcy discharge, and thus, Comu's claimed debts, including the debt owed for Plaintiffs' New York judgment, were discharged on April 14, 2010.

Less than a half-year later—on September 3, 2010—Plaintiffs timely[2] filed this adversary proceeding seeking a revocation of Comu's discharge pursuant to 11 U.S.C. §§ 727(d)(1) and (2). Comu filed two successive motions to dismiss for failure to adequately state a claim for relief, to which the bankruptcy court responded by granting Plaintiffs leave to amend after each. Plaintiffs then filed their Second Amended Complaint on March 2, 2011, which the court later sustained upon denying Comu's third and final motion to dismiss.

On September 5, 2012, the Trustee filed a Complaint in Intervention in the adversary proceeding charging Comu with intentionally failing to disclose substantial assets allegedly belonging to his bankruptcy estate. Of particular importance here, the Trustee alleged that Comu concealed significant pre-petition equity interests in Green Automotive Company, Inc. (the "Green Auto Stock"), using, *inter alia*, his undisclosed, *de facto* ownership and control of The Barclay Group, Inc. ("TBG") to hold his Green Auto Stock and thereby avoid detection. In relief, the Trustee asked the court, among other things, to reverse-pierce TBG's corporate veil and declare its pre-petition property part of Comu's bankruptcy estate. The Trustee additionally sought an order pursuant to 11 U.S.C. § 542(a) requiring Comu and TBG to turn over all undisclosed pre-petition assets, including the Green Auto Stock and any proceeds collected therefrom.

At the conclusion of a five-day bench trial, the bankruptcy court issued a bench ruling finding in favor of Plaintiffs and the Trustee on their above-mentioned claims, and ordering the parties to submit post-trial briefing in regards to the bankruptcy estate's damages. The Trustee timely filed a post-trial damages brief requesting, pursuant to 11 U.S.C. § 542(a), damages totaling $4,084,944.95,

---

[2] Creditors and trustees generally have one year after the discharge is granted to seek revocation. *See* 11 U.S.C. § 727(e).

which she calculated based on the cash proceeds generated from the sale of TBG's 16.2 million undisclosed shares of Green Auto Stock. In the alternative, the Trustee requested damages "under the equitable doctrine of unjust enrichment in the amount of $833,160.00" based on the traceable amount of proceeds TBG actually collected from the sale of its 16.2 million shares of Green Auto Stock. R. at 2180-81 (Trustee's Post-trial Br.). Comu never filed a damages brief of his own.

On July 8, 2014, the bankruptcy court entered its findings of fact and conclusions of law concluding that "Plaintiffs have proved by far more than a preponderance of the evidence that revocation of discharged is warranted under [11 U.S.C. § 727(d)], due to a substantial number of false oaths made with fraudulent intent (which continued through trial), and due to substantial undisclosed assets and valuable interests." *King Louie Mining*, 2014 WL 3339593, at *49. The court also found there to be "ample evidence that Plaintiffs . . . did not know the true facts pertaining to Comu's false oaths and undisclosed assets until after the Discharge Date, and that Plaintiffs 'did not know' about Comu's fraud prior to the Discharge Objection Deadline." *Id.* at *27.

In regard to the Trustee's claims, the court concluded that TBG was indeed Comu's alter ego, and that, therefore, any pre-petition shares of the Green Auto Stock owned by TBG should have been turned over to the Trustee pursuant to 11 U.S.C. § 542(a). In great detail, the court then discussed the evidence that revealed Comu's "elaborate scheme to dissipate TBG's Green Auto Stock—and collect millions of dollars in cash proceeds—that should have been available to his creditors." *Id.* at *30. The court ultimately found this amount to be $5,858,788, which the court said "reflects [the] actual cash proceeds from the sale of Green Auto stock." *Id.* at *53; *see also id.* at *34-*40 (detailing the evidence supporting the Trustee's damages).

Pursuant to these findings and conclusions, the bankruptcy court entered judgment against

Comu on July 8, 2014. Comu timely filed a notice of appeal, and this case was docketed in this Court on November 21, 2014. Thereafter, the parties filed a series of briefs relating to Comu's appeal, with the final brief docketed with the Court on April 24, 2015. *See* Doc. 9, Appellant's Br.; Doc. 15, Trustee's Appellee Br.; Doc. 16, Appellant's Reply to Trustee; Doc. 17, Pls.' Appellee Br.; Doc. 18 Appellant's Reply to Pls. This appeal is, therefore, now ripe for the Court's review.

## II.

## LEGAL STANDARD OF REVIEW

District courts reviewing bankruptcy appeals apply "'the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the [Fifth Circuit].'" *In re O'Connor*, 258 F.3d 392, 397 (5th Cir. 2001) (quoting *Kennard v. MBank Waco, N.A. (Matter of Kennard)*, 970 F.2d 1455, 1457 (5th Cir. 1992)). Under this standard, "a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo." *In re SI Restructuring, Inc.*, 542 F.3d 131, 134 (5th Cir. 2008) (citing *U.S. Dep't of Educ. V. Gerhardt (In re Gerhardt)*, 348 F. 3d 89,91 (5th Cir. 2003)). Reviewing for "clear error" means that the bankruptcy court's findings of fact "may be reversed '[o]nly upon a definite and firm conviction that the bankruptcy court erred.'" *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) (quoting *Tummel & Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 318 (5th Cir. 2005)) (bracket in original).

## III.

## ANALYSIS

Comu raises just two issues on appeal. First, he argues that the bankruptcy court erred in revoking the discharge entered in his bankruptcy proceedings pursuant to 11 U.S.C. § 727(d).

Second, he asserts that the bankruptcy court also erred in calculating the Trustee's damages award. The Court takes up each of these contentions, in turn, below.

  A.  *Discharge Revocation*

Plaintiffs in this case were granted a revocation of Comu's bankruptcy discharge pursuant to subsections (1) and (2) of 11 U.S.C. § 727(d). These subsections respectively provide that a bankruptcy discharge shall be revoked if:

> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge; [or]
>
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

11 U.S.C. §§ 727(d)(1)-(2).

Comu challenges the bankruptcy court's revocation of his discharge pursuant to the above statutory provisions in just one respect: the finding that Plaintiffs did not know of Comu's fraudulent concealment of pre-petition assets until after his discharge was granted. *See* Appellant's Br. 4-9. The fact that Comu does not challenge the bankruptcy court's finding that he fraudulently failed to disclose property of his bankruptcy estate is arguably reason enough to dismiss this portion of his appeal, given that Plaintiffs need only establish revocation under subsection (1) *or* (2) above, and subsection (2) does not explicitly carry an absence of knowledge element akin to subsection (1)'s "did not know" requirement. As Comu points out, however, a number of non-binding decisions from outside this Circuit "have read this [lack of knowledge] requirement into section (d)(2)." *Keeffe v.*

*Natalie*, 337 B.R. 11, 14 (N.D.N.Y. 2006) (collecting cases).[3]

But even assuming that Plaintiffs were indeed required to prove that they did not know of Comu's fraud before the discharge date, the Court would still uphold the bankruptcy court's decision to revoke his discharge. In the words of the Fifth Circuit, "'[t]he right to a discharge in bankruptcy is addressed to the sound discretion of the bankruptcy court, and appellate courts should interfere only for the most cogent, compelling reasons in situations of gross abuse.'" *United States v. Cluck*, 87 F.3d 138, 140 (5th Cir. 1996) (quoting *In re Jones*, 490 F.2d 452, 455 (5th Cir. 1974)). Like the Fifth Circuit in *Cluck*, the Court, as follows, "see[s] no reason to interfere in this case." *Id.* (declining to disturb the bankruptcy court's decision to revoke the debtor's discharge).

As an initial matter, the Court need not review Comu's contentions here to the extent he "submits that Plaintiffs' Second Amended Complaint is still deficient, and that the bankruptcy court should have dismissed Plaintiffs' Second Amended Complaint." Appellant's Br. 6; *see also* Appellant's Reply to Pls.' Br. 3 ("The Motion to Dismiss should have been granted because the Plaintiffs filed prematurely, without the requisite knowledge and specificity in pleading."). As the Fifth Circuit has explained:

> When the plaintiff has prevailed after a full trial on the merits, a district court's denial of a Rule 12(b)(6) dismissal becomes moot. The plaintiff has proved, not merely alleged, facts sufficient to support relief. Any pleading defect may be cured by a motion under Fed.R.Civ.P. 15(b), and the sufficiency of the plaintiff's evidence may be tested by an appeal on that issue.

*Bennett v. Pippin*, 74 F.3d 578, 585 (5th Cir. 1996). The bankruptcy court's denial of Comu's motion to dismiss is, therefore, moot in light of the proceedings that followed this decision. As such, the

---

[3] The Court need not take a stance on this issue, because it finds below that the bankruptcy court did not err in concluding that Plaintiffs did not know of Comu's fraud before the discharge date.

Court need only review Comu's challenges here that go to the sufficiency of the evidence.

Comu highlights a few pieces of evidence that he believes show Plaintiffs' pre-discharge knowledge of his fraud. *See* Appellant's Br. 6-9. These evidentiary items, however, were soundly rejected by bankruptcy court on the basis of competing facts and evidence in the record. For example, Comu cites as evidence of Plaintiffs' pre-discharge knowledge the statement of Plaintiffs' Prior Counsel at the creditors meeting indicating that Plaintiffs intended to object to the discharge on the basis of their "claim of fraud." *See id.* at 6, 8. However, the bankruptcy court quite reasonably concluded that Counsel's statement "pertained to Comu's *prior* specific fraud established by the New York Judgment . . . , and did not exhibit knowledge by Plaintiffs of Comu's ongoing fraud in and in connection with the Bankruptcy Case." *King Louie Mining*, 2014 WL 3339593, at *27. Similarly, Comu argues that Mr. Epstein's testimony during the creditors meeting put Plaintiffs on notice of his ongoing fraud. *See* Appellant's Br. 7-8. But the bankruptcy court rejected this testimony, "based on the totality of the evidence (which evidence is rather overwhelming),"[4] as insufficient to establish Plaintiffs' knowledge. *Id.* at *26. And with respect to Comu's March 2010 disclosures to the Trustee, which Comu also relies on here, the court reasoned that, assuming Plaintiffs even reviewed these disclosures, "such disclosures were incomplete, inaccurate and misleading, and calculated to deflect investigation by creditors and Trustee into Comu's true financial circumstances of assets." *Id.* at *27 (emphasis omitted).

Moreover, Comu altogether fails to acknowledge the "ample evidence" the bankruptcy court

---

[4] Such evidence likely included the fact that Mr. Epstein was labeled a disgruntled employee at the creditors meeting whose allegations were reasonably disregarded, and Comu's ongoing and substantial efforts at that time to conceal his fraud through an elaborate web of deceit.

-9-

cited in support of its finding that Plaintiffs lacked knowledge of Comu's fraud before the discharge objection deadline. *Id.* at *27. This evidence includes, for example, Plaintiff Katz's and the Trustee's credible testimony at trial that "they did not learn the truth of Comu's financial situation, . . . [or] the scope of [Comu's] fraud, [until] after reviewing documents produced" by Comu in 2013 during the course of discovery. *Id.* at *26. The Court can see no err in such well-reasoned findings. Therefore, it affirms the bankruptcy court's decision to revoke Comu's discharge pursuant to 11 U.S.C. §§ 727(d)(1) and (2).

      B.     *Damages*

Comu next posits that the bankruptcy court erred in calculating the monetary judgment entered in favor of the Trustee. These damages were granted pursuant to the turnover provisions of the Bankruptcy Code,[5] and included "the value of assets that existed on the Petition Date and that cannot be turned over to the Bankruptcy Trustee, because they have been sold or otherwise disposed of by [Comu], or persons or entities acting at his direction." R. at 6 (Judgment). The bankruptcy court found this amount to be $5,858,779, which it noted "reflects actual cash proceeds from the sale of Green Auto stock, that rightfully should have been turned over to the Bankruptcy Trustee." *Id.* Comu now challenges this award in two respects, neither of which has merit.

First, Comu argues that the court erred in awarding a monetary judgment in the amount of $5,858,778, when the Trustee only requested $4,204,945 in her post-damages brief. *See* Appellant

---

[5] *See* 11 U.S.C. § 542(a) ("Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.").

Br. 9. But as the Trustee astutely points out, the bankruptcy court's "calculation of damages included sales transactions which were overlooked by the Trustee" in her post-trial brief, and the bankruptcy court "was obviously entitled to make its own determination about the amount based upon the evidence presented." Trustee's Appellee Br. 11. Comu makes no challenge to the sufficiency of the evidence supporting the additional damages awarded by the court and overlooked by the Trustee[6]; rather, he argues that the court erred simply because it awarded what the evidence showed, instead of what the Trustee explicitly requested in her post-trial brief. Unsurprisingly, Comu cites no legal support for the proposition that a court cannot award damages in excess of an amount requested in a post-trial brief, where such excess damages are supported by the record and the pleadings. And to the extent Comu means to say he was prejudiced by these events, such a contention is undermined by the fact that he didn't even bother to file a post-trial damages brief of his own. The Court, therefore, finds that the bankruptcy court did not err in this respect.

Second, Comu's other contention is that the bankruptcy court erred in failing to account for "fees" and "commission payments" collected by third parties in the sale of TBG's Green Auto Stock, which he believes should not have been included in the award. Appellant's Br. 10-11. Instead, he argues that the bankruptcy court should have calculated the Trustee's award based on the amount of cash proceeds he was willing to stipulate to receiving, both personally and through his alter egos, at trial. *See* Appellant's Reply to Trustee 3. These contentions fare no better the ones rejected above.

In regards to the third party "fees" that Comu complains of, the bankruptcy court did indeed

---

[6] *See* Appellant's Reply to Trustee 3 (admitting that the damages "amount supported by the record is $2,657,777.60," which includes the transactions overlooked by the Trustee in her damages brief).

factor them into its award when the evidence supported such deductions.[7] To the extent the bankruptcy court should have factored in additional fees, Comu fails to point the Court to evidence rendering the bankruptcy court's findings clearly erroneous.

As for the other third party proceeds that Comu says should not have been included in the judgment, the bankruptcy court found these proceeds to be held in accounts for two Canadian family trusts formed by Comu's brother just days after Comu filed for bankruptcy. According to the bankruptcy court, "[e]vidence at trial was clear and convincing . . . that Comu used the Canadian Trusts for the purpose of concealing and liquidating assets of Comu's bankruptcy estate." *King Louie*, 2014 WL 3339593 at *36. The court further found Comu and his alter egos, including TBG, "controlled and directed, . . . the distribution of cash proceeds received by [the Canadian Trusts] from the sale of Green Auto stock." *Id.* Comu does not challenge these factual findings or otherwise show them to be clearly erroneous. Nor does he show that the bankruptcy court lacked authority to order Comu and his alter egos to turn over property held in the name of the two trusts set up as a sham to conceal assets. On the contrary, the bankruptcy court has authority to order parties to turn over property subject to their "control," and which should have been included in the bankruptcy estate. 11 U.S.C. § 542(a). As such, the Court affirms the bankruptcy court's monetary judgment in favor of the Trustee pursuant to 11 U.S.C. § 542(a).

## IV.

## CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is **AFFIRMED**. As such,

---

[7] *See, e.g.*, *King Louie*, 2014 WL 3339593, at *35 ("TBG collected $2,762,220 in cash proceeds from the sale of TBG Shares *after the deduction of fees to* [TBG's third party escrow agent]") (emphasis added).

the Court hereby **DISMISSES** this appeal.

    **SO ORDERED.**

    **Dated: July 24, 2015.**

                                            _____
                                            JANE J. BOYLE
                                            UNITED STATES DISTRICT JUDGE